**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | * * * * | **CIVIL ACTION NO.: 2:23-cv-00987** |
| VERSUS | * * | JUDGE: WENDY B. VITTER |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | * * * * | MAG. JUDGE JANIS VAN MEERVELD |

## MEMORANDUM IN SUPPORT OF RE-SUBMITTED RULE 12 MOTION TO STRIKE ALLEGATIONS AND DISMISS CLAIMS

BY ATTORNEYS

John King, La. Bar No. 17004
John.King@bswllp.com
Thomas Temple, La. Bar No. 26130
Thomas.Temple@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
danielle.borel@bswllp.com
**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*Attorneys for St. James Parish, St. James Parish Council and St. James Parish Planning Commission*

4816588.v1

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................ 2

II.  LAW AND ARGUMENT ................................................................................... 3

    A.   Plaintiffs' Complaint Contains Immaterial, Impertinent, and Scandalous
    Allegations Which Should Be Stricken Pursuant to Rule 12(f). ........................... 3

        1.   The Complaint contains immaterial and impertinent allegations
        that should be stricken. ................................................................................. 4

        2.   Plaintiffs sensationalize their claims with scandalous allegations. ............. 7

        1.   Standing requires injury, causation, and redressability. ............................. 9

        2.   Plaintiffs have not pled injury, causation, or redressability. ..................... 10

            a.   The purported decreased property values are not caused by
            or regulated by St. James Parish. ...................................................... 12

            b.   The purported health impacts are not caused by or
            regulated by St. James Parish. ........................................................... 16

            c.   The purported religious injuries are not caused or regulated
            by St. James Parish. ........................................................................... 17

    B.   Plaintiffs' Complaint Fails to State Claims and Should be Dismissed
    Pursuant to Rule 12(b)(6). ............................................................................... 19

        1.   St. James Parish Council and St. James Parish Planning
        Commission lack procedural capacity to be sued. ..................................... 19

        2.   Plaintiffs failed to exhaust administrative remedies and collaterally
        attack the zoning decisions of St. James Parish. ....................................... 22

        3.   Claim I: Thirteenth Amendment ............................................................... 23

            a.   Plaintiffs' 42 U.S.C. § 1983 claims are prescribed. ......................... 24

            b.   Plaintiffs failed to plead facts of a badge or incident of
            slavery. .............................................................................................. 25

        4.   Claim II/III: Fourteenth Amendment ........................................................ 27

            a.   Plaintiffs' Fourteenth Amendment claims are prescribed. ............... 28

            b.   Claim II (Equal Protection): Plaintiffs failed to plead facts
            of discriminatory intent. .................................................................... 28

            c.   Claim II (Equal Protection): Plaintiffs failed to plead facts
            of a lack of equal treatment. .............................................................. 31

4816588.v1

|  |  | d. | Claim III Substantive Due Process (Bodily Safety and Integrity): Plaintiffs failed to plead facts of a lack of rational objective............................................................ 31 |

|  | 5. | Claim IV: 42 U.S.C. § 1982 - Property Rights of Black Citizens ............ 33 |

|  |  | a. | Plaintiffs' 42 U.S.C. § 1982 claims are prescribed...................... 33 |

|  |  | b. | Plaintiffs failed to plead facts of a property injury. ...................... 34 |

|  |  | c. | Plaintiffs failed to plead facts of any intentional discrimination. ...................................................................... 35 |

|  | 6. | Claim V (Substantial Burden)/VI (Discrimination): Religious Land Use and Institutionalize Persons Act .......................................... 35 |

|  |  | a. | Plaintiffs' RLUIPA claims are prescribed. ................................... 36 |

|  |  | b. | Plaintiffs failed to plead facts of a property interest. ................... 36 |

|  | 7. | Claim VII: Preservation of cultural origins. ............................................. 38 |

|  |  | a. | Plaintiffs' preservation claim has prescribed. .............................. 38 |

|  |  | b. | Plaintiffs failed to plead an infringement of their ability to preserve, foster, or promote their historic linguistic or cultural origins. ............................................................................. 39 |

III.   Request for Attorneys' Fees............................................................................................. 40

IV.   CONCLUSION................................................................................................................ 41

4816588.v1

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

**<u>Cases</u>**

*Allen v. Hays*, 65 F.4th 736, 751 (5th Cir. 2023) ........................................................... 25

*Allen v. Lowe*, No. 14-204, 2015 WL 1021695, at *2 (E.D. La. 2015) ......................................... 41

*Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613 (1st Cir. 1988) ...................................... 3

*Atwood v. Humble Oil & Ref. Co.*, 243 F.2d 885, 888 (5th Cir. 1957)............................................ 3

*Barber v. Louisiana Workforce Commission*, 2017-0844 (La. App. 1st Cir. 10/19/18) 266
    So.3d 368 ................................................................................................................. 38

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S.
    192, 201 (1997)......................................................................................................... 36

*Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 683 (6th Cir. 2018)......................... 28

*Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001) ........................................................ 35

*Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 935, n. 3, 4 (5th Cir. 2022) .................................. 13

*City Council of Lafayette v. Bowen*, 649 So.2d 611, 616 (La. Ct. App. 1994)............................. 21

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).................................................. 28

*City of Memphis v. Greene*, 451 U.S. 100, 134 (1981)................................. 26, 27, 29, 33, 34, 35

*Civil Rights (C.R.) Cases*, 109 U.S. 3, 20 (1883) ...................................................... 24, 25, 26, 27

*Cobell v. Norton*, 224 F.R.D. 266, 280 (D.D.C.2004) ................................................................ 7

*Delta Com. Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 272
    (5th Cir. 2004)......................................................................................................... 10

*Desoto Grp., LLC v. Linetec Servs., LLC*, 339 F.R.D. 249, 251 (S.D. Miss. 2021) ...................... 3

*Dotey v. Tangipahoa Par. Council*, No. CV 05-4018, 2006 WL 8456326, at *2 (E.D. La.
    Apr. 17, 2006)..................................................................................................... 20, 21

*E. New Orleans Neighborhood Advisory Comm'n v. Levy Gardens Partners 2008, LLC*,
    2009-0326 (La. App. 4 Cir. 7/15/09), 20 So. 3d 1131, 1137 ............................................. 22

*Edmiston v. Louisiana Small Bus. Dev. Ctr.*, 931 F.3d 403, 407 (5th Cir. 2019) ........................ 20

*Florance v. Buchmeyer,* 500 F. Supp. 2d 618, 645 (N.D. Tex. 2007) ............................................ 7

*FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174–75 (5th Cir. 1996)................ 32

*Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 852 (E.D. La. 2011)................................................ 3

*Guesby v. Bert Nash Cmty. Mental Health Ctr., Inc.*, No. 22-2370-DDC-TJJ, 2023 WL
    3040454, at *2 (D. Kan. Apr. 21, 2023) ....................................................................... 26

*Harrison v. Safeco Ins. Co. of Am.*, No. 06-4664, 2007 WL 1244268, at *3 (E.D. La. Jan.
    26, 2007) ................................................................................................................... 9

*Hat v. Landry,* No. 6:20-CV-00983, 2021 WL 1823089, at *8 (W.D. La. May 5, 2021) ............ 11

*Holt v. Hobbs*, 574 U.S. 352, 357 (2015) ................................................................................. 35

*Humphreys v. Bennett Oil Corporation*, 197 So. 222, 226 (La. 1940)....................................... 38

*Ibrahim v. Bernhardt*, No. 19-CV-00101, 2020 WL 94877, at *4 (E.D. La. Jan. 8, 2020)............ 3

*Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)........................................................ 28

iv

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454 (1975) ................................................................ 34

*Jones v. City of Monroe*, No. 3:19-CV-00832, 2019 WL 5488603, at *7 (W.D. La. Oct. 8, 2019) ................................................................................................................................................ 38

*Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) ................................................ 36

*Louisiana by & through Landry v. Biden*, 64 F.4th 674, 680–81 (5th Cir. 2023) ...................... 13

*McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002) .......................................... 32

*McGinnis v. Royster*, 410 U.S. 263, 270 (1973) ........................................................................ 28

*McGraw v. City of New Orleans,* 2016-0446 (La. App. 4 Cir. 3/29/17), 215 So. 3d 319 ........... 40

*Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017).................................. 39

*Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 594 (E.D. La. 2016)........ 32, 39, 40

*Monumental Task Comm., Inc. v. Foxx*, No. 16-12495, 2016 WL 5780194, at *4 (E.D. La. Oct. 4, 2016) ..................................................................................................................... 31, 32, 40

*Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000).................................................. 41

*Nobles Const., L.L.C. v. Par. of Washington*, No. CIV.A. 11-2616, 2012 WL 1865711, at *5 (E.D. La. May 22, 2012).................................................................................................... 32

*Nobles Const., L.L.C. v. Washington Par.*, 544 F. App'x 263 (5th Cir. 2013)............................. 32

*Owens v. Okure*, 488 U.S. 235, 239 (1989) ................................................................................ 24

*Palermo Land Co. v. Plan. Comm'n of Calcasieu Par.*, 561 So. 2d 482, 491 (La. 1990)........... 22

*Palmer v. Thompson*, 403 U.S. 217 (1971)............................................................................ 26, 28

*Pennick v. City of Florala*, 529 F.2d 1242 (5th Cir. 1976)........................................................ 34

*Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) ........................................ 29

*Petroplex Int'l v. St. James Par.*, 158 F. Supp. 3d 537, 544 (E.D. La. 2016)........................ 23, 33

*Port Marigny, LLC v. City of Mandeville*, No. CV 17-4727, 2018 WL 1757385, at *3 (E.D. La. Apr. 12, 2018)............................................................................................................... 20

*Roberts v. Sewerage and Water Board*, 634 So. 2d 341 (La. 1994)........................................... 20

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 799 (5th Cir. 2012).................................................................................................................. 10

*Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 39–40 (1976) ........................................ 12

