UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | *  CIVIL ACTION NO.: 2:23-cv-00987<br>*<br>* |
| | *  JUDGE: WENDY B. VITTER |
| VERSUS | *<br>* |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | *  MAG. JUDGE JANIS VAN MEERVELD<br>*<br>* |

# **REPLY MEMORANDUM IN SUPPORT OF RULE 12 MOTION TO STRIKE ALLEGATIONS AND DISMISS CLAIMS**

BY ATTORNEYS

John King, La. Bar No. 17004
John.King@bswllp.com
Thomas Temple, La. Bar No. 26130
Thomas.Temple@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
danielle.borel@bswllp.com
**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*Attorneys for St. James Parish, St. James Parish Council and St. James Parish Planning Commission*

4845732.v1

# REPLY MEMORANDUM IN SUPPORT OF RULE 12 MOTION TO STRIKE ALLEGATIONS AND DISMISS CLAIMS

St. James Parish, for itself and the Parish Council and Parish Planning Commission[1] ("**St. James Parish**" or the "**Parish**"), replies to Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Strike Allegations and Dismiss Claims [doc. 43] (**"Opposition"**).

## I. UNDER RULE 12(F), PLAINTIFFS' ¶¶ 1-551 SHOULD BE STRICKEN.

Plaintiffs' sparse response to Defendant's motion to strike is telling. Plaintiffs do not address their obligations for a short, plain statement of claims, free of prejudicial allegations under Federal Rules of Civil Procedure Rules 8, 10, and 12. Plaintiffs fail to address the numerous "allegations" which consist of only restatements of sermons, the use of "Racial Cleansing," the atrocities that occurred on slave plantations, and historical discussions of long displaced governing regimes. [Doc. 29, ¶¶ 10, 11, 14, 19, 45, 46, 52, 54, 56, 59, 275, 286]. Instead, Plaintiffs merely label the Parish's detailed motion to strike as an improper attack and assert it was unspecific. This assertion cannot stand considering the numerous specific examples provided of inflammatory, scandalous, and wholly irrelevant material in the Complaint.

## II. UNDER RULE 12(B)(1), PLAINTIFFS' LACK OF STANDING.

Plaintiffs assert they have been treated unequally because industry is "steered" into Districts 4 and 5. [Doc. 43, p. 9.] However, the presence of industry alone in Districts 4 and 5 does not show any unequal treatment. No citizen of District 4 is treated differently than any other citizen of District 4. Plaintiffs complain not of the presence of industry, but of purported: 1) decreased

---

[1] Plaintiffs' Opposition contends that the St. James Parish Council and St. James Parish Planning Commission are proper defendants. Plaintiffs have not cited to any provision of the St. James Home Rule Charter which makes these nominal defendants any more are than mere branches and divisions of St. James Parish. They are not separate independent legal entities with the capacity to sue or be sued and should be dismissed from this case.

1

4845732.v1

property values, 2) health injury from environmental emissions, and 3) the inability to pray at purported slave cemeteries.

**Property Values**. The Opposition asserts the Land Use Plan violates Plaintiffs' property rights by "impos[ing] unique restrictions on their ability to subdivide and sell their properties." [Doc. 43, p. 10 citing Complaint, ¶¶ 23, 289]. Neither paragraph, however, provides a factual allegation that anyone attempted to subdivide or sell their property and were unable to do so, much less because of any race-based discrimination. Plaintiffs argue the steering of industry has reduced property values. [Doc. 43, p. 12]. The cited paragraphs do not allege a specific example of property value diminution. Plaintiffs instead argue specifics facts are not needed and would be holding them to an improperly heightened pleading standard. [Doc. 43, p. 12 citing *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019)]. Yet, the *Cicalese* decision recognizes a plaintiff must at least plead sufficient facts supporting the elements of the claim to make the case plausible. *Id.* at 766. Plaintiffs have not pled facts that establish a "concrete," "real, and not abstract" "particularized" injury. See *Campaign Legal Ctr. v. Scott*, 49 F.4th 931 (5th Cir. 2022). Plaintiffs also claim they are injured because the Parish did not implement a buffer zone around Mount Triumph Baptist Church. [Doc. 43, p. 10]. However, Plaintiffs admit that the buffer zone implemented in other areas was removed in 2018, eliminating any injury or ability of this Court to redress the issue. Finally, Plaintiffs do not address the lack of redressability, as an invalidation of the current Land Use Plan will not impact the present composition of the Parish.

