UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

INCLUSIVE LOUISIANA, ET AL.                          CIVIL ACTION

VERSUS                                               NO. 23-987

ST. JAMES PARISH, ET AL.                             SECTION "J" (1)

## ORDER AND REASONS

Before the Court is a *Rule 12 Motion to Strike Allegations and Dismiss Claims* (Rec. Doc. 20) filed by St. James Parish, on behalf of itself and the St. James Parish Council and St. James Parish Planning Commission (together, "Defendants") and an updated version of the motion in response to Plaintiffs' Amended Complaint **(Rec. Doc. 33)**. The motion is opposed by Plaintiffs Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James ("Plaintiffs"); (Rec. Doc. 43); and Defendants filed a reply memorandum; (Rec. Doc. 48). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART AND DENIED IN PART.**

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James, by and through their members, filed their complaint against St. James Parish, the St. James Parish Council, and the St. James Parish Planning Commission on March 21, 2023. Inclusive Louisiana is a non-profit community advocacy organization based in St. James Parish with a goal of protecting the parish against environmental harm. Mount Triumph Baptist Church is a local congregation in St. James Parish

1

whose members claim descent from formerly enslaved people who lived in St. James Parish. RISE St. James is a faith-based grassroots organization advocating for the end of petrochemical industries in St. James Parish. All three Plaintiffs claim that their members are residents of St. James Parish descended from formerly enslaved persons whose civil liberties, property rights, and religious rights are violated by Defendants' 2014 Land Use Plan ("the Land Use Plan" or "the Plan") and actions both before and after its adoption.

Defendants are St. James Parish, St. James Parish Council, and the St. James Parish Planning Commission. St. James Parish is a local governmental subdivision of the State of Louisiana. St. James Parish Council is the legislative body of the St. James Parish government. St. James Parish Planning Commission is a municipal body that oversees and implements local land use regulations and zoning.

Plaintiffs center their allegations on St. James Parish's adoption of a Land Use Plan in 2014. St. James Parish had never adopted a formal zoning ordinance before the 2014 Land Use Plan, and Plaintiffs allege that the 2014 Plan effectively codified an existing practice of discriminatory behavior towards their neighborhoods. Further, Plaintiffs assert that the 2014 Land Use Plan was used to protect majority white parts of the Parish from industrial development, while steering industry to the 4th and 5th Districts, which are home to populations that are majority Black. Chief among Plaintiffs' allegations are that the Plan's designation of large tracts of property in the 4th and 5th Districts as "future industrial" evinces an intent to industrialize the majority-Black Districts and erase these communities and that the 2014 Land

Use Plan created industrial buffer zones for white-majority churches but not Black-majority churches in the Parish.

Plaintiffs bring the action under 42 U.S.C. § 1983 and allege that Defendants violated the Thirteenth Amendment, the Fourteenth Amendment, the Religious Land Use and Institutionalized Persons Act ("RLIUPA"), and the Louisiana Constitution. Specifically, Plaintiffs allege that Defendants have maintained a discriminatory, unequal, and injurious system that deprives Plaintiffs' members of their rights via zoning and land use decisions. Plaintiffs seek declaratory and injunctive relief against the Defendant for the alleged violations.

On July 17, 2023, Plaintiffs amended their complaint, which includes seven claims (Rec. Doc. 29). In Claim I, Plaintiffs allege that Defendants violate the Thirteenth Amendment because the existing land use system operates as a badge or incident of slavery. In Claim II, Plaintiffs allege that Defendants violate the Fourteenth Amendment's Equal Protection guarantee because discriminatory intent undergirds the adoption and maintenance of the Parish's land use system and results in unequal treatment towards the Parish's Black residents. In Claim III, Plaintiffs allege that Defendants violate the Fourteenth Amendment's guarantee of substantive due process due to violations of Plaintiffs' members' bodily integrities via exposure to hazardous airborne toxins made possible by the 2014 Land Use Plan. In Claim IV, Plaintiffs allege that Defendants' conduct has violated 42 U.S.C. §1982 via the Land Use Plan's intentional discrimination resulting in a diminution of property values.

3

Additionally, Plaintiffs bring claims against the Defendant under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). In Claim V and VI, Plaintiffs allege that the Parish's Land Use Plan has placed a substantial burden on their members' ability to practice their religion and has enabled religious discrimination against Black Baptist churches in the parish. Lastly, in Claim VII, Plaintiffs assert that Defendants have violated the Louisiana Constitution's guarantee to their members to preserve and promote their cultural and historical heritage.

On June 16, 2023, Defendants filed a motion to strike and a motion to dismiss the complaint. (Rec. Doc. 20). After Plaintiffs amended their complaint, Defendants filed the instant motion to strike and dismiss the amended complaint. (Rec. Doc. 33). In their motion, Defendants request that the Court strike certain allegations in Plaintiffs' amended complaint, dismiss the complaint for lack of standing, dismiss nominal Defendants St. James Parish Council and St. James Parish Planning Commission, dismiss Plaintiffs' claims as prescribed, and award attorneys' fees. Plaintiffs filed an opposition on August 14, 2023, and Defendants filed their reply memorandum on August 22, 2023. (Rec. Docs. 43, 48).[1]

## **LEGAL STANDARDS**

### I.     **Motion to Strike**

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading. . . any redundant, immaterial, impertinent, or scandalous

---

[1] This case was initially assigned to Judge Vitter, but it was reassigned to the undersigned after Judge Vitter recused.

matter." Fed. R. Civ. P. 12(f). Courts have considerable discretion in deciding whether to grant or deny a motion to strike. *See In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979). However, motions to strike are generally disfavored and rarely granted. *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962). Striking a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice." *Id.* (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953)). For this reason, a motion to strike should be granted "only when the pleading to be stricken has no possible relation to the controversy." *Id.* In addition, a motion to strike generally should not be granted absent a showing of prejudice to the moving party. *See id.*

## II.      12(b)(1) Motion to Dismiss

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003). If a court lacks subject matter jurisdiction, it should dismiss without prejudice. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010). When "a Rule 12(b)(1)

motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (internal quotation marks and citation omitted).

### III.   12(b)(6) Motions to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

### IV.   Attorneys' Fees

A court may, in its discretion, award attorney's fees to a prevailing party in a civil rights case. 42 U.S.C. § 1988. "A prevailing defendant is entitled to fees only when a plaintiff's underlying claim is frivolous, unreasonable, or groundless." *Myers*

*v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000). "[A] court must ask whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Offord v. Parker*, 456 F. App'x 472, 474 (5th Cir. 2012).

