UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA, ET AL. | * | CIVIL ACTION NO. 23-987 |
| | * | |
| VERSUS | * | SECTION: "J"(1) |
| | * | |
| ST. JAMES PARISH, ET AL. | * | JUDGE CARL J. BARBIER |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |

**************************************

ORDER AND REASONS

The plaintiffs in this action allege that the defendants have violated their constitutional and statutory civil rights by directing hazardous industrial facility development towards majority-Black districts and Black churches, where plaintiffs' members and congregants live. Presently before the Court is the plaintiffs' Motion for Leave to Supplement Complaint (Rec. Doc. 71) to add additional allegations concerning events that have occurred or have been discovered since the filing of their First Amended Complaint. For the following reasons, plaintiffs' Motion for Leave to Supplement Complaint (Rec. Doc. 71) is GRANTED and the Second Amended Complaint for Declaratory and Injunctive Relief shall be entered into the record.

Background

The plaintiffs in this lawsuit are a church and two environmental justice organizations: Mount Triumph Baptist Church, Inclusive Louisiana, and RISE St. James. They initiated this civil rights action on March 21, 2023, against St. James Parish (the "Parish"), the St. James Parish Council (the "Council"), and the St. James Parish Planning Commission (the "Commission"). Plaintiffs claim that:

> Defendants are in violation of the Thirteenth Amendment because the St. James Parish land use system, which concentrates dangerous and extractive industrial facilities in predominantly Black areas, is a practice traceable as a "badge or incident" of slavery. Defendants are in violation of the Fourteenth Amendment's

1

> Equal Protection guarantee because land use decisions by St. James Parish have intentionally discriminated against Black residents, including Plaintiffs, by consistently and intentionally locating dangerous facilities in Black areas of the Parish, while expressly sparing white citizens. The Defendants are in violation of the Fourteenth Amendment's guarantee of substantive due process because they have intentionally caused a conscience-shocking level of danger to Plaintiffs' right to bodily integrity. Defendants are also in violation of another Reconstruction era statute, 42 U.S.C. § 1982 – which protects Black residents' enjoyment of their right to property on equal terms as whites – as the St. James Parish land use practices intentionally continue to deplete property values of Black residents while protecting that of white residents.

(Rec. Doc. 1, at 9-10). Plaintiffs also brought claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), alleging that:

> the Parish land use plan and its land use decisions place a 'substantial burden' on the religious practice of Plaintiffs' members who, as descendants of enslaved persons, have a religious and spiritual connection to the cemeteries of their ancestors – a practice that is jeopardized by heavy industrial development, and because land use decisions have been made in a religiously discriminatory manner that burdens Black Baptist Churches but spares white Catholic churches.

Id. at 10. Finally, they brought claims under the Louisiana Constitution and its provision providing protection "for Black residents to preserve and promote their cultural and historical heritage." Id.

In November 2023, the District Court dismissed Plaintiffs' claims under the "substantial burden" provision of the RLUIPA and under the Louisiana Constitution, Article XII, Section 4, which recognizes "the right of the people to preserve, foster, and promote their respective historic linguistic and cultural origins" for lack of standing. The Court also dismissed as prescribed Plaintiffs' remaining claims under the Thirteenth and Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1982, and the RLUIPA's religious discrimination provision. The Court found that "at their core, Plaintiffs' claims against Defendants are based on one discrete action by Defendants: the adoption in 2014 of the Land Use Plan that explicitly directed the zoning of industrial plants into predominantly Black areas of St. James Parish and created buffer zones protecting predominantly white spaces." Rec. Doc. 62, at 37. Plaintiffs appealed.

The Fifth Circuit Court of Appeals reversed, finding that the Plaintiffs had alleged discriminatory acts that fell within the applicable limitations period and that the Plaintiffs have standing because they have pleaded cognizable property injuries traceable to the conduct of the Parish and stigmatic injury sufficient for Article III adjudication. Inclusive Louisiana v. St. James Par., 134 F.4th 297 (5th Cir. 2025). The Fifth Circuit recognized four alleged acts occurring within the relevant limitations periods (one year for §1983 and four years for RLUIPA):

1. The Parish's rejection of Plaintiffs 'request for a moratorium on "polluting industry" in their majority-black communities on August 17, 2022.

