**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | * * * * | **CIVIL ACTION NO.: 2:23-cv-00987** |
| VERSUS | * * | JUDGE: CARL J. BARBIER |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | * * * * | MAG. JUDGE JANIS VAN MEERVELD |

## <u>MEMORANDUM IN SUPPORT OF RE-SUBMITTED RULE 12(b)(6) MOTION TO DISMISS CLAIMS</u>

BY ATTORNEYS

John King, La. Bar No. 17004
john.king@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
danielle.borel@bswllp.com
**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*Attorneys for St. James Parish, St. James Parish Council and St. James Parish Planning Commission*

## <u>TABLE OF CONTENTS</u>

**PAGE**

I.    INTRODUCTION ................................................................................................ 2

II.   PROCEDURAL BACKGROUND ...................................................................... 3

III.  PLAINTIFFS' COMPLAINT FAILS TO STATE CLAIMS AND SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6). ................................................ 6

    A.    Claim I - Thirteenth Amendment: Plaintiffs failed to plead facts of a badge or incident of slavery. ............................................................... 6

    B.    Claim II/III - Fourteenth Amendment: Plaintiffs Have Not Plead Discriminatory Intent, Unequal Treatment, or the Lack of a Rational Basis to Support Their Claims. ....................................................... 10

        1.    Claim II - (Equal Protection): Plaintiffs failed to plead facts of discriminatory intent. ........................................................ 11

        2.    Claim II - (Equal Protection): Plaintiffs failed to plead facts of a lack of equal treatment. ..................................................... 15

        3.    Claim III - Substantive Due Process (Bodily Safety and Integrity): Plaintiffs failed to plead facts of a lack of rational objective. ....................................................................... 16

    C.    Claim IV - 42 U.S.C. § 1982 (Property Rights of Black Citizens): Plaintiffs failed to plead facts of any intentional discrimination. ......................... 17

    D.    Claim VII - Preservation of cultural origins: Plaintiffs failed to plead an infringement of their ability to preserve, foster, or promote their historic linguistic or cultural origins or the property which they own. ............................. 18

    E.    Claim V (Substantial Burden) and Claim VI (Discrimination) - Religious Land Use and Institutionalized Persons Act: Plaintiffs failed to plead facts of a property interest. ....................................................................... 21

    F.    Request for Declaratory Judgment: Plaintiffs failed to exhaust administrative remedies and collaterally attack the zoning decisions of St. James Parish. ............................................................................... 23

IV.   CONCLUSION .............................................................................................. 25

5450907.v2

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

**<u>Cases</u>**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ................................................................................................................ 6

*Barber v. Louisiana Workforce Commission*, 2017-0844 (La. App. 1st Cir. 10/19/18) 266 So.3d 368 .......................................................................................................................... 22

*Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294 (D.D.C. 2005) ........................................... 10

*Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656 (6th Cir. 2018) ................................. 10

*Brown v. Philip Morris Inc.,* 250 F.3d 789 (3d Cir. 2001) .......................................................... 18

Channer v. Hall, 112 F.3d 214 (5th Cir.1997) ................................................................................ 9

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ................................................... 11

*City of Memphis v. Greene*, 451 U.S. 100 (1981) .......................................................... 7, 9, 12, 18

*Civil Rights* (*C.R.*) *Cases*, 109 U.S. 3 (1883) ...................................................................... 7, 8, 9

*E. New Orleans Neighborhood Advisory Comm'n v. Levy Gardens Partners 2008, LLC*, 2009-0326 (La. App. 4 Cir. 7/15/09), 20 So. 3d 1131 ...................................................... 24

*FM Properties Operating Co. v. City of Austin*, 93 F.3d 167 (5th Cir. 1996) ............................. 16

*Guesby v. Bert Nash Cmty. Mental Health Ctr., Inc.*, No. 22-2370-DDC-TJJ, 2023 WL 3040454 (D. Kan. Apr. 21, 2023) .......................................................................................... 8

*Hazeur v. Fed. Warranty Serv. Corp.*, No. CIV.A. 99-3156, 2000 WL 365013 (E.D. La. Apr. 7, 2000) ..................................................................................................................... 10

*Holt v. Hobbs*, 574 U.S. 352 (2015) ............................................................................................. 21

*Humphreys v. Bennett Oil Corporation*, 197 So. 222 (La. 1940) ................................................. 22

*Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997) .................................................................... 11

*Man Roland, inc. v. Kreitz Motor Exp., Inc.,* 438 F.3d 476 (5th Cir. 2006) .................................. 4

*McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) ................................................... 17

*McGinnis v. Royster*, 410 U.S. 263 (1973) .................................................................................. 11

*McGraw v. City of New Orleans,* 2016-0446 (La. App. 4 Cir. 3/29/17), 215 So. 3d 319 ........... 19

*Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017) ................................. 19

*Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573 (E.D. La. 2016) ..................... 16, 19

*Monumental Task Comm., Inc. v. Foxx*, No. 16-12495, 2016 WL 5780194 (E.D. La. Oct. 4, 2016) ......................................................................................................................... 16

*Murray v. Earle*, 334 F. App'x 602 (5th Cir. 2009) ........................................................................ 9

*Nobles Const., L.L.C. v. Par. of Washington*, No. CIV.A. 11-2616, 2012 WL 1865711 (E.D. La. May 22, 2012) ................................................................................................... 16

*Nobles Const., L.L.C. v. Washington Par.*, 544 F. App' 263 (5th Cir. 2013) ............................... 16

*Palermo Land Co. v. Plan. Comm'n of Calcasieu Par.*, 561 So. 2d 482 (La. 1990) .................... 24

*Palmer v. Thompson*, 403 U.S. 217 (1971) ............................................................................ 8, 11

*Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256 (1979) .................................................. 12

5450907.v2

*Petroplex Int'l v. St. James Par.*, 158 F. Supp. 3d 537 (E.D. La. 2016)........................................ 24

*Port Cargo Services, LLC v. Westchester Surplus Lines Ins. Co.*, 671 F. Supp. 3d 722 (E.D La. 5/2/2023)............................................................................................................................ 6

*Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673 (5th Cir. 2007)................................. 6

*State ex rel. Civello v. City of New Orleans*, 97 So. 440 (La. 1923) ............................................ 24

*Sylvester v. Nilsson*, No. CV H-23-4085, 2024 WL 1144259 (S.D. Tex. Mar. 15, 2024) .......... 10

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002) ..................................................... 6

*United States v. Galloway*, 951 F.2d 64 (5th Cir. 1992)............................................................... 12

