**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | *  * **CIVIL ACTION NO.: 2:23-cv-00987**  *  * |
| VERSUS | * JUDGE: CARL J. BARBIER  * |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | *  * MAG. JUDGE JANIS VAN MEERVELD  * |

## OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE JURY DEMAND

*MAY IT PLEASE THE COURT:*

Defendant, St. James Parish, on behalf of itself and its branches and divisions, the St. James Parish Council and St. James Parish Planning Commission ( the "**Parish**" or "**Defendant**"), respectfully request that this Court deny Plaintiffs' Motion to Stike Jury Demand [Doc. 127] ("**Motion to Strike**"). As outlined below, Plaintiffs' Complaint requests broad relief that is legal in nature, necessitating the protection of the Parish's Seventh Amendment right to a jury trial.

## I.      PLAINTIFFS' COMPLAINT REQUESTS BROAD RELIEF.

Plaintiffs' Complaint requests broad declaratory judgments and expansive injunctive relief. Doc. 104, pp. 166-170 (the "**Prayer**"). Plaintiffs seek judgments declaring that: the Parish's land use system and siting of industrial facilities is in violation of various constitutional provisions and the Religious Land Use and Institutionalized Persons Act; the approvals to Formosa and South Louisiana Methanol be deemed invalid; and the provisions of the Land Use Plan directing industrial development to District 4 and District 5 be deemed invalid. Doc. 104, pp. 166-167.

Plaintiffs seek "additional injunctive relief."  Doc. 104, p. 167.  The requested mandatory injunctive relief leads to remedies and results well beyond what is stated in the Prayer. Plaintiffs request that the Court "[a]ppoint an independent Monitor to measure and **enforce compliance** with

1

5583692.v2

a number of affirmative measures necessary to ensure the right to health, safety, and religious freedom of residents of St. James Parish." Doc. 104, p. 167, Section D(iii), (**emphasis** added). As written, Plaintiffs' request includes no limiting principle to curtail the absolute power of the Monitor. The Monitor could independently decide which affirmative measures are necessary, the breath and scope of the rights to health, safety, and religious freedom, and the metrics by which the affirmative measures are evaluated to ensure Plaintiffs' rights. Most importantly, though, the Monitor could decide when and how to enforce those affirmative measures and/or punish a person or entity that fails to meet those affirmative measures. This could include the imposition of monetary penalties.

Plaintiffs also request the development of "Community Engagement Process" in which the residents of St. James Parish who have been and may continue to be harmed have their "interest heard" and their recommendations and reforms "considered by the Monitor and the Court." Doc. 104, p. 168, Section D(iv). The Monitor may then "submit to the Court additional remedial measures." *Id.* Additionally, Plaintiffs seek for the Monitor to be invested with authority to "consider and subsequently submit to the Court additional remedial measures recommended by the Community Engagement Process." Doc. 104, p. 169.

Again, there is no limiting principle to curtail the scope of the "recommendations or reforms" or the requested "remedial measures." For example, the "remedial measures" could include money damages to compensate Plaintiffs, or everyone in District 4 or District 5, or anyone identified in the Community Engagement Process that claims to have been "harmed by the Defendants' land use and environmental policies." Doc. 104, p. 168.

Notwithstanding the conspicuous omission of traditional money damages from their prayer, Plaintiffs seek legal relief in the form of a complicated remedial scheme that vests the

5583692.v2

Monitor with almost limitless power to impose, enforce, and recommend remedial measures that are not even contemplated by the vague wording of the Prayer. Indeed, counsel for RISE St. James has stated that "St. James Parish will now have to answer for the serious generational harms that our clients have alleged."[1]

As explained below, the relief sought in the Prayer is analogous to actions at common law and implicate the Seventh Amendment right to a jury trial. For the following reasons, Plaintiffs' Motion to Strike [Doc. 127] should be denied.

