

# *St. James Parish Council*

**Vondra Etienne-Steib**
Chairwoman

P. O. Box 176
Vacherie, Louisiana 70090
(225) 562-2400
FAX (225) 562-2401
TDD: (225) 562-8500
council@stjamesparishla.gov

**Courtney Long**
Vice-Chairman

**Tammie Bodin**
Secretary

June 1, 2026

Honorable Members
St. James Parish Council

The St. James Parish Council will meet in regular session on Wednesday, June 3rd, 2026, at 6:00 p.m. in the Council Chambers of the Parish Courthouse in Convent, Louisiana.

Please make every effort to attend.

Sincerely,

*Tammie Bodin*

Tammie Bodin
Secretary

cc:   Parish President Pete Dufresne & Staff
Assistant District Attorney Adam Koenig
The News Examiner/Enterprise
The Morning Advocate
L'Observateur

*Note:* *St. James Parish will provide, upon request, reasonable accommodation to any disabled individual wishing to attend the meeting. Anyone requiring reasonable accommodation is requested to contact 1-800-846-5277 (TDD), 1-800-947-5277 (Voice) or 562-2400 (Handicapped) to discuss the particular accommodation needed.*

**EXHIBIT**

**E**

| **Todd Poche** | **Courtney Long** | **Ryan Louque** | **Neal Poche** | **Anthony Jasmin** | **Vondra Steib** | **Donald Nash** |
|---|---|---|---|---|---|---|
| District 1 | District 2 | District 3 | District 4 | District 5 | District 6 | District 7 |

**AGENDA**
**ST. JAMES PARISH COUNCIL**
**Parish Courthouse – 5800 Hwy 44, Convent, LA**
**WEDNESDAY JUNE 3, 2026**

## 6:00 P.M. PUBIC HEARING

1. Proposed Ordinance 26-08, an ordinance to amend section 82-25 of the St. James Parish Land Use Ordinance to change the use designation of the Shady Grove area from Agricultural to Industrial use on the generalized future land use plan; to set hearings on the proposed ordinance on June 3, 2026 in Convent and on June 17, 2026, in Vacherie; and to publish a notice of the hearings once a week for three consecutive weeks in the official journal of the parish (Dufresne)
2. Adjourn

## 6:00 P.M. REGULAR MEETING

**I.    CALL TO ORDER & ROLL CALL**

**II.    PRAYER & PLEDGE**

**III.    MINUTES**
1. Approval of May 20, 2026, regular meeting minutes.
2. Approval of May 20, 2026, public hearing minutes

**IV.    FINANCE DEPARTMENT" S MONTHLY REPORT**
1. Approval of the March 2026 Statement of Revenues and Expenditures

**V.    PRESIDENT'S REPORT**

**VI.    PUBLIC COMMENT-**
1 . Comment on any agenda item requiring a Council vote in accordance with La. R. S. 42:14
2. Acknowledge receipt of June 1, 2026 correspondence from Astha Sharma Pokharel on behalf of Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James, advising that they intend to take action in federal court in connection with the pending litigation *Inclusive Louisiana v. St. James Parish*, Case No. CV 23-987 if the proposed ordinance regarding the land use redesignation of the Shady Grove area is not withdrawn from the Parish Council's agenda (the letter is included in the agenda package)

**VII.    PRESENTATION-**
1. Exxon Mobile Pipeline (Dufresne)
2. Micah Waguespack-Certificate of Excellence and Commitment (Dufresne)

**VIII.    APPOINTMENTS TO BOARDS AND COMMISSIONS-**None

**IX.    OLD BUSINESS**
1. Update of drainage study from Forrestal Street to Pool Lane (Nash)
2. Update of Multipurpose Building (Etienne-Steib)

**X.    NEW BUSINESS**
1. Resolution to approve disbursement of payroll numbers 12 and 13 for the month of June 2026 (Chair)
2. Resolution to approve disbursement of payroll numbers 14, 15, and 16 for the month of July 2026 (Chair)
3. Resolution to approve disbursement of payroll numbers 17 and 18 for the month of August 2026 (Chair)
4. Resolution to approve disbursement of payroll numbers 19 and 20 for the month of September 2026 (Chair)
5. Resolution to approve disbursement of funds to pay pending and current invoices and payables (Chair)
6. Resolution providing for the acceptance of work performed by Southern Underground of Louisiana LLC in accordance with the Certificate of Substantial Completion, for the Union Pacific Railroad Culvert Improvements Site No. 3 Magnolia Ditch Project (Dufresne)
7. Resolution authorizing the St. James Parish President to sign and execute a contract with Graves Public Services, LLC for professional services (Dufresne)
8. Resolution approving the signing of fiscal year 2027 Nutrition Service Incentive Program contract (NSIP) between the Governor's Office of Elderly Affairs and St. James Parish Government, St. James Area Agency on Aging (AAA) for July 1, 2026, to June 30, 2027, program year Dufresne)
9. Resolution approving the signing of fiscal year 27 Title III contract between the Governor's Office of Elderly Affairs and St. James Parish Government, Department of Human Resources for July 1, 2026, to June 30, 2027, Program Year (Dufresne)

10. Resolution authorizing St. James Parish to apply for Consolidated Rail Infrastructure and Safety Program Improvement (CRISI) Grant on behalf of Louisiana Sugar Refining, LLC, and designating an authorized representative (Dufresne)

11. Resolution rejecting all bids received for culvert materials due to insufficient bid award language in the bid specifications (Dufresne)

12. Resolution authorizing the Parish President's Office to readvertise and accept bids for drainage culverts (Dufresne)

13. Resolution authorizing St. James Parish Government to advertise for bids for the purchase of two (2) new 2026 or newer 6-8 cubic yard dump trucks (Dufresne)

14. Resolution authorizing the St. James Parish President to sign and execute a contract with Crescent Engineering and Mapping LLC for professional services (Dufresne)

15. Introduction of an Ordinance, an Ordinance setting and designating the Adopted Property Tax Millage for the Year 2026 levied on all Taxable Property within the Parish of St. James, State of Louisiana (Dufresne)

**XI.    DIRECTOR'S REPORT**

**XII.    COUNCIL MEMBER'S REPORT**

**XIII.    MOTION TO ADJOURN**

To view backup documentation please visit www.stjamesla.com/agendacenter

*St. James Parish will provide, upon request, reasonable accommodations to any disabled individual wishing to attend the meeting. Anyone requiring reasonable accommodation is requested to contact 1-800-846-5277 (TTD), 1-800-947-5277 (Voice) or 562-2400 (Handicapped) to discuss the particular accommodation needed.*

The following ordinance which was previously introduced at a regular meeting held on May 20, 2026, a summary thereof having been published in the official journal together with notices of public hearings which were held in accordance with the public notices, was brought up for final passage on motion of Councilmember _____ and seconded by Councilmember _____:

**ORDINANCE 26-_____**
**ST. JAMES PARISH COUNCIL**

**AN ORDINANCE TO AMEND SECTION 82-25 OF THE ST. JAMES PARISH LAND USE ORDINANCE, AND TO AMEND THE ST. JAMES PARISH GENERALIZED FUTURE LAND USE PLAN**

**WHEREAS,** on May 18, 2026, the St. James Parish Planning Commission considered a change in the land use designation of an area of the West Bank known as Shady Grove from "Agricultural" to "Industrial" use, and recommended the change to the Parish council for the area generally outlined in green on Attachment A hereto; and

**WHEREAS,** notices of the proposed change and hearings thereon were published on May 28, June 4, and June 11, 2026, and the Parish Council has held public hearings on the recommended changes on June 3, 2026 and June 17, 2026 in connection with the proposed land use change; and

**WHEREAS,** the Parish Council has considered the recommendation of the Planning Commission; the public comments received during the hearings; the facts and circumstances relevant to the location; the land use plan; and the potential impacts and benefits to the parish; and

**WHEREAS,** the Parish Council finds that it is in the public interest to change the St. James Parish Generalized Future Land Use Map to change the "Agriculture" area located on the East Bank known generally as Shady Grove to "Industrial" use;

**NOW, THEREFORE,** the St. James Parish Council hereby ordains:

**SECTION 1.** Section 82-25(a) of the St. James Parish Code of Ordinances is hereby amended to read as follows:

**Sec. 82-25.  Land use plan**

(a)     **Adoption of future land use plan.** The following map is hereby adopted and incorporated herein by reference to guide to the development of St. James Parish:  The "St. James Parish Generalized Future Land Use Plan" dated June 17, 2026, in its digital form, identified as File FutureLandUsePlan_06_17_26.  A printed version of the plan is attached to this ordinance as Exhibit 1.  Any ambiguity in the location of land use category boundaries, or any conflict between the printed and digital forms of the map shall be resolved by relying on the digital form of the map.  Any ambiguity in the boundaries shown on the digital map shall be resolved as follows:

*[the remainder of Section 82-25 remains unchanged]*

**SECTION 2. EFFECTIVE DATE.**  This ordinance shall be effective immediately upon its passage, or as soon thereafter as allowed by law, and shall apply to any then-pending permit or approval for which a final decision has not been rendered by the parish.

This ordinance having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And, the ordinance was declared adopted on this, the 17th day of June 2026.

_____
Council Chairman

_____
Secretary

Delivered to Parish President:  _____

Approved:  _____

Disapproved:  _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\* \* \* \* \*

C E R T I F I C A T E

    I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of an ordinance adopted by the St. James Parish Council in regular meeting held on the 17th day of June, 2026.

    Signed at Vacherie, Louisiana, this _____ day of June, 2026.

                             _____

(S E A L)                     Tammie Bodin
                                Secretary

**Attachment A to Proposed Ordinance**

**CENTER FOR CONSTITUTIONAL RIGHTS**

666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

June 1, 2026

St. James Parish Council
5800 Hwy. 44
Convent, LA 70723

**Re: Legal Notice to Parish Council Regarding Proposed Ordinance to Re-Designate a Historic Black Community, Including the Estate of Harriet Jones, to "Industrial"**

To the St. James Parish Council:

On behalf of Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James, the undersigned counsel write to put you on notice that the proposed ordinance ("Ordinance") that would redesignate a large part of Romeville into an industrial area is unlawful. Further, should it not be promptly withdrawn from the Parish Council's agenda, we intend to take urgent action in federal court in connection with the pending litigation *Inclusive Louisiana v. St. James Parish*, Case No. CV 23-987. This is the latest planned action by a Parish whose land use system is the subject of that ongoing civil rights lawsuit. The federal court in that case has concluded that Plaintiffs have raised plausible claims that the land use system is a vestige of slavery, that it is discriminatory on the basis of race and religion, that it unlawfully interferes with sites of historic, cultural and religious significance to Plaintiffs, and that it puts Plaintiffs' health at risk. If allowed to pass, this Ordinance will be yet more evidence of a discriminatory and unlawful land use system that, in the words of a federal court, "quite literally originated in slavery." *Inclusive Louisiana v. St. James Parish*, No. CV 23-987, 2026 WL 352793, at *7 (E.D. La. Feb. 9, 2026).

More specifically, this redesignation would transform the following historic sites into industrial sacrifice zones: our clients' formerly-enslaved ancestor, Harriet Jones's, property; the historic Pleasant Hill Cemetery where their formerly-enslaved ancestors and their descendants are buried; and potentially the Colomb Plantation Cemetery where their formerly-enslaved ancestors are likely buried. It would also allow industrial plants to fully encircle Inclusive Louisiana's Community Hub, Pleasant Hill Baptist Church, and Romeville Park, all of which are located in historic Romeville. This appears to be the latest attempt by the Parish to surround, and eventually erase, the historic, majority-Black communities in the Fourth and Fifth districts in the Parish.



Should the Ordinance not be withdrawn from the Parish Council's agenda, we intend to take urgent legal action in the relevant litigation in federal court.

1

**The Redesignation Would Transform the Estate of Harriet Jones, a Historic Site and Monument to Freedom from Slavery, Into an Industrial Sacrifice Zone.**

Harriet Jones was a woman who was born around 1809 in Maryland and trafficked to and enslaved in St. James Parish. In a remarkable feat, just eight years after the Thirteenth Amendment to the U.S. Constitution was ratified abolishing slavery, on February 19, 1874, Ms. Jones was able to purchase 34 acres of property from plantation owners Alfred Colomb and J. Bruce Morson in what is today Romeville.

For over 150 years, that property--the Estate of Harriet Jones—has been preserved, and passed down through the generations, and is now co-administered by her fifth-generation granddaughter, who is a co-founder of Inclusive Louisiana and current resident of Romeville. Notwithstanding slavery, the subsequent subjugation of and violence against freedpeople, the disenfranchisement of Black voters and landowners in the area, and more recently the displacement caused by industrial expansion, Ms. Jones's family has been able to hold on to this tract of land through the years. The land is a monument to freedom from slavery, and to the multigenerational, unyielding ties that the family and descendant community have to the area.



2

The Estate of Harriet Jones sits in the Fourth District of St. James Parish, in the heart of what the world knows as "Cancer Alley," but until today has been preserved against all odds. It has been used primarily as agricultural and residential land, and was recognized and therefore designated as "Agricultural" in the Parish's 2014 Land Use Plan. Now, the Parish Council is contemplating redesignating this land as "Industrial," and readying this historic monument for industrial expansion and erasure.

**The Redesignation Would Also Transform Two Historic Black Cemeteries and a Historic Black Baptist Church Into Industrial Sacrifice Zones.**

The redesignation would encourage industrial plants to encircle Pleasant Hill Baptist Church. One day after Ms. Harriet Jones purchased her property, on February 20, 1874, another nearby parcel of land in Romeville was sold by the same sellers to a group of formerly-enslaved people to build a church. The people in that group had been born in Virginia and North Carolina, and most, if not all, of them had been enslaved on the adjacent Wilton Plantation, where Nucor Steel now sits. The church is known today as Pleasant Hill Baptist Church. The church is very near Inclusive Louisiana's Community Hub. The Parish is now contemplating allowing industrial plants to fully encircle the church and Community Hub.

Additionally, the Parish's redesignation would transform at least one, and likely two, historic cemeteries into industrial sacrifice zones. Just on the other side of the railroad tracks from where Pleasant Hill Baptist Church sits is a historic Black cemetery where formerly enslaved and emancipated people and their descendants are buried: Pleasant Hill Cemetery. Both the church and the cemetery have recently received markers from the Louisiana Historic Markers program. The Parish is proposing to fully redesignate the cemetery for industrial use. Just west of Pleasant Hill Cemetery, there is another unmarked cemetery on the former Colomb Plantation. That cemetery likely contains burials of people formerly enslaved on that plantation. The redesignation boundary crosses the probable area of the cemetery.

As the Louisiana Attorney General has said, "[our cemeteries] lead us to a better understanding of our own culture: who we are, where we have come from, and where we are going . . . . [W]e, the living, are custodians of the dead and the stories that they can tell, and we must strive to protect those stories."[1] Instead of acting to protect the cemeteries of formerly enslaved people and freedpeople, and to protect their stories, the Parish is instead working quickly to attract industrial plants onto these cemeteries.

---

[1]    Louisiana Attorney General, Opinion No. 07-0183 at 2-3, September 17, 2007.

**This Is the Parish's Latest Attempt to Erase and Displace a Historic Black Community.**

The Harriet Jones Estate, Pleasant Hill Baptist Church, Pleasant Hill Cemetery, the Colomb Plantation Cemetery, Inclusive Louisiana's Community Hub, Romeville Park, and a historic residential community, are all located in Romeville, which is 75% Black.

In 2014, the Parish revealed its intent to erase this historic Black community when it designated it as "Residential/Future Industrial," and designated areas upriver and downriver of it as "Industrial" - an ominous revelation of the Parish's intentions. Romeville is today sandwiched between two giant industrial plants: Nucor Steel, which sits on the former Colomb, Wilton, and Helvetia plantations, and Oxychem, which sits on the former St. Michel and Malarcher plantations. The plants are two out of at least 28 industrial facilities that the Parish has steered into the majority-Black parts of St. James Parish.

In recent Parish Council and Planning Commission meetings on May 18 and May 20, 2026 Parish officials revealed that the Parish still had this intention to erase Romeville. They repeatedly stated that the area currently designated Agricultural should be redesignated as Industrial to ensure that the promise that Romeville would be "Future Industrial" would be soon fulfilled–in other words, so that industry can more completely move into and displace Romeville.

The Parish is fully aware of the costs of industrial expansion and displacement, including the severe health risks, and the unfulfilled promise of economic growth.[2] As a result of this steering, the residents of Romeville now reside in some of the most polluted, toxic–and lethal–census tracts in the country. And yet, instead of protecting this historic community, protecting its residents' health and sites of historic, cultural, and religious significance to them, the Parish continues, relentlessly, to steer industry there.

**The Parish's Actions Are Unlawful.**

The Parish is currently the subject of an ongoing federal civil rights lawsuit that challenges this land use system which reflects a pattern and practice of actions precisely like this one, where industry is steered into majority-Black parts of the Parish. The federal court in that case has already ruled that the lawsuit raises plausible claims that these actions threaten the health, cultural heritage, religion, and properties of historic Black communities, and that the Plaintiffs have raised plausible claims that this land use system violates the Thirteenth Amendment of the U.S. Constitution, the Fourteenth Amendment's Equal Protection Clause and protection of bodily integrity, 42 U.S.C. Section 1982 which ensures non-discrimination in the use of property, the Religious Land Use and Institutionalized Persons Act, and the Louisiana Constitution Art. XII, Sec. 4. which protects the right of the people to preserve, foster, and promote their respective cultural origins.

---

[2]    Allison Plyer Anissa Hyde, *Pathways to Prosperity: Louisiana 2026*, April 2026, available at: https://www.datacenterresearch.org/reports_analysis/pathways-to-prosperity-louisiana-2026/

4

Should the Council not take this Ordinance of the agenda, we intend to take urgent action in the relevant litigation in federal court.

Sincerely,

Clara Potter
Devin Lowell
Lisa Jordan
ENVIRONMENTAL LAW CLINIC
TULANE LAW SCHOOL
6329 Freret St.
New Orleans, LA 70118
Tel.: (504) 865-5789
Fax: (504) 862-8721
cpotter2@tulane.edu
dlowell@tulane.edu
lwjordan@tulane.edu

*Attorneys for RISE St. James*

Astha Sharma Pokharel
Pamela C. Spees
Baher Azmy
Kayla Vinson
Celine Zhu
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org
czhu@ccrjustice.org

William P. Quigley
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440
quigley77@gmail.com

*Attorneys for Plaintiffs Inclusive Louisiana
and Mount Triumph Baptist Church*

5

## Tammie Bodin

| | |
|---|---|
| **From:** | Paul Friloux <pfriloux1000@gmail.com> |
| **Sent:** | Monday, June 1, 2026 9:08 PM |
| **To:** | Tammie Bodin; Linda Hubbell |
| **Cc:** | deanfriloux@icloud.com; Randy@rlfes.com |
| **Subject:** | Land Use Designation |

You don't often get email from pfriloux1000@gmail.com. Learn why this is important

**EXTERNAL EMAIL:** Do not click links or open attachments unless you recognize the sender and know the content is safe.

**St. James Parish Council Members:**

Through this correspondence, I, as the designated spokesperson for the owners and heirs of the St. James Parish properties comprising the **Ethelyn and James Friloux Revocable Trust tract** of approximately **24.5 acres**, together with the owners and heirs of the adjacent **J.E. Weber Estate tract** of approximately **36.75 acres**, wish to express our support for the proposed change in land-use designation of these properties from **Agricultural** to **Industrial**.

We respectfully request that our position in support of this designation change be read into the official record at the upcoming meeting of the St. James Parish Council on **Wednesday, June 3, 2026**.

Thank you for your consideration.

Respectfully submitted,

**Paul James Friloux**
Designated Spokesperson for the Owners and Heirs of the Ethelyn and James Friloux Revocable Trust Tract and the J.E. Weber Estate Tract

Pfriloux1000@gmail.com
225-922-6400

1

**Tammie Bodin**

| | |
|---|---|
| **From:** | evan reulet <evanreulet@yahoo.com> |
| **Sent:** | Tuesday, June 2, 2026 9:34 AM |
| **To:** | Tammie Bodin |
| **Subject:** | Wednesday 6/3 Council Meeting Public Comment |

You don't often get email from evanreulet@yahoo.com. Learn why this is important

**EXTERNAL EMAIL:** Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Tammie,

My name is Evan Reulet and I am a concerned parent/citizen of St. Jame parish. I am unable to attend the meeting tomorrow but would like my thoughts to be shared as public comment. I am totally against Rise St. James and what they trying to do to our industry in St. James Parish. This will have long term effects on our young kid's future and having to have the opportunity to work and provide for their families like the industries have done for year here.

