Councilman Amato moved, seconded by Councilman St. Pierre for adoption of the following resolution regarding the appeal by RISE St. James of the St. James Parish Planning Commission's October 30, 2018 approval of the land use application by FG LA LLC to build a chemical manufacturing complex:

### RESOLUTION 19-07
### ST. JAMES PARISH COUNCIL

**A RESOLUTION DENYING THE APPEAL OF RISE ST. JAMES AND APPROVING THE APPLICATION OF FG LA LLC UNDER THE ST. JAMES PARISH LAND USE ORDINANCE, WITH CONDITIONS**

**WHEREAS**, FG LA LLC ("FG") requested approval of a proposed chemical manufacturing complex in an application dated June 25, 2018, as supplemented (the original application and supplemental information collectively referred to in this resolution as the "Application," and identified in the records of the St. James Parish Planning Commission as Item #18-30); and

**WHEREAS**, representatives of FG presented an overview of the application at the planning commission's July 27, 2018 meeting, at which the commission heard public comments on the proposal;

**WHEREAS**, public hearings were held on FG's proposal on September 5, 2018 in Convent and on September 19, 2018 in Vacherie after public notice; and

**WHEREAS**, based on concerns expressed at the public hearings and on an evaluation of the requirements of the St. James Parish land use ordinance, the parish administration requested FG to evaluate potential failure scenarios, with particular attention paid to the locations of concern nearest the operating units of the proposed complex, those locations being St. Louis Academy and the new Mount Calvary Baptist Church near Big Boy Road on Louisiana Highway 18; and

**WHEREAS**, the planning commission approved the Application on October 30, 2018 under Section 86-37(f) of the St. James Parish Code of Ordinances after considering the information presented in the Application, presentations made to the Planning Commission, comments presented at public hearings, and the analyses of the parish administration and consultants, along with the provisions of Section 86-37 of the Code of Ordinances and the St. James Parish Comprehensive Plan; and

**WHEREAS**, RISE St. James timely appealed the foregoing approval in a letter dated November 28, 2018, as supplemented by an addendum to that letter dated November 29, 2018; and

**WHEREAS**, FG responded to RISE St. James' appeal in a letter dated December 17, 2018; and

**WHEREAS**, at its December 19, 2018 meeting, the council heard arguments on the appeal from representatives of both RISE St. James and FG, along with public comments on the appeal, as provided for in the Louisiana Open Meetings Law; and

**WHEREAS**, in its Application, in various presentations to the planning commission and the parish council, as confirmed and augmented in its presentation to the parish council on December 19, 2018, FG voluntarily committed to implement training and hiring practices to enhance employment opportunities for residents of St. James Parish; to support developing an alternative access route between River Road/Highway 18 and Highway 3127; to support free health screenings for residents; and to support beautification efforts in District 5; and environmental monitoring; and

**WHEREAS**, FG has entered into a Cooperative Endeavor Agreement (CEA) with the State of Louisiana (Louisiana) and the Louisiana Department of Economic Development (LED), in which, among other things, Louisiana and LED agreed to provide customized workforce support through the LED FastStart Program, including assistance with employee recruitment, screening, and training development and delivery; and

EXHIBIT

J

**WHEREAS**, FG has adopted a "Think Local Policy" in which FG committed to strive to give preference to qualified persons and firms in St. James Parish and the State of Louisiana (commensurate with applicable federal, state, and local laws); and

**WHEREAS**, FG's Think Local Policy solidifies its commitment to hire qualified, local residents and use local businesses as much as possible throughout the construction and operation phases. In the CEA, the State of Louisiana and LED agreed to provide customized workforce support through the LED FastStart Program, including assistance with employee recruitment, screening, and training development and delivery. It is expected that through the LED FastStart Program and other programs, mechanisms, or processes, FG will be able to identify and hire "qualified persons," that is, persons who are qualified to perform the task(s) of the position(s) for which they are hired; and

