**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | * * * * | **CIVIL ACTION NO.: 2:23-cv-00987** |
| VERSUS | * * | JUDGE: CARL J. BARBIER |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | * * * | MAG. JUDGE JANIS VAN MEERVELD |

**MOTION TO COMPEL RESPONSES TO FIRST SET OF DISCOVERY**

NOW INTO COURT, through undersigned counsel, comes Defendant, St. James Parish, on behalf of itself and the St. James Parish Council and St. James Parish Planning Commission ("**St. James Parish**" or the "**Parish**"), which respectfully submits this Motion to Compel.

The Parish propounded discovery requests to the three Plaintiffs based on their allegations in the now operative Complaint (doc. 104). Plaintiffs refused to respond to several requests. Notably, Plaintiffs failed to provide information about their members and their members' property in the Parish and information to substantiate the claims of health issues caused by the Parish. As detailed in the memorandum, the requested information is directly relevant to Plaintiffs' specific allegations and is necessary for the Parish to defend against Plaintiffs' claims. As a result, the Parish requests an Order compelling Plaintiffs to fully respond to the following requests:

- RISE St. James: Interrogatory Nos. 8, 10, 11, 20; Request for Production Nos. 3, 5
- Inclusive Louisiana: Interrogatory Nos. 5, 6, 7, 9, 10; Request for Production Nos. 3, 4, 5, 12
- Mount Triumph Baptist Church: Interrogatory Nos. 5, 8, 9; Request for Production Nos. 3, 4

WHEREFORE, Defendant, St. James Parish, respectfully requests that this Honorable Court grant this Motion to Compel, ordering a full response be provided to RISE St. James: Interrogatory Nos. 8, 10, 11, 20; Request for Production Nos. 3, 5; Inclusive Louisiana: Interrogatory Nos. 5, 6, 7, 9, 10; Request for Production Nos. 3, 4, 5, 12, and Mount Triumph Baptist Church: Interrogatory Nos. 5, 8, 9; Request for Production Nos. 3, 4.

RESPECTFULLY SUBMITTED,
By Attorneys:

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*/s/ Danielle L. Borel*
John King, La. Bar No. 17004
John.King@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
Carroll.Devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
Danielle.Borel@bswllp.com

*Attorneys for St. James Parish*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | * * * * | **CIVIL ACTION NO.: 2:23-cv-00987** |
| VERSUS | * * | JUDGE: CARL J. BARBIER |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | * * * * | MAG. JUDGE JANIS VAN MEERVELD |

**NOTICE OF SUBMISSION**

PLEASE TAKE NOTICE that the attached Motion to Compel is hereby set for submission on October 14, 2026, before the Honorable Carl J. Barbier, United States District Court, Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130.

Respectfully submitted, this 24th day of September, 2026.

RESPECTFULLY SUBMITTED,
By Attorneys:

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*/s/ Danielle L. Borel*
John King, La. Bar No. 17004
John.King@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
Carroll.Devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
Danielle.Borel@bswllp.com

*Attorneys for St. James Parish*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | * * * * | **CIVIL ACTION NO.: 2:23-cv-00987** |
| VERSUS | * * | JUDGE: CARL J. BARBIER |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | * * * | MAG. JUDGE JANIS VAN MEERVELD |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO FIRST SET OF DISCOVERY**

***MAY IT PLEASE THE COURT:***

Defendant, St. James Parish ("**St. James Parish**" or the "**Parish**"), respectfully submits this Memorandum in Support of its Motion to Compel Responses to First Set of Discovery. St. James Parish requests an Order compelling Plaintiffs, RISE St. James ("**RISE**"), Inclusive Louisiana ("**Inclusive**"), and Mount Triumph Baptist Church ("**Mount Triumph**") to provide complete responses to the discovery requests propounded by the Parish on April 22, 2026. Plaintiffs failed to provide, and continue to refuse to provide, complete responses to RISE Interrogatories No. 8, 10, 11, 20 and RFP 3, 5; Inclusive Interrogatories No. 5, 6, 7, 9, 10 and RFP 3, 4, 5, 12; and Mount Triumph Interrogatory No. 5, 8, 9 and RFP 3, 4. Because Plaintiffs rely on their members' residence, property ownership, environmental exposure, and increased health risks for their standing, claims, and injuries, the requested is directly relevant. As detailed below, Plaintiffs should be compelled to fully respond to these requests.

## I. PROCEDURAL BACKGROUND

### A. The Pending Claims

The original complaint was filed March 21, 2023. Doc. 1. Plaintiffs allege that the Parish

steered industrial development into the predominantly Black Districts 4 and 5 as part of a long-standing pattern or practice of racial discrimination. Plaintiffs allege seven claims, as follows:

i. Claim I - Thirteenth Amendment: alleging the Land Use Plan currently in place in the Parish continues a badge or incident of slavery.

ii. Claim II - Fourteenth Amendment (Equal Protection): alleging the parish-wide (now repealed) Solar Moratorium, the unconsidered Petrochemical Moratorium Request, the review of land use applications, and the related tax exemptions deny the equal protection of the laws to Blacks.

iii. Claim III - Fourteenth Amendment Substantive Due Process (Bodily Safety and Integrity): alleging the Parish is violating Plaintiffs' right to bodily safety and integrity by allowing industrial development in Districts 4 and 5.

iv. Claim IV - 42 U.S.C. § 1982 (Property Rights of Black Citizens): alleging the Parish implemented a land use system that violates Plaintiffs' rights to inherit, purchase, lease, sell, hold, and convey property on equal terms as white citizens.

v. Claim V - 42 U.S.C. §2000cc Religious Land Use and Institutionalized Persons Act (Substantial Burden): alleging the Parish's Land Use Plan is substantially burdening Plaintiffs' religious exercise and ability to pray upon the unmarked cemeteries of enslaved ancestors by permitting industrial development.

vi. Claim VI - 42 U.S.C. §2000cc Religious Land Use and Institutionalized Persons Act (Discrimination): alleging the Land Use Plan discriminates against Black churches on religious denomination by permitting industrial development near those churches.

vii. Claim VII - Louisiana Constitution, Article XII, Section 4, Preservation of Cultural Origins: alleging the Parish violated their right to preserve, foster, and promote their historic and cultural origins by implementing a land use plan that has resulted in the destruction and desecration of purported burial sites.

viii. Request for Declaratory Judgment: requesting a judgment declaring the Parish's approvals granted to Formosa and South Louisiana Methanol invalid.

Originally, all claims were dismissed by this Court on the basis of a lack of standing or prescription. After appeal, the Fifth Circuit found Plaintiffs did have standing based on their allegations. On remand, Plaintiffs filed their Second Amended Complaint. Doc. 104.

### B. <u>The Parish Propounds Discovery Requests on Plaintiffs' Allegations.</u>

On April 22, 2026, the Parish propounded its first set of discovery on each Plaintiff, copies of which are attached as <u>Exhibits "1", "2", and "3</u>". The Parish's requests are directly related to Plaintiffs' allegations in their Complaint, with many requests specifically identifying the

allegations. Despite this, Plaintiffs have refused to provide responses to several requests.

