**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members<br>*Plaintiffs*,<br><br>vs.<br><br>ST. JAMES PARISH,<br>*Defendant.* | Civil Action No. 2:23-cv-00987<br>Judge Carl Barbier<br>Magistrate Judge Janis van Meerveld |

**PLAINTIFF INCLUSIVE LOUISIANA'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION**

Pursuant to Rules 26, 33, and 36 of the Federal Rules of Civil Procedure, Plaintiff Inclusive Louisiana objects and responds to Defendant's First Set of Interrogatories, Requests for Production, and Requests for Admission as follows:

**INTRODUCTION**

1. The following responses are given without prejudice to Inclusive Louisiana's right to supplement its responses.

2. As agreed upon with the Defendant, Plaintiff Inclusive Louisiana intends to complete its responses to Defendant's Interrogatories, Document Requests, and Requests for Admission by June 22.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**
Please identify the name and address of each person who provided information used in responding to these Interrogatories, and describe the information provided by each such person.

EXHIBIT
5
*in globo*



EXHIBIT 5A

**RESPONSE TO INTERROGATORY NO. 1:**

1. **Ms. Barbara Washington**, co-founder and co-Executive Director of Inclusive Louisiana, resides at 8191 Pleasant Hill St., Convent, LA 70723. She provided information related to her health, her ancestry, her property and Inclusive Louisiana's property, her knowledge of burial sites of enslaved people in the River Parishes, and Inclusive Louisiana's attendance at Parish government meetings and public statements to the Parish.
2. **Ms. Gail LeBoeuf**, co-founder and co-Executive Director of Inclusive Louisiana, resides at 758 North Ezidore St., Gramercy, LA 70052. She provided information related to her health, her ancestry, her property and Inclusive Louisiana's property, her knowledge of burial sites of enslaved people in the River Parishes, and Inclusive Louisiana's attendance at Parish government meetings and public statements to the Parish.

**INTERROGATORY NO. 2:**
Please identify any and all persons known to you who may have any information that may be relevant to this matter. For each, provide their name, title, employer, last known address and telephone number, and a brief description of their knowledge, and whether you intend to call those persons as witnesses at trial of this matter.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks premature disclosure of who Inclusive Louisiana intends to call as witnesses at trial. Without waiving its objections, Inclusive Louisiana identifies the following:

1. Ms. Barbara Washington: See response to Interrogatory No. 1.
2. Ms. Gail LeBoeuf: See response to Interrogatory No. 1.
3. Sharon Lavigne, founder of RISE St. James. Can be contacted through counsel for RISE St. James.
4. Shamell Lavigne, Chief Operating Officer of RISE St. James. Can be contacted through counsel for RISE St. James.



EXHIBIT 5A

5. Shamyra Lavigne, Executive Assistant of RISE St. James. Can be contacted through counsel for RISE St. James.

6. Pastor Harry Joseph, Mount Triumph Baptist Church. Can be contacted through undersigned counsel.

7. Robert Taylor, founder of Concerned Citizens of St. John the Baptist Parish. Grandparents buried in Lauderdale cemetery. Can be contacted through counsel for RISE St. James at Tulane Environmental Law Clinic.

8. Current and former members of the Parish Government, including the Council and Planning Commission, have information about land use in the Parish, including the discriminatory land use system, and the development, introduction, passage, and amendment of the St. James Parish Land Use Plan and individual land use approvals, and economic incentives, bond issuances, and tax exemptions.

9. Current and former members of the South Central Planning and Development Commission may also have information related to land use in the Parish, including the discriminatory land use system, and the development, introduction, passage, and amendment of the St. James Parish Land Use Plan.

10. Current and former St. James Parish tax assessors may have information about tax payments from and exemptions for companies operating heavy industrial facilities in the Parish.

11. Current and former officials working within the United States Environmental Protection Agency have information about the health risks associated with the chemicals and pollutants emitted by heavy industrial facilities operating within the Parish, as well as documented violations of the Clean Air Act, and other applicable laws intended to ensure environmental protection.

12. Current and former officials working within the Louisiana Department of Environmental Quality have information about chemicals and other pollutants emitted within the Parish by heavy industrial facilities operating within the Parish, as well as violations of permitted emissions limits, the Clean Air Act and other applicable state and federal laws, as well as spills, releases, and accidents at such facilities, and water quality in area water bodies.

13. Former officials with the Louisiana Department of Environmental Quality have information about the agency's efforts to permit and assist companies seeking to locate in St. James Parish, including but not limited to: Shintech, Nucor, and Formosa, as well as the agency's lack of authority over land use in parishes and municipalities.

14. Current and former officials at the U.S. Center for Disease Control and Prevention may have information on the health effects of environmental pollution, including officials at

the National Institute for Occupational Safety and Health (NIOSH), the Agency for Toxic Substances and Disease Registry (ATSDR), and the National Center for Environmental Health (NCEH).

15. Current and former officials at the U.S. Occupational Safety and Health Administration (OSHA) may have information about the health effects of chemicals and other pollutants on workers in heavy industrial facilities operating in the Parish, as well as workplace injuries, illnesses, as a result of spills, leaks, and industrial accidents.

16. Current and former officials at the Louisiana Department of Health and Hospitals may have information related to the health of people living in highly industrialized areas in the Parish.

17. Current and former officials at the U.S. Advisory Council on Historic Preservation have information about historic properties and cultural resources in St. James Parish, including properties that are included on the National Register of Historic Places and others that have been deemed eligible for listing.

18. Current and former officials at the National Park Service have information about properties in the Parish that have been listed on the National Register of Historic Place and other properties and resources deemed eligible.

19. Current and former officials at the Louisiana Division of Archaeology in the Louisiana Department of Historic Preservation have information about historic properties and cultural resources in the Parish, including the existence and prevalence of cemeteries where enslaved people were buried, as well as cemeteries that have been damaged or destroyed through industrial development.

20. Current and former officials at the United States Army Corps of Engineers have information about historic resources and properties in the Parish, and facilities that have sought and been granted permits to operate in the Parish through that agency.

21. Current and former officials at the U.S. Census Bureau have information about the population and demographics in St. James Parish, as well as voter registration.

22. Current and former officials of the National Archives have data and information about the Civil War and the operations of the Freedmen's Bureau.

23. Current and former employees at the Equal Justice Initiative have information about Black residents who were lynched in Louisiana and in St. James Parish.

24. Current and former employees and/or representatives of the companies currently operating in the Parish, as well as those that once operated in the Parish, and those who obtained land use approvals but are not currently operating in the Parish, have information about the facilities' emissions, spills, leaks, and accidents, as well as communications with Parish officials, including:

1. Formosa Plastics
2. South Louisiana Methanol
3. Koch Methanol (formerly Yuhuang Chemical Industries Methanol)
4. Mosaic Faustina
5. Mosaic Uncle Sam
6. Freeport Sulphur Co.
7. Freeport McMoRan
8. America's Styrenics (AmSty)
9. Ergon
10. Nustar
11. Nucor Steel
12. Exxon
13. Air Liquide Pipeline
14. Occidental Chemical (OxyChem)
15. Wanhua
16. Atalco / Atlantic Alumina
17. Kaiser Alumina
18. Shintech
19. Syngas
20. Acadian Gas Pipelines
21. Bayou Bridge Pipeline
22. Valero Asphalt
23. Marathon
24. Shell
25. Coastal Bridge Co.
26. Millenium Galvanizing
27. Yara Inc.
28. Zen-noh Grain
29. SunCoke
30. ADM Grain
31. Air Products & Chemicals
32. LOCAP
33. Plains Marketing
34. Continental Cement
35. LA Sugar Refining
36. Rain CII

25. Current and former representatives and employees of companies which were not allowed to operate in the Parish have information about the Parish's permitting processes and communications with Parish officials, including:

1. Wolverine
2. Petroplex
3. SJ Louisiana Solar LLC

**INTERROGATORY NO. 3:**
Please state whether you or anyone acting on your behalf obtained written or oral statements, in any form, from any person regarding any of the events or happenings referred to in the Complaint and, if so, state:

(a) The name and address of the person from whom any such statement was taken;
(b) The date on which any such statement was taken;
(c) The names and addresses of the persons having custody of each statement, and;
(d) Whether each statement was written or recorded by a court reporter, stenographer or recording device.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff Inclusive Louisiana objects to this interrogatory because, to the extent it seeks a list of conversations Inclusive Louisiana members have had with members of their community, it is overbroad, unduly burdensome, disproportionate to the needs of the case, and may result in the disclosure of the names of individuals who are not party to this action, which would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama,* 357 U.S. 449, 462 (1958). Inclusive Louisiana is a community-based advocacy organization, and some of Plaintiff's members are community leaders who have lived in the St. James Parish area for decades, in some cases their whole lives. Disclosure of all conversations that a community-based advocacy organization has had with third-party community members about the problems faced by the community would chill those third parties and violate their rights, as well as Inclusive Louisiana's rights, to freedom of speech and association in violation of the First Amendment. Additionally, to the extent it seeks statements from potential expert witnesses, Inclusive Louisiana objects to this interrogatory because it seeks premature disclosure of expert opinion. Plaintiff has not decided on which, if any, expert witnesses may be called at trial; to the extent this interrogatory seeks to ascertain the identity of Plaintiffs' experts who have

been utilized to date solely as consultants, if any, it violates the work-product privilege. Finally, Inclusive Louisiana objects to this interrogatory to the extent it is seeking conversations involving its attorneys as that would violate attorney-client privilege and work-product privilege. Without waiving its objections, Inclusive Louisiana identifies the following:

(1) Louisiana Bucket Brigade and Inclusive Louisiana, *Buried at Buena Vista*, October 21, 2024, available at: https://labucketbrigade.org/wp-content/uploads/2024/10/LABB-Final-Buried-at-Buena-Vista-compressed.pdf.

(2) Since around August 31, 2022, Inclusive Louisiana has recorded Parish Council public meetings and some Planning Commission meetings. Those meetings are publicly available on the Trendz Network Mobile Application in the "Inclusive Louisiana" channel.

(3) Posts that are on Inclusive Louisiana's social media, which Inclusive Louisiana will identify and produce by June 22, 2026.

(4) Inclusive Louisiana, *The Faces and Voices of Truth*, November 11, 2021, available at: https://inclusivelouisiana.org/the-faces-and-voices-of-truth/

**INTERROGATORY NO. 4:**
Please identify all expert witnesses whom you have retained and whom you intend to call at the trial of this matter, state their opinions, and identify the facts and documents upon which those opinions are based.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks premature disclosure of expert opinion. Plaintiff has not decided on which, if any, expert witnesses may be called at trial; to the extent this interrogatory seeks to ascertain the identity of consulting experts, if any, it violates the work-product privilege.

**INTERROGATORY NO. 5:**
Please identify all approximately 50 people Barabar Washington "reports that she personally knows" "who had died of cancer," listing their location of residence and timeframe of residence, as alleged in Paragraph 10 and 585 of the Complaint.



EXHIBIT 5A

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff Inclusive Louisiana objects to this interrogatory because the disclosure of the identities of nonparties who communicated sensitive information regarding illness, cancer, and death to Ms. Washington, a community advocate and founder of Inclusive Louisiana, would chill or violate First Amendment speech and associational interests by exposing those third parties to intrusive government scrutiny, and thereby also interfere with Inclusive Louisiana's ability to speak freely to members of its community about their health and well-being. Moreover, Inclusive Louisiana objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) because it seeks highly sensitive medical and death-related information from nonparties that implicates substantial privacy interests, and the information offers no probative value. Plaintiffs' claims are based on publicly available data equally available to Defendant and not based on an individual illness or medical records, and such information is therefore not relevant. Nor is this information within Inclusive Louisiana's possession, custody, control, or reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 6:**

Please identify the members of Ms. Felton and Ms. Washington's immediate families with cancer, listing their location of residence and timeframe of residence, as alleged in paragraph 263, and 583 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff Inclusive Louisiana objects to this interrogatory because the disclosure of the medical records and identities of nonparties would chill or violate First Amendment speech and associational interests by exposing those nonparties to intrusive government scrutiny, and thereby also interfere with Inclusive Louisiana's ability to speak freely to members of their families, and their broader community, about their health and well-being. Moreover, Inclusive

Louisiana objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) because it seeks highly sensitive medical and death-related information relating to nonparties, and the requested information implicates substantial privacy interests and offers no probative value. Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical records and such information is therefore not relevant. Nor is this information within Inclusive Louisiana's possession, custody, control or reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 7:**

Please identify all members of Inclusive Louisiana, identifying the members who previously or currently reside in St. James Parish, the location of their residence, and the location of any property owned by them in St. James Parish, as alleged in Paragraph 23 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent that it requires it to disclose the identities of its membership, because it is overbroad, unduly burdensome, and will result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama,* 357 U.S. 449, 462 (1958). Moreover, Inclusive Louisiana objects to this request because, to the extent it seeks information about third parties' ownership of property, that is information that is not within Inclusive Louisiana's possession, custody, or control. Finally, Inclusive Louisiana objects to this request because the property ownership of third parties is not relevant to this litigation, nor is it reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving its objections, Plaintiff Inclusive Louisiana notes the following:

1. Ms. Barbara Washington currently resides at 8191 Pleasant Hill St., Convent, LA 70723 on property that is co-owned by Ms. Washington and her husband. She moved there in 1995.

   Ms. Washington is also a co-administrator of the Estate of Harriet of Jones, a property that is adjacent to her current residence. The land was first purchased by Ms. Washington's fifth generation grandmother Harriet Jones after she was freed from slavery. Ms. Washington lived on the Estate of Harriet Jones between 1978 to 1995. Before 1978, Ms. Washington was raised and lived in at 8179 Pleasant Hill St., Convent, LA 70723.

2. Ms. Gail LeBoeuf currently resides at and owns 758 North Ezidore St., Gramercy, LA 70052. Until 1999, Ms. LeBoeuf resided at 6116 Badeaux St., Convent, LA 70723, which is property that she also owns.

3. Inclusive Louisiana owns the property at 8111 Romeville St, Convent, LA 70723.

**INTERROGATORY NO. 8:**
Please identify the members of Inclusive Louisiana you allege are descended from people enslaved in St. James Parish, identifying their descendants alleged to be in unmarked burials in St. James Parish, as alleged in Paragraph 23, 668, 669, and 670 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 8:**

Inclusive Louisiana objects to this interrogatory to the extent that it requires it to disclose the identities of all of its membership, because it is overbroad and will result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama,* 357 U.S. 449 (1958).

Plaintiff Inclusive Louisiana objects to this interrogatory for a number of other reasons. Assuming that the second reference to "descendants" is intended to read "ancestors," Inclusive Louisiana objects to the implication that any of its claims require it to identify a particular formerly enslaved individual who is a direct ancestor of one of its members and is buried in an unmarked burial site in St. James Parish. Given how slavery operated, and in particular the fact that enslaved people's lives and deaths were not properly recorded, descendants face unique

challenges when attempting to conduct genealogical research about their ancestors. Moreover, because biological families were forcibly separated, people enslaved often formed close kinship ties and support networks, expanding the concept of "family." Ms. Washington and Ms. LeBoeuf, founding members of Inclusive Louisiana, are part of the descendant community of people enslaved in the River Parishes. This descendant community considers itself collectively descended from ancestors who were enslaved in the River Parishes. Without waiving its objections, Inclusive Louisiana responds:

Ms. Barbara Washington is descended from Ms. Harriet Jones who was enslaved in St. James Parish, and, once freed, was able to purchase property adjacent to the area where Ms. Washington now lives. Ms. Washington does not know where Ms. Jones is buried, and believes she may be buried in an unmarked grave in the area. Ms. Washington is also a relative of Mr. Mack Nelson, who is a historic figure from Freetown in the 5th District.

Through oral history, Ms. Gail LeBoeuf learned that she is descended, on her father's side of the family, from an individual named Elvira who was enslaved on a plantation in Louisiana near New Orleans.

**INTERROGATORY NO. 9:**

Please identify the members of Inclusive Louisiana you allege were exposed to "heightened levels of carcinogens and other harmful pollutants," identifying all health diagnoses of those members you allege is the result of the pollutants and all deceased family members, as alleged in Paragraphs 23, 251, and 263 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 9:**

Inclusive Louisiana objects to this interrogatory to the extent that it requires it to disclose the identities of all of its membership, because it is overbroad, unduly burdensome, and will result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S.

Constitution. *See NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Disclosure of the identities of members and nonparties who communicated sensitive information regarding illness, cancer, and death to Plaintiff Inclusive Louisiana, an advocacy organization, would chill or violate First Amendment speech and associational interests by exposing those members and third parties to intrusive government scrutiny, and thereby also interfere with Inclusive Louisiana's ability to speak freely to members of its community about their health and well-being. Moreover, Inclusive Louisiana objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) because it seeks highly sensitive medical and death-related information from nonparties, as the requested information implicates substantial privacy interests and offers no probative value. Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical records, and such information is therefore not relevant. Nor is this information within Inclusive Louisiana's possession, custody, or control or reasonably calculated to lead to the discovery of admissible evidence.

