**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members<br>*Plaintiffs*,<br><br>vs.<br><br>ST. JAMES PARISH,<br>*Defendant.* | Civil Action No. 2:23-cv-00987<br>Section J<br>Judge Carl Barbier<br>Magistrate Judge Janis van Meerveld |

**PLAINTIFFS' OPPOSITION TO ST. JAMES PARISH'S MOTION TO COMPEL RESPONSES TO THE PARISH'S FIRST SET OF DISCOVERY**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

PROCEDURAL BACKGROUND .......... 2

ARGUMENT .......... 9

I. THE PARISH IS NOT ENTITLED TO THE IDENTITIES OF ALL MEMBERS OF PLAINTIFFS INCLUSIVE LOUISIANA AND RISE ST. JAMES OR INFORMATION RELATED TO THE RESIDENCE AND PROPERTY OWNERSHIP OF PLAINTIFFS' MEMBERS. .......... 9

A. Compelled Disclosure of the Identities, Residences, and Property Ownership of All Members of Plaintiffs Would Infringe on Their First Amendment Rights. .......... 10

B. The Parish's Requests Do Not Even Meet the Fed. R. Civ. P. 26 (b)(1) Standard .......... 16

C. Plaintiffs Are Not Required to Interrogate Their Members for Residential and Property-Related Information; Nor Are All Members' Residential and Property-Related Information in Plaintiffs' Custody. .......... 16

II. THE PARISH'S HEALTH-RELATED DISCOVERY REQUESTS SEEK IRRELEVANT, DISPRORPORTIONATE, AND PRIVILEGED INFORMATION. .......... 17

A. The Health-Related Requests Seek Information Irrelevant to Plaintiffs' Claims and the Parish's Defenses. .......... 17

B. The Parish's Health-Related Requests Are Disproportionate. .......... 21

C. The Information Sought Is Protected by the First Amendment. .......... 23

D. MTBC's Information is Protected by the Clergy-Penitent Privilege. .......... 25

CONCLUSION .......... 25

## INTRODUCTION

Plaintiffs RISE St. James ("RISE"), Inclusive Louisiana ("Inclusive"), and Mount Triumph Baptist Church ("MTBC") (collectively "Plaintiffs") submit the following opposition to Defendant St. James Parish's ("Defendant," the "Parish," or the "Parish government") Motion to Compel Responses to First Set of Discovery. Dkt. 148. Through its Motion and underlying discovery requests, the Parish seeks the production of irrelevant, highly sensitive materials from the Plaintiff organizations. These requests can be categorized into two groups: requests for the identities, residences, and property ownership information of Plaintiffs' members; and for the health diagnoses and medical records of Plaintiffs' members and of non-member third parties.

Importantly, these requests must be understood against the backdrop of an ongoing campaign of harassment and intimidation aimed at Plaintiffs that has been led by an industry-backed group. As detailed further below, discovery has revealed that Parish officials are directly coordinating with this group formed by industry leaders as well as representatives of specific companies to counter and undermine Plaintiffs' advocacy efforts on behalf of their communities.

Not only is the Parish government not entitled to this information on relevance and proportionality grounds under Fed. R. Civ. P. 26 (b)(1), this information is also protected by the First Amendment associational privilege, and some of it by the clergy-penitent privilege. In the spirit of compromise, Plaintiffs offered to produce responses that would protect the privacy and associational rights of Plaintiffs, their members, and associates, which the Parish rejected.

The Parish's continued insistence on complete production of the requested documents and information amounts to a demand from the government that would severely interfere with Plaintiffs and their members' rights if Plaintiffs were compelled to comply. Plaintiffs justifiably

fear retaliation and harassment, including from their own elected officials working together with industry-backed opponents to specifically target Plaintiffs.

## PROCEDURAL BACKGROUND

### A. The Parish's April 22 Requests

On April 22, 2026,[2] the Parish propounded its First Set of Interrogatories, Requests for Production, and Requests for Admission separately on all three Plaintiffs. These requests are attached to the Parish Motion at Dkt. 148-1 (RISE); 148-2 (Inclusive); and 148-3 (MTBC). Some of these requests sought membership lists and property information. They asked for the identities, residences, and properties of *all* of its members. *See* Dkt. 148-1 Interrogatories 8, 11 at 6-7, and RFP 5 at 12 (RISE); Dkt. 148-2 Interrogatories 7, 10 at 6-7, and RFP 12 at 13 (Inclusive); Dkt. No. 148-3 Interrogatory 6 at 6 (MTBC) (which is not at issue in this motion). Others asked for the identities and property-related information of members who Plaintiffs allege "suffered a decrease in property value as a result of the Parish's actions" and for all documents establishing this decrease in property values of those members. Dkt. 148-1 Interrogatory 11 at 7 and RFP 5 at 12 (RISE); 148-2 Interrogatory 10 at 7, and RFP 12 at 13 (Inclusive); and 148-3 Interrogatory 9 at 7 and RFP 4 at 12 (MTBC).

Another subset requested information related to allegations in Plaintiffs' Complaint that the Parish mischaracterized as being about "health diagnoses" that are the "result of the pollutants," Plaintiffs' members' medical records, and the identities of third parties who Plaintiffs' members knew had suffered various illnesses. Dkt. 148-1 Interrogatories 10, 20 at 7-8, RFP 3 at 12 (RISE); at Dkt. 148-2 Interrogatories 5, 6, 9 at 6-7, RFPs 3, 4, 5 at 12; Dkt. 148-3 Interrogatories 5, 8 at 6, RFP 3 at 11 (MTBC).

### B. Plaintiffs' Responses on May 22 and June 22 Regarding Membership, Residence, and Property Information

On May 22, 2026, Plaintiffs Inclusive Louisiana and RISE St. James responded to these requests. Dkt. 148-4 (RISE), 148-5 (Inclusive). On June 22, they supplemented their responses, *id*., and Plaintiff Mount Triumph Baptist Church also responded. Dkt. 148-6.