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016), as revised (May 24, 2016) ..................... 13

*Spoon v. Bayou Bridge Pipeline, LLC*, 335 F.R.D. 468, 470–71 (M.D. La. 2020) ................... 5, 8

*State ex rel. Civello v. City of New Orleans*, 154 La. 271, 97 So. 440 (La. 1923) ...................... 22

*Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021)............................................ 25

*United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992)....................................................... 29

*United States v. Kozminski*, 487 U.S. 931, 942 (1988) ............................................................... 24

*Warth v. Seldin*, 422 U.S. 490, 501 (1975) ................................................ 9, 11, 12, 13, 14, 15, 16

*Washington v. Davis*, 426 U.S. 229 (1976)................................................................................. 29

*Wheelahan v. City of New Orleans*, No. CV 19-11720, 2020 WL 1503560, at *16 (E.D. La. Mar. 30, 2020) ................................................................................................................ 31

*Wilson v. Garcia*, 471 U.S. 261 (1985)....................................................................................... 24

*Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631 (E.D. La. 2006) ................................................. 35

**Statutes**

28 U.S.C. §1658 .................................................................................................................. 36

42 U.S.C. §1983 .................................................................................... 11, 24, 25, 28

42 U.S.C. §1988 .................................................................................................. 24, 40

42 U.S.C. §2000cc(a)(1) ................................................................................................ 36

42 U.S.C. §2000cc(a)(2)(C) .......................................................................................... 37

42 U.S.C. §2000cc(b)(2) ................................................................................................ 37

42 U.S.C. §2000cc-5(1) .................................................................................................. 37

42 U.S.C. §2000cc-5(5) .................................................................................................. 37

F.R.C.P. Rule 12 ....................................................................................................... 1, 3, 9

La. C. C. Art. 24 ............................................................................................................. 20

La. R.S. 25:931-943 ......................................................................................................... 19

La. R.S. 30:2011(A)(1) ................................................................................................... 16

La. R.S. 30:2011(D)(2) ................................................................................................... 16

La. R.S. 30:2054(B)(2) ................................................................................................... 16

La. R.S. 8:671-681 .......................................................................................................... 19

Louisiana Civil Code Article 3493 ............................................................................... 34

**Other Authorities**

La. Const. art. I, § 2 ....................................................................................................... 37

La. Const. art. VI, § 5 ..................................................................................................... 21

La. Const. art. XII, § 4 ................................................................................................... 38

U.S. Const. amend. XIII ........................................................................................... 24, 28

U.S. Const. amend. XIV ........................................................................................ 28, 29, 30

4816588.v1

## <u>MEMORANDUM IN SUPPORT OF RE-SUBMITTED RULE 12 MOTION TO STRIKE ALLEGATIONS AND DISMISS CLAIMS</u>

St. James Parish, on behalf of itself and the St. James Parish Council and St. James Parish Planning Commission (the **"Defendant"** or **"St. James Parish"**), files this Memorandum in Support of its Re-Submitted Rule 12 Motion to Strike Allegations and Dismiss Claims in response to the Amended Complaint for Declaratory and Injunctive Relief (the "**Complaint**") [doc. 29] filed by Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James ("**Plaintiffs**"). St. James asserts the following:

(1)     Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Defendant, St. James Parish, moves to strike the allegations in Paragraphs 1-551 of Plaintiffs' Complaint which are immaterial, impertinent, scandalous, and not relevant to the claims at issue.

(2)     Pursuant to Rule 12 (b)(1), St. James Parish moves this Court to dismiss the Complaint for Plaintiffs' lack of standing. Because of Plaintiffs' lack of standing, this Court lacks subject matter jurisdiction.

(3)     Pursuant to Rule 12 (b)(6), St. James Parish moves this Court to dismiss nominal Defendants, St. James Parish Council and St. James Parish Planning Commission, which have no separate legal identity and cannot be sued in a separate capacity.

(4)     Pursuant to Rule 12(b)(6), St. James Parish moves this Court to dismiss Plaintiffs' claims as prescribed under the applicable statute of limitations and/or for failure to state a claim.

(5)     St. James Parish moves for an award of its fees and costs pursuant to 42 U.S.C. 1988.

Defendant filed an original Rule 12 motion [Doc. 20], with the same arguments herein resubmitted, three weeks before Plaintiffs filed their amended Complaint. In the amended Complaint, Plaintiffs failed to cure any of the raised improprieties or deficiencies raised by

4816588.v1

Defendants. Because the Plaintiffs have amended their Complaint, no further amendments should be allowed. As such, dismissal with prejudice is warranted.

## I.  **INTRODUCTION**

Plaintiffs' Complaint invokes, recites, and relies on the dark history of slavery in the United States and Louisiana to portray the actions of current elected officials as ones motivated by the same historic discriminatory intent. The Complaint goes so far as to plainly state that the adoption of the Land Use Plan by these officials is "racial cleansing" revealing "an intention to erase" historic Black communities. [Doc. 29, ¶¶ 274-275]. This type of inflammatory rhetoric disguised as historically significant facts is designed to evoke an emotional reaction rather than satisfy the pleading requirements necessary to state the legal elements of any actionable claims.

Despite the history lessons in its 151 pages and 612 paragraphs, the Complaint lacks a sufficient factual basis to support or establish each element of Plaintiffs' claims. It lacks sufficient allegations to establish that these Plaintiffs have standing to bring the claims. It lacks allegations that the elected officials who unanimously adopted the Land Use Plan and made decisions pursuant to that plan are in fact motivated, even in part, by the discriminatory intent necessary to sustain those claims. It even lacks allegations that any of these claims are asserted in a timely manner.

Based on these historic allegations, some going back to 1685, and unsupported claims of discriminatory intent, Plaintiffs attempt to paint the elected officials of St. James Parish as possessing a discriminatory animus against their own citizens while seeking to have the Federal judiciary disregard any notion of the separation of powers and assert absolute and continuing authority over local land use decisions in St. James Parish, a function reserved for the local legislative branch of government. This Court should see through this politically motivated pleading and dismiss Plaintiffs' Complaint with prejudice, awarding Defendant fees and costs.

## II.   LAW AND ARGUMENT

### A.   Plaintiffs' Complaint Contains Immaterial, Impertinent, and Scandalous Allegations Which Should Be Stricken Pursuant to Rule 12(f).

Federal Rules of Civil Procedure Rule 8 requires a "pleading that states a claim for relief must contain: . . . (2) **a short and plain statement** of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." (**Emphasis** added). "In consideration of Rule (8)'s requirements the Court notes statements in a complaint are not plain, where they are not clear and understandable and **not free of excessive embellishment** and a complaint is not sufficiently short, where the averments are not simple, concise, and direct." *Ibrahim v. Bernhardt*, No. 19-CV-00101, 2020 WL 94877, at *4 (E.D. La. Jan. 8, 2020) (citing *Atwood v. Humble Oil & Ref. Co.*, 243 F.2d 885, 888 (5th Cir. 1957)(**emphasis** added)). Similarly, a complaint that contains excessive and irrelevant allegations may also violate Federal Rules of Civil Procedure Rule 10 where there is no attempt to identify which facts are relevant to the claims, "if the theory and basis of counts are not distinguishable[,] or if it is difficult to discern the legal claims asserted." *Desoto Grp., LLC v. Linetec Servs., LLC*, 339 F.R.D. 249, 251 (S.D. Miss. 2021).

Fed. R. Civ. P.  Rule 12(f) provides that a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." A motion to strike should be granted when "the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 852 (E.D. La. 2011). A motion to strike is particularly appropriate when the irrelevant matter is scandalous and calculated to cause prejudice to the party about whom it is written. *See e.g., Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613 (1st Cir. 1988).

Here, the Complaint contains immaterial, impertinent, and scandalous allegations and assertions which embellish the Complaint, are prejudicial to Defendant, and create spurious issues

requiring time and money to litigate. Despite its 151 pages and 612 paragraphs, the Complaint lacks allegations indicating that the duly elected officials who **unanimously** voted for the Land Use Plan in 2014 were in any way influenced or motivated by a discriminatory intent or the history of slavery.

The Complaint begins with a nineteen paragraph "Preliminary Statement." It is a mixture of historical statements, quotes from impassioned sermons, and vague discussions of the claims brought. [Doc. 29, ¶¶ 1-19]. The "Preliminary Statement" discusses historical aspects of racism including "system of chattel and slavery and the subsequent periods of violence, dispossession, and residential segregation white people carried out during the post-Reconstruction periods of neo-slavery and Jim Crow." [Doc. 29, ¶ 3]. After the jurisdiction and parties, the Complaint then includes a **522-paragraph** "Factual Background" that discusses history as far back as **1685**. [Doc. 29, ¶¶ 29-551]. Only then, starting in paragraph 552, does the Complaint outline the causes of action Plaintiffs purport to bring related to operative facts ostensibly beginning in 2014.

The sheer volume of irrelevant and inflammatory statements makes it difficult to address the allegations that should be stricken. Defendant will address Plaintiffs' inappropriate paragraphs by providing examples without a full recitation of each instance in the laborious Complaint.

1.       <u>**The Complaint contains immaterial and impertinent allegations that should be stricken.**</u>

The Middle District of Louisiana differentiated between the four categories of inappropriate material and defined immaterial and impertinent allegations as follows:

> **"Immaterial"** matter is that which "has no essential or important relationship to the claim for relief or the defenses being pleaded," such as **superfluous historical allegations**, "or a statement of unnecessary particulars in connection with and descriptive of that which is material." **"Impertinent"** matter overlaps with "immaterial" matter and "consists of statements that do not pertain, and are not necessary, to the issues in question."

*Spoon v. Bayou Bridge Pipeline, LLC*, 335 F.R.D. 468, 470–71 (M.D. La. 2020) (**emphasis** added).

The Complaint contains 551 paragraphs of mostly historical discussions before the claims brought by Plaintiffs are discussed.