**Broad Environmental Claims.** Plaintiffs allege they were injured by exposure to pollution. [Doc. 43, pp. 10-11]. The Parish does not emit the complained of substances and does not regulate or permit property owner's environmental emissions. Plaintiffs argue that the Parish is *a* "but for" cause of environmental emissions based on an unreported decision from the Northern

2

District of Texas. [Doc. 43, p. 13]. This is not the law. "A plaintiff has standing only if he can 'allege personal injury **fairly traceable to the defendant's allegedly unlawful conduct** and likely to be redressed by the requested relief.'" *California v. Texas*, 141 S. Ct. 2104 (2021) (**emphasis** added). Environmental emissions are not fairly traceable to any conduct of the Parish.

Plaintiffs superficially address the lack of redressability of environmental emissions by stating a discontinuance of "discrimination" would redress the issue. [Doc. 43, p. 13]. This is nonsensical. Nullification of the Land Use Plan would have no impact on whether a private business properly acquires a permit to emit substances. Plaintiffs admit their complained of injuries "began long before" the 2014 Land Use Plan was enacted, stemming from actions not of the Parish. [Doc. 43, p. 13]. "[T]he 'case or controversy' limitation of Art. III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976). Plaintiffs are attempting to improperly hold the Parish liable for years of actions by private third parties not before the Court.

Plaintiffs also alleged injury to "aesthetic and recreational values" because individuals' property has industry located near or around it. [Doc. 43, p. 11 citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000)]. In *Friends of the Earth, Inc.*, however, the court found standing present based on the plaintiffs' diminished recreational activities that were caused by discharge of the named defendant, Laidlaw. Here, the environmental discharges that Plaintiffs allege impact their use of property have not been made by the named defendant, the Parish. This is not an injury which can be redressed against the Parish.

**Religious Injury.** Plaintiffs have no legal property right to access third parties' private property to visit possible burial sites. This is governed by laws, regulations, and entities of which

the Parish has no control. Invalidating the Land Use Plan in no way guarantees that Plaintiffs will gain access to private persons' property. Causation and redressability remain lacking.

### III.   UNDER RULE 12(B)(6), PLAINTIFFS' FAIL TO STATE A CAUSE OF ACTION.

#### A.   Plaintiffs' Claims are Prescribed.

Rather than addressing its claims individually as the law requires, Plaintiffs address the prescriptive period issues in broad strokes, attempting to revive prescribed claims by arguing that the recent decisions of a democratically elected parish government are a *continuation* of slavery and its artifices. This contention is patently absurd and inconsistent with the reality that the Parish, and the elected officials directing its affairs, have changed dramatically over the years. The Parish is not an autonomous body susceptible to continued discriminatory intent. Plaintiffs' argument would make the Parish liable for *every action* during hundreds of years of activity complained of by Plaintiffs. The law creates prescriptive periods and statutes of limitations to prevent precisely this type of untenable result.

There is no support for Plaintiffs' "continuing violation" theory [doc. 43, p. 16] such that its claims are immune from *any* prescriptive period. Plaintiffs inappropriately base their assertion of a pattern or practice to support a "continuing violation" on *United States v. City of Parma, Ohio*, 661 F.2d 562, 573 (6th Cir. 1981) (which cites *United States v. Mitchell*, 327 F. Supp. 476, 478 (N.D. Ga. 1971)). In *City of Parma, Ohio*, the court declined to find that the fair housing action violation claims were barred by the 180-day time limit contained in the act for the "enforcement of private persons" because the suit had *not* been brought by a private person, but was brought by the Attorney General, who was separately empowered by legislation to bring a civil claim against any person "engaging in a pattern or practice of resistance to the full enjoyment of any of the rights" of that act. *Mitchell*, 327 F. Supp. at 478, n.1. Nothing in *City of Parma, Ohio* creates a "pattern or practice" "continuing violation" exception to claims before this Court.