## **DISCUSSION**

### I.    **Motion to Strike**

Defendants request that this Court strike Plaintiffs' allegations in Paragraphs 1-551 of their 612 paragraph Amended Complaint. (Rec. Doc. 33, at 9-15). Defendants contend that the material in those paragraphs is immaterial, impertinent, scandalous, and prejudicial to Defendants. *Id.* at 9-10. The immaterial and impertinent allegations, according to Defendants, include historical discussions of land use and slavery in St. James Parish, the Freedmen's Bureau, Louisiana's Black Code, Reconstruction, the White League, segregation, Jim Crow disenfranchisement of Black voters, and a 2003 study predating the Land Use Plan. *Id.* at 12-13. Defendants conclude that this history does not show or prove that St. James Parish had discriminatory intent, so the history is irrelevant to the claims asserted. *Id.* at 13. As to the scandalous allegations, Defendants assert that Plaintiffs refer to the 2014 Land Use Plan as Racial Cleansing, which casts a derogatory light on St. James Parish. *Id.* at 13. Other allegedly scandalous allegations include several references to slavery and white supremacy throughout the complaint. *Id.* at 14-15.

In response, Plaintiffs note that Defendants' request to strike the majority of their complaint is "so arbitrary and slapdash, that it demands even striking sections on Jurisdiction, Venue, and Parties." (Rec. Doc. 43, at 43). Plaintiffs also argue that

the allegations in the Factual background section are relevant to their claims relating a legacy of discriminatory treatment. *Id.* Specifically, Plaintiffs contend that their Equal Protection and § 1983 claims require a showing of discriminatory intent, which may rely upon the historical background of the challenged actions. *Id.* at 44. Plaintiffs also emphasize that Defendants motion includes no showing of prejudice if those paragraphs are not struck. *Id.* at 45-46.

For the purposes of a Rule 12(f) motion to strike, immaterial matter is that which "has no essential or important relationship to the claim for relief."  Wright & Miller, 5C Federal Practice and Procedure § 1382 (3d ed.). Courts have stricken "superfluous historical allegations, although allegations of this type may be permitted in a pleading if they are relevant to the claim for relief or provide useful background for the parties and the court in the absence of any prejudice." *Id.* Impertinent matter includes "statements that do not pertain, and are not necessary, to the issues in question." *Id.*  A scandalous matter is one that "improperly casts a derogatory light on someone," and "it is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *Id.* Motions to strike should only be granted when the allegations are prejudicial to a party, in part to prevent a jury from seeing the offensive matter or giving the allegations unnecessary notoriety. *Id.*; *Harris v. USA Ins. Companies*, No. CIV.A. 11-201, 2011 WL 3841869, at *1 (E.D. La. Aug. 30, 2011) (Vance, J.) (internal citation omitted). A movant's argument that disputed pleadings might "offend the sensibilities" of the party and their attorneys is insufficient to show that the pleading

is scandalous. *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012). Furthermore, a "[m]atter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962) (quoting 2 Moore's Fed. Prac., 2d ed., P12.21(2), pp. 2317-2318).

Here, despite the unusual level of detail in the 155-page amended complaint, Defendants have not identified with sufficient particularity how the details are immaterial or impertinent to Plaintiffs' claims. While brevity is desirable to conserve counsel's and the Court's time, attorneys have a "wide latitude" to choose a style and form of expression to present their claims. *Atwood v. Humble Oil & Ref. Co.*, 243 F.2d 885, 888 (5th Cir. 1957). In this case, the Court and counsel have already reviewed the extensive historical recounting included in the complaint, and Defendants have not made it clear that this history has no possible bearing on the subject matter of this litigation. Moreover, on a motion to strike, courts may not decide a disputed question of fact. *Harris*, 2011 WL 3841869 at *1 (internal citation omitted). At this point, striking hundreds of paragraphs from the complaint would require the Court to improperly determine a disputed question: whether the local history influenced Defendants' intent.

Although some of the specific "scandalous" language in the complaint may offend Defendants' sensibilities, Defendants did not attempt to identify in what way they would be prejudiced if the Court did not strike the allegations. Additionally, in

9

this case, set for a bench trial, the complaint will not prejudice a jury. Because motions to strike are generally disfavored and because the Plaintiffs' allegations are not immaterial, impertinent, or scandalous, the Court declines to strike any part of the amended complaint.

## II.     12(b)(1) Motion to Dismiss

Next, Defendants move for dismissal for lack of subject matter jurisdiction on the basis that Plaintiffs lack standing. (Rec. Doc. 33, at 15). Defendants argue that, as organizations asserting associational standing, Plaintiffs did not plead the elements of either organizational standing or representational standing and that Plaintiffs' purported injuries belie their theories of standing. *Id.* at 16.

The standing inquiry identifies "disputes which are appropriately resolved through the judicial process;" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and "[i]f a plaintiff lacks Article III standing, then a federal court lacks jurisdiction to hear the complaint." *Delta Com. Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 272 (5th Cir. 2004). To have standing, a plaintiff must allege (and ultimately prove) (1) an injury in fact, which is "a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical," (2) causation, which is "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant," and (3) redressability, which is "a likelihood that the requested relief will redress the alleged injury." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 799-800 (5th Cir. 2012) (internal quotation marks omitted). "A plaintiff must demonstrate

standing with the manner and degree of evidence required at the successive stages of the litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (quoting *Lujan*, 504 U.S. at 561) (internal quotation marks omitted). Thus, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Texas Cable & Telecommunications Ass'n v. Hudson*, 265 F. App'x 210, 216 (5th Cir. 2008) (quoting *Lujan*, 504 U.S. at 561) (internal quotation marks omitted); *see also Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264-65 (1991) (noting that on a motion to dismiss for want of standing, courts must accept as true all material allegations of the complaint).

Associations can assert two theories of standing: representational and organizational. Representational standing, on the one hand, allows an association to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Organizational standing, on the other hand, allows an association to "base standing on an injury to that organization itself—such as incurring a non-litigation expense or curtailing its activities as a result of the challenged action." *Hat v. Landry*, No. 20-

983, 2021 WL 1823089, at *8 (W.D. La. May 5, 2021) (citing *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017)).

In this case, three associations (Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James) seek declaratory and injunctive relief on seven claims: that Defendants' land use practice in St. James Parish (1) violates the Thirteenth Amendment as a present-day badge or incident of slavery; (2) violates the Equal Protection Clause of the Fourteenth Amendment; (3) violates the Right to Bodily Safety and Integrity under the Due Process Clause of the Fourteenth Amendment; (4) violates the rights of Black residents to inherit, purchase, lease, sell, hold, and convey real property on equal terms as white residents; (5) places a substantial burden on the exercise of religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (6) discriminates on the basis of religion in violation of the RLUIPA; (7) violates the rights of Black residents to preserve, foster and promote their historic and cultural origins under Art. XII, Sec. 4 the Louisiana Constitution. (Rec. Doc. 29). In their motion, Defendants distill Plaintiffs' alleged injuries into three categories: (1) decreased property values, (2) health injury related to environmental emissions from industrial facilities, and (3) religious injury. (Rec. Doc. 22, at 18).