2. The simultaneous adoption of a parish-wide moratorium on solar facilities, as requested by White residents.

3. The Parish Council's approval of the Syngas Energy Holding, LLC's methanol production project on March 25, 2019.

4. Approval of the Wanhua Chemical US Operations polyurethane manufacturing facility project on May 20, 2019. Id. at 306.

Further, the Fifth Circuit found that the Plaintiffs' allegations did not *all* stem from the 2014 Land Use Plan. Id. Although some challenged actions were consistent with the Land Use Plan, other allegations predated the plan, still others were contrary to the Plan, and still others were independent of the plan. Id. at 308. The court of appeals also found that even if all acts alleged by the Plaintiffs flowed from the 2014 Land Use Plan, individual land use applications still require district approval or rejection and can, if timely, be challenged. Id.

The case was remanded to this Court on May 28, 2025, and on July 1, 2025, Plaintiffs filed the present Motion for Leave to Supplement Complaint.[1] They seek to add new allegations

---

[1] The case was stayed pending the defendants' attempt to obtain review by the United States Supreme Court. After their petition for certiorari was denied, the case was reopened on October 24, 2025.

concerning events that occurred after or as to which information was obtained after the filing of the First Amended Complaint. These new allegations concern the Parish's approval of Koch Methanol's proposal to expand its facility, the Parish's approval of Acadian Gas Pipeline's request to construct a natural gas pipeline to the Koch Methanol plant, the Parish's approval of Occidental Chemical Corporation's proposal to build two new chlorine and ethylene dichloride pipelines, the Parish's approval of Air Liquide Large Industries request to construct an oxygen pipeline and a nitrogen pipeline, and the Parish's approval of a request by Nucor Steel to build a carbon dioxide compression unit.

    Defendants oppose, arguing that the new acts do not relate to the previously alleged acts. They argue that the plaintiffs erroneously rely on the continuing violation doctrine. And they argue that plaintiffs have not establish that justice requires the amendment. They also argue that the amendment is futile because the claims are time-barred, premature and/or not final and/or not relevant to the allegations in the First Amended Complaint. They argue that the information plaintiffs provide about financial benefits approved for certain industrial developments is irrelevant. Finally, they argue that allowing the amendment would prejudice them.

    In reply, the plaintiffs argue that the defendants' "some relationship" argument should be rejected because their original claims are based on a pattern and practice of racially discriminatory land use decisions and the new allegations concern additional land use decisions. They insist that individual land use decisions made since the 2014 Land Use Plan up until the present are relevant to the alleged discriminatory pattern and practice. With regard to the alleged lack of finality or the suggestion that the plaintiffs should challenge the Parish's decisions in state court, the plaintiffs point out that they are not challenging the individual decisions but citing them as further evidence of a discriminatory pattern and practice. They confirm that they will raise future relevant acts by

4

the Parish to the Court. The Plaintiffs point out that the Fifth Circuit has already rejected on appeal the defendants' continuing violation argument. They argue that information about the financial cost of harmful industry is relevant to their claims because they bear on the cost-benefit analysis the Parish may or may not have undertaken to justify its actions. Finally, they argue that while the litigation might be complex, that does not mean the defendants are prejudiced.

Law and Analysis

1. *Standard for Leave to Amend and Supplement*

Under Federal Rule of Civil Procedure 15(a)(2), when the time period for amending a pleading as a matter of course has passed, a party may amend its pleadings by consent of the parties or by leave of court. "The court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). Thus, the United States Court of Appeals for the Fifth Circuit instructs that the "district court must possess a 'substantial reason' to deny a request for leave to amend." Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004). Nonetheless, "that generous standard is tempered by the necessary power of a district court to manage a case." Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 177 (5th Cir. 2016) (quoting Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003)). The court may consider numerous factors when deciding whether to grant a motion for leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003).