*United States v. Kozminski*, 487 U.S. 931 (1988).......................................................................... 7

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 ................................... 12, 13

*Washington v. Davis*, 426 U.S. 229 (1976)................................................................................... 12

*Wheelahan v. City of New Orleans*, No. CV 19-11720, 2020 WL 1503560 (E.D. La. Mar. 30, 2020) ..................................................................................................................................... 15

*Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378 (2006) .............................................................. 23

*Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631 (E.D. La. 2006) ................................................ 18

## **Statutes**

42 U.S.C 1983.................................................................................................................................. 11

42 U.S.C. §2000cc ..................................................................................................................... 21, 22

F.R.C.P. Rule 12 ........................................................................................................................... 1, 6

## **Other Authorities**

La. Const. art. I, § 2 ...................................................................................................................... 22

La. Const. art. XII, § 4 ................................................................................................................... 19

U.S. Const. amend. XIII.............................................................................................................. 6, 7

U.S. Const. amend. XIV ...................................................................................................... 10, 11, 15

## <u>MEMORANDUM IN SUPPORT OF RE-SUBMITTED RULE 12(b)(6) MOTION TO DISMISS CLAIMS</u>

St. James Parish, on behalf of itself and the St. James Parish Council and St. James Parish Planning Commission (the **"Defendant"** or **"St. James Parish"**), files this Memorandum in Support of its Re-Submitted Rule 12 Motion to Dismiss Claims as instructed by the Fifth Circuit in response to the Amended Complaint for Declaratory and Injunctive Relief [doc. 29] filed by Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James ("**Plaintiffs**"), which has now been amended with the Second Amended Complaint for Declaratory and Injunctive Relief [doc.104] (the "**Complaint**"). Pursuant to Rule 12(b)(6), St. James Parish moves this Court to dismiss Plaintiffs' claims as follows:

  i.   Claim I - Thirteenth Amendment: for Plaintiffs' failure to plead facts of a badge or incident of slavery.

  ii.   Claim II - Fourteenth Amendment (Equal Protection): for Plaintiffs' failure to plead facts of discriminatory intent and failure to plead facts of a lack of equal treatment.

  iii.   Claim III - Fourteenth Amendment Substantive Due Process (Bodily Safety and Integrity): for Plaintiffs' failure to plead facts of a lack of rational objective.

  iv.   Claim IV - 42 U.S.C. § 1982 (Property Rights of Black Citizens): for Plaintiffs' failure to plead facts of a property injury and failure to plead facts of intentional discrimination.

  v.   Claim VII - Preservation of cultural origins: for Plaintiffs' failure to plead an infringement of their ability to preserve, foster, or promote their historic linguistic or cultural origins.

  vi.   Claim V/VI - Religious Land Use and Institutionalized Persons Act (Substantial Burden)/(Discrimination): for Plaintiffs' failure to plead facts of a property interest.

  vii.   Request for Declaratory Judgment: for Plaintiffs failure to exhaust administrative remedies and collaterally attack the zoning decisions of St. James Parish.

Defendant originally filed a Rule 12 motion [docs. 20, 33] with many of the same arguments herein resubmitted. This Court granted the motion on the grounds of lack of standing

and prescription (which are not presented herein) and did not adjudicate the arguments herein. On appeal, the Fifth Circuit reversed this Court's prior granting of the Motion to Dismiss, but confirmed there remained unaddressed arguments that were proper for re-submission to this Court. Thereafter, Plaintiffs requested leave to amend its First Amended Complaint before these arguments could be addressed, which was granted. As such, St. James Parish submits these arguments again for adjudication because dismissal of Plaintiffs' claims with prejudice is warranted.

## I.    <u>INTRODUCTION</u>

Plaintiffs' Complaint relies on the dark history of slavery in the United States and Louisiana to portray the actions of current elected officials as ones motivated by historic discriminatory intent. Despite the historical allegations in its 174 pages, the Complaint lacks a sufficient factual basis to establish elements of Plaintiffs' claims. It lacks allegations that the elected officials who unanimously adopted the Land Use Plan and made decisions pursuant to that plan were motivated by the discriminatory intent necessary to sustain those claims. Based on these historic allegations, some going back to 1685, and unsupported claims of discriminatory intent, Plaintiffs attempt to paint the elected officials of St. James Parish as possessing a discriminatory animus against their own citizens. Plaintiffs seek to have the Federal judiciary disregard any notion of the separation of powers and assert absolute and continuing authority over local land use decisions in St. James Parish, a function reserved for the local legislative branch of government. This Court should see through this politically motivated pleading and dismiss Plaintiffs' Complaint with prejudice.

## II.    **PROCEDURAL BACKGROUND**

This Court granted in part and denied in part St. James Parish's original motion [doc. 20, 33]. [Doc. 62]. This Court granted the motion to dismiss on grounds of standing and prescription dismissing all Plaintiffs' claims.[1]

Here, the original complaint was filed March 21, 2023. This Court's ruling confirmed that Plaintiffs' Claims I, II, III, IV, and VII are subject to a one-year statute of limitations. [Doc. 121-2, p. 10].[2] This Court did not apply the continuing violations doctrine. [Doc. 62, p. 38, 40]. Rather, it found the 2014 Land Use Plan put the Plaintiffs on notice of their claims. The Fifth Circuit reversed this ruling based on its assessment that Plaintiffs had pled timely allegations. [Doc. 121-2, p. 11]. It held that "[b]ecause the [Plaintiffs] allege acts within the applicable limitation periods for each of their claims, the statute of limitations does not bar suit for those claims. Thus, [the Fifth Circuit] need not assess the applicability of the continuing violations doctrine." [Doc. 121-2, p. 11, n. 6]. As confirmed by the Fifth Circuit, only actions after March 21, 2022, are timely for Claims I-IV and VII. [Doc. 121-2, p. 11]. In this matter, only the following allegations from the First Amended Complaint (Doc. 29) are viable for Claims I-IV and VII:

1.  On August 17, 2022, the Parish amended the Land Use Plan to enact a moratorium on solar farms (the "**Solar Moratorium**").[3]

2.  On August 17, 2022, the Parish allegedly failed to acknowledge a request sent in September 2019 to the representatives of Districts 4 and 5 seeking to place a moratorium on petrochemical facilities in the Parish (the "**Petrochemical Moratorium Request**") on the Council's agenda.[4]

---

[1] The Court also dismissed nominal Defendants St. James Parish Council and St. James Parish Planning and Zoning Commission. [Doc. 62, p. 27]. That Order was not appealed by Plaintiffs. Those Defendants are no longer parties.