## II.     LAW AND ARGUMENT

The Fifth Circuit has summarized the importance of jury trials as follows:

> "[T]he right of jury trial is fundamental, [and] courts [must] indulge every reasonable presumption against waiver." "'Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'"

*Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998) (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937); *Dimick v. Schiedt,* 293 U.S. 474, 486 (1935) (stating that the right to trial by jury in civil cases is "a basic and fundamental feature of our system of federal jurisprudence" which "should be jealously guarded by the courts")). Thus, "the fundamental right to a jury trial under the Seventh Amendment" weigh "in favor of allowing a jury trial" "in the absence of strong and compelling reasons to the contrary." *Istre v. Williams*, No. CIV. A. 00-1203, 2000 WL 1473595, at *1 (E.D. La. Sept. 29, 2000). Here, there are no strong or compelling reasons to deprive the Parish of its fundamental right to a jury trial.

---

[1] https://ccrjustice.org/home/press-center/press-releases/victory-black-residents-cancer-alley-court-rules-landmark-lawsuit.

A.      **The Right to a Jury Trial Is Constitutionally Protected.**

The Seventh Amendment of the United States Constitution states that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The U.S. Constitution prohibits Congress from "withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law." *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109 (2024) (citations omitted). Once such a suit "is brought within the bounds of federal jurisdiction," an Article III court must decide it, with a jury if the Seventh Amendment applies. *Id.*

Federal Rule of Civil Procedure 38(a) codifies this guarantee, providing that the right to trial by jury as declared by the Seventh Amendment "is preserved to the parties inviolate." "The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute created legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether,* 415 U.S. 189, 194 (1974).

"Under federal law, the right to have a jury determine issues of fact turns essentially on whether the claim to which those issues relate is legal or equitable." *Hensley v. E. R. Carpenter Co.*, 633 F.2d 1106, 1110 n.5 (5th Cir. 1980). Claims which seek the "restoration" of rights are "legal." *Id.* Claims considered "legal" are "not limited to the 'common-law forms of action recognized' when the Seventh Amendment was ratified." *Jarkesy*, 603 U.S. at 122. The Seventh Amendment "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Id.*  Legislative enactment of new causes of action, or of those that were formerly brought only in equity, are now within the scope of cases at law, and entitled to jury trials, if the statutory action also provides a remedy at law. *See Curtis*, 415 U.S.

4

at 193. Stated plainly, any modern claims which are not equitable or admiralty are considered "legal" and subject to a jury.

"[W]here certain fact issues are common to both the legal and equitable claims in a lawsuit, only under the *most imperative circumstances* should a judge proceed first with the equitable claims in such a fashion that he, rather than the jury the parties have demanded, decide those fact issues." *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1107 (5th Cir. 1972). The Fifth Circuit has found that "where the presence of legal and equitable causes in the same case requires the selection between a jury and a non-jury determination of certain common issues, the discretion of the trial court is 'very narrowly limited and must, wherever possible, be exercised to preserve jury trial.'" *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.*, 294 F.2d 486, 490 (5th Cir. 1961) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959)). Further, it makes "no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control." *Id.*, at 491. The same rule applies to declaratory judgment actions, which must be tried to a jury wherever a legal issue is in controversy. *See Simler v. Conner*, 372 U.S. 221 (1963) (Supreme Court concluded that a declaratory judgment action was "legal" in nature because the specific issue in controversy was the amount of fees owed by a client to his attorney).

### B.    Plaintiff's Complaint Raises Legal Claims and Factual Issues which Warrant a Jury Trial.

Plaintiffs' Complaint is riddled with legal issues akin to common law issues – they are inextricable from the causes of action – such that any adjudication in the current proceeding will necessarily decide essential issues to any future legal remedies. To circumvent the right to a jury trial, Plaintiffs have simply omitted any mention of the intended legal remedies from their Prayer and reserved them to be issued by fiat from a Monitor or in supplementary post-judgment orders

5583692.v2

designed and submitted by extra-judicial agents. This does not cure the fact that numerous legal issues are before this court to be determined at the trial on the merits.