It is awesome that St. James Parish community is coming together to fight back against Rise St. James.

Thanks,
Evan

1

## Tammie Bodin

| | |
|---|---|
| **From:** | Tammie Bodin |
| **Sent:** | Tuesday, June 2, 2026 9:56 AM |
| **To:** | Tammie Bodin |
| **Subject:** | FW: council meeting |

Tammie Bodin
St. James Parish Council Secretary
tammie.bodin@stjamesparishla.gov
225-562-2400

-----Original Message-----
From: cobrarichie@rtconline.com <cobrarichie@rtconline.com>
Sent: Tuesday, June 2, 2026 9:53 AM
To: Tammie Bodin <tammie.bodin@stjamesparishla.gov>
Subject: council meeting

        You don't often get email from cobrarichie@rtconline.com. Learn why this is important
<https://aka.ms/LearnAboutSenderIdentification>

EXTERNAL EMAIL: Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning,

My name is Richard Friedrichs and reside at 2673 N. Nobile St in Paulina.  We built our house in 2007 and have lived there ever since.  My boys attended Paulina Elementary and Lutcher High School.  I am proud of our area.  I typically stay out of local politics but i feel residents of this area need to stand up to outside influencers.  Our children and their children will need jobs in the future.  In order to accomplish this, we need industry.  I am for the rezoning.  You may read this into the minutes of the meeting.

Sincerely,

Richard Friedrichs

2673 N. Nobile St

Paulina, LA 70763

1

## Tammie Bodin

| | |
|---|---|
| **From:** | Matt Milazzo <matt062772@yahoo.com> |
| **Sent:** | Tuesday, June 2, 2026 10:54 AM |
| **To:** | Tammie Bodin |
| **Subject:** | Fwd: Public Comment |

You don't often get email from matt062772@yahoo.com. Learn why this is important

**EXTERNAL EMAIL:** Do not click links or open attachments unless you recognize the sender and know the content is safe.

Sent from my iPhone

Begin forwarded message:

> **From:** Matt Milazzo <matt062772@yahoo.com>
> **Date:** June 2, 2026 at 9:55:44 AM CDT
> **To:** tammie.bodin@stjames.com
> **Subject: Public Comment**
>
> We need industry and income for the better of our parish, not paid protesters!
>
> Matt Milazzo
>
>
> Sent from my iPhone

1

**Tammie Bodin**

| | |
|---|---|
| **From:** | Lindsay Rome <lindsay.rome@att.net> |
| **Sent:** | Tuesday, June 2, 2026 12:04 PM |
| **To:** | Pete Dufresne; Todd Poche; Courtney Long; Ryan Louque; Neal Poche; Anthony Jasmin; Vondra Steib; Donald Nash |
| **Cc:** | Tammie Bodin; Linda Hubbell |
| **Subject:** | A Family Perspective on Growth and Community in Romeville |

You don't often get email from lindsay.rome@att.net. Learn why this is important

**EXTERNAL EMAIL:** Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Council Members and Parish Officials,

I am writing as a resident, taxpayer, voter, and member of a family whose roots in Romeville and along River Road extend back for generations.  Although my husband and I purchased our portion of the family property in 2024, our roots here run much deeper. My husband was raised on this land and has spent most of his life in Romeville. Our family's history along River Road stretches back to the late 1800s, with generations living, farming, working, and raising families here. For us, this property is more than acreage on a map—it is home, heritage, and a living connection to those who came before us.

We recognize and appreciate the responsibility you carry in guiding the future of St. James Parish. We understand that economic development, job creation, and a strong tax base are important to the continued success of our parish. We are not opposed to industrial growth, nor do we discount the benefits it can bring.
However, we respectfully ask that growth be pursued with balance and careful consideration for the communities that already exist here.
The residents of Romeville and surrounding areas are more than dots on a zoning map. We are families who live here, work here, farm here, worship here, and invest our lives in this parish. While change is inevitable, some decisions have consequences that cannot easily be undone. Zoning changes and industrial expansion can permanently alter the character of a community and the future of the families who call it home.

As you evaluate proposals affecting our area, we ask that you consider not only the opportunities they may create, but also what may be lost. Once industrial zoning is established, future residents may have little influence over the type and scale of

1

development that eventually occurs nearby. Decisions made today will shape the parish for decades to come.

We respectfully ask that the Council consider the long-term compatibility of future industrial uses with existing homes, farms, and communities. Has sufficient consideration been given to the people who already live here? To the families who have invested generations in this land? To the importance of preserving places where future generations can continue to live and farm?

St. James Parish has always been defined by both its industry and its people. We believe those two interests can coexist when growth is approached thoughtfully and with respect for the communities that have helped build this parish.

Romeville may be a small community, but it is an important one. The families who live here matter. The history of this place matters. The future of this place matters.

Our family understands that the only certainty in life is change. We are not asking that St. James Parish stand still. We are simply asking that as our parish grows, it does not lose sight of the communities, families, and traditions that have shaped it for generations. Progress and preservation do not have to be opposing goals. The strongest communities find a way to achieve both.

We appreciate your service to our parish and respectfully ask that you keep these considerations in mind as you evaluate decisions that will affect our community for generations to come.

Sincerely,
Lindsay Rome
Romeville, Louisiana
8166 Rome Park Street Convent, La
225-315-5190
Lindsay.Rome@att.net


Sent from AT&T Yahoo Mail for iPhone

2

## Tammie Bodin

| | |
|---|---|
| **From:** | Joe Berthelot <jjb364@icloud.com> |
| **Sent:** | Tuesday, June 2, 2026 1:52 PM |
| **To:** | Tammie Bodin |
| **Subject:** | Support of rezoning |

[You don't often get email from jjb364@icloud.com. Learn why this is important at
https://aka.ms/LearnAboutSenderIdentification ]

EXTERNAL EMAIL: Do not click links or open attachments unless you recognize the sender and know the content is safe.

I support the rezoning of the land near Romeville from agriculture to industrial use.  Please record this as public comment and read it at the meeting. Thank you.

Joe Berthelot, Jr.
39573 Gravois St.
Paulina, LA. 70763.


Sent from my iPhone

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

## RESOLUTION 26-
## ST. JAMES PARISH COUNCIL

**A RESOLUTION TO APPROVE DISBURSEMENT OF PAYROLL NUMBERS 12 AND 13 FOR THE MONTH OF JUNE 2026.**

**WHEREAS**, the employee payrolls for June 2026 will be reflected in the payroll disbursement report presented to the Parish Council as Payroll is completed.

**WHEREAS**, according to the Home Rule Charter, Article III §C(2)(a)(v), all checks and warrants drawn against the parish treasury shall be approved by a majority vote of the St. James Parish Council and the Parish Council by Resolution authorizes the administration to execute, sign or countersign any such check or draft in accordance with said provision.

**THEREFORE, BE IT RESOLVED**, that the St. James Parish Council does hereby approve disbursement of the June payrolls up to $ 700,000 per payroll and further authorizes the Parish President and Director of Finance to execute all necessary documents, including but not limited to wire transfer forms with financial services institutions, to perfect the disbursement of payroll.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairwoman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\* \* \* \* \*

## C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana, this 4th day of June 2026.

_____
Tammie Bodin
(S E A L)                                          Secretary

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

**RESOLUTION 26-**
**ST. JAMES PARISH COUNCIL**

**A RESOLUTION TO APPROVE DISBURSEMENT OF PAYROLL NUMBERS 14, 15 AND 16 FOR THE MONTH OF JULY 2026.**

**WHEREAS,** the employee payrolls for July 2026 will be reflected in the payroll disbursement report presented to the Parish Council as Payroll is completed.

**WHEREAS,** according to the Home Rule Charter, Article III §C(2)(a)(v), all checks and warrants drawn against the parish treasury shall be approved by a majority vote of the St. James Parish Council and the Parish Council by Resolution authorizes the administration to execute, sign or countersign any such check or draft in accordance with said provision.

**THEREFORE, BE IT RESOLVED,** that the St. James Parish Council does hereby approve disbursement of the July payrolls up to $ 700,000 per payroll and further authorizes the Parish President and Director of Finance to execute all necessary documents, including but not limited to wire transfer forms with financial services institutions, to perfect the disbursement of payroll.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairwoman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\*   \*   \*   \*   \*

C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana, this the 4th day of June 2026.

_____
Tammie Bodin
(S E A L)                                        Secretary

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

**RESOLUTION 26-**
**ST. JAMES PARISH COUNCIL**

**A RESOLUTION TO APPROVE DISBURSEMENT OF PAYROLL NUMBERS 17 AND 18 FOR THE MONTH OF AUGUST 2026.**

**WHEREAS**, the employee payrolls for August 2026 will be reflected in the payroll disbursement report presented to the Parish Council as Payroll is completed.

**WHEREAS**, according to the Home Rule Charter, Article III §C(2)(a)(v), all checks and warrants drawn against the parish treasury shall be approved by a majority vote of the St. James Parish Council and the Parish Council by Resolution authorizes the administration to execute, sign or countersign any such check or draft in accordance with said provision.

**THEREFORE, BE IT RESOLVED**, that the St. James Parish Council does hereby approve disbursement of the August payrolls up to $ 700,000 per payroll and further authorizes the Parish President and Director of Finance to execute all necessary documents, including but not limited to wire transfer forms with financial services institutions, to perfect the disbursement of payroll.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairwoman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\* \* \* \* \*

C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana, this the 4th day of June 2026.

_____
Tammie Bodin
(S E A L)                                                  Secretary

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

### RESOLUTION 26-
### ST. JAMES PARISH COUNCIL

**A RESOLUTION TO APPROVE DISBURSEMENT OF PAYROLL NUMBERS 19 AND 20 FOR THE MONTH OF SEPTEMBER 2026.**

**WHEREAS,** the employee payrolls for September 2026 will be reflected in the payroll disbursement report presented to the Parish Council as Payroll is completed.

**WHEREAS,** according to the Home Rule Charter, Article III §C(2)(a)(v), all checks and warrants drawn against the parish treasury shall be approved by a majority vote of the St. James Parish Council and the Parish Council by Resolution authorizes the administration to execute, sign or countersign any such check or draft in accordance with said provision.

**THEREFORE, BE IT RESOLVED,** that the St. James Parish Council does hereby approve disbursement of the September payrolls up to $ 700,000 per payroll and further authorizes the Parish President and Director of Finance to execute all necessary documents, including but not limited to wire transfer forms with financial services institutions, to perfect the disbursement of payroll.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairwoman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\*    \*    \*    \*    \*

### C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana, this 4th day of June 2026.

_____
Tammie Bodin
(S E A L)                                     Secretary

The following resolution was offered and moved for adoption by Councilman    and seconded by Councilman    :

## RESOLUTION 26-
## ST. JAMES PARISH COUNCIL

**A RESOLUTION TO APPROVE DISBURSEMENT OF FUNDS TO PAY PENDING CURRENT INVOICES AND PAYABLES**

**WHEREAS**, invoices payable to vendors, employees and other reimbursements due and all other current payables to be processed this week; and.

**WHEREAS**, according to the Home Rule Charter, Article III §C(2)(a)(v), all checks and warrants drawn against the parish treasury shall be approved by a majority vote of the St. James Parish Council and the Parish Council by Resolution authorizes the administration to execute, sign or countersign any such check or draft in accordance with said provision.

**THEREFORE, BE IT RESOLVED**, that the St. James Parish Council does hereby approve the disbursement of funds per the distribution report presented to the Parish Council reflecting the pending current invoices and other payables as of Thursday, June 3rd, 2026.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the 3rd day of May 2026.

_____
Council Chairwoman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\* \* \* \* \*

## C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana, this 4th day of June 2026.

_____
Tammie Bodin

(S E A L)                                                      Secretary

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

**RESOLUTION 26-**
**ST. JAMES PARISH COUNCIL**

**A RESOLUTION PROVIDING FOR THE ACCEPTANCE OF WORK PERFORMED BY SOUTHERN UNDERGROUND OF LOUISIANA, LLC IN ACCORDANCE WITH THE CERTIFICATE OF SUBSTANTIAL COMPLETION, FOR THE UNION PACIFIC RAILROAD CULVERT IMPROVEMENTS SITE NO. 3 – MAGNOLIA DITCH PROJECT**

**WHEREAS,** St. James Parish Council entered into a contract dated July 2, 2025 with Southern Underground of Louisiana, LLC for the Union Pacific Railroad Culvert Improvements Site No. 3 Magnolia Ditch project; and,

**WHEREAS,** the work under the aforementioned contract was substantially completed in accordance with plans and specifications by the contractor on March 19, 2026; and,

**WHEREAS,** a final inspection was conducted on March 19, 2026 by representatives of the engineer, owner, and contractor and all work was found to be satisfactory for acceptance.

**NOW, THEREFORE, BE IT RESOLVED,** by St. James Parish Council, here by represented by the Director of Operations that the work under the aforementioned project be and is hereby accepted as completed on the date of substantial completion hereinbefore specified.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And, the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\* \* \* \* \*

C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana this 4th day of June 2026.

_____
Tammie Bodin
Secretary

(S E A L)

## St James, LA
## Shane M. LeBlanc Clerk of Court

PO Box 63
5800 Highway 44
Convent, LA 70723
Phone Number : (225) 562-2270

**Official Receipt :** 2026-00000815

**Printed On :** 03/23/2026    at  1:13:29 PM                                **By :** 146    **on** CIVIL1

**Customer :**
CLERK

**Date Recorded :** March 23, 2026

| Instrument ID | Recorded Time | Amount |
|---|---|---|
| **Book :**  590    **Page :**  451 | 1:06:17 PM | $105.00 |

**Transaction :**  MORTGAGES
**Name(s) :**  ST. JAMES PARISH GOVERNMENT
To : SOUTHERN UNDERGROUND OF LOUISIANA, LLC

| Accounts | Amount |
|---|---|
| Recording | $100.00 |
| Certified Copies | $0.00 |
| Copies | $0.00 |
| Lcraa | $2.50 |
| Clerks Portal Fund | $2.50 |

| | |
|---|---|
| **Total Due :** | $105.00 |
| **Paid by Cash :** | $105.00 |
| **Change Tendered :** | $0.00 |

HAVE A NICE DAY

# St. James Parish Recording Page

**Shane M. LeBlanc**
**Clerk of Court**
PO Box 63
5800 Highway 44
Convent, LA 70723
(225) 562-2270

**Received From :**
CLERK

**First MORTGAGOR**

| ST. JAMES PARISH GOVERNMENT |
|---|

**First MORTGAGEE**

| SOUTHERN UNDERGROUND OF LOUISIANA, LLC |
|---|

**Index Type :** MORTGAGE

**Type of Document :** CERTIFICATE

**Recording Pages :**        3

**Inst # :** 199364

**Book :** 590        **Page :** 451

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for St. James Parish, Louisiana.

On (Recorded Date) : 03/23/2026

At (Recorded Time) :  1:06:17PM

Doc ID - 002318540003

CLERK OF COURT
SHANE M. LEBLANC
Parish of St. James
I certify that this is a true copy of the attached
document that was filed for registry and
Recorded 03/23/2026 at 1:06:17
Recorded in Book  590  Page  451
File Number        199364

Deputy Clerk

**Return To :**   CLERK

Do not Detach this Recording Page from Original Document

FILED AND RECORDED
SHANE M. LEBLANC
ST. JAMES PARISH CLERK

MAR 23 2026

COB_____
MOB_____
OTHER_____

## CERTIFICATE OF SUBSTANTIAL COMPLETION

DATE OF ISSUANCE_____March 19, 2026_____

OWNERS Project No.    Saint James Parish Council Resolution 25-127

ENGINEER'S Project No.    2024.0780

PROJECT    Union Pacific Railroad Culvert Improvements
           Site No. 3 – Magnolia Ditch Project
           Saint James Parish

CONTRACTOR:    Southern Underground of Louisiana, LLC
Contract For    $287,298.00    Contract Date    July 2, 2025

This Certificate of Substantial Completion applies to all Work under the Contract Documents or to the following specified parts thereof.

To    Saint James Parish Government
                           OWNER

And To    Southern Underground of Louisiana, LLC
                           CONTRACTOR

The Work to which this Certificate applies has been inspected by authorized representatives of OWNER. CONTRACTOR and ENGINEER, and that Work is hereby declared to be substantially complete in accordance with the Contract Documents on

March 5, 2026
DATE OF SUBSTANTIAL COMPLETION

A tentative list of items to be completed or corrected is attached hereto. This list may not be all-inclusive, and the failure to include an item in it does not alter the responsibility of CONTRACTOR to complete all the Work in accordance with the Contract Documents. The items in the tentative list shall be completed or corrected by CONTRACTOR within 45 days of the above date of Substantial Completion.

The responsibilities between OWNER and CONTRACTOR for security, operation, safety, maintenance, heat, utilities, insurance and warranties and guarantees shall be as follows:

RESPONSIBILITIES:

OWNER: _____ As Per Contract Documents _____

CONTRACTOR: _____ As Per Contract Documents _____

---

The following documents are attached to and made a part of this Certificate:

March 19, 2026

---

This certificate does not constitute an acceptance of Work not in accordance with the Contract Documents nor is it a release of CONTRACTOR's obligation to complete the Work in accordance with the Contract Documents.

---

Executed by ENGINEER ON _____ March 19, 2026

T. Baker Smith, LLC
ENGINEER

By: _____
(Authorized Signature)

CONTRACTOR accepts this Certificate of Substantial Completion on 3/20, 2026

Southern Underground of Louisiana, LLC
CONTRACTOR

By: _Luke Bennett_____
(Authorized Signature)

OWNER accepts this Certificate of Substantial Completion on 3/23, 2026

Saint James Parish Government
OWNER

By: _____
(Authorized Signature)



# SHANE M. LEBLANC

CLERK OF COURT AND EX-OFFICIO RECORDER
PARISH OF ST. JAMES
P.O. Box 63 - Mailing Address
5800 LA HWY 44 - Physical Address Convent, Louisiana 70723

PHONE: 225-562-2272
225-562-2270
FAX: 225-562-2383

## Lien Certificate

STATE OF LOUISIANA

PARISH OF ST. JAMES

I, Shane M. LeBlanc, Clerk of Court & Ex-Officio Recorder, in and for the Parish of St. James, State of Louisiana, do hereby certify that according to the records in my office there are no Liens and Privileges recorded against the following Contract, to-wit:

A Contract agreement between St. James Parish Government, P.O. Box 106, Convent, LA 70723 as owners, and Southern Underground of Louisiana, LLC, 4922 Rankin Street, Zachary, LA 70791 as contractor shall fully execute the work described as following: Union Pacific Railroad Culvert Improvements Site NO. 3 Magnolia Ditch recorded at Entry 198,281 MOB 586 Folio 409 of the Mortgage Records of St. James Parish, under date October 9,2025.

OTHER THAN:

None.

AND I FURTHER CERTIFY that a Certificate of Substantial Completion was accepted by St. James Parish Government, on March 23,2026. Said Certificate of Substantial Completion was duly recorded in MOB 590 Folio 451 under Entry 198,364 of the Mortgage Records of St. James Parish, Louisiana, under the date of March 23,2026.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of my office, this 11th day of May,2026 at 4:30 PM.

Shane M. LeBlanc
Clerk of Court and Ex-Officio Recorder
Parish of St. James, State of Louisiana

**TBS** T. BAKER SMITH
SOLUTIONS START HERE

May 15, 2026

Via Email

Mr. Ryan Larousse
Assistant Director
St. James Parish Operations
5800 Hwy 44
Convent, LA 70323

Dear Mr. Larousse:

**Subject:**     **Recommendation to Accept Improvements**

**Reference:**   **Union Pacific Railroad Culvert Improvements**
           **Site No. 3 – Magnolia Ditch**
           **Vacherie, Louisiana**

A Certificate of Substantial Completion and Punch List was issued to Southern Underground of Louisiana, LLC (Contractor) on March 5th, 2026, for work performed on the above referenced project. Southern Underground of Louisiana, LLC has provided the requested documentation, satisfied all punch list items to date, and has cleared the required 45-day lien period on their contract. Therefore, we recommend acceptance of the improvements associated with this project performed by Southern Underground of Louisiana, LLC and release of the retainage withheld on their contract

As always, should you have any questions or concerns regarding this matter, please do not hesitate to contact me at (985) 223-9273 or email me at josh.gravois@tbsmith.com.