**WHEREAS**, In the CEA, FG agreed to LED tracking, through a Contract Monitor, FG's obligations in the CEA, including the establishment of the facility, capital expenditures for the facility, jobs and payroll, the use of Louisiana manufacturers, suppliers, contractors and subcontractors; and

**WHEREAS**, at its December 19, 2018 meeting, the parish council determined that RISE St. James appeal should be denied, subject to conditions on the approval of the application in addition to those adopted by the planning commission;

**NOW, THEREFORE, BE IT RESOLVED** that under Section 86-37(f) of the St. James Parish Code of Ordinances, the parish council hereby denies the RISE ST. James appeal and upholds the planning commission's approval of FG's Application, subject to the conditions stated below, which include the conditions originally adopted by the planning commission, along with additional conditions deemed necessary by the parish council to achieve the anticipated benefits of FG's facility in a way that would be commensurate with its physical and environmental impacts.

**A.    Extent of Approval and Future Changes within the Facility Footprint:**  This approval is limited to the facility as presented in the Application, including both Phase I and Phase II described therein, along with reasonable modifications and expansions, subject to the following limitations on any modification or expansion:

**(1)**    Process or production facilities shall not extend beyond the footprint within the 300 foot civil buffer depicted in the plot plan submitted with the Application;

**(2)**    Any modification or expansion must be designed so that it does not materially increase risks to the community towards the east;

**(3)**    Changes must comply with all requirements of the Louisiana Department of Environmental Quality and all other public entities having regulatory jurisdiction;

**(4)**    The materials produced and the processes utilized must be substantially similar to the materials and processes described in the Application; and

**(5)**    Changes must comply with Section 30-64 of the St. James Parish Code of Ordinances ("Defensive Emergency Protective Measures").

**B.    Start Date Limitation.**  Construction must commence within 24 months after the last public entity regulatory approval is issued, or within 24 months after the termination of any administrative or judicial appeal process that may follow from the issuance of any required permit, whichever is later.  For the purposes of this limitation, construction is defined as:  permanent on-site fabrication, erection, or installation of the proposed facility (such as preloading, pile driving, installing structural supports and foundations, laying underground pipework, or constructing permanent storage structures) that is continuously pursued with reasonable diligence to complete the permitted facility within a reasonable time.  Construction delays caused by natural disaster or labor disputes, and periods between operational phases of construction shall not be construed as interrupting construction that is otherwise continuously pursued.

**C.**     **Emergency Measures**:  The facility must comply with Section 30-64 of the St. James Parish Code of Ordinances ("Defensive Emergency Protective Measures").

**D.**     **Training, Hiring, and Contracting**

**(1)**     FG will establish, fund, and implement the FG Workforce Academy to help train and prepare residents for full-time employment at its facility.   The academy will include the following features:

    **a.**     The FG Workforce Academy will be designed to:

- Bridge the semi-skilled or underemployed worker with job opportunities at FG;
- Provide preparatory training for the semi-skilled or underemployed worker who demonstrates high technical and/or mechanical aptitude, or has a desire to secure an opportunity in industry; and
- Provide educational and employment opportunities for the citizens of St. James Parish who are at least 18 years old.

    **b.**     FG will work with entities, such as River Parishes Community College, Baton Rouge Community College, Louisiana Workforce Commission, LED, , and local workforce development officials, to develop a curriculum that will provide the necessary training and/or skills required to work at the facility. The ADDIE Framework (Assess, Design, Develop, Implement, Evaluate) will be utilized to create the curriculum for the FG Workforce Academy.

    **c.**     FG will provide St. James Parish residents top priority for entrance to the academy.

    **d.**     In the first year of the FG Workforce Academy, FG will allow those residents living in Districts 5, 6, and 7 who meet objective employment-related admission criteria established by FG for the academy (such as a clean drug test and passing criminal record checks, etc.) to enroll at the academy.  Admission of all residents who are qualified may be spread over multiple sessions and/or classes, with scheduling of the sessions and/or classes based on FG's hiring needs.