RISE responded on May 22, June 22, July 22, and September 11, the responses which are attached as Exhibit "4", *in globo.* Inclusive responded on May 22, June 22, July 22, and September 11, the responses which are attached as Exhibit "5", *in globo.* Mount Triumph responded on June 22, July 22, and September 11, the responses which are attached as Exhibit "6", *in globo.*

On July 2, 2026, the Parish sent deficiency letters to RISE, Inclusive, and Mount Triumph, attached as Exhibits "7," "8," and "9," respectively, outlining the insufficient responses provided. Plaintiffs did not provide any supplemental answers in response. Thus, on July 20, 2026, counsel for St. James Parish conducted a discovery conference. Of the items outlined below, Plaintiffs maintained their objections and refused to provide sufficient supplemental responses.

At issue for Plaintiffs are the following requests: RISE: Interrogatory Nos. 8, 10, 11, 20; RFP 3, 5; Inclusive: Interrogatory Nos. 5, 6, 7, 9, 10; RFP 3, 4, 5, 12; and Mount Triumph: Interrogatory Nos. 5, 8, 9; RFP 3, 4. These requests can be grouped into two topics: (1) member information and property owned in the Parish, and (2) information to substantiate allegations on medical issues and deaths. Plaintiffs' refusal to provide information is entirely improper.

## II. ARGUMENT

Plaintiffs' refusal to provide the requested information lacks merit. The requests are directly related to Plaintiffs' allegations, claims, and standing. Plaintiffs' objections regarding breadth and burden are unsupported boilerplate objections. There is no applicable First Amendment privilege. Plaintiffs must provide information known or reasonably available to it after conducting a reasonable inquiry, which they have failed to do.

### A. Plaintiffs' Membership Information is Relevant (RISE Int. 8, 11, RFP 5; Inclusive Int. 7, 10, RFP 12; Mount Triumph Int. 9, RFP 4).

The Parish's requests to Plaintiffs seek the identities of their members, including those who

presently or previously resided in the Parish, and requests the location of their residences and any property they own in the Parish as alleged in the Complaint. Plaintiffs objected to the requests and have, to date, refused to answer the interrogatories, as follows:

> **[RISE] INTERROGATORY NO. 8:**
> Please identify all members of RISE, identifying the members who previously or currently reside in St. James Parish, the location of their residence, and the location of any property owned by them in St. James Parish, as alleged in Paragraph 25 of the Complaint.
>
> **[RISE] RESPONSE TO INTERROGATORY NO. 8**
> Plaintiff RISE St. James objects to this interrogatory to the extent that it requires Plaintiff to disclose the identities of its membership, because it is overbroad, unduly burdensome, and will result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama*, 357 U.S. 449, 462, 466 (1958). Moreover, RISE St. James objects to this request because, to the extent it seeks information about third parties' ownership of property, that is information that is not within RISE St. James's possession, custody, control, or personal knowledge. Finally, RISE St. James objects to this request because the property ownership of third parties is not relevant to this litigation, nor is it reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, RISE St. James Founder Sharon Lavigne resides in St. James Parish. Ms. Lavigne owns her home at 8581 Highway 18, St. James, Louisiana, 70086. Ms. Lavigne additionally has property in St. James Parish located at 8617 Highway 18, St. James, Louisiana, 70086; 7225 Cayette St., St. James, Louisiana, 70086; and at 5576 Highway 44, Convent, Louisiana, 70723.
>
> **[RISE] INTERROGATORY NO. 11:**
> Please identify the members of RISE you allege suffered a decrease in property values as a result of the Parish's actions, including the member's name, property location, and basis for asserting a decrease in property value.
>
> **[RISE] RESPONSE TO INTERROGATORY NO. 11:**
> Plaintiff RISE St. James objects to this interrogatory to the extent that it requires Plaintiffs to disclose the identities of its membership, because it is overbroad, unduly burdensome, and will result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama*, 357 U.S. 449, 462, 466 (1958). Plaintiffs further object to the extent that this request prematurely seeks information that is the subject of ongoing discovery, and information that is protected by the work-product and attorney client privilege.
> Subject to and without waiving the foregoing objection, Sharon Lavigne alleges that she has suffered a decrease in property values as a result of the Parish's actions. Ms. Lavigne's home is located at 8581 Highway 18, St. James, Louisiana. Ms. Lavigne believes the basis for the decrease in her property value is its proximity to heavy

industrial facilities, as well as the sites of planned future industrial facilities, and the environmental degradation and negative health impacts caused by those facilities. Ms. Lavigne believes that the residential properties in the Fourth and Fifth Districts, including her own, are not increasing in value in the same manner as residential properties in other, majority-white parts of the Parish.

**[RISE] REQUEST FOR PRODUCTION NO. 5:**
Please produce all documents establishing the decrease in property values of your members identified in Interrogatory No. 11.

**[RISE] RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**
See Plaintiff RISE St. James's responses to Interrogatory No. 11 and Request for Production No. 4. At this early stage of discovery, Plaintiff does not yet have any documents to produce.

**[INCLUSIVE] INTERROGATORY NO. 7:**
Please identify all members of Inclusive Louisiana, identifying the members who previously or currently reside in St. James Parish, the location of their residence, and the location of any property owned by them in St. James Parish, as alleged in Paragraph 23 of the Complaint.

**[INCLUSIVE] RESPONSE TO INTERROGATORY NO. 7:**
Plaintiff Inclusive Louisiana objects to this interrogatory to the extent that it requires it to disclose the identities of its membership, because it is overbroad, unduly burdensome, and will result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama,* 357 U.S. 449, 462 (1958). Moreover, Inclusive Louisiana objects to this request because, to the extent it seeks information about third parties' ownership of property, that is information that is not within Inclusive Louisiana's possession, custody, or control. Finally, Inclusive Louisiana objects to this request because the property ownership of third parties is not relevant to this litigation, nor is it reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving its objections, Plaintiff Inclusive Louisiana notes the following:

1. Ms. Barbara Washington currently resides at 8191 Pleasant Hill St., Convent, LA 70723 on property that is co-owned by Ms. Washington and her husband. She moved there in 1995.

   Ms. Washington is also a co-administrator of the Estate of Harriet of Jones, a property that is adjacent to her current residence. The land was first purchased by Ms. Washington's fifth generation grandmother Harriet Jones after she was freed from slavery. Ms. Washington lived on the Estate of Harriet Jones between 1978 to 1995. Before 1978, Ms. Washington was raised and lived in at 8179 Pleasant Hill St., Convent, LA 70723.

2. Ms. Gail LeBoeuf currently resides at and owns 758 North Ezidore St., Gramercy, LA 70052. Until 1999, Ms. LeBoeuf resided at 6116 Badeaux St., Convent, LA 70723, which is property that she also owns.