As to the health diagnoses of Ms. Barbara Washington and Ms. Gail LeBoeuf, Plaintiff Inclusive Louisiana objects to this interrogatory to the extent that it misstates the allegations in the Complaint, since paragraph 23 alleges that Inclusive Louisiana founding members "have been exposed to heightened levels of carcinogens and other harmful pollutants and *a dramatically increased risk* of cancer and other diseases attendant to the heavy industrial sitings" (emphasis added). Inclusive Louisiana also objects to this request because it is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1) as Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical record and such information is therefore not relevant. Inclusive

Louisiana also objects because it calls for premature disclosure of expert opinion on the relationship between pollution and health risks or outcomes. Subject to, and without waiving any objections, Plaintiff Inclusive Louisiana responds:

Because of the significant pollution in the ambient air in the Fourth and Fifth Districts of St. James Parish, all members of Inclusive Louisiana living, working or spending substantial time in those districts, have been exposed to heightened levels of carcinogens, including Inclusive Louisiana co-founders Barbara Washington, who has lived in the Fourth District in St. James Parish her whole life, and Ms. Gail LeBoeuf who lived in the Fourth District until 1999, when she moved to Gramercy.

The health diagnosis alleged in paragraph 23 is that Ms. Gail LeBoeuf has been diagnosed with cholangiocarcinoma (HCC) and biliary obstruction (HCC).

The health diagnosis referenced to in paragraph 251 and 263 is that Ms. Barbara Washington has suffered from a chronic cough and required the frequent use of an inhaler to aid in breathing.

**<u>INTERROGATORY NO. 10:</u>**
Please identify the members of Inclusive Louisiana you allege suffered a decrease in property values as a result of the Parish' actions, including the member's name, property location, and basis for asserting a decrease in property value.

**<u>RESPONSE TO INTERROGATORY NO. 10:</u>**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent that it requires Inclusive Louisiana to disclose the identities of all of its members, because it is overbroad and will result in the disclosure of the names of individuals who are not party to this action, and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama,* 357 U.S. 449, 462 (1958). Inclusive Louisiana further object to the extent that this request prematurely requests information that is the subject of

ongoing discovery, and to the extent that it prematurely seeks expert opinion regarding the calculation of changes in property value over time. Without waiving its objections, Inclusive Louisiana responds:

**Ms. Barbara Washington** currently resides at 8191 Pleasant Hill St., Convent, LA 70723 on property that is co-owned by Ms. Washington and her husband. Ms. Washington is also a co-administrator of the Estate of Harriet of Jones, a property that is adjacent to her current residence. The land was first purchased by Ms. Washington's fifth generation grandmother Harriet Jones after she was freed from slavery. Ms. Washington believes that the value of her properties is being impacted because it is in extremely close proximity to industrial plants. She also believes her property value is being impacted because she notices dust and/or residue, and discoloration on her house that she believes is caused by industrial pollution. Ms. Washington also believes that the residential properties in Romeville are losing their value because they are in extremely close proximity to industrial plants, and because they are not increasing in value in the same manner as residential properties in other, majority-white parts of the Parish. She notices that people are not moving into Romeville since industrial development has increased in the area, and so the demand for property has decreased, which leads her to believe that the value of her own properties has decreased. Additionally, Ms. Washington also knows that her property is located in an area designated "Residential/Future Industrial" by the Parish, meaning that there are restrictions on subdividing and selling her property, which are not applied to other areas in the Parish, which restricts her use of property and likely also impacts its value.

**Ms. Gail LeBoeuf** currently resides at and owns 758 North Ezidore St., Gramercy, LA 70052. Until 1999, Ms. LeBoeuf resided at 6116 Badeaux St., Convent, LA 70723, which is property that she also owns. Ms. LeBoeuf believes that her property at 6116 Badeaux St.,

Convent, LA 70723 is losing its value because it is located in extremely close proximity to the Mosaic Uncle Sam fertilizer plant and, because it is in a highly-industrialized area, it is not receiving the same municipal and state benefits as other parts of the Parish. She also believes that it has lost use and value because of the industrial pollution from that plant--more specifically she believes it is very difficult to grow safe crops on that property given industrial emissions, which inherently renders the property less valuable.

**Inclusive Louisiana** owns the property at 8111 Romeville St, Convent, LA 70723. Inclusive Louisiana believes that the value of its property is impacted because it is in close proximity to industrial plants. Additionally, Ms. Barbara Washington believes that properties in Romeville are losing their value because they are not increasing in value in the same manner as properties in other, majority-white parts of the Parish for the reasons described above. Additionally, Inclusive Louisiana's property is located in an area designated "Residential/Future Industrial" by the Parish, meaning that there are restrictions to subdividing and selling the property, which are not applied to other areas in the Parish, which restricts Inclusive Louisiana's use of property and likely also impacts its value.

**INTERROGATORY NO. 11:**
Please identify each and every "official action" of St. James Parish prior to April 2, 2014 which authorized or approved the construction and operation of any industrial facility within the Parish.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; and because the full extent of the Parish's actions will only be known to Inclusive Louisiana once additional discovery is completed. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 187, 199, 203, 232-35, 245-52, 261-62, 616, 620 of the Second Amended Complaint.

**INTERROGATORY NO. 12:**
Please list the members of your organization that were present in 2010 and/or 2011 at any of the public meetings or hearings associated with the Comprehensive Plan, whether sponsored or held by the South Central Planning & Development Commission, the Comprehensive Plan Steering Committee, the Planning Commission, or the Parish Council, and provide any public comments made by any such member.

**RESPONSE TO INTERROGATORY NO. 12:**

Inclusive Louisiana was established in January 2021, and so was not going to public meetings or hearings in 2010 or 2011. To the extent the Parish seeks information about *all* Inclusive Louisiana members and/or what current members may have done before they were members of Inclusive Louisiana, Inclusive Louisiana objects to this interrogatory because it is overbroad; because it seeks information not in the custody, possession, or control of Inclusive Louisiana; and because it may result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. Without waiving its objections, Inclusive Louisiana responds that Ms. Washington did not go to the meetings associated with the Comprehensive Plan in 2010 or 2011. Ms. LeBoeuf does not specifically recall going to meetings related to the Comprehensive Plan, but she does recall going to meetings related to the Louisiana Sugarcane Refining (LSR) facility around 2010 or 2011, and it is possible that some of those meetings overlapped with discussion of the Comprehensive Plan.

**INTERROGATORY NO. 13:**
Please list the members of your organization that were present in 2013 and/or 2014 at any of the public meetings or hearings associated with the Comprehensive Plan and/or Land Use Plan, whether sponsored by the Planning Commission, the Planning Commission Steering Committee, or the Parish Council, and provide any public comments made by any such member.

**RESPONSE TO INTERROGATORY NO. 13:**

Inclusive Louisiana was established in January 2021, and so was not going to public meetings or hearings in 2013 or 2014. To the extent the Parish seeks information about *all*

Inclusive Louisiana members and/or what current members may have done before they were members of Inclusive Louisiana, Inclusive Louisiana objects to this interrogatory because it is overbroad; because it seeks information not in the custody, possession, or control of Inclusive Louisiana; and because it may result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. Without waiving its objections, Inclusive Louisiana responds that Ms. Washington did not go to the meetings associated with the Comprehensive Plan and/or Land Use Plan in 2013 and 2014. Ms. LeBoeuf recalls that she went to public meetings in 2013 and 2014, but does not recall specifically going to meetings related to the Comprehensive Plan and/or the Land Use Plan.

**INTERROGATORY NO. 14:**
Please identify the first time your organization or any member of your organization became aware of the possible existence of a burial site that may contain the remains of former enslaved persons on any former plantation site within District 4 or District 5.

**RESPONSE TO INTERROGATORY NO. 14:**

Inclusive Louisiana was established in January 2021, and so to the extent the Parish seeks information about *all* Inclusive Louisiana members and what they may have been aware of before Inclusive Louisiana's formation, Inclusive Louisiana objects to this interrogatory because it is overbroad; because it seeks information not in the custody, possession, or control of Inclusive Louisiana; and because it may result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. Without waiving its objections, Inclusive Louisiana responds as follows:

Ms. LeBoeuf has known her whole life that former plantations contained the burial sites of enslaved people, and she has known her whole life that St. James Parish is characterized by

former plantations. However, given that burial sites of enslaved people were rarely marked by gravestones or recorded, she was not able to confirm this, nor identify the precise locations of these sites for several years. She was only able to identify the exact location of some of these cemeteries beginning in November 2019, after a public records request revealed that the Buena Vista and Acadia Plantation cemeteries were located within the Formosa project site.

Ms. Washington began to realize that there may be unmarked cemeteries of her enslaved ancestors in the Fourth and Fifth districts when she heard about the Bruslie and Monroe Plantation Cemeteries on Shell property in Lemannville, Louisiana around 2018. At that time, it occurred to her that, since there were plantations all across the Mississippi River, there must be plantation cemeteries everywhere. However, given that burial sites of enslaved people were rarely marked by gravestones or recorded, she was not able to confirm this, nor identify precise location of these sites for several years. She was only able to identify the exact location of some of these cemeteries beginning in November 2019, after a public records request revealed that the Buena Vista and Acadia Plantation cemeteries were located within the Formosa project site.

**INTERROGATORY NO. 15:**

Please identify the first time your organization or any member of your organization raised to the Planning Commission or the Parish Council the possible existence of a burial site that may contain the remains of former enslaved persons on any former plantation site within District 4 or District 5.

**RESPONSE TO INTERROGATORY NO. 15:**

Inclusive Louisiana was established in January 2021, so to the extent the Parish seeks information about *all* Inclusive Louisiana members and what they may have commented on before Inclusive Louisiana’s formation, Inclusive Louisiana objects to this interrogatory because it is overbroad; because it seeks information not in the custody, possession, or control of Inclusive Louisiana; and because it may result in the disclosure of the names of individuals who

are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. Without waiving its objections, Inclusive Louisiana responds as follows: Ms. Washington and Ms. LeBoeuf recall first raising it when they were members of RISE St. James when RISE St. James submitted a letter to the St. James Parish Council in December 23, 2019 alerting it of the existence of burial sites on the site of the proposed Formosa Plastics Plant.

**INTERROGATORY NO. 16:**
Please identify any instance in which the Planning Commission or the Parish Council knowingly authorized or allowed the desecration, destruction, or removal of the remains of former enslaved persons at any burial site on any former plantation site within District 4 or District 5.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent that it misstates allegations in the Complaint, and because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; and because the full extent of the Parish's actions and knowledge may only be known to Inclusive Louisiana once additional discovery is completed. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 441, 600, 619, 624, 627, 629-648, 665-666 of the Second Amended Complaint.

**INTERROGATORY NO. 17:**
Please identify any instance in which the State Historic Preservation Officer knowingly authorized or allowed the desecration, destruction, or removal of the remains of former enslaved persons at any burial site on any former plantation site within District 4 or District 5.

**RESPONSE TO INTERROGATORY NO. 17:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and because it seeks information that is not within the possession, custody, control, or personal knowledge of Inclusive Louisiana, but rather the State Historic Preservation Officer. Without

waiving its objections, Inclusive Louisiana points Defendant to its answer to Interrogatory No. 16.

**INTERROGATORY NO. 18:**

Please identify which of the pollutants mentioned in Paragraphs 563 - 581 of the Complaint are emitted into the ambient air from the following:

1. The Bayou Bridge Pipeline mentioned in Pars. 391 – 400 of the Complaint;
2. The Acadian Gas Pipeline mentioned in Pars. 497 - 502 of the Complaint;
3. The Oxy Chem Pipeline mentioned in Pars. 503-512 of the Complaint;
4. The Air Liquide Pipeline mentioned in Pars. 513 – 518 of the Complaint; and
5. The Nucor Expansion and Exxon Carbon Dioxide Pipeline mentioned in Pars. 519 – 553 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 18:**

Plaintiff Inclusive Louisiana objects to this interrogatory on the grounds that the information it seeks is not relevant. Plaintiffs have not alleged that the pollutants mentioned in Paragraphs 563-581 of the Complaint are emitted by the five pipelines listed in this request. Further, Inclusive Louisiana objects because whether any of those pipelines has ambient air emissions seeks information that is not within the possession, custody, control, or personal knowledge of Inclusive Louisiana, but rather the companies themselves or the Louisiana Department of Environmental Quality.

**INTERROGATORY NO. 19:**

If you claim that any pollutants mentioned in Pars. 563 - 581 of the Complaint are emitted into the ambient air from any of the facilities and/or pipelines mentioned in the previous Interrogatory, please quantify the amount of emissions in tons per year of each such pollutant for each such facility or pipeline.

**RESPONSE TO INTERROGATORY NO. 19:**

Plaintiff Inclusive Louisiana objects to this interrogatory on the grounds that the information it seeks is not relevant. Plaintiffs have not alleged that the pollutants mentioned in Paragraphs 563-581 of the Complaint are emitted by the five pipelines listed in this request. Further, Inclusive Louisiana objects because whether any of those pipelines has ambient air

emissions seeks information that is not within the possession, custody, control, or personal knowledge of Inclusive Louisiana, but rather the companies themselves or the Louisiana Department of Environmental Quality

**INTERROGATORY NO. 20:**

Please explain the basis Ms. Washington's assertion that she cannot afford to relocate to a home with similar accommodation, as alleged in Paragraph 264 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 20:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it does not fully represent the allegation in Paragraph 264, which notes that Ms. Washington "cannot afford to relocate, especially to homes with similar accommodations, *as well as family history*." (Emphasis added.) Namely, Ms. Washington has a deep connection to St. James Parish and to the property she now resides in because of her family history: her residence is adjacent to property that her formerly-enslaved ancestor, Harriet Jones, was able to purchase after she was freed from slavery. Ms. Washington previously lived on and is the administrator of the Estate of Harriet Jones. The property where Ms. Washington's current residence is, used to be the property of Pleasant Hill Baptist Church, which Ms. Washington has a deep connection to. Because of her personal history and the historic nature of the property, the market value of the house does not represent the value of the house to her.

Hypothetically, if Ms. Washington were to try to sell her home, she believes she would not be able to sell it for enough to move elsewhere because she believes that the value of her property has not kept up with the pace of increase in value of property elsewhere in the Parish.

**INTERROGATORY NO. 21:**

Please explain the basis Ms. Felton's assertion that she cannot afford to relocate to a home with similar accommodation, as alleged in Paragraph 264 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 21:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information that is not within the possession, custody, control, or personal knowledge of Inclusive Louisiana, but rather Ms. Myrtle Felton, who is no longer a member of Inclusive Louisiana.

**INTERROGATORY NO. 22:**
Please list the white residents of District 4 and 5 in the "Residential/Future Industrial" designation, including their specific residential address, that were allowed to subdivide their property or sale it to someone other than an immediate family member, as alleged in Paragraphs 294 and 296 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 22:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it mischaracterizes the allegations in the Second Amended Complaint. Those allegations do not state that white residents who live in areas designated "Residential/Future Industrial," where there is a restriction on subdividing and selling property to non-immediate family members, were exempted from that restriction. Additional discovery may reveal that to be the case, but Plaintiffs' allegation is that the "Residential/Future Industrial" designation, and therefore the sale/subdivision restriction, *only exists* in majority-Black parts the Parish – and in majority-Black parts of the Fourth District, and previously in the majority-Black parts of the Fifth districts. Based on this, Plaintiff Louisiana objects to this interrogatory because it seeks information that is not relevant to the case, and information that is equally available to the Defendant.

**INTERROGATORY NO. 23:**
Please describe the "impacts of Nucor's emissions" "Ms. Felton and Ms. Washington . . . experience," as alleged in Paragraphs 251 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 23:**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent it seeks information about impacts experienced by Ms. Felton, because that is not within the possession,



**EXHIBIT 5A**

custody, control, or personal knowledge of Inclusive Louisiana, but rather Ms. Felton, who is no longer a member of Inclusive Louisiana. As to Ms. Washington, in addition to the health impacts described in response to Interrogatory No. 9, Ms. Washington believes that industrial pollutants are impacting her home: her roof and windows are discolored as a result, and her car consistently has sticky residue on it.

**INTERROGATORY NO. 24:**
Please list the official actions of St. James Parish which led to the proposed location of Shintech in the 5th District, as alleged in Paragraphs 220-224 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 24:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it misstates the allegations in the Complaint: Shintech's proposed location was not in the Fifth District, but in the Fourth District, in Convent. Plaintiff also objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; and because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 229, 232-34, 244-45 of the Second Amended Complaint.

**INTERROGATORY NO. 25:**
Please explain your basis for alleging "Parish employees also made it difficult for community members opposed to Shintech to obtain public records about the project," as alleged in Paragraph 235 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 25:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; and because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Without waiving its objections, Inclusive Louisiana points Defendant to paragraph 235 and the related footnote 174 of the Second Amended Complaint. Inclusive

Louisiana also points Defendant to page 121 of J. Timmons Roberts and Melissa M. Toffolon-Weiss, *Chronicles from the Environmental Justice Frontline* (2001):

> It was quite clear that the parish government was not representing the views of plant opponents. In fact, they appeared to be going out of their way at times to create roadblocks to their activities. The parish charged community residents seventy-five cents per page for copies of the public record. This proved to be prohibitively expensive for the protest group. Additionally, the group had a difficult time getting the complete public record from the parish, and there was an instance when a parish employee admitted to destroying a document.