As to the membership and property-related requests, RISE, Inclusive, and Mount Triumph objected on the following grounds: For RISE Interrogatory 8, Inclusive Interrogatory 7, and Mount Triumph Interrogatory 6 (not at issue in this motion), requesting *all* members' names, location of residence, and property ownership information, Plaintiffs objected on the grounds of relevance, overbreadth, undue burden, and the First Amendment associational privilege. Each also noted that some of this information was not in its possession, custody or control. But then all provided the addresses of properties owned, in whole or in part, by Plaintiffs and/or their founders and members. Dkt. 148-4 at 11, 148-5 at 10, 148-6 at 9. As to those requests that sought identities and property-related information and documents of members for whom Plaintiffs "allege a decrease in property values," (RISE Interrogatory 11, Inclusive Interrogatory 10, and MTBC Interrogatory 9) Plaintiffs reiterated those objections to the extent the requests sought this information as to *all* members, and added that the request prematurely sought information that is the subject of ongoing discovery, as well as protected by the work-product and attorney-client privilege. Dkt. 148-4 at 14; 148-5 at 13-14; 148-6 at 11-12. Nonetheless, all Plaintiffs identified property owned by Plaintiffs and/or at least one member and articulated the basis for their belief that their property values had decreased—namely proximity to current and future industrial development. *Id*.

As to the requests that sought property-related documents of those members for whom Plaintiffs "allege a decrease in property values" (RISE RFP 5, Inclusive RFP 12, and MTBC

RFP 4), Plaintiff RISE noted that it did not yet have any documents to produce, given the early stage of discovery, dkt 148-4 at 62; and Inclusive, dkt.148-5 at 60, and MTBC, dkt. 148-6 at 11-12, similarly objected on the ground that the information sought is subject to ongoing discovery and prematurely seeks expert opinion.

### C. Plaintiffs' Responses on May 22 and June 22 to the Parish's Health-Related Requests

As to the health-related requests, RISE objected to Interrogatory 10 because it mischaracterized the cited paragraph of its Complaint, asking for diagnoses where none had been alleged. Dkt. 104, ¶25. ("RISE's "leaders and members have been exposed to heightened levels of carcinogens, and a *dramatically increased risk* of cancer . . . as a result of Defendants' discriminatory land use decisions."). RISE then further objected to Interrogatory 10, dkt. 148-4 at 3-4, Inclusive to Interrogatories 5, 6, and 9, dkt. 148-5 at 7-9, and MTBC to Interrogatories 5 and 8, dkt. 148-6 at 7, 10-11, on the grounds the requests are not relevant, because their claims are based on publicly-available data and not based on individual illness or medical information. Further, to the extent that each sought information about *all* members of Plaintiff organizations, and because some of the requests sought information about nonparties (*e.g.* Dkt. 148-6 at 7 ("please identify the five cancer victims buried by Pastor Harry Joseph in 2017")), each underscored overbreadth, burden, and First Amendment associational objections, as well as clergy-communicant privilege, especially given the highly sensitive medical information requested, including of non-parties. *Id.* However, Plaintiffs explained that members who have spent significant time in the Fourth and Fifth Districts, including both organizations' founders, have been exposed to heightened levels of carcinogens. Dkt. 148-4 at 14; Dkt. 148-5 at 13. Inclusive further disclosed that Ms. Gail LeBoeuf has been diagnosed with cholangiocarcinoma and biliary obstruction, and that Ms. Barbara Washington has suffered from a chronic cough and

has required the use of an inhaler to aid breathing. Dkt. 148-5 at 13. As to the interrogatories requesting non-party diagnoses, the Plaintiffs stated that this information is not within its possession, custody, or control. Dkt 148-4 at 13; 148-5 at 12.

As to the health-related document requests, Plaintiffs objected to RISE RFP 3, Inclusive RFP 5, and MTBC RFP 3, with RISE underscoring that the request mischaracterizes Paragraph 25 of their Complaint as being about individual diagnoses, rather than risk. *See* Dkt 148-4 at 61-62. They also stated their objection on relevance grounds, reiterating that their claims are based on publicly-available data about risk, and further objected on overbreadth and privacy grounds. *Id*., Dkt. 148-5 at 58; 148-6 at 27. Furthermore, as to Inclusive RFP 3 and 4, seeking the "full medical file and medical records" of Ms. LeBoeuf, Ms. Washington, and Ms. Felton, Inclusive Louisiana objected on grounds of relevance, overbreadth, undue burden, and disproportionality. Dkt 148-5 at 56-57. Inclusive additionally noted Ms. Felton is no longer a member of Inclusive and her documents are not in Inclusive's possession, custody, or control. *Id*. at 57.

**D. The Parish's July 2nd Deficiency Letter**

On July 2, the Parish wrote to Plaintiffs detailing the following deficiencies with their responses. Dkt. 148-7; 148-8; 148-9. To Plaintiffs' responses relating to members' identities, places of residence, and property values, the Parish argued that Plaintiffs had asserted standing under a representational standing theory, and therefore that the Parish is entitled to conduct discovery on that basis. Additionally, the Parish noted that none of the Plaintiffs had provided sufficient facts for how their property had decreased in value or their basis for believing that it had. As it related to Plaintiffs' responses to the Parish's health-related inquiries, the Parish repeatedly asserted that Plaintiffs had put health diagnoses at issue in the complaint, and "while this information would, under other circumstances, be considered private and personal, [the

Plaintiffs] cannot both tout allegations of its members' health and decline to provide the discoverable facts underlying its allegations." *See, e.g.* 148-7 at 2.

**E. The Plaintiffs' Responses to the July 2nd Deficiency Letter**

On July 17, in response to the Parish's correspondence, the Plaintiffs sent their own letters, a fact omitted in the Parish's Motion. *See* Declaration of Astha Sharma Pokharel, annexed hereto (hereinafter "Sharma Pokharel Decl."), Exs. 1-3. As to the identities, residences, and properties of all members, the Plaintiffs reiterated the First Amendment privilege-based objections. As to the property-related deficiencies, they underscored that they had provided sufficient information to support their claims for associational standing by each identifying "at least one member" who was injured. *See, e.g., id*. (Ex. 1 at 3).