Paragraphs 41-68, titled "The Land Use System in St. James Parish Today Originated with Colonial Development of the Territory and Depended on a Brutal System of Slavery," are a purported historical recitation of the origins of St. James Parish. [Doc. 29, ¶¶ 41-68]. This section begins with the settlement of the lands by France and Spain as far back as 1682, the 1724 Code Noir applied by French colonists to the Louisiana territory, the "Black Code" that went into effect in 1806, the "severe physical punishments, pervasive sexual violence and exploitation" that took place on sugarcane plantations, the slave uprising of 1811, the Civil War, and the abolishment of slavery. [Doc. 29, ¶¶ 41, 42, 45, 49, 54, 55, 58-59, 67].

Paragraphs 69-170, titled "The Civil War Ended Formal Chattel Slavery and Only Momentarily Interrupted the Imbalance of Power and Control Over Land and Freedpeople," discuss the transition between pre-Civil War demographics, the unsuccessful Freedmen's Bureau, Louisiana's "Black Code" of "laws intended to subjugate and control freedpeople," the Military Reconstruction Acts of 1867, the White League, and segregation in the 1950s and 1960s. [Doc. 29, ¶¶ 69, 70-79, 87-88, 124-125, 92, 95-99, 112-117, 126-130, 132-37, 169].

Paragraphs 171-274, titled "1921 Constitution Continues Jim Crow Disenfranchisement of Black Voters and Vests Local Governments with Authority Over Land Use," starts with the Louisiana Constitutional Amendment of 1921, then discusses the various industrial operations that began in St. James Parish in the 1900s. [Doc. 29, ¶¶ 171, 188, 199, 203, 220, 249-50].

These allegations have no bearing on the constitutional claims Plaintiffs purport to allege arising out of St. James' unanimous adoption of the land use plan. The allegations are included for

the sake of sensationalizing this judicial proceeding and to prejudice St. James Parish by attempting to superimpose the atrocities of history onto unrelated modern actions of the duly elected St. James Parish government. Just a few of the many examples include the following:

- "As Inclusive Louisiana founding member Myrtle Felton told the Parish Council, 'We have suffered enough. We don't need anymore. The end result is death. All a Black neighborhood gets from a plant is death.'" [Doc. 29, ¶10].

- "'[I]t is painful to see a land use map that so clearly signals the disregard of *our* lives and communities …clearing the way for more industry, more pollution, and more harm,' wrote Sharon Lavigne, founder of Plaintiff Rise St. James, and Gail LaBoeuf, founding member of Plaintiff Inclusive Louisiana, in a 2019 letter to the St. James Parish Council requesting a moratorium on polluting industry." [Doc. 29, ¶11].

- "Inclusive Louisiana founding member LeBoeuf sees the protection of these unmarked cemeteries as necessary in order to 'allow us to heal.' . . . So, as Ms. LeBoeuf protested to the Parish Council: 'it is self-evident that all our ancestors live with and through us. These 'slaves' . . . should be given the respect and gratitude and debt that they never, ever received in life.'" [Doc. 29, ¶14].

- "In lamenting the legacies of violence, economic exploitation, and harm that slavery and its modern vestiges have imposed on his community, Pastor Joseph asked at a public hearing, 'Why does it always have to be us?' As he knows, it does not *have* to be. He and the other Plaintiffs come to court to claim the guarantee of full emancipation, political enfranchisement, and equality promised to them and their ancestors 150 years ago." [Doc. 29, ¶19].

- "Former plantation owners and enslavers in St. James Parish were clear and explicit in their efforts to reestablish "white supremacy" and political control and domination in the Parish

after the war –including through the exclusion of or restrictions on Black property ownership or wealth creation. As detailed below, their efforts were successful." [Doc. 29, ¶39].

The Complaint has 274 paragraphs of historic allegations, including allegations regarding industrial activities occurring decades before the Land Use Plan was even adopted. [*See e.g.*, Doc. 29, ¶¶181, 187, 199, 203, 214, and 219.] The Complaint also references a 2003 study that predates the Land Use Plan [doc. 29, ¶¶260 - 274] and does not show or prove that there was any discriminatory intent by St. James Parish. This "history" is irrelevant to the claims asserted. At a bare minimum, all allegations before Paragraph 275 should be stricken.

Beginning at Paragraph 275, the Complaint finally addresses the 2014 Land Use Plan **unanimously** adopted and implemented by the St. James Parish Council. Even thereafter, the Complaint continues to assert immaterial facts through its 551-paragraph recitation.

In all, this Complaint is an exhaustive review of historical wrongs which do not give rise to any causes of action. There is no fact pled which indicates that local officials were motivated by slavery or a discriminatory intent to adopt the Land Use Plan in 2014 or make any decision thereafter. The Federal Rules of Civil Procedure only allow those wrongs directly committed by the named defendant to be brought before this Court for adjudication and, even then, those claims are constricted as detailed below.

### 2. Plaintiffs sensationalize their claims with scandalous allegations.

"'Scandalous' in Rule 12(f) 'generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Florance v. Buchmeyer,* 500 F. Supp. 2d 618, 645 (N.D. Tex. 2007) (citing *Cobell v. Norton*, 224 F.R.D. 266, 280 (D.D.C.2004)). As a Louisiana court clarified:

Finally, "**scandalous**" matters improperly **casts a derogatory light on someone**, most typically on a party to the action, but "it is not enough that the matter offends

the sensibilities of the objecting party" or the person who is the subject of the statements in the pleading, "if the challenged allegations describe acts or events that are relevant to the action."

*Spoon*, 335 F.R.D. at 470–71 (**emphasis** added).

Plaintiffs go so far as to state that the 2014 Land Use Plan adopted by St. James Parish is "Racial Cleansing." [Doc. 29, ¶¶275, 286]. Also known as "ethnic cleansing," this term has been cited by the United Nations to describe "a purposeful policy designed by one ethnic or religious group to remove by violent and terror-inspiring means the civilian population of another ethnic or religious group from certain geographic areas" with coercive practices including "murder, torture, arbitrary arrest and detention, extrajudicial executions, rape and sexual assaults, severe physical injury to civilians, confinement of civilian population in ghetto areas, . . . among others."[1] The Complaint's use of this terminology, without any semblance of justification, "improperly casts a derogatory light" on St. James Parish.

Plaintiffs also assert numerous scandalous allegations which are not legally connected to their attempted causes of action. Examples include the following:

- "Sugarcane plantations across the River Parishes enforced especially brutal forms of labor upon enslaved persons, resulting in even higher mortality rates than in other states, including high mortality rates for children. And those enslaved people were not free in death just as they were not free in life." [Doc. 29, ¶12].

- "It is, too, a legacy of slavery and white supremacy in Louisiana and St. James Parish specifically to disregard the political voice of Black communities and discount the physical, psychological, and emotional trauma imposed upon them for the profit and benefit of white communities." [Doc. 29, ¶11].

---

[1] https://www.un.org/en/genocideprevention/ethnic-cleansing.shtml

4816588.v1

- "The most well-known facet of neo-slavery and social and political control in Louisiana was the generations-long effort to completely disenfranchise Black persons – until deemed unconstitutional in 1963. In addition, the land use system in St. James Parish is a parallel aspect of efforts to maintain a system of white supremacy." [Doc. 29, ¶38].

- "The delegates to the 1898 convention thus ushered in a form of apartheid long before that term emerged in South Africa and came to be understood as a crime against humanity." [Doc 29, ¶157].

- "Far worse, they revealed an intention to erase these historic Black communities from the map completely." [Doc 29, ¶274].

Defendants request that this Court strike Plaintiffs' immaterial, impertinent, and scandalous allegations which include nearly all of Paragraphs 1-551.

### A.   Plaintiffs' Complaint Fails to Plead Standing and Should be Dismissed Pursuant to Rule 12(b)(1) for a Lack of Subject Matter Jurisdiction.

"The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss, which is the proper method with which to bring a motion to dismiss for lack of standing." *Harrison v. Safeco Ins. Co. of Am.*, No. 06-4664, 2007 WL 1244268, at *3 (E.D. La. Jan. 26, 2007). When analyzing a motion to dismiss for want of standing, "the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

### 1.   Standing requires injury, causation, and redressability.

The Supreme Court has discussed the fundamental nature of standing as follows: "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Id.* at 498. "In both

dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Id.* The Supreme Court also noted: "This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* at 498–99.

As the Fifth Circuit has recognized, "[i]f a plaintiff lacks Article III standing, then a federal court lacks jurisdiction to hear the complaint." *Delta Com. Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 272 (5th Cir. 2004). To have Article III standing, a plaintiff must clearly allege that they have: (1) injury in fact—"a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical"—(2) causation—"a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant"—and (3) redressability—"a likelihood that the requested relief will redress the alleged injury." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 799 (5th Cir. 2012) (internal quotation marks omitted).

Here, Plaintiffs are asserting associational standing. "The Association, as the party invoking federal jurisdiction, bears the burden of establishing the three familiar elements of Article III standing: injury in fact, causation, and redressability." *Delta Com. Fisheries Ass'n*, 364 F.3d at 272 (citations omitted).

> ### 2. <u>Plaintiffs have not pled injury, causation, or redressability.</u>

Discussing the two types of associational standing, the Western District of Louisiana explained:

> An organization can assert standing in two ways. First, an organization can base its standing on the standing of its individual members ("representational standing").

> For representational standing, an organization must show that "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members." Second, an organization can base standing on an injury to that organization itself—such as incurring a non-litigation expense or curtailing its activities as a result of the challenged action ("organizational standing"). Organizational standing requires that an organization plaintiff establish the elements of Article III standing (injury, causation, and redressability) on its own.

*Hat v. Landry,* No. 6:20-CV-00983, 2021 WL 1823089, at *8 (W.D. La. May 5, 2021) (dismissing Rise St. James for lack of standing).