4

Aside from fair housing jurisprudence, "the continuing-violations doctrine, which most frequently applies in the employment-discrimination context, should not be invoked where the defendants took action that '"in fairness and logic,' should have alerted [the plaintiff] to act years ago.'" *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 527 (N.D. Tex. 2021) (citing *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018)). "The Supreme Court has stressed that the equitable version of the doctrine should be invoked 'sparingly,' only when the situation calls for it." *Texas*, 891 F.3d at 562. "Plaintiffs have not alleged a continuous violation by the Parish, but multiple separate and discrete actions of multiple different actors occurring over many decades which should have alerted Plaintiffs to these claims years ago.

Even if the continuing violation doctrine is applicable, which is denied, there are "several limits on the applicability," including "intervening action by the [defendant] will sever the acts that precede it from those subsequent to it." *Notariano v. Tangipahoa Parish School Board, et al*, 266 F.Supp.3d 919, 924 (E.D.La. 2017). The passage of the Land Use Plan in 2014 is an intervening act and a clear demarcation between land use decisions made by private parties prior to the Land Use Plan and subsequent decisions. Further, the major revisions to the Land Use Plan in 2018 (which included removing the two-mile buffer) severs actions between 2014 and 2018 and those thereafter.

Further, Plaintiffs have shown no actions *of the Parish* within the applicable one- and four-year prescriptive periods. Plaintiffs assert that the Parish implemented a parish-wide moratorium on solar farms on August 17, 2022, by adopting a resolution before it, while declining to consider a petrochemical moratorium requested by Plaintiffs in 2019, which was not on its agenda for consideration. [Doc. 43, pp. 17-18, citing Complaint ¶¶ 330-341]. This is not an allegation of a discriminatory act that violates any law, much less the Thirteenth Amendment/42 U.S.C. § 1983

5

(Claim I), the Fourteenth Amendment Equal Protection (Claim II) or Substantive Due Process/Bodily Safety and Integrity(Claim III), Property Rights of Black Citizens/42 U.S.C. § 1982 (Claim IV), or Preservation of cultural origins (Claim VII). Plaintiffs' claims are prescribed.

As for RLUIPA, Plaintiffs assert they discovered potential burial sites within four years of filing their Complaint. [Doc. 43, p. 18]. However, this allegation cannot form the basis of a RLUIPA claim as Plaintiffs have no property rights to potential burial grounds located on the private property of another, much less rights it can prosecute against a third-party, the Parish. As for Plaintiffs' discrimination claim, they first argue that a buffer zone, which was removed in 2018, creates its claim. [Doc. 43, p.19]. This claim no longer exists. Then, Plaintiffs argue the Parish granted two land use permits (Syngas and Wanhua) after March 21, 2019 within miles of majority-Black Baptist churches. [Doc. 43, p. 19]. However, Wanhua later withdrew its application and there are no facts pled that Syngas—which was permitted after the two-mile buffer was removed—was actually constructed or it received any state or federal permit to emit pollutants; there is no actionable harm. [Doc. 24, ¶¶ 389-390].

Plaintiffs declare they are not collaterally attacking any specific land use decisions. [Doc. 43, p. 22]. This is undermined by Plaintiffs' request that this Court take the role of a local planning commission[2] and "[i]ssue a judgment declaring the land use approvals granted to Formosa and South Louisiana Methanol invalid." [Doc. 29, p. 150]. Further, Plaintiffs argue that their failure to address specific permits through the appropriate administrative processes does not bar constitutional challenges. [Doc. 43, p. 21]. Those permits were issued on January 24, 2019 and April 23, 2014, respectively. Under either, however, Plaintiffs' challenges are untimely.