### A. Unequal treatment

In response, Plaintiffs argue that all of the Plaintiffs were also injured by the Parish's unequal treatment based on race and religion and that "unequal treatment . . . has been long recognized as a judicially cognizable injury." (Rec. Doc. 43, at 9-10)

(citing *Heckler v. Mathews*, 465 U.S. 728, 738 (1984); *Mississippi University for Women v. Hogan*, 458 U.S. 718, 725 (1982)). However, the judicially recognized test for an injury for standing purposes is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. (internal citations and quotation marks omitted). The burden of establishing injury is on the Plaintiff here; *see id.* at 561; and alleging broadly unequal treatment as a basis for numerous claims does not suffice to meet that burden.

### B. Property Injuries

Plaintiffs allege that the discriminatory land use system in St. James Parish caused diminution in the value of property owned by Plaintiffs and their members. (Rec. Doc. 29, at 139). Plaintiffs also claim that the land use system limits some of Inclusive Louisiana's members from selling, holding, and conveying their property, compared to residents' ability to do so in parts of the Parish where majority white populations reside. *Id.* at 144. In their response memorandum, Plaintiffs argue that Defendants' motion, which claims that these harms are insufficiently specific, requires an improper heightened pleading standard. (Rec. Doc. 43, at 12).

This Court agrees with the Plaintiffs on this point. A "decrease in the market value of [property]" as a result of a zoning designation is "a sufficiently concrete injury for Article III purposes." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 368 n.1 (2018) (citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386 (1926)). Plaintiffs' assertion of lost property value is a concrete and particularized

injury that supports standing. *See Markle Interests, L.L.C. v. United States Fish & Wildlife Serv.*, 827 F.3d 452, 463 (5th Cir. 2016), *rev'd on other grounds*, 139 S. Ct. 361 (2018); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014 (1992). The associations here assert that because the Land Use Plan allowed Defendants to steer industry into their communities, the value of Plaintiffs' and their members' property depreciated. These claims, along with the requirement that the Court accept as true the material allegations of the complaint, satisfy the injury-in-fact requirement for standing at the motion to dismiss stage. Plaintiffs need not provide evidence of the diminished property values, yet.

Defendants cite to *Warth v. Seldin*, 422 U.S. 490 (1975) in support of their argument that Plaintiffs failed to allege the remaining elements of the standing inquiry: causation (a causal connection between the Land Use Plan and a decrease in property values) and redressability (that invalidation of the Land Use Plan would redress the alleged diminution in property values). (Rec. Doc. 33, at 20-21). In *Warth*, eight individuals and three associations from Rochester, New York brought suit against a town (Penfield, New York) and its zoning and planning board alleging violations of their constitutional rights. 422 U.S. at 493. The plaintiffs claimed that the town's zoning ordinance excluded people with low and moderate income from living in town and asked the court to declare the Penfield ordinance unconstitutional, enjoin the defendants from enforcing the ordinance, order the defendants to enact a new zoning ordinance, and award damages. *Id.* at 496. The district court held that

the plaintiffs lacked standing and failed to state a claim, and the appellate court affirmed. *Id.* at 498.

The Supreme Court noted that the *Warth* petitioners did not have a present interest in any Penfield property, were not subject to the ordinance's strictures, and had not been denied a variance or permit by officials. *Id.* at 504. Instead, they claimed that enforcement of a zoning ordinance against third parties (developers, builders, etc.) precluded construction of affordable housing. *Id.* The Court noted that the indirectness of an injury does not preclude standing but "may make it substantially more difficult to establish that the asserted injury was the consequence of the defendant's actions, or that prospective relief will remove the harm." *Id.* at 505. The Court held that a plaintiff seeking to challenge exclusionary zoning practices must "allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way form the court's intervention." *Id.* at 508. The Court also concluded that the plaintiffs, residents of Rochester, failed to allege facts to support an actionable causal relationship between Penfield's zoning practices and the plaintiffs' asserted injury. *Id.* at 506-07. As to redressability, the Court held that the plaintiffs were not able to demonstrate that "unless relief from assertedly illegal actions was forthcoming, their immediate and personal interests would be harmed." *Id.* at 507.

Defendants argue that, like the plaintiffs in *Warth*, Plaintiffs here do not allege a causal connection between the adoption and application of a Land Use Plan and a decrease in property values. (Rec. Doc. 33, at 21). In response, Plaintiffs assert that

because Defendants determine whether and where industrial facilities will be located in the Parish and have authority over land use decisions, the environmental and health-related harms are fairly traceable to Defendants' decisions. (Rec. Doc. 43, at 13). To satisfy the second standing prong at this stage, a plaintiff must allege that their injury is "fairly traceable" to defendants' actions, which means that Defendants significantly contributed to the plaintiff's alleged injuries. *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010). "Tracing an injury is not the same as seeking its proximate cause." *Id.* (citing *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997)). Here, Plaintiffs have alleged a significant connection between their decreased property values and Defendants' alleged conduct. For example, the amended complaint alleges that two of Plaintiff Inclusive Louisiana's members, Barbara Washington and Myrtle Felton, live within one mile of the Nucor Steel facility in St. James Parish's 4th District, and both of their homes' property values have been affected such that they cannot afford to relocate. (Rec. Doc. 29, at 73). Plaintiffs also state that the land use system places limitations on the ability of some members of Plaintiff Inclusive Louisiana to sell, hold, and convey their property. *Id.* at 144. Therefore, the Court finds that Inclusive Louisiana has satisfied the causation requirement (for representational standing) by alleging a connection between Defendant's conduct and its members' injuries.

As to the other Plaintiffs, the amended complaint generally alleges that Defendants steered industrial facilities to residents in predominantly Black areas, resulting in lowered property values and other harms to their properties. *Id.* However, Plaintiffs do not allege that Defendants' conduct significantly contributed

16

to property injuries experienced by the other two Plaintiffs (or their members) in this case: Mount Triumph Baptist Church and RISE St. James. Accordingly, the Court finds that Plaintiffs have not adequately pled the causal connection required for standing for Mount Triumph Baptist Church and RISE St. James for claims related to diminished property values.

As to redressability, Defendants argue that invalidating the Land Use Plan would not guarantee future industrial construction would not occur and would not redress the alleged diminution in property values because private companies could continue to seek land use permits under less formalized rules and procedures. (Rec. Doc. 33, at 21). In response, Plaintiffs note that any remedy imposed by this court need not be limited to invalidating the plan. (Rec. Doc. 43, at 13-14). Indeed, in their amended complaint, Plaintiffs seek numerous forms of injunctive and declaratory relief including:

(1) A judgment declaring that Defendants' policies pertaining to the discriminatory land use system and siting of industrial facilities violates the United States Constitution, the Religious Land Use and Institutionalized Persons Act, and the Louisiana state Constitution;

(2) A judgment declaring invalid the land use approvals granted to Formosa and South Louisiana Methanol;

(3) A judgment declaring invalid provisions in the Land Use Plan directing industrial development to the 4th and 5th Districts;

(4) An order enjoining Defendants from siting more industrial facilities, particularly in the 4th and 5th Districts;

(5) An order enjoining Defendants from continuing all policies pertaining to the discriminatory land use system;

(6) An order appointing an independent monitor to measure and enforce compliance with health, safety, and religious measures;

(7) An order to develop a community engagement process for St. James Parish residents to have their interests heard;

(8) An order to preserve the integrity of unmarked cemeteries of enslaved people in St. James Parish and require a study by experts regarding preservation of such cemeteries;

(9) An order that Defendants engage in a mediation process with restorative justice experts to hear from directly impacted communities; and

(10)   Attorneys' fees and costs.