Pursuant to Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Such supplementation is permissible even if

5

"the original pleading is defective in stating a claim or defense." Id. Similar to when it considers whether to grant leave to amend:

> the district court should consider whether permitting the pleading would cause undue delay in the proceedings or undue prejudice to the nonmovant, the movant is acting in bad faith or with a dilatory motive, the movant has previously failed to cure deficiencies by prior pleadings, or the proposed pleading is futile in that it adds nothing of substance to the original allegations or is not germane to the original cause of action.

Lewis v. Knutson, 699 F.2d 230, 239 (5th Cir. 1983).

Citing a Ninth Circuit Court of Appeals case, the defendants here argue that the plaintiffs must establish "some relationship" between the new matters and the original action. Keith v. Volpe, 858 F.2d 467, 474 (9th Cir. 1988). In Keith, the defendant argued that the supplemental complaint did not arise out the same transaction or occurrence or involve common questions of law or fact as the original complaint. Id. The Ninth Circuit rejected the suggestion that Rule 15(d) imposes a "transactional" test because the text of the rule does not require it (while other rules do). Id. The court noted that "[w]hile some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction." Keith v. Volpe, 858 F.2d 467, 474 (9th Cir. 1988). But no case has been cited where a court in this circuit has considered the level of "connection" between the original and supplemental complaint when determining whether to grant leave under Rule 15(d).

2. *Analysis*

First, the Court rejects the defendants' attempt to graft some type of "connection" test onto Rule 15(d). While there might be a case where the supplemental claims are so unrelated or irrelevant to the original complaint that the Court would decline to exercise its discretion to grant leave to supplement, this is not such a case. The newly alleged land use decisions are clearly related

to plaintiffs' original complaint challenging the Parish's land use decisions as systematically discriminatory.[2]

Under Both Rule 15(a) and Rule 15(d), the Court considers undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility. There is no allegation of undue delay,[3] bad faith, or dilatory motive, and the Court finds none. No issue of repeated failures to cure deficiencies has been raised. Instead, the Court will focus on the defendants' arguments that the supplementation would be futile and they would be prejudiced if the supplementation were allowed.

   a. *Futility*

Defendants argue that at least one act alleged in the supplemental complaint is time barred—the September and October 2023 approval of the Acadian Gas Pipeline. They insist this approval happened outside the one year prescriptive period before July 1, 2025, when the proposed pleading was filed. They insist the Acadian Gas Pipeline action does not relate back to the original complaint because the approval is separate and distinct form any acts alleged therein. The Court rejects this basis for finding the motion futile. This argument pertains to only one small portion of the proposed pleading and, as plaintiffs point out, even acts outside the statute of limitations period may provide evidence of a discriminatory pattern and practice. See Inclusive Louisiana v. St. James Par., 134 F.4th 297, 307–08 (5th Cir. 2025), cert. denied sub nom. St. James Par., LA v. Inclusive LA, No. 25-195, 2025 WL 2949577 (U.S. Oct. 20, 2025) (recognizing alleged instances of

---

[2] Indeed, elsewhere in their opposition memorandum, defendants themselves recognize a connection, insisting that "[t]he New Acts contained in the Second Amended Complaint are merely a continuation of earlier acts of discrimination." Rec. Doc. 83, at 9.

[3] Defendants do argue that plaintiffs have not shown that justice requires the amendment because some of the financial information alleged was available well before the original Complaint was filed. But the cited allegations provide background information concerning Parish decisions that occurred after the original complaint was filed. Prior to these post-Complaint decisions, the cited allegations would not have been relevant. That some underlying facts were available earlier does not provide a basis for finding undue delay here.

7

discriminatory land use decisions outside of the limitations period and the plaintiffs' allegation of discriminatory land use patterns and practices). Thus, even if claims based on the Acadian Gas Pipeline action are barred, the supplemental pleading is not futile.