[2] The Fifth Circuit also reiterated that the Plaintiffs did not contest this Court's holding that Plaintiffs' Claims I, II, III, and IV are subject to a one-year statute of limitations period.

[3] For this notion, Plaintiffs have cited to Paragraphs 330-35 of their First Amended Complaint (doc. 29), now found at Paragraphs 335-40 of their Complaint (doc. 104). [Doc. 43, p. 18].

[4] For this notion, Plaintiffs have cited to Paragraphs 338, 341, 387-88, and 432 of their First Amended Complaint (doc. 29), now found at Paragraphs 343, 346, 415-16, and 466 (doc. 104). [Doc. 43, p. 17]. The September 2019 letter requested that the representatives of the majority-Black Districts 4 and 5 put the issue of a petrochemical moratorium on the agenda. Any council member may introduce an ordinance. Home Rule Charter, Article IV, Section B(3)(b).

[Doc. 121-2, p. 11]. This Court's prior ruling also confirmed that Plaintiffs' Claims V and VI are subject to a four-year statute of limitations, which was confirmed by the Fifth Circuit. [Doc. 121-2, p. 10]. In this matter, <u>only</u> the following allegations from the First Amended Complaint (Doc. 29) remain viable for Claims V and VI:

1.  In May 2019, the Planning Commission approved a land use permit for Wanhua Chemical US Operations ("**Wanhua**").

2.  In May 2019, the Parish affirmed the approval of Syngas Energy Holding, LLC's ("**Syngas**") proposal to build a methanol production plant.[5]

[Doc. 121-2, p. 12].

When this Court dismissed Plaintiffs' claims for lack of standing or prescription, this Court did not fully adjudicate many of St. James Parish's arguments because it was unnecessary. Specifically, this Court did not address Plaintiffs' failure to exhaust administrative remedies, instead evaluating the substantive claims underlying the request for declaratory judgment and ultimately dismissing them on other grounds. [Doc. 62, pp. 27-28]. This Court did not address St. James Parish's Rule 12(b)(6) arguments. [Doc. 62, p. 28].

This was confirmed by the Fifth Circuit: "[t]he Parish provides alternative arguments in support of the dismissal of Claims I-IV and VI. But none of those reasons were addressed by the district court. *Man Roland, inc. v. Kreitz Motor Exp., Inc.,* 438 F.3d 476, 483 (5th Cir. 2006) (holding that, absent special circumstances that are inapplicable here, this court does not consider issues passed over by a district court)." [Doc. 121-2, p. 16, n. 8]. As such, the Fifth Circuit "decline[d] to consider these alternative arguments and leave them for the district court to consider

---

[5] Plaintiffs cite to paragraphs 385 and 422 of their Amended Complaint (doc. 29) for these allegations, now found at Paragraphs 413 and 456 (doc. 104). [Doc. 43, p. 19]. The Parish Council voted to send the Wanhua approval back to the Planning Commission. [Doc. 104, ¶ 417].

in the first instance." [Doc. 121-2, p. 16, n. 8]. The Fifth Circuit reversed this Court's dismissal and remanded for further proceedings consistent with its opinion.

Thereafter, Plaintiffs moved for and were granted leave to file a second amended petition. The main new allegations in the Complaint can be summarized as follows:

1. Tax exemptions discussed with various industry during the land use permitting process. [Doc. 104, ¶¶ 252-256, 350, 363, 386, 404, 425-26, 449-50, 496].

2. The 2023 amendment to the Land Use Plan and repealing of the parish-wide solar moratorium, and rejection of an application for a solar farm [Doc. 104, ¶¶ 347-368]

3. An April 2, 2025 resolution by the Parish Council supporting the 2019 approval of Formosa's Sunshine Project. [Doc. 104, ¶ 441].

4. Koch Methanol's expansion request and the procedural history regarding a separate state court lawsuit regarding Koch Methandol's application for an expansion permit [doc. 104, ¶¶ 467-492], and the Parish Planning Commission' subsequent public hearing on the request [doc. 104, ¶¶ 493-496].

5. Various approvals for pipelines (Acadian Gas Pipeline System [doc. 104, ¶¶ 497-502]; Occidental Chemical Corporation ("OxyChem") [doc. 104, ¶¶ 503-512]; and Air Liquide [doc. 104, ¶¶ 513-18]).

6. The November 25, 2024 approval by the Parish Planning Commission of a request by Nucor Steel to build a carbon dioxide compression unit, and the following Parish Council hearings and approval regarding Exxon's land use request to build a related pipeline. [Doc. 104, ¶¶ 519-553].

7. Plaintiff Inclusive's October 2024 publishing of a report regarding individuals believed to be buried on the property now owned by Formosa, and Plaintiffs' dealings with the property owner, Formosa, regarding access to that property. [Doc. 104, ¶¶ 658-63].

Nothing in these supplemental allegations supports a claim of racial discrimination. Because Plaintiffs' new allegations fail to address the deficiencies raised previously, and consistent with the Fifth Circuit's opinion, St. James Parish herein re-submits its Rule 12(b)(6) motion to dismiss for consideration by this Court in the first instance.

III.    **PLAINTIFFS' COMPLAINT FAILS TO STATE CLAIMS AND SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).**

Dismissal is appropriate when a plaintiff fails "to state a claim upon which relief can be granted." F.R.C.P. 12(b)(6). To withstand a Rule 12(b)(6) motion, Plaintiffs' Complaint must (1) assert a plausible claim and (2) set forth sufficient factual allegations to support the claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint sufficiently states a claim "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citations omitted). It is insufficient for Plaintiffs to offer labels and conclusions or formulaic recitations of the elements of a cause of action. *Id.* at 668.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007). However, the court is not bound to accept as true legal conclusions couched as factual allegations. *Ashcroft*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). A complaint may be dismissed when it appears "beyond a doubt that plaintiff can prove no set of facts" that would entitle him to prevail. *Port Cargo Services, LLC v. Westchester Surplus Lines Ins. Co.*, 671 F. Supp. 3d 722 (E.D La. 5/2/2023)(quoting *Twombly*, 550 U.S. at 560–61, 127 S.Ct. 1955).

A.    **Claim I - Thirteenth Amendment: Plaintiffs Failed to Plead Facts of a Badge or Incident of Slavery.**

The Thirteenth Amendment to the United States Constitution states:

**Section 1.** Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
**Section 2.** Congress shall have power to enforce this article by appropriate legislation.