A plaintiff's characterization of the remedy sought is not necessarily controlling on this point. See *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–78 ("But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."). *Cf. Sablosky v. Paramount Film Distrib. Corp.*, 13 F.R.D. 138 (E.D. Pa.1952) (a plaintiff should not be able to capriciously determine a defendant's right to a jury trial by merely adding a claim for equitable relief). It is the facts alleged, more so than the theories of recovery invoked, that determine whether the right to a jury trial exists. *See Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 356 (2d Cir.2007) ("An amended complaint asserting new theories of recovery, based on the same facts as the original complaint, will not renew a defendant's right to a jury trial when that right was waived with respect to the original complaint."). In all possible cases, the discretion of the trial court must be exercised to preserve the right to a jury trial. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959).

The facts alleged in Plaintiffs' Complaint are undeniably legal in nature, not equitable, and, therefore, must be submitted to a jury for determination:

   a) whether Defendant "devised, implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of race-based land use" [Doc. 104, p. 158 at ¶ 681];[2]

   b) whether Defendant's alleged discriminatory land use practice (described above) "dramatically increased the risk of cancer and other illnesses and negative health effects in those Districts for the majority Black populations" [Doc. 104, p. 159 at ¶ 683; *see also* p. 161 at ¶ 692];

---

[2] *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 731 (Scalia, J., concurring) ("in cases asserting municipal liability for harm caused by unconstitutional policies, judges determine whether the alleged policies were unconstitutional, while juries find whether the policies in fact existed and whether they harmed the plaintiff") (citing *e.g., Myers v. County of Orange,* 157 F.3d 66, 74–76 (C.A.2 1998)).

c) whether Plaintiffs suffered a loss of property due to the "desecration and destruction of cemeteries and burial sites of people once enslaved" [Doc. 104, p. 159 at ¶ 684; *see also* p. 168 at ¶ 734] over which "Plaintiffs' members [as] descendant communities […] have a property interest" [Doc. 104, p. 165 at ¶ 712];

d) whether Plaintiffs suffered a loss of use over said "ancestral cemeteries and burial sites" [Doc. 104, p. 160 at ¶ 685, p.165 at ¶ 712, p. 161 at ¶ 693, p.169 at ¶ 735];

e) whether there was a "diminution in the value of property owned by Plaintiffs" [Doc. 104, p. 159 at ¶ 686; *see also* p. 164 at ¶ 706];

f) whether Defendant's alleged discriminatory land use practice "has and is causing lethal harm by industrial entities to Plaintiffs" [Doc. 104, p. 162 at ¶ 699];

g) whether Defendant's alleged acts "have introduced life-threatening substances into residents […] without consent" [Doc. 104, p. 162 at ¶ 700];

h) whether Defendant's alleged conduct "shocks the conscience, infringes on the decencies of civilized conduct, and [is] brutal and offensive to human dignity" [Doc. 104, p. 162 at ¶ 701];

i) whether Defendant's alleged conduct "proximately caused adverse impacts" [Doc. 104, p. 161 at ¶ 694, p. 168 at ¶ 730]; and

j) whether Defendant acted with "knowledge of these harms" and a "discriminatory purpose and intent" [Doc. 104, p. 160 at ¶ 687, p. 161 at ¶ 694, p. 164 at ¶ 708, p. 169 at ¶ 737].

[Doc. 104]. These factual allegations show that the specific issues in controversy in this case are legal in nature. Plaintiffs are seeking redress for interference with protected personal or property rights, which is the quintessential "common-law tort action" or "legal" claim defined by the Supreme Court in *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) ("Just as common-law tort actions provide redress for interference with protected personal or property interests, § 1983 provides relief for invasions of rights protected under federal law."). Further, by seeking to enjoin the Parish from siting any new facilities in District 4 and District 5, by seeking the revocation of certain previously issued permits, and by seeking remedial measures, the Plaintiffs seek the "restoration" of rights which is "legal" in nature. See *Hensley*, 633 F.2d at

7

1110. Therefore, Plaintiffs' factual allegations in the Complaint and claims in the Prayer describe a legal claim for compensation, notwithstanding the equitable incantations made in the prayer for relief. *See Inland Steel Products Co. v. MPH Mfg. Corp.*, 25 F.R.D. 238, 242–43 (N.D. Ill.1959) ("A mere prayer for injunctive relief without sufficient allegations of fact to support it does not invoke the equity jurisdiction of the court or deprive the defendant of a jury trial.").