Sincerely yours,
**T. BAKER SMITH, LLC**

Josh Gravois
Construction Manager

Cc: Dustin Falgoust/SJPG
    Lindsay Szubinski/SJPG
    Phillip Green/SUL
    Luis Rivera/SUL
    Robert Karam, P.E./TBS

Attachments:
    Pay Application No. 4 (Final Retainage)
    Clear Lien Certificate

2026-05-15_2024.0780 Recommendation to Accept Improvements

Urban Planning  |  Environmental Science & Regulatory Compliance  |  Land, Hydrographic, & Offshore Surveying  |  Civil & Coastal Engineering  |  GIS & Mapping

The following resolution was offered and moved for adoption by Councilman  seconded by Councilman .

**RESOLUTION 26-**
**ST. JAMES PARISH COUNCIL**

**A RESOLUTION AUTHORIZING THE ST. JAMES PARISH PRESIDENT TO SIGN AND EXECUTE A CONTRACT WITH GRAVES PUBLIC SERVICES, LLC. FOR PROFESSIONAL SERVICES**

**WHEREAS**, St. James Parish desires to enter into a professional services contract WITH Graves Public Services, LLC for ongoing and future projects within the Parish of St. James; and,

**WHEREAS**, the Scope of services to be provided by the provider may be entered as a scope document, task order, or written proposal signed by both parties.

**WHEREAS**, the total value of this contract shall not exceed $23,000.00

**NOW, THEREFORE, BE IT RESOLVED**, by the St. James Parish Council, that Parish President Peter A. Dufresne, is hereby duly authorized and empowered on behalf of the St. James Council to execute a contract with Graves Public Services, LLC for professional services in accordance with the terms of the contract.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:        None
ABSTAIN:     None
ABSENT:      None

And, the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairwoman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\*   \*   \*   \*   \*

C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana this 4th day of May 2026.

_____
Tammie Bodin
(S E A L)                          Secretary

# GRAVES PUBLIC SERVICES, LLC

May 21, 2026

Mr. Pete Dufresne
Parish President
St. James Parish
5800 Highway 44
Second Floor
Convent, Louisiana 70723

Re: RESTORE Act Direct Component consulting services

Dear President Dufresne:

Graves Public Services, LLC (GPS) is pleased to submit this proposal for the referenced engagement. The proposed scope of work and budget are based on my understanding of the current disposition of St. James Parish's's (SJP) efforts to secure RESTORE Act Direct Component funding to implement environmental and economic recovery projects.

**Multiyear Implementation Plan (Task 1)**
SJP must submit a Multiyear Implementation Plan (MIP) for US Treasury review/approval prior to submitting grant applications and securing Direct Component funding. GPS will coordinate with SJP and the US Treasury to complete the MIP process, including project planning, drafting MIP content, administering the public comment process, compiling required documentation, and responding to US Treasury inquiries as needed.

MIP (not-to-exceed $5,000)

**Grant Applications (Task 2)**
SJP must submit grant applications through the US Treasury's RESTORE Grant Management System (RGMS). GPS will coordinate with the Parish to complete and submit each grant application. This involves drafting grant application content, compiling required documentation, submitting the complete application package through RGMS, and responding to US Treasury inquiries as needed. The required level of effort will increase for restoration project applications for which a US Treasury *best available science* (BAS) review is required.

Grant Applications (not-to-exceed $15,000/application)

1

**Ongoing Grant Management Services (Task 3)**

Approved Direct Component grants require the completion of Federal Financial Reports (FFRs) and Project Progress Reports (PPRs) in RGMS on a semi-annual basis. It may also be necessary for SJP to submit grant amendments during the life of any given project. GPS will coordinate with the Parish to complete semi-annual FFRs and PPRs in RGMS. This requires compiling documentation and drafting content regarding the project budget and status. In terms of completing grant amendments as needed, GPS will coordinate with SJP to complete each amendment package, submit the package through RGMS, and respond to US Treasury inquiries as needed.

> Semi-Annual Reporting (not-to-exceed $3,000/project annually); and
> Grant Amendments (Upon Request) (not-to-exceed $2,000/request).

GPS will charge $140/hour (Jerry Graves, Principal Consultant) and $115/hour (Dillion Asher, Senior Consultant) for planning and grant writing/administration services. I have attached both resumes for your reference. Please let me know if any additional information is required.

I anticipate the following scope of work and budget over the next twelve (12) months:

One (1) MIP: $5,000
One (1) Grant Application (Other): $15,000
Semi-Annual Reporting (Ongoing): $3,000

### GRAND TOTAL: $23,000 (Not-to-Exceed)

Thanks again for your time and consideration.

Sincerely,

Jerry V. Graves, Ph. D.
Owner and Principal Consultant
Graves Public Services, LLC

2

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

### RESOLUTION 26-
### ST. JAMES PARISH COUNCIL

**A RESOLUTION APPROVING THE SIGNING OF FISCAL YEAR 2027 NUTRITION SERVICE INCENTIVE PROGRAM CONTRACT (NSIP) BETWEEN THE GOVERNOR'S OFFICE OF ELDERLY AFFAIRS AND ST. JAMES PARISH GOVERNMENT, ST. JAMES AREA AGENCY ON AGING (AAA) FOR JULY 1, 2026, TO JUNE 30, 2027, PROGRAM YEAR.**

**WHEREAS,** the St. James Parish Council is the governing board for Area Agency on Aging for St. James Parish; and,

**WHEREAS,** the St. James Parish President is the chief executive officer of the parish, and,

**WHEREAS,** St. James Area Agency on Aging serve as the St. James Area Agency on Aging Nutrition Service Incentive Program for the Parish

**WHEREAS,** contracts and revision of contracts between the Governor's Office of Elderly Affairs is in amount $41, 766.00 specified by the Governor's Office of Elderly Affairs.

**WHEREAS,** St. James Area Agency on Aging NSIP will develop NSIP procedures to ensure that nutrition service providers, including quarterly on-site program monitoring, to ensure that nutrition service providers use payments under their agreement solely for the purchase of the United States agricultural commodities and other foods purchased in the United States for use in its nutrition operations

**NOW, THEREFORE, BE IT RESOLVED,** by the St. James Parish Council that the Parish President is authorized to sign the Parish Council on Aging Contract without further approval of this Council.

1.    That the Parish President is authorized to sign assurances, agreements, contracts, amendments and revisions and other necessary documents required.

2.    That this resolution is applicable for a period of twelve months unless revoked by the governing body and copy of such revocation shall be furnished to the Governor's Office of Elderly Affairs.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the 3rd day of June 2026

_____
Council Chairman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\* \* \* \* \*

C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd of June 2026

Signed at Vacherie, Louisiana, this the 4th day of June 2026


(S E A L)

_____

Tammie Bodin
Secretary

# CONTRACT BETWEEN STATE OF LOUISIANA

**NAME OF DEPARTMENT/AGENCY**
Governor's Office of Elderly Affairs

**AND**

**CONTRACTOR NAME**
St. James Area Agency on Aging

**CONTRACT NUMBER** *(ISIS/LAGOV)*
4400034816

## TYPE OF SERVICES TO BE PROVIDED

PROFESSIONAL SERVICES ☐    CONSULTING SERVICES ☐    SOCIAL SERVICES ☐    PERSONAL SERVICES ☐
AGENCY ☐    GOVERNMENTAL ☒    COOPERATIVE ENDEAVOR ☐

---

**CONTRACTOR (Legal Name if Corporation)**
St. James Area Agency on Aging NSIP

**FEDERAL EMPLOYER TAX ID NUMBER**
72-6001228
**STATE LDR ACCOUNT #**

**STREET ADDRESS**
P. O. Box 87
**CITY** Convent          **STATE** LA

**TELEPHONE NUMBER**
225-562-2372
**ZIP CODE** 70723

---

**BRIEF DESCRIPTION OF SERVICES TO BE PROVIDED**
Contractor will enter into written agreements with each nutrition service provider for cash payment under the Nutrition Services Incentive Program (NSIP) outlining the precise responsibilities of the Contractor as the Area Agency on Aging, the responsibilities of the nutrition service provider, and the exact amount and timing of cash payments from Contractor to the nutrition service provider. Contractor will develop NSIP procedures to ensure that nutrition service providers, including quarterly on-site program monitoring, to ensure that nutrition service providers use payments under their agreement solely for the purchase of the United States agricultural commodities and other foods purchased in the United States for use in its nutrition operations. Contractor and will promptly disburse all properly payable cash payments to nutrition service providers and will abide by and comply with all conditions and requirements set forth in the Statement of Work (Attachment A).

---

**BEGIN DATE**
7/1/2026
**MAXIMUM CONTRACT AMOUNT**
$41,766.00

**END DATE**
6/30/2027
**MULTI-YEAR CONTRACT BREAKDOWN**
N/A

---

**TERMS OF PAYMENT** – If progress and/or completion of services are provided to the satisfaction of the initiating Office/Facility, payments are to be made as follows:
Payment to Contractor shall be made through quarterly NSIP cash payments in amounts equal to ¼ (one-fourth) the Maximum Contract Amount, as provided above, payable no later than the last day of each quarter, for the term of the contract, beginning on July 1, 2026, and ending on June 30, 2027. The total NSIP cash payments under this agreement shall not exceed the maximum contract amount.

**PAYMENT WILL BE MADE ONLY UPON APPROVAL OF:** *(Type Title of Personnel only)*
HCBS Manager

**Taxes**

Before the contract may be approved, La. R.S. 39:1624(A)(10) requires the Office of State Procurement to determine that the Contractor is current in the filing of all applicable tax returns and reports and in the payment of all taxes, interest, penalties, and fees owed to the state and collected by the Department of Revenue. The Contractor shall provide its seven-digit LDR Account Number to the State for this determination. The State's obligations are conditioned on the Contractor resolving any identified outstanding tax compliance discrepancies with the Louisiana Department of Revenue within seven (7) days of such notification. If the Contractor fails to resolve the identified outstanding tax compliance discrepancies within seven days of notification, then the using agency may proceed with alternate arrangements without notice to the Contractor and without penalty.

**Termination for Cause**

Should the State determine that the Contractor has failed to comply with the Contract's terms, the State may terminate the Contract for cause by giving the Contractor written notice specifying the Contractor's failure. If the State determines that the failure is not correctable, then the Contract shall terminate on the date specified in such notice. If the State determines that the failure may be corrected, the State shall give a deadline for the Contractor to make the correction.  If the State determines that the failure is not corrected by the deadline, then the State may give additional time for the Contractor to make the corrections or the State may notify the Contractor of the Contract termination date.

If the Contractor seeks to terminate the Contract, the Contractor shall file a complaint with the Chief Procurement Officer under La. R.S. 39:1672.2-1672.4.

**Termination for Convenience**

State may terminate the Contract at any time without penalty by giving thirty (30) days written notice to the Contractor of such termination or negotiating with the Contractor a termination date. Contractor shall be entitled to payment for deliverables in progress, to the extent the State determines that the work is acceptable.

**Remedies for Default**

Any claim or controversy arising out of this contract shall be resolved by the provisions of LSA - R.S. 39:1672.2 - 1672.4.

**Other Remedies**

If the Contractor fails to perform in accordance with the terms and conditions of this Contract, or if any lien or claim for damages, penalties, costs and the like is asserted by or against the State, then, upon notice to the Contractor, the State may pursue all remedies available to it at law or equity, including retaining monies from amounts due the Contractor and proceeding against any surety of the Contractor.

**Governing Law**

This Contract shall be governed by and interpreted in accordance with the laws of the State of Louisiana, including but not limited to La. R.S. 39:1551-1736; rules and regulations; executive orders; standard terms and conditions, special terms and conditions, and specifications listed in the RFP(if applicable); and this Contract. Venue of any action brought, after exhaustion of administrative remedies, with regard to this Contract shall be in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

**E-Verify**

Contractor acknowledges and agrees to comply with the provisions of La. R.S. 39:995 and federal law pertaining to E-Verify in the performance of services under this Contract.

**Record Ownership**

All records, reports, documents and other material delivered or transmitted to Contractor by State shall remain the property of State, and shall be returned by Contractor to State, at Contractor's expense, at termination or expiration of the Contract. All material related to the Contract and/or obtained or prepared by Contractor in connection with the performance of the services contracted for herein shall become the property of State, and shall be returned by Contractor to State, at Contractor's expense, at termination or expiration of the Contract.

**Contractor's Cooperation**

The Contractor has the duty to fully cooperate with the State and provide any and all requested information, documentation, etc. to the state when requested. This applies even if this Contract is terminated and/or a lawsuit is filed. Specifically, the Contractor shall not limit or impede the State's right to audit or shall not withhold State owned documents.

**Assignability**

Contractor may assign its interest in the proceeds of this Contract to a bank, trust company, or other financial institution. Within ten calendar days of the assignment, the Contractor shall provide notice of the assignment to the State and the Office of State Procurement. The State will continue to pay the Contractor and will not be obligated to direct payments to the assignee until the State has processed the assignment.

Except as stated in the preceding paragraph, Contractor shall only transfer an interest in the Contract by assignment, novation, or otherwise, with prior written consent of the State. The State's written consent of the transfer shall not diminish the State's rights or the Contractor's responsibilities and obligations.

**Right to Audit and Record Retention**

Any authorized agency of the State (e.g. Office of the Legislative Auditor, Inspector General's Office, etc.) and of the Federal Government has the right to inspect and review all books and records pertaining to services rendered under this contract for a period of five years from the date of final payment under the prime contract and any subcontract. The Contractor and subcontractor shall maintain such books and records for this five-year period and cooperate fully with the authorized auditing agency. Contractor and subcontractor shall comply with federal and state laws authorizing an audit of their operations as a whole, or of specific program activities.

**Fiscal Funding**

The continuation of this contract is contingent upon the appropriation of funds to fulfill the requirements of the contract by the legislature. If the legislature fails to appropriate sufficient monies to provide for the continuation of the contract, or if such appropriation is reduced by the veto of the Governor or by any means provided in the appropriations act to prevent the total appropriation for the year from exceeding revenues for that year, or for any other lawful purpose, and the effect of such reduction is to provide insufficient monies for the continuation of the contract, the contract shall terminate on the date of the beginning of the first fiscal year for which funds are not appropriated.

**Non-Discrimination**

Contractor agrees to abide by the requirements of the following as applicable and amended: Title VI of the Civil Rights Act of 1964 and Title VII of the Civil Rights Act of 1964; Equal Employment Opportunity Act of 1972; Federal Executive Order 11246; the Rehabilitation Act of 1973; the Vietnam Era Veteran's Readjustment Assistance Act of 1974; Title IX of the Education Amendments of 1972; Age Discrimination Act of 1975; Fair Housing Act of 1968; and, Americans with Disabilities Act of 1990.

Contractor agrees not to discriminate in its employment practices, and shall render services under this contract without regard to race, color, religion, sex, sexual orientation, national origin, veteran status, political affiliation, disability, or age in any matter relating to employment. Any act of discrimination committed by Contractor, or failure to comply with these statutory obligations when applicable shall be grounds for termination of this contract.

**Continuing Obligation**

Contractor has a continuing obligation to disclose any suspensions or debarment by any government entity, including but not limited to General Services Administration (GSA). Failure to disclosed may constitute grounds for suspension and/or termination of the Contract and debarment from future Contracts.

**Eligibility Status**

Contractor, and each tier of Subcontractors, shall certify that it is not on the List of Parties Excluded from Federal Procurement or Non-procurement Programs promulgated in accordance with E.O.s 12549 and 12689, "Debarment and Suspension," as set forth at 24 CFR part 24.

**Confidentiality**

Contractor shall protect from unauthorized use and disclosure all information relating to the State's operations and data (e.g. financial, statistical, personal, technical, etc.) that becomes available to the Contractor in carrying out this Contract. Contractor shall use protecting measures that are the same or more effective than those used by the State. Contractor is not required to protect information or data that is publicly available outside the scope of this Contract; already rightfully in the Contractor's possession; independently developed by the Contractor outside the scope of this Contract; or rightfully obtained from third parties.

Under no circumstance shall the Contractor discuss and/or release information to the media concerning this project without prior express written approval of the State.

**Amendments**

Any modification to the provisions of this Contract shall be in writing, signed by all parties, and approved by the required authorities.

**Prohibition of Discriminatory Boycotts of Israel**

In accordance with R.S. 39:1602.1, for any contract for $100,000 or more and for any contractor with five or more employees, the Contractor certifies that neither it nor its subcontractors are engaged in a boycott of Israel, and that the Contractor and any subcontractors shall, for the duration of this contract, refrain from a boycott of Israel. The State reserves the right to terminate this contract if the Contractor, or any Subcontractor, engages in a boycott of Israel during the term of this contract.

**Prohibition of Companies That Discriminate Against Firearm and Ammunition Industries**

In accordance with La. R.S. 39:1602.2, the following applies to any competitive sealed bids, competitive sealed proposals, or contract(s) with a value of $100,000 or more involving a for-profit company with at least fifty full-time employees:

Unless otherwise exempted by law, by submitting a response to this solicitation or entering into this contract, the Bidder, Proposer or Contractor certifies the following:

1. The company does not have a practice, policy, guidance, or directive that discriminates against a firearm entity or firearm trade association based solely on the entity's or association's status as a firearm entity or firearm trade association;

2. The company will not discriminate against a firearm entity or firearm trade association during the term of the contract based solely on the entity's or association's status as a firearm entity or firearm trade association.

The State reserves the right to reject the response of the Bidder, Proposer or Contractor if this certification is subsequently determined to be false, and to terminate any contract awarded based on such a false response or if the certification is no longer true.

**Cybersecurity Training**

In accordance with La. R.S. 42:1267(B)(3) and the State of Louisiana's Information Security Policy, if the Contractor, any of its employees, agents, or subcontractors will have access to State government information technology assets, the Contractor's employees, agents, or subcontractors with such access must complete cybersecurity training annually, and the Contractor must present evidence of such compliance annually and upon request. The Contractor may use the cybersecurity training course offered by the Louisiana Department of State Civil Service without additional cost or may use any alternate course approved in writing by the Office of Technology Services.

For purposes of this Section, "access to State government information technology assets" means the possession of credentials, equipment, or authorization to access the internal workings of State information technology systems or networks. Examples would include but not be limited to State-issued laptops, VPN credentials to credentials to access the State network, badging to access the State's telecommunications closets or systems, or permissions to maintain or modify IT systems used by the State. Final determination of scope inclusions or

exclusions relative to access to State government information technology assets will be made by the Office of Technology Services.

**Code of Ethics**

The Contractor acknowledges that Chapter 15 of Title 42 of the Louisiana Revised Statutes (R.S. 42:1101 et. seq., Code of Governmental Ethics) applies to the Contracting Party in the performance of services called for in this Contract. The Contractor agrees to immediately notify the state if potential violations of the Code of Governmental Ethics arise at any time during the term of this Contract.

**Contract Approval**

This contract is not effective until executed by all parties and approved in writing by the Office of State Procurement, in accordance with LSA-R.S.39:1595.1.

THUS DONE AND SIGNED AT Baton Rouge, Louisiana on the day, month and year first written above. IN WITNESS WHEREOF, the parties have executed this Agreement as of this day (*enter date*)

**WITNESSES SIGNATURES:**                    **STATE AGENCY SIGNATURES:**

_____            BY: _____

_____            _____

                                             Amanda Smith, Executive Director (225) 342-7100

                                             **CONTRACTOR SIGNATURE**

_____            BY: _____

_____            _____

                                             **(PRINT NAME UNDER SIGNATURE)**

                                             TAX I.D.#_____

                                             TELEPHONE NUMBER_____

## Attachment A: Nutritional Services Incentive Program (NSIP)-Statement of Work

This Agreement is made and entered into by and between the State of Louisiana, Governor's Office of Elderly Affairs, hereinafter referred to as the "State Agency," and the Contractor, hereinafter referred to as "Contractor."

1) **Compensation –**
Payments in the amount of 1/4 the Contractor's Maximum Contract Amount will be paid on a quarterly basis.