    **e.**     In addition to those who apply directly, FG will consider referrals of applicants to the academy from an office designated for this purpose by the parish, subject to the admission criteria described above.

    **f.**     FG will give all St. James Parish residents who successfully complete the academy's training program an opportunity to interview for open job positions at its facility.

**(2)**     To the extent allowed by law, FG will give preference to those qualified residents and qualified firms based within St. James Parish for construction and other contracts at the facility, during both construction and operation of the facility, and will require, through contractual provisions which it will enforce in good faith, that its contractors impose this requirement downward through the subcontracting chain.

**(3)**   To the extent allowed by law, FG will give preference to qualified vendors based within St. James Parish for FG's purchase of non-specialized equipment, services, or supplies that are based within St. James Parish, and will require, through contractual provisions which it will enforce in good faith, that its contractors impose this requirement downward through the subcontracting chain.

**(4)**   FG will conduct outreach efforts on its website and other local venues on an ongoing basis to acquaint businesses in Louisiana and St. James Parish with contracting, service, and supplier business opportunities with FG, and to provide those businesses with information on how to compete for such opportunities directly from FG as well as its contractors and subcontractors.

**(5)**   FG shall publish information on its website for persons and businesses to inquire about and receive information about working for or doing business with FG, its contractors, and subcontractors and will provide similar information to an  office or person designated by St. James Parish who will be responsible for disseminating that information within the parish.

**(6)**   FG will apply the Think Local Policy in good faith and to the best of its ability.

**E.**   **Alternative Access Route:**  FG will participate in a cooperative effort with the parish, the state, and other industries in the area to develop an alternative access route between River Road/Highway 18 and Highway 3127.  Such participation shall include the contribution of financial (or comparable substitute) resources on an equitable basis commensurate with contributions of the industries in the affected area.

**F.**   **Health Screening:**  FG will participate in a cooperative effort with the St. James Parish Hospital to provide free health screenings for residents of District 5.  Such participation shall include the contribution of financial (or comparable substitute) resources.

**G.**   **Beautification**

**(1)**   To screen the facility from residential areas to the east, FG shall provide a forested buffer along its eastern boundary.  The forested buffer will include a sufficient amount and placement of trees and vegetation which, at tree or vegetation maturation, will provide an aesthetic buffer between the community to the east and the facility to mitigate the visual impacts on residential areas.

**(2)**   In cooperation with St. James Parish, FG will seek out and support projects in District 5 that are designed to enhance the aesthetic value and nature of the community.  Such support shall include the contribution of financial (or comparable substitute) resources.  One such project shall be the beautification of the public park in District 5.

**H.**   **Environmental Monitoring:**  FG shall provide air quality monitoring along its eastern property boundary, with a sufficient number and type of monitors on the eastern property boundary to provide data on air emissions potentially impacting the surrounding community and which will be in accordance with the standards set forth in 40 CFR 63.658, modified as follows:

**(1)**   40 CFR 63.658(a) shall be revised to read as follows:

The owner or operator shall conduct sampling along the facility's eastern property boundary and analyze the samples in accordance with Methods

325A and 325B of appendix A of this part and paragraphs (b) through (e) of this section.

**(2)**    In 40 CFR 63.658(b), the target analytes shall be 1,3-butadiene, vinyl acetate, and ethylene oxide instead of benzene.

**(3)**    40 CFR 63.658(c) shall be revised to read as follows:

The owner or operator shall determine passive monitor locations along the eastern property boundary in accordance with Section 8.2 of Method 325A of appendix A of this part.

**(4)**    40 CFR 63.658(c)(1) shall be revised to read as follows:

As it pertains to this subpart, known sources of VOCs, as used in Section 8.2.1.3 in Method 325A of appendix A of this part for siting passive monitors, means a wastewater treatment unit, process unit, or any emission source with the potential to emit any of the target analytes, including marine vessel loading operations.  For marine vessel loading operations, one passive monitor should be sited on the shoreline adjacent to the dock.