3. Inclusive Louisiana owns the property at 8111 Romeville St, Convent, LA 70723.

**[INCLUSIVE] INTERROGATORY NO. 10:**
Please identify the members of Inclusive Louisiana you allege suffered a decrease in property values as a result of the Parish' actions, including the member's name, property location, and basis for asserting a decrease in property value.

**[INCLUSIVE] RESPONSE TO INTERROGATORY NO. 10:**
Plaintiff Inclusive Louisiana objects to this interrogatory to the extent that it requires Inclusive Louisiana to disclose the identities of all of its members, because it is overbroad and will result in the disclosure of the names of individuals who are not party to this action, and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Inclusive Louisiana further object to the extent that this request prematurely requests information that is the subject of ongoing discovery, and to the extent that it prematurely seeks expert opinion regarding the calculation of changes in property value over time. Without waiving its objections, Inclusive Louisiana responds:

**Ms. Barbara Washington** currently resides at 8191 Pleasant Hill St., Convent, LA 70723 on property that is co-owned by Ms. Washington and her husband. Ms. Washington is also a co-administrator of the Estate of Harriet of Jones, a property that is adjacent to her current residence. The land was first purchased by Ms. Washington's fifth generation grandmother Harriet Jones after she was freed from slavery. Ms. Washington believes that the value of her properties is being impacted because it is in extremely close proximity to industrial plants. She also believes her property value is being impacted because she notices dust and/or residue, and discoloration on her house that she believes is caused by industrial pollution. Ms. Washington also believes that the residential properties in Romeville are losing their value because they are in extremely close proximity to industrial plants, and because they are not increasing in value in the same manner as residential properties in other, majority-white parts of the Parish. She notices that people are not moving into Romeville since industrial development has increased in the area, and so the demand for property has decreased, which leads her to believe that the value of her own properties has decreased. Additionally, Ms. Washington also knows that her property is located in an area designated "Residential/Future Industrial" by the Parish, meaning that there are restrictions on subdividing and selling her property, which are not applied to other areas in the Parish, which restricts her use of property and likely also impacts its value.

**Ms. Gail LeBoeuf** currently resides at and owns 758 North Ezidore St., Gramercy, LA 70052. Until 1999, Ms. LeBoeuf resided at 6116 Badeaux St., Convent, LA 70723, which is property that she also owns. Ms. LeBoeuf believes that her property at 6116 Badeaux St.,15 Convent, LA 70723 is losing its value because it is located in extremely close proximity to the Mosaic Uncle Sam fertilizer plant and, because it is in a highly-industrialized area, it is not receiving the same municipal and state benefits as other parts of the Parish. She also believes that it has lost use and value because of the industrial pollution from that plant--more specifically she believes it is very difficult to grow safe crops on that property given industrial emissions, which inherently renders the property less valuable.

**Inclusive Louisiana** owns the property at 8111 Romeville St, Convent, LA

70723. Inclusive Louisiana believes that the value of its property is impacted because it is in close proximity to industrial plants. Additionally, Ms. Barbara Washington believes that properties in Romeville are losing their value because they are not increasing in value in the same manner as properties in other, majority-white parts of the Parish for the reasons described above. Additionally, Inclusive Louisiana's property is located in an area designated "Residential/Future Industrial" by the Parish, meaning that there are restrictions to subdividing and selling the property, which are not applied to other areas in the Parish, which restricts Inclusive Louisiana's use of property and likely also impacts its value.

**[INCLUSIVE] REQUEST FOR PRODUCTION NO. 12:**
Please produce all documents establishing the decrease in property values of your members identified in Interrogatory No. 10.

**[INCLUSIVE] REQUEST FOR PRODUCTION NO. 12:**
Inclusive Louisiana objects to this request for the same reasons as it objected to Interrogatory No. 10. Inclusive Louisiana also objects the extent that this request prematurely seeks information that is the subject of ongoing discovery, and to the extent that it prematurely seeks expert opinion regarding the calculation of changes in property value over time. Without waiving its objections, Inclusive Louisiana responds refers the Parish to its answers to Interrogatories Nos. 6, 7, and 10.

**[MT. TRIUMPH] INTERROGATORY NO. 9:**
Please identify the members of Mount Triumph you allege suffered a decrease in property values as a result of the Parish' actions, including the member's name, property location, and basis for asserting a decrease in property value.

**[MT. TRIUMPH] RESPONSE TO INTERROGATORY NO. 9:**
Plaintiff Mount Triumph Baptist Church objects to this interrogatory to the extent that it requires Mount Triumph Baptist Church to disclose the identities of all of its members, because it is overbroad and will result in the disclosure of the names of individuals who are not party to this action, and such disclosure would chill or violate their rights to freedom of speech, religion, and association under the U.S. Constitution. *See Whole Woman's Health v. Smith,* 896 F.3d 362, 371 (5th Cir. 2018); *NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Mount Triumph Baptist Church further objects to the extent that this request prematurely requests information that is the subject of ongoing discovery, and to the extent that it prematurely seeks expert opinion regarding the calculation of changes in property value over time. Without waiving its objections, Mount Triumph Baptist Church responds: Pastor Joseph believes that the property value of Mount Triumph Baptist Church, 7159 Paul Nelson Road, St. James, LA 70086, has decreased because of its proximity to multiple polluting facilities and the expansion of a crude oil terminal and tank farm 500 feet away. Based on conversations with those living near Mount Triumph Baptist Church, Pastor Joseph believes that nearby residents who want to relocate due to pollution are financially unable to because they are unable to sell their properties for enough value to relocate to a comparable property due to the property devaluation caused by that very pollution.

**[MT. TRIUMPH] REQUEST FOR PRODUCTION NO. 4:**
Please produce all documents establishing the decrease in property values of your

members identified in Interrogatory No. 9.

**[MT. TRIUMPH] RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**
Mount Triumph Baptist Church objects to the extent that this request prematurely seeks information that is the subject of ongoing discovery, and to the extent that it prematurely seeks expert opinion regarding the calculation of changes in property value over time.

*See* Exs. 4, 5, 6. In sum, Plaintiffs object asserting the requests 1) are not relevant, 2) are overbroad and unduly burdensome, 3) would implicate names of non-party individuals, 4) would chill or violate their rights to freedom of speech and association, and 5) seek information not in their control. Plaintiffs have not substantiated its generalized objections, established that the First Amendment protects the particular information requested, or conducted the reasonable inquiry necessary to provide complete responses. These objections are inappropriate, lack merit, and fail to relieve Plaintiffs from providing discoverable information directly related to their allegations.