Inclusive Louisiana is aware that a court order required the Parish to reduce the fee for copies of public records. Inclusive Louisiana is also aware that sometime in 1997, the Parish destroyed a document relating to Shintech's application for a Coastal Use Permit in St. James Parish. Both these issues were subject of the lawsuit captioned *St. James Parish Citizens for Jobs and the Environment and Louisiana Environmental Action Network vs. Hymel*, No. 24.722 (23rd La. Dist. Ct.).

**INTERROGATORY NO. 26:**
Please explain your basis for alleging Parish officials supported Shintech counter-opposition, as alleged in paragraph 239 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 26:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; and because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Without waiving its objections, Inclusive Louisiana points Defendant to Inclusive Louisiana's response to Interrogatory No. 25.

**INTERROGATORY NO. 27:**
Please explain your basis for alleging Parish officials "found another company willing to take the place Shintech had given up on," as alleged in Paragraph 248 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 27:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; and because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Without waiving its objections, Inclusive Louisiana points Defendant to paragraph 245 of the Second Amended Complaint, which quotes Parish President Hymel as saying "Just because Shintech is gone, that doesn't mean we're going to stop looking," and paragraph 249 which describes that before Hymel "left the office of Parish President in 2012, a steel manufacturing company [Nucor Steel] would begin construction on the site Shintech had abandoned 15 years earlier."

**INTERROGATORY NO. 28:**
Please identify every statement made by a St. James Parish official or representative which you assert indicated industry was steered to Districts 4 and 5 because the population was majority Black, including who made the statement, what was said, and when the statement was made.

**RESPONSE TO INTERROGATORY NO. 28:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed; and because it calls for Inclusive Louisiana to make a legal conclusion. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 295, 315, 316-17, 319, 351, 353, 360, 365, 367.

**INTERROGATORY NO. 29:**
Please list all instances where you allege the Parish Council "violat[ed] its own Land Use Ordinance" to grant request from companies seeking to locate in Districts 4 and 5, as alleged in Paragraph 373 of the Complaint.



EXHIBIT 5A

**RESPONSE TO INTERROGATORY NO. 29:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; because the full extent of the Parish's actions will only be known to Inclusive Louisiana once additional discovery is completed; and because it calls for Inclusive Louisiana to make a legal conclusion. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 384-385, 408-9, 429-432, 443-46, 451-52, 463-64, 500, 502, 534, 524, 542-547, 553 of the Second Amended Complaint.

**INTERROGATORY NO. 30:**
Please explain your basis for alleging that the Parish Council "hurriedly adopted a land use plan . . . to protect the interests of white residents," as alleged in Paragraph 280 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 30:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; because the full extent of the Parish's actions will only be known to Inclusive Louisiana once additional discovery is completed; and because it calls for Inclusive Louisiana to make a legal conclusion. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 312-14, 325 of the Second Amended Complaint.

**INTERROGATORY NO. 31:**
Please list the "serious defects in the applications" of companies that sought to locate in Districts 4 or 5, as alleged in Paragraph 370 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 31:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; because the full extent of the Parish's actions will only be known to Inclusive Louisiana once additional

discovery is completed; and because it calls for Inclusive Louisiana to make a legal conclusion. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 384, 408-9, 429-432, 443-45, 451, 463-64, 500, 502, 534, 524, 553 of the Second Amended Complaint.

**INTERROGATORY NO. 32:**

Please list and detail the letters to editors, livestreams held, media communications and interviews, and conversations with neighbors and elected representatives alleged in Paragraph 437 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 32:**

Plaintiff Inclusive Louisiana objects to this interrogatory because, to the extent it seeks a "list and detail" of "conversations with neighbors and elected representatives," it is overbroad and unduly burdensome. Plaintiff's members have lived in St. James Parish area for decades, in some cases their whole lives, and they are community leaders who participate in St. James Parish Council and Commission meetings on a regular basis. It would be unduly burdensome, and likely impossible, to list every single conversation with neighbors and elected representatives that they have had. Additionally, Plaintiff Inclusive Louisiana objects to this interrogatory because any statements made by Inclusive Louisiana members directly to the Parish are in the possession of, known to, or otherwise equally available to the Parish. Finally, Plaintiff Inclusive Louisiana objects to this interrogatory because the disclosure of the conversations that a community-based advocacy organization and its leaders have had with third-party community members about the problems faced by the community would chill those third parties and violate their rights, as well as Inclusive Louisiana's rights, to freedom of speech and association in violation of the First Amendment. Without waiving its objections, Inclusive Louisiana will identify letters to editors, livestreams held, media communications, interviews, and letters submissions to the Parish in its supplemental responses to the Parish's Interrogatories.



**EXHIBIT 5A**

**INTERROGATORY NO. 33:**
Identify all media interviews given by any member or representative of Inclusive Louisiana.

**RESPONSE TO INTERROGATORY NO. 33:**

Plaintiff Inclusive Louisiana objects to this interrogatory because, to the extent it seeks a list that includes media interviews unrelated to land use, environmental, historic and/or cultural preservation, religious exercise, health, or racial justice issues in St. James Parish, it is not relevant to this litigation, nor is it reasonably calculated to lead to the discovery of admissible evidence. Plaintiff Inclusive Louisiana also objects to this interrogatory because, to the extent it seeks media interviews given by members of Inclusive Louisiana in their personal capacity or otherwise not on behalf of Inclusive Louisiana, it is not relevant to this litigation, nor is it reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Inclusive Louisiana will identify media interviews given by members of Inclusive Louisiana as representatives of Inclusive Louisiana on relevant matters in its supplemental responses to the Parish's Interrogatories.

**RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS**

Plaintiff Inclusive Louisiana will respond to the Parish's Document Requests in its supplemental responses.

**RESPONSES TO REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:**
Please admit that St. James Parish did not sell any property in District 4 or 5 to an industrial company for the location, building, or siting of industry.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Neither admitted nor denied due to lack of knowledge. As alleged in para 253 of the Second Amended Complaint, Plaintiff Inclusive Louisiana is aware that the Parish has agreed to take ownership over the first phase of the Nucor Steel project and lease it back to the company,

and sell it to the company for $100 after 30 years. Inclusive Louisiana is also aware that officials in another Parish in Louisiana have entered into non-disclosure agreements with industrial companies seeking to locate in that Parish, and so Inclusive Louisiana has reason to believe that there is information related to this Request for Admission that may not be readily available to it.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that the Wolverine Terminals Corp. Facility, as described in Paragraphs 312- 320 of the Complaint, has never been constructed and is not operating.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Neither admitted nor denied that the Wolverine Terminal was never constructed, as Plaintiff Inclusive Louisiana cannot be sure of whether any construction or pre-construction activity was done by Wolverine. Admitted that the Facility is not currently operating.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that the Wolverine Terminals Corp. Facility, as described in Paragraphs 312- 320 of the Complaint, does not have a valid, current authorization to construct from St. James Parish.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Admitted.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that the Wolverine Terminals Corp. Facility, as described in Paragraphs 312- 320 of the Complaint, does not have a valid, current permit or authorization to construct from the Louisiana Department of Environmental Quality.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Admitted.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that the Wolverine Terminals Corp. Facility, as described in Paragraphs 312- 320 of the Complaint, does not have any emissions into ambient air of any of the pollutants mentioned in Paragraphs 563-581 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Admitted.

**REQUEST FOR ADMISSION NO. 6:**
Please admit that the Petroplex Facility, as described in Paragraphs 321-334 of the Complaint, has never been constructed and is not operating.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Neither admitted nor denied that the Petroplex Facility was never constructed, as Plaintiff Inclusive Louisiana cannot be sure of whether any construction or pre-construction activity was done by Petroplex, and, as described in paragraph 330 of the Second Amended Complaint, Petroplex representatives stated to the Parish Council on November 5, 2014 that it had begun construction on July 31, 2014. Admitted that the Facility is not currently operating.

**REQUEST FOR ADMISSION NO. 7:**
Please admit that the Petroplex Facility, as described in Paragraphs 321-334 of the Complaint, does not have a valid, current authorization to construct from St. James Parish.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Admitted.

**REQUEST FOR ADMISSION NO. 8:**
Please admit that the Petroplex Facility, as described in Paragraphs 321-334 of the Complaint, does not have a valid, current permit or authorization to construct from the Louisiana Department of Environmental Quality.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Admitted.

**REQUEST FOR ADMISSION NO. 9:**
Please admit that the Petroplex Facility, as described in Paragraphs 321-334 of the Complaint, does not have any emissions into ambient air of any of the pollutants mentioned in Paragraphs 563-581 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Admitted.

**REQUEST FOR ADMISSION NO. 10:**
Please admit that the South Louisiana Methanol Facility, as described in Paragraphs 375- 390 of the Complaint, has never been constructed and is not operating.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Neither admitted nor denied that the South Louisiana Methanol (SLM) Facility was never constructed, as Plaintiff Inclusive Louisiana cannot be sure of whether any construction or pre-construction activity was done by SLM. Admitted that the Facility is not currently operating.

**REQUEST FOR ADMISSION NO. 11:**
Please admit that the South Louisiana Methanol Facility, as described in Paragraphs 375- 390 of the Complaint, does not have a valid, current authorization to construct from St. James Parish.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Neither admitted nor denied on the basis that this calls for a legal conclusion that is dependent on information that the Defendant has, and Plaintiffs intend to obtain through discovery.

**REQUEST FOR ADMISSION NO. 12:**
Please admit that the South Louisiana Methanol Facility, as described in Paragraphs 375- 390 of the Complaint, does not have a valid, current permit or authorization to construct from the Louisiana Department of Environmental Quality.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it is vague and overbroad. Industrial facilities require permits under multiple laws administered by LDEQ. This request does not specify what type of permit, and Inclusive Louisiana does not have knowledge in its possession regarding the status of each of South Louisiana Methanol's permits issued by LDEQ. That information is in the possession and control of the LDEQ, and it would require more than a



EXHIBIT 5A

reasonable inquiry to determine the status of each of South Louisiana Methanol's permits. On those grounds, Inclusive Louisiana neither admits nor deny this request.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that the South Louisiana Methanol Facility, as described in Paragraphs 375- 390 of the Complaint, does not have any emissions into ambient air of any of the pollutants mentioned in Paragraphs 563-581 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Admitted.

**REQUEST FOR ADMISSION NO. 14:**

Please admit that the Ergon Expansion, as described in Paragraphs 451-452 of the Complaint, has never been constructed and is not operating.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Neither admitted nor denied that the Ergon Expansion was never constructed, as Plaintiff Inclusive Louisiana cannot be sure of whether any construction or pre-construction activity was done by Ergon. Whether the facility is currently operating is information that the Defendant has, and Plaintiffs intend to obtain through discovery.

**REQUEST FOR ADMISSION NO. 15:**

Please admit that the Ergon Expansion, as described in Paragraphs 451-452 of the Complaint, does not have a valid, current authorization to construct from St. James Parish.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Neither admitted nor denied on the basis that this calls for a legal conclusion that is dependent on information that the Defendant has, and Plaintiffs intend to obtain through discovery.

**REQUEST FOR ADMISSION NO. 16:**

Please admit that the Ergon Expansion, as described in Paragraphs 451-452 of the Complaint, does not have a valid, current permit or authorization to construct from the Louisiana Department of Environmental Quality.



**EXHIBIT 5A**

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Plaintiffs object to this request to the extent that it is vague and overbroad. Industrial facilities require permits under multiple laws administered by LDEQ. This request does not specify what type of permit, and Inclusive Louisiana does not have knowledge in their possession regarding the status of each of Ergon's permits that may have been issued by LDEQ. That information is in the possession and control of the LDEQ, and it would require more than a reasonable inquiry to determine the status of each of the Ergon Expansion's permits. On those grounds, Inclusive Louisiana neither admits nor denies this request.

**REQUEST FOR ADMISSION NO. 17:**
Please admit that the Ergon Expansion, as described in Paragraphs 451-452 of the Complaint, does not have any emissions into ambient air of any of the pollutants mentioned in Paragraphs 563-581 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Neither admitted nor denied. This is information that either the Defendant or Louisiana Department of Environmental Quality has, and Inclusive Louisiana intends to obtain through discovery.

**REQUEST FOR ADMISSION NO. 18:**
Please admit that the Syngas Facility, as described in Paragraphs 453-466 of the Complaint, has never been constructed and is not operating.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Neither admitted nor denied that the Syngas Facility was never constructed, as Plaintiff Inclusive Louisiana cannot be sure of whether any construction or pre-construction activity was done by Syngas. This is information that the Defendant has, and Plaintiffs intend to obtain through discovery. Admitted that it is not operating.

**REQUEST FOR ADMISSION NO. 19:**
Please admit that the Syngas Facility, as described in Paragraphs 453-466 of the Complaint, does not have a valid, current authorization to construct from St. James Parish.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Neither admitted nor denied on the basis that this calls for a legal conclusion that is dependent on information that the Defendant has, and Plaintiffs intend to obtain through discovery.

**REQUEST FOR ADMISSION NO. 20:**
Please admit that the Syngas Facility, as described in Paragraphs 453-466 of the Complaint, does not have a valid, current permit or authorization to construct from the Louisiana Department of Environmental Quality.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Plaintiff Inclusive Louisiana object to this request to the extent that it is vague and overbroad. Industrial facilities require permits under multiple laws administered by LDEQ. This request does not specify what type of permit, and Inclusive Louisiana does not have knowledge in its possession regarding the status of each of Syngas's permits that may have been issued by LDEQ. That information is in the possession and control of the LDEQ, and it would require more than a reasonable inquiry to determine the status of each of Syngas's permits. On those grounds, Inclusive Louisiana neither admits nor denies this request.

**REQUEST FOR ADMISSION NO. 21:**
Please admit that the Syngas Facility, as described in Paragraphs 453-466 of the Complaint, does not have any emissions into ambient air of any of the pollutants mentioned in Paragraphs 563-581 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**
Admitted.

**REQUEST FOR ADMISSION NO. 22:**
Please admit that the Wanhua Facility, as described in Paragraphs 401-418 of the Complaint, has never been constructed and is not operating.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Neither admitted nor denied that the Wanhua Facility was never constructed, as Plaintiff Inclusive Louisiana cannot be sure of whether any construction or pre-construction activity was done by Wanhua. Admitted that it is not currently operating.

**REQUEST FOR ADMISSION NO. 23:**
Please admit that the Wanhua Facility, as described in Paragraphs 401-418 of the Complaint, does not have a valid, current authorization to construct from St. James Parish.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Neither admitted nor denied that the Wanhua Facility does not have any valid, current authorizations to construct from St. James Parish anywhere in the Parish. This is information that the Defendant has, and Plaintiffs intend to obtain through discovery. Admitted that Wanhua withdrew its application for the facility that was approved by the Planning Commission on May 20, 2019.

**REQUEST FOR ADMISSION NO. 24:**
Please admit that the Wanhua Facility, as described in Paragraphs 401-418 of the Complaint, does not have a valid, current permit or authorization to construct from the Louisiana Department of Environmental Quality.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it is vague and overbroad. Industrial facilities require permits under multiple laws administered by LDEQ. This request does not specify what type of permit, and Inclusive Louisiana does not have knowledge in its possession regarding the status of each of Wanhua's permits issued by LDEQ. That information is in the possession and control of the LDEQ, and it would require more than a reasonable inquiry to determine the status of each of Wanhua's permits. Subject to the foregoing, Inclusive Louisiana admits that Wanhua withdrew its application for a Clean Air Act Title V operating permit on October 16, 2020.

**REQUEST FOR ADMISSION NO. 25:**
Please admit that the Wanhua Facility, as described in Paragraphs 401-418 of the Complaint, does not have any emissions into ambient air of any of the pollutants mentioned in Paragraphs 563-581 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Admitted.

**REQUEST FOR ADMISSION NO. 26:**
Please admit that the SJ Louisiana Solar Facility, as described in Paragraphs 347-368 of the Complaint, has never been constructed and is not operating.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Neither admitted nor denied that the SJ Solar Facility was never constructed, as Plaintiff Inclusive Louisiana cannot be sure of whether any construction or pre-construction activity was done by SJ Solar Facility. Admitted that the Facility is not currently operating.

**REQUEST FOR ADMISSION NO. 27:**
Please admit that the SJ Louisiana Solar Facility, as described in Paragraphs 347-368 of the Complaint, does not have a valid, current authorization to construct from St. James Parish.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Admitted.

**REQUEST FOR ADMISSION NO. 28:**
Please admit that the SJ Louisiana Solar Facility, as described in Paragraphs 347-368 of the Complaint, does not have a valid, current permit or authorization to construct from the Louisiana Department of Environmental Quality.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it is vague and overbroad. Industrial facilities require permits under multiple laws administered by LDEQ. This request does not specify what type of permit, and Plaintiff Inclusive Louisiana does not have knowledge in its possession regarding the status of each of SJ Solar's permits that may have been issued by LDEQ. That information is in the possession and control of the LDEQ, and it would

require more than a reasonable inquiry to determine the status of each of SJ Louisiana Solar's permits. On those grounds, Inclusive Louisiana neither admits nor denies this request.

**REQUEST FOR ADMISSION NO. 29:**

Please admit that the SJ Louisiana Solar Facility, as described in Paragraphs 347-368 of the Complaint, does not have any emissions into ambient air of any of the pollutants mentioned in Paragraphs 563-581 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Admitted.