Plaintiffs Inclusive and MTBC confirmed that they "do not at this time intend to rely on injury to any other member," but that they reserve their right to supplement their responses "if other members become willing to share with the Parish their membership in" Plaintiff organizations and "health-related' and "property-related" information as part of this case. *Id.* Ex. 1 at 3-5 and Ex. 2 at 4. This would later be re-iterated by all Plaintiffs in a meet and confer.

Further, as to the health-related deficiencies, Plaintiffs underscored that their claims do not require a showing of a causal chain between industrial pollution and individual disease, but rather a showing of increased risk to those residing in majority-Black areas in the Parish. *See, e.g.* Ex. 3 at 4. This showing can and will be made with publicly-available information. *Id.* Plaintiffs then underscored the privacy interests associated with this claim and detailed a campaign of harassment that they have faced during the course of this litigation. *Id*. at 6; *See also id*., Ex. 1 at 2; Ex 2 at 2-3.

Inclusive further reminded the Parish that it had provided the requested diagnoses of two of its founder-members, and that while the requests for their entire medical file was overbroad as Plaintiffs were not seeking damages nor did their claim require showing causation, Inclusive was willing to confer with the Parish about narrowing the request. *Id*. Ex. 1 at 8.

**F. The Parties' July 20 Meet and Confer**

On July 20, the Parties met to discuss these issues. Afterwards, counsel for Inclusive sent an email summarizing the discussion. Sharma Pokharel Decl., Ex. 4. The details of this meeting and subsequent email correspondence are not mentioned by the Parish in their Motion.

At that meeting, Plaintiffs reiterated that, should any additional members be willing to identify themselves for property or health-related reasons, and should Plaintiffs choose to rely on them to prove their case, the Plaintiffs would update their responses to the Parish's requests. *Id*. at 1. The Parish indicated this was insufficient. *Id*. at 2.

As to health diagnoses, (RISE Interrogatory 20, Inclusive Interrogatories 5 and 6), Plaintiffs offered to share with the Parish a de-identified list of non-parties who Plaintiffs' know have cancer, which would "help address the significant privacy concerns raised with this request." *Id*. at 1. The Parish said this was not acceptable. *Id*. at 2.

Inclusive also indicated that in response to RFPs 3 and 4, it would share a narrower set of medical records to confirm Ms. LeBoeuf's cancer diagnoses and Ms. Washington's respiratory issues. *Id*. at 1. The Parish rejected this offer and noted it would seek full medical records. *Id*. at 2. Counsel for Inclusive Louisiana responded by again noting that "we are willing to negotiate the production of a narrowed set of medical records related to Ms. LeBoeuf and Ms. Washington's health diagnoses alleged, subject to a protective order." *Id*. at 4.

**G. The Parish's Second Deficiency Letter, August 25, 2026**

On August 25, the Parish sent a second deficiency letter. *Id.*, Ex. 5. The Parish noted that for RISE Interrogatory 10, Inclusive Interrogatory 9, and MTBC Interrogatory 8, "If the Plaintiffs are not identifying 'all health diagnoses of those members you allege is the result of the pollutants' because they rely on 'publicly available data' showing a 'dramatically increased risk of cancer,' then any and all 'publicly available data' and/or information in Plaintiffs' possession showing that an increased risk of cancer exists should be produced." *Id.* at 3.

**H. The Parties' Second Meet and Confer, September 1**

On September 1, the Parties held a second meeting to address the second deficiency letter, including the health-related deficiencies. Plaintiffs agreed to supplement the responses by directing the Parish to this publicly-available information. *Id.*, Ex. 6.

**I. Plaintiff RISE St. James' September 11, 2026 Discovery Responses**

Plaintiffs provided their last updates to these discovery requests on September 11. RISE provided, among other updated responses, more information in support of its response to Interrogatory 10 about health-related information. Specifically, it provided a list of publicly-available studies and data that show linkages between air pollution and elevated health risks.[1] Dkt. 148-4 at 82-83; 91-92.

[1] Plaintiffs Inclusive Louisiana and Mount Triumph Baptist Church did not produce additional documents in response to these requests but referred the Parish to RISE's additional productions.

## ARGUMENT

### I. THE PARISH IS NOT ENTITLED TO THE IDENTITIES OF ALL MEMBERS OF PLAINTIFFS INCLUSIVE LOUISIANA AND RISE ST. JAMES OR INFORMATION RELATED TO THE RESIDENCE AND PROPERTY OWNERSHIP OF PLAINTIFFS' MEMBERS.

As the Parish admits, each Plaintiff organization has provided the names and residential and property-related information of at least one member. Dkt. 148 at 11. Plaintiffs have confirmed that those are the only members whose individual information they intend to rely on to prove their claims, and should additional members be willing to disclose their information and should Plaintiffs choose to rely on them, their identities, residences, property-related, and other relevant information will be disclosed prior to the close of fact discovery. *See* Sharma Pokharel Decl., Exs. 1-2 and 4. Thus, Plaintiffs have at this stage fully responded to the interrogatories and document requests that ask them to "identify the members . . . you allege suffered a decrease in property values as a result of the Parish's actions" (Inclusive Interrogatory 10, RISE Interrogatory 11, and MTBC Interrogatory 9), and to "produce all documents establishing the decrease in property values of your members identified in" those interrogatories (Inclusive RFP 12, RISE RFP 5, and Mount Triumph RFP 4). Yet the Parish now seeks the identities, and residential, and property information of *all* of Plaintiffs Inclusive and RISE's members regardless of whether they intend to rely on those members to prove their claims (Inclusive Interrogatory 7 and RISE Interrogatory 8). Dkt. No. 148 at 11.[2] The First Amendment protects against such compelled disclosure, particularly when they are sought by government actors who have already demonstrated hostility toward Plaintiffs because of their views.