The United States Supreme Court decision in *Warth v. Seldin*, 422 U.S. 490 (1975) is instructive. In *Warth*, eight individuals and three associations sought to bring claims in federal court against a town and its zoning and planning board alleging violations of constitutional rights, including the fourteenth amendment, in violation of 42 U.S.C. §1982 and §1983. *Id.* at 493. The complaint alleged that the town's zoning ordinance had "the purpose and effect of excluding person of low and moderate income from residing in the town." *Id.* at 495. The plaintiffs asked the court to declare the "ordinance unconstitutional, to enjoin the defendants from enforcing the ordinance, and to order the defendants to enact and administer a new ordinance designed to alleviate the effects of their past actions." *Id.* at 496. The district court dismissed the lawsuit based on a lack of standing. *Id.* at 493.

In reviewing standing, the Supreme Court explained as to an association, "[t]here is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. Moreover, in attempting to secure relief from injury to itself the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties." *Id.* at 511. Important to an associational standing analysis, an organization can

11

"not establish their standing simply on the basis of that goal. Our decisions make clear that an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III. Insofar as these organizations seek standing based on their special interest . . . their complaint must fail." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 39–40 (1976) (citations omitted).

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth,* 422 U.S. at 511. Standing then "turns upon whether any individual respondent has established an actual injury, or whether the respondent organizations have established actual injury to any of their [] members." *Id.* "The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.*

Here, Plaintiffs are associations, not individuals. Hence, Plaintiffs must properly allege the elements of either organizational standing or representational standing. They have done neither.

Plaintiffs' alleged injuries can be summarized into three categories: 1) decreased property values, 2) health injury purportedly related to environmental emissions from industrial facilities, and 3) religious injury related to the inability to pray on other's property at purported slave cemeteries. These purported injuries belie Plaintiffs' theories of standing.

a.   **The purported decreased property values are not caused by or regulated by St. James Parish.**

Plaintiffs assert a decrease in property values as an alleged injury caused by adoption of a Land Use Plan. Plaintiffs allege "St. James Parish land use practices intentionally continue to deplete property values of Black residents while protecting that of white residents." [Doc. 29, ¶ 15]. Without specifics, Plaintiffs alleged "[]the discriminatory land use system has also resulted in

diminution in the value of property owned by Plaintiffs, their members and congregants, . . . and by other Black residents, churches, and associations in the 4th and 5th Districts of St. James Parish," and "places limitations on the ability of some members of Plaintiff Inclusive Louisiana residing in the 4th District to sell, hold, and convey their property . . ." [Doc. 29, ¶ 559, 580].

To establish standing, "Plaintiffs' alleged injury must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' 'Allegations of possible future injury' will not suffice." *Louisiana by & through Landry v. Biden*, 64 F.4th 674, 680–81 (5th Cir. 2023) (citations omitted). A "concrete" injury is "real, and not abstract" and a "particularized" injury "affect[s] the plaintiff in a personal and individual way." *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 935, n. 3, 4 (5th Cir. 2022) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016), as revised (May 24, 2016)).

The *Warth* decision is instructive on the injury analysis. The Supreme Court clarified that, "the fact that these petitioners share attributes common to persons who may have been excluded from residence in the town is an insufficient predicate for the conclusion that petitioners themselves have been excluded, or that the respondents' assertedly illegal actions have violated their rights." *Warth*, 422 U.S. at 502. "Instead, petitioners claim that respondents' enforcement of the ordinance against third parties—developers, builders, and the like—has had the consequence of precluding the construction of housing suitable to their needs at prices they might be able to afford." *Id.* at 504. Importantly, Plaintiffs "must allege and show that **they personally have been injured**, **not that injury has been suffered by other, unidentified members** of the class to which they belong and which they purport to represent." *Id.* at 502 (**emphasis** added).

13

Inclusive Louisiana and Rise St. James do not allege ownership of property in District 4 or 5 of St. James Parish. They, therefore, lack organizational standing and must prove representational standing.

Mount Triumph Baptist Church and Plaintiffs' individual members' alleged property value claims have not been pled with any specificity. To establish injury, facts must be alleged "from which it reasonably could be inferred that, absent the respondents' restrictive zoning practices, there is a substantial probability that they would have been able to" sell their property at higher values and "that, if the court affords the relief requested, the asserted inability of petitioners will be removed." *Id.* at 504. No such allegations are present. The Complaint alleges diminution of property values in broad strokes and alleges generalized harm to unidentified persons.

Even where Plaintiffs could plead individual decreases in property values of its members, "the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Warth*, 422 U.S. at 515–16. As such, Plaintiffs' alleged injuries require participation of individual members and cannot support representational standing.

Here, Plaintiffs have not pled a connection between the alleged bad acts and the purported injury to support causation. As discussed in *Warth,* "there remains the question whether petitioners' inability to locate suitable housing in Penfield reasonably can be said to have resulted, in any concretely demonstrable way, from respondents' alleged constitutional and statutory infractions." *Id.* at 503. "In short, the facts alleged fail to support an actionable causal relationship between Penfield's zoning practices and petitioners' asserted injury." *Id.* at 506–07. Plaintiffs have

not alleged a causal connection between the adoption and application of a Land Use Plan and a decrease in property values.

Redressability is also not present. In *Warth,* the Supreme Court found that the plaintiffs were not able to demonstrates that, "unless relief from assertedly illegal actions was forthcoming, their immediate and personal interests would be harmed." *Id.* at 507. Resonating strongly for the present issues, the Supreme Court declared: "We hold only that a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention. Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of 'a real need to exercise the power of judicial review' or that relief can be framed 'no (broader) than required by the precise facts to which the court's ruling would be applied.'" *Id.* at 508.

Here, the "inability" of Plaintiffs or its members to maintain property values will not be "removed" if the 2014 Land Use Plan is invalidated. As detailed in the Complaint, in the 93 years prior to the Land Use Plan, private owners sold their large plots of land to private companies which then built the industrial facilities Plaintiffs claim are causing them harm.  [Doc. 29, ¶ 180, 267, 275].  Thus, to the extent property values were reduced by industrial development, such reduction began well prior to the adoption of the 2014 Land Use Plan.

Further, the invalidation of the Land Use Plan does not guarantee the lack of future industrial construction and does nothing to "redress" the alleged diminution in property value. The lack of a formal Land Use Plan does not prevent industrial construction or private companies from seeking land use permits; rather, they would do so under less formalized rules and procedures.

**b.**     **The purported health impacts are not caused by or regulated by St. James Parish.**

Plaintiffs are organizations. They do not have "health" and cannot assert this injury. Thus, each Plaintiff can only assert representational standing by alleging "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth*, 422 U.S. at 511. "[T]he 'case or controversy' limitation of Art. III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon*, 426 U.S. at 41–42. Plaintiffs failed to make this showing that the Land Use Plan adopted by St. James Parish is the cause of an injury to its members that can be redressed by this Court.

Defendant need not address whether the environmental emissions specifically discussed by Plaintiffs [doc. 29, ¶¶ 442-460] cause actual health concerns because St. James Parish is not an environmental regulatory authority or health authority. It does not establish, set, or enforce emission levels in the environmental permits issued by the Louisiana Department of Environmental Quality (LDEQ).[2] In fact, the Complaint acknowledges that the authority for emissions does not originate from St. James Parish, stating Mosaic "is permitted by **federal and state agencies** to emit more than 790 tons of criteria pollutants and more than 700 tons of toxic air pollutants annually." [Doc. 29, ¶197].

Instead, the alleged emissions are permitted by LDEQ and created and caused by third party property owners, not St. James Parish. St. James Parish does not produce environmental emissions. Only when the private project receives an air quality permit from the LDEQ can that

---

[2] The LDEQ "shall have jurisdiction over … the regulation of air quality." La. R.S. 30:2011(A)(1). LDEQ is empowered to "grant or deny permits." La. R.S. 30:2011(D)(2); see also, La. R.S. 30:2054(B)(2).

private owner create, cause, and/or produce environmental emissions. Any issue with the quantity, quality, or content of those emissions is regulated by the LDEQ.

In regard to the alleged health injury, the "challenged action" is the decision of St. James Parish to adopt a Land Use Plan in 2014 and its implementation. However, the actions that Plaintiffs describe as purportedly causing health issues for its members are environmental emissions from industrial facilities. [*See, e.g.,* Doc. 29, ¶¶ 200, 204, 250].

The Complaint pleads that emissions began in the 1950s and 1960s and were largely unregulated before 1984. [Doc. 29, ¶205]. These health impacts are alleged to have "become glaring and undeniable" by the 1980s [doc. 29, ¶206], and, thus, are completely unrelated to the Land Use Plan. Additionally, there are several allegations in the Complaint that discuss future or potential harm, such as harm from the Formosa facility which *has not been built*. [*See* Doc. 29, ¶¶7, 403, 404]. There is an utter lack of causal connection between the Land Use Plan and Plaintiffs' members' alleged health issues. Plaintiffs must plead facts to show that St. James Parish's consideration of a zoning request is causing its members to suffer immediate or threatened health injury. Such facts have not been, and cannot be, pled.

Plaintiffs also fail to plead redressability. An invalidation of the Land Use Plan would not redress the complaint about health impacts. For harm already sustained, a change in zoning ordinance has no impact on a person's health. For future harms, the alleged future injury is not present or actionable. Without causation and redressability, Plaintiffs have not alleged claims of their members that would allow them associational standing.

> **c.**      <u>**The purported religious injuries are not caused or regulated by St. James Parish.**</u>

Plaintiffs also allege that "the land use policies threaten innumerable cemeteries of formerly enslaved persons" and "construction of facilities the Parish has already allowed will

potentially desecrate cemeteries with deep spiritual significance to descendants, . . ." [Doc. 29, ¶¶ 12, 14]. In essence, Plaintiffs claim their religious worship has been limited by their inability to access purported unmarked remains on private property.