---

[2] "Matters such as land use are of local concern and are best left to the province of the states to decide." *Petroplex Int'l v. St. James Par.*, 158 F. Supp. 3d 537, 544 (E.D. La. 2016) (dismissing plaintiffs' state law challenges to St. James Parish Land Use Plan).

### B.  Claim I: Thirteenth Amendment

Plaintiffs attack the 1883 *Civil Rights Cases*'s interpretation of badges of slavery but ignore the fact that "courts routinely reject Thirteenth Amendment claims that do not involve forced or coerced labor." *Guesby v. Bert Nash Cmty. Mental Health Ctr., Inc.*, No. 22-2370-DDC-TJJ, 2023 WL 3040454, at *2 (D. Kan. Apr. 21, 2023). Even without historical context, it is clear that zoning issues are not badges of slavery. Plaintiffs fail to overcome precedent *dealing with zoning issues* where the Supreme Court clearly stated that it would be inappropriate to find such claims fell under the Thirteenth Amendment. *City of Memphis v. Greene*, 451 U.S. 100, 128 (1981) ("a regulation's adverse impact on a particular neighborhood will often have a disparate effect on an identifiable ethnic or racial group. To regard an inevitable consequence of that kind as a form of stigma so severe as to violate the Thirteenth Amendment would trivialize the great purpose of that charter of freedom."); *Palmer v. Thompson,* 403 U.S. 217 (1971) (rejected the notion that a city council decision to close a public pool was a "badge or incident" of slavery, finding to hold such "would severely stretch its simple words and do violence to its history."). None of the Parish's actions involve race-based violence, forced or coerced labor, or denial of economic opportunities.

### C.  Claim II: Fourteenth Amendment (Equal Protection)

Plaintiffs assert the Parish's zoning actions had a racially disparate impact on Plaintiffs' health, environment, property, and religion. [Doc. 43, pp. 27-28]. Again, the allegations are not regarding the Parish's actions but are issues Plaintiffs are attempting to bootstrap to their unhappiness with democratically occurring zoning decisions. Plaintiffs allege the implementation of buffer zones in the 2014 plan (which were removed in 2018) and the designation of Districts 4 and 5 established an intention to erase predominantly Black residential areas. [Doc. 43, p. 28]. The fact that the zoning of Districts 4 and 5 as industrial impacts Black residents of those Districts is vastly insufficient to establish the Parish had a discriminatory intent to purposefully harm Black

residents. "The Supreme Court has instructed us time and again, however, that **disparate impact alone cannot suffice to state an Equal Protection violation**; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir. 1997) (**emphasis** added).

Plaintiffs argue they have alleged racial intent by showing historical background, specific sequence of events, departures from normal procedure, substantive departures, and legislative history. [Doc. 43, p. 29]. However, Plaintiffs do not point to historical background *of the Parish's* zoning decisions, but loops in St. James Parish's historical land development, led by private parties before any Land Use Plan was in place, citing to Emancipation and the Jim Crow era. [Doc. 43, p. 29]. For a specific sequence of events, Plaintiffs allege the Parish hurriedly adopted the 2014 Land Use Plan [doc. 43, p. 30], though the plan was adopted *unanimously* by all Parish Districts representatives, including Districts 4 and 5. Plaintiffs do not allege the Parish departed from its normal procedures for considering zoning decisions or permit applications, but rather alleges the results of those decisions were unfavorable to Plaintiffs. Finally, Plaintiffs argue the legislative intent behind the Land Use Plan reveals "an ongoing discriminatory intent" [doc. 43, p. 33], but this general assertion is wholly unsubstantiated by Plaintiffs' pled allegations. Without the presence of a discriminatory purpose behind a zoning decision (which has not been pled), no constitutional violation is present. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 (1977).

Plaintiffs also lack any allegation that the Land Use Plan treats residents within a zoning classification differently based on race. No lack of equal protection has been pled.