(Rec. Doc. 29 at 149-153).

Redressability requires a likelihood that a court ruling in a plaintiff's favor would remedy their injury. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 74–75, and n. 20 (1978) (plaintiff must show "substantial likelihood" that relief requested will redress the injury); *Warth*, 422 U.S. at 504 (stating that to demonstrate redressability sufficient for standing purposes, a plaintiff must "allege facts from which it could be reasonably inferred that. . . if the court affords the relief requested, the asserted [injury] will be removed"). In this case, the Court has the

18

power to provide the requested relief and finds that a judgment in favor of Inclusive Louisiana including one or more of the requested remedies would, in substantial likelihood, redress the injuries to their property value.

## C. Health Injuries

Next, Defendants argue that the purported health impacts are not caused by St. James Parish and cannot be redressed by this Court. (Rec. Doc. 33, at 22). Defendants contend that the alleged emissions are permitted by the Louisiana Department of Environmental Quality and caused by third party property owners, not St. James Parish. *Id.* at 22-23. Although Plaintiffs are challenging the Parish's land use planning, Defendants note that the actions causing health problems for Plaintiffs' members are environmental emissions from industrial facilities, so the complaint lacks a causal connection between Defendant's actions and Plaintiffs' health issues. *Id.* at 23.

Defendants do not contest the existence of the health impacts Plaintiffs allege its members experienced, including exposure to heightened levels of carcinogens and other pollutants and deaths of loved ones to cancer and other diseases. (Rec. Doc. 29 at 13-14). Plaintiffs argue that, because St. James Parish decided where industrial facilities will be located, the health-related harms are fairly traceable to Defendants' decisions. (Rec. Doc. 43, at 13). To establish the requisite causal connection for standing, a plaintiff does not need to show that the defendant's actions "are the very last step in the chain of causation." *Bennet*, 520 U.S. at 168–69. Nor must a plaintiff establish that a defendant's actions are a proximate cause of their injury. *Lexmark*

*Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). It is sufficient for plaintiffs to show that defendants contributed to the cause of a plaintiff's injuries. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir.1996) (stating that the plaintiff did not need to show that "the defendant's effluent, and the defendant's effluent alone, caused the precise harm suffered by the plaintiffs"). Thus, Plaintiffs need not show, as Defendants argue, that St. James Parish's land use planning is the only cause of their health issues.

Defendants also argue that Plaintiffs fail to plead redressability because invalidating the Land Use Plan would not redress the health injuries Plaintiffs' members already sustained and because any alleged future injury is not present or actionable. (Rec. Doc. 33, at 23). Plaintiffs respond that they are challenging the overall pattern and practice of discriminatory land use decisions, which was further perpetuated by the Land Use Plan, but began long before its enactment. (Rec. Doc. 43, at 13). Thus, Plaintiffs argue that the relief they seek, including a broad injunction preventing a continuation of St. James Parish's land use policies, would redress their health-related injuries. *Id.* at 14.

In addressing redressability, the Supreme Court explained, "[i]t can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC)*, Inc., 528 U.S. 167, 185–86 (2000). "The redressability analysis focuses on the relationship between the judicial relief

requested and the injury alleged." *Missouri v. Biden*, 83 F.4th 350, 371 (5th Cir. 2023), *cert. granted sub nom. Murthy v. Missouri*, No. 23-411, 2023 WL 6935337 (Oct. 20, 2023) (quoting *California v. Texas*, 141 S. Ct. 2104, 2115 (2021)) (internal quotation marks omitted). "[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019).

Here, Plaintiffs seek injunctive and declaratory relief and have alleged a continuing harm and threatened future harm, which is sufficient to find standing at this stage. In Claim II and Claim III, Plaintiffs allege that Defendants continue to implement a discriminatory land use system resulting in increased risk of cancer and other illnesses for their members. (Rec. Doc. 29, at 140-43). This is a continuing and threatened future injury, and the Court finds that the broad injunctive relief sought would prevent the recurrence of the same injury in the future.

### D. Religious Injuries

Next, Defendants argue that Plaintiffs' purported religious injuries (that Plaintiffs' religious worship has been limited by their inability to access unmarked cemeteries) are not caused or regulated by St. James Parish. (Rec. Doc. 33, at 23). In their amended complaint, Plaintiffs allege that Defendants' land use policies threaten innumerable cemeteries of formerly enslaved persons, and the industrial facilities already constructed on or near those burial sites potentially desecrate cemeteries with deep spiritual significance to Plaintiffs and other descendants of enslaved people. (Rec. Doc. 29 at 8-9). Specifically, Claim V and VII allege religious injuries

from Plaintiffs' lack of access to cemeteries and burial sites. Claim V: Religious Land Use and Institutionalized Persons Act (Substantial Burden) alleges that Defendants "burdened Plaintiffs' members' ability to pray upon unmarked cemeteries of enslaved ancestors by permitting the construction of industrial facilities upon these cemeteries," resulting in a substantial burden on Plaintiffs' religious exercise. *Id.* at 145. Claim VII: Louisiana Constitution, Art. XII, Section 4 (Preservation of Cultural Origins) alleges that the land use system in St. James Parish has caused the destruction and desecration of cemeteries and burial sites of enslaved people and has hindered the Plaintiffs' abilities to visit the burial sites of their enslaved ancestors, in violation of Plaintiffs' rights under the Louisiana Constitution.[2] (Rec. Doc. 29, at 148-49).

In the instant motion, Defendants note that Plaintiffs do not allege that St. James Parish owns any of the property on which a burial site may exist. (Rec. Doc. 33, at 24-25). Accordingly, the private ownership of that land makes access to the cemetery difficult or considered trespassing. *Id.* In response, Plaintiffs argue that, because Defendants approve industrial facilities on top of cemeteries, their injuries are traceable to Defendants' conduct. (Rec. Doc. 43, at 15).

To have a causal connection to satisfy the standing inquiry, the injury must be "fairly traceable to the challenged action of the defendant, and not the result of independent action by some third party not before the court." *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42

---

[2] Article XII, Section 4 of the Louisiana Constitution recognizes "the right of the people to preserve, foster, and promote their respective historic linguistic and cultural origins." La. Const. art. XII, § 4.

(1976)) (internal quotation marks omitted). In this case, private parties not made defendants in this case control whether Plaintiffs may access the cemeteries at issue here. Accordingly, the religious injury Plaintiffs claim is the result of independent action by a third party not before the court, and thus the injury is not fairly traceable to Defendants' conduct. Accordingly, Claim V and Claim VII must be dismissed for lack of standing.