Defendants also argue that plaintiffs' new allegations "are merely a continuation of earlier acts of discrimination" under Nicholson v. York, No. 23-20440, 2024 WL 913378, at *3 (5th Cir. Mar. 4, 2024), cert. denied, 145 S. Ct. 1528 (2025). They do not clearly explain what result should come from this conclusion (if it is correct), but point out that the plaintiff's discrimination claim in Nicholson was untimely because the limitations period accrued when she knew or should have known of the violation and that later experiences were just a continuation of the first act of discrimination. As plaintiffs point out, to the extent defendants are challenging the timeliness of the original claims, that issue has already been decided (and defendants' argument rejected) by the Fifth Circuit.[4] To the extent they argue plaintiffs should have alleged the new acts in the original complaint, that would have been impossible because the acts had not occurred. To the extent they argue that the newly alleged claims would not have been timely if originally filed in July 2025 because plaintiffs were aware of the discriminatory acts earlier, that is a hypothetical procedural scenario not before the Court. The Nicholson case provides no basis to deny leave to supplement.

Finally, the defendants argue that the new acts are premature and/or not final. Defendants argue that some of the alleged actions are not final decisions. For example, plaintiffs allege that the Planning Commission approved components for the Koch Menthol project and recommended approval by the Parish Council, but they do not allege a final action by the Parish Council. Rec. Doc. 71-2, ¶493. In addition to other examples, defendants cite plaintiffs' allegation that the

---

[4] The Fifth Circuit did not address the continuing violations argument, though, because it found that the plaintiffs had alleged acts within the applicable limitations period and that those claims were not time barred. Inclusive Louisiana, 134 F.4th at 305.

Planning Commission and Parish Council violated their ordinance by not applying the most stringent level or review for the OxyChem project. Id. ¶ 507-512. The defendants argue that the plaintiffs have sought judicial review or have the right to do so for these issues raised in the supplemental pleading.

The plaintiffs argue that they are not challenging the land use decisions as violating local ordinances. Instead, they say they are presenting these decisions as further evidence of a discriminatory pattern or practice of unconstitutionally discriminatory land use decisions. They submit that consideration of whether officials deviated from normal procedures is relevant to that analysis.

The Court finds that while lack of finality or prematurity of the alleged land use decisions may preclude some claims concerning those decisions, they do not appear to preclude the constitutional claims asserted by the plaintiffs. At this time, the Court finds that the purported lack of finality or prematurity of some alleged acts should not bar supplementation of the complaint

    b. *Prejudice*

Defendants argue they would be prejudiced if the amendment were allowed because the addition of the new acts to the complaint would create additional financial and litigation burdens on the defendants, who will have to assess and respond to the claims. But the burden of litigating a non-frivolous claim is not the type of burden contemplated by the prejudice factor. A defendant may be prejudiced when a plaintiff changes the factual and legal basis for his claim after it has been pending for years and gone through extensive discovery, e.g., Mayeaux v. Louisiana Health Serv. & Indem. Co., 376 F.3d 420, 427 (5th Cir. 2004), or when defendant "has already filed two separate motions to dismiss under Rule 12(b)(6) in response to Plaintiffs' vacillating allegations" and the plaintiffs have offered no explanation for their delay, Middaugh v. InterBank, 528 F. Supp.

9

3d 509, 536 (N.D. Tex. 2021). Such considerations are not at issue here. Discovery has yet to begin. The Court finds no prejudice to the defendants.

## Conclusion

Because the Court finds the proposed pleading is not futile and defendants would not suffer undue prejudice if leave to amend and supplement were granted, the Court finds Rule 15(a) and 15(d) have been satisfied. Accordingly, plaintiffs' Motion for Leave to Supplement Complaint (Rec. Doc. 71) is GRANTED and the Second Amended Complaint for Declaratory and Injunctive Relief shall be entered into the record.

New Orleans, Louisiana, this 4th day of November, 2025.

_____
Janis van Meerveld
United States Magistrate Judge