U.S. Const. amend. XIII. "The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (citations omitted). "[T]he theme of the debates surrounding this statute is that the former slaves continued to be subject to direct, intentional abuses at the hands of their former masters. That was the problem Congress intended to address and that focus should determine the reach and scope of this statute." *City of Memphis v. Greene*, 451 U.S. 100, 134 (1981) (White, J., concurring).

In 1883, the Supreme Court interpreted the Thirteenth Amendment by stating: "it is assumed that the power vested in Congress to enforce the article by appropriate legislation [Section 2], clothes Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States. . ." *Civil Rights* (*C.R.*) *Cases*, 109 U.S. 3, 20 (1883). Plaintiffs' Thirteenth Amendment claims have not pled any deprivation of rights that is a "badge or incident of slavery."[6] The Supreme Court described the incidents of slavery as "[c]ompulsory service of the slave for the benefit of the master, restraint of his movements except by the master's will, disability to hold property, to make contracts, to have a standing in court, to be a witness against a white person, and such like burdens and incapacities were the inseparable incidents of the institution." *C.R. Cases*, 109 U.S. 3, 22 (1883). The Supreme Court continued by making the point that many wrongs that might violate an individual's right to equal protection under the Fourteenth Amendment were not wrongs actionable under the Thirteenth Amendment as "badges

---

[6] Plaintiffs cite no applicable statute passed by Congress pursuant to Section 2.

and incidents of slavery" "when not involving the idea of any **subjection of one man to another**." *Id.* at 24. The Supreme Court demonstrated its point by declaring that the unequal treatment of Blacks, through the denial based on race of an accommodation or privilege to use an inn, public conveyance, or theater "has nothing to do with slavery or involuntary servitude." *Id.* at 24.[7] "It would be running the slavery argument into the ground to make it apply to every act of discrimination . . ." *Id.*

Today, "courts routinely reject Thirteenth Amendment claims that do not involve forced or coerced labor." *Guesby v. Bert Nash Cmty. Mental Health Ctr., Inc*., No. 22-2370-DDC-TJJ, 2023 WL 3040454, at *2 (D. Kan. Apr. 21, 2023).

A facially neutral zoning ordinance, even one that might disparately impact minorities, is not a "badge or incident of slavery" subject to protections under the Thirteenth Amendment. In *Palmer v. Thompson,* the Supreme Court rejected the notion that a city council decision to close a public pool was a "badge or incident" of slavery as a violation of the Thirteenth Amendment, finding to hold such "would severely stretch its simple words and do violence to its history." 403 U.S. 217 (1971). Importantly, the Supreme Court stated: "[e]stablishing this Court's authority under the Thirteenth Amendment to declare new laws to govern the thousands of towns and cities of the country would grant it a law-making power far beyond the imagination of the amendment's authors." *Id.* at 226–27.

The Supreme Court clarified "a regulation's adverse impact on a particular neighborhood will often have a disparate effect on an identifiable ethnic or racial group. To regard an inevitable

---

[7] The Supreme Court confirmed such a wrong would properly be addressed through present state laws or, if sanctioned by state law, through the Fourteenth Amendment, but not the Thirteenth Amendment. *See C.R. Cases*, 109 U.S. at 24 (1883).

consequence of that kind as a form of stigma so severe as to violate the Thirteenth Amendment would trivialize the great purpose of that charter of freedom." *City of Memphis*, 451 U.S. at 128.

Here, Plaintiffs' attempt to contort the facts into a Thirteenth Amendment claim certainly trivializes its great purpose. St. James Parish's land use actions may have an adverse impact on specific districts as a "routine burden of citizenship," but it does not rise to the level of a badge or incident of slavery. *See id*. The parish-wide (now repealed) Solar Moratorium, the unconsidered Petrochemical Moratorium Request, the review of land use applications by the Planning Commission and Parish Council, and the related tax exemptions cannot be said to implement compulsory labor for the benefit of a master, to restrain movements, or "such like burdens and incapacities [which] were the inseparable incidents of the institution [of slavery]." *C.R. Cases*, 109 U.S. at 22 (1883). These zoning decisions do not involve the "**subjection of one man to another**." No part of the Land Use Plan or parish permitting decisions is akin to the involuntary servitude prohibited by the Thirteenth Amendment. Plaintiffs' utilization of the Thirteenth Amendment here "would severely stretch its simple words and do violence to its history."

Moreover, the Fifth Circuit has not established that there is a private right of action under the Thirteenth Amendment under which Plaintiffs could bring a claim. *Murray v. Earle*, 334 F. App'x 602, 607 (5th Cir. 2009) ("It is not altogether clear that there is a private right of action under § 1983 for violations of the Thirteenth Amendment. *See Channer v. Hall*, 112 F.3d 214, 217 n. 5 (5th Cir.1997) ("suits attacking the 'badges and incidents of slavery' must be based on a statute enacted under § 2.")). One district court summarized the issue as follows:

> The Thirteenth Amendment does not provide a direct cause of action. *Doe v. Siddig*, 810 F. Supp. 2d 127, 135 (D.D.C. 2011) ("Courts in this Circuit have consistently held that there is no private right of action under the Thirteenth Amendment."). "Congress has already brought its institutional competence to bear on the matter by crafting an appropriate statutory right of action in the form of [18 U.S.C.] Sections 1584 and 1595." *Id.* at 135–36. Even if such a cause of action existed, it would not

extend to Sylvester's allegations, which are "devoid ... of state action or class-based discrimination." *Id.* at 136 (quoting *Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 302 (D.D.C. 2005)).

*Sylvester v. Nilsson*, No. CV H-23-4085, 2024 WL 1144259, at *6 (S.D. Tex. Mar. 15, 2024); *see also Hazeur v. Fed. Warranty Serv. Corp.*, No. CIV.A. 99-3156, 2000 WL 365013, at *2 (E.D. La. Apr. 7, 2000) ("This Court also found that plaintiff's Thirteenth Amendment claim was barred as a matter of law, because there is no private right of action available under this Amendment."). On this basis alone dismissal is warranted.

**B.      Claim II/III - Fourteenth Amendment: Plaintiffs Have Not Plead Discriminatory Intent, Unequal Treatment, or the Lack of a Rational Basis to Support Their Claims.**

In pertinent part, the Fourteenth Amendment states:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

* * *

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV. As with the Thirteenth Amendment, the provisions of the Fourteenth Amendment must be enforced through enacting legislation. "[T]he Fourteenth Amendment does not create a private right of action; instead, '§ 1983 provides a cause of action for all citizens injured by an abridgement of th[e] protections' set forth in 'the Equal Protection and Due Process Clauses of the Fourteenth Amendment.'" *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656 (6th Cir. 2018) (citations omitted).