The same analysis applies to Plaintiffs' theory of recovery under the Religious Land Use and Institutionalized Persons Act (RLUIPA). The RLUIPA claims are predicated on the same factual allegations, and the Fifth Circuit holds that legal remedies are available under RLUIPA. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 289–90 (5th Cir.2012).

To allow Plaintiffs a bench trial on these legal issues of fact would have the insidious effect of granting legal relief without a jury trial. Plaintiffs should not be permitted to circumvent Defendant's right to a jury trial, simply by artfully drafting their Complaint. To allow such a result would be directly contrary to the spirit and purpose of the Federal Rules of Civil Procedure. *Pereira v. Farace*, 413 F.3d 330, 339 (2d Cir. 2005) ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.").

### C.      Plaintiffs' Complaint Sets up After-the-Fact Imposition of Penalties.

The Parish acknowledges that Plaintiffs do not directly mention the imposition of penalties in the Prayer. Nevertheless, a traditional and common method of enforcement is penalties to punish culpable individuals or entities. See *Jarkesy*, 603 U.S. at 118: ("Civil penalties rank among the SEC's most potent enforcement tools."). In *Jarkesy*, the Supreme Court found that penalties, or money damages, "designed to punish or deter the wrongdoer" are "a type of remedy at common law that could only be enforced in courts of law." *Jarkesy*, 603 U.S. at 123.

8

Plaintiffs specifically ask for the appointment of a Monitor in Section D(iii), who will be able to "enforce compliance with a number of [unspecified and unlimited] affirmative measures necessary to ensure the right to health, safety, and religious freedom." Doc. 104, p. 167, emphasis supplied. The Monitor, in enforcing whatever "affirmative measures" they decide are "necessary," could easily decide that the traditional method of enforcement (i.e., penalties against a recalcitrant entity) are appropriate. There is no limitation in Section D(iii) of the Prayer inhibiting or preventing the Monitor from declaring, imposing, and attempting to collect penalties.

Plaintiffs also have asked the Court to rule on all essential elements to their legal causes of action in the instant proceeding but to reserve the imposition of compensatory remedies to a post-judgment process. In their Complaint, Plaintiffs have prayed for a prohibitory injunction against future industrial land use that is only intended to remedy *future* constitutional injuries. To remedy the *past* constitutional injuries alleged throughout the Complaint, in lieu of traditional damages, Plaintiffs seek a complicated post-judgment process involving a Court-appointed "Monitor," "Community Engagement Process," "Third-Party Facilitator," "Community Board," "Expert Committee," and "Transformative Justice process," plus a request for the Court to "[a]ward such other relief as this Court may deem appropriate and in the interests of justice." [Doc. 104, pp. 170-173]. These extra-judicial agents (some of whom will consist of Plaintiffs' own members, *e.g.*, the "Community Board") will be empowered, *inter alia*, to directly "advise" the Court as to what remedies are appropriate to redress *completed* "harms caused by Defendants." [Doc. 104, p. 172 at ¶ (D)(iv)(c)]. Compensation is the paradigmatic remedy for "completed violation[s] of [a plaintiff's] constitutional rights." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 293; s*ee also Wirtz v. Jones*, 340 F.2d 901, 904 (5th Cir.1965) (cases seeking injunctive relief to redress past violations are analogous to actions at law, and, on proper demand, are triable before a jury). Presumably,

5583692.v2

Plaintiffs contemplate submitting these compensatory remedies to the Court to be ordered long after a judgment has been awarded on the merits of the Complaint.