2) **Terms**

   a) This Agreement shall not become effective until approved by GOEA and the Division of Administration, Office of State Procurement.

   b) This Agreement contains all the terms and conditions agreed by the State Agency and the Contractor. Any alterations, variations, modifications or waivers of provisions of this award shall not be valid until they have been reduced to writing, duly signed by all parties having responsibility and interest including State and Federal officials as required. Continuation of this Agreement is based on compliance with all terms and conditions.

   c) All amendments shall be carried out in accordance with policies and procedures announced by the State Agency including the following:

      1) Whenever there is any change in the approved fiscal period and effective date of obligation herein; or

      2) Whenever there is any change in the ceiling for the NSIP.

   d) In the event the State Agency determines that certain costs which have been reimbursed to Contractor pursuant to this or previous Agreements are not allowable, the State Agency shall have the right to set off and withhold said amount from amounts due Contractor under this Agreement for costs that are allowed.

3) **Scope of Work** - The Contractor will:

   a) Enter into a written Agreement with each approved nutrition service provider for cash payment in NSIP, outlining the exact amount of payment and the responsibilities of the Area Agency and the NSIP provider.

   b) Promptly disburse all cash payments to its nutrition service providers.

   c) Establish procedures, including quarterly on-site program monitoring activities, to insure that such cash payments are used by the nutrition service providers solely for the purchase of:

   > ***United States agricultural commodities and other foods purchased in the United States for use in its nutrition operations. No imported food may be purchased with these funds, i.e. coffee, tea, cocoa and bananas.***

      1) Meals furnished to them under contractual arrangements with food service management companies, caterers, restaurants or institutions, provided that each meal contains United States produced commodities or foods at least equal in value to the per meal cash payment; or

      2) Meals that meet Title III-C standards for nutritional adequacy and sanitation. NSIP commodity cash assistance will be paid only for meals which meet one-third of the Recommended Dietary Allowance served to eligible participants and their spouses. Partial meals are not allowable for NSIP credit.

   d) Maintain accounting records for NSIP separate and apart from other accounting records maintained for other nutrition funding sources (i.e., Title III-C1 and C2 and other cash used for raw foods).

e)   Maintain and retain for three years from the close of the state fiscal year to which they pertain, complete and accurate records of all amounts received and disbursed under this Agreement or until any disputes are resolved.

f)   Maintain an accurate verifiable count of eligible meals served in the meals programs in order to be reimbursed under the guidelines established by the U.S. Department of Agriculture.

g)   Allow the State Agency to monitor periodically:

   1)   The Contractor's fiscal accountability of Cash in Lieu of Commodities.

   2)   The Contractor's ability to administer and monitor nutrition service provider's programmatic and fiscal management of NSIP.

h)   The Contractor will abide by and comply with the conditions and requirements set forth in Grants Administration.

4)   **Termination for Cause and Convenience**

a)   The State Agency has the right to suspend or cancel this contract upon 24-hours written notice to the Contractor if it is determined that funds provided herein are misused and/or unaccounted for; or if records and reports are not maintained; or for any other reason which is detrimental to the contract.

b)   The State Agency has the right to order cessation of the service funded under this Agreement upon 24hours' notice when the State Agency deems the health and welfare of the ultimate service recipients is endangered or non-compliance jeopardizes Federal financial participation. Such cessation shall remain in effect until the condition is corrected or the service contract is terminated.

c)   If the Contractor should go out of existence, or upon termination of this contract prior to the ending date, the Contractor will return all unexpected funds to the State Agency. This Agreement may be terminated at a date earlier than the ending date by either of the parties hereto upon written notice delivered to the other party at least thirty (30) days prior to the intended date of early termination. By such termination, neither party may nullify obligations already incurred for performance or failure to perform to the date of termination.

d)   The State may terminate this Contract for cause based upon the failure of the Contractor to comply with the terms and/or conditions of the Contract; provided that the State shall give the Contractor written notice specifying the Contractor's failure. If within thirty (30) days after receipt of such notice, the Contractor shall not have either corrected failure or, in the case which cannot be corrected in thirty (30) days, begun in good faith to correct said failure and thereafter proceeded diligently to complete such correction, then the State may, as its option, place the Contract in default and the Contract shall terminate on the date specified in such notice. The Contractor may exercise any rights available to it under Louisiana law to terminate for cause upon the failure of the State to comply with the terms and conditions of this contract; provided that the Contractor shall give the State written notice specifying the State's failure and a reasonable opportunity for the State to cure the defect.

e)   The State may terminate the Contract at any time by giving thirty (30) days written notice to the Contractor. The Contractor shall be entitled to payment for deliverables in progress, to the extent work has been performed satisfactorily.

5)   **Record and Audit** - The Contractor shall maintain detailed time records which indicate the date, time and nature of services rendered. These records shall be subject to the inspection and audit of the State Agency, Division of Administration, Office of Contractual Review, State Auditor, the NSIP, the aforementioned agencies or their designee shall have the right to audit billings both before and after payment; payment under this Agreement shall not foreclose the right of the State Agency to recover excessive illegal payments.

6) **Appropriations** – The terms of this Agreement are contingent upon sufficient appropriations and authorization being made by the United States Congress for the performance of this Agreement. If sufficient appropriations and authorizations are not made, this Agreement shall terminate upon written notice being given by the State Agency to the Contractor. The State Agency's decision as to whether sufficient appropriations are available shall be accepted by the Contractor and shall be final.

7) **Release** – The Contractor, upon final payment of the amount due under this Agreement, releases the State Agency, its offices and employees, and the State of Louisiana from all liability claims and obligations whatever arising from or under this Agreement. The Contractor agrees not to purport to bind the State of Louisiana to any obligation not assumed herein by the State of Louisiana, unless the Contractor has expressed written authority to do so, and then only within the strict limits of that authority.

8) **Conflict of Interest** – The Contractor warrants that he presently has no interest and shall not acquire any interest, direct or indirect, which would conflict in any manner or degree with the performance of services required under this Agreement. The Contractor shall not assign any interest in same whether by assignment or novation, without prior written consent of the State Agency, provided, however that money due or to be due to the Contractor from the State may be assigned to a bank, trust company, or other financial institution without such prior written consent. Notice of such assignment or transfer shall be furnished promptly to the State Agency.

9) **Applicable Laws** – This Agreement shall be governed by the laws and regulations of (a) the State of Louisiana, (b) the Older Americans Act of 1965, as Amended in 2006, (c) the Federal Agriculture Act of 1949, as amended in 2008, and (d) any other applicable law and regulations of the federal government. If any part of this contract is determined to be invalid or illegal by any court of competent jurisdiction, it shall not affect the remaining parts.

10) **Assurances** – The Contractor hereby assures and certifies that it will comply with regulations, policies, guidelines, and requirements, including 2 CFR 200, as it relates to the application, acceptance and use of federal funds for this federally assisted project. Moreover, the Contractor agrees and/or shall require all Subcontractors to agree:

    a) Contractor agrees not to discriminate in its employment practices, and will render services under this contract without regard to race, color, religion, sex, sexual orientation, national origin, veteran status, political affiliation, or disabilities.

    b) To establish safeguards to prohibit employees from using their positions for a purpose of or giving the appearance of being motivated by a desire for private gain for themselves or others, particularly those with whom they have family business, or other ties.

    c) To comply with all requirements imposed by the Federal Sponsoring Agency concerning special requirements of law, program requirements, and other administrative requirements.

## GOALS AND OBJECTIVES, PERFORMANCE EVALUATION, MONITORING PLAN

**Goal I**  To provide for the delivery of supportive and nutritional services to at least 8% of older individuals to enable them to live dignified, independent, and productive lives in appropriate settings (using the most current census data).

**Objective I:**  To target the state's older individuals with the greatest economic or social need, with particular attention to low-income minority individuals, for services by **6/30/2027.**

## Performance Indicators

**Input**  Number of recipients receiving services from the HCBS (Home and Community Based Services) program

**Outcome**  Nutrition scores may improve.

**Efficiency**  Percentage of low-income persons served as compared to the number of elderly persons in the service area

**Monitoring**  GOEA Program Monitors will review the Area Agency on Aging's (AAA's) service delivery on a quarterly basis.

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____ :

**RESOLUTION 26-**
**ST. JAMES PARISH COUNCIL**

**A RESOLUTION APPROVING THE SIGNING OF FISCAL YEAR 27 TITLE III CONTRACT BETWEEN THE GOVERNOR'S OFFICE OF ELDERLY AFFAIRS AND ST. JAMES PARISH GOVERNMENT, DEPARTMENT OF HUMAN RESOURCES FOR JULY 1, 2026, TO JUNE 30, 2027 PROGRAM YEAR.**

**WHEREAS**, the St. James Parish Council is the governing board for Area Agency on Aging for St. James Parish; and,

**WHEREAS**, the St. James Parish President is the chief executive officer of the parish, and,

**WHEREAS**, the St. James Parish Government Department of Human Resources has operated federal, state, and locally funded programs to benefit the elderly and low-income residents of St. James Parish since 1965; and

**WHEREAS**, Title III Contract between the Governor's Office of Elderly Affairs is in amount $167,393.00 specified by the Governor's Office of Elderly Affairs.

**WHEREAS**, St. James Area Agency on Aging Title III agrees to develop and administer the Area Plan for a comprehensive and coordinated system of services, to be provided for a period of 250 days and serve as the advocate and focal point for older persons in the planning and service area throughout the approved project period subject to the terms and conditions provided in Attachment A: Statement of Work, the Contractor's Approved State Plan, and all applicable state and/or federal law, including the Older Americans Act, as revised, before June 30, 2027.

**WHEREAS**, the Applicant has the legal, fiscal, and managerial capacity to carry out the project.

**NOW, THEREFORE, BE IT RESOLVED,** by the St. James Parish Council that the Parish President is authorized to sign the Title III Contract without further approval of this Council.

1.  That the Parish President is authorized to sign assurances, agreements, contracts, amendments and revisions and other necessary documents required.

2.  That this resolution is applicable for a period of twelve months unless revoked by the governing body and copy of such revocation shall be furnished to the Governor's Office of Elderly Affairs.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the3rd day June 2026.

_____
Council Chairman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\*   \*   \*   \*   \*

<u>C E R T I F I C A T E</u>

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana, this 4th day of June 2026.

_____

(S E A L)

Tammie Bodin
Secretary

# CONTRACT BETWEEN STATE OF LOUISIANA

**NAME OF DEPARTMENT/AGENCY**
Governor's Office of Elderly Affairs

<b>AND</b>

**CONTRACTOR NAME**
St. James Area Agency on Aging

**CONTRACT NUMBER** *(ISIS/LAGOV)*
4400035284

<b>TYPE OF SERVICES TO BE PROVIDED</b>

PROFESSIONAL SERVICES ☐    CONSULTING SERVICES ☐    SOCIAL SERVICES ☐    PERSONAL SERVICES ☐
AGENCY ☐    GOVERNMENTAL ☒    COOPERATIVE ENDEAVOR ☐

---

**CONTRACTOR (Legal Name if Corporation)**
St. James Area Agency on Aging Title III

**FEDERAL EMPLOYER TAX ID NUMBER**
72-6001228
**STATE LDR ACCOUNT #**
Click here to enter the State LDR Account

Number
**STREET ADDRESS**
P. O. Box 87
**CITY** Convent           **STATE** LA

**TELEPHONE NUMBER**
225-562-2372
**ZIP CODE** 70723

---

**BRIEF DESCRIPTION OF SERVICES TO BE PROVIDED**
The State of Louisiana, Office of the Governor, Office of Elderly Affairs, and Beauregard Council on Aging, shall foster development of comprehensive and coordinated systems for the elderly, consistent with State and Federal Laws and Regulations, in the manner set forth in the State Plan, the approved Area Plan, and/or Proposal(s), which are made a part hereof, subject to the following provisions shall foster development of comprehensive and coordinated systems of services for the elderly, consistent with State and Federal Laws and Regulations, in the manner set forth in the State Plan, the approved Area Plan, and/or Proposal(s), which are made a part hereof, subject to the terms and conditions detailed in Attachment A: Statement of Work. The Contractor agrees to: develop and administer the Area Plan for a comprehensive and coordinated system of services, to be provided for a period of 250 days and serve as the advocate and focal point for older persons in the planning and service area throughout the approved project period subject to the terms and conditions provided in Attachment A: Statement of Work, the Contractor's Approved State Plan, and all applicable state and/or federal law, including the Older Americans Act, as revised, before June 30, 2027. The State and Federal Funding provisionally awarded to the Contractor is detailed in Attachment C:Title III State and Federal Award Breakdown.

---

**BEGIN DATE**
7/1/2026
**MAXIMUM CONTRACT AMOUNT**
$167,393.00

**END DATE**
6/30/2027
**MULTI-YEAR CONTRACT BREAKDOWN**
N/A

---

**TERMS OF PAYMENT** – If progress and/or completion of services are provided to the satisfaction of the initiating Office/Facility, payments are to be made as follows:
In consideration of the timely performance of the Contractor in a manner consistent with applicable state and federal regulations, the GOEA Accounting Guide, and all other applicable law, including all monthly, annual, or periodic reporting requirements, as applicable, the State Agency shall pay the Contractor the total amount in adjusted monthly installments, in consideration for satisfactory performance, as determined by the State Agency. Payments to the Contractor are contingent upon the receipt and approval of all required financial reports, in amounts determined in accordance with the provisions contained within the GOEA Accounting Guide. The precise amounts awarded to the Contractor, including the breakdown of Federal and State Funding therein, is detailed in the attached Attachment C: Title III State and Federal Award Breakdown.

**PAYMENT WILL BE MADE ONLY UPON APPROVAL OF:** *(Type Title of Personnel only)*

**Taxes**

Before the contract may be approved, La. R.S. 39:1624(A)(10) requires the Office of State Procurement to determine that the Contractor is current in the filing of all applicable tax returns and reports and in the payment of all taxes, interest, penalties, and fees owed to the state and collected by the Department of Revenue. The Contractor shall provide its seven-digit LDR Account Number to the State for this determination. The State's obligations are conditioned on the Contractor resolving any identified outstanding tax compliance discrepancies with the Louisiana Department of Revenue within seven (7) days of such notification. If the Contractor fails to resolve the identified outstanding tax compliance discrepancies within seven days of notification, then the using agency may proceed with alternate arrangements without notice to the Contractor and without penalty.

**Termination for Cause**

Should the State determine that the Contractor has failed to comply with the Contract's terms, the State may terminate the Contract for cause by giving the Contractor written notice specifying the Contractor's failure. If the State determines that the failure is not correctable, then the Contract shall terminate on the date specified in such notice. If the State determines that the failure may be corrected, the State shall give a deadline for the Contractor to make the correction.  If the State determines that the failure is not corrected by the deadline, then the State may give additional time for the Contractor to make the corrections or the State may notify the Contractor of the Contract termination date.

If the Contractor seeks to terminate the Contract, the Contractor shall file a complaint with the Chief Procurement Officer under La. R.S. 39:1672.2-1672.4.

**Termination for Convenience**

State may terminate the Contract at any time without penalty by giving thirty (30) days written notice to the Contractor of such termination or negotiating with the Contractor a termination date. Contractor shall be entitled to payment for deliverables in progress, to the extent the State determines that the work is acceptable.

**Remedies for Default**

Any claim or controversy arising out of this contract shall be resolved by the provisions of LSA - R.S. 39:1672.2 - 1672.4.

**Other Remedies**

If the Contractor fails to perform in accordance with the terms and conditions of this Contract, or if any lien or claim for damages, penalties, costs and the like is asserted by or against the State, then, upon notice to the Contractor, the State may pursue all remedies available to it at law or equity, including retaining monies from amounts due the Contractor and proceeding against any surety of the Contractor.

**Governing Law**

This Contract shall be governed by and interpreted in accordance with the laws of the State of Louisiana, including but not limited to La. R.S. 39:1551-1736; rules and regulations; executive orders; standard terms and conditions, special terms and conditions, and specifications listed in the RFP(if applicable); and this Contract. Venue of any action brought, after exhaustion of administrative remedies, with regard to this Contract shall be in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

**E-Verify**

Contractor acknowledges and agrees to comply with the provisions of La. R.S. 39:995 and federal law pertaining to E-Verify in the performance of services under this Contract.

**Record Ownership**

All records, reports, documents and other material delivered or transmitted to Contractor by State shall remain the property of State, and shall be returned by Contractor to State, at Contractor's expense, at termination or expiration of the Contract. All material related to the Contract and/or obtained or prepared by Contractor in connection with the performance of the services contracted for herein shall become the property of State, and shall be returned by Contractor to State, at Contractor's expense, at termination or expiration of the Contract.

**Contractor's Cooperation**

The Contractor has the duty to fully cooperate with the State and provide any and all requested information, documentation, etc. to the state when requested. This applies even if this Contract is terminated and/or a lawsuit is filed. Specifically, the Contractor shall not limit or impede the State's right to audit or shall not withhold State owned documents.

**Assignability**

Contractor may assign its interest in the proceeds of this Contract to a bank, trust company, or other financial institution. Within ten calendar days of the assignment, the Contractor shall provide notice of the assignment to the State and the Office of State Procurement. The State will continue to pay the Contractor and will not be obligated to direct payments to the assignee until the State has processed the assignment.

Except as stated in the preceding paragraph, Contractor shall only transfer an interest in the Contract by assignment, novation, or otherwise, with prior written consent of the State. The State's written consent of the transfer shall not diminish the State's rights or the Contractor's responsibilities and obligations.

**Right to Audit and Record Retention**

Any authorized agency of the State (e.g. Office of the Legislative Auditor, Inspector General's Office, etc.) and of the Federal Government has the right to inspect and review all books and records pertaining to services rendered under this contract for a period of five years from the date of final payment under the prime contract and any subcontract. The Contractor and subcontractor shall maintain such books and records for this five-year period and cooperate fully with the authorized auditing agency. Contractor and subcontractor shall comply with federal and state laws authorizing an audit of their operations as a whole, or of specific program activities.

**Fiscal Funding**

The continuation of this contract is contingent upon the appropriation of funds to fulfill the requirements of the contract by the legislature. If the legislature fails to appropriate sufficient monies to provide for the continuation of the contract, or if such appropriation is reduced by the veto of the Governor or by any means provided in the appropriations act to prevent the total appropriation for the year from exceeding revenues for that year, or for any other lawful purpose, and the effect of such reduction is to provide insufficient monies for the continuation of the contract, the contract shall terminate on the date of the beginning of the first fiscal year for which funds are not appropriated.

**Non-Discrimination**

Contractor agrees to abide by the requirements of the following as applicable and amended:  Title VI of the Civil Rights Act of 1964 and Title VII of the Civil Rights Act of 1964; Equal Employment Opportunity Act of 1972; Federal Executive Order 11246; the Rehabilitation Act of 1973; the Vietnam Era Veteran's Readjustment Assistance Act of 1974; Title IX of the Education Amendments of 1972; Age Discrimination Act of 1975; Fair Housing Act of 1968; and, Americans with Disabilities Act of 1990.

Contractor agrees not to discriminate in its employment practices, and shall render services under this contract without regard to race, color, religion, sex, sexual orientation, national origin, veteran status, political affiliation, disability, or age in any matter relating to employment. Any act of discrimination committed by Contractor, or failure to comply with these statutory obligations when applicable shall be grounds for termination of this contract.

**Continuing Obligation**

Contractor has a continuing obligation to disclose any suspensions or debarment by any government entity, including but not limited to General Services Administration (GSA). Failure to disclosed may constitute grounds for suspension and/or termination of the Contract and debarment from future Contracts.

**Eligibility Status**

Contractor, and each tier of Subcontractors, shall certify that it is not on the List of Parties Excluded from Federal Procurement or Non-procurement Programs promulgated in accordance with E.O.s 12549 and 12689, "Debarment and Suspension," as set forth at 24 CFR part 24.

**Confidentiality**

Contractor shall protect from unauthorized use and disclosure all information relating to the State's operations and data (e.g. financial, statistical, personal, technical, etc.) that becomes available to the Contractor in carrying out this Contract. Contractor shall use protecting measures that are the same or more effective than those used by the State. Contractor is not required to protect information or data that is publicly available outside the scope of this Contract; already rightfully in the Contractor's possession; independently developed by the Contractor outside the scope of this Contract; or rightfully obtained from third parties.

Under no circumstance shall the Contractor discuss and/or release information to the media concerning this project without prior express written approval of the State.

**Amendments**

Any modification to the provisions of this Contract shall be in writing, signed by all parties, and approved by the required authorities.