**(5)**    40 CFR 63.658(c)(1)(i) through (iv) shall be deleted.

**(6)**    40 CFR 63.658(c)(2) shall be deleted.

**(7)**    40 CFR 63.658(c)(4) shall be revised to read as follows:

The owner or operator shall follow the procedure in Section 9.6 of Method 325B of appendix A of this part to determine the detection limit of the target analytes for each sampler used to collect samples, co-located samples, and blanks.

**(8)**    40 CFR 63.658(e)(2) and (e)(3) shall be deleted.

**(9)**    The initial sampling collection frequency shall be once each continuous 14-day sampling period, such that the beginning of the next 14-day sampling period begins immediately upon the completion of the previous 14-day sampling period.  After 52 consecutive samples, if none exceeds the ambient air standard for the applicable analyte, the sampling frequency may be reduced to once per month.  After an additional 24 consecutive samples, if none exceeds the ambient air standard for the applicable analyte, the sampling frequency may be reduced to one sampling period every three months.

**(10)**    In determining annual average concentrations for comparison to ambient air standards, FG shall calculate the average based on all samples from the most recent 12-month period.

**(11)**    40 CFR 63.658(f) through (k) shall be deleted.

The data produced by the monitoring shall be made available to the parish in response to the parish's reasonable request.  Semi-annual summary reports shall be provided to the parish.  The summary reports shall include a comparison of the monitoring results against the ambient air standards for each target analyte.

If the Environmental Protection Agency promulgates regulations with fence-line hazardous air pollutant monitoring requirements for the specific plants that FG proposes to construct, and those requirements

are of reasonably comparable rigor to those contained in this Section H, those requirements shall be applied by FG in lieu of the requirements contained in this Section H, with the understanding that the target analytes, as well as the reporting described in the preceding paragraph, shall remain the same.

**I.      Reporting**

**(1)**      In addition to the environmental monitoring reports required under condition (H), FG shall provide annual reports to St. James Parish on FG's performance related to conditions (D), (F), and (G).  Such reports shall include the number of residents and businesses provided with employment and business opportunities.

**(2)**      St. James Parish may audit the reports provided to the parish and the information presented to the parish council, provided that the parish shall not reveal any personal identification, matters protected by the Health Insurance Portability and Accountability Act, or any FG trade secrets.

**BE IT FURTHER RESOLVED** that the parish council concurs with planning commission's finding that this approval is justified under the factors stated in Section 86-37(h) of the St. James Parish Code of Ordinances.  The impacts of the proposed facility would not be different from the impacts of allowable uses in the Industrial use area in which it will be located.  The public benefits of the proposal are significant, as set out in the Application.  The physical and environmental impacts of the proposal are within allowable limits, and are substantially mitigated by the physical layout of the facility, and the location of the site in proximity to existing industrial uses and away from residential uses.  The public benefits outweigh the impacts, and the proposal will not impair the ability of the parish to attract other beneficial development.  The vested rights/constitutional protection factor in Section 86-37(h)(4) is not implicated by this approval.

**BE IT FURTHER RESOLVED** that the parish council concurs with planning commission's consideration of the need for a buffer zone under Sections 86-37(i)(2) and 86-37(j) of the St. James Parish Code of Ordinances.  The parish council concurs with planning commission's finding that the overall location of the site, placement of the production and process components on the site, and the proposed 300 foot civil buffer within the footprint of the site provide adequate buffer zones.  The adequacy of these provisions is demonstrated by the potential failure scenario evaluation provided by FG as part of the Application and reviewed by the parish's consultants.  The approval conditions described in this resolution would preserve the benefits of the buffer zones described in the Application regarding any future modifications or expansions.

This resolution having been submitted to a vote, the vote thereon was as follows:

| | |
|---|---|
| YEAS: | St. Pierre, Amato, Patin, Cooper, and Louque |
| NAYS: | None |
| ABSTAIN: | None |
| ABSENT: | Etienne-Steib and Kraemer |

And the resolution was declared adopted on this, the 23rd day of January 2019.