**1. <u>Plaintiffs' membership and the property of their members is relevant and likely to lead to discoverable information.</u>**

In the Complaint, Plaintiffs alleged:

- "23. Plaintiff INCLUSIVE LOUISIANA is a non-profit, grassroots community advocacy organization, with deep beliefs in the Christian faith, based in St. James Parish dedicated to protecting the residents of St. James Parish and neighboring parishes from environmental harm caused by industrial pollution and to creating a fairer and more inclusive society. Its founders and members are descended from people who were enslaved in the area, who they believe are buried in unmarked cemeteries in St. James Parish. **They have resided in the Parish all their lives.** . . . **All founding members** have been exposed to heightened levels of carcinogens and other harmful pollutants and a dramatically increased risk of cancer and other diseases attendant to the heavy industrial sitings in those Districts, as a result of Defendants' discriminatory land use decisions. **All members** have lost loved ones to cancer and other diseases as a result of Defendants' discriminatory land use decisions. . . ."
- " 25. Plaintiff RISE ST. JAMES is a faith-based grassroots organization dedicated to environmental justice and ending the proliferation of petrochemical industries in St. James Parish. Its leaders are descended from people who were enslaved in the area, who they believe are buried in unmarked cemeteries in St. James Parish. **RISE's members all attend church in St. James Parish** and RISE begins and ends each of its meetings with prayer. Its headquarters are in the 5th District of St. James, its leaders have lived in the 5th District all their lives, and many of its members live in the 4th and

5th Districts. **Its leaders and members** have been exposed to heightened levels of carcinogens, and a dramatically increased risk of cancer and other diseases attendant to the heavy industrial sitings in those Districts as a result of Defendants' discriminatory land use decisions."

- "681. Defendants have devised, implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of race-based land use that is a relic or vestige of the plantation and slavery system that existed in St. James Parish, and continues a severe form of discrimination **against Plaintiffs and their members** or congregants as well as other residents, churches, and associations in the 4th and 5th Districts of St. James Parish, which have majority Black populations, many of whom are descendants of people once enslaved on the plantations in St. James Parish.

- "686. The discriminatory land use system has also resulted in **diminution in the value of property owned by Plaintiffs, <u>their members</u> and congregants**, some of which has been in their families since shortly after emancipation, and by other Black residents, churches, and associations in the 4th and 5th Districts of St. James Parish."

Doc. 104 (**emphasis** added).

When suit was first filed, St. James Parish filed a Rule 12(b) Motion to Dismiss asserting Plaintiffs lacked standing to bring their claims. Doc. 33. In opposition, Plaintiffs asserted:

- "Plaintiffs here actually reside in the 4th and 5th Districts and thus directly suffer discrimination and other injuries from Defendants' land use policies; . . . Compl. ¶¶ 23-25." Doc. 43, p. 9.

- "as another basis for Claim IV, Plaintiff Inclusive Louisiana members are injured because the Land Use Plan imposes unique restrictions on their ability to subdivide and sell their properties, which are located in the majority-Black 4th District and designated as "Residential/Future Industrial," Compl. ¶¶ 23, 289" Doc. 43, p. 10.

- "Plaintiffs are also injured because Defendants' discriminatory steering of industry into their communities has harmed their properties, including by depreciating their property values. Compl. ¶¶ 24, 259, 338-39." Doc. 43, p. 12.

Plaintiffs stated: "the Complaint does in fact contain allegations that Parish conduct resulted in a diminution in property values. Compl., ¶¶ 15, 23-25, 168, 249-59, 559." Doc. 43, p. 39. In doing so, Plaintiffs even contrasted its allegations with case law it deemed inapplicable because "the Court determined there was insufficient evidence of the asserted diminished property values adduced after a full *trial* on the merits." Doc. 43, p. 39. In other words, Plaintiffs recognize that *at trial*, evidence of diminished property values is necessary. St. James Parish is conducting

discovery on this very issue.

Based on Plaintiffs' assertions, this Court found standing based on Plaintiffs' allegations of injuries to its members, stating:

> The associations here assert that because the Land Use Plan allowed Defendants to steer industry into their communities, the value of Plaintiffs' and their members' property depreciated. These claims, . . . , satisfy the injury-in-fact requirement for standing at the motion to dismiss stage. Plaintiffs need not provide evidence of the diminished property values, **<u>yet</u>**.
>
> * * *
>
> Plaintiffs have alleged a significant connection between their decreased property values and Defendants' alleged conduct. For example, the amended complaint alleges that two of Plaintiff Inclusive Louisiana's members, Barbara Washington and Myrtle Felton, live within one mile of the Nucor Steel facility in St. James Parish's 4th District, and both of their homes' property values have been affected such that they cannot afford to relocate. (Rec. Doc. 29, at 73). Plaintiffs also state that the land use system places limitations on the ability of some members of Plaintiff Inclusive Louisiana to sell, hold, and convey their property. *Id.* at 144. Therefore, the Court finds that Inclusive Louisiana has satisfied the causation requirement (for representational standing) **by alleging a connection between Defendant's conduct and its members' injuries**.

Doc. 62, p. 12, 16 (**emphasis** added**)**. In finding this Court incorrectly held Plaintiffs did not have standing on certain issues, the Fifth Circuit stated: "In the Organizations' very first claim, they allege that '[t]he discriminatory land use system has also resulted in diminution in the value of property owned by [all appellants], their members and congregants.'" Doc. 70, p. 20. Therefore, Plaintiffs' ability to bring its claims in this matter are based on its allegations regarding the diminished property value *of its members.*

The Parish cannot properly defend these allegations without information regarding who are the members and what property they own in the Parish. Depriving the Parish of this information that is directly relevant deprives the Parish of its constitutional right to properly defend the allegations levied.

RISE and Inclusive have continued to refuse to provide the list of their members and their

corresponding property because they allege they have identified at least one member and that member's property for the sake of these claims. However, this cherry picking of information is *highly prejudicial* to St. James Parish. If Plaintiffs allege the Parish's actions are decreasing the property value of its members, the Parish is entitled to conduct discovery on this issue for *all* Plaintiffs' members, not just the members hand selected by Plaintiffs. In other words, the Parish cannot confirm the allegation without the opportunity to determine whether the property values of Plaintiffs' members has, in fact, decreased. It is prejudicial to block the Parish from independent discovery and verification as to other members where the facts may not be as favorable.

**2. <u>Plaintiffs' boilerplate "overbroad and unduly burdensome" objections lack merit and are insufficient.</u>**

The Federal Rules require interrogatories to be answered "separately and fully in writing under oath" and require objections to be stated with specificity. Fed. R. Civ. P. 33(b)(3)-(4). A party resisting discovery "must show specifically how […] each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). Merely asserting that an interrogatory is "overly broad, burdensome, oppressive and irrelevant" is inadequate, and unsupported recitations of expense and burdensomeness are merely conclusory. *Id.* An objection is impermissibly boilerplate when it merely states a legal ground without specifying how the request is deficient and how compliance would harm the responding party. *Lee v. Aramark Facility Services, LLC,* No. 20-2049, 2021 WL 6070448, at *3-4 (E.D. La. July 15, 2021).

Here, Plaintiffs offer no particularized explanation or evidence demonstrating the burden associated with answering these interrogatories. Plaintiffs do not address the Rule 26(b)(1) factors or provide evidence concerning the time, expense, or difficulty associated with answering the interrogatories. These boilerplate objections should be wholly disregarded.