**REQUEST FOR ADMISSION NO. 30:**

Please admit that the Formosa Facility, as described in Paragraphs 419-441 of the Complaint, has not yet been constructed and is not currently operating.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Neither admitted nor denied that the Formosa Facility was never constructed, as Plaintiff Inclusive Louisiana cannot be sure of whether any construction or pre-construction activity was done by Formosa. Inclusive Louisiana members recall seeing something occurring in the area, likely utility or roadwork. Admitted that it is not currently operating.

**REQUEST FOR ADMISSION NO. 31:**

Please admit that the Formosa Facility, as described in Paragraphs 419-441 of the Complaint, does not currently have any emissions into ambient air of any of the pollutants mentioned in Paragraphs 563-581 of the Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Admitted to the extent that Formosa's most recent publicly-available emissions certificate sent to LDEQ shows zero emissions of pollutants it is required to report.

**REQUEST FOR ADMISSION NO. 32:**

Please admit that the Koch Methanol Expansion, as described in Paragraphs 467-496 of the Complaint, has not yet been constructed and is not currently operating.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Denied. In a June 11, 2025 application to the Parish, Koch Methanol stated that it has completed construction of the pipeline running through Wetlands and that the pipeline was operational as of June 2024. Plaintiff does not have sufficient information about whether the other parts of Koch's proposed expansion are constructed and currently operating.

**REQUEST FOR ADMISSION NO. 33:**

Please admit that the Koch Methanol Expansion, as described in Paragraphs 467-496 of the Complaint, does not currently have any emissions into ambient air of any of the pollutants mentioned in Paragraphs 563-581 of Complaint.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Neither admitted nor denied. Plaintiff does not have sufficient information to answer this request for the reasons articulated in response to Request for Admission No. 32.

**VERIFICATION**

I declare under penalty of perjury that the foregoing responses are true and correct to the best of my knowledge and memory.

Executed on May 22, 2026

Barbara Washington
Barbara Washington

Gail T. LeBoeuf
Gail LeBoeuf

As to objections:

/s/ Astha Sharma Pokharel
Astha Sharma Pokharel*
Pamela C. Spees, La. Bar Roll No. 29679
Baher Azmy*
Kayla Vinson*
Celine Zhu*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
el. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org
czhu@ccrjustice.org

**Admitted pro hac vice*

William P. Quigley (cooperating counsel)
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440
quigley77@gmail.com

*Attorneys for Plaintiffs Inclusive Louisiana*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served by electronic mail on May 22, 2026, to the counsel of record for Defendant St. James Parish.

/s/ Astha Sharma Pokharel
Astha Sharma Pokharel

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members<br>*Plaintiffs*,<br><br>vs.<br><br>ST. JAMES PARISH,<br>*Defendant.* | Civil Action No. 2:23-cv-00987<br>Judge Carl Barbier<br>Magistrate Judge Janis van Meerveld |

**PLAINTIFF INCLUSIVE LOUISIANA'S SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION**

Pursuant to Rules 26, 33, and 36 of the Federal Rules of Civil Procedure, Plaintiff Inclusive Louisiana supplements its Responses to Defendant's First Set of Requests for Production of Documents. In the interest of clarity and for ease of reference, Inclusive Louisiana includes herein only the Responses and Objections to Requests that are being supplemented on this date.

Subject to and without waiving the general and specific objections set out in Plaintiff's Responses to Defendant's First Set of Requests, Inclusive Louisiana further objects and responds as follows:



**EXHIBIT 5B**

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**
Please identify the name and address of each person who provided information used in responding to these Interrogatories, and describe the information provided by each such person.

**RESPONSE TO INTERROGATORY NO. 1:**

1. **Ms. Barbara Washington**, co-founder and co-Executive Director of Inclusive Louisiana, resides at 8191 Pleasant Hill St., Convent, LA 70723. She provided information related to her health, her ancestry, her property and Inclusive Louisiana's property, her knowledge of burial sites of enslaved people in the River Parishes, Inclusive Louisiana's attendance at Parish government meetings and public statements to the Parish, and her and Inclusive Louisiana's media communications.
2. **Ms. Gail LeBoeuf**, co-founder and co-Executive Director of Inclusive Louisiana, resides at 758 North Ezidore St., Gramercy, LA 70052. She provided information related to her health, her ancestry, her property and Inclusive Louisiana's property, her knowledge of burial sites of enslaved people in the River Parishes, Inclusive Louisiana's attendance at Parish government meetings and public statements to the Parish, and her and Inclusive Louisiana's media communications.
3. **Tiffany Watkins,** Program Director at Inclusive Louisiana, can be contacted through undersigned counsel. She provided information about where Inclusive Louisiana stores its records, as well as Inclusive Louisiana media communications and letters sent to the Parish.

**INTERROGATORY NO. 2:**
Please identify any and all persons known to you who may have any information that may be relevant to this matter. For each, provide their name, title, employer, last known address and telephone number, and a brief description of their knowledge, and whether you intend to call those persons as witnesses at trial of this matter.



**EXHIBIT 5B**

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks premature disclosure of who Inclusive Louisiana intends to call as witnesses at trial. Without waiving its objections, Inclusive Louisiana identifies the following:

1. Ms. Barbara Washington: See response to Interrogatory No. 1.
2. Ms. Gail LeBoeuf: See response to Interrogatory No. 1.
3. Tiffany Watkins: See response to Interrogatory No. 1.
4. Sharon Lavigne, founder of RISE St. James. Can be contacted through counsel for RISE St. James.
5. Shamell Lavigne, Chief Operating Officer of RISE St. James. Can be contacted through counsel for RISE St. James.
6. Shamyra Lavigne, Executive Assistant of RISE St. James. Can be contacted through counsel for RISE St. James.
7. Pastor Harry Joseph, Mount Triumph Baptist Church. Can be contacted through undersigned counsel.
8. Robert Taylor, founder of Concerned Citizens of St. John the Baptist Parish. Grandparents buried in Lauderdale cemetery. Can be contacted through counsel for RISE St. James at Tulane Environmental Law Clinic.
9. Current and former members of the Parish Government, including the Council and Planning Commission, have information about land use in the Parish, including the discriminatory land use system, and the development, introduction, passage, and amendment of the St. James Parish Land Use Plan and individual land use approvals, and economic incentives, bond issuances, and tax exemptions.
10. Current and former members of the South Central Planning and Development Commission may also have information related to land use in the Parish, including the discriminatory land use system, and the development, introduction, passage, and amendment of the St. James Parish Land Use Plan.
11. Current and former St. James Parish tax assessors may have information about tax payments from and exemptions for companies operating heavy industrial facilities in the Parish.

12. Current and former officials working within the United States Environmental Protection Agency have information about the health risks associated with the chemicals and pollutants emitted by heavy industrial facilities operating within the Parish, as well as documented violations of the Clean Air Act, and other applicable laws intended to ensure environmental protection.

13. Current and former officials working within the Louisiana Department of Environmental Quality have information about chemicals and other pollutants emitted within the Parish by heavy industrial facilities operating within the Parish, as well as violations of permitted emissions limits, the Clean Air Act and other applicable state and federal laws, as well as spills, releases, and accidents at such facilities, and water quality in area water bodies.

14. Former officials with the Louisiana Department of Environmental Quality have information about the agency's efforts to permit and assist companies seeking to locate in St. James Parish, including but not limited to: Shintech, Nucor, and Formosa, as well as the agency's lack of authority over land use in parishes and municipalities.

15. Current and former officials at the U.S. Center for Disease Control and Prevention may have information on the health effects of environmental pollution, including officials at the National Institute for Occupational Safety and Health (NIOSH), the Agency for Toxic Substances and Disease Registry (ATSDR), and the National Center for Environmental Health (NCEH).

16. Current and former officials at the U.S. Occupational Safety and Health Administration (OSHA) may have information about the health effects of chemicals and other pollutants on workers in heavy industrial facilities operating in the Parish, as well as workplace injuries, illnesses, as a result of spills, leaks, and industrial accidents.

17. Current and former officials at the Louisiana Department of Health and Hospitals may have information related to the health of people living in highly industrialized areas in the Parish.

18. Current and former officials at the U.S. Advisory Council on Historic Preservation have information about historic properties and cultural resources in St. James Parish, including properties that are included on the National Register of Historic Places and others that have been deemed eligible for listing.

19. Current and former officials at the National Park Service have information about properties in the Parish that have been listed on the National Register of Historic Place and other properties and resources deemed eligible.

20. Current and former officials at the Louisiana Division of Archaeology in the Louisiana Department of Historic Preservation have information about historic properties and cultural resources in the Parish, including the existence and prevalence of cemeteries

where enslaved people were buried, as well as cemeteries that have been damaged or destroyed through industrial development.

21. Current and former officials at the United States Army Corps of Engineers have information about historic resources and properties in the Parish, and facilities that have sought and been granted permits to operate in the Parish through that agency.

22. Current and former officials at the U.S. Census Bureau have information about the population and demographics in St. James Parish, as well as voter registration.

23. Current and former officials of the National Archives have data and information about the Civil War and the operations of the Freedmen's Bureau.

24. Current and former employees at the Equal Justice Initiative have information about Black residents who were lynched in Louisiana and in St. James Parish.

25. Current and former employees and/or representatives of the companies currently operating in the Parish, as well as those that once operated in the Parish, and those who obtained land use approvals but are not currently operating in the Parish, have information about the facilities' emissions, spills, leaks, and accidents, as well as communications with Parish officials, including:

    1. Formosa Plastics
    2. South Louisiana Methanol
    3. Koch Methanol (formerly Yuhuang Chemical Industries Methanol)
    4. Mosaic Faustina
    5. Mosaic Uncle Sam
    6. Freeport Sulphur Co.
    7. Freeport McMoRan
    8. America's Styrenics (AmSty)
    9. Ergon
    10. Nustar
    11. Nucor Steel
    12. Exxon
    13. Air Liquide Pipeline
    14. Occidental Chemical (OxyChem)
    15. Wanhua
    16. Atalco / Atlantic Alumina
    17. Kaiser Alumina
    18. Shintech
    19. Syngas
    20. Acadian Gas Pipelines
    21. Bayou Bridge Pipeline

22. Valero Asphalt
23. Marathon
24. Shell
25. Coastal Bridge Co.
26. Millenium Galvanizing
27. Yara Inc.
28. Zen-noh Grain
29. SunCoke
30. ADM Grain
31. Air Products & Chemicals
32. LOCAP
33. Plains Marketing
34. Continental Cement
35. LA Sugar Refining
36. Rain CII

26. Current and former representatives and employees of companies which were not allowed to operate in the Parish have information about the Parish's permitting processes and communications with Parish officials, including:

1. Wolverine
2. Petroplex
3. SJ Louisiana Solar LLC

**INTERROGATORY NO. 3:**

Please state whether you or anyone acting on your behalf obtained written or oral statements, in any form, from any person regarding any of the events or happenings referred to in the Complaint and, if so, state:

(a) The name and address of the person from whom any such statement was taken;
(b) The date on which any such statement was taken;
(c) The names and addresses of the persons having custody of each statement, and;
(d) Whether each statement was written or recorded by a court reporter, stenographer or recording device.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff Inclusive Louisiana objects to this interrogatory because, to the extent it seeks a list of conversations Inclusive Louisiana members have had with members of their community, it is overbroad, unduly burdensome, disproportionate to the needs of the case, and may result in the disclosure of the names of individuals who are not party to this action, which would chill or

violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama,* 357 U.S. 449, 462 (1958). Inclusive Louisiana is a community-based advocacy organization, and some of Plaintiff's members are community leaders who have lived in the St. James Parish area for their whole lives. Disclosure of all conversations that a community-based advocacy organization has had with third-party community members about the problems faced by the community would chill those third parties and violate their rights, as well as Inclusive Louisiana's rights, to freedom of speech and association in violation of the First Amendment. Additionally, to the extent it seeks statements from potential expert witnesses, Inclusive Louisiana objects to this interrogatory because it seeks premature disclosure of expert opinion. Finally, Inclusive Louisiana objects to this interrogatory to the extent it is seeking conversations involving its attorneys as that would violate attorney-client privilege and work-product privilege. Without waiving its objections, Inclusive Louisiana identifies the following:

(1) Louisiana Bucket Brigade, *A Plan Without People*, 2019, available at: https://labucketbrigade.org/wp-content/uploads/2020/08/A-Plan-Without-People-6.2019_0.pdf (INCL00000349 – INCL00000368).

(2) Louisiana Bucket Brigade and Inclusive Louisiana, *Buried at Buena Vista*, October 21, 2024, available at: https://labucketbrigade.org/wp-content/uploads/2024/10/LABB-Final-Buried-at-Buena-Vista-compressed.pdf (INCL00000286 – INCL00000309).

(3) Inclusive Louisiana, Concerned Citizens of St. John, The Descendants Project, and Center for Constitutional Rights, *The Afterlife of Black Enslavement: Environmental Racism and the Desecration of Black History in Louisiana*, July 15, 2022, available at: https://ccrjustice.org/sites/default/files/attach/2022/07/ENVIRONMENTAL%20RACISM%20CERD%20SHADOW%20REPORT%202022.7.18%20%5BFINAL%5D_0.pdf (INCL00000239 – INCL00000285).

(4) Since around August 31, 2022, Inclusive Louisiana has recorded Parish Council public meetings and some Planning Commission meetings. Those meetings are publicly available on the Trendz Network Mobile Application in the "Inclusive Louisiana" channel. The channel has recordings of meetings from the following dates: 6/3/26, 5/20/26, 5/18/26, 5/6/26, 4/15/26, 4/1/26, 3/17/26, 3/3/26, 2/18/26, 2/4/26, 1/21/26, 1/7/26, 12/17/25, 12/3/25, 11/19/25, 11/5/25, 10/27/25, 10/15/25, 10/1/25, 9/17/25, 9/3/25, 8/20/25, 8/6/25, 7/16/25, 7/2/25, 6/30/25, 6/18/25, 6/4/25, 5/21/25, 5/7/25,



EXHIBIT 5B

4/16/25, 4/2/25, 3/31/25, 3/19/25, 3/12/25, 2/19/25, 2/5/25, 1/15/25, 12/18/24, 12/4/24, 11/20/24, 11/13/24, 11/6/24, 10/16/24, 10/2/24, 7/21/24, 7/8/24, 7/29/24, 7/17/24, 7/3/24, 6/18/24, 6/5/24, 5/15/24, 5/1/24, 4/28/24, 4/17/24, 4/3/24, 3/21/24, 3/7/24, 2/21/24, 2/7/24, 1/8/24, 1/3/24, 12/20/23, 12/6/23, 11/21/23, 11/14/23, 11/8/23, 11/9/23, 10/25/23, 6/21/23, 5/24/23, 5/10/23, 4/26/23, 4/12/23, 3/29/23, 2/1/23, 1/18/23, 1/4/23, 12/21/22, 11/22/22, 11/9/22, 10/27/22, 10/12/22, 8/31/22, as well as a few videos from uncertain dates in 2023. As agreed with the Parish, Plaintiff Inclusive Louisiana will not produce these videos as they are publicly available and their contents are equally available to the Parish.

(5) Inclusive Louisiana, *The Faces and Voices of Truth*, November 11, 2021, available at: https://inclusivelouisiana.org/the-faces-and-voices-of-truth/ (INCL00000322 – INCL00000345).

(6) Since May 20, 2026, Inclusive Louisiana has collected residents' comments addressed to the Parish on Proposed Ordinance 26-08 to redesignate an area in Romeville from Agricultural to Industrial and sent them to the Parish, so they are in the Parish's custody. Nevertheless, the emails are produced as INCL00001521 – INCL00001574; INCL00001733 – INCL00001734.

(7) Petition to LDEQ to deny Mosaic Fertilizer's variance request for mechanical evaporators, produced as INCL00001461 – INCL00001462 (the full petition with signatures is in the Parish's custody).

**INTERROGATORY NO. 8:**
Please identify the members of Inclusive Louisiana you allege are descended from people enslaved in St. James Parish, identifying their descendants alleged to be in unmarked burials in St. James Parish, as alleged in Paragraph 23, 668, 669, and 670 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 8:**

Inclusive Louisiana objects to this interrogatory to the extent that it requires it to disclose the identities of all of its membership, because it is overbroad and will result in the disclosure of the names of individuals who are not party to this action and such disclosure would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama,* 357 U.S. 449 (1958).

Plaintiff Inclusive Louisiana objects to this interrogatory for a number of other reasons. Assuming that the second reference to "descendants" is intended to read "ancestors," Inclusive Louisiana objects to the implication that any of its claims require it to identify a particular

formerly enslaved individual who is a direct ancestor of one of its members and is buried in an unmarked burial site in St. James Parish. Given how slavery operated, and in particular the fact that enslaved people's lives and deaths were not properly recorded, descendants face unique challenges when attempting to conduct genealogical research about their ancestors. Moreover, because biological families were forcibly separated, people enslaved often formed close kinship ties and support networks, expanding the concept of "family." Ms. Washington and Ms. LeBoeuf, founding members of Inclusive Louisiana, are part of the descendant community of people enslaved in the River Parishes, which is collectively descended from ancestors who were enslaved in the River Parishes. Without waiving its objections, Inclusive Louisiana responds:

Ms. Barbara Washington is descended from Ms. Harriet Jones who was enslaved in St. James Parish, and, once freed, was able to purchase property adjacent to the area where Ms. Washington now lives. Ms. Washington does not know where Ms. Jones is buried, and believes she may be buried in an unmarked grave in the area. Ms. Washington is also a relative of Mr. Mack Nelson, who is a historic figure from Freetown in the 5th District.