---

[2] Defendant does not list Mount Triumph Baptist Church Interrogatory Number 6 (which seeks the identity, residences, and property ownership information of all members) as one of the interrogatories at issue in this motion to compel. Dkt. 148 at 3.

**A. Compelled Disclosure of the Identities, Residences, and Property Ownership of All Members of Plaintiffs Would Infringe on Their First Amendment Rights.**

The Supreme Court has "recognized the vital relationship between freedom to associate and privacy in one's associations." *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 462 (1958). "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute . . . a restraint on freedom of association." *Id*. Thus, a party served with a discovery request that seeks disclosure of membership lists, or any disclosure that would burden its expressive or associational rights, can assert a First Amendment privilege against compelled disclosure. *Id*. at 466; *Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 632 (5th Cir. 1980); *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018), *as revised* (July 17, 2018); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). *See also Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) (holding California regulation requiring disclosure of donor identities of charitable organizations unconstitutional and emphasizing the restraint on associational freedom that could result).

A two-part balancing test guides courts in determining whether compelled disclosure is proper. *See Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 632 (5th Cir. 1980) ("where . . . constitutionally protected rights are infringed by the disclosure order" burden shifts to party seeking discovery to show why disclosure is nevertheless warranted). In 2010, the Ninth Circuit provided further guidance on the two-part test in *Perry*, which district courts in the Fifth Circuit have followed since. *See NetChoice v. Murrill*, No. CV 25-231-JWD-RLB, 2025 WL 2656063, at *10 (M.D. La. Sept. 16, 2025); *Young Conservatives of Texas Found. v. Univ. of N. Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *2 (E.D. Tex. Jan. 11, 2022). First, the "party asserting the privilege must demonstrate ... a 'prima facie showing of arguable first amendment infringement." *Perry*, 591 F.3d at 1160 (internal citations omitted). Then, the requesting party

must meet "exacting scrutiny." *Bonta*, 594 U.S. at 608-609 (exacting scrutiny requires government to show that disclosure is a "means substantially related to a sufficiently important interest" and that the means are "narrowly tailored" to that interest). *See also Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976) ("we can find no interest . . . that could outweigh the private rights of association and expression upheld in N. A. A. C. P. v. Alabama[.]").

**1. Plaintiffs Have Made the Required Prima Facie Showing.**

The first part of the balancing test requires a party "to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry*, 591 F.3d at 1160. A "concrete showing of infringement is unnecessary . . . . Rather, the party asserting the associational privilege need only demonstrate an objectively reasonable probability that disclosure of the information may expose its 'members to economic reprisal, loss of employment, threat of physical coercion, [or] other manifestations of public hostility.'" *Young Conservatives of Texas Found.,* 2022 WL 2901007, at *2. (citing *Hastings*, 615 F.2d at 631). "The requisite proof may include . . . 'specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself.'" *Id*. (citing *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)).

Here, the Parish seeks disclosure of membership lists of two grassroots advocacy organizations that have already been subjected to harassment by an industry-backed group and aligned individuals simply for their advocacy against industrial expansion and pollution in their communities. In particular, RISE has been targeted by Industry Makes, a group led by industry actors, including FG LA LLC's ("Formosa") Director of Community and Government Relations.

Sharma Pokharel Decl., ¶8, Ex. 7. Plaintiff RISE St. James has been subjected to disparaging yard signs and posters, Declaration of Sharon Lavigne, annexed hereto (hereinafter "Lavigne Decl.") ¶8, Ex. A, including large signs posted near and around the home of the family member of one Plaintiff's member, *id.* ¶10, Ex. B,[3] and in front of the primary municipal building in the Parish. *Id.* ¶12, Ex. C. Industry Makes Executive Director, Desiree Lemoine, recently revealed that Industry Makes partially paid for some of these signs. Sharma Pokharel Decl., Ex. 7 at 9. Additionally, Industry Makes has been posting harassing and disparaging messages on social media about Plaintiffs, describing their effort to stop the Parish's re-designation of a part of historic Romeville—where Inclusive's Community Hub is located and where one Inclusive founding member lives—from "agricultural" to "industrial" as "evidence of outside $$$ and influence," *Id*. Ex. 9; describing their engagement in national and international advocacy efforts as "raising outside money and promoting themselves," *id*. Exs. 10, 11; and accusing Sharon Lavigne, founder and director of RISE St. James, of "using her own grandchild to peddle misinformation," *id*. Ex. 12. This harassment has been echoed by others on social media, *see* Lavigne Decl. ¶5, Ex. A, and also directed at Inclusive. *See* Sharma Pokharel Decl., Ex. 19.

That evidence alone would be sufficient to satisfy the first part of the balancing test. But documents produced by the Parish in this litigation reveal even more troubling facts: the Parish itself, including the Parish President and other elected officials, have been in coordination with Industry Makes. On March 28, 2023, just a week after Plaintiffs initiated this case, Industry Makes held a meeting that included St. James Parish President Pete Dufresne as well as Steven

3 One billboard-sized sign was placed directly across from Sharon Lavigne's daughter, Shameka Lavigne's, house. Shameka is not a member of RISE St. James, but Sharon Lavigne believes she was targeted because of her perceived affiliation with the group. *See* Lavigne Decl. ¶10-11, Ex. B.