Plaintiffs, as associations, have no religion and must prove representational standing through members. As to Inclusive Louisiana and Rise St. James, it is questionable whether these associations can pursue religious injury. Certainly, their members' specific religions are not related to their "associational ties" such that these entities can seek to enforce religious rights. Also, Plaintiffs amended their Complaint to add in allegations such as Inclusive Louisiana is a non-profit "with deep belief in the Christian faith," and RISE St. James "begins and ends each of its meetings with prayer." [Doc. 29, ¶ 23, 25]. These additional allegations are insufficient to show that a failure to access alleged burial sites on private property is creating an injury in-fact to these associations. Rather, it is clear that RISE St. James has not been prevented from carrying out its worship activities, as it held "an All Saints' Day celebration at the Buena Vista site" in 2020. [Doc. 29, ¶ 534].

Regardless, all three Plaintiffs failed to allege an immediate harm or injury to their members that is *caused* by a challenged action *of St. James Parish.* Plaintiffs' attempt to cast blame without regard to temporal or logical connexity fails here.

As pled in the Complaint, the purported unmarked remains and slave burial sites are alleged to be located on former plantations. These plantations were owned by private parties and, throughout the centuries, have been sold from private party to private party. It is not alleged that St. James Parish owns any of the property on which Plaintiffs allege a burial site may exist. Rather, it is alleged that St. James Parish is allowing those private property owners to utilize their property

in a manner that *may* impact unmarked remains. As before, St. James Parish does not authorize, regulate, or permit the use of land containing cemeteries.[3]

St. James Parish's zoning of privately owned land is not directly the cause of any person's inability to access a cemetery. Even without a permit for industrial construction, it is the private ownership of that land that makes access to any purported cemetery difficult (as it would be considered trespassing). *See* La. R.S. § 8:681 ("Any agreement by the owner of the property to leave the unmarked burial site undisturbed shall not constitute consent on the owner's part to allow relatives of the deceased or any other interested parties free access to the site without the owner's permission."). Thus, there is neither causation nor redressability, and Plaintiffs lack representational standing.

**B.**   **Plaintiffs' Complaint Fails to State Claims and Should be Dismissed Pursuant to Rule 12(b)(6).**

**1.**   **St. James Parish Council and St. James Parish Planning Commission lack procedural capacity to be sued.**

This Court has previously explained the consideration of a lack of procedural capacity argument on a Rule 12 motion as follows:

> Rule 12(b) does not specifically authorize a motion to dismiss based on a lack of capacity to be sued. However, "[f]ederal courts … traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules or by statutes" including motions raising a lack of capacity to sue or be sued. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (3d ed. 2004). Furthermore, "[t]he Fifth Circuit has implicitly approved 12(b) motions arguing the lack of capacity to be sued." *Angers ex rel. Angers v. Lafayette Consol. Gov't*, 07-0949, 2007 WL 2908805, at \*1 (W.D. La. Oct. 3, 2007).

---

[3] The Division of Archaeology is responsible for protecting and preserving abandoned cemeteries, unmarked graves, and human remains under the Unmarked Human Burial Sites Preservation Act (La. R.S. 8:671-681) and the Louisiana Historic Cemetery Preservation Act (La. R.S. 25:931-943). *See also* https://www.crt.state.la.us/cultural-development/archaeology/CRM/cemeteries-burials/index

4816588.v1

*Port Marigny, LLC v. City of Mandeville*, No. CV 17-4727, 2018 WL 1757385, at *3 (E.D. La. Apr. 12, 2018).

The Federal Rules of Civil Procedure direct that the capacity of an entity which is neither an individual nor a corporation to be sued in federal court is determined by state law. Fed. R. Civ. P. 17(b)(3). Under Louisiana law, "[t]here are two kinds of persons: natural persons and juridical persons. A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership." La. C. C. Art. 24. A governmental entity is an independent juridical entity when "the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity." *Edmiston v. Louisiana Small Bus. Dev. Ctr.*, 931 F.3d 403, 407 (5th Cir. 2019). In *Roberts v. Sewerage and Water Board*, 634 So. 2d 341 (La. 1994), the Louisiana Supreme Court set forth the framework within which to determine whether an entity is a juridical person.

> [T]he determination that must be made in each case is whether the entity can appropriately be regarded as an additional or separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.

634 So.2d 341, 346-47 (La. 1994).

Here, the St. James Parish Council and the St. James Parish Planning and Zoning Commission are mere branches and divisions of St. James Parish. They are not separate independent legal entities with the capacity to sue or be sued.

This Court's reasoning in *Dotey v. Tangipahoa Par. Council*, No. CV 05-4018, 2006 WL 8456326, at *2 (E.D. La. Apr. 17, 2006), is directly appliable here. In *Dotey,* Tangipahoa Parish Council contended it was not a juridical person with the capacity to be sued. The Parish Council argued that it is one branch of the Parish government, and that the proper defendant was the Parish

of Tangipahoa, not one branch of government. The Parish of Tangipahoa is a political subdivision of the State of Louisiana that operates under a Home Rule Charter, pursuant to Article VI § 5 of the Louisiana Constitution. The Tangipahoa Home Rule Charter provides for a "council-president" form of government. The Parish Council constitutes the legislative branch of government, and an elected president is the chief executive officer and the head of the executive branch. *Id.*

The *Dotey* Court relied upon *City Council of Lafayette v. Bowen*, 649 So.2d 611, 616 (La. Ct. App. 1994), where Louisiana's Third Circuit Court of Appeal found that the City Council of Lafayette, which was organized under a home rule charter, had no capacity to sue or be sued. The Court of Appeal concluded that the City Council is "a branch or part of the greater corporate body politic or juridical entity, the City of Lafayette," and may "only exercise its powers as an agency or division of the greater city government." *Bowen*, 649 So.2d at 616. As in *Bowen*, this Court found in *Dotey* that there is no authority that confers juridical personality on the Tangipahoa Parish Council because the Parish Council is not capable of being sued under state law. Thus, the claims against the Parish Council were dismissed. *Dotey*, 2006 WL 8456326 at *2.

The governmental structure in St. James is identical to Tangipahoa. The St. James Parish Home Rule Charter provides that the Parish Council is "vested with…all legislative power in the Parish of St. James" and "the chief executive officer shall be the parish president who shall be elected . . ." *See* St. James Home Rule Charter, Article III, Sec. A(1) and Sec. B(1), respectively.[4] The St. James Home Rule Charter does not vest the Parish Council or the Planning Commission with the express authority to sue or be sued. As such, all claims against "St. James Parish Council" and "St. James Planning Commission" should be dismissed.

---

[4] A copy of the Home Rule Charter can be accessed at:
https://library.municode.com/la/st._james_parish_council/codes/code_of_ordinances?nodeId=PTIHORUCH

4816588.v1

2. **Plaintiffs failed to exhaust administrative remedies and collaterally attack the zoning decisions of St. James Parish.**

Plaintiffs attempt to collaterally attack permit decisions. These attacks are foreclosed by Plaintiffs' failure to seek judicial review of these decisions within the appropriate time frames.

"Zoning is a legislative function. The authority to enact zoning regulations flows from the police power of the various governmental bodies." *Palermo Land Co. v. Plan. Comm'n of Calcasieu Par.*, 561 So. 2d 482, 491 (La. 1990). The Louisiana Supreme Court elaborated, stating:

> The differing needs of each parish, according to its size, population, level of industrial and commercial development, and the rapidity of growth of such development, will naturally result in different planning and zoning regulations in each parish. The need for change through rezoning or reclassification will depend on the same factors, thus rezoning decisions are properly left to those officials who are most familiar with the needs of each community.

*Id.* at 492. "The presumption of validity attached to zoning ordinances is a well established principle of law in Louisiana." *Id.* at 491.

"Challenges to zoning determinations are first subject to the review by local zoning boards." *E. New Orleans Neighborhood Advisory Comm'n v. Levy Gardens Partners 2008, LLC*, 2009-0326 (La. App. 4 Cir. 7/15/09), 20 So. 3d 1131, 1137. As the Louisiana Supreme Court explained, "It is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot—not the courts." *Palermo Land Co*, 561 So. 2d at 491 (citing *State ex rel. Civello v. City of New Orleans*, 154 La. 271, 97 So. 440 (La. 1923)). "Judicial review of zoning decisions acts merely as a check on this legislative power granted to parish officials to ensure that there is no abuse of the power. Courts will not and cannot substitute their judgment for that of the legislative authority." *Id.* at 492.

Specific to the St. James Parish Land Use Plan, this Court has previously declined to review specific permitting decisions (which invoke state law), noting "[m]atters such as land use are of local concern and are best left to the province of the states to decide." *Petroplex Int'l v. St. James Par.*, 158 F. Supp. 3d 537, 544 (E.D. La. 2016) (dismissing plaintiffs' state law challenges to St. James Parish Land Use Plan).

Here, Plaintiffs attempt to collaterally attack permitting decisions made by St. James Parish.  Plaintiffs ask this Court to usurp the authority of St. James Parish and "[i]ssue a judgment declaring the land use approvals granted to Formosa and South Louisiana Methanol invalid." [Doc. 29, p. 147]. South Louisiana Methanol's land use permit was approved on April 23, 2014, and Formosa's permit was approved on January 24, 2019. [Doc. 29, ¶ 355, 397]. The Land Use Plan was amended in February 2018 and included a requirement that judicial review of a decision under the Land Use Plan must be brought within 30 days of the decision. *See* St. James Parish Ordinance No. 82-25, as amended by Ordinance 17-21.[5] Thus, Plaintiffs' opportunity to judicially challenge the permits noted in the Complaint has long since passed.