### D.   Claim III: Fourteenth Amendment Substantive Due Process (Bodily Integrity)

Plaintiffs argue that their bodily integrity was compromised without due process because the Parish "knowingly and intentionally approved the introduction of highly dangerous air

8

pollutants." [Doc. 43, p. 36]. Again, the Parish has no authority to approve emissions. As demonstrated in the Complaint, even an entity that has obtained a land use permit from the Parish cannot emit air emissions without a permit from the proper state and federal entities.[3]

### E. Claim IV: 42 U.S.C. § 1982 - Property Rights of Black Citizens

Of the allegations cited by Plaintiffs, ¶¶ 15, 23-25, 168, 249-59, and 559, there is not a single fact to show a tangible decrease in property value. Even the allegation regarding the limitation of subdivision of property fails[4] to show that Blacks are prevented from subdividing property where whites in the same district face no prohibitions. Plaintiffs have not alleged that Blacks are being treated differently than whites in any particular district. Plaintiffs have put forth no factual allegations that the Parish has denied Black residents the right "to hold and acquire property on an equal basis with white persons" and impaired their property interests "because of their race." *City of Memphis*, 451 U.S. at 122.

### F. Claim V/VI: RLUIPA

Plaintiffs do not qualify as "claimants" under RLUIPA because they have no ownership, easement, servitude, or other property interest in the land on which allege unmarked cemeteries may exist. Plaintiffs' argument that this Court should "draw a plausible inference" that property on former plantations was formally dedicated as a cemetery under Louisiana's law, absent any facts to support that conclusion, falls short. Absent allegations that the alleged unmarked burials in Districts 4 or 5 were formally dedicated for cemetery purposes (which is not true), Plaintiffs have not pled any legal property rights to support a RLUIPA claim.

---

[3] Plaintiffs fail to acknowledge that a prior decision of this Court found St. James Parish's Land Use Plan was based on a rational objective. *Petroplex Int'l v. St. James Par.*, 158 F. Supp. 3d 537, 542 (E.D. La. 2016) (dismissing with prejudice claim for federal substantive due process). Dismissal here is similarly warranted.

[4] As the Supreme Court confirmed in *City of Memphis,* a municipal regulation that has an "adverse impact on a particular neighborhood will often have a disparate effect on an identifiable ethnic or racial group." 451 U.S. at 128. This alone is not indicative of a discriminatory intent or racial animus. *Id.*

9

4845732.v1

### G. Claim VII: Preservation of cultural origins.

Plaintiffs again argue their right to preserve, foster, and promote their historic and cultural origins by preserving and protecting ancestral burial grounds. [Doc. 43, p. 42]. They dismiss the fact that state law explicitly describes their intended behavior as trespassing on private property. Plaintiffs not only lack any valid property rights to the alleged burial sites, but is requesting rights to use property over which the Parish has no control.

Plaintiffs also allege the Parish harmed their communities' (Freetown, Romeville, Mount Triumph) cultural origins citing to paragraphs 24, 84-90, 281, 349, 366, 410-18, 424, 465, and 609. These paragraphs discuss the fact that private property around these areas was allowed to be used for industry, but there is no allegation of any action on Plaintiffs' property depriving them of their ability to use property. The location of industry on private property around these areas does not establish actions by the Parish that inhibit Plaintiffs' ability to preserve their cultural origins.

## IV. REQUEST FOR ATTORNEYS' FEES

Fed. R. Civ. P. 54(d)(2)(A) does not prohibit a fees request from being included in a motion addressing other issues. Plaintiffs' argument lacks merit. Plaintiffs have brought unsupported claims under 42 U.S.C. 1983 against the Parish, and the Parish is entitled to attorneys' fees.

## V. CONCLUSION

Therefore, St. James Parish requests that its motion be granted and this litigation be dismissed before any further public funds be expended on litigation for these meritless claims, and an award of costs and fees be issued.

RESPECTFULLY SUBMITTED,

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*s/ Carroll Devillier, Jr.*
John King, La. Bar No. 17004
John.King@bswllp.com
Thomas Temple, La. Bar No. 26130
Thomas.Temple@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
danielle.borel@bswllp.com

*Attorneys for St. James Parish, St. James Parish Council and St. James Parish Planning Commission*

11