### III. 12(b)(6) Motions to Dismiss

#### a. Motion to Dismiss Claims against St. James Parish Council and St. James Parish Planning and Zoning Commission

Next, Defendants argue that Defendants St. James Parish Council and St. James Parish Planning and Zoning Commission are not independent legal entities and therefore lack capacity to sue or be sued. (Rec. Doc. 33, at 25). In response, Plaintiffs contend that the St. James Parish Council and Planning Commission have previously participated in cases as defendants or intervenors and that the St. James Parish Code of Ordinances grants the Council the power of eminent domain, so both entities have the capacity to be sued. (Rec. Doc. 43, at 19-20).

Rule 12(b) does not specifically authorize a motion to dismiss based on a lack of capacity to be sued. However, "[f]ederal courts ... traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules or by statutes" including motions raising a lack of capacity to sue or be sued. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360 (3d ed. 2004). Furthermore, "[t]he Fifth Circuit has implicitly approved 12(b) motions arguing the

lack of capacity to be sued." *Angers ex rel. Angers v. Lafayette Consol. Gov't*, 07-0949, 2007 WL 2908805, at *1 (W.D. La. Oct. 3, 2007) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991) (affirming that Pasadena Police Department had no jural existence and therefore was properly dismissed from suit)). Therefore, the Court will consider Defendants' Rule 12(b)(6) motion based on a lack of capacity to be sued.

Federal Rule of Civil Procedure 17(b)(3) provides, in pertinent part, that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Under the Louisiana Civil Code, there are two kinds of persons that are capable of being sued: natural persons and juridical persons. *See* La. Civ. Code art. 24. Article 24 defines a natural person as "a human being" and a juridical person as "an entity to which the law attributes personality, such as a corporation or partnership." *Id.* Natural persons enjoy general legal capacity to have rights and duties, but juridical persons are "creature[s] of the law and by definition, [have] no more legal capacity than the law allows." *Angers*, 2007 WL 2908805, at *2 (citations omitted). If a person is neither natural nor juridical, then it does not have procedural capacity to sue or be sued. *See Roy v. Alexandria City Council*, 984 So. 2d 191, 194 (La. App. 3 Cir. 2008). Political subdivisions of the state are considered juridical persons with the capacity to be sued. *See Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994); *see also* La. Const. art. 12, § 10. "Louisiana courts have consistently held that city councils, parish sheriff's offices, and city permit offices are not separate government units with the capacity to sue or be sued."

*Urban Hous. of Am., Inc. v. City of Shreveport*, No. 09-0317, 2013 WL 587894, at *4 (W.D. La. Feb. 13, 2013).

Defendants rely on reasoning from *Dotey v. Tangipahoa Parish Council* that another Louisiana parish council was not capable of being sued under state law. No. 05-4018, 2006 WL 8456326 (E.D. La. Apr. 17, 2006). In *Dotey*, the court noted that Tangipahoa Parish was a political subdivision of the State of Louisiana and operated under a Home Rule Charter pursuant to Article VI § 5 of the Louisiana Constitution. *Id.* at *2. The Charter provided for a council-president form of government where the parish council is the legislative branch and an elected president is the chief executive officer and the head of the executive branch. *Id.* The *Dotey* court relied on *City Council of Lafayette v. Bowen*, 649 So. 2d 611, 616 (La. Ct. App. 1994), in which the court found that the Lafayette City Council was a branch or part of the greater juridical entity, the City of Lafayette, so the city council could only exercise its powers as a division of city government. Likewise, because no authority conferred juridical personality on the Tangipahoa Parish Council, the court held that the parish council was not capable of being sued under state law and granted the council's motion to dismiss. *Id.*

Here, Defendant argue that the governmental structure in St. James Parish is identical to that in Tangipahoa Parish, and the St. James Home Rule Charter does not vest the parish council or planning commission with express authority to sue or be sued.[3] The St. James Parish Home Rule Charter vests the parish council with "all

---

[3] A copy of the Home Rule Charter can be accessed at:
https://library.municode.com/la/st._james_parish_council/codes/code_of_ordinances?nodeId=PTIHORUCH.

legislative power in the Parish of St. James." St. James Parish Home Rule Charter Art. III Sec. A(7). Like the government in *Dotey*, the St. James Charter provides for a form of government where the mayor acts as the head of the executive branch, and the parish council acts as the legislative branch. *Id*. Sec. A(1) and B(1). The Charter is silent as to whether the parish council can sue or be sued, which courts have consistently considered as a factor against finding procedural capacity. *See Bowen*, 649 So. 2d. at 616; *Roy v. Alexandria City Council*, 2007-1322 (La. App. 3 Cir. 5/7/08), 984 So. 2d 191, 194; *U.L. Coleman Co. v. Bossier City-Par. Metro. Planning Comm'n*, 08-2011, 2009 WL 3518173, at *2 (W.D. La. Oct. 29, 2009) ("[T]he [Bossier] City Council is not an additional and/or separate governmental unit with the power to sue or be sued. Instead, it functions as a branch or part of the greater corporate body politic or juridical entity and does not possess the capacity to be sued."); *Port Marigny, LLC v. City of Mandeville*, 17-4727, 2018 WL 1757385, at *6-7 (E.D. La. Apr. 12, 2018) (finding that the Mandeville City Council is not a juridical entity with the procedural capacity to sue or be sued because it was a "branch[ ] or part[ ] of the greater corporate body politic or juridical entity"). Considering the structure of the parish government and the Charter's silence as to whether the parish council is capable of being sued, the Court finds that the St. James Parish Council was acting as a legislative agency for the Parish in enacting the zoning plans at issue in this case, and therefore the parish council is not a juridical entity with the procedural capacity to sue or be sued.[4]

---

[4] Without citing any legal authority, Plaintiffs argue that, because the charter grants the parish council the power of eminent domain, the council has capacity to sue and be sued. It is not clear to the Court how this power is relevant to the council's procedural capacity.

As to the St. James Parish Zoning and Planning Commission, the parish charter provides that the planning commission "shall exercise all of the powers and duties conferred by R.S. 33:101 through 33:119." St. James Parish Home Rule Charter Art. III Chap. 82 Art. II, Sec. 82-23. The Charter is also silent as to whether the planning commission can independently sue or be sued. The Court finds that the St. James Parish Zoning and Planning Commission functions as a branch of the parish government and is not an additional or separate governmental unit with the power to sue or be sued. Accordingly, all claims against Defendants St. James Parish Council and Zoning and Planning Commission should be dismissed.

### b. Motion to Dismiss for Failing to Exhaust Administrative Remedies

Next, Defendants request that this Court dismiss Plaintiffs' request for relief related to specific permitting decisions made by St. James Parish. (Rec. Doc. 33). Specifically, Defendants seek dismissal of the following request for relief included in Plaintiffs' amended complaint: "Plaintiffs pray that the Court will. . . [i]ssue a judgment declaring the land use approvals granted to Formosa and South Louisiana Methanol invalid." (Rec. Doc. 29, at 149-50).