Plaintiffs bring their Fourteenth Amendment claims pursuant to 42 U.S.C 1983. [Doc. 104, ¶15]. As such, the question is whether the parish-wide (now repealed) Solar Moratorium, the

unconsidered Petrochemical Moratorium Request, the review of land use applications by the Planning Commission and Parish Council, and the related tax exemptions are state actions that deny "the equal protection of the laws" to Blacks. *See Palmer v. Thompson*, 403 U.S. at 220. These allegations fail to plead discriminatory intent of the voting council members, unequal treatment of the property owners in a specific district, or the lack of a rational basis for the Land Use Plan.

        1.    **<u>Claim II - (Equal Protection): Plaintiffs failed to plead facts of discriminatory intent.</u>**

The Fourteenth Amendment has been interpreted by the Supreme Court as "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). "State actors may create classifications facially, when such categorization appears in the language of legislation or regulation, . . . or *de facto*, through the enforcement of a facially neutral law in a manner so as to disparately impact a discernible group." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *McGinnis v. Royster*, 410 U.S. 263, 270 (1973)). "The Supreme Court has instructed us time and again, however, that **disparate impact alone cannot suffice to state an Equal Protection violation**; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Id.* (**emphasis** added). Rather, "**a party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury**." *Id.* (citations omitted) (**emphasis** added).

A racially motivated discriminatory intent is a necessity for an equal protection claim. "[T]he absence of proof of discriminatory intent forecloses any claim that the official action challenged in this case violates the Equal Protection Clause of the Fourteenth Amendment." *City of Memphis*, 451 U.S. at 119 (citing *Washington v. Davis*, 426 U.S. 229 (1976); *Arlington Heights*, 429 U.S. 252 (1977)). "Discriminatory purpose in an equal protection context implies that the

decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992).

When a zoning decision is challenged as violating the Fourteenth Amendment, it is the trial court's function to "examine the purpose underlying the decision." *Arlington Heights*, 429 U.S. at 268. Even where a zoning decision "does arguably bear more heavily on racial minorities," or has a "discriminatory 'ultimate effect,'" a constitutional violation is not present unless the "sequence of events leading up to the decision" are indicative of a discriminatory motive. *Id.* at 269, 271. A discriminatory purpose requires a showing of far more than an "awareness of consequences." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

Here, the Complaint fails to provide any factual allegations that St. James Parish's unanimous adoption of the Land Use Plan, which set aside certain parts of the Parish, including parts of District 4 and 5, as industrial, was motivated by a discriminatory intent. Representatives from every district, including Districts 4 and 5, were represented in the unanimous adoption. [Doc. 104, ¶ 280, n.194]. The Complaint discusses historical events leading up to the 2014 decision that do not allege a discriminatory intent of the Parish, its Planning Commission, or Parish Council when the Land Use Plan was adopted. Indeed, the Complaint makes it clear that St. James Parish operated for 93 years "without a zoning ordinance or land use plan" and that land use rules were enacted over concerns related to control of private property, not any type of discriminatory intent. [Doc. 104, ¶¶ 271, 280].

The Complaint contains numerous factual assertions that, if proven true, could show only a possible disparate impact on Blacks (which is denied). Importantly, however, the Complaint lacks factual assertions regarding any action or statement by the Parish that establishes the

approvals of land use applications were for the purpose of impacting Black residents or based on discriminatory intent. At most, Plaintiffs' allegations show the Parish Council votes generally approve applications for industrial development *in the Districts the Parish unanimously set aside for industrial use.* Even if Plaintiffs prove all the facts in the Complaint, they will not have established that the elected officials were motivated, even in part, by a discriminatory intent. At best, the Complaint alleges historic unrelated discriminatory actions and seeks to impute past actions to current decisions without alleging any discriminatory intent.

Acknowledging a lack of allegations of racial motivation, Plaintiffs argue their allegations meet other factors to establish discriminatory intent citing *Arlington Heights*, including (1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history. [Doc. 43, p. 28-29]. *Arlington Heights* establishes a historical pattern may be helpful *if* there is no other explanation. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S. Ct. 555, 564, 50 L. Ed. 2d 450 (1977) ("Sometimes a clear pattern, **unexplainable on grounds other than race**, emerges from the effect of the state action even when the governing legislation appears neutral on its face." (**emphasis** added)). However, even accepting all Plaintiffs' allegations as true, the Plaintiffs have established the Parish's land use application actions support development in and of the Parish but nothing about the series of decisions outlined in Plaintiffs' Complaint is explained by a racially discriminatory motive. Plaintiffs' allegations of specific sequences leading up to pipeline requests or allegations of departures from normal procedure all support a desire of the Parish to approve industrial permits. There is no indication, other than Plaintiffs' own musings, that these decisions are driven by racial discrimination.

Even for Plaintiffs' numerous allegations regarding the Parish's decision related to the solar moratorium and rejection of a 2024 land use application for a solar farm to be located in District 5, the assertions of race related to the rejection of the solar farm are self-serving conclusory assertions by Plaintiffs. Plaintiffs assert that "what [the Parish Planning Commission] really meant was that it was opposed by residents in the majority white area of the Parish," when the statement by the councilmember was actually that "it was opposed by residents in the area"—a statement lacking any notion of race. [Doc. 104, ¶ 357]. In fact, when Parish Councilmember Courtney Long (District 2) made a comment *after the vote* that he believed the vote would have gone differently if the proposed location were farther west in District 5, the response from another councilmember was to question why Councilmember Long felt the need to inject race into the discussion where it was not otherwise present. [Doc. 104, ¶ 368]. When the allegations of the actions and statements *of the Councilmembers* are taken as true, there is nothing that supports a discriminatory intent.