At the very least, this case presents a situation in which an equitable remedy, as pled, could easily lead to a legal remedy, one that was traditionally associated with common law and, thus, triable to a jury. The right to a jury trial of legal issues cannot "be lost through prior determination of equitable claims." *Beacon*, 359 U.S. at 511.  Further, as stated by the Fifth Circuit, it makes "no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. **As long as any legal cause is involved the jury rights it creates control**." *Thermo-Stitch*, 294 F.2d at 491 (**emphasis** added).

### D.    Plaintiffs Arguments Are Unavailing.

Plaintiffs' Motion to Strike does not present a compelling case to disregard the Parish's constitutional right to a jury. Plaintiffs assert they only requested equitable relief, but present little else to show a strong or compelling reason to strike the Parish's jury demand. This falls far short of Plaintiffs' required showing.

In their Motion, Plaintiffs make much of the Supreme Court's *dictum* from *City of Monterey*, doc. 127-1, p. 2, where the majority opinion observed it to be "a matter of settled law" that the Seventh Amendment right to a jury trial does not apply in the context of a regulatory takings suit "seeking only injunctive relief." 526 U.S. 687 at 719 (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987)). This was not the kind of "well-considered dicta" by the Supreme Court to which the Courts of Appeal "pay due homage." *Singh v. Uber Techs. Inc.*, 939 F.3d 210 (3d Cir.2019). The case cited therein, *Keystone Bituminous Coal Ass'n*, did not involve a § 1983 action like *City of Monterey* or the instant case. The majority opinion merely cited *Keystone* in its collection of prior regulatory takings decisions where the Seventh

10

Amendment right to a jury trial was *not* at issue and could offer no guidance to the Court's analysis. In deciding whether the uncompensated taking under review in *City of Monterey* implicated the Seventh Amendment right to a jury trial, the Supreme Court placed more emphasis on whether the government's conduct was tortious or unlawful than on the nature of the remedy sought. 526 U.S. 687 at 717-18 ("The argument that an uncompensated taking is not tortious because the landowner seeks just compensation rather than additional damages for the deprivation of a remedy reveals the same misunderstanding."). Here, if this Court follows the gravamen of the reasoning in *City of Monterey* and focuses on the conduct addressed and the issues to be determined at trial, those factors weigh heavily in favor of this matter proceeding to a jury trial.

Plaintiffs make no other arguments to support their request to strike the Parish's jury demand in their mere three-page brief. Failing to present sufficient reasons to strike a jury demand, Plaintiffs' Motion should be denied.

### E.        **Alternatively, The Motion to Strike Is Premature.**

This Motion to Strike should be denied as premature prior to discovery if discovery could reveal disputed legal issues of fact. *Cf. Shore v. Parklane Hosiery Co.*, 565 F.2d 815, 819 (2d Cir. 1977) (summary judgment may be granted where legal issues of fact are not in dispute). Even where the issues in controversy are common to both the legal and equitable claims, an appealable error can be created by adjudicating these issues without a jury in violation of the Seventh Amendment. *See U.S. ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394 (4th Cir.2012) (district court may not deprive a litigant of his right to a jury trial by resolving an equitable claim before a jury hears a legal claim raising common issues).

5583692.v2

## III. <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that Plaintiffs'

Motion to Strike Jury Demand [Doc. 127] be denied, at Plaintiffs' costs, and for all other relief the

Court deems just and proper.

RESPECTFULLY SUBMITTED,
By Attorneys:

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029


*s/ Carroll Devillier, Jr.*
John King, La. Bar No. 17004
John.King@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
Carroll.Devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
Danielle.Borel@bswllp.com
Jordan S. Varnado, La. Bar No. 39457
Jordan.Varnado@bswllp.com

*Attorneys for St. James Parish, St. James Parish Council and St. James Parish Planning Commission*

12

5583692.v2