**Prohibition of Discriminatory Boycotts of Israel**

In accordance with R.S. 39:1602.1, for any contract for $100,000 or more and for any contractor with five or more employees, the Contractor certifies that neither it nor its subcontractors are engaged in a boycott of Israel, and that the Contractor and any subcontractors shall, for the duration of this contract, refrain from a boycott of Israel. The State reserves the right to terminate this contract if the Contractor, or any Subcontractor, engages in a boycott of Israel during the term of this contract.

**Prohibition of Companies That Discriminate Against Firearm and Ammunition Industries**

In accordance with La. R.S. 39:1602.2, the following applies to any competitive sealed bids, competitive sealed proposals, or contract(s) with a value of $100,000 or more involving a for-profit company with at least fifty full-time employees:

Unless otherwise exempted by law, by submitting a response to this solicitation or entering into this contract, the Bidder, Proposer or Contractor certifies the following:

1. The company does not have a practice, policy, guidance, or directive that discriminates against a firearm entity or firearm trade association based solely on the entity's or association's status as a firearm entity or firearm trade association;

2. The company will not discriminate against a firearm entity or firearm trade association during the term of the contract based solely on the entity's or association's status as a firearm entity or firearm trade association.

The State reserves the right to reject the response of the Bidder, Proposer or Contractor if this certification is subsequently determined to be false, and to terminate any contract awarded based on such a false response or if the certification is no longer true.

**Cybersecurity Training**

In accordance with La. R.S. 42:1267(B)(3) and the State of Louisiana's Information Security Policy, if the Contractor, any of its employees, agents, or subcontractors will have access to State government information technology assets, the Contractor's employees, agents, or subcontractors with such access must complete cybersecurity training annually, and the Contractor must present evidence of such compliance annually and upon request. The Contractor may use the cybersecurity training course offered by the Louisiana Department of State Civil Service without additional cost or may use any alternate course approved in writing by the Office of Technology Services.

For purposes of this Section, "access to State government information technology assets" means the possession of credentials, equipment, or authorization to access the internal workings of State information technology systems or networks. Examples would include but not be limited to State-issued laptops, VPN credentials to credentials to access the State network, badging to access the State's telecommunications closets or systems, or permissions to maintain or modify IT systems used by the State. Final determination of scope inclusions or

exclusions relative to access to State government information technology assets will be made by the Office of Technology Services.

**Code of Ethics**

The Contractor acknowledges that Chapter 15 of Title 42 of the Louisiana Revised Statutes (R.S. 42:1101 et. seq., Code of Governmental Ethics) applies to the Contracting Party in the performance of services called for in this Contract. The Contractor agrees to immediately notify the state if potential violations of the Code of Governmental Ethics arise at any time during the term of this Contract.

**Contract Approval**

This contract is not effective until executed by all parties and approved in writing by the Office of State Procurement, in accordance with LSA-R.S.39:1595.1.

THUS DONE AND SIGNED AT Baton Rouge, Louisiana on the day, month and year first written above. IN WITNESS WHEREOF, the parties have executed this Agreement as of this day July 1, 2026.

**WITNESSES SIGNATURES:**                    **STATE AGENCY SIGNATURES:**

_____             BY: _____

_____             _____

                                             Amanda Smith, Executive Director (225) 342-7100

                                             **CONTRACTOR SIGNATURE**

_____             BY: _____

_____             _____

                                             **(PRINT NAME UNDER SIGNATURE)**

                                             TAX I.D.#_____

                                             TELEPHONE NUMBER_____

| FY2027 TITLE III Contracts | ATTACHMENT A | STATEMENT OF WORK |
|---|---|---|

### I. Preliminary Matters – Grant Award Contingent Upon Appropriation

It is hereby agreed and understood by and between the parties that the obligation of any and all funds listed and categorized as Federal or State Fund Appropriations or those funds which could reasonably be traced to those sources, is conditional, subject to the conditions that: (1) these funds are approved and appropriated for the Governor's Office of Elderly Affairs by the Congress of the United States, the Administration on Aging of the U.S. Department of Health and Human Services, and if necessary, the Legislature of the State of Louisiana; and (2) the Governor's Office of Elderly Affairs has received the Notification of Grant Award (NGA) from the above Administration on Aging.

It is further agreed and understood by and between the parties that no expenditure or unconditional obligation of funds subject to the above conditions shall occur by the contractor herein unless and still realization of the above conditions; provided, however, that in no event shall there be any expenditures or unconditional obligation of funds, whether such funds be subject or not subject to the above conditions, unless the Governor's Office of Elderly Affairs has received and the contractor is operating under an approved Area Plan and/or Proposal or approved amendment thereof.

The Contractor certifies that all services and other activities for the elderly through the terms and conditions of this Agreement are in full compliance with its approved Area Plan and/or Proposal or amendment(s) corresponding to the periods herein stated.

It is further agreed and understood by and between the parties that in the event there is a disparity between the amount conditionally awarded herein and the amount actually available for awarding after the realization of the above condition, a contractual addendum, reflecting the appropriate modifications, will be issued within a reasonable period of time after receipt by the Governor's Office of Elderly Affairs of Notification of Grants Award (NGA) reflecting such disparity.

The State of Louisiana, Office of the Governor, Office of Elderly Affairs ("State Agency"), and the Contractor shall foster development of comprehensive and coordinated systems of services for the elderly, consistent with State and Federal Laws and Regulations, in the manner set forth in the State Plan, the approved Area Plan, and/or Proposal(s), which are made a part hereof, subject to the conditions which follow:

### II. Scope of Services: Contractor

#### Contractor agrees to:

1) Develop and administer the Area Plan for a comprehensive and coordinated system of services, to be provided for a period of 250 days; and

2) Serve as the advocate and focal point for older persons in the planning and service area throughout the approved project period functions necessary to fulfill the requirements of the State Agency.

### III. Scope of Services: State Agency

#### A. Administrative Responsibilities

(1) The State Agency hereby assures that it will assist the Contractor to achieve the objectives in the approved area plan/proposal by monitoring, assessing and evaluating its activities throughout the contract period; and providing technical assistance in overcoming identified barriers, provided that written requests are received by the State Agency on a timely basis. The Contractor shall bear full responsibility and accountability for the provision of services in accordance with the terms and conditions set forth herein.

(2) The State Agency reserves the right and privilege of visitation and inspection any time during regular business hours and/or service hours, announced or unannounced, to facilities operated by the Contractor and/or Subcontractor, for the purpose of monitoring and evaluating activities and services performed under the terms of this agreement. The Contractor will include the provisions of this paragraph in each subcontract containing funds derived from this agreement.

#### B. Program Monitoring

The State Agency will monitor the Contractor's records and reports and conduct spot checks of various aspects of the Contractor's total operation, including management of subcontracts, on an ongoing basis. The State Agency reserves the right to monitor the financial and programmatic operations of all subcontractors engaged in executing the terms of this agreement, if assessments conducted by the Contractor indicate the need to do so.

#### C. Assessment Report

(1) The State Agency will regularly assess the capacity of the Area Agency to perform its functions as required by the State Agency and the Older Americans Act (hereinafter, "OAA"), and the progress of the Area Agency/service provider in attaining the objectives set forth in the approved Area Plan and/or proposal.

(2) The State Agency will provide the Contractor with a written report of its findings and recommendations for corrective action to ensure accomplishment of its objectives.

| FY2027 TITLE III Contracts | ATTACHMENT A | STATEMENT OF WORK |
|---|---|---|

(3) In cases where areas of non-compliance with State of Federal regulations are noted, Contractor will be given completion dates for compliance. Assessment visits will commence with a review of findings of previous assessment.

### D. Evaluation Procedures

The State Agency will conduct an evaluation of each Contractor twice per year. The purpose of the evaluation is to determine the efficiency of continuance of this or any subsequent proposed agreements between the State Agency and the Contractor. Each biannual evaluation will be graded as "acceptable" or "unacceptable" by the State Agency. The Contractor will receive written notification of the State Agency's findings.

## IV. General Contract Provisions

A. Contractor agrees that all activities related to the purpose of the Older Americans Act funded through the terms and conditions of this agreement are in full compliance with the approved Area Plan, the Proposal(s), Budget(s) and appropriate State and Federal Laws and Regulations to include: Title 45 CFR, Part 74 Administration of Grants, Department of Health and Human Services, 45 CFR Part 1321 and the Older Americans Act of 1965, as amended. If Contractor is an Area Agency on Aging and receives State Senior Center funds, Contractor agrees to reflect State funded Senior Center activities within the area plan, subject to approval of the State Agency. The Contractor agrees, if necessary, to amend the currently approved Area Plan and submit the amendment for approval to the State Agency prior to the effective date of the agreement.

B. Contractor agrees that unless revised, the Total Award on Attachment C will constitute a ceiling for State and/or Federal participation.

C. Contractor agrees that the Federal share of a project cost is earned only when the cost is accrued and the non-Federal share of the cost has been contributed. Receipt of State and/or Federal funds (either through advance or reimbursement) does not constitute earning of these funds..

D. Contractor agrees that if the actual net cost is less than the Total Award on Attachment C, the net cost non-Federal share will remain the same percentage as the non-Federal share on Attachment C, and the net cost Federal share will remain the same percentage as the Federal Share on Attachment C of the project year of this award.

E. Contractor agrees that the Contractor or Subcontractor shall expend funds under this agreement in a manner consistent with the applicable approved Area Plan and/or Proposal(s) Budgets must be approved by the Contractor's Governing Board and are required to be submitted according to guidelines established by the State Agency.

F. No contractor shall assign any interest in this contract by assignment, transfer, or novation, without prior written consent of the State. This provision shall not be construed to prohibit the contractor from assigning his bank, trust company, or other financial institution any money due or to become due from approved contracts without such prior written consent. Notice of any such assignment or transfer shall be furnished promptly to the State. Nothing herein shall be construed to prohibit the formation of subcontracts between the contractor herein and its subcontractors.

G. The continuation of this contract is contingent upon the appropriation of funds to fulfill the requirements of the contract by the legislature. If the legislature fails to appropriate sufficient monies to provide for the continuation of the contract, or if such appropriation is reduced by the veto of the Governor or by any means provided in the appropriations act to prevent the total appropriation for the year from exceeding revenues for that year, or for any other lawful purpose, and the effect of such reduction is to provide insufficient monies for the continuation of the contract, the contract shall terminate on the date of the beginning of the first fiscal year for which funds are not appropriated.

H. The State Agency and Contractor hereby agree that this agreement shall commence and terminate in accordance with the dates specified on Page 1 (One). This agreement may be terminated at an earlier date if mutually agreed upon, in writing, by both parties.

I. The State Agency may terminate the Contract at any time by giving thirty (30) days written notice to the Contractor. The Contractor shall be entitled to payment for deliverables in progress, to the extent work has been performed satisfactorily.

J. The State Agency has the right to suspend or cancel this contract upon written notice to the Contractor if: it is determined that funds provided herein are misused and/or unaccounted for, the Area Plan is not approved, Contractor fails to maintain records and/or reports, services are not performed in accordance with acceptable standards, units of service deviate more than 10% in a quarter without the Contractor making an amendment to the Area Plan or proposal, or for any other reason detrimental to the contract.

K. The State may terminate this Contract for cause based upon the failure of the Contractor to comply with the terms and/or conditions of the Contract; provided that the State shall give the Contractor written notice specifying the Contractor's failure. If within thirty (30) days after receipt of such notice, the Contractor shall not have either corrected such failure or, in the case of failure which cannot be corrected in thirty (30) days, begun in good faith to correct said failure and thereafter proceeded diligently to complete such correction, then the State may, at its option, place the Contractor in default and the Contract shall terminate on the date specified in such notice. The Contractor may exercise any rights available to it under Louisiana law to terminate for cause upon the failure of the State to comply with the terms and conditions of this contract; provided that the Contractor shall give the State written notice specifying the State's failure and a reasonable opportunity for the state to cure the defect.

L. The State Agency has the right to order cessation of any service funded under this agreement upon 24-hour notice when the State Agency deems the health or welfare of the ultimate service recipients is endangered, or when Contractor's non-compliance

| FY2027 TITLE III Contracts | ATTACHMENT A | STATEMENT OF WORK |
|---|---|---|

jeopardizes Federal financial participation. Such cessation shall remain in effect until the condition is corrected or the affected service contract is terminated in Paragraph (J).

M. Should this contract be rescinded or terminated prior to the end of the approved project period, all records, reports, documents and other material delivered or transmitted to Contractor by State Agency shall remain the property of State Agency, and shall be returned by Contractor to State Agency, at Contractor's expense, at termination or expiration of this contract. All records, reports, documents, or other material related to this contract and/or obtained or prepared by Contractor in connection with the performance of the services contracted for herein shall become the property of State, and shall, upon request, be returned by Contractor to State Agency, at Contractor's expense, at termination or expiration of this contract.

N. Upon completion of this Contract, the Contractor agrees to retain all books, records and other documents relevant to this agreement and the funds expended hereunder for at least three (3) years after final payment. Contractor agrees to retain all books, documents, papers and records pertaining to acquisition or completion of construction of any multi-purpose Senior Center Facility paid for in any part with Older Americans Act Federal Funds through this or a predecessor agreement, as follows: ten years after acquisition, and twenty years after the completion of construction, respectively, of such a facility.

O. If Contractor should go out of existence or upon termination of this Contract prior to its ending date, Contractor will return all unexpended funds to the State Agency.

P. This Agreement contains all the terms and conditions agreed to by the State Agency and Contractor. Any alterations, variations, modifications or waivers of provisions of this Award shall not be valid until they have been reduced to writing and duly signed by all parties having responsibility and interest including State and Federal officials as required. Continuation of this agreement is based on compliance with all terms and conditions.

Q. If any part of this contract is determined to be invalid or illegal by any court of competent jurisdiction, it shall not affect the remaining parts hereof.

R. Contractor agrees to place special emphasis on identifying, through outreach, older persons in greatest economic or social need with particular attention to low-income minorities.

S. Contractor agrees to attempt to provide all services to low-income minorities in at least the same proportion as the population of low-income minority bears to the population of older individuals in the area served.

T. Contractor, in addition to conducting periodic evaluations of objectives carried out under the Area Plan, is required to conduct public hearings and an annual evaluation on the effectiveness of outreach.

## V. Fiscal Management, Record Keeping and Program Reports

A. To permit the State Agency to determine the effectiveness and efficiency of service performance under this Agreement, Contractor shall provide all information and data to State Agency, as required, in the form requested.

B. Contractor further agrees to submit to the State Agency a monthly Financial Statement and to maintain books, records, documents, and other evidence, in accordance with generally accepted accounting practices and procedures, sufficient to properly reflect all direct and indirect costs. This shall include a written cost allocation plan to cover costs, of whatever nature, claimed to have been incurred for the performance of this agreement. Said accounting routine shall be prescribed and/or approved by the State Agency.

C. Additionally, all financial transactions must be recorded, classified and summarized in appropriate journals to provide chronological records of transactions having a common origin, and ledgers to consolidate transaction amounts related to a given classification. Records will establish independent accounting for all receipts and disbursements of monies derived from this Agreement.

D. The Contractor agrees to abide by audit requirements contained in the current GOEA Audit Guide; as well as regulations promulgated by the State Agency concerning audit activities and requirements. Contractors and subcontractors are responsible for having audits conducted annually.

E. If, upon preliminary audit review, a decision is made by the audit team to inspect all other accounts, transactions, ledgers and deposit and/or withdrawal slips, Contractor will agree to their inspection and submit a complete and total audit. Contractor further agrees that the fiscal and other records of Contractor as they pertain to the Agreement shall be subject, at all reasonable times, to inspection and audit by the State Agency, the United States Department of Health and Human Services, and the Legislative Auditor for the State of Louisiana, or their designee(s). Final financial settlement of this agreement shall be contingent upon the final audit.

F. In the event that the State Agency determines that certain costs which have been reimbursed to Contractor, pursuant to this or previous agreements, are not allowable, the State Agency shall have the right to set off, and withhold said amount from amounts due Contractor under this Agreement for costs that are allowed.

G. Records of Federal projects funds and non-Federal funds (state, local, in-kind, other) shall be maintained separate from each other, and expenditures must be kept in accordance with budget categories, as outlined in the budget format.

## VI. Capital Expenditures

A. All expenditures in the category "Capital Outlay" for real property, equipment, and supplies will be made in accordance with Federal laws and regulations governing such purchases and transactions, as well as any regulations promulgated by the State Agency.

B. The purchase, use, transfer, replacement, disposition and management of equipment will be in accordance with 45 CFR Part 74, Department of Health and Human Services Administration of Grants, as well as any regulations promulgated by the State Agency.

C. Contractor shall establish and maintain property records and inventory of equipment and capital assets acquired or purchased, in whole or in part, under this Agreement or a predecessor agreement, and shall provide for the tagging of make, model and serial numbers of the above items where the cost per unit exceeds ($1,000.00) and a useful life expectancy of one year or more. Property records will identify the federal and/or state equity, in equipment or other capital assets acquired, in whole or in part, pursuant to this Contract. Such inventory lists shall be submitted to the State Agency along with the fiscal report for the final month of the approved contract period. The inventory list will reflect all property and equipment as of June 30 of the contract term.

D. The State Agency shall retain an equitable interest, based upon fair estimate or appraisal of current market value, in all equipment purchased under this or a predecessor contract. The Contractor shall not dispose of any inventoried equipment purchased under this or a predecessor contract without the prior written consent of the State Agency. Property will only be disposed of in accordance with federal law and federal and state regulations.

E. Equipment or capital assets purchased by Contractor pursuant to this Agreement shall, unless otherwise provided herein or approved in writing by the State Agency, be used only for the performance and furtherance of this agreement. In the event the Contractor is indemnified, reimbursed, or otherwise compensated for any loss, destruction of, or damage to equipment or capital assets purchased or acquired, in whole or in part, using funds herein awarded, Contractor shall utilize said proceeds to repair, renovate or replace the property involved, or shall credit such proceeds against the cost of the work covered by the Agreement, or shall otherwise reimburse the State Agency, as directed by the State Agency.

   a. Capital outlay expenditures for non-expendable equipment purchased must be approved by the State Agency, in writing, prior to any such expenditure.

## VII Travel

Travel expenses shall be reimbursed in accordance with the current Division of Administration State General Travel Regulations Policy & Procedures Memorandum 49. It is agreed that no funds provided herein shall be used by the Contractor for payments which exceed those authorized in these travel regulations, and approved by the Contractor's Governing Body. Travel and other reimbursable expenses shall constitute part of the total maximum payable under this Agreement.

## VIII. Program Income

A. Contractor agrees to provide opportunities for older persons to voluntarily contribute to the cost of services received in accordance with 45 CFR Part 1321.65. The State Agency shall provide safeguards to insure confidentiality. Internal controls will be established in writing to insure a chain of receipts and accountability of such contributions.

B. Contractor agrees that General Program Income, as defined in 45 CFR 74.2, shall be retained by the Contractor (or Subcontractor) and used for allowable costs of the project or program, as stipulated in 45 CFR 74.24, State Agency requirements and Section 307(a) (13) -C of the Older Americans Act, as amended.

C. Contractor agrees that program income shall be used for costs incurred during the approved project period of the agreement, unless the State Agency authorizes deferral to a later period.

## IX. Insurance

The Contractor agrees to obtain, and/or shall require Subcontractor(s) to obtain, sufficient insurance, to protect the interest of all parties to this agreement, including: liability, property, food preparation, Workmen's Compensation, bonding, and professional practice insurance, as required.

## X.    Licensing Standards

The Contractor agrees to comply with all State licensing standards, all applicable accrediting standards, any applicable Federal standards and with all applicable State and Federal laws and regulations.

## XI. Taxes

The Contractor hereby agrees that the responsibility for payment of taxes from the funds thus received under this Agreement shall be the Contractor's or Subcontractor's obligation. These include, but are not limited to, income, Social Security, and any other taxes, as well as all income tax or payroll deductions, as required by law.

## XII. Amendments

A. No part of this Agreement shall be waived or altered except by a written amendment signed by both parties to this Contract.

B. All amendments shall be carried out in accordance with policies and procedures announced by the State Agency, including the following:

   1) An amendment of the contract shall be required:

      a) Whenever there is any change in the approved project period and effective date of obligation herein;

      b) Whenever there is any change in the ceiling for State and/or Federal funds, as awarded on Attachment C of this agreement.

   2) Budget revisions shall be required:

      a) Whenever there are changes in the Area Plan, proposal(s), and/or budgets that significantly affect the programmatic or financial provisions relative to this agreement; or

| FY2027 TITLE III Contracts | ATTACHMENT A | STATEMENT OF WORK |
|---|---|---|

      **b)**    Whenever there are changes to the Contractor's budget that  in the categories of the Contractor's budget of more than 10 (ten) percent.