**3. Disclosure of the names of individuals who are not parties themselves to this action, but parties through the association, is proper.**

Courts in the Fifth Circuit have squarely rejected the proposition that a discovery request is objectionable simply because it seeks information about non-parties. This is not an independent basis for a failure to respond to discovery requests. Rather, the analysis on such an objection is how the requested information is relevant to the lawsuit or reasonably calculated to lead to the discovery of admissible evidence. *See Thomas v. Louisiana Farm Bureau Ins. Co.*, No. CV 07-960, 2010 WL 11538360, at *2 (M.D. La. Sept. 8, 2010). As outlined above, these requests are directly related to Plaintiffs' claims, alleged injuries, and standing.

Also, the members are not "non-parties," as they are being represented by Plaintiffs in Plaintiffs' *associational capacity*. Plaintiffs' standing is based on its allegations of injures *to its members,* not directly to the associations themselves.

**4. Plaintiffs' argument regarding freedom of speech is not applicable.**

Plaintiffs rely on the *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) decision for their objection to providing the information of their members and their member's property. The *NAACP* decision does not support Plaintiffs' objections and does not provide a bar to discovery directly related to Plaintiffs' allegations.

In *NAACP*, Alabama demanded the organization's complete membership list even though the identities of its rank-and-file members had little bearing on the underlying dispute of whether the organization was conducting intrastate business. *Id*. at 464-66. The NAACP also presented an uncontroverted evidentiary showing that prior disclosure had exposed its members to economic reprisals, loss of employment, and threats of physical coercion. *Id.* at 462-66. Based on that record, the Supreme Court concluded that disclosure of the complete membership list would substantially restrain the members' freedom of association. *Id.*

Here, unlike the membership list sought in *NAACP*, the requested residence and property information has a direct relationship to allegations Plaintiffs placed at issue. Plaintiffs allege that its members reside or own property in the Parish and relies upon those connections to support their asserted claims, injuries, and standing. As such, the requested information should be provided.

Also, a party asserting a First Amendment associational privilege must make a prima facie showing that compelled disclosure will result in "harassment, membership withdrawal, or discouragement of new members," objectively demonstrating a chilling effect on associational rights. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010).[1] The privilege is not presumed merely because discovery concerns an advocacy organization. See *In re Motor Fuel Temperature Sales Practices Litigation*, 707 F. Supp. 2d 1145, 1152-59 (D. Kan. 2010). Instead, the objecting party must show an objectively reasonable probability that the particular disclosure will chill associational rights. *Id*. at 1153. Unsupported rhetoric and speculation concerning possible membership withdrawal or reprisal are not substitutes for evidence. *Id*. at 1159-60.

Plaintiffs have not made a showing demonstrating that the disclosures sought by these requests would subject its members to threats, reprisals, or harassment, or prompt member withdrawal from the organization. Plaintiffs' generalized prediction that disclosure "would chill" speech and association differs materially from *NAACP*, where the organization presented an uncontroverted record of severe past reprisals, 357 U.S. at 462-63.

**5. Plaintiffs must provide information known or reasonably available.**

Plaintiffs' assertion that information concerning its members or third parties is outside its "possession, custody, or control" provides no separate basis for withholding that information. Rule

[1] *Perry* limited its holding to private, internal communications among persons responsible for formulating campaign strategy and messaging. *Id*. at 1165 n.12. The court distinguished external communications used for persuasion, recruitment, motivation, or solicitation, explaining those communications were not privileged under its holding. *Id*.

33 requires a party to provide responsive information known or reasonably available to it after conducting a reasonable inquiry. See Fed. R. Civ. P. 33(b)(1), (3). "A party responding to discovery must produce responsive documents not only that are within that party's actual, physical possession but also documents that are within the party's constructive possession, custody or control." *Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 67 (E.D. La. 2024), *review denied sub nom. Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore Pte Ltd*, No. CV 22-4561, 2024 WL 5086077 (E.D. La. Dec. 12, 2024). "A party has 'control' over documents or materials that it has the legal right to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty." *Id.* A party responding to an interrogatory must review the sources of information reasonably available to it and disclose the responsive facts located through that inquiry. *Lee*, 2021 WL 6070448, at *3 n.16.

Accordingly, Plaintiffs must review their records and consult the persons whose experiences Plaintiffs relied upon when preparing the Complaint. Surely, Plaintiffs possess a membership roster and membership applications that would show at a minimum the residences of their members. If information remains unknown after a reasonable inquiry, Plaintiffs must state that fact under oath. They cannot rely on factual allegations concerning its members and then disclaim all knowledge of the identities or circumstances underlying those allegations.

**B. The Parish is Entitled to Information to Substantiate Plaintiffs' Allegations on Health Impacts (RISE Int. 10, 20, RFP 3; Inclusive Int. 5, 6, 9, RFP 3, 4, 5; Mount Triumph Int. 5, 8, RFP 3)**

Plaintiffs allege that the Parish's actions have resulted in an increased health risk to its members. Plaintiffs stated: "Plaintiffs' members are exposed to pollution from industry steered by Defendants into their Districts. Compl. ¶¶ 23-25, 190-93, 201-03, 251-55, 263, 442-60." and "Yet Plaintiffs also allege that the heavy industry in their communities causes severe disease, Compl.



5684944.v2

¶¶ 433-60, including to members and their families, ¶¶ 461-66." Doc. 43, p. 11.

Several of the Parish's discovery requests seek the identities of their members alleged to have suffered health consequences as a result of the Parish's actions, and seek the corresponding medical records for the specifically alleged health issues. Plaintiffs objected to the requests and have, to date, refused to answer the interrogatories, as follows:

**[RISE] INTERROGATORY NO. 10:**
Please identify the members of RISE you allege were exposed to "heightened levels of carcinogens," identifying all health diagnoses of those members you allege is the result of the pollutants and all deceased family members, as alleged in Paragraph 25 of the Complaint.

**[RISE] RESPONSE TO INTERROGATORY NO. 10**
Plaintiff RISE St. James objects to this interrogatory because it mischaracterizes the allegations in Paragraph 25 of their complaint. Paragraph 25 of their complaint does not allege that members of RISE suffer health diagnoses. Paragraph 25 alleges, in pertinent part, that RISE's "leaders and members have been exposed to heightened levels of carcinogens, and a dramatically *increased risk of cancer and other diseases* attendant to the heavy industrial sitings in those Districts as a result of Defendants' discriminatory land use decisions." (emphasis added).

RISE St. James further objects to this interrogatory to the extent that it requires Plaintiffs to disclose the identities of all of its membership, because it is overbroad, unduly burdensome, and will result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Disclosure of the identities and medical records of members and nonparties would chill or violate First Amendment speech and associational interests by exposing those members and third parties to intrusive government scrutiny, and thereby also interfere with RISE's ability to speak freely to members of their families and their broader community about their health and well-being. Moreover, RISE St. James objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) because it seeks highly sensitive medical and death-related information relating to nonparties, as the requested information implicates substantial privacy interests and offers no probative value as Plaintiffs' claims are based on publicly available data equally available to Defendant and not based on an individual illness or medical records and such information is therefore not relevant. Nor is this information within RISE St. James' possession, custody, control, or reasonably calculated to lead to the discovery of admissible evidence.