Through oral history, Ms. Gail LeBoeuf learned that she is descended, on her father's side of the family, from an individual named Elvira who was enslaved on a plantation in Louisiana near New Orleans.

Both Ms. LeBoeuf and Ms. Washington have loved ones, family members, and ancestors buried in Pleasant Hill Cemetery in Romeville. That cemetery was created by formerly-enslaved people, so many of them are likely in unmarked burial sites there.

**INTERROGATORY NO. 32:**

Please list and detail the letters to editors, livestreams held, media communications and interviews, and conversations with neighbors and elected representatives alleged in Paragraph 437 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 32:**

Plaintiff Inclusive Louisiana objects to this interrogatory because, to the extent it seeks a "list and detail" of "conversations with neighbors and elected representatives," regarding the Formosa plastics plant (which is what Paragraph 437 is related to) it is overbroad and unduly burdensome. Plaintiff's members have lived in St. James Parish area for decades, in some cases their whole lives, and they are community leaders who participate in St. James Parish Council and Commission meetings on a regular basis. It would be unduly burdensome, and likely impossible, to list every single conversation with neighbors and elected representatives that they have had. Additionally, Plaintiff Inclusive Louisiana objects to this interrogatory because any statements made by Inclusive Louisiana members directly to the Parish are in the possession of, known to, or otherwise equally available to the Parish. Additionally, Plaintiff Inclusive Louisiana objects to this interrogatory because the disclosure of the conversations that a community-based advocacy organization and its leaders have had with third-party community members and its own members about the problems faced by the community would chill those third parties and violate their rights, as well as Inclusive Louisiana's rights, to freedom of speech and association in violation of the First Amendment. Furthermore, it is unduly burdensome for Inclusive Louisiana to list out every letter to the editor, livestream held, or communication or interview that it has had with media regarding Formosa, because Ms. Washington and Ms. LeBoeuf in particular engage regularly in such public communications, and the Parish can equally access any published media interviews with Inclusive Louisiana members. Finally, to the extent this request seeks a list of non-public media communications and interviews, Plaintiff objects because the request is unduly burdensome, and the requested information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections,

Inclusive Louisiana identifies the following letters to editors, livestreams held, media communications, interviews, and communications with elected representatives alleged in paragraph 437 of the Complaint. Some of the communications were sent by RISE St. James while Ms. LeBoeuf and Ms. Washington were its members:

1. Nicholas Cunningham, *"Cancer Alley": Louisiana petchems target Black communities,* Gas Outlook, Jun. 14, 2026.

2. Roshaun Higgins, *On 'Cancer Alley' tour, activists push for more natural beauty in area, less industry,* Nola.com, Feb. 1, 2023.

3. Amanda Heckert, *A Grassroots Force*, Garden & Gun, Nov. 2022.

4. Lylla Younes, *Residents' opposition unlikely to halt planned Formosa plant*, The Advocate, Nov. 19, 2019.

5. Nate Perez and Ryan Kellman, *Over-polluted communities vow to fight despite EPA's rollback on environmental justice,* WYPR 88.1 FM, 5/23/2025.

6. Voices From the Fenceline series by Peak Plastic Foundation (interviews with Gail LeBoeuf, Barbara Washington, Myrtle Felton published on Sep 14, 2021).

7. Inclusive Louisiana, Concerned Citizens of St. John, the Descendants Project, and the Center for Constitutional Rights, *The Afterlife of Black Enslavement: Environmental Racism and the Desecration of Black History in Louisiana*, July 15, 2022.

8. Inclusive Louisiana and Louisiana Bucket Brigade, *Buried at Buena Vista: The Untold Stories of Five Enslaved People*, October 2024.

9. RISE St. James and Louisiana Bucket Brigade (edited by Milton Cayette, Myrtle Felton, Harry Joseph, Sharon Lavigne, Gail Leboeuf, Kate McIntosh, and Barbara Washington), *A Plan Without People: Why the St. James Parish 2014 Land Use Plan Must be Changed,* June 2019.

10. RISE St. James and Louisiana Bucket Brigade May 12, 2021 letter to St. James Parish Council Re: Resolution 19-07 Granting Formosa's Land Use Application.

11. RISE St. James May 25, 2019 Comments to U.S. Army Corps of Engineers, Re: Proposed Transmission Line in St. Charles, St. John the Baptist, and St. James Parishes, May Pose a Danger to Burials for People of African Descent.

12. RISE St. James May 11, 2020 letter to St. James Parish Council Re: Expert Report on Cemeteries – Five More Burial Sites May Exist on Property Proposed for Formosa Plastics.

13. RISE St. James and Louisiana Bucket Brigade January 21, 2020 letter to St. James Parish Council Re: FG LA LLC (Formosa) Land Use Decision.

14. RISE St. James and Louisiana Bucket Brigade December 23, 2019 letter to St. James Parish Council Re: FG LA LLC (Formosa) Land Use Decision.

15. RISE St. James and Sharon Lavigne December 23, 2019 Letter to St. James Parish Council Re: Request to Rescind Decision Set out in Resolution 19-07 Granting Formosa's Land Use Application in Light of Previously Undisclosed Information Revealing Existence of Burial Sites of Enslaved People on Property Proposed for a Formosa Plastics Plant.

16. RISE St. James December 18, 2019 letter to Louisiana Department of Environmental Quality Re: Burial Sites of Enslaved People on Property Proposed for Formosa Plastics: Comments on Permit Applications and Environmental Assessment Statements Submitted by FG LA, LLC (Formosa).

17. Press Release, Judge Denies Cancer Alley Marchers' Request to Cross Louisiana Bridges, May 21, 2019.

18. Press Release, Court Orders Plastics Corporation to Allow Juneteenth Access to Cemetery Where Enslaved People Are Buried, June 18, 2020.

19. Press Release, Once Anonymous Archaeologists Come Forward with Report Indicating More Burial Grounds of Enslaved People Likely Exist on Site Proposed for Controversial Plastics Plant, Mar. 11, 2020.

20. Press Release, Residents and Experts Testify, Call on St. James Parish Council to Rescind Formosa Plastics Land Use Decision, Jan. 22, 2020.

21. Press Release, Reverend Jesse Jackson, National Black Leaders Call on Gov. Edwards to Support RISE St. James in Stopping Formosa Plastics and Institute Industry Moratorium, 2019.

22. Press Release, New Letter from Formosa Plastics Denies Access to Burial Grounds of Enslaved People, May 22, 2020.

23. Press Release, Attorneys to St. James Parish Council: Formosa Plastics' Land Use Already Null and Void, May 12, 2021.

24. Press Release, UN Committee Report Presses U.S. on Slavery Reparations for First Time, Spotlights Environmental Racism in "Cancer Alley," Aug. 30, 2022.



**EXHIBIT 5B**

25. Press Release, Graves of Enslaved People Found on Proposed Formosa Plastics Site, Dec. 18, 2019.

26. Press Release, Residents, Civil Rights Groups, National Legal Organizations Call on St. James Parish Council to Rescind Formosa Plastics Land, Dec. 23, 2019.

27. Event, Inclusive Louisiana's Black History Program, Feb. 23, 2025 at 1pm.

28. Flyer, Our Health Is Our Wealth – Formosa Plastics: The Facts.

29. Ms. Washington and Ms. LeBoeuf have attended countless St. James Parish government public meetings, in particular St. James Parish Council meetings, and they recall that they have attended the majority of meetings where the Formosa land use is on the agenda. They also frequently spoke to council members regarding Formosa.

30. As agreed upon with the Parish, any livestreams related to Formosa will be identified and produced in a supplemental response.

**INTERROGATORY NO. 33:**
Identify all media interviews given by any member or representative of Inclusive Louisiana.

**RESPONSE TO INTERROGATORY NO. 33:**

Plaintiff Inclusive Louisiana objects to this interrogatory because, to the extent it seeks a list that includes media interviews unrelated to St. James Parish's elected officials, industrial siting, industrial development, industrial or environmental emissions, decisions pursuant to the land use plan (including revisions to the land use plan), or alleged racial discrimination, it is not relevant to this litigation, nor is it reasonably calculated to lead to the discovery of admissible evidence. Additionally, it is unduly burdensome for Inclusive Louisiana to list out every media interview its members have ever done, as Ms. LeBoeuf and Ms. Washington in particular have done countless interviews. Plaintiff Inclusive Louisiana also objects because the Parish can equally access any published media interviews with Inclusive Louisiana members, and to the extent the request seeks a list of non-public interviews, the requested information is not relevant to either party's claims or defenses, nor is the request calculated to lead to the discovery of

admissible evidence. Plaintiff Inclusive Louisiana also objects to this interrogatory because, to the extent it seeks media interviews given by members of Inclusive Louisiana in their personal capacity or otherwise not on behalf of Inclusive Louisiana, it is not relevant to this litigation, nor is it reasonably calculated to lead to the discovery of admissible evidence. Without waiving its objections, Inclusive Louisiana points the Parish to those media interviews included in response to Interrogatory No. 32. Additional interviews that Ms. LeBoeuf and Ms. Washington recall are:

1. Delaney Dryfoos, *The majority-Black districts that became Cancer Alley*, The Lens, 10/6/2024.

2. Ray Levy Uyeda, *Black residents' lawsuit against Louisiana parish may proceed, judge rules*, Prism Reports, 2/12/26.

3. Pamela King, *Supreme Court skips review of landmark 'Cancer Alley' case*, E&E News by Politico, 10/21/2025.

4. Halley Parker, *An international body asked US to fix discrimination in 'Cancer Alley.' It hasn't.*, WWNO, 9/23/2024.

5. Safura Syed, *St. James environmental advocates feel 'left out' after recent pro-industry votes*, Louisiana Illuminator, 5/6/2025.

6. James Bruggers, *Appeals Court Hears Arguments in Case Claiming Environmental Racism in Cancer Alley Zoning,* Inside Climate News, 10/7/2024.

7. David Mitchell, *Formosa sued over access to Louisiana site where activists say slaves were buried*, The Advocate, 7/9/2025.

8. Jack Brook, *Federal court reviews civil rights lawsuit alleging environmental racism in a Louisiana parish*, News4Jax, 10/7/2024.

9. Josie Abugov, *Who was buried at site of proposed Louisiana plastics plant? New research points to enslaved people.*, Nola.com, 10/22/2024.

10. AP, *Lawsuit alleging environmental racism in Louisiana parish allowed to proceed, federal court says, WWNO*, 4/10/2025.

11. Lylla Younes, *Black residents in Cancer Alley try what may be a last legal defense to curb toxic pollution*, Grist, 10/10/2024.



EXHIBIT 5B

12. Oliver Laughland, *'You're poisoning us': Ida brings fresh hell for Cancer Alley residents already battling pollution*, The Guardian, 9/3/2021.

13. *Local environmental activists to speak with officials in D.C. about Louisiana's air pollution*, WBRZ, 9/17/2024.

14. Sofi Zeman, *Living in the 'Sacrifice Zone', Pulitzer Center*, 5/30/2023.

15. Matt Haines, *Biden's Ambitious Cancer Goals A Matter of Life or Death for Louisianans*, VOA News, 3/19/23.

16. Nikki Main, Maiya Focht, Harry Lewis-Irlam, *Terrifying look inside America's Cancer Alley where tumors are exploding and animals are mutating*, 16/5/25.

17. Carlyl Calhoun, Garrett Hazelwood, and Eric Schmid, *The True Cost of Fertilizer*, WWNO 89.9, 5.25.25.

18. Antonia Juhasz, *They're Fighting Polluters. Trump's Tax Bill Guts Their Funding.*, Rolling Stone, 7/3/25.

19. Ms. Washington recalls an interview with a Verite News reporter, and Verite News has published articles on Inclusive Louisiana's work in St. James Parish.

20. Ms. LeBoeuf recalls interviews with a Bloomberg News reporter, and Bloomberg News has published articles on Inclusive Louisiana's work in St. James Parrish.

21. As agreed upon with the Parish, any livestreamed interviews on social media accounts will be identified in a supplemental response to the Parish.

## RESPONSES TO DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1**:
Please produce all documents that support or relate to your responses to the foregoing Interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Plaintiff Inclusive Louisiana objects to this request because the information is either already in the Parish's possession or equally available to the Parish, and because the request is confusing, vague, and overbroad, and therefore also unduly burdensome. The request is unclear as to whether there are specific interrogatories that the Parish is seeking documents related to, it is unclear what documents may "support or relate" to any of those responses, especially because

discovery is ongoing and the full extent of the Parish's wrongdoing is thus currently unknown. Without waiving its objections, Inclusive Louisiana refers the Parish to the documents produced in response to Request for Production Nos. 2, 11, 13, 14 as well as: INCL00001514 – INCL00001794, INCL00005111 - INCL00005114.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce all documents listed in your Initial Disclosures of Plaintiff Inclusive Louisiana.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiffs object to this request because the information is either already in the Parish's possession or equally available to the Parish because they are public documents, including published books, websites, or codes. Without waiving its objections, Inclusive Louisiana refers the Parish to the following documents which are in Inclusive Louisiana's custody: INCL00000286 – INCL00000309; INCL00001795 – INCL00005110; RISESJ00000001 – RISESJ00000217; RISESJ00000266 – RISESJ00000411.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce the full medical file and medical records for Gail LeBoeuf establishing the cancer discussed in Paragraphs 10 and 584 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiff Inclusive Louisiana objects to this request because it seeks highly-sensitive information from Ms. LeBoeuf that is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1). More specifically, Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical records, and such information is therefore not relevant. Disclosure of Ms. LeBoeuf's medical file and medical records would violate her right to privacy and physician-patient privilege.

**REQUEST FOR PRODUCTION NO. 4:**
Please produce the full medical file and medical records for Ms. Felton and Ms. Washington establishing the "impacts of Nucor's emissions" and "respiratory ailments" discussed in Paragraphs 251, 263, and 585 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiff Inclusive Louisiana objects to this request because it seeks highly sensitive information from a third party, Ms. Felton, who is no longer a member of Inclusive Louisiana and those documents are not within Inclusive Louisiana's custody, possession, or control.

Plaintiff Inclusive Louisiana also objects to this request because it seeks highly sensitive information from Ms. Washington that is overbroad, unduly burdensome, and disproportionate to the needs of the case under F.R.C.P 26(b)(1). More specifically, Plaintiffs' claims are based on publicly available data equally available to Defendant, and not based on an individual illness or medical records, and such information is therefore not relevant. Disclosure of Ms. Washington's medical file and medical records would violate her right to privacy and physician-patient privilege.

**REQUEST FOR PRODUCTION NO. 5:**
Please produce all medical records for the members of Inclusive Louisiana you identified as suffering health diagnoses, as alleged in Paragraph 23 of the Complaint, in Interrogatory No.9.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

Plaintiff Inclusive Louisiana objects to this request for the reasons described in response to Interrogatory No. 9, and Requests for Production 3 and 4.

**REQUEST FOR PRODUCTION NO. 6:**
Please produce all documents demonstrating Ms. Washington's assertion of a decreased property value, including all property valuations conducted or attempts to sell or lease her current property, as alleged in Paragraph 264 of the Complaint.



EXHIBIT 5B

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Inclusive Louisiana objects because this request prematurely seeks information that is the subject of ongoing discovery, and to the extent that it prematurely seeks expert opinion regarding the calculation of changes in property value over time.

**REQUEST FOR PRODUCTION NO. 7:**
Please produce all documents demonstrating Ms. Washington's attempts to relocate to a home with similar accommodation, as alleged in Paragraph 264 of the Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

Plaintiff Inclusive Louisiana objects to this request because it mischaracterizes the allegation in Paragraph 264, which notes that Ms. Washington "cannot afford to relocate, especially to homes with similar accommodations, *as well as family history*." (Emphasis added.). Inclusive Louisiana also objects because this request prematurely seeks information that is the subject of ongoing discovery, and objects to the extent that this request prematurely seeks expert opinion regarding the calculation of changes in property value over time.

**REQUEST FOR PRODUCTION NO. 8:**
Please produce all documents demonstrating Ms. Felton's assertion of a decreased property value, including all property valuations conducted or attempts to sell or lease her current property, as alleged in Paragraph 264 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Plaintiff Inclusive Louisiana objects to this request because it mischaracterizes paragraph 264 of the Complaint, which states that Ms. Felton "cannot afford to relocate, especially to homes with similar accommodations, *as well as family history*." (Emphasis added.) Inclusive Louisiana also objects to this request because it seeks information from a third party, Ms. Felton, who is no longer a member of Inclusive Louisiana and those documents are not within Inclusive Louisiana's custody, possession, or control.



**EXHIBIT 5B**

**REQUEST FOR PRODUCTION NO. 9:**
Please produce all documents demonstrating Ms. Felton's attempts to relocate to a home with similar accommodation, as alleged in Paragraph 264 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiff Inclusive Louisiana objects to this request for the same reasons as it objects to Interrogatory No. 8.