Nosacka representing St. James Parish Economic Development, and other representatives from industrial facilities in the Parish, including Formosa, Nucor, and OxyChem. *Id*. Exs. 13, 14. At that meeting, the participants stated their concern that funding from one funder "will scale the work being done by *frontline groups* and aligned organizations who are *leading the fight to end petrochemical pollution* in these communities, including . . . [Plaintiff] Rise St. James." Ex. 14 at 3 (emphasis added). They developed a plan to "serve as a united voice for industry" and "make a coordinated effort and tout economic benefits of industry," and discussed "available billboards" in and around the Parish and "Industry Makes Social Media Platforms." *Id*. Industry Makes is in constant contact and coordination with the Parish President and other Parish officials (*id*., Ex. 15), and together they have coordinated with Louisiana state entities starting as early as 2024 (*id*., Ex. 16). Indeed, their coordination with state actors seems to have borne fruit: in an amicus brief filed in 2025 in *Alexander v. St. James Par*., 2025-00866 (La. 3/6/26), 429 So. 3d 255, the Louisiana Attorney General described Plaintiffs, Black-led organizations, as "sock-puppet local NGOs" simply for their advocacy. *Id*. Ex. 18. The Parish's own briefing in this case recently parroted this narrative that, "a vast majority of RISE's funding comes from out of state sources." Dkt. 135 at 24.

In addition, the Parish's own productions further reveal Parish officials' hostility toward anyone who associates with Plaintiffs. When in February 2025 a Catholic church in the Parish sought to host RISE at an event on petrochemical pollution, Sharma Pokharel Decl., Ex. 17 at 3, the Parish councilmember representing the majority-white 3rd District contacted the church's pastor urging him to cancel the event, obliquely referring to the church's funding and saying: "reconsider your decision regarding allowing one-sided biased presentation from these NGO's[.]" *Id*. at 1. The pastor, obviously alarmed, responded: "It is disconcerting that you bring

up financial support for the school and church in what I judge (hopefully in error) to be an effort to stop this conference from taking place." *Id*.

Plaintiffs have shown that they and their members and officers have faced ongoing harassment from industry groups, working in coordination with the Parish, solely for their work to "fight to end petrochemical pollution in these communities," *id*., Ex. 14 at 3, and that Parish officials themselves harbor hostility toward Plaintiffs. This same evidence also establishes the likelihood that disclosure of the identities, residences, and property ownership of other members and congregants will subject them to "public hostility," *Hastings*, 615 F.2d at 631, including at their places of residence. This is sufficient to satisfy their burden under the balancing test. *See Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3–4 (D.D.C. 2002) ("There can be little doubt that such public identification of individuals who never intended their participation in First Amendment activity to thrust them into the harsh glare of the limelight is calculated to chill future political dissent . . ."). Ms. Lavigne's declaration also reveals the potential chilling effect of disclosure. *See* Lavigne Decl. ¶¶7, 11, 18-19.

**2. The Parish's Interest in the Disclosures Fails the Balancing Test and Therefore Does Not Justify the Infringement on Plaintiffs' First Amendment Rights.**

"Where, as here, constitutionally protected rights are infringed by the disclosure order, the party seeking discovery must demonstrate an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent effect which . . . these disclosures may well have[.]" *Hastings,* 615 F.2d at 632 (citations omitted). In the second part of this balancing test, courts have considered "(1) the importance of the information sought to the issues in the case, (2) the availability of the information from alternative sources, (3) the substantiality of the First Amendment interests at stake, and (4) whether the request is carefully tailored to avoid

unnecessary interference with protected activities." *Young Conservatives of Texas Found.,* 2022 WL 2901007, at *3 (citing *Perry*, 591 F.3d at 1161).

The Parish argues that Plaintiffs' membership lists and their members' property information is "relevant and likely to lead to discoverable information." Dkt. 148 at 8. However, that is insufficient even under Fed. R. Civ. P. 26, which requires the Parish to show that the material it seeks is "relevant to any party's claim or defense *and proportional to the needs of the case*" (emphasis added). The Parish does not meet that standard, much less the more exacting standard required to satisfy its burden under the second prong of the balancing test.

The Parish points to allegations in the Complaint that describe how the Parish's pattern and practice of land use discrimination has impacted Plaintiffs' members' properties. Dkt. 148 at 8-10. Indeed, Plaintiffs allege that the Parish's steering of industry to majority-Black communities has negatively impacted the value of homes in those communities. Dkt. 104 at ¶¶ 706-707. But the Parish offers no authority or citation for its claim that it is "entitled to conduct discovery on this issue for *all* Plaintiffs' members." Dkt. 148 at 11. To prove their claims, Plaintiffs can rely on expert analysis of publicly-available information about the impact of industrial expansion on housing values in those parts of the Parish, and can establish standing based on a "sample" of members who own property in those majority-Black parts of the Parish. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd*., 627 F.3d 547, 553 (5th Cir. 2010). This is especially true in cases such as this one where Plaintiffs seek only declaratory and injunctive relief, and not damages. *See id*. at 551.

Plaintiffs also allege that the Parish has placed limitations on the ability of some residents of the 4th District to sell, hold, and convey their property by including in its land use ordinance an explicit restriction on the subdivision of residential property only in one area designated

"Residential/Future Industrial." Dkt. 104 at ¶¶ 306, 706-707. All that is required for Plaintiffs to prove this claim is to show that the provision at issue is discriminatory, and to show that at least one member owns property in the targeted area – historic and majority-Black Romeville, where Ms. Washington and Inclusive Louisiana own property, a fact already disclosed to the Parish.

**B. The Parish's Requests Do Not Even Meet the Fed. R. Civ. P. 26 (b)(1) Standard.**

The Court need not even reach this constitutional question because the Parish fails, for the same reasons, to show that its requests are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Even if the information sought was relevant, the Parish's need for it is outweighed by the interest that non-public members of Plaintiff organizations have in maintaining privacy over their residential and property-related information, especially against a government hostile to Plaintiffs for their views.