Also, Plaintiffs mention permits issued to Bayou Bridge Pipeline, LLC (permit granted August 23, 2017), Yuhuang Chemical Industries Inc. Methanol (permit granted March 25, 2015), Ergon St. James, Inc. (permit approved August 8, 2018), and Syngas Energy Holding, LLC (permit approved March 25, 2019). [Doc. 29, ¶¶ 364, 410, 417, 419]. Attempts to invalidate these land use permits are inappropriate due to the failure to timely address them under judicial review procedures. As such, this Court should dismiss any request for relief related to these permits.

### 3.    Claim I: Thirteenth Amendment

The Thirteenth Amendment to the United States Constitution states:

---

[5] See https://library.municode.com/la/st._james_parish_council/ordinances/code_of_ordinances?nodeId=881278.

4816588.v1

> **Section 1.** Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
> **Section 2.** Congress shall have power to enforce this article by appropriate legislation.

U.S. Const. amend. XIII. "The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (citations omitted).

In 1883, the Supreme Court interpreted the Thirteenth Amendment by stating: "it is assumed that the power vested in Congress to enforce the article by appropriate legislation [Section 2], clothes Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States. . ." *Civil Rights* (*C.R.*) *Cases*, 109 U.S. 3, 20 (1883). Plaintiffs' Thirteenth Amendment claims have not pled any deprivation of rights that is a "badge or incident of slavery."[6]

### a.    Plaintiffs' 42 U.S.C. § 1983 claims are prescribed.

Plaintiffs bring their Thirteenth Amendment claims pursuant to 42 U.S.C 1983. [Doc. 29, ¶15]. Congress failed to provide a specific statute of limitations to govern § 1983 actions. *Owens v. Okure*, 488 U.S. 235, 239 (1989). As such, the Supreme Court, in interpreting the provisions of 42 U.S.C. 1988, stated that the analogous state statute of limitations should be applied to § 1983 claims. *Id.* at 240 (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). The Supreme Court in *Owens* confirmed that "courts considering § 1983 claims should borrow the general or residual statute for

---

[6] Plaintiffs cite no applicable statute passed by Congress pursuant to Section 2.

4816588.v1

personal injury actions." *Id.* at 250. The Fifth Circuit has consistently applied a state's general personal injury statute of limitations to § 1983 claims. *See, e.g. Allen v. Hays*, 65 F.4th 736, 751 (5th Cir. 2023). "Louisiana's relevant limitations period is one year." *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021).

Here, Plaintiffs' claims are prescribed. All actions of the Parish are public record and published soon after their occurrence. The Land Use Plan was publicly adopted in 2014 [doc. 29, ¶275], and amended in 2018 [doc. 29, ¶300]. The numerous permitting decisions discussed in the Complaint also occurred well outside of the prescriptive period. The most recent permit actions mentioned occurred no later than 2019. [Doc. 29, ¶275]. The Complaint was filed March 21, 2023. Thus, any action under §1983 or the Thirteenth Amendment has prescribed.

### b.    Plaintiffs failed to plead facts of a badge or incident of slavery.

In 1883, the Supreme Court described the incidents of slavery as "[c]ompulsory service of the slave for the benefit of the master, restraint of his movements except by the master's will, disability to hold property, to make contracts, to have a standing in court, to be a witness against a white person, and such like burdens and incapacities were the inseparable incidents of the institution." *C.R. Cases*, 109 U.S. 3, 22 (1883). The Supreme Court continued by making the point that many wrongs that might violate an individual's right to equal protection under the Fourteenth Amendment were not wrongs actionable under the Thirteenth Amendment as "badges and incidents of slavery" "when not involving the idea of any **subjection of one man to another**." *Id.* at 24. The Supreme Court demonstrated its point by declaring that the unequal treatment of Blacks, through the denial based on race of an accommodation or privilege to use an inn, public

4816588.v1

conveyance, or theater, "has nothing to do with slavery or involuntary servitude." *Id.* at 24.[7] "It would be running the slavery argument into the ground to make it apply to every act of discrimination . . ." *Id.* "[C]ourts routinely reject Thirteenth Amendment claims that do not involve forced or coerced labor." *Guesby v. Bert Nash Cmty. Mental Health Ctr., Inc*., No. 22-2370-DDC-TJJ, 2023 WL 3040454, at *2 (D. Kan. Apr. 21, 2023).

"[T]he theme of the debates surrounding this statute is that the former slaves continued to be subject to direct, intentional abuses at the hands of their former masters. That was the problem Congress intended to address and that focus should determine the reach and scope of this statute." *City of Memphis v. Greene*, 451 U.S. 100, 134 (1981) (White, J., concurring).

A facially neutral zoning ordinance, even one that might disparately impact minorities, is not a "badge or incident of slavery" subject to protections under the Thirteenth Amendment. In *Palmer v. Thompson,* the Supreme Court rejected the notion that a city council decision to close a public pool was a "badge or incident" of slavery as a violation of the Thirteenth Amendment, finding to hold such "would severely stretch its simple words and do violence to its history." *Palmer v. Thompson*, 403 U.S. 217 (1971). Importantly, the Supreme Court stated: "[e]stablishing this Court's authority under the Thirteenth Amendment to declare new laws to govern the thousands of towns and cities of the country would grant it a law-making power far beyond the imagination of the amendment's authors." *Id.* at 226–27.

The Supreme Court clarified "a regulation's adverse impact on a particular neighborhood will often have a disparate effect on an identifiable ethnic or racial group. To regard an inevitable

---

[7] The Court confirmed such a wrong would properly be addressed through present state laws or, if sanctioned by state law, through the Fourteenth Amendment, but not the Thirteenth Amendment. *See C.R. Cases*, 109 U.S. at 24 (1883).

consequence of that kind as a form of stigma so severe as to violate the Thirteenth Amendment would trivialize the great purpose of that charter of freedom." *City of Memphis*, 451 U.S. at 128.

Here, the passing of a zoning ordinance and its implications that may have an adverse impact on specific districts is a "routine burden of citizenship" and not a violation of the Thirteenth Amendment. *See id*. at 128. The Land Use Plan cannot be said to implement compulsory labor for the benefit of a master, to restrain movements, or "such like burdens and incapacities [which] were the inseparable incidents of the institution [of slavery]." *C.R. Cases*, 109 U.S. at 22 (1883). The Land Use Plan does not involve the "**subjection of one man to another**."

Plaintiffs attempt to draw a connection between slavery and the 2014 Land Use Plan since "plantations that once existed in the Parish had been sold for development and were home to heavy industry." [Doc. 29, ¶ 267]. Yet, the sales of large tracts of land to industry were done by private parties, *not St. James Parish*. At a minimum, this severs any potential causal chain between the Land Use Plan and the geographic composition that arose in St. James Parish after the end of slavery. No part of the Land Use Plan or parish permitting decisions is akin to the involuntary servitude prohibited by the Thirteenth Amendment. Plaintiffs' utilization of the Thirteenth Amendment here "would severely stretch its simple words and do violence to its history."

### 4.    Claim II/III: Fourteenth Amendment

In pertinent part, the Fourteenth Amendment states:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

* * *

27                                                        4816588.v1

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV. As with the Thirteenth Amendment, the provisions of the Fourteenth Amendment must be enforced through enacting legislation. "[T]he Fourteenth Amendment does not create a private right of action; instead, '§ 1983 provides a cause of action for all citizens injured by an abridgement of th[e] protections' set forth in 'the Equal Protection and Due Process Clauses of the Fourteenth Amendment.'" *Brent v. Wayne Cnty. Dep't of Hum. Servs*., 901 F.3d 656, 683 (6th Cir. 2018) (citations omitted).

Plaintiffs bring their Fourteenth Amendment claims pursuant to 42 U.S.C 1983. [Doc. 29, ¶15]. As such, the question is whether the adoption of the Land Use Plan is a state action that denies "the equal protection of the laws" to Blacks. *See Palmer v. Thompson*, 403 U.S. at 220.

### a.   Plaintiffs' Fourteenth Amendment claims are prescribed.

For the same reasons as outlined for the Thirteenth Amendment claims, any action or allegation which Plaintiffs seek to redress under the Fourteenth Amendment or § 1983, which predate March 21, 2022, are prescribed and should be dismissed, with prejudice.

### b.   Claim II (Equal Protection): Plaintiffs failed to plead facts of discriminatory intent.

The Fourteenth Amendment has been interpreted by the Supreme Court as "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432 (1985). "State actors may create classifications facially, when such categorization appears in the language of legislation or regulation, . . . or *de facto*, through the enforcement of a facially neutral law in a manner so as to disparately impact a discernible group." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *McGinnis v. Royster*, 410 U.S. 263, 270 (1973)). "The Supreme Court has instructed us time and again, however, that **disparate impact**

**alone cannot suffice to state an Equal Protection violation**; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Id.* (**emphasis** added). Rather, "**a party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury**." *Id.* (citations omitted) (**emphasis** added).

A racially motivated discriminatory intent is a necessity for an equal protection claim. "[T]he absence of proof of discriminatory intent forecloses any claim that the official action challenged in this case violates the Equal Protection Clause of the Fourteenth Amendment." *City of Memphis,* 451 U.S. at 119 (citing *Washington v. Davis*, 426 U.S. 229 (1976); *Arlington Heights*, 429 U.S. 252 (1977)). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992).

When a zoning decision is challenged as violating the Fourteenth Amendment, it is the trial court's function to "examine the purpose underlying the decision." *Arlington Heights*, 429 U.S. at 268. Even where a zoning decision "does arguably bear more heavily on racial minorities," or has a "discriminatory 'ultimate effect,'" a constitutional violation is not present unless the "sequence of events leading up to the decision" are indicative of a discriminatory motive. *Id*. at 269, 271. A discriminatory purpose requires a showing of far more than an "awareness of consequences." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). Without the presence of a discriminatory purpose behind a zoning decision, no constitutional violation is present. *See Arlington Heights*, 429 U.S. at 269, 270.