The Declaratory Judgment Act is remedial only; it does not create an independent cause of action. *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-71 (5th Cir. 1990). Therefore, if the substantive claims underlying the request for a declaratory judgment fail to state a cause of action, a plaintiff cannot prevail on a request for declaratory judgment. *Id.*

The declarations Plaintiffs seek here are remedies derivative of their other claims. Thus, the Court must assess whether the underlying claims survive Defendants' motion to dismiss for failure to state a claim before evaluating the specific relief requested. Accordingly, the Court denies the motion to dismiss the request for declaratory relief.

### c. Motion to Dismiss for Failure to State a Claim

Defendants also move to dismiss each of Plaintiffs' seven claims for failure to state a claim. (Rec. Doc. 33, at 29-46). The Court will address each claim in turn, except for Claim V and VII, which the Court already determined must be dismissed for lack of standing.

### i. Claim I: Thirteenth Amendment claims pursuant to 42 U.S.C. 1983

In Claim I, Plaintiffs allege that the "discriminatory land use practice in St. James Parish violates the Thirteenth Amendment as a present-day badge or incident of the slavery system." (Rec. Doc. 29, at 138). Specifically, Plaintiffs claim that the land use system "can be traced directly back through to the system that enslaved the ancestors of Plaintiffs' members and to the subsequent efforts of former enslavers to deploy land use, violence, and political disenfranchisement of Plaintiffs' ancestors to ensure succeeding generations in a condition of servitude. . ." *Id.* at 139. Claim I also includes the allegation that the land use system in St. James Parish prevented Plaintiffs' members and other descendants of enslaved people from locating and accessing ancestral cemeteries and caused diminution in the value of property owned

by Plaintiffs and their members. *Id.* Plaintiffs claim that the land use system "has its roots in slavery and its immediate afterlife, which is inherently discriminatory," and absent judicial relief, Defendants will continue to violate the Thirteenth Amendment. *Id.* at 140.

In the instant motion, Defendants argue that the Thirteenth Amendment claims, which Plaintiffs brought pursuant to 42 U.S.C. 1983, (1) have prescribed and (2) that Plaintiffs failed to plead facts of a badge or incident of slavery. (Rec. Doc. 33, at 30-31). In response, Plaintiffs assert that their claims are not time-barred for two reasons. (Rec. Doc. 43, at 15-18). First, Plaintiffs argue that the claims are based on a continuing violation. *Id.* Second, Plaintiffs emphasize that at least two acts that comprise their claims occurred after March 21, 2022 (within one year of filing suit on March 21, 2023): on August 17, 2022, the Parish amended the Land Use Plan to enact a moratorium on solar farms after residents of majority-white parts of the parish opposed a solar farm, and on the same date, the Parish refused to consider a moratorium on petrochemical facilities in majority-Black parts of the Parish. *Id.* In reply, Defendants contend that the continuing violation doctrine is inapplicable because Plaintiffs have not alleged a continuing violation, but multiple separate and discrete actions occurring over many decades which should have alerted Plaintiffs to these claims years ago. (Rec. Doc. 48, at 6).

Congress did not provide a specific statute of limitations to govern § 1983 actions, but 42 U.S.C. 1988 allows for borrowing the most analogous and most appropriate state-law limitations period for § 1983 claims. *Owens v. Okure*, 488 U.S.

29

235, 239 (1989). Where state law provides multiple statutes of limitations for personal injury actions, the Supreme Court directed courts to borrow the general or residual statute for personal injury actions for § 1983 claims. *Id.* at 250; *Allen v. Hays*, 65 F.4th 736, 751 (5th Cir. 2023) (noting that the limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state). Accordingly, in this case, Louisiana's one-year statute of limitations period applies to the claims in this case brought pursuant to § 1983. *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509-10 (5th Cir. 2021) (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989) (recognizing "[Civil Code] article 3492 is Louisiana's only statute of limitations for personal injury actions")).

"The limitations period begins to run when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Stringer*, 986 F.3d at 510 (quoting *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018)). To start the limitations period, the plaintiff does not need to "realize that a legal cause of action exists; a plaintiff need only know the facts that would support a claim." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir.1983)).

Here, Defendants note that the Parish's actions are public record and that it adopted the Land Use Plan in 2014. (Rec. Doc. 33, at 31). Defendants also state that the permitting decisions enumerated in the complaint occurred well outside the prescriptive period, with the most recent permitting actions occurring no later than 2019. *Id.* Plaintiffs argue that their claims are based on unlawful policies and

practices that occurred over decades, and these policies, patterns and practices have been continuing by related acts that occur within the prescriptive period. (Rec. Doc. 43, at 16). Plaintiffs base their assertion of a pattern and practice on *United States v. City of Parma, Ohio*, 661 F.2d 562 (6th Cir. 1981), in which the Sixth Circuit applied the continuing violations doctrine to discriminatory housing claims against the city for a series of actions contributing to creating an all-white community. (Rec. Doc. 43, at 16). In *Parma*, the court noted that "a pattern and practice suit involves a number of discriminatory acts, not a particular one from which the time for bringing suit may be measured." *Parma*, 661 F.2d at 573. Plaintiffs also cite to *Boswell v. Claiborne Parish Detention Center*, in which the Fifth Circuit vacated the district court's dismissal of an inmate's claims on the grounds of prescription because the inmate pleaded a continuing violation based on a failure to provide medical attention. 629 F. App'x 580, 583 (5th Cir. 2015).

The continuing violation doctrine is a federal common law doctrine governing accrual and extends the limitations period on otherwise time-barred claims. *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017), as revised (Mar. 13, 2017) (citing *Montgomery v. Louisiana ex rel. Louisiana Dep't of Pub. Safety & Corr.*, 46 F. App'x. 732, 732 (5th Cir. 2002)). For the doctrine to apply, a plaintiff must show that discrimination manifested itself over time, rather than in a series of discrete acts. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). As an equitable doctrine, the continuing violations doctrine should be "applied sparingly," and only when the situation calls for it. *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 113-14 (2002) (citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984) (per curiam) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants")); *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113. "In other words, the continuing violation doctrine extends the limitations period when a violation manifests itself over time, rather than as discrete acts." *Hearn v. McCraw*, 856 F. App'x 493, 496 (5th Cir. 2021), *cert. denied sub nom. Hearn v. Mc-Craw*, 142 S. Ct. 754 (2022) (quoting *Doe v. United States*, 197 F. Supp. 3d 933, 939 (S.D. Tex. 2016), *aff'd*, 853 F.3d 792 (5th Cir. 2017), as revised (Apr. 12, 2017)) (internal quotation marks omitted); *see also Windhauser v. Bd. of Supervisors for Louisiana State Univ. & Agr. & Mech. Coll.*, 360 F. App'x. 562, 566 (5th Cir. 2010) (noting that the doctrine does not apply when the discriminatory actions alleged are the sorts of discrete and salient events that should put a plaintiff on notice that a cause of action has accrued).