Moreover, even if the allegations related to the rejection of the solar farm were viewed as establishing a pattern of voting by racial lines, that is Districts 4 and 5 were often ostracized in votes,[8] this is quickly disproven by the record of Parish's votes. The following industrial projects were addressed *unanimously*, by vote of all District representatives including District 4 and 5:

- June 5, 2013, adoption of a resolution supporting tax credits for South Louisiana Methanol, ¶ 379;

- April 23, 2014, adoption of South Louisiana Methanol's land use application, ¶ 381;

- July 16, 2019, Parish Council vote to send Wanhua's land use application back to the Planning Commission, ¶ 417;

---

[8] The official vote, of which this Court can take judicial notice as it did the Parish's Home Rule Charter (doc. 62, p. 25) disproves this. *See Official Proceedings of the Council of the Parish of St. James, State of Louisiana* Take at a Regular Meeting Held on June 18, 2024, found at: https://www.stjamesla.com/AgendaCenter/ViewFile/Minutes/_06182024-504. The votes in favor of the Solar farm came from Long (Dist. 2), Jasmin (Dist. 5), and Etienne-Steib (Dist. 6).

- August 8, 2018, Parish Council approval of Ergon's land use application, ¶ 451;

- June 24, 2024, Planning Commission recommendation of approval of the OxyChem land use application, ¶ 503; and

- August 7, 2024, Parish Council approval of OxyChem land use application. ¶¶ 509-10.

[Doc. 104.]

The Complaint contains only sweeping, unsupported conclusions of discrimination, which are properly disregarded by this Court on a Rule 12(b)(6) motion. [*See* Doc. 104, ¶¶ 15, 694]. Lacking any factual allegations of a discriminatory intent on the part of the Parish, the Complaint does not plead a claim under the Fourteenth Amendment.

### 2. <u>Claim II - (Equal Protection): Plaintiffs failed to plead facts of a lack of equal treatment.</u>

Where a "[p]laintiff's property has not been treated differently from other similarly situated properties **in its zoning classification**," no violation of the Fourteenth Amendment is present. *See Wheelahan v. City of New Orleans*, No. CV 19-11720, 2020 WL 1503560, at *16 (E.D. La. Mar. 30, 2020) (**emphasis** added) (finding plaintiff had not pled a Fourteenth Amendment Equal Protection claim). Even an allegation that a zoning ordinance impacts an individual plaintiff's ability to utilize their property does not support a Fourteenth Amendment Equal Protection claim if there is no allegation that a similarly situated property owner was treated differently. *Id.* at *19.

The actions of the Parish outlined in Plaintiffs' Complaint treats all residents within those zones equally, without any consideration of race or other factors. The Complaint lacks any allegation that the Land Use Plan or any specific land use action does not treat all property owners within the same zoning classification equally or that the Parish has treated Black property owners differently than white property owners within the same zoning classification. As a result, Plaintiffs have not pled a basis for an equal protection violation.

3.    <u>**Claim III - Substantive Due Process (Bodily Safety and Integrity):**</u>
<u>**Plaintiffs failed to plead facts of a lack of rational objective.**</u>

"There are two types of due process protections: substantive and procedural." *Monumental*

*Task Comm., Inc. v. Foxx*, No. 16-12495, 2016 WL 5780194, at \*4 (E.D. La. Oct. 4, 2016).

Plaintiffs purport to put forth a substantive due process claim.

"Substantive due process bars arbitrary, wrongful government action regardless of the

fairness of the procedures used to implement them." *Id.* (citations omitted). To "establish a

substantive due process violation, a plaintiff must first show the existence of a constitutionally

protected right to which the Fourteenth Amendment's due process protection applies." *Id.* "If there

is no denial of life, liberty, or property, then the government is not required to provide due

process." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 594 (E.D. La. 2016).

If a denial of a constitutionally protected right is established, the question becomes

"whether a rational relationship exists between the [policy] and a *conceivable* legitimate

governmental objective.'" *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174–75

(5th Cir. 1996) (citations omitted) (emphasis in original). "If the question is at least debatable,

there is no substantive due process violation." *Id.* at 175. "A plaintiff's substantive due process

challenge to a local ordinance may be dismissed on a Rule 12(b)(6) motion if the ordinance is

rationally related to a legitimate government interest." *Monumental Task Comm., Inc.,* 2016 WL

5780194, at \*4. "Only an abuse of power that 'shocks the conscience' is actionable through a

substantive due process claim." *Nobles Const., L.L.C. v. Par. of Washington*, No. CIV.A. 11-2616,

2012 WL 1865711, at \*5 (E.D. La. May 22, 2012), aff'd sub nom. *Nobles Const., L.L.C. v.*

*Washington Par.*, 544 F. App'x 263 (5th Cir. 2013) (citing *McClendon v. City of Columbia*, 305

F.3d 314, 326 (5th Cir. 2002)) (dismissing substantive due process claim on 12(b)(6) motion to

dismiss where plaintiff failed to demonstrate conduct was sufficiently egregious to rise to the level of shocking the conscience)).

A defendant need not prove or establish the rational relationship between the challenged policy and a government objective as "the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis." *FM Properties Operating Co.,* 93 F.3d at 174. Rather, if an objective reviewer finds a "*conceivable* legitimate governmental objective," no substantive due process claim exists. *Id.* at 175 (finding city council policy to enforce building quality and safety standards had legitimate governmental objective).

This Court has already held that St. James Parish's Land Use Plan was based on a rational objective. Upon prior review of St. James Parish' Land Use Plan, this Court found: "The Land Use Ordinance provides that it was enacted to guide the future development of St. James Parish," citing the March 5, 2014, resolution adopting the Land Use Plan. *Petroplex Int'l v. St. James Par.,* 158 F. Supp. 3d 537, 542 (E.D. La. 2016). This Court concluded that "the Council based its decision on the findings outlined in the draft comprehensive plan generated by the planning commission. Though Plaintiffs may disagree with Defendants' response to the facts outlined in the comprehensive plan, **the Court cannot find that this response was devoid of any conceivable rational basis**." *Id.* As such, in *Petroplex* the federal substantive due process claim against St. James was dismissed with prejudice. *Id.* at 543. The same result is compelled here.

**C.      Claim IV - 42 U.S.C. § 1982 (Property Rights of Black Citizens): Plaintiffs Failed to Plead Facts of any Intentional Discrimination.**

42 U.S.C. § 1982 states: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." The property rights protected under 42 U.S.C. § 1982 "concern[] the right of black persons to hold and acquire property on an equal basis with

white persons and the right of blacks not to have property interests impaired because of their race." *City of Memphis*, 451 U.S. at 122.