  **3)**    All budget revisions must be approved by the Governing Body of the Contractor at a meeting. A revised budget, and a copy of the minutes of the meeting, or a Board Resolution indicating approval of the budget revisions must be sent to the State Agency for informational purposes. The budget checklist will be included.

## XIII. Assurances

**A.**    The Contractor hereby assures and certifies that it will comply with all applicable federal requirements, including all regulations, policies, guidelines, and requirements, including OMB Circulars: A-95 or its successor, 2 CFR 200, as revised, and 25 CFR 700.477, as they relate to the application, acceptance and use of federal funds for the federally-assisted project.

**B.**    Contractor agrees that funds obligated under the agreement will be available for the provision of services by an agency, organization, or individual other than the Area Agency on Aging only when it has executed a written subcontract in accordance with the provisions of the agreement.

**C.**    The contractor agrees to abide by the requirements of the following as applicable: Title VI of the Civil Rights Act of 1964 and Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, Federal Executive Order 11246 as amended, the Rehabilitation Act of 1973, as amended, the Vietnam Era Veteran's Readjustment Assistance Act of 1974, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, the Fair Housing Act of 1968 as amended, and contractor agrees to abide by the requirements of the Americans with Disabilities Act of 1990. Contractor agrees not to discriminate in its employment practices, and will render services under this contract without regard to race, color, religion, sex, sexual orientation, national origin, veteran status, political affiliation, disability, or age in any matter relating to employment. Any act of discrimination committed by Contractor, or failure to comply with these statutory obligations when applicable shall be grounds for termination of this contract.

**D.**    Any claim or controversy arising out of this contract shall be resolved by the provisions of La. R.S. 39:1672.2-1672.4.

**E.**    Contractor agrees not to discriminate in its employment practices, and will render services under this contract without regard to race, color, religion, sex, national origin, veteran status, political affiliation, disabilities or because of an individual sexual orientation. Contractor agrees that, if it is a public organization, it will comply with Standards for a Merit System of Personnel Administration, as set forth in 5 CFR Part 900 Subpart F.

**F.**    Any act of discrimination committed by Contractor, or failure to comply with these statutory obligations, when applicable, shall be grounds for termination of this contract. That subject to the requirements of the Merit Employment System, it will make every possible effort to recruit and hire persons age 60 and over.

**G.**    To comply with the minimum wage and maximum hours provision of the Federal Fair Labor Standard as they apply to hospital and education institution employees of State and Local government.

**H.**    To comply with all applicable Federal Laws and Regulations prohibiting discrimination on the basis of handicap or disability. Specifically agrees to comply with the provisions of Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 of the regulations there under.

**I.**    To establish safeguards to prohibit employees from using their positions for a purpose that is or gives the appearance of being motivated by a desire for private gain for themselves or others, particularly those with whom they have family, business or other ties.

**J.**    To comply with the flood insurance purchase requirements of Section 102(a) of Flood Disaster Protection Act of 1973, as amended and codified in 42 U.S.C. Section 4012(a) requires the purchase of flood insurance in communities where such insurance is available as a condition for the receipt of any Federal financial assistance for construction or acquisition purposes for use in any area that has been identified by the Secretary of the Department of Housing and Urban Development as an area having special flood hazards. The phrase "Federal Financial Assistance" includes any form of loan, grant, guaranty, insurance payment, rebate, subsidy, disaster assistance loan or grant, or any other form of direct or indirect Federal assistance.

**K.**    It is hereby agreed that the Legislative Auditor of the State of Louisiana and/or the Office of the Governor, Division of Administration auditors shall have the option of auditing all accounts of contractor which relates to this contract.

**L.**    To comply with all requirements imposed by the Older Americans Act, as amended, concerning special requirements of law, program requirements, and other administrative requirements.

**M.**    That it possesses legal authority to apply for the award; and that a resolution, motion, or similar action has been duly adopted or passed, as an official act of the contractor's governing body, authorizing the filing of the application, including all understandings and assurances contained herein, and directing and authorizing an official representative identified in the resolution to act in connection with the application and to provide such additional information as may be required (Resolution attached).

**N.**    To hold the State Agency harmless from and against all claims, demands and causes of action of any kind of character of any liability whatsoever which may be incurred by the activities of the Contractor or any Subcontractor, their employees, agents, or representative.

**O.**    That no funds provided herein shall be used by Contractor to urge any elector to vote for or against any candidate or proposition on an election ballot, nor shall such funds be used to lobby for or against any proposition or matter having the effect of law being considered by the legislature or any local governing authority. This provision shall not prevent the normal dissemination of factual

information to the public relative to a proposition on any election ballot or a proposition or matter having the effect of law being considered by the legislature or any local governing authority.

P.   No information about or obtained from an individual by a Contractor or Subcontractor shall be disclosed in a form that identifies the participant without his/her informed consent or that of his/her legal representative, unless the disclosure is required by court order, by other program monitors; or by authorized Federal, State or Local monitoring agencies. Informed consent may be in two forms: written consent signed by the Contractor or his/her legal representative or documented verbal consent. Lists of older persons compiled for information and referral purposes shall be used solely for the purpose of providing services, and only with the informed consent of each individual on the list.

Q.   That each Area Agency on Aging and Service Agency, supported wholly or partially by this agreement, will develop a plan and budget adequate funds for staff and volunteer development, education, and training.

R.   That NSIP commodities or cash will be used by Nutrition Service Providers and/or caterers to the maximum degree. No Contractor may fund or administer any nutrition program which does not use available NSIP assistance.

S.   In the event that a Nutrition Service Provider purchases meals or meal items from caterer with funds under this agreement, the following shall apply: if meals or meal items are not delivered to designated sites as agreed upon by subcontractor, the caterer must reimburse or give credit to the nutrition services provider for the full cost and any other expenses incurred by the nutrition services provider. Should a caterer deliver meals not meeting agreed-upon, written standards of quality or quantity between the caterer and Nutrition Service Provider, the Nutrition Service Provider shall return the substandard meal(s) to the caterer who shall replace such meals at no cost to the Nutrition Service Provider. In cases of non-delivery of all or part(s) of the meals to a site, the Contractor must assure that the caterer will arrange to provide the meal portion(s) necessary to complete the day's meal through an approved local food outlet nearest to the site. The caterer shall be responsible for all costs incurred by the Contractor. Provisions must be made for emergency meals in the event of a disaster in the area.

T.   That Contractor and/or Service Provider will develop written procedures for documenting their objectives, including assurances contained in the Area Plan objectives, including assurances contained in the Area Plan and contract, i.e. Personnel Manual, procurement, service delivery system for each service, client selection criteria and assessment process.

U.   Contractor and/or service provider assures the use of outreach efforts that will identify elderly populations of the greatest economic need, with emphasis on rural, minority, and low-income older individuals.

V.   The Area Agency on Aging will comply with the Americans with Disabilities Act of 1990, which prohibits discrimination on the basis of disability, and protects qualified applicants and employees with disabilities from discrimination in hiring, promotion, discharge, pay, job training, fringe benefits, and other aspects of employment. Qualified applicants and employees with disabilities will be granted reasonable accommodations.

W.   The Area Agency on Aging will specify grants, contracts, and agreements implementing the plan and identify each designated focal point as required under OAA Section 306 (a)(3).

X.   The Area Agency on Aging will comply with the requirements for a drug-free workplace, according to the requirements of the Drug-Free Workplace Act of 1988 (45 CFR Part 76, Appendix C).

Y.   This contract is not effective until approved by the director of the Office of State Procurement, Professional Contracts, in accordance with La. R.S. 39.1595.1. It is the responsibility of the Contractor to advise the agency in advance if contract funds or contract terms may be insufficient to complete contract objectives.

| FY2027 TITLE III CONTRACTS | ATTACHMENT B | GOALS AND OBJECTIVES |
|---|---|---|

### Goals and Objectives, Performance Measures, and Monitoring Plan for:
**Federal Older Americans Act Programs:  Title III-B, III-C, III-D, & III -E**

**Goal I:**  To provide for the delivery of supportive and nutritional services to at least 8% of older individuals, to enable them to live dignified, independent and productive lives in appropriate settings (using the most current census data).

**Objective I:**  To oversee the Area Agencies on Aging to ensure they comply with State Agency policies and procedures by June 30, 2027.

**Performance Indicators**

**Input:**  Baseline number of recipients receiving service from Home and Community-based program.

**Output:**  Number of units of services provided to eligible participants by services received.

**Outcome:**  Percentage of elderly population served.

**Efficiency:**  Total unduplicated count of persons served for registered services under the Older Americans Act.

**Monitoring Plan:**  Home and Community-Based Services Program will review reports semi-annually of all Area Agencies on Aging.

ATTACHMENT B: FY2027 TITLE III CONTRACTS

# STATE FISCAL YEAR 2027

## ATTACHMENT C

Projected Ceiling of Federal and State Funds Awarded: **$167,393**

| CONTRACTOR | **St. James Area Agency on Aging** |
|---|---|

| *USHHS/Administration for Community Living* | Federal | State | Total |
|---|---|---|---|
| **Area Agency Administration: (OACM) Older American Act Title III - Congregate Meals** (CFDA 93.045 Special Programs for the Aging Title III, Part C Nutrition Services) | $10,787 | $3,596 | $14,383 |
| **(OASS) Older American Act Title III - Supportive Services** (CFDA 93.044 Special Program for the Aging - Title III Part B Grants for Supportive Services and Senior Centers) | $24,868 | $4,324 | $29,192 |
| **(OACM) Older American Act Title III - Congregate Meals** (CFDA 93.045 Special Programs for the Aging Title III, Part C Nutrition Services) | $40,962 | $18,271 | $59,233 |
| **(OAHD) Older American Act Title III - Home-Delivered Meals** (CFDA 93.045 Special Programs for the Aging Title III, Part C Nutrition Services) | $21,591 | $26,660 | $48,251 |
| **(OAPH) Older American Act Title III - Preventive Health** (CFDA 93.043 Special Programs for the Aging Title III, Part D Disease Prevention and Health Promotion Services) | $3,041 | $0 | $3,041 |
| **(OAFC) Older American Act Title III - Family Caregivers** (CFDA 93.052 National Family Caregiver Support, Title III, Part E) | $9,970 | $3,323 | $13,293 |
| **TOTAL** | $111,219 | $56,174 | $167,393 |

The Title III Supportive Services State amount above includes State Homemaker in the amount of **$0** and State Transportation in the amount of **$0**.
The Title III Congregate Meals (not Area Agency Administration) State amount above includes State Meals in the amount of **$0**.
The Title III Home Delivered Meals State amount above includes State Meals in the amount of **$26,660** and State Home Delivered Meals in the amount of **$0**.

For multi-parish Area Agencies on Aging, the breakdown by parish is included as **Attachment D**.

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

**RESOLUTION 26-**
**ST. JAMES PARISH COUNCIL**

**A RESOLUTION AUTHORIZING ST. JAMES PARISH TO APPLY FOR A FEDERAL CONSOLIDATED RAIL INFRASTRUCTURE AND SAFETY IMPROVEMENT (CRISI) GRANT ON BEHALF OF LOUISIANA SUGAR REFINING, LLC, AND DESIGNATING AN AUTHORIZED REPRESENTATIVE**

**WHEREAS,** the U.S. Department of Transportation has made available federal grant funding under the FY 2026 Consolidated Rail Infrastructure and Safety Improvement (CRISI) for projects that improve railroad safety, efficiency, and reliability; mitigate congestion at both intercity passenger rail and freight rail chokepoints to support more efficient travel and goods movement; and enhance multi-modal connections

**WHEREAS,** Louisiana Sugar Refining, LLC (LSR) operates a sugar refinery in Gramercy, St. James Parish, refining more than one million tons of raw sugar annually on behalf of over 800 Louisiana sugarcane growers, and proposes to expand on-site rail infrastructure and improve freight handling at the facility under the LSR Multimodal Freight Improvement Project (the "Project"); and

**WHEREAS,** the CRISI program requires a public entity to serve as the legal applicant; Louisiana Sugar Refining, LLC is a private company and is not eligible to apply directly; and

**WHEREAS,** the Parish Council finds that the Project supports economic development and job retention in St. James Parish, that LSR has agreed to provide all required non-federal cost-share funding and to carry out the Project in compliance with applicable federal requirements, and that serving as public sponsor is in the public interest of this Parish;

**NOW, THEREFORE, BE IT RESOLVED** by the St. James Parish Council, duly assembled, that:

**Section 1.** The Parish of St. James is authorized to apply for a FY 2026 CRISI grant (NOFO FR-CRS-26-001) on behalf of Louisiana Sugar Refining, LLC for the LSR Multimodal Freight Improvement Project.

**Section 2.** Peter Dufresne is designated as the authorized representative of the Parish for this application and any resulting grant agreement and is authorized to sign and submit all required documents on behalf of the Parish.

**Section 3.** If a grant is awarded, the Parish commits to fulfilling its obligations as the federal grant recipient for the duration of the grant period, in accordance with all applicable federal requirements.

**Section 4.** Non-federal cost-share funding will be provided and documented by Louisiana Sugar Refining, LLC. This resolution does not commit Parish funds to the Project unless separately authorized by the Parish Council.

**Section 5.** This Resolution takes effect immediately upon adoption.

**THEREFORE, BE IT FURTHER RESOLVED** by St. James Parish Council that a copy of this resolution shall be included with grant application.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairwoman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____

Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\*   \*   \*   \*   \*

C E R T I F I C A T E

    I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the

    Signed at Vacherie, Louisiana, this 4th day of June 2026.


_____
Tammie Bodin
(S E A L)                                                          Secretary

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

**RESOLUTION 26-**
**ST. JAMES PARISH COUNCIL**

**A RESOLUTION REJECTING ALL BIDS RECEIVED FOR CULVERT MATERIALS DUE TO INSUFFICIENT BID AWARD LANGUAGE IN THE BID SPECIFICATIONS**

**BE IT RESOLVED** by the Parish Council of the Parish of St. James, State of Louisiana, acting as the governing authority of the Parish of St. James, that:

**WHEREAS,** the Parish of St. James publicly advertised for bids for the purchase of culvert materials for various parish projects and operations; and

**WHEREAS,** bids were received and opened in accordance with applicable Louisiana Public Bid Law requirements; and

**WHEREAS,** upon review of the bid specifications and submitted bids, it was determined that the bid documents did not clearly outline the method by which the Parish intended to evaluate and award the bids, specifically regarding the calculation, totaling, and averaging of unit prices and related bid items; and

**WHEREAS,** the Parish desires to ensure a fair, transparent, and legally defensible procurement process for all bidders and to avoid any ambiguity in the evaluation and award of public bids; and

**WHEREAS,** the Parish Council finds it to be in the best interest of the Parish to reject all bids received and to re-advertise the project with revised specifications clearly defining the bid evaluation and award methodology.

**NOW, THEREFORE, BE IT RESOLVED** that the Parish Council of the Parish of St. James hereby rejects all bids received for the culvert materials bid package.

**BE IT FURTHER RESOLVED** that the Administration is authorized to revise the bid specifications to clearly define the method of bid tabulation, evaluation, and award prior to re-advertisement.

BE IT FURTHER RESOLVED that the Parish President and/or his designee are hereby authorized to execute any and all documents necessary to carry out the intent of this Resolution.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairwoman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\*   \*   \*   \*   \*

C E R T I F I C A T E

      I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

      Signed at Vacherie, Louisiana, this 4th day of June 2026.

                                   _____

(S E A L)                     Tammie Bodin
                              Secretary

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

**RESOLUTION 26-**
**ST. JAMES PARISH COUNCIL**

**A RESOLUTION AUTHORIZING THE PARISH PRESIDENT'S OFFICE TO READVERTISE AND ACCEPT BIDS FOR DRAINAGE CULVERTS**

WHEREAS, the budget adopted by the Parish Council included funds for drainage culverts.

NOW, THEREFORE, BE IT RESOLVED, by the St. James Parish Council, that the Parish President's Office is hereby authorized and empowered to advertise and accept, according to law, competitive bids for drainage culverts.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And, the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

*   *   *   *   *

## C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana this 4th day of June 2026.

_____
Tammie Bodin
(S E A L)                                                       Secretary

The following resolution was offered and moved for adoption by Councilman _____ and seconded by Councilman _____:

### RESOLUTION 26-
### ST. JAMES PARISH COUNCIL

**RESOLUTION AUTHORIZING THE ST. JAMES PARISH PRESIDENT TO SIGN AND EXECUTE A CONTRACT WITH CRESCENT ENGINEERING AND MAPPING LLC FOR PROFESSIONAL SERVICES**

**WHEREAS**, St. James Parish desires to enter into a professional services contract with Crescent Engineering and Mapping LLC for professional engineering and surveying services related to the GO Bond Group A Road Rehabilitation Program; and,

---

# ST. JAMES PARISH GOVERNMENT

# ADVERTISEMENT FOR BIDS

NOTICE IS HEREBY GIVEN that sealed bid proposals will be received until **2:00 p.m. on Thursday, June 18, 2026** by St. James Parish Government, 5800 LA Hwy 44, Convent, LA 70723, Operations Department (3rd Floor), at which time bids will be publicly opened and read aloud for the following:

# CULVERTS

Bid proposal forms may be obtained by emailing Lindsay Szubinski at lindsay.szubinski@stjamesla.com or by submitting an electronic bid through Central Bidding at www.centralauctionhouse.com.

All bids shall be submitted in a sealed envelope bearing the Bidder's name and address and must be clearly marked **"Culverts Bid"**.

Bids may be mailed to:
St. James Parish Government
P.O. Box 106
Convent, LA 70723

Bids may also be delivered in person prior to the deadline or submitted electronically via Central Bidding.

Any bid received after the specified date and time will not be accepted and will be returned unopened. St. James Parish Government reserves the right to reject any and all bids.

Ryan Larousse

Advertisement Dates:

June 4, 2026
June 11, 2026

***End of Advertisement***

**MASTER CONTRACT**
for
**PROFESSIONAL SERVICES**

**BE IT KNOWN** that on this _____ day of _____, 2026,

    **St. James Parish Government**, by and through the Office of the Parish President (hereinafter sometimes referred to as the "Parish"), as approved by Resolution adopted by the Parish Council of St. James;

And

    **Crescent Engineering and Mapping, LLC.** qualified to do and doing business in this State and Parish (hereinafter referred to as "Provider") and authorized to enter into this contract;

do hereby enter into contract under the following terms and conditions:

NOTE: This Contract or Agreement governs the relationship and rights between the Parties. While there may be other Documents (for example, General Conditions) which might exist between the Parties, those documents **do not** control in the event or to the extent that there is any conflict or contradiction with the terms of this Agreement or Contract. In the event that there is any conflict between the terms of this Agreement/Contract and any other document between the parties, THE PARTIES AGREE THAT THIS AGREEMENT/CONTRACT SHALL CONTROL AND GOVERN.

1.    **SCOPE OF SERVICES**

    A.  The Scope of services to be provided by the Provider may be entered as a scope document, Task Order, or written proposal signed by both parties to this contract. The Scope shall be attached hereto as Exhibit A and made a part hereof as if written herein in full. All work shall be under the direction of Ryan Larousse, St. James Parish Operations Department, hereinafter called the PROJECT MANAGER, and all plans, specifications, and the like shall be submitted to him, and all approvals and administration of this contract shall be through him.

    B.  The compensation to the Provider for these services shall not exceed **$286,500.00**

2.    **TERM OF CONTRACT**

    A.  Work shall begin by the Provider within fifteen (15) days of the signature of the document unless the Project Manager and the Provider agree in writing to another specified date.

1

B. Unless otherwise provided or renewed by the Parish Council, this Agreement shall have term of (2) year starting 6/4/26

B. This Professional Services Contract shall terminate as follows:

1. As per the terms and conditions of Paragraph 9, and/or
2. As per operation of law, and/or
3. As per agreement between the parties, and/or
4. As per the Parish Charter.

## 3.    DOCUMENTS

A. The Provider shall also furnish sufficient sets of plans, specifications & contract documents.

B. All data collected by the Provider and all documents, notes, drawings, tracings, and files shall remain the property of the Owner except as otherwise provided herein. The Provider shall furnish to the PROJECT MANAGER originals of any project documents used in completion of the project or in any way related to this project to the Project Manager.