Subject to, and without waiving any objections, Plaintiff asserts that because of the significant pollution in the ambient air in the Fourth and Fifth Districts of St. James Parish, all members of RISE living, working or spending substantial time in those districts, have likely been exposed to heightened levels of carcinogens, including RISE St. James founder Sharon Lavigne, who has lived in St. James Parish her whole

life, and her daughters Shamell and Shamyra Lavigne, who grew up in the Parish and frequently spend time there.

**[RISE] INTERROGATORY NO. 20:**
Please identify the Ms. Lavigne's "many friends and neighbors with cancer," listing their location of residence and timeframe of residence, as alleged in Paragraph 587 of the Complaint.

**[RISE] RESPONSE TO INTERROGATORY NO. 20:**
Plaintiff RISE St. James objects to this interrogatory on the grounds that it seeks information from Plaintiffs that is in the possession of third parties, not the Plaintiff. Plaintiff RISE St. James further objects that compelled disclosure of the identities of members and nonparties who communicated sensitive information regarding illness, cancer, and death within the community the Plaintiff would substantially burden protected First Amendment associational interests by exposing those third parties to intrusive government scrutiny, and thereby also interfere with RISE St. James's ability to speak freely to members of its community about their health and well-being. Moreover, RISE St. James objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) because it seeks highly sensitive medical and death-related information from nonparties, as the requested information implicates substantial privacy interests and offers no probative value as Plaintiffs' claims are based on publicly available data equally available to Defendant and not based on an individual illness or medical records and such information is therefore not relevant. Nor is this information within RISE St. James's possession, custody, control, or reasonably calculated to lead to the discovery of admissible evidence.

**[RISE] REQUEST FOR PRODUCTION NO. 3:**
Please produce all medical records for the members of RISE you identified as suffering health diagnoses, as alleged in Paragraph 25 of the Complaint, in Interrogatory No. 10.

**[RISE] RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**
Plaintiff RISE St. James objects to this request for production because it mischaracterizes the allegations in Paragraph 25 of their complaint. Paragraph 25 of their complaint does not allege that members of RISE suffer health diagnoses. Paragraph 25 alleges, in pertinent part, that RISE's "leaders and members have been exposed to heightened levels of carcinogens, and a dramatically increased risk of cancer and other diseases attendant to the heavy industrial sitings in those Districts as a result of Defendants' discriminatory land use decisions."

**[INCLUSIVE] INTERROGATORY NO. 5:**
Please identify all approximately 50 people Barabar Washington "reports that she personally knows" "who had died of cancer," listing their location of residence and timeframe of residence, as alleged in Paragraph 10 and 585 of the Complaint.

**[INCLUSIVE] RESPONSE TO INTERROGATORY NO. 5:**
Plaintiff Inclusive Louisiana objects to this interrogatory because the disclosure of the identities of nonparties who communicated sensitive information regarding illness, cancer, and death to Ms. Washington, a community advocate and founder of Inclusive

Louisiana, would chill or violate First Amendment speech and associational interests by exposing those third parties to intrusive government scrutiny, and thereby also interfere with Inclusive Louisiana's ability to speak freely to members of its community about their health and well-being. Moreover, Inclusive Louisiana objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) because it seeks highly sensitive medical and death-related information from nonparties that implicates substantial privacy interests, and the information offers no probative value. Plaintiffs' claims are based on publicly available data equally available to Defendant and not based on an individual illness or medical records, and such information is therefore not relevant. Nor is this information within Inclusive Louisiana's possession, custody, control, or reasonably calculated to lead to the discovery of admissible evidence.

**[INCLUSIVE] INTERROGATORY NO. 6:**
Please identify the members of Ms. Felton and Ms. Washington's immediate families with cancer, listing their location of residence and timeframe of residence, as alleged in paragraph 263, and 583 of the Complaint.

**[INCLUSIVE] RESPONSE TO INTERROGATORY NO. 6:**
Plaintiff Inclusive Louisiana objects to this interrogatory because the disclosure of the medical records and identities of nonparties would chill or violate First Amendment speech and associational interests by exposing those nonparties to intrusive government scrutiny, and thereby also interfere with Inclusive Louisiana's ability to speak freely to members of their families, and their broader community, about their health and well-being. Moreover, Inclusive Louisiana objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) because it seeks highly sensitive medical and death-related information relating to nonparties, and the requested information implicates substantial privacy interests and offers no probative value. Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical records and such information is therefore not relevant. Nor is this information within Inclusive Louisiana's possession, custody, control or reasonably calculated to lead to the discovery of admissible evidence.

**[INCLUSIVE] INTERROGATORY NO. 9:**
Please identify the members of Inclusive Louisiana you allege were exposed to "heightened levels of carcinogens and other harmful pollutants," identifying all health diagnoses of those members you allege is the result of the pollutants and all deceased family members, as alleged in Paragraphs 23, 251, and 263 of the Complaint.

**[INCLUSIVE] RESPONSE TO INTERROGATORY NO. 9:**
Inclusive Louisiana objects to this interrogatory to the extent that it requires it to disclose the identities of all of its membership, because it is overbroad, unduly burdensome, and will result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama,* 357 U.S. 449, 462 (1958). Disclosure of the identities of members and nonparties who communicated sensitive information regarding illness, cancer, and death to Plaintiff Inclusive Louisiana, an advocacy organization, would chill or violate First Amendment

speech and associational interests by exposing those members and third parties to intrusive government scrutiny, and thereby also interfere with Inclusive Louisiana's ability to speak freely to members of its community about their health and well-being. Moreover, Inclusive Louisiana objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) because it seeks highly sensitive medical and death-related information from nonparties, as the requested information implicates substantial privacy interests and offers no probative value. Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical records, and such information is therefore not relevant. Nor is this information within Inclusive Louisiana's possession, custody, or control or reasonably calculated to lead to the discovery of admissible evidence.

As to the health diagnoses of Ms. Barbara Washington and Ms. Gail LeBoeuf, Plaintiff Inclusive Louisiana objects to this interrogatory to the extent that it misstates the allegations in the Complaint, since paragraph 23 alleges that Inclusive Louisiana founding members "have been exposed to heightened levels of carcinogens and other harmful pollutants and *a dramatically increased risk* of cancer and other diseases attendant to the heavy industrial sitings" (emphasis added). Inclusive Louisiana also objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) as Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical record and such information is therefore not relevant. Inclusive Louisiana also objects because it calls for premature disclosure of expert opinion on the relationship between pollution and health risks or outcomes. Subject to, and without waiving any objections, Plaintiff Inclusive Louisiana responds:

Because of the significant pollution in the ambient air in the Fourth and Fifth Districts of St. James Parish, all members of Inclusive Louisiana living, working or spending substantial time in those districts, have been exposed to heightened levels of carcinogens, including Inclusive Louisiana co-founders Barbara Washington, who has lived in the Fourth District in St. James Parish her whole life, and Ms. Gail LeBoeuf who lived in the Fourth District until 1999, when she moved to Gramercy.