**REQUEST FOR PRODUCTION NO. 10:**
Please produce all documents demonstrating Ms. Gail LeBoeuf's assertion of a "depreciation of" her property value, including all property valuations conducted or attempts to sell or lease her current property, as alleged in Paragraph 344 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Inclusive Louisiana objects because this request prematurely seeks information that is the subject of ongoing discovery, and to the extent that it prematurely seeks expert opinion regarding the calculation of changes in property value over time.

**REQUEST FOR PRODUCTION NO. 11:**
Please produce a copy of all articles, reports, letters, op-eds, and similar communications published or co-published by you or any of your members that addresses or is related to St. James Parish's elected officials, industrial siting, industrial development, industrial or environmental emissions, decisions pursuant to the land use plan (including revisions to the land use plan), or alleged racial discrimination."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiff Inclusive Louisiana objects to this request as vague because the phrase "similar communications" is not defined. Without waiving its objection, Inclusive Louisiana refers the Parish to INCL00000145 – INCL00000522; INCL00005115 – INCL00005270; RISESJ00000782 – RISESJ00000907. Some of the communications were sent by RISE St. James while Ms. LeBoeuf and Ms. Washington were its members. As agreed upon with the Parish, any responsive documents on social media accounts will be produced in a supplemental response to the Parish.

**REQUEST FOR PRODUCTION NO. 12:**
Please produce all documents establishing the decrease in property values of your members identified in Interrogatory No. 10.

**REQUEST FOR PRODUCTION NO. 12:**

Inclusive Louisiana objects to this request for the same reasons as it objected to Interrogatory No. 10. Inclusive Louisiana also objects the extent that this request prematurely seeks information that is the subject of ongoing discovery, and to the extent that it prematurely seeks expert opinion regarding the calculation of changes in property value over time. Without waiving its objections, Inclusive Louisiana responds refers the Parish to its answers to Interrogatories Nos. 6, 7, and 10.

**REQUEST FOR PRODUCTION NO. 13:**
Please produce a copy of all interviews, statements, speeches, and similar communications done by you or any of your members that addresses or is related to St. James Parish's elected officials, industrial siting, industrial development, industrial or environmental emissions, decisions pursuant to the land use plan (including revisions to the land use plan), or alleged racial discrimination."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiff Inclusive Louisiana objects to this request as vague because the phrase "similar communications" is not defined. Additionally, to the extent the request seeks non-public interviews, the request is unduly burdensome, the requested information is not relevant to either party's claims or defenses, nor is the request calculated to lead to the discovery of admissible evidence. Further, as agreed with the Parish, any responsive posts on social media accounts will be produced in Plaintiff's supplemental responses to the Parish. Without waiving its objection, Inclusive Louisiana refers the Parish to INCL00000001 – INCL00000144; INCL00000523 – INCL00001513, as well as its answer to Request for Production No. 11. Some of the communications were sent by RISE St. James while Ms. LeBoeuf and Ms. Washington were its

members. As agreed upon with the Parish, any responsive documents found on social media accounts will be produced in a supplemental response to the Parish. Additionally, Plaintiff Inclusive Louisiana is still locating some of the press releases identified in response to Interrogatory No. 32, and will produce those also in a supplemental response.

**REQUEST FOR PRODUCTION NO. 14:**
Produce all correspondence and documents between you and any of your members and any member of the press regarding St. James Parish's elected officials, industrial siting, industrial development, industrial or environmental emissions, decisions pursuant to the land use plan (including revisions to the land use plan), or alleged racial discrimination."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiff Inclusive Louisiana objects to this request as irrelevant and unduly burdensome: communications between members of Inclusive Louisiana and members of the press have no relevance to any of the claims or defenses in this case, nor is the request calculated to lead to the disclosure of admissible evidence. In particular, to the extent this request seeks non-public communications with the press, it is unduly burdensome and seeks irrelevant information. Without waiving its objections, Inclusive Louisiana refers the Parish to documents produced in response to Requests for Production Nos. 11 and 13.

**REQUEST FOR PRODUCTION NO. 15:**
Produce all documents you allege show a St. James Parish official or representative steered industry into Districts 4 and 5 because the population was majority Black or with an intent to harm to Black population.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant; because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed; because it calls for Inclusive Louisiana to make a legal conclusion; and to the extent it misstates Plaintiffs' claims, which do not require a showing that the Parish had an



EXHIBIT 5B

"intent to harm [the] Black population." Without waiving its objections, Plaintiff refers the Parish to its Second Amended Complaint, including, but not limited to, the following paragraphs: 264, 285-286, 289, 294, 296, 306-308, 344, 365-68, 606-678. Plaintiff Inclusive Louisiana also refers the Parish to the responses to the following public records requests: R000333-042123, R000364-071923, R000579, R000442-03324.

**REQUEST FOR PRODUCTION NO. 16:**

Other than the analysis or study cited in Footnote 253 of the Complaint, produce any other studies or analyses purporting to establish any link, relationship, or causal effect between an "elevated risk of cancer from pollution" and a "higher cancer incidence among Black communities across Louisiana," as stated in Paragraph 561 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it seeks premature disclosure of expert opinion, and that publicly-available studies are equally available to the Parish. Without waiving its objection, Inclusive Louisiana refers the Parish to the following studies cited in its initial disclosures about the relationship between air pollution and negative health outcomes, as well as Inclusive Louisiana's own advocacy documents discussing the relationship between air pollution and negative health outcomes: INCL00000175 – INCL00000176; INCL00000237 – INCL00000238; INCL00000520 – INCL00000521; INCL00004767 - INCL00004775; INCL00004776 – INCL00004782; INCL00004783- INCL00004791; INCL00004844 - INCL00004852; INCL00004792 - INCL00004843; RISESJ00000700 – RISESJ00000776; RISESJ00000571 - RISESJ00000572; RISESJ00000605 - RISESJ00000607; RISESJ00000619 - RISESJ00000620; RISESJ00000639 - RISESJ00000640.

**REQUEST FOR PRODUCTION NO. 17:**
Produce any study or analysis, specific to St. James Parish, purporting to establish a link, relationship, or causal effect between an "elevated risk of cancer from pollution" and a "higher cancer incidence among Black communities" in St. James Parish.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it seeks premature disclosure of expert opinion, and that publicly-available studies are equally available to the Parish. Without waiving its objection, Inclusive Louisiana refers the Parish to the documents produced in response to Request For Production No. 16.

**REQUEST FOR PRODUCTION NO. 18:**
Produce any study or analysis, specific to St. James Parish, purporting to establish a link, relationship, or causal effect between "pollution" and a "higher cancer incidence among Black communities" in St. James Parish.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it seeks premature disclosure of expert opinion, and that publicly-available studies are equally available to the Parish. Without waiving its objection, Inclusive Louisiana refers the Parish to the documents produced in response to Request for Production No. 16 and 17.

**REQUEST FOR PRODUCTION NO. 19:**
Produce all documents you allege show that any cancers developed in St. James Parish are the result of and/or caused by industrial emissions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it mischaracterizes Plaintiffs' claims, which are not based on any individual illnesses. Plaintiff Inclusive Louisiana also objects to this request to the extent that it seeks premature disclosure of expert opinion, and that publicly-available studies are equally available to the Parish. Without waiving its objections, Inclusive Louisiana refers the Parish to its answers to Interrogatories Nos. 16-18.

**REQUEST FOR PRODUCTION NO. 20:**

Produce all documents you allege show that any cancers developed in St. James Parish are the result of and/or caused by industrial emissions of facilities approved by the Parish after April 2, 2014.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Plaintiff Inclusive Louisiana refers the Parish to its answers to Interrogatory No. 20.

**VERIFICATION**

I declare under penalty of perjury that the foregoing responses are true and correct to the best of my knowledge and memory.

Executed on June 22, 2026

Barbara Washington

Gail LeBoeuf

As to objections:

/s/ Astha Sharma Pokharel
Astha Sharma Pokharel*
Pamela C. Spees, La. Bar Roll No. 29679
Baher Azmy*
Kayla Vinson*
Celine Zhu*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
el. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org
czhu@ccrjustice.org

**Admitted pro hac vice*

William P. Quigley (cooperating counsel)
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440
quigley77@gmail.com

*Attorneys for Plaintiffs Inclusive Louisiana*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served by electronic mail on June 22, 2026, to the counsel of record for Defendant St. James Parish.

/*s*/ Astha Sharma Pokharel
Astha Sharma Pokharel

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members<br>*Plaintiffs*,<br><br>vs.<br><br>ST. JAMES PARISH,<br>*Defendant.* | Civil Action No. 2:23-cv-00987<br>Judge Carl Barbier<br>Magistrate Judge Janis van Meerveld |

**PLAINTIFF INCLUSIVE LOUISIANA'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION**

Pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, Plaintiff Inclusive Louisiana supplements its Responses to Defendant's First Set of Requests for Production of Documents. In the interest of clarity and for ease of reference, Inclusive Louisiana includes herein only the Responses and Objections to Requests that are being supplemented on this date.

Subject to and without waiving the general and specific objections set out in Plaintiff's Responses to Defendant's First Set of Requests, Inclusive Louisiana further objects and responds as follows:

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 2:**
Please identify any and all persons known to you who may have any information that may be relevant to this matter. For each, provide their name, title, employer, last known address and telephone number, and a brief description of their knowledge, and whether you intend to call those persons as witnesses at trial of this matter.



**EXHIBIT 5C**

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it seeks premature disclosure of who Inclusive Louisiana intends to call as witnesses at trial. Without waiving its objections, Inclusive Louisiana identifies the following:

1. Ms. Barbara Washington: See response to Interrogatory No. 1.
2. Ms. Gail LeBoeuf: See response to Interrogatory No. 1.
3. Tiffany Watkins: See response to Interrogatory No. 1.
4. Sharon Lavigne, founder of RISE St. James. Can be contacted through counsel for RISE St. James.
5. Shamell Lavigne, Chief Operating Officer of RISE St. James. Can be contacted through counsel for RISE St. James.
6. Shamyra Lavigne, Executive Assistant of RISE St. James. Can be contacted through counsel for RISE St. James.
7. Pastor Harry Joseph, Mount Triumph Baptist Church. Can be contacted through undersigned counsel.
8. Genevieve Butler, former member of Mount Triumph Baptist Church, left in July of 2025 when she moved to Gonzalez. Can be contacted through counsel for RISE St. James.
9. Robert Taylor, founder of Concerned Citizens of St. John the Baptist Parish. Grandparents buried in Lauderdale cemetery. Can be contacted through counsel for RISE St. James at Tulane Environmental Law Clinic.
10. Current and former members of the Parish Government, including the Council and Planning Commission, have information about land use in the Parish, including the discriminatory land use system, and the development, introduction, passage, and amendment of the St. James Parish Land Use Plan and individual land use approvals, and economic incentives, bond issuances, and tax exemptions.
11. Current and former members of the South Central Planning and Development Commission may also have information related to land use in the Parish, including the discriminatory land use system, and the development, introduction, passage, and amendment of the St. James Parish Land Use Plan.



EXHIBIT 5C

12. Current and former St. James Parish tax assessors may have information about tax payments from and exemptions for companies operating heavy industrial facilities in the Parish.

13. Current and former members of the Port of South Louisiana may have information about industrial facilities that have been steered into the Parish.

14. Desire Line, LLC may have information about the development of a new comprehensive plan for St. James Parish.

15. Steven Nosacka and other members and staff at Trinity Capital Resources, LLC may have information about industrial facilities that have been steered into the Parish.

16. Current and former officials working within the United States Environmental Protection Agency have information about the health risks associated with the chemicals and pollutants emitted by heavy industrial facilities operating within the Parish, as well as documented violations of the Clean Air Act, and other applicable laws intended to ensure environmental protection.

17. Current and former officials working within the Louisiana Department of Environmental Quality have information about chemicals and other pollutants emitted within the Parish by heavy industrial facilities operating within the Parish, as well as violations of permitted emissions limits, the Clean Air Act and other applicable state and federal laws, as well as spills, releases, and accidents at such facilities, and water quality in area water bodies.

18. Former officials with the Louisiana Department of Environmental Quality have information about the agency's efforts to permit and assist companies seeking to locate in St. James Parish, including but not limited to: Shintech, Nucor, and Formosa, as well as the agency's lack of authority over land use in parishes and municipalities.

19. Current and former officials at the U.S. Center for Disease Control and Prevention may have information on the health effects of environmental pollution, including officials at the National Institute for Occupational Safety and Health (NIOSH), the Agency for Toxic Substances and Disease Registry (ATSDR), and the National Center for Environmental Health (NCEH).

20. Current and former officials at the U.S. Occupational Safety and Health Administration (OSHA) may have information about the health effects of chemicals and other pollutants on workers in heavy industrial facilities operating in the Parish, as well as workplace injuries, illnesses, as a result of spills, leaks, and industrial accidents.

21. Current and former officials at the Louisiana Department of Health and Hospitals may have information related to the health of people living in highly industrialized areas in the Parish.

22. Current and former officials at the U.S. Advisory Council on Historic Preservation have information about historic properties and cultural resources in St. James Parish, including properties that are included on the National Register of Historic Places and others that have been deemed eligible for listing.

23. Current and former officials at the National Park Service have information about properties in the Parish that have been listed on the National Register of Historic Place and other properties and resources deemed eligible.

24. Current and former officials at the Louisiana Division of Archaeology in the Louisiana Department of Historic Preservation have information about historic properties and cultural resources in the Parish, including the existence and prevalence of cemeteries where enslaved people were buried, as well as cemeteries that have been damaged or destroyed through industrial development.

25. Current and former officials at the United States Army Corps of Engineers have information about historic resources and properties in the Parish, and facilities that have sought and been granted permits to operate in the Parish through that agency.

26. Current and former officials at the U.S. Census Bureau have information about the population and demographics in St. James Parish, as well as voter registration.

27. Current and former officials of the National Archives have data and information about the Civil War and the operations of the Freedmen's Bureau.

28. Current and former employees at the Equal Justice Initiative have information about Black residents who were lynched in Louisiana and in St. James Parish.

29. Current and former employees and/or representatives of the companies currently operating in the Parish, as well as those that once operated in the Parish, and those who obtained land use approvals but are not currently operating in the Parish, have information about the facilities' emissions, spills, leaks, and accidents, as well as communications with Parish officials, including:

    1. Formosa Plastics
    2. South Louisiana Methanol
    3. Koch Methanol (formerly Yuhuang Chemical Industries Methanol)
    4. Mosaic Faustina
    5. Mosaic Uncle Sam
    6. Freeport Sulphur Co.
    7. Freeport McMoRan
    8. America's Styrenics (AmSty)
    9. Ergon
    10. Nustar
    11. Nucor Steel

12. Exxon
13. Air Liquide Pipeline
14. Occidental Chemical (OxyChem)
15. Wanhua
16. Atalco / Atlantic Alumina
17. Kaiser Alumina
18. Shintech
19. Syngas
20. Acadian Gas Pipelines
21. Bayou Bridge Pipeline
22. Valero Asphalt
23. Marathon
24. Shell
25. Coastal Bridge Co.
26. Millenium Galvanizing
27. Yara Inc.
28. Zen-noh Grain
29. SunCoke
30. ADM Grain
31. Air Products & Chemicals
32. LOCAP
33. Plains Marketing
34. Continental Cement
35. LA Sugar Refining
36. Rain CII

30. Current and former representatives and employees of companies which were not allowed to operate in the Parish have information about the Parish's permitting processes and communications with Parish officials, including:

    1. Wolverine
    2. Petroplex
    3. SJ Louisiana Solar LLC

**INTERROGATORY NO. 3:**

Please state whether you or anyone acting on your behalf obtained written or oral statements, in any form, from any person regarding any of the events or happenings referred to in the Complaint and, if so, state:

(a) The name and address of the person from whom any such statement was taken;
(b) The date on which any such statement was taken;
(c) The names and addresses of the persons having custody of each statement, and;

(d) Whether each statement was written or recorded by a court reporter, stenographer or recording device.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff Inclusive Louisiana objects to this interrogatory because, to the extent it seeks a list of conversations Inclusive Louisiana members have had with members of their community, it is overbroad, unduly burdensome, disproportionate to the needs of the case, and may result in the disclosure of the names of individuals who are not party to this action, which would chill or violate their rights to freedom of speech and association under the U.S. Constitution. *See NAACP v. Alabama,* 357 U.S. 449, 462 (1958). Inclusive Louisiana is a community-based advocacy organization, and some of Plaintiff's members are community leaders who have lived in the St. James Parish area for their whole lives. Disclosure of all conversations that a community-based advocacy organization has had with third-party community members about the problems faced by the community would chill those third parties and violate their rights, as well as Inclusive Louisiana's rights, to freedom of speech and association in violation of the First Amendment. Additionally, to the extent it seeks statements from potential expert witnesses, Inclusive Louisiana objects to this interrogatory because it seeks premature disclosure of expert opinion. Finally, Inclusive Louisiana objects to this interrogatory to the extent it is seeking conversations involving its attorneys as that would violate attorney-client privilege and work-product privilege. Recognizing that the Parish has clarified this request to only be for recorded statements taken on behalf of Inclusive Louisiana, and without waiving its objections, Inclusive Louisiana identifies the following:

(1) Louisiana Bucket Brigade, *A Plan Without People*, 2019, available at: https://labucketbrigade.org/wp-content/uploads/2020/08/A-Plan-Without-People-6.2019_0.pdf (INCL00000349 – INCL00000368).