**C. Plaintiffs Are Not Required to Interrogate Their Members for Residential and Property-Related Information; Nor Are All Members' Residential and Property-Related Information in Plaintiffs' Custody.**

The Parish asks Plaintiffs to disclose all of its members' locations of residence and property owned, and seeks production of "all documents establishing the decrease in property values of your members identified." Dkt. No. 148 at 4-8. Plaintiffs have disclosed the identities, residences, and property ownership of a sample of members who have agreed to disclosure and who Plaintiffs intend to rely on to prove their claims. They explained extensively their bases for believing their members' property values have been impacted. *Id*. They also explained that proving the impact of industrial expansion on property values "will require expert opinion, the development of which is ongoing." *See, e.g.*, Sharma Pokharel Decl., Ex. 1 at 6. They are not required to interrogate their members about their residences or property ownership. *See Joseph v. King*, No. CV 22-1225, 2023 WL 11983193, at *2 (E.D. La. Nov. 30, 2023) ("a party is not

required to make an extensive investigation in responding to an interrogatory . . . ." for responsive information not reasonably available to it). Nor do they have "constructive possession" over or "legal right to obtain" such information or documents. Dkt. No. 148 at 14. Again, should other members be willing to participate and disclose their residential or property information, Plaintiffs will produce relevant information and documents.

## II. THE PARISH'S HEALTH-RELATED DISCOVERY REQUESTS SEEK IRRELEVANT, DISPRORPORTIONATE, AND PRIVILEGED INFORMATION.

The health-related discovery at issue comprises RISE Interrogatories 10 and 20 and RFP 3; Inclusive Interrogatories 5, 6, and 9 and RFPS 3, 4, and 5; and MTBC Interrogatories 5 and 8 and RFP 3. First, the requests seek information irrelevant to Plaintiffs' claims, which rest on exposure to increased health *risk* rather than individual diagnoses. Second, demands for complete medical files and the identities of ill or deceased non-parties are disproportionate to the needs of the case. Third, much of the information sought is privileged.

### A. The Health-Related Requests Seek Information Irrelevant to Plaintiffs' Claims and the Parish's Defenses.

Plaintiffs' members' individual medical diagnoses, medical records, and health-related information of their loved ones are not relevant to their claims, which seek only declaratory and injunctive relief and are based on a showing of *increased risk* of health harms not *incidence*. Fed. R. Civ. P. 26(b)(1) limits discovery to matters "relevant to any party's claim or defense" and is measured against the claims and defenses actually pled, not against claims the requesting party has misunderstood.

#### 1. Plaintiffs' Health-Related Claims Turn on Exposure to Disproportionate Risk, Not Individual Diagnoses.

Plaintiffs' claims involve health *risks*. Plaintiffs' Thirteenth Amendment and Equal Protection claims allege that the Parish intentionally violated their rights by consistently placing

dangerous facilities in majority-Black neighborhoods and communities while expressly sparing majority white areas of the Parish. *See, e.g.* Compl. ¶¶ 5, 370. Consistent with U.S. Supreme Court precedent, Plaintiffs intend to prove the Parish's discriminatory purpose through impact of land use decisions, history, and the sequence of decisions that resulted in disproportionate pollution burden, not through individual medical charts. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266-68 (1977). Plaintiffs' Substantive Due Process claim alleges the Parish's land use system has "introduced life-threatening substances into residents of the 4th and 5th Districts without consent and over their persistent objections" thereby violating their right to bodily integrity. Compl. ¶700. Plaintiffs will prove the bodily integrity claim by showing that the Parish knowingly subjected residents to heightened exposure and risk, as the Complaint alleges. ¶¶697-703. The claims do not require information regarding a specific member's health diagnosis. RISE alleges that its leaders "have been exposed to heightened levels of carcinogens, and a dramatic *increased risk* of cancer and other diseases." Compl. ¶25. Inclusive and MTBC also allege the same exposure and risk. Compl. ¶¶ 23, 24. The Parish even concedes this point in its own motion to compel as it references that Paragraph 25 "alleges exposure and increased *risk* rather than an existing diagnoses" and that this distinction "may limit the injury the Plaintiffs allege." Dkt. 148 at 23. This concession alone creates a clear distinction between what the Plaintiffs are actually alleging and the irrelevant information that the Parish is seeking. The alleged injury is exposure and risk; therefore, medical records that document diagnoses are not relevant to the claims. Likewise, they will not enable the Parish to prepare defenses to those claims.

The Complaint's health risk allegations are built on publicly available data, which Plaintiffs will rely upon and supplement with expert analysis and testimony. Compl. ¶¶192,197,

200, 204, 258, 500-01, 502, 504. For example, and as already relayed to the Parish, Plaintiffs intend to use data like the EPA's Risk Screening Environmental Indicators ("RSEI") model, the Louisiana state Emissions Reporting and Inventory Center ("ERIC") data, and peer-reviewed research. *See, e.g.* Dkt. 148- 4 at 82-83 (Plaintiff RISE St. James' Sept. 11, 2026 Response to Interrogatory No. 10). The Parish does not need, for instance, Ms. LeBoeuf's full medical file or the names of individuals Pastor Joseph knew who passed away to test whether majority-Black areas in the 4th and 5th Districts carry a cancer risk several times that of the majority-white areas. The Parish raises no affirmative defenses that require evidence of individual diagnosis or incidence of illness.

**2. Associational Standing Does Not Require that Risk be Proven Through Multiple Instances of Specific Harm.**

The Parish wrongly suggests that individual diagnoses are relevant to standing. Dkt. 148 at 22 (Plaintiffs' "standing is based on its individual members, not 'publicly available data.'"). This argument misstates both associational standing doctrine and Plaintiffs' theory.

Plaintiffs do not need to provide evidence of individual illness to prove their health-related harms for associational standing purposes. Injury can rest upon exposure to a substantial, particularized risk of harm. *See, e.g. Mountain States Legal Foundation v. Glickman,* 92 F.3d 1228, 1234-35 (D.C. Cir. 1996). This is especially so where Plaintiffs can show a "substantial probability" that they will be injured. *Nat'l. Res. Defense Counc. v. EPA,* 464 F. 3d 1, 6-7 (D.C. Cir. 2006). ("One may infer from the statistical analysis that two to four of NRDC's nearly half a million members will develop cancer as a result of the rule."). Further, an association has standing to sue for injury to at least one member. *Nat'l Infusion Ctr. Ass'n v. Becerra,* 116 F.4th 488, 497 (5th Cir. 2024). "No factual inquiry is necessary beyond the fact that the member is" injured in the manner alleged. *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th

Cir. 2012). This Court has already held that Plaintiffs sufficiently plead standing based an "increased risk of cancer and other illnesses," Dkt. 62 at 21, which the Fifth Circuit noted. *Inclusive Louisiana v. St. James Par.*, 134 F.4th 297, 302 (5th Cir. 2026).