4816588.v1

Here, the Complaint fails to provide any factual allegations that St. James Parish's unanimous adoption of the Land Use Plan was motivated by a discriminatory intent. Representatives from every district, including Districts 4 and 5, were represented in the unanimous adoption. [Doc. 29, ¶ 275, n. 192]. The Complaint discusses historical events leading up to the 2014 decision that do not allege a discriminatory intent of the Parish, its planning commission, or parish council when the Land Use Plan was adopted. Indeed, the Complaint makes it clear that St. James Parish operated for 93 years "without a zoning ordinance or land use plan" and that land use rules were enacted over concerns related to control of private property, not any type of discriminatory intent. [Doc. 29, ¶¶ 266, 275].

The Complaint contains numerous factual assertions that, if proven true, could show only a possible disparate impact on Blacks (which is denied). Importantly, however, the Complaint lacks factual assertions regarding any action or statement by the Parish that establishes the Land Use Plan was adopted for the purpose of impacting Black residents or based on discriminatory intent. Even if Plaintiff proves all the facts in the Complaint, there is no evidence that the elected officials who adopted the Land Use Plan were motivated, even in part, by a discriminatory intent. At best, the Complaint alleges historic unrelated discriminatory actions and then seeks to impute past actions to current decisions made by duly elected officials without alleging that any discriminatory intent guided those current and specific decisions.

The Complaint contains only sweeping, unsupported conclusions of discrimination which are properly disregarded by this Court on a Rule 12(b)(6) motion. [*See* Doc. 29, ¶¶ 15, 567]. Lacking any factual allegations of a discriminatory intent on the part of the Parish, the Complaint does not plead a claim under the Fourteenth Amendment.

      **c.**    **Claim II (Equal Protection): Plaintiffs failed to plead facts of a lack of equal treatment.**

Where a "[p]laintiff's property has not been treated differently from other similarly situated properties in its zoning classification," no violation of the Fourteenth Amendment is present. *See Wheelahan v. City of New Orleans*, No. CV 19-11720, 2020 WL 1503560, at \*16 (E.D. La. Mar. 30, 2020) (finding plaintiff had not pled a Fourteenth Amendment Equal Protection claim). Even an allegation that a zoning ordinance impacts an individual plaintiff's ability to utilize their property does not support a Fourteenth Amendment Equal Protection claim if there is no allegation that a similarly situated property owner was treated differently. *Id.* at \*19.

The Land Use Plan treats all residents within a zoning classification equally, without any consideration of race or other factors. For example, residents of District 4 are not treated differently based on race. The Complaint lacks any allegation that the Land Use Plan does not treat all property owners within the same zoning classification equally or that the Parish has treated Black property owners differently than white property owners within the same zoning classification. As a result, Plaintiffs have not pled a basis for an equal protection violation.

      **d.**    **Claim III Substantive Due Process (Bodily Safety and Integrity): Plaintiffs failed to plead facts of a lack of rational objective.**

"There are two types of due process protections: substantive and procedural." *Monumental Task Comm., Inc. v. Foxx*, No. 16-12495, 2016 WL 5780194, at \*4 (E.D. La. Oct. 4, 2016). Plaintiffs purport to put forth a substantive due process claim.

"Substantive due process bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them." *Id.* (citations omitted). To "establish a substantive due process violation, a plaintiff must first show the existence of a constitutionally protected right to which the Fourteenth Amendment's due process protection applies." *Id.* "If there

is no denial of life, liberty, or property, then the government is not required to provide due process." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 594 (E.D. La. 2016).

However, assuming a denial of a constitutionally protected right is established, the question becomes "whether a rational relationship exists between the [policy] and a *conceivable* legitimate governmental objective.'" *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174–75 (5th Cir. 1996) (citations omitted) (emphasis in original). "If the question is at least debatable, there is no substantive due process violation." *Id.* at 175. "A plaintiff's substantive due process challenge to a local ordinance may be dismissed on a Rule 12(b)(6) motion if the ordinance is rationally related to a legitimate government interest." *Monumental Task Comm., Inc.,* 2016 WL 5780194, at *4. "Only an abuse of power that 'shocks the conscience' is actionable through a substantive due process claim." *Nobles Const., L.L.C. v. Par. of Washington*, No. CIV.A. 11-2616, 2012 WL 1865711, at *5 (E.D. La. May 22, 2012), aff'd sub nom. *Nobles Const., L.L.C. v. Washington Par.*, 544 F. App'x 263 (5th Cir. 2013) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002)) (dismissing substantive due process claim on 12(b)(6) motion to dismiss where plaintiff failed to demonstrate conduct was sufficiently egregious to rise to the level of shocking the conscience)).

A defendant need not prove or establish the rational relationship between the challenged policy and a government objective as "the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis." *FM Properties Operating Co.,* 93 F.3d at 174. Rather, if an objective reviewer finds a "*conceivable* legitimate governmental objective," no substantive due process claim exists. *Id.* at 175 (finding city council policy to enforce building quality and safety standards had legitimate governmental objective).

This Court has already held that St. James Parish's Land Use Plan was based on a rational objective. Upon prior review of St. James Parish' Land Use Plan, this Court found: "The Land Use Ordinance provides that it was enacted to guide the future development of St. James Parish," citing the March 5, 2014 resolution adopting the Land Use Plan. *Petroplex Int'l v. St. James Par.,* 158 F. Supp. 3d 537, 542 (E.D. La. 2016). This Court concluded that "the Council based its decision on the findings outlined in the draft comprehensive plan generated by the planning commission. Though Plaintiffs may disagree with Defendants' response to the facts outlined in the comprehensive plan, **the Court cannot find that this response was devoid of any conceivable rational basis**." *Id.* As such, in *Petroplex* the federal substantive due process claim against St. James was dismissed with prejudice. *Id.* at 543. The same result is compelled here.

### 5.     Claim IV: 42 U.S.C. § 1982 - Property Rights of Black Citizens

42 U.S.C. § 1982 states: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." The property rights protected under 42 U.S.C. § 1982 "concern[] the right of black persons to hold and acquire property on an equal basis with white persons and the right of blacks not to have property interests impaired because of their race." *City of Memphis*, 451 U.S. at 122.

### a.     Plaintiffs' 42 U.S.C. § 1982 claims are prescribed.

Because 42 U.S.C. § 1982 does not have an independent prescriptive period, Louisiana's one-year prescriptive period for damage to immovable property is applicable. As such, Plaintiffs claims predating March 21, 2022 are prescribed.

The Supreme Court has found that since there is no relevant federal statute of limitations under 42 U.S.C. § 1982, federal courts must apply the statute of limitations that would ordinarily

be the most appropriate one provided by state law. *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454 (1975). The Fifth Circuit utilizes this same analysis regarding the prescriptive periods applicable to a claim brought under 42 U.S.C. § 1982. *See Pennick v. City of Florala,* 529 F.2d 1242 (5th Cir. 1976). Thus, the prescriptive period applicable to state law claims for property damage in Louisiana are applicable. Louisiana Civil Code Article 3493 implements a one-year prescriptive period for damage to an immovable.

As addressed in earlier sections, any claim under 42 U.S.C. § 1982 regarding the Land Use Plan itself prescribed on April 2, 2015 and May 3, 2019, respectively. Further, any allegations regarding individual land use approvals or occurrences prior to March 21, 2022 (one year before the March 21, 2023 Complaint) are also prescribed.

### b.    <u>Plaintiffs failed to plead facts of a property injury.</u>

Plaintiffs have not pled specific facts regarding a decrease in property value to show standing or state a cause of action under 42 U.S.C. §1982.

The Supreme Court recognized that government acts that depreciate the value of property that is owned by black citizens can violate 42 U.S.C. §1982. *See City of Memphis v. Greene*, 451 U.S. at 101. However, where the claims do not establish an effect on the property value, no valid claim is present. *Id.* (reinstating district court's dismissal of claims on motion to dismiss).

Plaintiffs allege decreased property values based on a Land Use Plan adopted by St. James Parish in 2014 which they claim is lowering the property values for Black residents. Plaintiffs' allegations are not particularized to identify a specific decreased property value. The allegations regarding a decrease in property value need to establish a specific action of St. James Parish that is directed at Plaintiffs. As detailed in the foregoing sections, specific allegations are not present.

4816588.v1

  c.  **Plaintiffs failed to plead facts of any intentional discrimination.**

  A 42 U.S.C. §1982 claim requires that the defendant act with a discriminatory intent directed at the plaintiffs on account of their race. A plaintiff's complaint "must allege with specificity facts sufficient to show or raise a plausible inference of 1) the defendant's racial animus, 2) intentional discrimination, and 3) that the defendant deprived plaintiff of their rights because of race." *Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631 (E.D. La. 2006) (citing *Brown v. Philip Morris Inc.,* 250 F.3d 789 (3d Cir. 2001)). As the Supreme Court confirmed in *City of Memphis,* a municipal regulation that has an "adverse impact on a particular neighborhood will often have a disparate effect on an identifiable ethnic or racial group." 451 U.S. at 128. This alone is not indicative of a discriminatory intent or racial animus. *Id.* Where the allegations establish "no racially discriminatory motive on the part of the City Council" for the challenged decision, an actionable claim is not present. *Id*. at 126.

  Plaintiffs failed to allege any facts that are indicative of a discriminatory *intent on the part of* St. James Parish in adopting the 2014 Land Use Plan. The Complaint provides only baseless conclusions without supporting factual allegations. At best, the Complaint suggests an adverse impact on Black residents in Districts 4 and 5 (which is denied) but does not establish or allege a "racially discriminatory motive on the part of the [Parish] Council." Plaintiffs' historical recitation of racial discrimination in Louisiana and in St. James Parish is insufficient to state a § 1982 claim and it should be dismissed.

  6.  **Claim V (Substantial Burden)/VI (Discrimination): Religious Land Use and Institutionalize Persons Act**

  The Religious Land Use and Institutionalization Persons Act of 2000 ("**RLUIPA**") was enacted by Congress to target local land-use regulation and ensure "greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015).