The Fifth Circuit deals with the continuing violation doctrine most frequently in the employment discrimination context, but it has also "recognized its potential applicability in other areas of law as well." *Texas*, 891 F.3d at 562 n. 50 (noting case applying the continuing violations doctrine to lawsuit against the United States under 28 U.S.C. § 2401(a)). Thus, the Fifth Circuit instructs that, "[g]enerally, in determining if equitable tolling is appropriate, we focus the inquiry on what event, in

fairness and logic, should have alerted the average lay person to act to protect his rights." *Id.* at 562 (internal citation and quotation marks omitted). Further, plaintiffs cannot use the continuing violation doctrine "'to resurrect claims about [civil rights violations] concluded in the past, even though [their] effects persist." *McGregor v. Louisiana State Univ. Bd. Of Supervisors*, 3 F.3d 850, 866 (5th Cir. 1993) (internal citation omitted).

In *Heath v. Board of Supervisors for Southern University*, the Fifth Circuit determined that the plaintiff's § 1983 claims in an employment action involved a continuing violation even though some of the conduct occurred before the limitations period. 850 F.3d 731 (2017). Specifically, the court found that, when the plaintiff returned from a one-year leave, the Defendant's discriminatory conduct (1) involved the same type of actions, (2) occurred relatively frequently, and (3) was perpetuated by the same actors. *Id.* at 740. The Court also found that there was no evidence that the defendant employer took any intervening act after the Plaintiff returned that would have severed the continuing nature of the acts. *Id.* (contrasting with *Stewart v. Mississippi Transport Commission*, 586 F.3d 321 (5th Cir. 2009) where continuing violation was severed when employer took prompt remedial action to protect the claimant). And finally, the defendants did not point to equitable consideration that would prevent the court from considering the full scope of the continuing conduct. *Id.* at 741.

Similarly in this case, Plaintiffs' § 1983 claims accrued when Plaintiffs became aware they suffered an injury or had sufficient information to know they were

injured. Plaintiffs argue that all of their claims are based on discriminatory land use decisions over decades, including the adoption of the parish Land Use Plan in 2014. (Rec. Doc. 43, at 16). They argue that these decisions form a policy, pattern and practice that has continued within the prescriptive period. *Id.* In addition to historical allegations related to the system of chattel slavery and subsequent periods of violence and segregation in the region, Plaintiffs' claims are based on the following events, most which occurred pre-limitations period:

- 1958: Heavy industry begins moving into St. James Parish, which does not have zoning or land use rules yet. (Rec. Doc. 29, at 53).

- 1966: St. James Parish Police Jury President and owner of sugarcane farms met with Freeport Sulphur Company to discuss plans to develop phosphoric acid complex in Convent, in the 4th District within one mile of Plaintiff Mount Triumph Baptist Church and within two miles of Romeville, a historically Black community. *Id.* at 55. This site is now run by the fertilizer company Mosaic and includes a radioactive waste lake. *Id.* The company also operates another facility in the 5th District, which began operating in 1966. *Id.* at 57. Each of these facilities discharges air pollutants.

- 1968: NuStar Energy, a petroleum storage terminal, begins operating on the site of the former LaPice Plantation, in the 5th District, less than 600 feet from Mount Triumph Baptist Church. *Id.* at 58. NuStar emits air pollutants as well.

- 1971: America's Styrenics, a polystyrene plant, begins operating on the site of the former Lauderdale Plantation in the 5th District. *Id.* at 60. This plant also emits air pollutants.

- 1981: Occidental Chemical constructs chemical facility near Romeville. *Id.* at 72. The facility emits air pollutants. *Id.*

- 1996: Shintech, a Japanese chemical company, announced plans to build a poly-vinyl chloride plant in Convent. *Id.* at 64. After extensive public controversy, the plant announced it would relocate to Iberville Parish. *Id.* at 69.

- 2003: The U.S. Environmental Protection Agency commissioned report on environmental justice issues in land use planning and zoning, including a study of St. James Parish. *Id.* at 73. The report noted that St. James Parish ranked higher than the national rate for certain cancer deaths. *Id.* at 74.

- 2011: Nucor Steel constructs its facility in the 4th District, next to Romeville, on the site of the former Colomb Park Plantation. *Id.* at 70. In 2021, Nucor settled a dispute with the Louisiana DEQ regarding its emissions of excess amounts of sulfuric acid and hydrogen sulfide from 2014-2018. *Id.* at 72.

- April 2, 2014: Parish Council adopted a Land Use Plan designating large swaths of residential areas in the majority-Black 4th and 5th Districts as "Future Industrial" and providing buffer zones around plantations and majority-white Catholic churches, but not around majority-Black Baptist churches. *Id.* at 77-79.

- April 23, 2014: Planning Commission granted South Louisiana Methanol's land use application for petrochemical complex. *Id.* at 95.

- September 17, 2014: Parish Council denied Wolverine land use application based on opposition of residents in majority white parts of the parish. *Id.* at 87.

- March 25, 2015: Planning Commission approved the land use application of Yuhuang Chemical Industries Inc 2.7 miles from Plaintiff Mount Triumph Baptist Church.

- August 23, 2017: Parish Council voted 4-3 to approve the land use application of Bayou Bridge Pipeline LLC, with an end point near Plaintiff Mount Triumph Baptist Church. *Id.* at 97.

- May 2, 2018: Parish Council adopted an amended Land Use Plan that removed buffer zones from the plan and renamed the "Future Industrial" sites in the 4th and 5th Districts as "Residential Growth." *Id.* at 83. The amendments also changed the designation of residential area in Welcome, Louisiana from "Existing Residential/Future Industrial" to "Residential Growth," rendering the South Louisiana Methanol plant a non-conforming use. *Id.* at 96.

- November 13, 2018: Planning Commission granted Formosa's land use approval for manufacturing complex. *Id.* at 128.

- January 23, 2019: Parish Council approved Formosa permit over an appeal by Plaintiff RISE St. James. *Id.* at 128-29.

- March 25, 2019: Planning Commission approved Syngas Energy Holding LLC's proposal to build methanol plant. *Id.* at 109. On May 29, 2019, the Parish Council denied Plaintiffs' appeal of permit for Syngas. *Id.* at 109.