A 42 U.S.C. §1982 claim requires that the defendant act with a discriminatory intent directed at the plaintiffs on account of their race. A plaintiff's complaint "must allege with specificity facts sufficient to show or raise a plausible inference of 1) the defendant's racial animus, 2) intentional discrimination, and 3) that the defendant deprived plaintiff of their rights because of race." *Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631 (E.D. La. 2006) (citing *Brown v. Philip Morris Inc.,* 250 F.3d 789 (3d Cir. 2001)). As the Supreme Court confirmed in *City of Memphis,* a municipal regulation that has an "adverse impact on a particular neighborhood will often have a disparate effect on an identifiable ethnic or racial group." 451 U.S. at 128. This alone is not indicative of a discriminatory intent or racial animus. *Id.* Where the allegations establish "no racially discriminatory motive on the part of the City Council" for the challenged decision, an actionable claim is not present. *Id*. at 126.

The Complaint provides only baseless conclusions without supporting factual allegations. At best, the Complaint suggests an adverse impact on Black residents in Districts 4 and 5 (which is denied) but does not establish or allege a "racially discriminatory motive on the part of the [Parish] Council." Plaintiffs' historical recitation of racial discrimination in Louisiana and in St. James Parish is insufficient to state a § 1982 claim, and it should be dismissed.

**D.    Claim VII - Preservation of Cultural Origins: Plaintiffs Failed to Plead an Infringement of their Ability to Preserve, Foster, or Promote their Historic Linguistic or Cultural Origins on Property which they Own.**

Plaintiffs' Claim VII originates from the Louisiana Constitution, Article XII, Section 4, which states: "The right of the people to preserve, foster, and promote their respective historic linguistic and cultural origins is recognized." La. Const. art. XII, § 4. This Court previously provided a detailed discussion of the history of Section 4, stating:

> Article XII, section 4 of the Louisiana Constitution of 1974 recognizes the "right of the people to preserve, foster, and promote their respective historic linguistic and cultural origins." La. Const. art. XII, § 4. The driving force behind the provision was preservation of the French language and culture. Lee Hargrave, "*Statutory" and Hortatory" Provisions of the Louisiana Constitution of 1974*, 43 La. L. Rev. 647, 682 (1983). The law was supported primarily by French-speaking delegates who were concerned with the protection of the Acadian French culture. *Id.* No court has ever invalidated a law using this provision.
>
> Professor Lee Hargrave suggested that the development and intent of article XII, section 4 support a narrow construction of the law. For example, the principal drafter's stated intent was "to encourage bilingualism rather than make a drastic innovation." *Id.* at 684.

*Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d at 600 (dismissing claim under Article XII, Section 4), *aff'd sub nom. Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017).

In *Monumental Task Comm.* and *McGraw*,[9] the plaintiffs argued that the removal of monuments violated their right to preserve, foster, and promote their historic, linguistic, and cultural origins. The Louisiana Fourth Circuit Court of Appeals and this Court dismissed those claims, finding the plaintiffs had failed to link the removal to their cultural origins and had no property rights in the monuments. *See Monumental Task Comm., Inc.*, 157 F. Supp. 3d at 601 ("Plaintiffs fail to demonstrate that the removal of the monuments will infringe upon their right to preserve, foster, and promote their historic, linguistic, and cultural origins."); *McGraw,* 215 So. 3d at 331 ("Mr. McGraw, therefore, has failed to establish that he has acquired vested property rights in the monuments at issue by operation of Article XII, Section 4 of the Louisiana Constitution.").

Here, Plaintiffs allege St. James Parish violated their right to preserve, foster, and promote their historic and cultural origins by implementing a land use plan that has resulted in the destruction and desecration of purported burial sites. [Doc. 29, p. 148]. However, the allegations

---

[9] *McGraw v. City of New Orleans,* 2016-0446 (La. App. 4 Cir. 3/29/17), 215 So. 3d 319, 331.

regarding burial sites may be within the four-year period for the RLUIPA claims, but far exceed the one-year period of this claim. As such, that assertion is untimely.

Even if not untimely, locating burial sites, and their preservation, is governed by state law. There is no allegation that St. James Parish or individual landowners violated those laws. Regardless, Plaintiffs seek to have St. James Parish ensure that any possible area where an unmarked burial site is possibly located is forever preserved. Louisiana law does not mandate such expansive protections and would serve to usurp the authority and obligations of the State and private landowners. Plaintiffs also lack a property right on which to base this claim. Plaintiffs have no property right in any alleged unmarked burial site on the property of another private citizen.

Plaintiffs' supplemented allegations seeking to protect burial sites that are located on the property of third-parties (Formosa), *not land owned by the Parish.* It is the third-party landowner that controls Plaintiffs' access to their property, [doc. 104, ¶¶ 658-63], not the Parish.

Plaintiffs also allege the land use system harms other sites with historical and cultural value to Black Communities such as churches, schools, homes, etc. [Doc. 29, p. 149]. Again, absent direct ownership *by the Plaintiffs,* any such harms cannot be properly addressed in this lawsuit. As far as the specific churches and homes *of the Plaintiffs*, there are no allegations pled that the Parish has prevented Plaintiffs from preserving, fostering, or promoting their respective historic linguistic and cultural origins. It is only as to property of which Plaintiffs have no ownership which Plaintiffs allege they are unable to preserve their cultural origins.

Finally, nearly every case discussing Section 4 focuses <u>on language rights</u>. No court has read this provision as expansively as Plaintiffs would require, and no court has ever invalidated a law, much less usurped local police powers, using this provision. Plaintiffs lack legal support for their request under this provision.

**E.    Claim V (Substantial Burden) and Claim VI (Discrimination) - Religious Land Use and Institutionalized Persons Act: Plaintiffs Failed to Plead Facts of a Property Interest.**

The Religious Land Use and Institutionalization Persons Act of 2000 ("**RLUIPA**") was enacted by Congress to target local land-use regulation and ensure "greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015). RLUIPA generally provides two types of claims, designated by subsections (a) and (b) respectively, which include substantial burden claims and discrimination and exclusion claims. For a substantial burden claim, RLUIPA states that "no government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution . . ." 42 U.S.C. §2000cc(a)(1). A substantial burden can be present in three scenarios, the third of which includes "in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. §2000cc(a)(2)(C). For a discrimination claim, RLUIPA states: "No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. §2000cc(b)(2). Plaintiffs attempted to plead both.

"[L]and use regulation" is defined by RLUIPA as "a zoning or landmarking law, or the application of such a law, that limits or restricts **a claimant's** use or development of land (including a structure affixed to land), **if the claimant has** an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. §2000cc-5(5) (**emphasis** added). A "claimant" is "a person raising a claim or defense under" RLUIPA. 42 U.S.C. 2000cc-5(1).

Here, Plaintiffs have no cause of action because they do not qualify as 'claimants' under RLUIPA. They have no ownership, leasehold, easement, servitude, or other property interest in the land on which Plaintiffs allege unmarked cemeteries may exist, such as the site of the former LaPice Plantation, now controlled by Syngas (or the current property owner), the site of the former St. Michael Plantation, now controlled by Wanhua (or the current property owner), or the site of the former Buena Vista Plantation, now controlled by Formosa. [Doc. 104, ¶¶ 199, 262, 658-63]. The Complaint makes it very clear that these alleged and potential unmarked burial sites are owned by others, not Plaintiffs. Plaintiffs have provided no allegations to support a finding that they have any property interest in the property of these former plantations. To have a property interest protected by due process, a person must have more than an abstract need or desire for the property; he must have a legitimate entitlement to it, not merely a unilateral expectation. La. Const. art. I, § 2; *see e.g.*, *Barber v. Louisiana Workforce Commission*, 2017-0844 (La. App. 1st Cir. 10/19/18) 266 So.3d 368. Plaintiffs have no such interests and so are not "claimants."

Plaintiffs claim a property right to the potential unmarked burial sites based on a 2008 opinion of the Office of the Attorney General. [Doc. 104, ¶675]. However, the Attorney General opinion letter is not applicable because it addresses only the situation where a plot has been previously set apart for cemetery purposes. When a plot has been "dedicated" for cemetery purposes at some point in time, the dedication is in the nature of an irrevocable covenant running with the land. *Humphreys v. Bennett Oil Corporation*, 197 So. 222, 226 (La. 1940). Absent allegations that District 4 or 5, or parts thereof, were previously dedicated for cemetery purposes, Plaintiffs do not legally have any property rights to support a RLUIPA claim.

Similarly, the Complaint lacks any allegations that the permitting of Syngas, Wanhua, or Formosa prevented Plaintiffs from using or developing Plaintiffs' own land.

5450907.v2

F.    **Request for Declaratory Judgment: Plaintiffs Failed to Exhaust Administrative Remedies and Collaterally Attack the Zoning Decisions of St. James Parish.**

Plaintiffs attempt to collaterally attack land use decisions, specifically requesting a judgment declaring the approvals granted to Formosa and South Louisiana Methanol invalid. These attacks are foreclosed by Plaintiffs' failure to seek judicial review of these decisions within the appropriate time frames.

> "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). "The doctrine provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *Ibid.* (quoting *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). Exhaustion of administrative remedies serves two main purposes. See *McCarthy,* 503 U.S., at 145, 112 S.Ct. 1081.
>
> First, exhaustion protects "administrative agency authority." *Ibid.* Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures." *Ibid.*
>
> Second, exhaustion promotes efficiency. *Ibid.* Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. See *ibid.; Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); *McKart, supra,* at 195, 89 S.Ct. 1657. "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *McCarthy, supra,* at 145, 112 S.Ct. 1081.

*Woodford v. Ngo*, 548 U.S. 81, 88–89, 126 S. Ct. 2378, 2384–85 (2006).

"Zoning is a legislative function. The authority to enact zoning regulations flows from the police power of the various governmental bodies." *Palermo Land Co. v. Plan. Comm'n of Calcasieu Par*., 561 So. 2d 482 (La. 1990). The Louisiana Supreme Court elaborated, stating:

> The differing needs of each parish, according to its size, population, level of industrial and commercial development, and the rapidity of growth of such development, will naturally result in different planning and zoning regulations in

> each parish. The need for change through rezoning or reclassification will depend on the same factors, thus rezoning decisions are properly left to those officials who are most familiar with the needs of each community.

*Id.* at 492. "The presumption of validity attached to zoning ordinances is a well-established principle of law in Louisiana." *Id.* at 491.

"Challenges to zoning determinations are first subject to the review by local zoning boards." *E. New Orleans Neighborhood Advisory Comm'n v. Levy Gardens Partners 2008, LLC*, 2009-0326 (La. App. 4 Cir. 7/15/09), 20 So. 3d 1131, 1137. As the Louisiana Supreme Court explained, "It is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot—not the courts." *Palermo Land Co*, 561 So. 2d at 491 (citing *State ex rel. Civello v. City of New Orleans*, 97 So. 440 (La. 1923)). "Judicial review of zoning decisions acts merely as a check on this legislative power granted to parish officials to ensure that there is no abuse of the power. Courts will not and cannot substitute their judgment for that of the legislative authority." *Id.* at 492.

Specific to the St. James Parish Land Use Plan, this Court has previously declined to review specific permitting decisions (which invoke state law), noting "[m]atters such as land use are of local concern and are best left to the province of the states to decide." *Petroplex Int'l v. St. James Par.*, 158 F. Supp. 3d 537, 544 (E.D. La. 2016) (dismissing plaintiffs' state law challenges to St. James Parish Land Use Plan).

Here, Plaintiffs collaterally attack permitting decisions made by St. James Parish. Plaintiffs ask this Court to usurp the authority of St. James Parish and "[i]ssue a judgment declaring the land use approvals granted to Formosa and South Louisiana Methanol invalid." [Doc. 104, p. 167]. The Land Use Plan was amended in February 2018 and included a requirement that judicial review of a decision under the Land Use Plan must be brought within 30 days of the decision. *See* St. James

Parish Ordinance No. 82-25, as amended by Ordinance 17-21.[10] Thus, Plaintiffs' opportunity to judicially challenge any of the permits noted in the Complaint has long since passed.

Also, Plaintiffs mention numerous permits issued to various pipeline projects. Attempts to invalidate these land use permits are inappropriate due to the failure to timely address them under proper judicial review procedures. As such, this Court should dismiss any request for relief related to these permits.

## IV.    **CONCLUSION**

Therefore, St. James Parish requests that its motion be granted and this litigation be dismissed before any further public funds be expended on litigation of these meritless claims. Further, Plaintiffs were on notice of the defects in their claims but amended their Complaint without addressing the improprieties and deficiencies. Plaintiffs should not be allowed another opportunity to amend, and their Complaint should be dismissed with prejudice at Plaintiffs' cost.

RESPECTFULLY SUBMITTED,

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*s/ Danielle L. Borel*
John King, La. Bar No. 17004
John.King@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
danielle.borel@bswllp.com

*Attorneys for St. James Parish, St. James Parish Council and St. James Parish Planning Commission*

---

[10] See https://library.municode.com/la/st._james_parish_council/ordinances/code_of_ordinances?nodeId=881278.