C. The Owner shall furnish without charge all standard plans and specifications and any other information which the Owner now has in its files which may be of use to the Provider. Provider has the duty to and must confirm and verify all information contained therein.

D. **Construction Documents.** The Provider shall use the most current version of the standard forms of documents adopted and specified by the Owner in the performance of the Contract, all as of the date of the signing of this contract. Notwithstanding anything to the contrary in any other provision of this contract, none of the contract documents provided by the Owner are or will become the property of the Provider but shall remain the property of the Owner to the extent the Owner has a property interest therein.

E. Notwithstanding any Section hereinafter, there will be retention of all related records:

(1)    All records, reports, documents and other material delivered or transmitted to Provider by Parish shall remain the property of Parish, and shall be returned by Provider to Parish, at Provider's expense, at termination or expiration of this contract. All records, reports, documents, exhibits or other material related to this contract and/or obtained or prepared by Provider in connection with the performance of the services contracted for herein shall become the property of Parish, and shall be returned by Provider to Parish, at Provider's expense, at termination or expiration of this contract.

2

(2)     The Parish and Provider acknowledge and agree that the Parish has the right to review retain all records, reports, worksheets or any other material of either party related to this contract. Provider further agrees that Provider will furnish to the Parish copies of any and all records, reports, worksheets, bills, statements or any other material of Provider or Parish related to this contract.

(3)     Provider shall maintain all books, documents, papers, accounting records and other evidence pertaining to costs incurred and shall make such materials available at its offices at any reasonable time for inspection and copying by the Parish.

(4)     Provider shall retain all of its records and supporting documentation applicable to this contract with the Parish for a period of five (5) years after termination of the contract in accordance with state law, except as follows:

> (a) Records that are subject to Federal Funds and/or audit findings shall be retained for five (5) years after such findings have been resolved and close out has been issued.

> (b) All such records and supporting documentation shall be made readily available for inspection, copying or audit by representatives of the Parish. In the event the Provider goes out of existence, it shall turn over to the Parish all of its records relating to this contract to be retained by the Parish for the required period of time.

F.  In the event there is re-use of any documents created by Provider, Provider invokes the privileges afforded it as per La. Revised Statute R.S. 38:2317.

G.  The Parish agrees not to use Provider's work product on any other project without the express written notice to the Provider.

H.  All of Provider's pre-existing or proprietary computer programs, software, information, standard details or material developed by Provider outside of this agreement shall remain the exclusive property of the Provider.

I.  All data used in preparing and as a result of analysis performed for the purpose of this contract shall be submitted to the Parish as a final deliverable upon completion. The format shall be on media of USB flash drive or DVD. All drawing data shall be provided in formats applicable to the profession. GIS data shall be provided in Shapefiles. Engineering and Architecture plans shall be provided in AutoCAD. Collected data shall be in excel. The Parish reserves the right to request the data in a separate format upon the need arise due to software compatibilities. Final payment of

3

the contract will be withheld until the electronic files are provided.

## 4.    PAYMENT OF ALL FEES AND ALL EXPENSES

This Section shall apply to all payments that may be due Provider by Owner. The Scope shall set out the payment schedule.

A.    IF ON AN HOURLY BASIS:

1.    Notwithstanding any section herein or the Scope, all invoices submitted covering services rendered on an hourly basis shall include time sheets showing actual hours worked by each individual delineated incrementally to the tenth of the hour, their classifications and a detailed description of the work performed. Where there is payment based upon an hourly rate for all services outlined in each task of work, the Parish shall pay the Provider in accordance with the rate schedule established in this contract. All other services shall disclose and be invoiced monthly according to percentage of work completed. Provider agrees to submit, at the end of each calendar month, a written & detailed itemization of all work performed listing time by date the work performed by hours with specific reference to the nature of the work performed (e.g., drafting of plans, review of files, etc.). Payments to the Provider for services shall be made monthly upon presentation of the invoice for work performed during the preceding month.

2.    Unless otherwise authorized in writing, fees will not be paid for research, photocopies at more than $.15 (fifteen cents) per copy on copies less than 11 x 17 and copies larger than 11 x 17 shall be charged on a reasonable basis. Additionally, if mileage is to be paid to the Provider, the Parish will only pay the state authorized rate.

3.    There shall be no fees charged by, nor paid to, Provider for consultation with the Parish, except with the expressed written authorization; there shall be no payment to Provider for secretarial time, attendance at public meetings and travel time for consultation with the Parish without the expressed written pre-approval of the Parish.

4.    Invoices for services shall be submitted by Provider to the Operations DEPARTMENT for review and approval:
St. James Parish Government
P.O. Box 106
Convent, LA 70723

a.    All invoices must describe the Parish Project.
b.    All billings by Provider for services rendered shall be submitted in

4

writing.

c.   Provider shall be reimbursed for reasonable out-of-pocket expenses. Any out-of-pocket expense in excess of $250.00 shall be pre-approved by PROJECT MANAGER. Failure by Provider to obtain pre-approval from PROJECT MANAGER of expenditures in excess of $250.00 shall constitute grounds for denial of payment.

d.   Out of state or parish travel time, only and specifically at the direction and for the convenience of the PROJECT MANAGER, is billable as services if done during normal working hours and if it does not cause service charges for the day to exceed eight hours. Travel time shall likewise be pre-approved by the PROJECT MANAGER.

e.   Provider agrees to comply with the instructions when submitting invoices.

f.   Provider hereby agrees that the responsibility for payment of taxes from the funds thus received under this agreement shall be said Provider's obligation and identified under Federal Tax Identification Number as listed in the Scope.

5.   The Parish agrees to make payment to Provider for services upon receipt and approval of each invoice. The Parish will pay Provider the amount due and payable within thirty (30) days or unless a conflict results in a delay of payment. Upon receipt of each invoice, the Parish shall have the right and opportunity to review, confirm or otherwise determine the accuracy of each invoice and performance of service. In the event that the Parish disputes or otherwise may question the accuracy of each invoice or quality of all work performed, the Parish may withhold payment of any invoice until a successful and satisfactory resolution can be had between the parties. Parish agrees to not unreasonably withhold payments of any invoice.

6.   Other than the fee schedule herein, there will be absolutely no additional fees due Provider to cover its overhead costs, general expenses, capital expenses, expenses for principal/branch/ field offices, employees' salaries, direct and indirect costs, additional costs or profit of any nature whatsoever in excess of the previously agreed hourly rate.

B.   IF ON A LUMP SUM BASIS

Where there is payment based upon a lump sum fee for all services outlined herein and any other services required for this project, except as set out herein, the Parish shall pay the Provider a basic lump sum fee as negotiated and agreed upon by both parties in the Scope.

5.   **NON-ASSIGNABILITY**

5

Provider shall not assign nor transfer any interest in this contract (whether by assignment or novation) without prior written consent of the Parish, provided however, that claims for money due or to become due to the Provider from the Parish under this contract may be assigned to a bank, trust company, or other financial institution without such prior written consent. Notice of any such assignment or transfer shall be furnished promptly to the Parish.

6.    **BUDGET LIMITATION**

A. The Parish shall determine the budget for this project, and the Parish shall advise the Provider of the budget limitation in writing. The Provider shall use its best judgment and expertise to design this project within the proposed budget. Any subsequent budget revisions shall be confirmed in writing.

B. It is the responsibility of the Provider to advise the Parish in advance if contract funds or contract terms may be insufficient to complete contract objectives. Provider understands and specifically warrants that it assumes the sole responsibility to advise the Parish in advance if contract funds or contract terms may be insufficient to complete contract objectives. In providing opinions of probable construction cost, the Parish understands that the Provider has no control over costs and price of labor, equipment or materials or over the general Contractor's method of pricing, and that the opinion of probable costs provided herein are made on the basis of the Provider's qualifications and experience.

C. The continuation of this contract is contingent upon the appropriation of funds by the Parish to fulfill the requirements of the contract. If the Parish fails to appropriate sufficient monies to provide for the continuation of this or any other related contract, or if such appropriation is reduced by the veto of Parish President by any means provided in the appropriations Ordinance to prevent the total appropriation for the year from exceeding revenues for that year, or for any other lawful purpose, and the effect of such reduction is to provide insufficient monies for the continuation of the contract, the contract shall terminate on the date of the beginning of the first fiscal year for which funds are not appropriated.

7.    **INSURANCE**

A.    The Provider shall secure and maintain at its expense such insurance that will protect it and the Parish from claims under the Workmen's Compensation Acts and from claims for bodily injury, death or property damage which may arise from the performance of services under this agreement. All certificates of insurance shall be furnished to the Parish and shall provide that insurance shall not be canceled

without thirty (30) days prior notice of cancellation given to the Parish of St. James, in writing, on all of the required coverage provided to St. James Parish. Where possible, all policies and notices should name the Provider and Parish. The Parish may examine the policies at any time.

B.   All policies and certificates of insurance shall contain the following clauses:

1.   The Provider's insurers will have no right of recovery or subrogation against the Parish of St. James, it being the intention of the parties that the insurance policy so affected shall protect both parties and be the primary coverage for any and all losses covered by the below described insurance.

2.   The Parish of St. James shall be named as additional named insured with respect to automobile and general liability.

3.   The insurance companies issuing the policy or policies shall have no recourse against the Parish of St. James for payment of any premiums or for assessments under any form of policy.

4.   Any and all deductible in the described insurance policies shall be assumed by and be at the sole risk of the Provider.

C.   Prior to the execution of this agreement, the Provider shall provide at its own expense, proof of the following insurance coverage required by the contract to the Parish of St. James by insurance companies authorized to do business in the State of Louisiana. Insurance is to be placed with insurers with an A.M. Best rating of no less than B+.

1.   Workers compensation Insurance: As required by Louisiana State Statute exception; employer's liability shall be at least $500,000 per occurrence.

2.   Commercial General Liability Insurance with a Combined Single Limit of at least One Million Dollars ($1,000,000.00) per Occurrence for bodily injury and property damage. This insurance shall include coverage for bodily injury and property damage, and indicate on the certificate of insurance the following:

a)   Premises - operations;
b)   Broad form contractual liability;
c)   Products and completed operations;
d)   Personal Injury;
e)   Broad form property damage;
f)   Explosion, collapse and underground coverage. Not needed for design

7

3.    Business Automobile Liability Insurance with a Combined Single Limit of $500,000 per Occurrence for bodily injury and property damage, unless otherwise indicated. This insurance shall include for bodily injury and property damage the following coverage:

a)    Any automobiles;
b)    Owned automobiles;
c)    Hired automobiles;
d)    Non-owned automobiles;
e)    Uninsured motorist.

4.    An umbrella policy or excess policy may be used to meet minimum requirements.

5.    The Provider shall also secure and maintain at its expense professional liability insurance in the sum of at least One Million Dollars ($1,000,000.00) per claim.

6.    All policies of insurance shall meet the requirements of the Parish of St. James prior to the commencing of any work. The Parish of St. James has the right, but not the duty, to approve all insurance policies prior to commencing of any work. If at any time, it becomes known that any of the said policies shall be or becomes unsatisfactory to the Parish of St. James as to form or substance; or if a company issuing any such policy shall be or become unsatisfactory to the Parish of St. James, the Provider shall promptly obtain a new policy, timely submit same to the Parish of St. James for approval and submit a certificate thereof as provided above. The Parish agrees to not unreasonably withhold approval of any insurance carrier selected by Provider. In the event that Parish cannot agree or otherwise authorize said carrier, Provider shall have the option of selecting and submitting new insurance carrier within 30 days of said notice by the Parish. In the event that the second submission is insufficient or is not approved, then the Parish shall have the unilateral opportunity to thereafter select a responsive and responsible insurance carrier all at the cost of Provider and thereafter deduct from Provider's fee the cost of such insurance.

7.    Upon failure of Provider to furnish, deliver and/or maintain such insurance as above provided, this contract, at the election of the Parish of St. James, may be forthwith declared suspended, discontinued or terminated. Failure of the Provider to maintain insurance shall not relieve the Provider from any liability under the contract, nor shall the insurance requirements be construed to conflict with the obligation of the Provider concerning indemnification.

8

8.      WAIVER: Except as otherwise provided by law, the coverage requirements of this section may be waived in whole or in part on agreements under $50,000.00, and the Parish is authorized to use its discretion in regard to insurance requirements for such contracts. Except as otherwise provided by law, the Parish President or the Parish Chief Administrative Officer is authorized to omit in whole or in part the insurance requirements of this section in connection with such contracts.

D.     Provider shall maintain a current copy of all annual insurance policies and provide same to the Parish of St. James on an annual basis or as may be reasonably requested.

## 8.     OTHER TERMS AND CONDITIONS

A.     **Licenses and Commissions.** The Provider shall, at all times during the term of this contract, maintain valid Louisiana licenses and commissions as are customarily required of such a Provider, including but not limited to those that may be required by this State and/or Parish. The Provider agrees to renew and or keep current all licenses and commissions herein. The Provider agrees to maintain a copy of all such licenses or commissions on file at all time and make same available for review as may be reasonably requested by the Parish of St. James.

B.     The professional and technical adequacy and accuracy of designs, drawings, specifications, documents, and other work products furnished under this agreement will be conducted in a manner consistent with that level of care and skill ordinarily exercised by members of the profession in the Baton Rouge Metropolitan area including the parishes surrounding St. James Parish. In the event the Parish must have work done by change order or addition resulting from an error or omission by the Provider, Provider shall provide, at no cost to Parish, all professional services attributable to the change order. This is in addition to Parish's right to recover from Provider any damages for its errors and omissions.

C.     The Provider shall defend, indemnify, and hold the Parish harmless from against any and all actions, claims, demands, complaints, or lawsuits of any kind (whether in tort or in contract) for any sums of money, costs, liabilities, judgments, fines, or penalties asserted or alleged by any person, party, entity, firm, for any damage, injury, claim, or cause of action (of any kind) including, but not limited to, pecuniary and non-pecuniary damages/losses to person or property which are alleged to have been caused by or which were caused by or (wholly or partially), which grow out of, which arise from, or which result from any negligent acts, errors, or omissions by Provider, its agents, servants, or employees while engaged in connection with services required to be performed by the Provider under this agreement. This paragraph is to be broadly interpreted to include any and all causes

9

of action which result wholly or partially from the negligent conduct of the Provider.

D.     This agreement shall be binding upon the successors and assigns for the parties hereto.

E.     This agreement represents the entire Agreement between Parish and Provider.

F.     If there is any dispute concerning this agreement, the laws of Louisiana shall apply. The exclusive venue and jurisdiction for all lawsuits, claims, disputes, and other matters in questions between the parties to this agreement or any breach thereof shall be in the 23rd Judicial District Court for the Parish of St. James, State of Louisiana. It is also understood and agreed that the laws and ordinances of St. James shall apply.

G.     In the event that the Provider modifies the Parish's contract documents without the expressed prior written consent of the Parish, the Provider shall indemnify and hold harmless the Parish from any claims, lawsuits, or damages that arise out of or are attributable to the modification. This indemnification and hold harmless obligation shall include not only the damages suffered by the Parish but also all reasonable expenses including, but not limited to, any and all litigation or other dispute resolution costs and any and all professional fees incurred by the Parish as a result of the Provider's deviation from the Parish's contract documents.

H.     Provider agrees to a covenant against contingent fees. Provider warrants that it has not employed or retained any company or person, other than a bona fide employee working solely for the Provider, to solicit or secure this Contract, and that it has not paid or agreed to pay any company or person, other than a bona fide employee working solely for the Provider, any fee, commission, percentage, brokerage fee, gifts, or any other consideration, contingent upon or resulting from the award or making of this Contract. For breach or violation of this warranty, the Parish shall have the right to annul this contract without liability.

I.     This contract may be amended only by mutual written consent of the respective parties.

J.     Third Party Beneficiary: it is specifically agreed by and between the parties to this contract that no person or party is intended, deemed, considered, or construed to be a third party beneficiary of this contract.

K.     Neither party will be liable for failure to fulfill its obligations when due to causes beyond its reasonable control.

L.     Any failure or delay by either party in exercising any right or remedy will not

10

constitute a waiver.

M.    Severability: if any provision or item in this contract is held invalid or unenforceable for any reason, then such invalidity or unenforceability shall not affect other provisions or items of this contract. In such event, the remaining portions shall be given full force and effect without the invalid provision or item, and to this end the provisions or items of this contract are hereby declared severable.

N.    It is specifically understood that the terms "agreement" and "contract" may be used interchangeably. It is specifically understood that the terms "Owner", "PROJECT MANAGER" and "Parish" and "the Parish of St. James" may be used interchangeably.

O.    Conflict of Interest: it is understood and agreed between the parties hereto that Provider is not retained exclusively by the Parish but that the Parish may retain other Providers during the term of this Contract. In the event of reasonably known conflicts of interest or potential conflicts of interest between the Parish and other parties who have engaged Provider, the Provider agrees to make full disclosure of the same, and that they will take no action on behalf of any other client directly adverse to the Parish, nor will Provider take any action on behalf of the Parish directly adverse to any other client.

P.    Provider warrants that Provider is qualified to perform the intended purposes of this agreement. In the event that Provider becomes not fit nor qualified for any reason whatsoever, then Provider agrees to withdraw from work herein at no cost to the Parish. In the event that the Parish determines that Provider is not suited for Parish purposes or otherwise fails to represent Parish policies to the satisfaction of the Parish, then Provider agrees to withdraw from this agreement.

Q.    Provider specifically agrees and understands that Provider shall not maintain or otherwise claim that it possesses any security interest in any aspect of the work that forms the basis of this agreement.

R.    Provider agrees to ensure that its personnel are, at all times, educated and trained, and further, that Provider and its personnel will perform all work and services in a workmanlike and professional manner.

S.    Provider recognizes and understands that time is of the essence. Provider agrees to perform and provide services in accordance with this agreement and all incorporated attachments.

T.    Provider shall be responsible for any and all losses and damages suffered or incurred by the Parish, including but not limited to all costs, attorney's fees, out of pocket expenses, any & all Parish employee time, and any other expenditure by the

11

Parish to defend, remedy, repair, replace, correct, or cure any condition or liability created or arising out of the negligent actions or negligent omissions to act of the Provider, its agents, officer, servants, or employees. This includes the payment of any cost or fees of any type or kind incurred by the Parish in defending any lawsuit, complaint, claim, claim filed or arising out of the negligent action or negligent omission to act of the Provider.

U.    Provider agrees that it will be responsible for all of its own actual and reasonably related expenses for its on-site & off-site office work. Provider further agrees that Parish will not be responsible for or in any way liable for Provider's payroll costs, indirect or direct expenses, overhead, or any other amounts associated with Provider's business other than the specific fees & authorized costs generated under the terms of this agreement.

## 9.    TERMINATION AND SUSPENSION

A.    Termination for Cause

The Parish may terminate this Contract for cause based upon the failure of the Provider to comply with the terms and/or conditions of the Contract, provided that the Parish shall give the Provider written notice specifying the failure. If within thirty (30) days after receipt of such notice, the Provider shall not have corrected such failure and thereafter proceeded diligently to complete such correction, then the Parish may, at its sole and exclusive option, place the Provider in default and this contract shall terminate on the date specified in such notice. Work to be performed during this 30-day period shall not proceed without the actual knowledge of the Parish and specifically supervised by the Parish. Any work performed by Provider during this period without the actual knowledge of the Parish and not under the supervision of the Parish shall not be compensated nor honored; Provider specifically waives and forfeits any and all claims to payment, compensation, quantum merit, and/or reimbursement from the Parish of any work performed during this period in violation of this paragraph. Provider agrees and understands specifically that satisfactory performance shall be unilaterally and exclusively determined by the Parish.

B.    Termination for Convenience

Notwithstanding any other section herein, the Parish may terminate this contract at any time for any reason whatsoever by giving thirty (30) days written notice to the Provider. The Provider shall be entitled to payment pursuant to Paragraph E below.

C.    Right to Cancel

(1)    The continuation of this contract is contingent upon the appropriation of

12

funds to fulfill the requirements of the contract by the Parish. If the Parish fails to appropriate sufficient monies to provide for the continuation of this or any other contract, or if such appropriation is reduced by the veto of Parish President by any means provided in the appropriations Ordinance to prevent the total appropriation for the year from exceeding revenues for that year, or for any other lawful purpose, and the effect of such reduction is to provide insufficient monies for the continuation of the contract, the contract shall terminate on the date of the beginning of the first fiscal year for which funds are not appropriated. It is understood and agreed that the paragraph below may preempt this paragraph, all at the exclusive and unilateral option of the Parish.

D.   Additional Causes for Termination or suspension:

1.   By mutual agreement and consent of the parties hereto.
2.   By the Parish as a consequence of the Provider's failure to comply with the terms, progress or quality of work in a satisfactory manner, proper allowances being made for circumstances beyond the control of the Provider.
3.   By either party upon failure of the opposing party to fulfill its obligations as set forth in this contract, provided that written notice of said non-fulfillment is given to the opposing party and said obligation is not properly fulfilled within fifteen (15) days of said notice.
4.   In the event of the abandonment of the project by the Parish.
5.   A Stop Work Order can be immediately issued by the Parish if they deem it necessary to protect the health, safety, and welfare of the community.

E.   Upon termination, the Provider shall be paid for actual work performed prior to the notice of termination on a pro-rata share of the basic fee based on the phase or percentage of work actually completed.

F.   Upon termination, the Provider shall deliver to the Parish all original documents, notes, drawings, tracings, computer files, and files except the Provider's personal and administrative files.

G.   Should the Parish desire to suspend the work, but not definitely terminate the contract, this may be done by thirty (30) day notice given by the Parish to that effect, and the work may be reinstated and resumed in full force & effect upon receipt from the Parish of thirty (30) day notice in writing to that effect. Provider shall receive no additional compensation during the suspension period. The parties agree to revisit the terms of this contract during the suspension period which shall not exceed six (6) months, unless mutually agreed upon.

H.   There is a right to cancel by the Parish by giving thirty (30) day notice to Provider

13

and paying undisputed fees due for services on that portion of the work that has been satisfactorily, timely and/or professionally completed, all in the exclusive discretion of the Parish at any time herein.

I.     Termination or cancellation of this agreement will not affect any rights or duties arising under any term or condition herein.

J.     As to the filing of bankruptcy, voluntarily or involuntarily, by Provider, Provider agrees that if any execution or legal process is levied upon its interest in this contract, or if any liens or privileges are filed against its interest, or if a petition in bankruptcy is filed against it, or if it is adjudicated bankrupt in involuntary proceedings, or if it should breach this contract in any material respect, the Parish shall have the right, at its unilateral option, to immediately cancel and terminate this contract. In the event that Provider is placed in any chapter of bankruptcy, voluntarily or involuntarily, or otherwise triggers any provision of the preceding sentence herein, it is understood and agreed that all materials, goods and/or services provided shall be and remain the property of the Parish. All rights of Provider as to goods, wares, products, services, materials and the like supplied to Parish shall be deemed forfeited.

## 10.  AUDITORS

Notwithstanding other Sections herein, Provider shall maintain all records for a period of three years after the date of final payment under this contract. It is hereby agreed that the Parish Department of Finance or its designated auditor shall have the sole, unilateral and exclusive option of auditing all accounts of Provider which relate to this contract. Such audit may be commenced at any reasonable time. Provider agrees not to delay, retard, interrupt or unduly interfere with commencement and completion of such an audit. If in the exclusive and unilateral opinion of the Parish that Provider delays, retards, interferes with or otherwise interrupts such an audit, the Parish may seek such relief as per law. In such an event, Provider agrees to be liable for all reasonable attorney fees, costs of auditors, court costs, and any other reasonably related expenses with such litigation.

## 11.  DISCRIMINATION CLAUSE

Provider agrees to comply with the Americans with Disabilities Act of 1990 and any current amendments thereto. All individuals shall have equal access to employment opportunities available to a similarly suited individual. Provider agrees not to discriminate in its employment practices, and will render services under this contract without regard to race, color, religion, sex, national origin, veteran status, political affiliation, or disabilities. Any act of discrimination committed by Provider, or failure to comply with these statutory obligations when applicable shall be grounds for termination of this contract. Provider agrees to abide by the requirements of all local, state, and/or federal law, including but not limited to the following: Title VI and VII of the Civil Rights Act of 1964, as amended by

14

the Equal Opportunity Act of 1972, Federal Executive Order 11246, the Federal Rehabilitation Act of 1973, as amended, the Vietnam Era Veteran's Readjustment Assistance Act of 1974, Title IX of the Education Amendments of 1972, the Age Act of 1975, and the requirements of the Americans with Disabilities Act of 1990. Provider warrants and guarantees that it is an Equal Employment Opportunity employer. In all hiring or employment made possible by or resulting from this Contract, there shall not be any discrimination against any person because of race, color, religion, sex, national origin, disability, age or veterans status; and where applicable, affirmative action will be taken to ensure that Provider's employees are treated equally during employment without regard to their race, color, religion, sex, national origin, disability, age, political affiliation, disabilities or veteran status. This requirement shall apply to but not be limited to the following: employment upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. All solicitations or advertisements for employees shall state that all applicants will receive consideration for employment without regard to race, color, religion, sex, national origin, disability, age or veteran status.

## 12.    INDEPENDENT CONTRACTOR

A.    While in the performance of services or carrying out obligations herein, the Provider shall be acting in the capacity of an independent contractor and not as an employee of the Parish. The Parish shall not be obliged to any person, firm or corporation for any obligations of the Provider arising from the performance of its services under this agreement. The Provider shall not be authorized to represent the Parish with respect to services being performed, dealings with other agencies, and administration of specifically related contracts, unless done so in writing by the Parish.

B.    Provider hereby agrees to be responsible for payment of taxes from the funds thus received under this Contract. Provider agrees to be responsible for and to pay all applicable federal income taxes, federal social security tax (or self-employment taxes in lieu thereof) and any other applicable federal or state unemployment taxes. Provider agrees to indemnify and hold the Parish harmless for any and all federal and/or state income tax liability, including taxes, interest and penalties, resulting from the Parish's treatment of Provider as independent contractor.

C.    Provider further agrees to reimburse Parish for any and all costs it incurs, including, but not limited to, accounting fees and legal fees, in defending itself against any such liability.

D.    Provider agrees and acknowledges that it (and its employees) is an **independent contractor** as defined in R.S. 23: 1021 (or any other provision of law) and as such nothing herein shall make Provider an employee of the Parish nor create a

15

partnership between Provider and the Parish.

E.    Provider acknowledges exclusion of Workmen's Compensation Coverage. Provider acknowledges of the exclusion of Unemployment Compensation coverage.

F.    Provider agrees to a waiver of any and all sick and annual benefits from the Parish. It is expressly agreed and understood between the parties entering into this personal service contract, that Provider, acting as an independent agent, shall not receive any sick and annual leave from the Parish.

## 13.    NOTICES

All notices shall be by certified mail, return receipt requested, and sent to the following individuals at the following addresses. Changes of person and addresses are to be exchanged in a like manner:

Parish of St. James:    Office of the Parish President
P.O. Box 106
Convent, LA 70723

Provider:    Crescent Engineering & Mapping, LLC
P.O. Box370
Vacherie, La 70090

## 14.    AUTHORITY TO ENTER CONTRACT

The undersigned representative of Provider warrants and personally guarantees that he/she has the requisite and necessary authority to enter and sign this contract on behalf of the corporate entity. The undersigned parties warrant and represent that they each have the respective authority and permission to enter this agreement. The Parish shall require, as an additional provision, that Provider provide a certified copy of a corporate resolution authorizing the undersigned to enter and sign this agreement in the event that Provider is a member of a corporation, partnership, LLC, LLP, and any other juridical entity.

This agreement is executed in two (2) originals. IN TESTIMONY WHEREOF, they have executed this agreement, the day and year first above written.

WITNESSES

_____

_____                    _____
Title: Parish President
**St. James Parish Government**
Date: _____

WITNESSES

_____                    _____

16

_____

Title: _____

**Name:**

Date: _____

17

**St. James Parish**

**GO Bond Group A**

**Road Rehabilitation Program**

**Scope of Services Outline**

The following scope of work and fees are based upon an approximate $2.99 Million construction cost and approximately 16 main roadways within the scope of work as per the attached roadway listing, along with associated patching for the pavement preservation program and recent utility work. The project includes the reconstruction of Health Unit St. and Jointed PCC Pavement patching on Sugar Estates St. Reconstruction of Health Unit St. is anticipated to be curb/gutter, asphalt pavement with soil cement based. Utility coordination for relocation is also anticipated for Health Unit St. No utility design is included in this scope of work.

**Roadway Reconnaissance, Data Collection & Survey**

Consultant engineering and survey staff will review each roadway in its entirety to determine locations of visually apparent base failures, deep rutting, and other general failures for patching purposes. These areas will be marked and surveyed or measured for quantity and plan display purposes. Survey will establish two (2) baseline points per street and include widths and patch locations/sizes. Survey will be based upon the existing St. James Parish control network.

**Geotechnical Investigation and Design**

Geotechnical consultant will make site visits, extract/drill roadway pavement and base cores and provide pavement overlay and reconstruction information, if necessary. A geotechnical findings report will be provided by the geotechnical engineering subconsultant. It is noted that generally, the roadway overlay will consist of 2" Superpave overlay on existing binder and/or base, unless reconstruction is performed. The presence of existing soil cement treated bases may result in residual or reflective cracking through the overlay, either immediately or over time. St. James Parish expresses, by authorization of this contract, that the risk of residual or reflective cracking is known to St. James Parish, and that this risk is acceptable to St. James Parish by choosing to overlay roadways using existing base/subbase for this program.

**Basic Design**

Basic design services will include all engineering services necessary to provide plans and specifications for the project including preparation of bidding documents, bidding assistance and general Construction Contract Administration. Plans will be provided on 1:50 or similar scale plan sheets with alignments, stationing, and quantities. Health Unit St. will be on 1:20 scale sheets with plan/profile sheets appropriate for reconstruction activities.

**Construction Administration Phase**

Upon completion of the Bidding and Negotiation Phase, and upon written authorization by the OWNER, the CONSULTANT shall:

1. Schedule, conduct and record minutes of the Pre-Construction Conference with the OWNER and CONTRACTOR, including SUBCONTRACTORS, if applicable.

2. Assist the OWNER in the selection of an independent testing laboratory, if applicable.

3. Maintain and safeguard during the Construction Phase at least one original printed record version of the Construction Contract Documents, including Drawings and Specifications signed and sealed by Engineer of Record and other design professionals in accordance with applicable Laws and Regulations.

4. Receive, review, and determine the acceptability of any and all schedules that CONTRACTOR is required to submit to OWNER, including the Progress Schedule, Schedule of Submittals.

5. Review and recommend to the OWNER for approval or otherwise, the CONTRACTOR's Applications for Payment and Progress Schedule.

6. Make visits to the Site at intervals deemed appropriate by the ENGINEER at various stages of construction to observe as an experienced and qualified design professional, the progress of the CONTRACTOR's executed work. Such visits and observations by ENGINEER, and the Resident Project Representative, if any, are not intended to be exhaustive or to extend to every aspect of the Work or to involve detailed inspections of the Work, but rather are to be limited to general observation of the Work based on ENGINEER's exercise of professional judgment, as assisted by the Resident Project Representative, if any.  Based on information obtained during such visits and observations, ENGINEER will determine in general if the Work is proceeding in accordance with the Construction Contract Documents, and ENGINEER shall keep OWNER informed of the progress of the Work.

7. ENGINEER shall not, during such visits or as a result of such observations of the Work, supervise, direct, or have control over the Work, nor shall ENGINEER have authority over or responsibility for the means, methods, techniques, sequences, or procedures of construction selected or used by any Constructor, for security or safety at the Site, for safety precautions and programs incident to any Constructor's work in progress, for the coordination of the Constructors' work or schedules, nor for any failure of any Constructor to comply with Laws and Regulations applicable to  furnishing and performing of its work.  Accordingly, ENGINEER neither guarantees the performance of any Constructor nor assumes responsibility for any Constructor's failure to furnish or perform the Work, or any portion of the Work, in accordance with the Construction Contract Documents.

8. Reject Work if, on the basis of ENGINEER's observations, ENGINEER believes that such Work is defective under the terms and standards set forth in the Construction Contract Documents. Provide recommendations to OWNER regarding whether Contractor should correct such Work or remove and replace such Work, or whether OWNER should consider accepting such Work as provided in the Construction Contract Documents.

9. Accept from CONTRACTOR submittal of all matters in question concerning the requirements of the Construction Contract Documents, Requests for Information (RFI) or relating to the acceptability of the Work under the Construction Contract Documents. With reasonable promptness, render a written clarification, interpretation, or decision on the issue submitted, or initiate an amendment or supplement to the Construction Contract Documents.

10. Subject to any limitations in the Construction Contract Documents, ENGINEER may prepare and issue Field Orders requiring minor changes in the Work.

11. Recommend Change Orders and Work Change Directives to OWNER, as appropriate, and prepare Change Orders and Work Change Directives as required.

12. Review and approve or take other appropriate action with respect to Shop Drawings, and other required CONTRACTOR submittals, but only for conformance with the information given in the Construction Contract Documents and compatibility with the design concept of the completed Project as a functioning whole as indicated by the Construction Contract Documents. Such reviews and approvals or other action will not extend to means, methods, techniques, sequences, or procedures of construction or to safety precautions and programs incident thereto.

13. Review and respond to Change Orders and Work Change Directives.

14. Receive from CONTRACTOR, review, and transmit to OWNER maintenance and operating instructions, schedules, guarantees, bonds, certificates or other evidence of insurance required by the Construction Contract Documents, certificates of inspection, tests and approvals, and Shop Drawings, Samples, and other data. Receive from CONTRACTOR, review, and transmit to OWNER the annotated record documents which are to be assembled by CONTRACTOR in accordance with the Construction Contract Documents to obtain final payment. The extent of ENGINEER's review of record documents shall be to check that Contractor has submitted all pages.

15. Promptly after notice from CONTRACTOR that CONTRACTOR considers the entire Work ready for its intended use, in company with OWNER and CONTRACTOR, visit the Site to review the Work and determine the status of completion. Follow the procedures in the Construction Contract regarding the punch list of items to be completed, notice to CONTRACTOR, and issuance of a Certificate of Substantial Completion.

16. Conduct a final visit to the Project to determine if the Work is complete and acceptable so that ENGINEER may recommend, in writing, final payment to CONTRACTOR. Accompanying the recommendation for final payment, ENGINEER shall also provide a notice in writing to OWNER and CONTRACTOR that the Work is acceptable to the best of ENGINEER's knowledge, information, and belief, and based on the extent of the services provided by Engineer under this Agreement.

**Professional Fees:**

| | | |
|---|---|---|
| Data Collection & Survey | $45,750.00 | (Incl. JPCC Review) |
| Geotechnical Investigation | $42,500.00 | |
| Basic Design Services | $198,250.00 | |
| Total | $286,500.00 | |

*Approximate Basic Services Breakdown:*

| | |
|---|---|
| Design Plans | 65% |
| Bidding Assistance | 5% |
| Construction Administration | 30% |

St. James Parish Government
Go Bond Road Program Package A

DRAFT LIST

| District | Roadway | Length (Ft.) | Width (Ft.) | Area (SY) | Patch Area (SY) | Scope of Work | Conceptual Cost Estimate |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| 7 | Sugar Estates St. | | | 0 | 700 | JPCCP Patching | $94,500 |
| 7 | Falgoust St. | 1715 | 19 | 3621 | 95 | Patching, Mill/Overlay | $175,750 |
| 7 | Desire St. | 1716 | 19 | 3623 | 225 | Patching, Mill/Overlay | $193,395 |
| 6 | Health Unit St. | 927 | 24 | 2472 | | Reconstruction | $925,000 |
| 6 | Luther King St. | 2500 | 9 | 2500 | 375 | Patching, Mill/Overlay | $163,125 |
| 5 | Park Ln. | 867 | 16 | 1541 | 200 | Patching, Mill/Overlay | $96,360 |
| 5 | Ranson Ln | 870 | 16 | 1547 | 175 | Patching, Mill/Overlay | $93,225 |
| 5 | Blue St. | 560 | 16 | 996 | 100 | Patching, Mill/Overlay | $58,300 |
| 5 | Penn St. | 570 | 16 | 1013 | 100 | Patching, Mill/Overlay | $59,100 |
| 4 | Water Tower St. | 2881 | 11 | 3521 | 200 | Patching, Mill/Overlay | $185,455 |
| 4 | Joseph St. | 730 | 11 | 892 | 210 | Patching, Mill/Overlay | $68,500 |
| 4 | Morgan St. | 1670 | 15 | 2783 | 300 | Patching, Mill/Overlay | $165,750 |
| 4 | Rome St. | 1636 | 10 | 1818 | 250 | Patching, Mill/Overlay | $115,550 |
| 3 | Lena St. | 1398 | 20 | 3107 | 300 | Patching, Mill/Overlay | $180,300 |
| 3 | Riley St. | 1446 | 18 | 2892 | 200 | Patching, Mill/Overlay | $157,140 |
| 3 | Beth/Irene | 900 | 18 | 1800 | 0 | Patching, Mill/Overlay | $81,000 |
| 2 | W. Main St. | 1400 | 24 | 3733 | 75 | Patching, Mill/Overlay | $178,125 |
| | | | | | | | |
| | Totals | 21786 | | 37859 | | | $2,990,575 |

Note:

Cost estimates provided are conceptual only and are not based upon final design. These estimates are based upon parametric quantity take offs. Due to market volatility and price fluctuations observed recently, variations in cost should be expected. Additional considerations for alternates and/or reductions in scope may be necessary once final design plans are completed.



FOR REVIEW
BASED UPON FIELD VISITS AND GOODROADS ASSESSMENT 4/2025



The following resolution was offered and moved for adoption by Councilman     and seconded by Councilman     :

### RESOLUTION 26-
### ST. JAMES PARISH COUNCIL

**A RESOLUTION AUTHORIZING ST. JAMES PARISH GOVERNMENT TO ADVERTISE FOR BIDS FOR THE PURCHASE OF TWO (2) NEW 2026 OR NEWER 6-8 CUBIC YARD DUMP TRUCKS**

**WHEREAS**, the St. James Parish Government has identified the need to purchase two (2) new 2026 or newer 6-8 cubic yard dump trucks for use in parish operations; and

**WHEREAS**, funding for the purchase of said dump trucks will be provided through the Louisiana Governmental Assistance Program (LAGP); and

**WHEREAS**, the Parish desires to publicly advertise and receive sealed bids for said equipment in accordance with applicable Louisiana Public Bid Laws.

**NOW, THEREFORE, BE IT RESOLVED** by the St. James Parish Council that the Parish Administration is hereby authorized to advertise for sealed bids for the purchase of two (2) new 2026 or newer 6-8 cubic yard dump trucks according to specifications on file with the Parish.

**BE IT FURTHER RESOLVED** that sealed bids will be received until the bid opening scheduled for July 1, 2026, at the St. James Parish Government Complex, Convent, Louisiana, at the time and place designated in the official advertisement for bids.

This resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:
NAYS:
ABSTAIN:
ABSENT:

And the resolution was declared adopted on this, the 3rd day of June 2026.

_____
Council Chairwoman

_____
Secretary

Delivered to Parish President: _____

Approved: _____

Disapproved: _____

_____
Parish President

Returned to Secretary on _____

At _____ AM/PM

Received by _____

\*    \*    \*    \*    \*

### C E R T I F I C A T E

I, Tammie Bodin, Secretary of the Council of the Parish of St. James, State of Louisiana, hereby certify that the foregoing is a true and correct copy of a resolution adopted by the St. James Parish Council in regular meeting held on the 3rd day of June 2026.

Signed at Vacherie, Louisiana, this 4th day of June 2026.

_____
Tammie Bodin
(S E A L)                                        Secretary

# Notice to Bidders

St. James Parish Government will be accepting sealed bids on current year or newer vehicles. These vehicles are listed in Article V, of the general specifications section of this document. Sealed bids will be opened in the St. James Parish Council Chambers, located at 5800 HWY 44, Convent, LA 70723 at 10:00 AM, July 1, 2026.

Prospective bidders must bid on all items listed and must meet minimum requirements as specified in the bidding documents. Vehicle specifications and documents are available from the St. James Parish Government, Department of Operations, 5800 HWY 44, Convent, LA 70723, Room 311.

The envelope containing the bid must be marked "Dump Truck Bid, Department of Operations" clearly on the outside of the envelope.

All bids must be complete and include the delivery schedule and warranty.

Immediate delivery and availability of parts, service, and warranty will be considered in the awarding of bids.

The Council reserves the right to reject all bids and to waive any formalities

Advertise Dates:
June 4, 2026
June 11, 2026
June 18, 2026