The health diagnosis alleged in paragraph 23 is that Ms. Gail LeBoeuf has been diagnosed with cholangiocarcinoma (HCC) and biliary obstruction (HCC).

The health diagnosis referenced to in paragraph 251 and 263 is that Ms. Barbara Washington has suffered from a chronic cough and required the frequent use of an inhaler to aid in breathing.

**[INCLUSIVE] REQUEST FOR PRODUCTION NO. 3:**
Please produce the full medical file and medical records for Gail LeBoeuf establishing the cancer discussed in Paragraphs 10 and 584 of the Complaint.

**[INCLUSIVE] RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**
Plaintiff Inclusive Louisiana objects to this request because it seeks highly-sensitive information from Ms. LeBoeuf that is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1). More specifically, Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical records, and such information is therefore not relevant. Disclosure of Ms. LeBoeuf's medical file and medical records would violate her right to privacy and physician-patient privilege.

**[INCLUSIVE] REQUEST FOR PRODUCTION NO. 4:**
Please produce the full medical file and medical records for Ms. Felton and Ms. Washington establishing the "impacts of Nucor's emissions" and "respiratory ailments" discussed in Paragraphs 251, 263, and 585 of the Complaint.

**[INCLUSIVE] RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**
Plaintiff Inclusive Louisiana objects to this request because it seeks highly sensitive information from a third party, Ms. Felton, who is no longer a member of Inclusive Louisiana and those documents are not within Inclusive Louisiana's custody, possession, or control.

Plaintiff Inclusive Louisiana also objects to this request because it seeks highly sensitive information from Ms. Washington that is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1). More specifically, Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical records, and such information is therefore not relevant. Disclosure of Ms. Washington's medical file and medical records would violate her right to privacy and physician-patient privilege.

**[INCLUSIVE] REQUEST FOR PRODUCTION NO. 5:**
Please produce all medical records for the members of Inclusive Louisiana you identified as suffering health diagnoses, as alleged in Paragraph 23 of the Complaint, in Interrogatory No.9.

**[INCLUSIVE] RESPONSE TO REQUEST FOR PRODUCTION NO. 5**
Plaintiff Inclusive Louisiana objects to this request for the reasons described in response to Interrogatory No. 9, and Requests for Production 3 and 4.

**[Mt. Triumph] INTERROGATORY NO. 5:**
Please identify the five cancer victims buried by Pastor Harry Joseph in 2017, listing their location of residence and timeframe of residence, as alleged in Paragraph 10 and 586 of the Complaint.

**[Mt. Triumph] RESPONSE TO INTERROGATORY NO. 5:**
Plaintiff Mount Triumph Baptist Church objects to this interrogatory because the disclosure of the identities of nonparties who communicated sensitive information regarding illness, cancer, and death to Pastor Joseph, a clergyman acting in his spiritual capacity, would violate clergy-communicant privilege. The disclosure would also chill or violate First Amendment free exercise and establishment clauses as well as associational interests by

**[Mt. Triumph] INTERROGATORY NO. 8:**
Please identify the members of Mount Triumph you allege were exposed to "heightened levels of carcinogens and other harmful pollutants," identifying all health diagnoses of those members you allege is the result of the pollutants and all deceased family members, as alleged in Paragraph 24 of the Complaint.

**[Mt. Triumph] RESPONSE TO INTERROGATORY NO. 8:**
Plaintiff Mount Triumph Baptist Church objects to this interrogatory because the

disclosure of the identities of nonparties who communicated sensitive information regarding illness, cancer, and death to Pastor Joseph, a clergyman acting in his spiritual capacity, would violate clergy-communicant privilege. The disclosure of the names of individuals who are not party to this action would also and chill or violate First Amendment free exercise and establishment clauses as well as associational interests by exposing those third parties to intrusive government scrutiny, and thereby also interfering with Pastor Joseph's ability to speak freely to his congregants and members of his community about their health and well-being, and provide them with pastoral care. *Whole Woman's Health v. Smith,* 896 F.3d 362, 371 (5th Cir. 2018); *NAACP v. Alabama,* 357 U.S. 449, 462 (1958). Moreover, Mount Triumph Baptist Church objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) because it seeks highly sensitive medical and death-related information from nonparties, as the requested information implicates substantial privacy interests and offers no probative value. Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical records, and such information is therefore not relevant. Nor is this information within Mount Triumph Baptist Church's possession, custody, or control or reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving any objections, Plaintiff Mount Triumph Baptist Church responds:

Because of the significant pollution in the ambient air in the Fourth and Fifth Districts of St. James Parish, all members of Mount Triumph Baptist Church living, working or spending substantial time in those districts, have been exposed to heightened levels of carcinogens, including Pastor Harry Joseph, who lived in the Fifth District between 2011-2024 and has worked as Pastor of Mount Triumph Baptist Church since 2010.

**[MT. Triumph] REQUEST FOR PRODUCTION NO. 3:**
Please produce all medical records for the members of Mount Triumph Baptist Church you identified as suffering health diagnoses, as alleged in Paragraph 24 of the Complaint, in Interrogatory No. 8.

[**MT. Triumph] RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**
Plaintiff Mount Triumph Baptist Church objects to this request for the reasons described in response to Interrogatory Nos. 5 and 8, and because it seeks highly-sensitive information that is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1). More specifically, Plaintiffs' claims are based on publicly available data equally available to Defendant and not based on an individual illness or medical records, and such information is therefore not relevant. Medical files and medical records of the members of Mount Triumph Baptist Church are not in Mount Triumph Baptist Church's custody, and in any case their disclosure would violate their rights to privacy and physician-patient privilege.

Exs. 4, 5, 6. Setting aside the repetitive objections addressed above (identity of members, boiler plate assertion of overbreadth, inapplicable Free Speech assertion, lack of control, and disclosure of non-parties), the objections can be summarized as follows:

1. The requests would "interfere with RISE's ability to speak freely to members of their families and their broader community about their health and well-being."
2. The request is disproportionate to the needs of the case because it seeks highly sensitive medical and death-related information relating to nonparties.
3. Plaintiffs' claims are based on publicly available data and not based on an individual illness or medical records and such information is therefore not relevant.

**1. <u>The requests do not interfere with Plaintiffs' ability to speak freely.</u>**

The Parish's requests do not interfere with Plaintiffs ability to speak freely to members of their families and their broader community about their health and well-being. Rather, if its members do not want to speak to Plaintiffs about these matters because Plaintiffs then *put them in publicly filed federal pleadings,* the chilling effect is Plaintiffs' pleading decisions, not the Parish's constitutional right to investigate the veracity of Plaintiffs allegations. Plaintiffs cannot make assertions in a Complaint and present them as fact, then utterly fail to provide information in discovery to allow the Parish to test the veracity of those allegations.

**2. <u>The request seeks information put at issue by *Plaintiffs'* allegations, making the requests directly proportional to the needs of the case.</u>**

Although some of the requests implicate sensitive personal information, that concern was waived by Plaintiffs when they put forth allegations in their Complaint detailing these sensitive topics. It was Plaintiffs' detailed and explicit allegations in the Complaint that makes these requests proportional to the needs of the case.

Sensitive medical and personal information is not immune from discovery when it is relevant to claims affirmatively placed at issue. See *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470-74 (N.D. Tex. 2005). *Merrill* recognized that the identities of healthcare providers, dates of treatment, and the nature of treatment may be discoverable when relevant to an asserted injury. *Id.* at 470-71. An interrogatory also may inquire into the factual or evidentiary basis of a party's allegations and require disclosure of the persons possessing the supporting facts. *B. & S. Drilling*

*Co. v. Halliburton Oil Well Cementing Co.*, 24 F.R.D. 1, 3–6 (S.D. Tex. 1959).

Here, the Parish's request are directly related to Plaintiffs' allegations. For example, [RISE] Interrogatory No. 10 addresses Plaintiffs' allegations that its members "have been exposed to heightened levels of carcinogens" and face "a dramatically increased risk of cancer and other diseases" because of the Parish's land-use decisions. [RISE] Interrogatory No. 20 asks RISE to identify the "many friends and neighbors with cancer" in Complaint Paragraph 587. Plaintiffs affirmatively invoked these individuals and their diagnoses as factual support for their claims.

As to the requests for specific medical records, Plaintiffs directly placed these individuals' health (Ms. Lavigne, Gail LeBoeuf, Ms. Felton, and Ms. Washington) at issue by including allegations regarding their health and alleging it resulted from the Parish's actions. But, the Parish does not seek every member's complete medical file. [RISE] Interrogatory No. 10 and [Mt. Triumph] Interrogatory No. 8 asks Plaintiffs to identify the health diagnoses and deaths that Plaintiffs attribute to the alleged pollutants. If Plaintiffs do not rely on an individual diagnosis, illness, or death, they should state that fact unequivocally under oath and remove these allegations. If it does rely on such information, it must identify the member or other individual and provide the responsive information known or reasonably available to it.

Finally, at the discovery stage, protective orders may properly protect legitimate privacy interests. *Conners v. Pohlman*, No. 15-101, 2021 WL 4255651, at *3-4 (E.D. La. June 23, 2021). Any legitimate privacy concern can therefore be addressed through a confidentiality designation, limited access, redaction in public filings, or an appropriate protective order.

The Parish offered to enter into a stipulated protective order for the purpose of receiving the medical files put at issue by Plaintiffs' allegations. Plaintiffs still refused to adequately respond to the discovery requests.

**3. Plaintiffs' standing is based on its individual members, not "publicly available data."**

Plaintiffs' generalized objections also disregard the nature of its claims. Plaintiffs cannot avoid discovery merely by emphasizing that, for example, Paragraph 25 alleges exposure and increased risk rather than an existing diagnosis. That distinction may limit the injury Plaintiffs allege, but it does not make member-specific exposure information irrelevant. Nor does Plaintiffs' assertion that all members who live, work, or spend substantial time in the affected districts were "likely" exposed eliminate the need for member-specific information. The Parish is entitled to discover where the members upon whom Plaintiffs rely lived, worked, or spent substantial time in the Parish; the relevant periods; the nature of their alleged exposure; and the increased health risks or injuries Plaintiffs attribute to that exposure.

Associational standing cannot rest on the statistical probability that some unidentified member has suffered an unidentified injury. *Summers v. Earth Island Institute*, 555 U.S. 488, 497-98 (2009). Rather, the organization must make specific allegations establishing that at least one identified member has suffered or will suffer harm; a court cannot rely solely on an organization's unverified description of its membership. *Id*. at 498-499. *Summers* rejects organizational standing based on the statistical probability of injuries to unidentified members. 555 U.S. at 497-499.

The Fifth Circuit similarly does not recognize probabilistic standing based on a nonparticularized increased risk that equally affects the general public. *Shrimpers & Fishermen of the RGV v. Texas Commission on Environmental Quality*, 968 F.3d 419, 424 (5th Cir. 2020). In *Shrimpers*,[2] the organizations identified members who lived, worked, drove, or recreated near a

[2] Likewise, *Deep S. Ctr. for Env't Justice v. U.S. Env't Prot. Agency*, rejected theories of future health and environmental injury resting on a multistep chain of assumptions concerning future industrial activity, a subsequent mishap, and eventual harm to a member's person, property, or environmental interests. 138 F.4th 310, 322–26 (5th Cir. 2025).

proposed industrial facility, but they failed to identify the specific health risks those members expected to suffer or provide evidence showing the extent to which expected emissions would increase those risks. *Id*. at 425. The Fifth Circuit, therefore, held that the organizations had not established injury in fact. *Id*. Even a particularized increased risk must be supported by evidence of certainly impending harm or a substantial risk of harm. *Id*. at 424-425.

The requested information remains relevant. For example, Paragraph 587 does not rely solely on aggregate cancer statistics; it invokes particular cancer cases among Ms. Lavigne's friends and neighbors. Plaintiffs cannot rely on those individual cases to support an inference of localized harm while contending that the same cases have no probative value when the Parish seeks to substantiate them.

## III. <u>RELIEF REQUESTED</u>

St. James Parish respectfully requests that this Honorable Court issue an order compelling Plaintiffs to provide complete responses to RISE St. James: Interrogatories No. 8, 10, 11, 20; RFP 3, 5; Inclusive Louisiana: Interrogatories No. 5, 6, 7, 9, 10; RFP 3, 4, 5, 12; and Mount Triumph Baptist Church: Interrogatory No. 5, 8, 9; RFP 3, 4. Where Plaintiffs refuse to provide information to substantiate their allegations, Plaintiffs should be ordered to remove those allegations and be prevented from presenting the alleged facts at trial.

RESPECTFULLY SUBMITTED,
By Attorneys:

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*/s/ Danielle L. Borel*
John King, La. Bar No. 17004
John.King@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
Carroll.Devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
Danielle.Borel@bswllp.com

*Attorneys for St. James Parish*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | * * * * | **CIVIL ACTION NO.: 2:23-cv-00987** |
| VERSUS | * * | JUDGE: CARL J. BARBIER |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | * * * | MAG. JUDGE JANIS VAN MEERVELD |

**F.R.C.P. 37 CERTIFICATE**

I hereby certify that, in an effort to obtain the discovery at issue without court action, I have conferred in good faith with counsel for Plaintiffs. Detailed communications were exchanged on July 2, 2026, outlining the Parish's identified deficiencies. Thereafter, a discovery conference was held between counsel for all parties on July 20, 2026. To date, the deficiencies discussed in this Motion remain uncorrected.

Baton Rouge, Louisiana, this 24th day of September, 2026.

*/s/ Danielle L. Borel*
Danielle L. Borel



5684944.v2