(2) Louisiana Bucket Brigade and Inclusive Louisiana, *Buried at Buena Vista*, October 21, 2024, available at: https://labucketbrigade.org/wp-content/uploads/2024/10/LABB-Final-Buried-at-Buena-Vista-compressed.pdf (INCL00000286 – INCL00000309).

(3) Inclusive Louisiana, Concerned Citizens of St. John, The Descendants Project, and Center for Constitutional Rights, *The Afterlife of Black Enslavement: Environmental Racism and the Desecration of Black History in Louisiana*, July 15, 2022, available at: https://ccrjustice.org/sites/default/files/attach/2022/07/ENVIRONMENTAL%20RACISM%20CERD%20SHADOW%20REPORT%202022.7.18%20%5BFINAL%5D_0.pdf (INCL00000239 – INCL00000285).

(4) Since around August 31, 2022, Inclusive Louisiana has recorded Parish Council public meetings and some Planning Commission meetings. Those meetings are publicly available on the Trendz Network Mobile Application in the "Inclusive Louisiana" channel. The channel has recordings of meetings from the following dates: 6/3/26, 5/20/26, 5/18/26, 5/6/26, 4/15/26, 4/1/26, 3/17/26, 3/3/26, 2/18/26, 2/4/26, 1/21/26, 1/7/26, 12/17/25, 12/3/25, 11/19/25, 11/5/25, 10/27/25, 10/15/25, 10/1/25, 9/17/25, 9/3/25, 8/20/25, 8/6/25, 7/16/25, 7/2/25, 6/30/25, 6/18/25, 6/4/25, 5/21/25, 5/7/25, 4/16/25, 4/2/25, 3/31/25, 3/19/25, 3/12/25, 2/19/25, 2/5/25, 1/15/25, 12/18/24, 12/4/24, 11/20/24, 11/13/24, 11/6/24, 10/16/24, 10/2/24, 7/21/24, 7/8/24, 7/29/24, 7/17/24, 7/3/24, 6/18/24, 6/5/24, 5/15/24, 5/1/24, 4/28/24, 4/17/24, 4/3/24, 3/21/24, 3/7/24, 2/21/24, 2/7/24, 1/8/24, 1/3/24, 12/20/23, 12/6/23, 11/21/23, 11/14/23, 11/8/23, 11/9/23, 10/25/23, 6/21/23, 5/24/23, 5/10/23, 4/26/23, 4/12/23, 3/29/23, 2/1/23, 1/18/23, 1/4/23, 12/21/22, 11/22/22, 11/9/22, 10/27/22, 10/12/22, 8/31/22, as well as a few videos from uncertain dates in 2023. As agreed with the Parish, Plaintiff Inclusive Louisiana will not produce these videos as they are publicly available and their contents are equally available to the Parish.

(5) Inclusive Louisiana, *The Faces and Voices of Truth*, November 11, 2021, available at: https://inclusivelouisiana.org/the-faces-and-voices-of-truth/ (INCL00000322 – INCL00000345).

(6) Since May 20, 2026, Inclusive Louisiana has collected residents' comments addressed to the Parish on Proposed Ordinance 26-08 to redesignate an area in Romeville from Agricultural to Industrial and sent them to the Parish, so they are in the Parish's custody. Nevertheless, the emails are produced as INCL00001521 – INCL00001574; INCL00001733 – INCL00001734.

(7) Petition to LDEQ to deny Mosaic Fertilizer's variance request for mechanical evaporators, produced as INCL00001461 – INCL00001462 (the full petition with signatures is in the Parish's custody).

(8) Declaration of Gail LeBoeuf and Barbara Washington in Support of Motion for a Temporary Restraining Order and Declaration of Laura Blokker in Support of Motion for a Temporary Restraining Order, *Inclusive Louisiana v. St. James Parish*, No. 23-cv-

00987, Dkt. Nos. 132-2 and 132-3.

(9) Livestream regarding historic markers event at Lutcher library: https://www.facebook.com/reel/3732445050385261

(10) Any statements produced to the Parish in response to Interrogatories Nos. 32 and 33, and RFP Nos. 11 and 13.

**INTERROGATORY NO. 32:**
Please list and detail the letters to editors, livestreams held, media communications and interviews, and conversations with neighbors and elected representatives alleged in Paragraph 437 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 32:**

Plaintiff Inclusive Louisiana objects to this interrogatory because, to the extent it seeks a "list and detail" of "conversations with neighbors and elected representatives," regarding the Formosa plastics plant (which is what Paragraph 437 is related to) it is overbroad and unduly burdensome. Plaintiff's members have lived in St. James Parish area for decades, in some cases their whole lives, and they are community leaders who participate in St. James Parish Council and Commission meetings on a regular basis. It would be unduly burdensome, and likely impossible, to list every single conversation with neighbors and elected representatives that they have had. Additionally, Plaintiff Inclusive Louisiana objects to this interrogatory because any statements made by Inclusive Louisiana members directly to the Parish are in the possession of, known to, or otherwise equally available to the Parish. Additionally, Plaintiff Inclusive Louisiana objects to this interrogatory because the disclosure of the conversations that a community-based advocacy organization and its leaders have had with third-party community members and its own members about the problems faced by the community would chill those third parties and violate their rights, as well as Inclusive Louisiana's rights, to freedom of speech and association in violation of the First Amendment. Furthermore, it is unduly burdensome for Inclusive Louisiana to list out every letter to the editor, livestream held, or communication or interview that it has

had with media regarding Formosa, because Ms. Washington and Ms. LeBoeuf in particular engage regularly in such public communications, and the Parish can equally access any published media interviews with Inclusive Louisiana members. Finally, to the extent this request seeks a list of non-public media communications and interviews, Plaintiff objects because the request is unduly burdensome, and the requested information is neither relevant nor proportionate to the needs of the case. Without waiving its objections, Inclusive Louisiana identifies the following letters to editors, livestreams held, media communications, interviews, and communications with elected representatives alleged in paragraph 437 of the Complaint. Some of the communications were sent by RISE St. James while Ms. LeBoeuf and Ms. Washington were its members:

1. Nicholas Cunningham, *"Cancer Alley": Louisiana petchems target Black communities,* Gas Outlook, Jun. 14, 2026.

2. Roshaun Higgins, *On 'Cancer Alley' tour, activists push for more natural beauty in area, less industry,* Nola.com, Feb. 1, 2023.

3. Amanda Heckert, *A Grassroots Force*, Garden & Gun, Nov. 2022.

4. Lylla Younes, *Residents' opposition unlikely to halt planned Formosa plant*, The Advocate, Nov. 19, 2019.

5. Nate Perez and Ryan Kellman, *Over-polluted communities vow to fight despite EPA's rollback on environmental justice,* WYPR 88.1 FM, 5/23/2025.

6. Voices From the Fenceline series by Peak Plastic Foundation (interviews with Gail LeBoeuf, Barbara Washington, Myrtle Felton published on Sep 14, 2021).

7. Inclusive Louisiana, Concerned Citizens of St. John, the Descendants Project, and the Center for Constitutional Rights, *The Afterlife of Black Enslavement: Environmental Racism and the Desecration of Black History in Louisiana*, July 15, 2022.

8. Inclusive Louisiana and Louisiana Bucket Brigade, *Buried at Buena Vista: The Untold Stories of Five Enslaved People*, October 2024.

9. RISE St. James and Louisiana Bucket Brigade (edited by Milton Cayette, Myrtle Felton, Harry Joseph, Sharon Lavigne, Gail Leboeuf, Kate McIntosh, and Barbara Washington),

*A Plan Without People: Why the St. James Parish 2014 Land Use Plan Must be Changed,* June 2019.

10. RISE St. James and Louisiana Bucket Brigade May 12, 2021 letter to St. James Parish Council Re: Resolution 19-07 Granting Formosa's Land Use Application.

11. RISE St. James May 25, 2019 Comments to U.S. Army Corps of Engineers, Re: Proposed Transmission Line in St. Charles, St. John the Baptist, and St. James Parishes, May Pose a Danger to Burials for People of African Descent.

12. RISE St. James May 11, 2020 letter to St. James Parish Council Re: Expert Report on Cemeteries – Five More Burial Sites May Exist on Property Proposed for Formosa Plastics.

13. RISE St. James and Louisiana Bucket Brigade January 21, 2020 letter to St. James Parish Council Re: FG LA LLC (Formosa) Land Use Decision.

14. RISE St. James and Louisiana Bucket Brigade December 23, 2019 letter to St. James Parish Council Re: FG LA LLC (Formosa) Land Use Decision.

15. RISE St. James and Sharon Lavigne December 23, 2019 Letter to St. James Parish Council Re: Request to Rescind Decision Set out in Resolution 19-07 Granting Formosa's Land Use Application in Light of Previously Undisclosed Information Revealing Existence of Burial Sites of Enslaved People on Property Proposed for a Formosa Plastics Plant.

16. RISE St. James December 18, 2019 letter to Louisiana Department of Environmental Quality Re: Burial Sites of Enslaved People on Property Proposed for Formosa Plastics: Comments on Permit Applications and Environmental Assessment Statements Submitted by FG LA, LLC (Formosa).

17. Press Release, Judge Denies Cancer Alley Marchers' Request to Cross Louisiana Bridges, May 21, 2019.

18. Press Release, Court Orders Plastics Corporation to Allow Juneteenth Access to Cemetery Where Enslaved People Are Buried, June 18, 2020.

19. Press Release, Once Anonymous Archaeologists Come Forward with Report Indicating More Burial Grounds of Enslaved People Likely Exist on Site Proposed for Controversial Plastics Plant, Mar. 11, 2020.

20. Press Release, Residents and Experts Testify, Call on St. James Parish Council to Rescind Formosa Plastics Land Use Decision, Jan. 22, 2020.

21. Press Release, Reverend Jesse Jackson, National Black Leaders Call on Gov. Edwards to Support RISE St. James in Stopping Formosa Plastics and Institute Industry Moratorium, 2019.

22. Press Release, New Letter from Formosa Plastics Denies Access to Burial Grounds of Enslaved People, May 22, 2020.

23. Press Release, Attorneys to St. James Parish Council: Formosa Plastics' Land Use Already Null and Void, May 12, 2021.

24. Press Release, UN Committee Report Presses U.S. on Slavery Reparations for First Time, Spotlights Environmental Racism in "Cancer Alley," Aug. 30, 2022.

25. Press Release, Graves of Enslaved People Found on Proposed Formosa Plastics Site, Dec. 18, 2019.

26. Press Release, Residents, Civil Rights Groups, National Legal Organizations Call on St. James Parish Council to Rescind Formosa Plastics Land, Dec. 23, 2019.

27. INCL00005272 – INCL00005298.

28. Event, Inclusive Louisiana's Black History Program, Feb. 23, 2025 at 1pm.

29. Flyer, Our Health Is Our Wealth – Formosa Plastics: The Facts.

30. Ms. Washington and Ms. LeBoeuf have attended countless St. James Parish government public meetings, in particular St. James Parish Council meetings, and they recall that they have attended the majority of meetings where the Formosa land use is on the agenda. They also frequently spoke to council members regarding Formosa.

31. Livestreams and videos related to Formosa:
    a. Hearing on Formosa, St. James Parish Council, Dec. 19, 2018: https://www.facebook.com/reel/321845018419632
    b. Consider It, VOX video: https://www.facebook.com/reel/1130087053820242
    c. May 31, 2019 interview with Pam Spees regarding denial of marchers' request to cross Louisiana bridges: https://www.facebook.com/reel/346553329252052
    d. Coalition Against Death Alley Marches videos:
        i. https://www.facebook.com/reel/1077017369156704
        ii. https://www.facebook.com/reel/829436354081166
        iii. https://www.facebook.com/reel/386704608878242
        iv. https://www.facebook.com/reel/466759623925687
        v. https://www.facebook.com/reel/519973865246724
        vi. https://www.facebook.com/reel/2465436257066461
    e. Speech by Ms. Barbara Washington regarding Formosa: https://www.facebook.com/reel/456682561558327

f. Speech by Ms. Sharon Lavigne, with Ms. Washington and Ms. LeBoeuf, regarding Formosa: https://www.facebook.com/reel/373732279944806
g. Speech by Ms. Myrtle Felton regarding chemical plants: https://www.facebook.com/reel/2750251211867859
h. Gail LeBoeuf, Myrtle Felton, Sharon Lavigne, Barbara Washington, Anne Rolfes livestream regarding expansion of chemical industry: https://www.facebook.com/reel/465136290788271
i. Sharon Lavigne testimony before U.S. House Subcommittee on Environment and Climate Change, Nov. 20, 2019: https://www.facebook.com/reel/481458892472872
j. Lt. Gen. Russel Honore, Sharon Lavigne, Normal Marmillion video re Formosa: https://www.facebook.com/reel/611456756062068
k. Prayer at Formosa cemeteries, including RISE and Inclusive Louisiana members: https://www.facebook.com/reel/455663078481013 and https://www.facebook.com/reel/632456730838883
l. Sharon Lavigne video regarding Formosa: https://www.facebook.com/reel/2583970288305583
m. Gail LeBoeuf speech regarding Amendment 5: https://www.facebook.com/reel/367868984269721
n. Religious ceremony at Buena Vista Cemetery, including service by Michael Duca: https://www.facebook.com/reel/356137142151267
o. June 19, 2020 Juneteenth observance at Buena Vista Cemetery: https://www.facebook.com/reel/282839619759363
p. Juneteenth 2020 religious ceremony observance at Buena Vista Cemetery: https://www.facebook.com/reel/433435778104933
q. Speech by Gail LeBoeuf regarding South Louisiana Methanol permit hearing: https://www.facebook.com/reel/1295325164177420
r. RISE St. James video regarding Formosa with Joey Fonseca: https://www.facebook.com/reel/2844394612547571
s. Joy Banner speech regarding Buried at Buena Vista: https://www.facebook.com/reel/571556605436625
t. Pastor Joseph speech during press conference on Louisiana's Critical Infrastructure Law: https://www.facebook.com/reel/1251351989686240

32. Inclusive Louisiana refers the Parish to the livestreams and media communications produced in response to RFP Nos. 11 and 13.

**INTERROGATORY NO. 33:**
Identify all media interviews given by any member or representative of Inclusive Louisiana.

**RESPONSE TO INTERROGATORY NO. 33:**

Plaintiff Inclusive Louisiana objects to this interrogatory because, to the extent it seeks a list that includes media interviews unrelated to St. James Parish's elected officials, industrial

siting, industrial development, industrial or environmental emissions, decisions pursuant to the land use plan (including revisions to the land use plan), or alleged racial discrimination, it is not relevant to this litigation, nor is it proportionate to the needs of the case. Additionally, it is unduly burdensome for Inclusive Louisiana to list out every media interview its members have ever done, as Ms. LeBoeuf and Ms. Washington in particular have done countless interviews. Plaintiff Inclusive Louisiana also objects because the Parish can equally access any published media interviews with Inclusive Louisiana members, and to the extent the request seeks a list of non-public interviews, the requested information is not relevant to either party's claims or defenses, nor is the request proportionate to the needs of the case. Plaintiff Inclusive Louisiana also objects to this interrogatory because, to the extent it seeks media interviews given by members of Inclusive Louisiana in their personal capacity or otherwise not on behalf of Inclusive Louisiana, it is not relevant to this litigation, nor is it proportionate to the needs of the case. Without waiving its objections, Inclusive Louisiana points the Parish to those media interviews included in response to Interrogatory No. 32, and RFP Nos. 11 and 13. Additional interviews that Ms. LeBoeuf and Ms. Washington recall are:

1. Delaney Dryfoos, *The majority-Black districts that became Cancer Alley*, The Lens, 10/6/2024.
2. Ray Levy Uyeda, *Black residents' lawsuit against Louisiana parish may proceed, judge rules*, Prism Reports, 2/12/26.
3. Pamela King, *Supreme Court skips review of landmark 'Cancer Alley' case*, E&E News by Politico, 10/21/2025.
4. Halley Parker, *An international body asked US to fix discrimination in 'Cancer Alley.' It hasn't.*, WWNO, 9/23/2024.
5. Safura Syed, *St. James environmental advocates feel 'left out' after recent pro-industry votes*, Louisiana Illuminator, 5/6/2025.



**EXHIBIT 5C**

6. James Bruggers, *Appeals Court Hears Arguments in Case Claiming Environmental Racism in Cancer Alley Zoning,* Inside Climate News, 10/7/2024.

7. David Mitchell, *Formosa sued over access to Louisiana site where activists say slaves were buried*, The Advocate, 7/9/2025.

8. Jack Brook, *Federal court reviews civil rights lawsuit alleging environmental racism in a Louisiana parish*, News4Jax, 10/7/2024.

9. Josie Abugov, *Who was buried at site of proposed Louisiana plastics plant? New research points to enslaved people*., Nola.com, 10/22/2024.

10. AP, *Lawsuit alleging environmental racism in Louisiana parish allowed to proceed, federal court says, WWNO*, 4/10/2025.

11. Lylla Younes, *Black residents in Cancer Alley try what may be a last legal defense to curb toxic pollution*, Grist, 10/10/2024.

12. Oliver Laughland, *'You're poisoning us': Ida brings fresh hell for Cancer Alley residents already battling pollution*, The Guardian, 9/3/2021.

13. *Local environmental activists to speak with officials in D.C. about Louisiana's air pollution*, WBRZ, 9/17/2024.

14. Sofi Zeman, *Living in the 'Sacrifice Zone', Pulitzer Center*, 5/30/2023.

15. Matt Haines, *Biden's Ambitious Cancer Goals A Matter of Life or Death for Louisianans*, VOA News, 3/19/23.

16. Nikki Main, Maiya Focht, Harry Lewis-Irlam, *Terrifying look inside America's Cancer Alley where tumors are exploding and animals are mutating*, 16/5/25.

17. Carlyl Calhoun, Garrett Hazelwood, and Eric Schmid, *The True Cost of Fertilizer*, WWNO 89.9, 5.25.25.

18. Antonia Juhasz, *They're Fighting Polluters. Trump's Tax Bill Guts Their Funding.*, Rolling Stone, 7/3/25.

19. Ms. Washington recalls an interview with a Verite News reporter, and Verite News has published articles on Inclusive Louisiana's work in St. James Parish.

20. Ms. LeBoeuf recalls interviews with a Bloomberg News reporter, and Bloomberg News has published articles on Inclusive Louisiana's work in St. James Parrish.

## RESPONSES TO DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 2:**

Please produce all documents listed in your Initial Disclosures of Plaintiff Inclusive Louisiana.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiffs object to this request because the information is either already in the Parish's possession or equally available to the Parish because they are public documents, including published books, websites, or codes. Without waiving its objections, Inclusive Louisiana refers the Parish to the following documents which are in Inclusive Louisiana's custody: INCL00000286 – INCL00000309; INCL00001795 – INCL00005110; RISESJ00000001 – RISESJ00000217; RISESJ00000266 – RISESJ00000411; INCL00005299 – INCL00005322.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce a copy of all articles, reports, letters, op-eds, and similar communications published or co-published by you or any of your members that addresses or is related to St. James Parish's elected officials, industrial siting, industrial development, industrial or environmental emissions, decisions pursuant to the land use plan (including revisions to the land use plan), or alleged racial discrimination.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiff Inclusive Louisiana objects to this request as vague because the phrase "similar communications" is not defined. Without waiving its objection, Inclusive Louisiana refers the Parish to INCL00000145 – INCL00000522; INCL00005115 – INCL00005270; RISESJ00000782 – RISESJ00000907. Some of the communications were sent by RISE St. James while Ms. LeBoeuf and Ms. Washington were its members. Inclusive Louisiana refers the Parish to any files that may be "similar communications" produced in response to RFP 13.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce a copy of all interviews, statements, speeches, and similar communications done by you or any of your members that addresses or is related to St. James Parish's elected officials, industrial siting, industrial development, industrial or environmental emissions, decisions

pursuant to the land use plan (including revisions to the land use plan), or alleged racial discrimination.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiff Inclusive Louisiana objects to this request as vague because the phrase "similar communications" is not defined. Additionally, to the extent the request seeks non-public interviews, the request is unduly burdensome, the requested information is not relevant to either party's claims or defenses, nor is it proportionate to the needs of the case. Further, as agreed with the Parish, any responsive posts on social media accounts will be produced in Plaintiff's supplemental responses to the Parish. Without waiving its objection, Inclusive Louisiana refers the Parish to INCL00000001 – INCL00000144; INCL00000523 – INCL00001513; INCL00005272 – INCL00005298; INCL00005271; INCL00005323 – INCL00008194; INCL00005276 – INCL00005298. Inclusive Louisiana also refers the Parish to any files that may be "similar communications" produced in response to Interrogatory Nos. 32 and 33, as well as RFP No. 11. Some of these were sent by RISE St. James while Ms. LeBoeuf and Ms. Washington were its members.

**REQUEST FOR PRODUCTION NO. 14:**
Produce all correspondence and documents between you and any of your members and any member of the press regarding St. James Parish's elected officials, industrial siting, industrial development, industrial or environmental emissions, decisions pursuant to the land use plan (including revisions to the land use plan), or alleged racial discrimination.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiff Inclusive Louisiana objects to this request as irrelevant and unduly burdensome: communications between members of Inclusive Louisiana and members of the press have no relevance to any of the claims or defenses in this case, nor is it proportionate to the needs of the case. In particular, to the extent this request seeks non-public communications with the press, it is unduly burdensome and seeks irrelevant information. Without waiving its objections, Inclusive

Louisiana refers the Parish to its responses to Interrogatories Nos. 32 and 33, and RFP Nos. 11 and 13.

**VERIFICATION**

I declare under penalty of perjury that the foregoing responses are true and correct to the best of my knowledge and memory.

Executed on July 22, 2026

Barbara Washington

Gail LeBoeuf

As to objections:

/s/ Astha Sharma Pokharel
Astha Sharma Pokharel*
Pamela C. Spees, La. Bar Roll No. 29679
Baher Azmy*
Kayla Vinson*
Celine Zhu*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
el. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org
czhu@ccrjustice.org

**Admitted pro hac vice*

William P. Quigley (cooperating counsel)
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440
quigley77@gmail.com

*Attorneys for Plaintiffs Inclusive Louisiana*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served by electronic mail on July 22, 2026, to the counsel of record for Defendant St. James Parish.

/*s*/ Astha Sharma Pokharel
Astha Sharma Pokharel

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members<br>*Plaintiffs*,<br><br>vs.<br><br>ST. JAMES PARISH,<br>*Defendant.* | Civil Action No. 2:23-cv-00987<br>Judge Carl Barbier<br>Magistrate Judge Janis van Meerveld |

**PLAINTIFF INCLUSIVE LOUISIANA'S THIRD SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION**

Pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, Plaintiff Inclusive Louisiana supplements its Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents. In the interest of clarity and for ease of reference, Inclusive Louisiana includes herein only the Responses and Objections to Requests that are being supplemented on this date.

Subject to and without waiving the general and specific objections set out in Plaintiff's Responses to Defendant's First Set of Requests, Inclusive Louisiana further objects and responds as follows:

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 11:**
Please identify each and every "official action" of St. James Parish prior to April 2, 2014 which authorized or approved the construction and operation of any industrial facility within the Parish.



**EXHIBIT 5D**

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions will only be known to Inclusive Louisiana once additional discovery is completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Without waiving its objections, Inclusive Louisiana points Defendant to RISE St. James's response to Interrogatory No. 31, and paragraphs 185, 187, 199, 203, 215, 216, 219, 221, 229, 232-35, 245-53, 256, 261-62, 271, 275, 276, 616, 620 of the Second Amended Complaint.

**INTERROGATORY NO. 16:**
Please identify any instance in which the Planning Commission or the Parish Council knowingly authorized or allowed the desecration, destruction, or removal of the remains of former enslaved persons at any burial site on any former plantation site within District 4 or District 5.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent that it misstates allegations in the Complaint, and to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions and knowledge may only be known to Inclusive Louisiana once additional discovery is completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 431-432, 441, 600, 619, 624, 627, 629-648, 665-666 of the Second Amended Complaint and Dkt. No. 132 in this case.

**INTERROGATORY NO. 24:**
Please list the official actions of St. James Parish which led to the proposed location of Shintech in the 5th District, as alleged in Paragraphs 220-224 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 24:**

Plaintiff Inclusive Louisiana objects to this interrogatory because it misstates the allegations in the Complaint: Shintech's proposed location was not in the Fifth District, but in the

Fourth District, in Convent. Plaintiff also objects to this interrogatory to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 229, 232-35, 239, 244-45 of the Second Amended Complaint.

**INTERROGATORY NO. 25:**

Please explain your basis for alleging "Parish employees also made it difficult for community members opposed to Shintech to obtain public records about the project," as alleged in Paragraph 235 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 25:**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Without waiving its objections, Inclusive Louisiana points Defendant to paragraph 235 and the related footnote 174 of the Second Amended Complaint. Inclusive Louisiana also points Defendant to page 121 of J. Timmons Roberts and Melissa M. Toffolon-Weiss, *Chronicles from the Environmental Justice Frontline* (2001):

> It was quite clear that the parish government was not representing the views of plant opponents. In fact, they appeared to be going out of their way at times to create roadblocks to their activities. The parish charged community residents seventy-five cents per page for copies of the public record. This proved to be prohibitively expensive for the protest group. Additionally, the group had a difficult time getting the complete public record from the parish, and there was an instance when a parish employee admitted to destroying a document.

Inclusive Louisiana is aware that a court order required the Parish to reduce the fee for copies of public records. Inclusive Louisiana is also aware that sometime in 1997, the Parish destroyed a



EXHIBIT 5D

document relating to Shintech's application for a Coastal Use Permit in St. James Parish. Both these issues were subject of the lawsuit captioned *St. James Parish Citizens for Jobs and the Environment and Louisiana Environmental Action Network vs. Hymel*, No. 24.722 (23rd La. Dist. Ct.). Inclusive Louisiana also points the Parish to INCL00001736 – 1756, which was previously produced.

**INTERROGATORY NO. 26:**
Please explain your basis for alleging Parish officials supported Shintech counter-opposition, as alleged in paragraph 239 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 26:**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Without waiving its objections, Inclusive Louisiana points Defendant to Inclusive Louisiana's response to Interrogatory No. 25, and paragraphs 233-234 of the Second Amended Complaint.

**INTERROGATORY NO. 27:**
Please explain your basis for alleging Parish officials "found another company willing to take the place Shintech had given up on," as alleged in Paragraph 248 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 27:**
Plaintiff Inclusive Louisiana objects to this interrogatory to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Without waiving its objections, Inclusive Louisiana points Defendant to paragraph 245 of the Second Amended Complaint, which quotes Parish President Hymel as saying "Just because Shintech is gone, that doesn't mean we're going to stop looking," and paragraph 249 which

describes that before Hymel "left the office of Parish President in 2012, a steel manufacturing company [Nucor Steel] would begin construction on the site Shintech had abandoned 15 years earlier." Inclusive Louisiana also points the Parish to the following article: Staff Reports, *Hymel: Nucor announcement a dream come true for the parish*, L'Observateur, September 18, 2010, available at: https://lobservateur.com/2010/09/18/hymel-nucor-announcement-a-dream-come-true-for-parish/.

**INTERROGATORY NO. 28:**
Please identify every statement made by a St. James Parish official or representative which you assert indicated industry was steered to Districts 4 and 5 because the population was majority Black, including who made the statement, what was said, and when the statement was made.

**RESPONSE TO INTERROGATORY NO. 28:**

Plaintiff Inclusive Louisiana objects to this interrogatory because to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Inclusive Louisiana also objects because it calls for a legal conclusion. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 289-93, 295, 315, 316-17, 319, 351, 353, 354, 355, 358, 360, 365367, 483, 546, 547.

**INTERROGATORY NO. 29:**
Please list all instances where you allege the Parish Council "violat[ed] its own Land Use Ordinance" to grant request from companies seeking to locate in Districts 4 and 5, as alleged in Paragraph 373 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 29:**

Plaintiff Inclusive Louisiana objects to this interrogatory because to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is



EXHIBIT 5D

completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Inclusive Louisiana also objects because it calls for Inclusive Louisiana to make a legal conclusion. Without waiving its objections, Inclusive Louisiana points Defendant to its response to Interrogatory No. 31 and paragraphs 384-385, 408-9, 429-432, 441, 443-46, 451-52, 463-64, 500, 502, 508, 510, 516, 524, 542-547, 553 of the Second Amended Complaint.

**INTERROGATORY NO. 30:**

Please explain your basis for alleging that the Parish Council "hurriedly adopted a land use plan . . . to protect the interests of white residents," as alleged in Paragraph 280 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 30:**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Inclusive Louisiana also objects because it calls for Inclusive Louisiana to make a legal conclusion. Without waiving its objections, Inclusive Louisiana points Defendant to paragraphs 303, 310-314, 325 of the Second Amended Complaint.

**INTERROGATORY NO. 31:**

Please list the "serious defects in the applications" of companies that sought to locate in Districts 4 or 5, as alleged in Paragraph 370 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 31:**

Plaintiff Inclusive Louisiana objects to this interrogatory to the extent it asks Inclusive Louisiana to identify actions that are not yet known to Plaintiffs because the full extent of the Parish's actions may only be known to Inclusive Louisiana once additional discovery is completed. Inclusive Louisiana is not withholding any information on the basis of that objection. Inclusive Louisiana also objects because it calls for Inclusive Louisiana to make a legal

conclusion. Without waiving its objections, Inclusive Louisiana points Defendant to its response to Interrogatory No. 29 and paragraphs 384, 408-9, 429-432, 443-45, 451, 463-64, 500, 502, 534, 524, 553 of the Second Amended Complaint.

## RESPONSES TO DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 2:**

Please produce all documents listed in your Initial Disclosures of Plaintiff Inclusive Louisiana.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiffs object to this request because the information is either already in the Parish's possession or equally available to the Parish because they are public documents, including published books, websites, or codes. Without waiving its objections, Inclusive Louisiana refers the Parish to the following documents which are in Inclusive Louisiana's custody: INCL00000286 – INCL00000309; INCL00001795 – INCL00005110; RISESJ00000001 – RISESJ00000217; RISESJ00000266 – RISESJ00000411; INCL00005299 – INCL00005322; INCL00008345 – INCL00008380.

**REQUEST FOR PRODUCTION NO. 16:**

Other than the analysis or study cited in Footnote 253 of the Complaint, produce any other studies or analyses purporting to establish any link, relationship, or causal effect between an "elevated risk of cancer from pollution" and a "higher cancer incidence among Black communities across Louisiana," as stated in Paragraph 561 of the Complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it seeks premature disclosure of expert opinion. Without waiving its objection, Inclusive Louisiana refers the Parish to the following: INCL00000175 – INCL00000176; INCL00000237 – INCL00000238; INCL00000520 – INCL00000521; INCL00004767 - INCL00004775; INCL00004776 – INCL00004782; INCL00004783-INCL00004791; INCL00004844 - INCL00004852;

INCL00004792 - INCL00004843; RISESJ00000700 – RISESJ00000776; RISESJ00000571 - RISESJ00000572; RISESJ00000605 - RISESJ00000607; RISESJ00000619 - RISESJ00000620; RISESJ00000639 – RISESJ00000640; RISESJ00009492 - RISESJ00009590; La. Dep't of Envtl. Quality, Emissions Reporting and Inventory Center (ERIC), https://business.deq.louisiana.gov/Eric/EricHome; U.S. Env't Prot. Agency, Risk-Screening Environmental Indicators ("RSEI") Model, https://www.epa.gov/rsei; EJScreen: Environmental Justice Screening and Mapping Tool, dataset hosted by: https://pedp-ejscreen.azurewebsites.net/.

**REQUEST FOR PRODUCTION NO. 17:**
Produce any study or analysis, specific to St. James Parish, purporting to establish a link, relationship, or causal effect between an "elevated risk of cancer from pollution" and a "higher cancer incidence among Black communities" in St. James Parish.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it seeks premature disclosure of expert opinion. Without waiving its objection, Inclusive Louisiana refers the Parish to the documents produced in response to Request For Production No. 16.

**REQUEST FOR PRODUCTION NO. 18:**
Produce any study or analysis, specific to St. James Parish, purporting to establish a link, relationship, or causal effect between "pollution" and a "higher cancer incidence among Black communities" in St. James Parish.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it seeks premature disclosure of expert opinion. Without waiving its objection, Inclusive Louisiana refers the Parish to the documents produced in response to Request for Production No. 16 and 17.

**REQUEST FOR PRODUCTION NO. 19:**
Produce all documents you allege show that any cancers developed in St. James Parish are the result of and/or caused by industrial emissions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiff Inclusive Louisiana objects to this request to the extent that it mischaracterizes Plaintiffs' claims, which are not based on any individual illnesses. Plaintiff Inclusive Louisiana also objects to this request to the extent that it seeks premature disclosure of expert opinion. Without waiving its objections, Inclusive Louisiana refers the Parish to its answers to Requests for Production Nos. 16-18.

**REQUEST FOR PRODUCTION NO. 20:**
Produce all documents you allege show that any cancers developed in St. James Parish are the result of and/or caused by industrial emissions of facilities approved by the Parish after April 2, 2014.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Plaintiff Inclusive Louisiana refers the Parish to its answers to Requests for Production No. 16-19.

**VERIFICATION**

I declare under penalty of perjury that the foregoing responses are true and correct to the best of my knowledge and memory.

Executed on September 11, 2026

Barbara Washington
Barbara Washington

Gail T. LeBoeuf
Gail LeBoeuf

As to objections:

/s/ Astha Sharma Pokharel
Astha Sharma Pokharel*
Pamela C. Spees, La. Bar Roll No. 29679
Baher Azmy*
Kayla Vinson*
Celine Zhu*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
el. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org
czhu@ccrjustice.org

**Admitted pro hac vice*

William P. Quigley (cooperating counsel)
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440
quigley77@gmail.com

*Attorneys for Plaintiffs Inclusive Louisiana*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was served by electronic mail on September 11, 2026, to the counsel of record for Defendant St. James Parish.

/s/ Astha Sharma Pokharel
Astha Sharma Pokharel