At summary judgement and trial, relevant evidence will be exposure and risk data, not medical charts. Plaintiffs have identified several specific members with particularized exposure, including Gail LeBoeuf and Barbara Washington, Dkt. 148-5 at 13, Sharon Lavigne, Shamyra Lavigne, and Shamell Lavigne, Dkt. 148-4 at 14, and Pastor Harry Joseph. Dkt. 148-6 at 11.

Further, the Parish's reliance on *Shrimpers & Fishermen of the RGV v. Texas Commission on Environmental Quality* actually supports Plaintiffs' position. 968 F.3d 419 (5th Cir. 2020). There, the organizations alleged only a conjectural future increased risk of harm from not-yet-built facilities, and they could not show what specific health risks those members faced or how the expected emissions would increase those risks. *Id.* at 424-25. Here, this Court has already ruled that the kind of risk alleged by Plaintiffs is sufficient to satisfy standing. Plaintiffs intend to prove the existence of this risk through publicly-available information.

### 3. References to Individuals in the Complaint Serve as an Illumination of Risk, not as Relevant Evidence to Prove Plaintiffs' Claims.

That the Complaint mentions incidences of harm to individual members does not make them relevant for purposes of discovery. Federal courts have consistently rejected the proposition that mere inclusion of an allegation in a complaint automatically renders related documents discoverable. *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059-RJD-SJB, 2022 WL 905125 at *3 (E.D.N.Y. Mar. 28, 2022) (rejecting such a "boundless view of discovery.") The Parish's expansive view misreads the relevance standard of Fed. R. Civ. P. 26(b)(1) and requests information regarding specific instances of harm simply because instances of harmed individuals were included in the Complaint. Dkt. 148 at 14-20. These individual stories are not standalone

causes of action that require full medical files as proof. The relief the Plaintiffs seek makes this distinction clear: Plaintiffs do not ask for compensatory damages relating to a particularized illness; rather they seek declaratory and injunctive relief. Compl. ¶¶ 166-170. The Parish's only authority for compelling medical records, *Merrill v. Waffle House, Inc*., is readily distinguishable on these grounds. 227 F.R.D. 467 (N.D. Tex. 2005). The plaintiffs in *Merrill* had placed their own physical and emotional injuries at issue as a basis for recovering damages. *Id*. at 471-73. Despite the irrelevance of individual diagnoses, Plaintiffs have already disclosed the specific conditions alleged and attempted to compromise with the Parish as it relates to providing more individual health records. Sharma Pokharel Decl., Ex. 4. Given Plaintiffs' offers, the Parish's invasive requests to scrutinize full medical files are plainly unwarranted and impermissible.

**B. The Parish's Health-Related Requests Are Disproportionate.**

The Parish's requests for complete access to Plaintiffs' members' and other third parties' most sensitive health information is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1) considers six proportionality factors: the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. The Fifth Circuit has instructed that district courts "must limit otherwise permissible discovery" when its burden outweighs its likely benefit, because Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quoting *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)). The Parish has failed to meet this burden, and the cases it cites underscore this point. When there are no claims for monetary relief based on particularized injury to individuals, the

defendant cannot base a request for sensitive medical data on its purported potential defenses. Moreover, three of the proportionality factors weigh against the Parish: the importance of the discovery, the parties' relative access to information, and the balance of burden against benefit.

The requests seek far more than any issue in the case could justify. Inclusive RFP 3 seeks "the full medical file and medical records" of Ms. LeBoeuf; Inclusive RFP 4 seeks the "full medical file" of Ms. Felton and Ms. Washington; and RISE RFP 3, Inclusive RFP 5, and Mount Triumph RFP 3 seek "all medical records" of every member identified. A complete medical file may include every medical encounter, prescription, psychiatric note, and unrelated diagnosis, none of which bears on environmental exposure. Because Plaintiffs' claims turn on exposure to increased risk rather than individual diagnoses, *see supra* Section II.A, the importance of this discovery in resolving the issues is minimal.

The interrogatories reach just as far. RISE Interrogatory 10, Inclusive Interrogatory 9, and MTBC Interrogatory 8 ask Plaintiffs to identify each member they allege was "exposed to heightened levels of carcinogens," "all health diagnoses" of those members, and "all deceased family members." Four more interrogatories target non-parties: Inclusive Interrogatory 5 seeks the identities of "all approximately 50 people" Ms. Washington knew "who had died of cancer"; Inclusive Interrogatory 6 seeks the members of Ms. Felton's and Ms. Washington's immediate families with cancer; RISE Interrogatory 20 seeks Ms. Lavigne's "many friends and neighbors with cancer"; and MTBC Interrogatory 5 seeks "the five cancer victims buried by Pastor Harry Joseph in 2017." Each demands the individual's location and timeframe of residence.

The Parish's only authority for compelling medical records, *Merrill*, 227 F.R.D. 467, does not change the analysis. The *Merrill* plaintiffs sought compensatory damages for their own emotional distress and mental anguish, and the court compelled their providers' identities,

diaries, and medical records because that information bore directly on those damages' claims. *Id.* at 470–74. Even then, the court recognized that "all medical records, and especially records pertaining to treatment for purely physical conditions, will not necessarily be relevant to mental anguish claims." *Id.* at 473. Here, Plaintiffs seek no damages for any member's illness.

The parties' relative access to information also weighs against disclosure. The Parish can test Plaintiffs' risk theory with the same publicly available data identified in the Complaint and in Plaintiffs' September 11, 2026, supplemental responses. Dkt. 104 ¶¶ 192, 197, 200, 204, 258, 262 (permitted emissions), 268, 497 (TRI facilities), 498–503 (EJScreen risk data), 504 (peer-reviewed study); Dkt. 148-4 at 82-83, 91-92 (Sept. 11, 2026, RISE supplemental responses). Plaintiffs, by contrast, do not keep their members' or other third parties' medical records.

The burden is also unnecessary because Plaintiffs offered a narrower, privacy-protective path. Following the parties' July 20, 2026, meeting, Plaintiffs' counsel wrote that Inclusive was "willing to negotiate the production of a narrowed set of medical records related to Ms. LeBoeuf and Ms. Washington's health diagnoses alleged, subject to a protective order," and a "de-identified list" of third parties. Sharma Pokharel Decl., Ex. 4 at 1. The Parish refused. *Id* at 1-2. Its refusal of discovery tailored to the case confirms that its demands are disproportionate.

**C. The Information Sought Is Protected by the First Amendment.**

Even if the health-related requests sought relevant and proportional information, which they do not, the First Amendment associational privilege independently bars compelled disclosure. The framework and record of harassment set out in Section I.A above apply with even greater force to members', and other associated individuals', medical histories.

**1. Plaintiffs Have Made a Prima Facie Showing of First Amendment Infringement.**

As set out in Section I.A, once the party resisting discovery makes a prima facie showing of arguable First Amendment infringement, the party seeking discovery must show "an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent effect which . . . these disclosures may well have." *Hastings*, 615 F.2d at 632 (quoting *NAACP*, 357 U.S. at 463); *see supra* Section I.A. Plaintiffs invoke the privilege to protect the identities and health information of their members sought by RISE Interrogatory 10 and RFP 3, Inclusive Interrogatory 9 and RFPs 3, 4, and 5, and MTBC Interrogatory 8 and RFP 3.

The record of harassment detailed in Section I.A.1 satisfies Plaintiffs' burden to make a prima facie showing. *See supra* Section I.A.1. That risk of First Amendment infringement is even more acute when the information at stake is sensitive medical information like a member's cancer diagnosis or a family member's death rather than a name or address, especially where Industry Makes is repeatedly on record publicly questioning the relationship between cancer and industry, Lavigne Decl. ¶¶ 15, 19, and Parish Council members have suggested lifestyle choices are to blame for illness rather than industrial pollution. Compl. ¶483.

**2. The Parish Cannot Show an Interest Sufficient to Justify Disclosure.**

Because Plaintiffs have made a prima facie showing, the Parish must demonstrate an interest in members' health information "sufficient to justify the deterrent effect" disclosure would have. *Hastings*, 615 F.2d at 632 (quoting *NAACP*, 357 U.S. at 463). The Parish cannot meet its burden. First, the information is unimportant to the issues in the case. Plaintiffs' claims and standing rest on exposure to increased risk, not individual diagnoses, so members' medical records are not relevant, let alone important. *See supra* Section II.A. Second, the Parish can test Plaintiffs' risk theory with the same publicly available data on which Plaintiffs rely. *See supra*

Section II.B. Third, the First Amendment interests at stake are substantial: the Parish seeks the most sensitive information a member has, from organizations that already face documented hostility for their advocacy, including through coordination with Parish officials. *See supra* Section I.A. Fourth, the requests are not tailored at all. They demand the "full medical file" and "all medical records" of every identified member, and the Parish rejected Plaintiffs' offer of a narrowed, diagnosis-limited production under a protective order. *See supra* Section II.B. The Parish's interest falls well short of justifying the intrusion.

**D. MTBC's Information is Protected by the Clergy-Penitent Privilege.**

The Parish's requests to MTBC for the identities of "five cancer victims buried by Pastor Harry Joseph in 2017," Interrogatory 5, all health diagnoses and deceased family members of congregants exposed to heightened levels of pollution, Interrogatory 8, and all health records support those diagnoses, RFP 3, would violate the clergy-penitent privilege to the extent it requires Pastor Harry Joseph to disclose private health-related information relayed to him in confidence in the course of spiritual counseling. "The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence . . ." *Trammel v. U.S.*, 445 U.S. 40, 51 (1980). Few topics are more sensitive, and therefore deserving of this privilege, than counseling around terminal diagnoses.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Parish's motion. Plaintiffs further request an award of their reasonable expenses, including attorneys' fees, incurred in opposing the motion under Federal Rule of Civil Procedure 37(a)(5)(B), because the Parish's motion was not substantially justified and no circumstances make an award unjust.

Dated: October 13, 2026 Respectfully submitted,

/s/ Clara Potter
Clara Potter, La. Bar Roll No. 38377
Devin Lowell, La. Bar Roll No. 36555
Lisa Jordan, La. Bar No. 20451
ENVIRONMENTAL LAW CLINIC
TULANE LAW SCHOOL
6329 Freret St.
New Orleans, LA 70118
Tel.: (504) 865-5789
Fax: (504) 862-8721
cpotter2@tulane.edu
dlowell@tulane.edu
lwjordan@tulane.edu

*Attorneys for RISE St. James*

/s/ Hailey Green
Hailey Green, Student Attorney
hgreen8@tulane.edu

/s/ Forge Mathes
Forge Mathes, Student Attorney
fmathes@tulane.edu

/s/ Julia Bursby
Julia Bursby, Student Attorney
jbursby@tulane.edu

*Student Attorneys for RISE St. James*

/s/ Astha Sharma Pokharel
Astha Sharma Pokharel*
Pamela C. Spees, La. Bar Roll No. 29679
Baher Azmy*
Kayla Vinson*
Cheyenne Blackburn
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org
cblackburn@ccrjustice.org

** Admitted pro hac vice*

William P. Quigley (cooperating counsel)
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440
quigley77@gmail.com

*Attorneys for Plaintiffs Inclusive Louisiana and Mount Triumph Baptist Church*