RLUIPA generally provides two types of claims, designated by subsections (a) and (b) respectively, which include substantial burden claims and discrimination and exclusion claims. Plaintiffs attempted to plead both.

### a. Plaintiffs' RLUIPA claims are prescribed.

Except as otherwise provided by law, a cause of action "arising under an Act of Congress enacted" after December 1, 1990, may not be commenced later than four years after the cause of action accrues. 28 U.S.C. § 1658. Because there is no specified statute of limitations for a cause of action brought under the RLUIPA, the four-year catch-all federal statute of limitations governs claims brought under this statute. *Id.*; *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). The statute of limitations for an action brought under the RLUIPA begins to run on the date on which the plaintiff's claim "accrues," *i.e.,* on the day that the governmental entity issues a *final* decision resulting in the complained-of action. *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 201 (1997).

Plaintiffs must complain of actionable harm accruing *on or after* March 21, 2019 for their RLUIPA claim to be timely. This specifically forecloses Plaintiffs' claims regarding the 2014 adoption of the Land Use Plan, the April 23, 2014 land use approval of South Louisiana Methanol, the 2018 amendment to the Land Use Plan, the January 24, 2019 land use approval of Formosa [Doc. 29, ¶587], and any other actions prior to March 21, 2019.

### b. Plaintiffs failed to plead facts of a property interest.

For a substantial burden claim, RLUIPA states that "no government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution . . ." 42 U.S.C. §2000cc(a)(1). A substantial burden can be present in three scenarios, the third of which includes "in the

implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. §2000cc(a)(2)(C). For a discrimination claim, RLUIPA states: "No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. §2000cc(b)(2).

"[L]and use regulation" is defined by RLUIPA as "a zoning or landmarking law, or the application of such a law, that limits or restricts **a claimant's** use or development of land (including a structure affixed to land), **if the claimant has** an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. §2000cc-5(5) (**emphasis** added). A "claimant" is "a person raising a claim or defense under" RLUIPA. 42 U.S.C. 2000cc-5(1).

Here, Plaintiffs have no cause of action because they do not qualify as 'claimants' under RLUIPA. They have no ownership, leasehold, easement, servitude, or other property interest in the land on which Plaintiffs allege unmarked cemeteries may exist. The Complaint makes it very clear that these alleged and potential unmarked burial sites are owned by others. For example, the "Formosa project site" is located on former plantations which Plaintiffs claim contain unmarked burial sites. [Doc. 29, ¶510]. There is no allegation, nor can there be, that Plaintiffs own the "Formosa project site." Plaintiffs have provided no allegations to support a finding that they have any property interest in the property. To have a property interest protected by due process, a person must have more than an abstract need or desire for the property; he must have a legitimate entitlement to it, not merely a unilateral expectation. La. Const. art. I, § 2; *see e.g.*, *Barber v.*

*Louisiana Workforce Commission*, 2017-0844 (La. App. 1st Cir. 10/19/18) 266 So.3d 368. Plaintiffs have no such interests and so are not 'claimants.'

Plaintiffs claim a property right to the potential unmarked burial sites based on a 2008 opinion of the Office of the Attorney General. [Doc. 29, ¶550]. However, the Attorney General opinion letter is not applicable because it addresses only the situation where a plot has been previously set apart for cemetery purposes. When a plot has been "dedicated" for cemetery purposes at some point in time, the dedication is in the nature of an irrevocable covenant running with the land. *Humphreys v. Bennett Oil Corporation*, 197 So. 222, 226 (La. 1940). Absent allegations that District 4 or 5, or parts thereof, were previously dedicated for cemetery purposes, Plaintiffs do not legally have any property rights to support a RLUIPA claim.

### 7.      Claim VII: Preservation of cultural origins.

Plaintiffs' Claim VII originates from the Louisiana Constitution, Article XII, Section 4, which states: "The right of the people to preserve, foster, and promote their respective historic linguistic and cultural origins is recognized." La. Const. art. XII, § 4.

### a.      Plaintiffs' preservation claim has prescribed.

No case has determined the applicable statute of limitations for claims under Section 4. Under general principles regarding prescriptive periods for Louisiana constitutional claims, "when discerning the basis to support a damages remedy for a constitutional violation under Louisiana law, the Louisiana Supreme Court grounded the claim upon the fountainhead of Louisiana tort law, Article 2315." *Jones v. City of Monroe*, No. 3:19-CV-00832, 2019 WL 5488603, at *7 (W.D. La. Oct. 8, 2019), report and recommendation adopted, No. 3:19-CV-00832, 2019 WL 5491922 (W.D. La. Oct. 24, 2019). By default, Section 4 would be susceptible to a one-year prescriptive period, barring any claims that arose before March 21, 2022.

Plaintiffs were aware, by November and/or December 2019, of the purported cemeteries on the Buena Vista and Acadia tracts. [Doc. 29, ¶¶ 505, 526]. By March 2020, they knew of an alleged five additional cemeteries on those same tracts. [Doc. 29, ¶ 529]. Plaintiffs were also aware by May 2019 of alleged cemeteries at the proposed SLM facility. [Doc. 29, ¶ 539]. Plaintiffs "discovered" other alleged cemeteries in March 2021 and February 2020. [Doc. 29, ¶¶ 498, 503]. Thus, all claims under Section 4 in the Complaint are prescribed.

>           **b.    Plaintiffs failed to plead an infringement of their ability to preserve, foster, or promote their historic linguistic or cultural origins.**

This Court previously provided a detailed discussion of the history of Section 4, stating:

> Article XII, section 4 of the Louisiana Constitution of 1974 recognizes the "right of the people to preserve, foster, and promote their respective historic linguistic and cultural origins." La. Const. art. XII, § 4. The driving force behind the provision was preservation of the French language and culture. Lee Hargrave, "*Statutory" and Hortatory" Provisions of the Louisiana Constitution of 1974*, 43 La. L. Rev. 647, 682 (1983). The law was supported primarily by French-speaking delegates who were concerned with the protection of the Acadian French culture. *Id.* No court has ever invalidated a law using this provision.

> Professor Lee Hargrave suggested that the development and intent of article XII, section 4 support a narrow construction of the law. For example, the principal drafter's stated intent was "to encourage bilingualism rather than make a drastic innovation." *Id.* at 684.

*Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d at 600 (dismissing claim under Article XII, Section 4), *aff'd sub nom. Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017).

In *Monumental Task Comm.* and *McGraw*,[8] the plaintiffs argued that the removal of monuments violated their right to preserve, foster, and promote their historic, linguistic, and cultural origins. The Louisiana Fourth Circuit Court of Appeals and this Court dismissed those claims, finding the plaintiffs had no property rights in the monuments. *See Monumental Task*

---

[8] *McGraw v. City of New Orleans,* 2016-0446 (La. App. 4 Cir. 3/29/17), 215 So. 3d 319, 331.

*Comm., Inc.*, 157 F. Supp. 3d at 601; *McGraw,* 215 So. 3d at 331 ("Mr. McGraw, therefore, has failed to establish that he has acquired vested property rights in the monuments at issue by operation of Article XII, Section 4 of the Louisiana Constitution."). "Plaintiffs fail to demonstrate that the removal of the monuments will infringe upon their right to preserve, foster, and promote their historic, linguistic, and cultural origins." *Monumental Task Comm. Inc.*, 157 F. Supp. 3d at 601.

Here, Plaintiffs seek to compel the Parish to promote their members' culture, in direct contravention of the *Monumental Task Comm*. and *McGraw* cases. Locating burial sites, and their preservation, is governed by state law. There is no allegation that St. James Parish or individual landowners violated those laws. Regardless, Plaintiffs seek to have St. James Parish ensure that any possible area where an unmarked burial site is possibly located is forever preserved. Louisiana law does not mandate such expansive protections and would serve to usurp the authority and obligations of the State and private landowners. Nearly every case discussing Section 4 focuses on language rights. No court has read this provision as expansively as Plaintiffs would require and no court has ever invalidated a law, much less usurped local police powers, using this provision.

Plaintiffs also lack a property right on which to base this claim. As previously detailed, Plaintiffs have no property right in any alleged unmarked burial site on the property of another private citizen. Failing to plead facts to support their claim, it should be dismissed with prejudice.

## III.   REQUEST FOR ATTORNEYS' FEES

"Pursuant to 42 U.S.C. § 1988, a court may, in its discretion, award attorney's fees to the prevailing party in a section 1983 action." *Monumental Task Comm., Inc. v. Foxx*, 2016 WL 5780194, at *8. "A prevailing defendant is entitled to fees only when a plaintiff's underlying claim is frivolous, unreasonable, or groundless." *Allen v. Lowe*, No. 14-204, 2015 WL 1021695, at *2

4816588.v1

(E.D. La. 2015) (quoting *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000)). Plaintiffs asserted numerous groundless claims under § 1983 against St. James Parish. The Parish, a local municipality, had to defend a 600+ page Complaint fraught with meritless and irrelevant allegations designed more for media attention than for stating a cause of action. As such, this Court should appropriately award St. James Parish its attorneys' fees for defending this matter.

IV.   <u>**CONCLUSION**</u>

Therefore, St. James Parish requests that its motion be granted and this litigation be dismissed before any further public funds be expended on litigation for these meritless claims. Further, Plaintiffs now amended their Complaint and did so without addressing the improprieties and deficiencies raised herein. Plaintiffs should not be allowed a second opportunity to amend, and their Complaint should be dismissed with prejudice at Plaintiffs' cost.

RESPECTFULLY SUBMITTED,

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*s/ Carroll Devillier, Jr.*
John King, La. Bar No. 17004
John.King@bswllp.com
Thomas Temple, La. Bar No. 26130
Thomas.Temple@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
danielle.borel@bswllp.com

*Attorneys for St. James Parish, St. James Parish Council and St. James Parish Planning Commission*