36

- November 2019: A public records request to Louisiana Division of Archaeology revealed to Plaintiffs two cemeteries on land where Formosa Plastics proposed to build a new facility. (Rec. Doc. 29, at 128)

- August 17, 2022: Parish Council passed moratorium on commercial solar facilities after opposition from residents of Vacherie. *Id.* at 91. Vacherie is in the 6th District, which is majority Black, but "includes the majority-white population of South Vacherie." *Id.* Council did not consider Plaintiffs request for a similar moratorium on petrochemical facilities at the same meeting. *Id.*

At first glance, the foregoing list may appear to include continuing violations like those outlined in *Heath*: similar decisions and actions allowing industrial development in specific locations, occurring relatively frequently, perpetrated by the same Defendants, without intervening acts by Defendants to sever the continuing nature of the acts. However, at their core, Plaintiffs' claims against Defendants are based on one discrete action by Defendants: the adoption in 2014 of the Land Use Plan that explicitly directed the zoning of industrial plants into predominantly Black areas of St. James Parish and created buffer zones protecting predominantly white spaces. The execution of that plan through subsequent discrete acts approving and rejecting certain permits (South Louisiana Methanol, Wolverine, Yuhuang, Bayou Bridge Pipeline, Formosa, Syngas, solar facilities) in accordance with that plan is a continuing effect of that initial harmful act, rather than a continuing violation itself. Because continuing effects of an alleged harm do not allow a plaintiff to rely on the continuing violations doctrine, the Court concludes that Plaintiffs' claims accrued

37

when the Parish adopted the Land Use Plan and Plaintiffs learned of the changes: in 2014. Additionally, the zoning events that occurred prior to the 2014 plan, while related to Defendants' subsequent decisions, are discrete actions that put Plaintiffs on notice to protect their rights, thereby starting the clock on prescription. Furthermore, considering that this Court should apply the continuing violation doctrine sparingly and the fact that the allegations forming the basis for Plaintiffs' § 1983 claims occurred over a year before filing their complaint, Plaintiffs § 1983 claims, including Claim I (Thirteenth Amendment) are prescribed.

### ii. Claim II/III: Fourteenth Amendment claims pursuant to 42 U.S.C. 1983 (Equal Protection and Substantive Due Process)

Plaintiffs also bring their Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983. (Rec. Doc. 29, at 10). Their Equal Protection and Substantive Due Process claims are based on the same actions by Defendants as alleged in their Thirteenth Amendment claim. *Id.* at 140-143. For the same reason that Claim I must be dismissed, Claim II and Claim III must also be dismissed as prescribed.

### iii. Claim IV: 42 U.S.C. 1982

Plaintiffs also claim that the St. James Parish land use practices violate the rights of Black residents to inherit, purchase, lease, sell, hold, and convey real property on equal terms as white citizens in violation of 42 U.S.C. § 1982. (Rec. Doc. 29, at 143). 42 U.S.C. § 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens

thereof to inherit, purchase, lease, sell, hold and convey real and personal property."

Because courts must apply state statutes of limitations to federal causes of action in

the absence of a special provision by Congress, Louisiana's one-year prescriptive

period also applies to federal civil rights claims under 42 U.S.C. § 1982. *Davis v.*

*Louisiana State Univ.*, 876 F.2d 412, 413 (5th Cir. 1989); *Brown v. Ballas*, 331 F.

Supp. 1033, 1037 (N.D. Tex. 1971). Accordingly, for the same reasons that Plaintiffs'

§ 1983 claims are prescribed, the Court finds that Plaintiffs' § 1982 claims are

prescribed and must be dismissed.

### iv. Claim VI: Religious Land Use and Institutionalized Persons Act (Discrimination).

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")

governs land-use regulation and religious exercise by institutionalized persons. *Holt*

*v. Hobbs*, 574 U.S. 352, 357 (2015). Specifically, RLUIPA states that

> No government shall impose or implement a land use regulation in a
> manner that imposes a substantial burden on the religious exercise of a
> person, including a religious assembly or institution, unless the
> government demonstrates that imposition of the burden on that person,
> assembly, or institution--
> (A) is in furtherance of a compelling governmental interest; and
> (B) is the least restrictive means of furthering that compelling
> governmental interest.

42 U.S.C. § 2000cc(a)(1). In this case, Plaintiffs allege that Defendants, by

implementing the Land Use Plan, discriminated against Black and Protestant

churches, including Plaintiff Mount Triumph Baptist Church, by prohibiting

industrial expansion within a two-mile buffer zone around Catholic churches, but not

other churches. (Rec. Doc. 29, at 146-48).[5] In the instant motion, Defendants argue that Plaintiffs' RLUIPA claims prescribed after four years, under the catch-all federal statute of limitations. (Rec. Doc. 33, at 42). Plaintiffs argue that all of their claims are based on a continuing violation, so their RLUIPA claim has not prescribed. (Rec. Doc. 43, at 16-17).

The applicable limitations period for RLUIPA claims is four years. *Jones v. Lumpkin*, No. 21-20106, 2023 WL 3075063, at *1 (5th Cir. Apr. 25, 2023) (citing 28 U.S.C. § 1658). Because the Court has already found that Plaintiffs' claims accrued when the Parish Council adopted the 2014 Land Use Plan and because the continuing violation doctrine does not apply in this case, the Court finds that Plaintiffs' RLUIPA discrimination claim (Claim VI) prescribed in 2018 and must be dismissed.

## IV.    Attorneys' Fees

Finally, Defendants request that this Court award St. James Parish its attorneys' fees for defending "numerous groundless claims" contained in a "600+ page Complaint fraught with meritless and irrelevant allegations designed for more media attention than for stating a cause of action." (Rec. Doc. 33, at 47).

Pursuant to 42 U.S.C. § 1988, a court may, in its discretion, award attorney's fees to a prevailing defendant in a section 1983 action, "only when a plaintiff's underlying claim is frivolous, unreasonable, or groundless." *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000) (quoting *Walker v. City of Bogalusa*, 168

---

[5] Plaintiffs also brought a claim (Claim V) under RLUIPA regarding the substantial burden on their exercise of religion. (Rec. Doc. 29, at 145-46). However, the Court found, in Section II(D), *supra*, that Plaintiffs lacked standing to bring this claim.

F.3d 237, 239 (5th Cir.1999)). To determine whether a suit is frivolous, a court should examine factors such as whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court dismissed the case or held a full trial. *Id.* The Fifth Circuit has "affirmed awards of attorney's fees where the plaintiff's civil rights claim lacks a basis in fact or relies on an undisputably meritless legal theory." *Doe v. Silsbee Indep. Sch. Dist.*, 440 F. App'x 421, 424 (5th Cir.2011).

Here, the position advanced by Plaintiffs is neither frivolous nor in bad faith, and Defendants mischaracterize both the length and contents of the complaint. Although Plaintiffs' claims are procedurally deficient, this Court cannot say that their claims lack a basis in fact or rely on a meritless legal theory. Therefore, Defendants' request for attorneys' fees is denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to strike is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Rule 12(b)(1) motion to dismiss is **GRANTED IN PART**. Claims V and VII are **DISMISSED WITH PREJUDICE** for lack of standing.

**IT IS FURTHER ORDERED** that Defendants' Rule 12(b)(6) motion to dismiss is **GRANTED IN PART**. Claims I, II, III, IV, and VI are **DISMISSED WITH PREJUDICE** as prescribed.

**IT IS FURTHER ORDERED** that Defendants' request for attorneys' fees is

**DENIED**.

New Orleans, Louisiana, this 16th day of November 2023.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE