**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members<br>*Plaintiffs*,<br><br>vs.<br><br>ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION,<br>*Defendants*. | Civil Action No. 2:23-cv-00987<br>Section J<br>Judge Carl Barbier<br>Magistrate Judge Janis van Meerveld |

**DECLARATION OF ASTHA SHARMA POKHAREL**

I, Astha Sharma Pokharel, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am an attorney representing Plaintiffs Inclusive Louisiana and Mount Triumph Baptist Church and submit this declaration in support of their Opposition to the Defendant's Motion to Compel Responses to First Set of Discovery.

2. Attached as **Exhibit 1** is a true and correct copy of a July 17, 2026 letter that I sent to counsel for St. James Parish on behalf of Inclusive Louisiana in response to the Parish's July 2, 2026 deficiency letter.

3. Attached as **Exhibit 2** is a true and correct copy of a July 17, 2026 letter that I sent to counsel for St. James Parish on behalf of Mount Triumph Baptist Church in response to the Parish's July 2, 2026 deficiency letter.

4. Attached as **Exhibit 3** is a true and correct copy of a July 17, 2026 letter that Clara Potter sent to counsel for St. James Parish on behalf of RISE St. James in response to the Parish's July 2, 2026 deficiency letter.

5. Attached as **Exhibit 4** is a true and correct copy of three emails exchanged between July 20-22, 2026 among counsel for Plaintiffs and Defendant, as a follow up to a meet and confer held on July 20, 2026.

6. Attached as **Exhibit 5** is a true and correct copy of the Parish's second deficiency letter, sent to Plaintiffs on August 25, 2026.

7. Attached as **Exhibit 6** is a true and correct copy of an email that I sent on September 1, 2026 to counsel for Defendant, after a meet and confer that same day regarding the second deficiency letter.

8. Attached as **Exhibit 7** is a true and correct copy of a page on Industry Makes' website titled "Leadership Team," which includes Janile Parks. Based on my personal knowledge, Janile Parks is the Director of Government and Community Relations at FG LA LLC, a subsidiary of the Formosa Plastics Group.

9. Attached as **Exhibit 8** is a true and correct copy of Josie Abugov, *Louisiana environmental justice activists navigate pushback under Trump. 'No one on our side.'*, Nola.com, June 21, 2026, available at https://www.nola.com/news/environment/cancer-alley-louisiana-epa-trump-environmental-justice/article_e3972f63-bab9-430e-afda-bd3ac257b843.html

10. Attached as **Exhibit 9** is a true and correct copy of a post on Industry Makes's Facebook page from June 15, 2026, available at: https://www.facebook.com/IndustryMakesLa/posts/pfbid0juz3J4is3QukSLhbfbwbo76VWNdFKbwJ7Xrvpzy4dUWqBmBFj7Dswc98ADG6UUUrl#?hab

11. Attached as **Exhibit 10** is a true and correct copy of a post on Industry Makes's Facebook page from September 28, 2025, available at:

https://www.facebook.com/IndustryMakesLa/posts/pfbid02k44gic2vUEPv5Kf2ogsAQEgGJM2Ggg9xWuchZeabursecNkQw4tJLCtUWB4sxsRMl#?fdj

12. Attached as **Exhibit 11** is a true and correct copy of a post on Industry Makes's Facebook page from September 1, 2025, available at: https://www.facebook.com/IndustryMakesLa/posts/pfbid02WwrR1qKk6E65bHcJsqLx6q1dAttUb9K7x9VXgeLVT5QYNiwFbTyzjuVGqhALyRihl#?jhk

13. Attached as **Exhibit 12** is a true and correct copy of a post on Industry Makes's Facebook page from January 12, 2026, available at https://www.facebook.com/IndustryMakesLa/posts/pfbid0pwTyzz7LrmXxhGXCbxP7GyatNLt93ji2EN7a2FqgegLwouRunKaoSHDfY7U1rJ7Al#?cbh

14. Attached as **Exhibit 13** is a true and correct copy of an email and its attachment produced by the Parish in discovery. The email is from Desiree Lemoine, Campaign Manager at Industry Makes, to a number of people including Parish President Pete Dufresne. The document is Bates stamped SJP-00003222 – SJP-00003223.

15. Attached as **Exhibit 14** is a true and correct copy of minutes from a March 28, 2023 meeting produced by the Parish in discovery. The meeting participants include the St. James Parish President as well as an individual representing St. James Parish Economic Development, as well as representatives of Industry Makes, Nucor, OxyChem, and Formosa. The document is Bates stamped SJP-00003227 – SJP-00003231.

16. Attached as **Exhibit 15** is a true and correct copy of emails produced by the Parish in discovery. The emails are from St. James Parish Executive Assistant to Parish President Pete Dufresne and an another individual, forwarding a set of talking points regarding "interesting cancer facts" shared by Desiree Lemoine, the Campaign Manager at Industry Makes, for Parish

President Dufresne to use at the River Ready Economic Development Initiative ("RREDI") breakfast. The emails are Bates stamped SJP-00004242 – SJP-00004243.

17. Attached as **Exhibit 16** is a true and correct copy of emails produced by the Defendant in discovery. The emails are between various individuals, including Parish President Pete Dufresne and Industry Makes Campaign Manager Desiree Lemoine, and Louisiana Economic Development. The emails are Bates stamped SJP-00004981 – SJP-00004983.

18. Attached as **Exhibit 17** is a true and correct copy of emails produced by the Defendant in discovery. The emails are between St. James Parish Councilmember Ryan Louque and Father Vincent Dufresne. The emails are Bates stamped SJP-00005006 – SJP-00005009.

19. Attached as **Exhibit 18** is a true and correct copy of the cover page and an excerpt of the amicus brief submitted by Louisiana Attorney General Liz Murrill in *Alexander v. St. James Par.*, 2025-00866 (La. 3/6/26), 429 So. 3d 255.

20. Attached as **Exhibit 19** is a true and correct copy of a Facebook post by Robbie Poche, Jr. on June 15, 2026, available at: https://www.facebook.com/share/p/1Ca1cyzGCq/.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Astha Sharma Pokharel

EXECUTED this 13th day of October 2026

# EXHIBIT 1

CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

July 17, 2026

**VIA ELECTRONIC MAIL**

Danielle L. Borel
danielle.borel@bswllp.com

**RE: *Inclusive Louisiana v. St. James Parish:* Inclusive Louisiana's Response to St. James Parish's July 2, 2026 Deficiency Letter**

Dear Danielle,

This is a response to your July 2, 2026 Deficiency Letter to Inclusive Louisiana. We look forward to discussing these issues on **July 20, 2026 at 10.30am CT**.

***Response to Interrogatory No. 3*** *is deficient and not responsive. Inclusive's assertion that Interrogatory No. 3 seeks a list of any "conversations Inclusive Louisiana members have had with other members of the organization or community" is false, as the Interrogatory seeks recorded statements. Further, Inclusive' s assertion that the request is objectionable because it may implicate "individuals who are not party to this action" is entirely unsupported by law; St. James is entitled to discover any relevant information, whether or not originating from a party to the action. Further, if Inclusive is withholding any statements based on the work-product privilege, as loosely asserted, please provide a log of the withheld documents. St. James is not seeking conversations between only Plaintiffs and their lawyers.*

- **Response**: The Parish's statement that this interrogatory only seeks recorded statements clarifies the scope of the request. Inclusive Louisiana has produced all responsive recorded statements it has identified that anyone acting on its behalf has taken. However, to the extent this interrogatory covers statements taken and filed in this case or litigation in related cases, or publicly-submitted comments, Inclusive Louisiana refers the Parish to the following additional documents which are also either in the Parish's custody or equally available to the Parish:

    1. Declaration of Gail LeBoeuf and Barbara Washington in Support of Motion for a Temporary Restraining Order and Declaration of Laura Blokker in Support of Motion for a Temporary Restraining Order, *Inclusive Louisiana v. St. James Parish*, No. 23-cv-00987, Dkt. Nos. 132-2 and 132-3.
    2. Any letters produced to the Parish in response to RFP No. 11.

***Response to Interrogatory No. 4*** *is incomplete and does not answer the question. Inclusive fails to state if it has retained any expert witnesses and, if so, their identity.*

- **Response:** This interrogatory seeks the identification of expert witnesses who Inclusive Louisiana has retained and intends to call at trial. Under Fed. R. Civ. Pr. 26(a)(2)(D), a "party must make these disclosures at the times and in the sequence that the court

orders." The court has set a deadline for April 23, 2027, and that is the deadline by which Inclusive Louisiana intends to decide and disclose the expert witnesses it intends to call at trial. As Defendant knows, Inclusive Louisiana retained Laura Blokker to submit an expert report in support of the temporary restraining order motion filed on June 18, 2026 (Dkt. No. 132-2). Inclusive Louisiana has not determined whether it intends to call Laura Blokker as a witness at trial.

***Response to Interrogatory No. 5*** *is incomplete and deficient. Inclusive fails to identify the "50 people Barabara Washington 'reports that she personally knows' 'who had died of cancer,'" as alleged in Paragraphs 10 and 585 of the Complaint. While this information would, under other circumstances, be considered private and personal, Inclusive cannot both tout factual allegations and decline to provide the discoverable facts underlying its allegations.*

- **Response:** In addition to the objections already stated in response to this interrogatory, including the serious First Amendment concerns implicated by it, Inclusive Louisiana further objects that this interrogatory implicates the privacy interests of the fifty families who are not parties to the case; such intrusion is disproportionate to the needs of this case, especially since none of Plaintiffs' claims turn on this allegation as none of Plaintiffs' claims are based on individual disease, but rather the increase in the *risk* of illness as a result of disproportionate exposure to industrial pollution, which will be established by publicly-available data, equally available to the Parish.

  The privacy interests are especially important in this context, as industry-backed actors have been engaging in a campaign of harassment against members of Plaintiffs in this litigation, including ad hominem online attacks, disparaging comments in public meetings, statements that they are motivated by "outside money and influence," and a widespread effort to put large harassing yard signs around the Parish, including immediately adjacent to members' homes and public buildings. Plaintiffs have faced similar targeting and accusations by, for example, the Louisiana Attorney General, who in an amicus brief filed in Louisiana Supreme Court in *Alexander v. St. James Par.*, 2025-00866 (La. 3/6/26), 429 So. 3d 255, has described Plaintiffs in this case as "sock-puppet local NGOs" simply for advocating against industrial expansion in their communities. This increases Inclusive Louisiana's concerns about disclosing any identifying information about these individuals and exposing their surviving family members or loved ones to harassment.

  Without waiving these objections, Inclusive Louisiana has already identified Ms. Washington's sister in the Complaint. As to additional individuals, Inclusive Louisiana is willing to meet and confer with the Parish about this request.

***Response to Interrogatory No. 6*** *is incomplete and deficient. Inclusive fails to identify the "the members of Ms. Felton and Ms. Washington's immediate families with cancer,'" as alleged in Paragraphs 263 and 583 of the Complaint. While this information would, under other circumstances, be considered private and personal, Inclusive cannot both tout factual allegations and decline to provide the discoverable facts underlying its allegations.*

- **Response:** In addition to the objections already stated in response to this interrogatory, Inclusive Louisiana further objects that this interrogatory implicates the privacy interests of third parties; such intrusion is disproportionate to the needs of this case, especially since none of Plaintiffs' claims turn on this allegation as none of Plaintiffs' claims are based on individual disease, but rather the increase in the *risk* of illness as a result of disproportionate exposure to industrial pollution, which will be established by publicly-available data, equally available to the Parish.

  The privacy interests are especially important in this context, as industry-backed actors have been engaging in a campaign of harassment against members of Plaintiffs in this litigation, including ad hominem online attacks, disparaging comments in public meetings suggesting they are motivated by "outside money and influence," and a widespread effort to put large harassing yard signs around the Parish, including immediately adjacent to members' homes and public buildings. Plaintiffs have faced similar targeting and accusations by, for example, the Louisiana Attorney General, who in an amicus brief filed in Louisiana Supreme Court in *Alexander v. St. James Par.*, 2025-00866 (La. 3/6/26), 429 So. 3d 255, has described Plaintiffs in this case as "sock-puppet local NGOs" simply for advocating against industrial expansion in their communities. This increases Inclusive Louisiana's concerns about disclosing any identifying information about these individuals and exposing their surviving family members or loved ones to harassment.

  Without waiving these objections, Inclusive Louisiana has already identified Ms. Washington's sister in the Complaint. As to additional individuals, Inclusive Louisiana is willing to meet and confer with the Parish about this request.

***Response to Interrogatory No.*** *7 is incomplete and deficient. Inclusive has asserted standing based on its factual allegations. St. James is entitled to conduct discovery on those allegations, which includes identifying Inclusive's members and the property owned in St. James Parish. As Inclusive has asserted representational standing, this information is relevant and discoverable. The answer also does not clarify whether Inclusive has members other than Barbara Washington and Gail LeBoeuf.*

- **Response**: In its response, Inclusive Louisiana identified two founding members – Barbara Washington and Gail LeBoeuf – who own property in the Fourth District. This is sufficient to satisfy associational standing, as all that is required is a showing of injury to at least one member of the plaintiff organization. *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 497 (5th Cir. 2024). "No factual inquiry is necessary beyond the fact that the member is a" residential property owner adjacent to a toxic industry in the 4th or 5th district. *See Hancock Cnty. Bd. of Sup'rs* v. Ruhr, 487 F. App'x 189, 198 (5th Cir. 2012). Inclusive Louisiana does not at this time intend to rely on injury to any other members, but it reserves its right to supplement this response if other members become willing to share with the Parish their membership in Inclusive Louisiana and property-related information as part of this case.

  And, as Inclusive Louisiana stated in its response to this interrogatory, the First

Amendment explicitly protects against compelled disclosure of Inclusive Louisiana's membership list, which is effectively what this request seeks. Disclosure of members who have not consented to their membership in Inclusive Louisiana being made public would be unduly burdensome and disproportionate to the needs of the case, given the privacy rights implicated, particularly in the context of the campaign of harassment that Inclusive Louisiana and other plaintiffs are facing by industry groups.

In its original response, Inclusive Louisiana did not clarify whether Inclusive Louisiana had any members other than Ms. Washington and Ms. LeBoeuf because that is not what the interrogatory asks. Inclusive Louisiana does have members other than Ms. Washington and Ms. LeBoeuf.

***Response to Interrogatory No. 8*** *is incomplete and deficient. It does not provide any information to establish, as alleged by Inclusive, that its members have ancestors buried on the sites of former plantations within the Parish. While we are sympathetic to the difficulties of tracing lineage in these circumstances, St. James is entitled to information to substantiate Inclusive's pled allegations and the response provides no such substantiating information. Also, this response does not address other members aside from Ms. Washington and Ms. LeBoeuf. Paragraph 23 of the Complaint states "its founders and members" believe to have ancestors in unmarked cemeteries in St. James Parish. Paragraph 668 states "[e]very Plaintiff has members who have ancestors" who are buried in unmarked cemeteries. Paragraph 669 alleges "Members of Plaintiff Inclusive Louisiana have ancestors buried in former plantations in St. James Parish, including the Brusley and Monroe planation cemeteries in Convent, . . ." The response provided does not provide the factual basis for this assertion. As originally requested, please provide the identity of any Inclusive members, aside from Ms. Washington and Ms. LeBoeuf, who Inclusive contends has ancestors buried in unmarked cemeteries in St. James Parish and identify facts substantiating their connection to the ancestors.*

- **Response**: The Parish's Interrogatory as originally drafted did not seek "information to substantiate" anything in particular, but only sought the identities of people alleged to be buried in unmarked burial sites in St. James Parish. In its response, Inclusive Louisiana identified two founding members – Barbara Washington and Gail LeBoeuf – who are part of the descendant community of people enslaved in the River Parishes, and have identified two known formerly-enslaved ancestors, including one (Harriet Jones) who is likely buried in St. James Parish. It is sufficient for Inclusive Louisiana to show that at least one member was injured to establish standing. *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 497 (5th Cir. 2024). "No factual inquiry is necessary beyond the fact that the member is a" part of the community of descendants of people once enslaved in the River Parishes. *See Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012). If Inclusive Louisiana discovers additional information that is responsive to this request, it will supplement its response. Nevertheless, Inclusive Louisiana is willing to meet and confer to discuss what "substantiating information" the Parish is seeking.

  Inclusive Louisiana does not at this time intend to rely on injury to any other member, but it reserves its right to supplement this response if other members become willing to

share with the Parish their membership in Inclusive Louisiana and ancestry-related information as part of this case.

And, it is not required, as St. James Parish implies, to disclose its entire membership list, as the First Amendment explicitly protects against disclosure of Inclusive Louisiana's membership list, which is effectively what this request seeks.

In its original response, Inclusive Louisiana did not state whether Inclusive Louisiana had any members other than Ms. Washington and Ms. LeBoeuf because that is not what the interrogatory asks. Inclusive Louisiana does have members other than Ms. Washington and Ms. LeBoeuf.

***Responses to Interrogatory No. 9 and Request for Production No. 5*** *are incomplete and deficient. Inclusive fails to identify the "health diagnoses of those members,'" alleged in Paragraph 23 of the Complaint who have been exposed to "heightened levels of carcinogens" which Inclusive has identified as "all members of Inclusive Louisiana living, working or spending substantial time in those districts, . . ." While this information would, under other circumstances be considered private and personal, Inclusive cannot both tout allegations of its members' health and decline to provide the discoverable facts underlying its allegations. Also, Inclusive fails to identify the "deceased family members," alleged in Paragraph 263 of the Complaint.*

- **Response**: This letter mischaracterizes the Complaint: Inclusive Louisiana does not allege any health diagnoses of any members in Paragraph 23. It alleges "heightened levels of carcinogens and other harmful pollutants and a dramatically increased *risk* of cancer and other diseases" (emphasis added).

  Inclusive Louisiana does allege that Ms. Gail LeBoeuf has been diagnosed with cancer, and Inclusive Louisiana provided the exact diagnoses in its response to this interrogatory. It also alleges that Ms. Barbara Washington has suffered from a chronic cough and that she has required the frequent use of an inhaler to aid in breathing.

  In other parts of the complaint, Inclusive Louisiana does not make allegations about the health diagnoses of any Inclusive Louisiana members other than Ms. LeBoeuf and Ms. Washington. And, in any case, Plaintiffs' claims are based on publicly-available data equally available to Defendant, and not based on an individual illness or medical records, and such information is therefore not relevant, and, given the privacy rights implicated, its disclosure would be disproportionate to the needs of the case. Nor is this information within Inclusive Louisiana's possession, custody, or control.

  Inclusive Louisiana does not at this time intend to rely on injury to any other member, but it reserves its right to supplement this response if other members become willing to share with the Parish their membership in Inclusive Louisiana and health-related information as part of this case.

***Responses to Interrogatory No. 10 and 20, and Request for Production Nos. 6 , 7, 8, 10, and 12*** *are incomplete and deficient. Inclusive fails to provide the facts regarding how the property at 8191 Pleasant Hill St., Convent, LA has decreased in value, what the decrease is, when it occurred, and on what basis Ms. Washington rests her belief that properties in the 4th and 5th district have decreased. Inclusive fails to provide a factual basis for its assertion that "the value of her property has not kept up with the pace of increase in value of property elsewhere in the Parish." Inclusive fails to provide the facts regarding how the property at 6116 Badeaux St.,15 Convent, LA has decreased in value, what the decrease is, when it occurred, and on what basis Ms. LeBoeuf rests her belief that properties in the 4th and 5th district have decreased. Inclusive fails to provide the facts regarding how the property at 8111 Romeville St, Convent, LA has decreased in value, what the decrease is, when it occurred, and on what basis Inclusive rests its belief that properties in the 4th and 5th district have decreased. Further, Inclusive does not clarify whether Ms. Washington and Ms. LeBoeuf are its only members with an alleged decrease in property value.*

- **Response**: Inclusive Louisiana has articulated in its response its basis for stating that the value of Ms. Washington, Ms. LeBoeuf's, and Inclusive Louisiana's properties are negatively impacted by industry. It is more than reasonable for Inclusive Louisiana to base its assessment on the fact that those properties are proximate to toxic, polluting industry. In other words, "no factual inquiry is necessary beyond the fact that the member is a" residential property owner near a polluting industry in the 4th or 5th District. *See Hancock Cnty. Bd. of Sup'rs* v. Ruhr, 487 F. App'x 189, 198 (5th Cir. 2012). Precisely "how" that decrease occurred, "[w]hat that decrease is" and "when it occurred" is the subject of ongoing discovery, and will require expert opinion, development of which is also ongoing.

***Responses to Interrogatory No. 12 and 13*** *are incomplete. Aside from Ms. Washington and Ms. LeBoeuf, Inclusive does not specify whether any other member attended the meetings.*

- **Response**: Inclusive Louisiana is not aware of any other members who attended the meetings referenced in interrogatory 12 and 13, but Inclusive Louisiana reserves the right to supplement these answers should it become aware of other members who joined these meetings. In Inclusive Louisiana's responses, it stated that it was possible that Ms. LeBoeuf had gone to meetings related to the Comprehensive Plan. Ms. LeBoeuf has since recalled that she did in fact go to meetings related to the Comprehensive Plan.

***Responses to Interrogatory No. 14*** *are incomplete. Aside from Ms. Washington and Ms. LeBoeuf, Inclusive does not specify whether any other member alleges their ancestors are buried in unmarked burial grounds.*

- **Response**: Interrogatory No. 14 does not ask Inclusive Louisiana to identify members who allege their ancestors are buried in unmarked burial grounds, but rather to "identify the first time your organization or any member of your organization became aware of the possible existence of a burial site that may contain the remains of former enslaved persons on any former plantation site within District 4 or District 5." The

response identified the first time Ms. LeBoeuf and Ms. Washington became aware of the possible existence of burial sites, which was before Inclusive Louisiana's founding.

***Response to Interrogatory No. 22*** *is incomplete. Inclusive does not answer the question posed regarding white residents of District 4 and 5 in the "Residential/Future Industrial" designation that were allowed to subdivide their property or sell it. The response fails to identify the requested information or confirm Inclusive does not have any responsive information.*

- **Response**: Inclusive Louisiana is not aware of "white residents in District 4 and 5 in the 'Residential/Future Industrial' who were allowed to subdivide their property or sale it to someone other than an immediate family member." None of Plaintiffs' claims requires showing that such a resident exists. Nevertheless, further discovery may reveal that there were such residents.

***Responses to Interrogatory No. 21 and 33 Request for Production No. 4, 8, and 9*** *are incomplete. If Inclusive cannot provide a factual basis for its allegations regarding its former member, Ms. Felton, those allegations should be removed from the operative Complaint. Otherwise, Inclusive must provide the factual basis for the allegation it presented to a federal court.*

- **Response**: Inclusive Louisiana is unclear about the reference to Interrogatory No. 33. As to interrogatories No. 21 and RFPs 4, 8, and 9, Inclusive Louisiana has a reasonable factual basis for alleging those facts. It is more than reasonable for Inclusive Louisiana to base its assessment on an impact to Ms. Felton's property on the fact that properties in Romeville, where Ms. Felton lives, as alleged in Paragraph 251 of the Complaint, are proximate to toxic, polluting industry. Evaluation of how precisely that decrease occurred, and what it is, is the subject of ongoing discovery, and will require expert opinion, development of which is also ongoing. Moreover, Ms. Felton's property documents, which the Parish seeks, are simply not within Inclusive Louisiana's custody or control. Should Inclusive Louisiana obtain any of this information or documents, if they are responsive, relevant, not privileged, and their production is not otherwise objectionable, Inclusive Louisiana will supplement its production.

***Response to Interrogatory No. 28*** *is incomplete. In addition to its own factual allegations in the Complaint referenced, Inclusive does not state whether its assertion is based on any statement by a St. James Parish official not included in its Complaint.*

- **Response:** To the extent that this interrogatory seeks all facts and evidence to support any of Plaintiffs' claims, it is a contention interrogatory more properly reserved for a later stage of discovery. Inclusive Louisiana expects that further discovery will reveal additional discriminatory statements by Parish officials, and should Inclusive Louisiana become aware of any additional statements that are responsive to this request and subject to discovery, it will supplement its responses. In addition to the paragraphs in the Complaint identified in response to Interrogatory No. 28, there may be additional statements in documents that the Parish produced in response to the following public

records requests: R000333-042123, R000364-071923, R000579, R000442-03324, identified in response to RFP No. 15, and R000678-052726.

***Response to Request for Production No. 3 and 4** are entirely deficient. Inclusive cannot levy factual allegations regarding Ms. LeBoeuf's and Ms. Washington's health and simultaneously refuse to provide the underlying documentation that would substantiate its allegation.*

- **Response:** What Inclusive Louisiana objects to is a request for Ms. Washington and Ms. LeBoeuf's "full medical file and medical records," which is an overbroad request that is disproportionate to the needs of the case given Ms. Washington and Ms. LeBoeuf's privacy rights. Plaintiffs' claims do not seek damages, and do not require a showing of a causal chain between industrial pollution and incidence of disease, but rather require a showing of an increased *risk* to health as a result of residing in the Fourth or Fifth districts, a showing which will be based on information that is publicly-available or equally available to Defendant. Nevertheless, Plaintiff Inclusive Louisiana is willing to meet with the Parish to discuss narrowing this request.

Sincerely,

/s/ Astha Sharma Pokharel
Astha Sharma Pokharel
Pamela C. Spees
Baher Azmy
Kayla Vinson
Celine Zhu
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org
czhu@ccrjustice.org

William P. Quigley (cooperating counsel)
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440
quigley77@gmail.com

# EXHIBIT 2

CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

July 17, 2026

**VIA ELECTRONIC MAIL**

Danielle L. Borel
danielle.borel@bswllp.com

**RE: *Inclusive Louisiana v. St. James Parish*: Mount Triumph Baptist Church's Response to St. James Parish's July 2, 2026 Deficiency Letter**

Dear Danielle,

This is a response to your July 2, 2026 Deficiency Letter to Mount Triumph Baptist Church. We look forward to discussing these issues on **July 20, 2026 at 10.30am CT**.

***Response to Interrogatory No. 3*** *is deficient and not responsive. Mount Triumph's assertion that Interrogatory No. 3 seeks a list of any "conversations that members of the clergy have had with congregants and/or members of the community," is false, as the Interrogatory seeks recorded statements. Further, Mount Triumph's assertion that the request is objectionable because it may implicate "individuals who are not party to this action" is entirely unsupported by law; St. James is entitled to discovery any relevant information, whether or not originating from a party to the action. Further, if Mount Triumph is withholding any statements based on the work-product privilege, as loosely asserted, please provide a log of the withheld documents. St. James is not seeking conversations between only Plaintiffs and their lawyers.*

- **Response**: The Parish's statement that this interrogatory only seeks recorded statements clarifies the scope of the request. Mount Triumph Baptist Church has identified all recorded statements that anyone acting on its behalf has taken. However, to the extent this interrogatory covers statements filed in this litigation, or publicly-submitted comments, Mount Triumph Baptist Church refers the Parish to the following additional documents which are either in the Parish's custody or equally available to the Parish:
    1. Declaration of Gail LeBoeuf and Barbara Washington in Support of Motion for a Temporary Restraining Order and Declaration of Laura Blokker in Support of Motion for a Temporary Restraining Order, *Inclusive Louisiana v. St. James Parish*, No. 23-cv-00987, Dkt. Nos. 132-2 and 132-3.
    2. RISESJ00001339 – RISESJ00001344 (Syngas comments)
    3. RISESJ00001163 – RISESJ00001190 (Ergon comments), RISESJ00000938 – RISESJ00001048 (exhibits)

4. July 2, 2018 comments to LDEQ regarding Nustar, to be produced by July 22
5. July 11, 2019, March 12, 2020, and January 24, 2020 Comments to LDEQ regarding Mosaic Uncle Sam air permit, to be produced by July 22

***Response to Interrogatory No. 4*** *is incomplete and does not answer the question. Mount Triumph fails to state if it has retained any expert witnesses and, if so, their identity.*

- **Response:** This interrogatory seeks the identification of expert witnesses who Mount Triumph Baptist Church as retained and intends to call at trial. Under Fed. R. Civ. Pr. 26(a)(2)(D), a "party must make these disclosures at the times and in the sequence that the court orders." The court has set a deadline for April 23, 2027, and that is the deadline by which Mount Triumph Baptist Church intends to decide and disclose the witnesses it intends to call at trial. Mount Triumph Baptist Church retained Laura Blokker to submit an expert report in support of the temporary restraining order motion filed on June 18, 2026 (Dkt. No. 132-2). Mount Triumph Baptist Church has not determined whether it intends to call Laura Blokker as a witness at trial.

***Response to Interrogatory No. 5*** *is incomplete and entirely deficient. Mount Triumph alleges in the Complaint that Pastor Joseph buried five cancer victims but fails to provide any substantiating information in its response. While this information would, under other circumstances, be considered private and personal, Mount Triumph cannot both tout allegations of its members and decline to provide the discoverable facts underlying its allegations.*

- **Response:** In addition to the objections already stated in response to this interrogatory, including the serious First Amendment and clergy-communicant privilege concerns implicated by it, Mount Triumph Baptist Church reiterates its objection that this interrogatory implicates the privacy interests of five families who are not parties to this case; such intrusion is disproportionate to the needs of this case, especially since none of Plaintiffs' claims turn on this allegation as none of Plaintiffs' claims are based on individual disease, but rather the increase in the *risk* of disease as a result of disproportionate exposure to industrial pollution, which will be established by publicly-available data, equally available to the Parish.

  The privacy interests are especially important in this context, as industry actors and local residents have been engaging in a campaign of harassment against members of Plaintiffs in this litigation, including ad hominem online attacks, disparaging comments in public meetings, statements that they are being motivated by "outside money and influence," and a widespread effort to put large harassing yard signs around the Parish, including immediately adjacent to members' homes and public buildings. Plaintiffs have faced similar targeting and accusations by, for example, the Louisiana Attorney

General, who in an amicus brief filed in Louisiana Supreme Court in *Alexander v. St. James Par.*, 2025-00866 (La. 3/6/26), 429 So. 3d 255, has described Plaintiffs in this case as "sock-puppet local NGOs" simply for advocating against industrial expansion in their communities. This increases Mount Triumph Baptist Church and Pastor Joseph's concerns about disclosing any identifying information about these individuals and exposing their surviving family members or loved ones to harassment. Nevertheless, Mount Triumph Baptist Church is willing to meet and confer with the Parish about this request.

***Response to Interrogatory No. 7*** *is incomplete and deficient. It does not provide any information to establish, as alleged by Mount Triumph, that its members have ancestors buried on the sites of former plantations within the Parish. While we are sympathetic to the difficulties of tracing lineage in these circumstances, St. James is entitled to some information to substantiate Mount Triumph's pled allegations and the response provides no such substantiating information.*

- **Response**: The Parish's Interrogatory does not seek "information to substantiate" anything, but only seeks the identities of people alleged to be buried in unmarked burial sites in St. James Parish. In its response, Mount Triumph Baptist Church identified Pastor Joseph as being part of the descendant community of people once enslaved in the River Parishes. If Mount Triumph Baptist Church discovers additional information that is responsive to this request, it will supplement its response.

***Responses to Interrogatory No. 8 and Request for Production No. 3*** *are incomplete and deficient. Mount Triumphs fails to identify the "health diagnoses of those members,'" said in Paragraph 24 of the Complaint to have been exposed to "heightened levels of carcinogens," which Mount Triumph has identified as "all members of Mount Triumph Baptist Church living, working or spending substantial time in those districts, . . ." While this information would, under other circumstances, be considered private and personal, Mount Triumph cannot both tout allegations of its members' health and decline to provide the discoverable facts underlying its allegations.*

- **Response**: This letter mischaracterizes the Complaint: Mount Triumph Baptist Church does not allege any health diagnoses of any members in Paragraph 24. It only alleges "expos[ure] to heightened levels of carcinogens and other harmful pollutants and a dramatically increased *risk* of cancer and other diseases" (emphasis added). In other words, "no factual inquiry is necessary beyond the fact that the member" works or lives "in an [impacted] district," and is therefore necessarily exposed to a heightened level of health risk. *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012). The request for health diagnoses of its members is objected to for the reasons

stated in Mount Triumph Baptist Church's original response.

***Responses to Interrogatory No. 9 and Request for Production Nos. 4*** *are incomplete and deficient. Mount Triumph fails to provide the facts regarding how the property at 7159 Paul Nelson Road, St. James, LA has decreased in values, what the decrease is, when it occurred, and on what basis rests the belief that properties in the 4th and 5th district have decreased. Further, Mount Triumph does not clarify whether the property on which the church sits, owned by Pastor Joseph, is its only member with an alleged decrease in property value.*

- **Response**: Mount Triumph Baptist Church has articulated in its response its basis for stating that the value of its property is negatively impacted by industry. It is more than reasonable for Mount Triumph Baptist Church to base its assessment on the fact that those properties are proximate to toxic, polluting industry. Precisely "how" that decrease occurred, "[w]hat that decrease is" and "when it occurred" is the subject of ongoing discovery, and will require expert opinion, development of which is also ongoing. Mount Triumph Baptist Church does not intend to rely on injury to any other members, but it reserves its right to supplement this response if other congregants become willing to share with the Parish their membership in Mount Triumph Baptist Church and property-related information for this case.

***Responses to Interrogatory No. 11 and 12*** *are incomplete. Aside from Pastor Joseph and Ms. Butler, Mount Triumph does not specify whether any other member attended the meetings.*

- **Response**: Mount Triumph Baptist Church is not aware of any other members who attended the meetings referenced in interrogatory 12 and 13, but Mount Triumph Baptist Church reserves the right to supplement these answers should it become aware of other members who joined these meetings.

***Response to Interrogatory No. 21, 22, 23, and 24*** *are incomplete. In addition to its own factual allegations in the Complaint referenced, Mount Triumph does not state whether its assertion is based on any statement by a St. James Parish official not included in its Complaint.*

- **Response**: To the extent that this interrogatory seeks all facts and evidence to support any of Plaintiffs' claims, it is a contention interrogatory more properly reserved for a later stage of discovery. Mount Triumph Baptist Church expects that further discovery will reveal additional discriminatory statements by Parish officials, and should it become aware of any additional statements that are responsive to this request and subject to discovery, it will supplement its responses. In addition to the paragraphs in the Complaint identified in response to Interrogatory No. 28, there may be additional statements in documents that the Parish produced in response to the following public

records requests: R000333-042123, R000364-071923, R000579, R000442-03324, identified by Inclusive Louisiana in response to RFP No. 15, and R000678-052726.

Sincerely,

/s/ Astha Sharma Pokharel
Astha Sharma Pokharel
Pamela C. Spees
Baher Azmy
Kayla Vinson
Celine Zhu
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org
czhu@ccrjustice.org

William P. Quigley (cooperating counsel)
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440
quigley77@gmail.com

# EXHIBIT 3

The Environmental Law Clinic
at Tulane Law School

July 17, 2026

***Via Email***

Danielle L. Borel
Breazeale, Sachse, & Wilson LLP
danielle.borel@bswllp.com

**RE: *Inclusive Louisiana v. St. James Parish* Response to St. James Parish's July 2, 2026 Deficiency Letter**

Dear Danielle,

I am writing to respond to your letter of deficiency regarding RISE St. James' ("RISE") *Responses to Defendant's First Set of Interrogatories, Requests for Production, and Requests for Admission* (the "Responses"). We look forward to discussing this further at our meet and confer, scheduled for July 20, 2026.

- **Response to Interrogatory No. 3** is deficient and not responsive. RISE's assertion that Interrogatory No. 3 seeks a list of any "conversations RISE St. James members have had with other members of the organization or community" is false, as the Interrogatory seeks recorded statements. Further, RISE's assertion that the request is objectionable because it may implicate "individuals who are not party to this action" is entirely unsupported by law; St. James is entitled to discovery of *any* relevant information, whether or not originating from a party to the action. Further, if RISE is withholding any statements based on the work-product privilege, as loosely asserted, please provide a log of the withheld documents. St. James is not seeking conversations between only Plaintiffs and their lawyers.
    - **RISE's Response:** The Parish's statement that this interrogatory only seeks recorded statements and not conversations between only Plaintiffs and their lawyers helpfully clarifies the scope of this request. RISE St. James does not have any responsive recorded statements that it, or anybody acting on its behalf, has taken. However, to the extent this interrogatory covers statements taken and filed in this case or to support litigation on topics at issue in this case, Plaintiffs refer the Parish to the following statements which are also in the Parish's custody or equally available to the Parish:
        - Declaration of Gail LeBoeuf and Barbara Washington in Support of Motion for a Temporary Restraining Order and Declaration of Laura Blokker in Support of Motion for a Temporary Restraining Order,

*Inclusive Louisiana v. St. James Parish*, No. 23-cv-00987, Dkt. Nos. 132-2 and 132-3.

- Proposed Supplemental Complaint for Injunctive and Declaratory Relief, *White Hat v. Landry*, No. 6:20-CV-00983, 2024 WL 1340572, at *1 (W.D. La. Mar. 28, 2024), Dkt. No. 45-2.
- Declarations filed in support of Motion for Summary Judgment, *White Hat v. Landry*, No. 6:20-CV-00983, 2024 WL 1340572, at *1 (W.D. La. Mar. 28, 2024), Dkt. No. 93-3 – 93-12.
- Affidavit of Gary Winchester in Support of Plaintiffs' Opposition to Defendant's Motion to Dissolve Temporary Restraining Order, *RISE St. James and Sharon Lavigne v. FG LA, LLC., a/k/a Formosa Plastics,* No. 39,963 (La. 23rd Jud. Dist. 2020),
- Deposition of Dean Millet, *Genevieve Butler, et al. v. St. James Parish, et al.,* No. 39413-C, ( La. 23rd Jud. Dist. Ct. April 8, 2021)
- Deposition of Alvin St. Pierre, *Genevieve Butler, et al. v. St. James Parish, et al.,* No. 39413-C, ( La. 23rd Jud. Dist. Ct. Nov. 18, 2021)
- Deposition of Clyde Cooper, *Genevieve Butler, et al. v. St. James Parish, et al.,* No. 39413-C, ( La. 23rd Jud. Dist. Ct. May 16, 2024)
- Deposition of Blaise Gravois, *Genevieve Butler, et al. v. St. James Parish, et al.,* No. 39413-C, ( La. 23rd Jud. Dist. Ct. June 12, 2024)
- Deposition of Johnny Lawrence, *Genevieve Butler, et al. v. St. James Parish, et al.,* No. 39413-C, ( La. 23rd Jud. Dist. Ct. June 14, 2021)

RISE will address whether the Parish would like these documents to be produced at the parties' scheduled meet and confer.

- **Response to Interrogatory No. 4** is incomplete and does not answer the question. RISE fails to state if it has retained any expert witnesses and, if so, their identity.
  - **RISE's Response**: This interrogatory seeks the identification of expert witnesses who RISE St. James has retained and intends to call at trial. RISE St. James reiterates that it has not decided on which, if any, experts it will call at trial. Under Fed. R. Civ. P. 26(a)(2)(D), "a party must make these disclosures at the times and in the sequence that the court orders." The court has set a deadline for April 23, 2027. RISE St. James affirms that it will provide the requested information by this deadline and will update its response to this interrogatory as it is able, as required by rule.
- **Response to Interrogatory No. 8** is incomplete and deficient. RISE has asserted standing

based on its factual allegations. St. James is entitled to conduct discovery on those allegations, which includes identifying RISE's members and the property owned in St. James Parish. As RISE has asserted representational standing, this information is relevant and discoverable.

- **RISE's Response:** Plaintiff RISE St. James has already provided the name and address of Sharon Lavigne and, in response to Interrogatory No. 19, Chasity White-Lewis. This is sufficient to satisfy associational standing, as all that is required is a showing of injury to at least one member of the plaintiff organization. *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 497 (5th Cir. 2024). "No factual inquiry is necessary beyond the fact that the member is a" residential property owner adjacent to a toxic industry in the 4th or 5th district. *See Hancock Cnty. Bd. of Sup'rs* v. Ruhr, 487 F. App'x 189, 198 (5th Cir. 2012). Additionally, RISE St. James has significant concerns about making the identities of its members public. And, as RISE stated in its response to this interrogatory, the First Amendment explicitly protects against compelled disclosure of RISE's membership list, which is effectively what this request seeks. Disclosure of members who have not consented to their membership in RISE being made public would be unduly burdensome and disproportionate to the needs of the case, given the privacy rights implicated, particularly in the context of the campaign of harassment that RISE and other plaintiffs are facing by industry groups.

- **Response to Interrogatory No. 9** is incomplete and deficient. It does not provide any information to establish, as alleged by RISE, that its members have ancestors buried on the sites of former plantations within the Parish. While we are sympathetic to the difficulties of tracing lineage in these circumstances, St. James is entitled to some information to substantiate RISE's pled allegations, and the response provides no such substantiating information to explain why Ms. Lavigne believes she has ancestors buried in Buena Vista. Also, this response does not address other members. Paragraph 25 of the Complaint states "its leaders" believe to have ancestors in unmarked cemeteries in St. James Parish. Paragraph 668 states "[e]very Plaintiff has members who have ancestors" who are buried in unmarked cemeteries. Paragraph 672 states that, aside from Ms. Sharon Lavigne "[o]ther members of RISE St. James believe their ancestors are buried at other plantation cemeteries." As originally requested, please provide the identity of any RISE members, aside from Sharon Lavigne, whom RISE contends has ancestors buried in unmarked cemeteries in St. James Parish and identify facts substantiating their connection to the ancestors.
  - **RISE Response:** The Parish's Interrogatory as originally drafted did not seek

"information to substantiate" anything in particular, but only sought the identities of people alleged to be buried in unmarked burial sites in St. James Parish. Sharon Lavigne's daughters—Shamell and Shamyra Lavigne—are also "leaders" of the organization. As stated in Plaintiff's previous response, all three Lavignes believe they are related to members of the Caesar family who, according to the Don Hunter Report, are buried at Buena Vista. Although not requested in the text of the Parish's interrogatory, the basis for this belief is conversations with other family members. At this time, the Lavignes do not have additional responsive information to support this assertion. Additionally, Plaintiff did already identify an additional RISE member who contends she has ancestors buried in unmarked cemeteries: Chasity White-Lewis is related to members of the Winchester family who are also buried at Buena Vista. Although not requested in the text of the Parish's interrogatory, the basis for her belief is conversations with her relatives. It is sufficient for RISE St. James to show that at least one member was injured to establish standing. *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 497 (5th Cir. 2024). "No factual inquiry is necessary beyond the fact that the member is a" part of the community of descendants of people once enslaved in the River Parishes. *See Hancock Cnty. Bd. of Sup'rs* v. Ruhr, 487 F. App'x 189, 198 (5th Cir. 2012). If RISE St. James discovers additional information that is responsive to this request, it will supplement its response. It is not required, as St. James Parish implies, to disclose its entire membership list, as the First Amendment explicitly protects against disclosure of RISE's membership list, *see NAACP v. Alabama,* 357 U.S. 449, 462, 466 (1958), which is effectively what this request seeks.

- **Responses to Interrogatory No. 10 and Request for Production No. 3** are incomplete and deficient. RISE fails to identify the "members of RISE you allege were exposed to 'heightened levels of carcinogens,'" in Paragraph 25 of the Complaint as requested. While this information would, under other circumstances, be considered private and personal, RISE cannot both tout allegations of its members' health and decline to provide the discoverable facts underlying its allegations.
    - **RISE Response:** RISE St. James has already listed four members who were exposed to heightened levels of carcinogens: Sharon, Shamell, and Shamyra Lavigne and Chasity White-Lewis. But regardless, Plaintiffs' claims do not seek damages, and do not require a showing of a causal chain between industrial pollution and disease, but rather require a showing of an increased *risk* to health as a result of residing in the Fourth or Fifth districts, a showing which will be based on information that is publicly-available or equally available to Defendant

regarding the risks of illness as a result to exposure to industrial pollution, and not individual disease. In other words, "no factual inquiry is necessary beyond the fact that the member" works or lives "in an [impacted] district," and is therefore necessarily exposed to a heightened level of health risk. *See Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012). If RISE discovers additional information that is responsive to this request, it will supplement its response. It is not required, as St. James Parish implies, to disclose its entire membership list, as the First Amendment explicitly protects against disclosure of RISE's membership list, *see NAACP v. Alabama,* 357 U.S. 449, 462, 466 (1958), which is effectively what this request seeks.

- **Responses to Interrogatory No. 11 and Request for Production Nos. 4 and 5** are incomplete and deficient. RISE fails to provide the facts regarding how the property at 8581 Highway 18 has decreased in value, what the decrease is, when it occurred, and on what basis Ms. Lavigne rests her belief that properties in the 4th and 5th district have decreased. Further, RISE does not clarify whether Sharon Lavigne is its only member with an alleged decrease in property value.
    - **RISE Response:** RISE St. James provided the Parish with the basis for its belief that Ms. Lavigne's property value has suffered as a result of the Parish's industrial siting practices. It is more than reasonable for RISE St. James to base its assessment on the fact that those properties are proximate to toxic, polluting industry. In other words, "no factual inquiry is necessary beyond the fact that the member is a" residential property owner near a polluting industry in the 4th or 5th District. *See Hancock Cnty. Bd. of Sup'rs* v. Ruhr, 487 F. App'x 189, 198 (5th Cir. 2012). Precisely "how" that decrease occurred, "[w]hat that decrease is" and "when it occurred" is the subject of ongoing discovery, and will require expert opinion, the development of which is also ongoing. Plaintiff intends to supplement this request with responsive material as it becomes available.

- **Response to Interrogatory No. 20** is incomplete and deficient. RISE fails to identify Ms. Lavigne's "many friends and neighbors with cancer," including listing their location of residence and timeframe of residence, as alleged in Paragraph 587 of the Complaint. While this information would, under other circumstances, be considered private and personal, RISE cannot both tout factual allegations and decline to provide the discoverable facts underlying its allegations.
    - **RISE Response:** In addition to the objections already stated in response to this interrogatory, including the serious First Amendment concerns implicated by it, RISE St. James further objects that this interrogatory is unduly burdensome and

the privacy interests of Ms. Lavigne's friends and neighbors it would interfere with are disproportionate to the needs of this case. The names and addresses of these individuals is not necessary to support Plaintiffs' claims nor the Parish's defenses. RISE relies on publicly available data equally available to Defendant and not on individual illness or medical records to substantiate its health-related claims. Further, the privacy interests are especially important in this context, as industry-backed actors have been engaging in a campaign of harassment against members of Plaintiffs in this litigation, including ad hominem online attacks, disparaging comments in public meetings, statements that they are being motivated by "outside money and influence," and a widespread effort to put large harassing yard signs around the Parish, including immediately adjacent to members' homes and public buildings. This increases RISE's concerns about disclosing any identifying information about these individuals and exposing their surviving family members or loved ones to harassment. Without waiving these objections, RISE St. James is willing to meet and confer with the Parish about this request.

- **Response to Interrogatory No. 21** is incomplete. In addition to its own factual allegations in the Complaint referenced, RISE does not state whether its assertion is based on any statement by a St. James Parish official not included in its Complaint.
  - **RISE Response:** RISE St. James does not have any additional statements to disclose at this time, though RISE expects that further discovery will reveal additional discriminatory statements by Parish officials, and should RISE become aware of any additional statements that are responsive to this request and subject to discovery, it will supplement its responses. In addition to the paragraphs in the Complaint identified in response to Interrogatory No. 21, there may be additional statements in documents that the Parish produced in response to the following public records requests: R000333-042123, R000364-071923, R000579, R000442-03324, identified in response to RFP No. 9, and R000678-052726.

- **Response to Interrogatory No. 25** is not clear whether, aside from the assertions in Paragraph 384-85, RISE alleges any other "allowances" made by St. James Parish. Please confirm whether any additional facts support RISE's allegation.
  - **RISE Response:** RISE St. James does not have any additional allowances to disclose at this time, though RISE expects that further discovery could reveal additional allowances made by Parish officials. Should RISE become aware of any allowances that are responsive to this request and subject to discovery, it

will supplement its responses.

- **Response to Interrogatory No. 26** is incomplete. If RISE is withholding any statements based on the work-product privilege, as loosely asserted, please provide a log of the withheld documents. St. James is not seeking conversations between only Plaintiffs and their lawyers.
    - **RISE Response:** Plaintiff RISE St. James is not withholding any statements based on the work-product privilege. Plaintiff intends to supplement this request with responsive material as it becomes available.

- **Responses to Interrogatories No. 27 and 28** are incomplete. It is not clear whether, aside from the assertions in the cited Complaint paragraphs, RISE alleges any other acts or statements to support its allegation of "a discriminatory purpose and intent."
    - **RISE Response:** To the extent this interrogatory seeks all facts and evidence to support Plaintiffs' contention that the Parish violated 42. U.S.C. §1982 and Art. XII, Sec 4 of the Louisiana Constitution of 1974, it is a contention interrogatory more properly reserved for a later stage of discovery under Fed. R. Civ. P. 33(a)(2). Notwithstanding that objection, in response to Interrogatory No. 28, RISE St. James directs the Parish to Dkt. Nos. 132 through 132-5. In addition, there may be additional statements in documents that the Parish produced in response to the following public records requests: R000333-042123, R000364-071923, R000579, R000442-03324, identified in response to RFP No. 9, and R000678-052726. RISE St. James expects that further discovery will reveal additional acts and statements by Parish officials to support its allegation of "a discriminatory purpose and intent," and should RISE become aware of any additional statements that are responsive to this request and subject to discovery, it will supplement its responses.

- **Response to Interrogatory No. 32** is incomplete. If RISE is withholding any statements based on the work-product privilege, as loosely asserted, please provide a log of the withheld documents. St. James is not seeking conversations between only Plaintiffs and their lawyers.
    - Plaintiff RISE St. James is not withholding any statements based on the work-product privilege.

Sincerely,

/s/ Clara J. Potter

Clara Potter, La. Bar Roll No. 38377
Devin Lowell, La. Bar Roll No. 36555
Lisa W. Jordan, La. Bar Roll No. 20451
ENVIRONMENTAL LAW CLINIC
TULANE LAW SCHOOL
6329 Freret St.
New Orleans, LA 70118
Tel.: (504) 865-5789
Fax: (504) 862-8721
cpotter2@tulane.edu
dlowell@tulane.edu
lwjordan@tulane.edu

*Attorneys for RISE St. James*

# EXHIBIT 4

CENTER FOR CONSTITUTIONAL RIGHTS

Astha Sharma Pokharel <asharmapokharel@ccrjustice.org>

# Inclusive Louisiana, et al. v. St. James Parish - Plaintiffs' First Set of Interrogatories and RFPs to St. James Parish

**Astha Sharma Pokharel** <asharmapokharel@ccrjustice.org> Mon, Jul 20, 2026 at 1:20 PM
To: Dani Borel <Danielle.Borel@bswllp.com>
Cc: "Potter, Clara J" <cpotter2@tulane.edu>, "Lowell, Devin A" <dlowell@tulane.edu>, "Carroll Devillier, Jr." <Carroll.Devillier@bswllp.com>, "Jordan, Lisa W" <lwjordan@tulane.edu>, Pam Spees <pspees@ccrjustice.org>, Kayla Vinson <kvinson@ccrjustice.org>, Celine Zhu <czhu@ccrjustice.org>, "John B. King" <John.King@bswllp.com>, Baher Azmy <bazmy@ccrjustice.org>, bill quigley <quigley77@gmail.com>, Ann Marie Salemi <AnnMarie.Salemi@bswllp.com>
Bcc: Claire Elliman <celliman@ccrjustice.org>, Layla Mortadha <lmortadha@ccrjustice.org>, Cyan Blackwell <cblackwell@ccrjustice.org>

Hi Dani,

As a follow-up to our meet-and-confer today, I write to memorialize our conversation.

1. RISE St. James will produce any documents listed in response to **Interrogatory No. 3** from the *White Hat v. Landry, RISE St. James and Sharon Lavigne v. FG LA, LLC*, and Mount Triumph will produce the comments related to Nustar and Mosaic Uncle Sam.
2. **All interrogatories that ask for information related to Plaintiff organizations' members, other than those members specifically identified:** All Plaintiffs confirmed that they would supplement their responses should any other members be willing to identify themselves as members of the Plaintiff organizations, and, if they are willing to share any health, property, or ancestry-related information, produce that information. The Parish responded that this was not sufficient and that it would likely move to compel production of Plaintiffs' membership lists
3. **Interrogatory No. 4:** The Parish will send Plaintiffs any cases that support the Parish's position that it is entitled to the identity of any retained experts, whether testifying or not, at this stage in the litigation.
4. **RISE Interrogatory No. 20 and Inclusive Louisiana Interrogatory Nos. 5 and 6**: The Plaintiffs are willing to share with the Parish a de-identified list of any non-parties who Plaintiffs' members know have suffered from cancer. The Plaintiffs believe this solution would help address the significant privacy concerns raised with this request. The Parish has stated that such a list would not be sufficient and that it would likely move to compel production of those individuals' identifying information.
5. **Inclusive Louisiana RFP nos. 3 and 4**: Inclusive Louisiana is willing to share a narrower set of medical records that confirm Ms. LeBoeuf has been diagnosed with cancer and that confirm that Ms. Washington has experienced the health issues alleged in the Complaint. If the Parish is amenable to this, it will send Inclusive Louisiana a narrower RFP.
6. **Social media**: Plaintiffs plan to produce responsive social media posts by July 22. Moving forward, Plaintiffs expect that the Parish will agree to the production of social media handles, as opposed to individual posts, given the high burden of producing posts as individual files, and the relative ease to the Parish of reviewing these social media posts which are publicly-available online.

Should the Parish changes its position on the de-identified list in response to RISE Interrogatory No. 20 and Inclusive Louisiana Interrogatory Nos. 5 and 6, and/or if we come to an agreement on a narrower set of relevant medical records of Ms. LeBoeuf and Ms. Washington, we would want to have a protective order in place to ensure the confidentiality of these documents.

Please let me know if there is anything in the above that doesn't accurately reflect our conversation.

Thanks,
Astha

[Quoted text hidden]

CENTER FOR CONSTITUTIONAL RIGHTS

Astha Sharma Pokharel <asharmapokharel@ccrjustice.org>

# Inclusive Louisiana, et al. v. St. James Parish - Plaintiffs' First Set of Interrogatories and RFPs to St. James Parish

**Dani Borel** <Danielle.Borel@bswllp.com> Tue, Jul 21, 2026 at 12:24 PM
To: Astha Sharma Pokharel <asharmapokharel@ccrjustice.org>
Cc: "Potter, Clara J" <cpotter2@tulane.edu>, "Lowell, Devin A" <dlowell@tulane.edu>, "Carroll Devillier, Jr." <Carroll.Devillier@bswllp.com>, "Jordan, Lisa W" <lwjordan@tulane.edu>, Pam Spees <pspees@ccrjustice.org>, Kayla Vinson <kvinson@ccrjustice.org>, Celine Zhu <czhu@ccrjustice.org>, "John B. King" <John.King@bswllp.com>, Baher Azmy <bazmy@ccrjustice.org>, bill quigley <quigley77@gmail.com>, Ann Marie Salemi <AnnMarie.Salemi@bswllp.com>

Astha,

Thank you for your summary. Your summary appears accurate, except for the discussion of Social Media posts. As clearly stated in our conference, the Parish did not agree to accept only the social media handles in lieu of supplemental discovery responses required by the federal rules and explicitly rejected this request, as it attempts to shift the burden of identifying Plaintiffs' documents to the Parish.

As to **Inclusive Louisiana RFP nos. 3, 4**, **and 5**, **Rise RFP No. 3**, and **Mount Triumph RFP No. 3,** it was considered whether a limited medical record could be acceptable and, ultimately, it cannot. Plaintiffs have placed specific individuals' health and diagnosis at issue by alleging them in their complaint, which waives any privacy rights or privilege. The Parish is entitled to the full medical records and will seek them from the Court. As stated previously, if Plaintiffs remove those specific allegations from the operative Complaint and stipulate that individuals will not discuss their health at trial, then these records would not be necessary, and the Parish will withdraw its request.

The Parish is happy to enter into an agreed upon protective order for any medical records produced.

Thank you,

Dani Borel

BREAZEALE SACHSE

**Dani Borel**
Partner

Direct: (225) 381-8047 | Fax: (225) 381-8029
Danielle.Borel@bswllp.com | www.bswllp.com
301 Main Street, Suite 2300, Baton Rouge, LA 70801
PO Box 3197, Baton Rouge, LA 70821-3197

2024 TOP 40 Louisiana State Bar Association Young Lawyers Division
Top 40 Award Recipient

**From:** Astha Sharma Pokharel <asharmapokharel@ccrjustice.org>
**Sent:** Monday, July 20, 2026 3:20 PM
**To:** Dani Borel <Danielle.Borel@bswllp.com>
**Cc:** Potter, Clara J <cpotter2@tulane.edu>; Lowell, Devin A <dlowell@tulane.edu>; Carroll Devillier, Jr. <Carroll.Devillier@bswllp.com>; Jordan, Lisa W <lwjordan@tulane.edu>; Pam Spees <pspees@ccrjustice.org>; Kayla Vinson <kvinson@ccrjustice.org>; Celine Zhu <czhu@ccrjustice.org>; John B. King <John.King@bswllp.com>; Baher Azmy <bazmy@ccrjustice.org>; bill quigley <quigley77@gmail.com>; Ann Marie Salemi <AnnMarie.Salemi@bswllp.com>
**Subject:** Re: [EXTERNAL] Inclusive Louisiana, et al. v. St. James Parish - Plaintiffs' First Set of Interrogatories and RFPs to St. James Parish

Hi Dani,

As a follow-up to our meet-and-confer today, I write to memorialize our conversation.

1. RISE St. James will produce any documents listed in response to **Interrogatory No. 3** from the *White Hat v. Landry, RISE St. James and Sharon Lavigne v. FG LA, LLC*, and Mount Triumph will produce the comments related to Nustar and Mosaic Uncle Sam.

2. **All interrogatories that ask for information related to Plaintiff organizations' members, other than those members specifically identified:** All Plaintiffs confirmed that they would supplement their responses should any other members be willing to identify themselves as members of the Plaintiff organizations, and, if they are willing to share any health, property, or ancestry-related information, produce that information. The Parish responded that this was not sufficient and that it would likely move to compel production of Plaintiffs' membership lists

3. **Interrogatory No. 4:** The Parish will send Plaintiffs any cases that support the Parish's position that it is entitled to the identity of any retained experts, whether testifying or not, at this stage in the litigation.

4. **RISE Interrogatory No. 20 and Inclusive Louisiana Interrogatory Nos. 5 and 6**: The Plaintiffs are willing to share with the Parish a de-identified list of any non-parties who Plaintiffs' members know have suffered from cancer. The Plaintiffs believe this solution would help address the significant privacy concerns raised with this request. The Parish has stated that such a list would not be sufficient and that it would likely move to compel production of those individuals' identifying information.

5. **Inclusive Louisiana RFP nos. 3 and 4**: Inclusive Louisiana is willing to share a narrower set of medical records that confirm Ms. LeBoeuf has been diagnosed with cancer and that confirm that Ms. Washington has experienced the health issues alleged in the Complaint. If the Parish is amenable to this, it will send Inclusive Louisiana a narrower RFP.

6. **Social media**: Plaintiffs plan to produce responsive social media posts by July 22. Moving forward, Plaintiffs expect that the Parish will agree to the production of social media handles, as opposed to individual posts, given the high burden of producing posts as individual files, and the relative ease to the Parish of reviewing these social media posts which are publicly-available online.

[Quoted text hidden]

CENTER FOR CONSTITUTIONAL RIGHTS

**Astha Sharma Pokharel <asharmapokharel@ccrjustice.org>**

---

## Inclusive Louisiana, et al. v. St. James Parish - Plaintiffs' First Set of Interrogatories and RFPs to St. James Parish

---

**Astha Sharma Pokharel** <asharmapokharel@ccrjustice.org> Wed, Jul 22, 2026 at 9:55 AM
To: Dani Borel <Danielle.Borel@bswllp.com>
Cc: "Potter, Clara J" <cpotter2@tulane.edu>, "Lowell, Devin A" <dlowell@tulane.edu>, "Carroll Devillier, Jr." <Carroll.Devillier@bswllp.com>, "Jordan, Lisa W" <lwjordan@tulane.edu>, Pam Spees <pspees@ccrjustice.org>, Kayla Vinson <kvinson@ccrjustice.org>, Celine Zhu <czhu@ccrjustice.org>, "John B. King" <John.King@bswllp.com>, Baher Azmy <bazmy@ccrjustice.org>, bill quigley <quigley77@gmail.com>, Ann Marie Salemi <AnnMarie.Salemi@bswllp.com>

Hi Dani,

I just want to correct your email as to Mount Triumph RFP No. 3, that "Plaintiffs have placed specific individuals' health and diagnosis at issue by alleging them in their complaint." RFP 3 refers to paragraph 24. We have not alleged any health diagnoses of members of Mount Triumph in Paragraph 24 of the complaint.

As to Inclusive Louisiana, as we said, we object to production of Ms. LeBoeuf and Ms. Washington's entire medical record, but we are willing to negotiate the production of a narrowed set of medical records related to Ms. LeBoeuf and Ms. Washington's health diagnoses alleged, subject to a protective order. And as to third parties who Ms. Washington knows, we are willing to negotiate the production of a de-identified list so as to protect the privacy of those third parties, subject to a protective order. We understand the Parish is not willing to negotiate on those issues, and intends to seek from the court Ms. LeBoeuf and Ms. Washington's entire medical record, and identifying personal and health information of third parties.

Astha
[Quoted text hidden]

# EXHIBIT 5

BREAZEALESACHSE

*DANIELLE L. BOREL*
*Partner*
*danielle.borel@bswllp.com*

DIRECT DIAL (225) 381-8047
CORPORATE PHONE (225) 387-4000
FAX (225) 381-8029
One American Place, 23rd Floor
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197

**www.bswllp.com**

August 25, 2026

Clara J. Potter
ENVIRONMENTAL LAW CLINIC
TULANE LAW SCHOOL
6329 Ferret St.
New Orleans, LA 70118

*Via Email:*
cpotter2@tulane.edu
asharmapokharel@ccrjustice.org

Astha Sharma Pokharel
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

RE: ***Inclusive Louisiana, et al. v. St. James Parish***
Civil Action No. 2:23-cv-00987
USDC – Eastern District of Louisiana

Dear Clara and Astha:

I am writing to address the continued deficiencies in discovery responses by RISE St. James ("RISE"), Inclusive Louisiana, and Mount Triumph Baptist Church to the St. James Parish's (the "Parish") *First of Interrogatories, Requests for Production, and Requests for Admission* (the "Responses") and the responses by RISE, Inclusive Louisiana, and Mount Triumph Baptist Church to the Parish's *Second Set of Requests for Production* (the "Second Responses").

The Responses and Second Responses are insufficient and incomplete as outlined below. We ask that Responses and Second Responses be supplemented no later than **August 31, 2026**.

**Plaintiffs' Responses**

**1. RISE: Int. Nos. 12, 13, 14, 15, 16, 21, 24, 25, 27, 28, 31, 32, and 35**
**Inclusive Louisiana: Int. Nos. 11, 16, 24, 25, 26, 27, 28, 29, 30, and 31**
**Mount Triumph Baptist Church: Int. Nos. 10, 13, 14, 15, 17, 18, 21, 22, 23, 24, and 31**

The Plaintiffs objected to these interrogatories "because [they] seek[] information in the possession of, known to, or otherwise equally available to the Defendant" and because the interrogatories request information "that will not be fully known until after additional discovery is completed." These answers are insufficient.

First, the interrogatory poses a specific question and requests a response. The Parish is entitled to a full response, even if the information is "known to" the Parish. Based on these

responses, the Parish is left to guess and/or speculate as to any number of possible factual scenarios that could possibly be responsive or that could possibly be meant by what is "known to" the Parish. The Plaintiffs' answer sets up a "trial by ambush" in which the Parish is required to prepare defenses to any number of these possible scenarios.

Second, to make the claim that information is "equally available," the Plaintiffs had to first identify information that is responsive (such that it is known to the Plaintiffs) in order to then assert that the Parish has that same information or that same information is "equally available." Thus, the Plaintiffs admit that they have been able to internally identify information that is responsive to the request. As a result, that information must be identified and produced.

Finally, the Parish is not required to wait for an indeterminate period until the Plaintiffs consider that the information is "fully known." The Parish is entitled to all responsive information currently in the Plaintiffs' possession that is responsive to the request. The Plaintiffs may supplement their responses at a later date if and when the information is "fully known."

In many of the responses to the interrogatories, the Plaintiffs referenced various paragraphs from the Second Amended Complaint as providing facts responsive to the request. If the Plaintiffs have no additional facts, other than those within the cited paragraphs, they should so state. Otherwise, the Plaintiffs must fully respond to the interrogatory by providing responsive information that is presently "known" and "available" to them.

By way of example, in Interrogatory No. 12 to RISE, the Parish sought the identification of "each and every 'official action' of St. James Parish prior to April 2, 2014 which authorized or approved the construction and operation of any industrial facility within the Parish." The Plaintiffs responded that RISE "objects to this interrogatory because it seeks information in the possession of, known to, or otherwise equally available to the Defendant, and because it requests information that will not be fully known until after additional discovery is completed." The Plaintiffs then "points Defendant to" various paragraphs of the Second Amended Complaint as "official actions."

By citing paragraphs from the Second Amended Complaint in response, the Plaintiffs claim that "official actions" occurred in a variety of manners, fact patterns, and/or situations well prior to April 2, 2014 (the date the Land Use Plan was passed): "allow[ing] the construction of the Kaiser Alumina Plant" in the 1950s (Par. 616); a simple meeting between the Police Jury President and the Sheriff with Freeport Sulphur in 1966 (Par. 187); writing a letter offering support for Shintech in the 1990s (Par. 231); receiving communications from a public relations firm (Par. 234); the construction of Nucor in 2012 (Par. 249); or even the simple presence of an industrial facility (Pars. 199, 203, 261, and 262).

Based on the variety of allegations of these different types of "official actions," it is impossible for the Parish to guess or speculate as to what other types of actions prior to April 2, 2014, the Plaintiffs will assert are "official actions" at trial. Discovery is designed to avoid a "trial by ambush," yet the Plaintiffs seek to withhold information in their possession in order to do just that.

If the Plaintiffs have no additional actions prior to April 2, 2014, that they consider to be "official actions" other than those within the cited paragraphs from the Second Amended Complaint, they should so state. Otherwise, the Plaintiffs must fully respond to the interrogatory and "identify each and every 'official action' of St. James Parish prior to April 2, 2014."

**2. RISE: Int. No. 12**
**Inclusive Louisiana: Int. No. 11**

In the Second Amended Complaint, the Plaintiffs repeatedly refer to a "policy, practice, and/or custom of land use" or "policies, practices, and/or customs." The Relief Requested mentions "policies, practices, and/or customs pertaining to the discriminatory land use system."

The Plaintiffs clearly regard the "policies, practices, and/or customs" within the parish as "official actions" by the Parish. Therefore, Interrogatory No. 12 is intended to include each and every "official action," each and every "policy, practice, and/or custom of land use," and all of the "policies, practices, and/or customs pertaining to the discriminatory land use system."

**3. RISE: Int. No. 10 and Request for Production Nos. 10 and 11**
**Inclusive Louisiana: Int. No. 9 and Request for Production Nos. 16 and 17**
**Mount Triumph Baptist Church: Int. No. 8**

In Interrogatory No. 10 to RISE (and similar interrogatories to the other Plaintiffs), the Parish requested: "Please identify the members of RISE you allege were exposed to 'heightened levels of carcinogens,' identifying all health diagnoses of those members you allege is the result of the pollutants and all deceased family members, as alleged in Paragraph 25 of the Complaint." The Plaintiffs' responded that "leaders and members have been exposed to heightened levels of carcinogens, and a dramatically increased risk of cancer and other diseases attendant to the heavy industrial sitings in those Districts as a result of Defendants' discriminatory land use decisions" and that "Plaintiffs' claims are based on publicly available data equally available to Defendant and not based on an individual illness or medical records and such information is therefore not relevant."

If the Plaintiffs are not identifying "all health diagnoses of those members you allege is the result of the pollutants" because they rely on "publicly available data" showing a "dramatically increased risk of cancer," then any and all "publicly available data" and/or information in Plaintiffs' possession showing that an increased risk of cancer exists should be produced.

In Request for Production No. 10 (and similar request to Inclusive Louisiana), the Parish requested "any other studies or analyses purporting to establish any link, relationship, or causal effect between an "elevated risk of cancer from pollution" and a "higher cancer incidence among Black communities across Louisiana." The Plaintiffs responded with a series of studies that are not at all related to cancer or provided self-made Chemical of the Month flyers that are not "studies or analyses." This is not responsive to the request. If the Plaintiffs have no such studies, they should so state.

In Request for Production No. 11 (and similar request to Inclusive Louisiana), the Parish made a similar request "specific to St. James Parish." The Plaintiffs merely referred to the response to Interrogatory No. 10. This is not responsive to the request. If the Plaintiffs have no such studies "specific to St. James Parish," they should so state.

**4. RISE: Request for Production No. 2**
**Inclusive Louisiana: Request for Production No. 2**
**Mount Triumph Baptist Church: Request for Production No. 2**

Each Plaintiff received a request for production for all documents listed in the Initial Disclosures. Among other documents, the Initial Disclosures include "academic and scholarly texts as well as media reports referenced in the Complaint" and "reports and news articles describing racially discriminatory impacts of industrial siting in St. James Parish cited to in the complaint." See e.g., RISE First Supplement, Nos. B.1.e and B.11. To date, all documents listed in the Initial Disclosures have not been produced. Please produce all such documents, including, without limitation, the documents listed in Exhibit A.

Also, the links provided by Plaintiffs as to certain documents mentioned in the Initial Disclosures do not work and/or are behind a "pay wall." See Exhibit B. Please produce a copy of each such document as requested.

**<u>Plaintiffs' Second Responses</u>**

**5. RISE: Request for Production Nos. 15 and 16**
**Inclusive Louisiana: Request for Production Nos. 21 and 22**
**Mount Triumph Baptist Church: Request for Production Nos. 21 and 22**

On June 19, 2026, the Parish sent two additional requests for production to the Plaintiffs. The first requests financial statements from 2014 to the present and the second requests federal and state tax returns and filings from 2014 to the present. In response, the Plaintiffs flatly refused, stating that such information is not relevant, not proportionate to the needs of the case, and may subject Plaintiffs to harassment. Courts in the Fifth Circuit recognize that bias — including a financial motive or interest in the outcome of litigation — is directly relevant to witness credibility, and that a party has a clear right to inquire into such bias through discovery.

The Parish is entitled to any and all information, not privileged, that is relevant to the Parish's defenses, even if it may not ultimately be admissible in evidence. The purpose of discovery is to allow a broad search for facts or any other matters which may aid a party in the preparation or presentation of his case. The requested documents are relevant to the Parish's defenses and obtaining possible impeachment evidence.

The financial and economic information requested is also relevant because the Second Amended Complaint has made it so. The Plaintiffs make repeated references and claims regarding economic matters, such as:

- The Parish is attempting to "suppress [the Plaintiffs'] political and economic empowerment that persist to this day" (Par. 2);
- More "economic exploitation … will follow in these historically Black communities struggling for the liberation and safety of their communities much like their ancestors did," (Par. 11); and
- Allegations of "economic exploitation," (Par 19).

Specifically, the Plaintiffs have made claims regarding an alleged decrease in property values in the parish. Inclusive Louisiana has admitted that it owns property located at 8111 Romeville Street in Convent, Louisiana. Because Plaintiffs have made claims regarding property valuation (which includes directly owned property), financial statements that may shed light or provide information regarding historic property valuation related to property owned by Inclusive Louisiana are relevant.

Further, RISE admits that Sharon Lavigne owns four properties in St. James Parish. RISE Response, Int. No. 8. Inclusive Louisiana members (Barbara Washington and Gail LeBoeuf) own at least three properties in St. James Parish. Inclusive Louisiana Response, No. 7. Mount Triumph Baptist Church owned property until its recent transfer to Pastor Harry Joseph. Mount Triumph Baptist Church Response, No. 6. The requested economic and financial documents will shed light on how the Plaintiffs funded, subsidized, valued, and/or otherwise paid costs and expenses on these properties which affects their value.

RISE states: "Effective Friday, May 1, 2026, RISE St. James Louisiana is no longer fiscally sponsored by Earth Island Institute." See https://risestjames.org/resources/. RISE "has operated since 2018 as a fiscally sponsored project of the Earth Island Institute, a Berkeley, California-based environmentalist group." See https://www.influencewatch.org/organization/rise-st-james/. Additionally, "Rise St. James has received funding from Bloomberg Philanthropies and the Tides Foundation, among other left-of-center donors, and has been represented in litigation by Earthjustice, a left-of-center environmental law organization." *Id.* Thus, RISE has shielded its past financial information through its relationship with Earth Island Institute.

Now, however, RISE secured its own Section 501(c)(3) from the IRS and is required to file publicly available IRS Form 990. Even under the simplest versions of Form 990, financial information such as that requested must be provided. Thus, this information is or will be publicly available and RISE should not be able to shield its prior and/or current financial situation when it will have to publicly report the same information.

Finally, representation by the Tulane Environmental Law Clinic is based on RISE's inability to afford private counsel. See Louisiana Supreme Court, Rule XX, Section 3: "an eligible law student may appear in any court … on behalf of … any indigent person or indigent community organization." See Louisiana Supreme Court, Rule XX, Section 5: "Law school clinical program … may represent any indigent community organization provided at least 51% of the organization's members are eligible for legal assistance pursuant to Section 4 of this rule. The indigent community organization shall also provide information to clinic staff which shows that the organization lacks, and has no practical means of obtaining, funds to retain private counsel." Publicly available data

suggests that RISE may not meet this standard. See Figure 1. Thus, the income statement, tax returns, and other such financial documents are indeed relevant to determine if RISE meets this standard.

Figure 1

Breakdown of LAFS members and out-of-state donations since 2020, per Foundation Directory and ProPublica Nonprofit Explorer databases:

| Organization | Out-of-state donations since 2020 | Total since 2020 | Percent out-of-state |
|---|---|---|---|
| Rise St. James* | $616,463.00 | $671,463.00 | 91.8% |
| Inclusive Louisiana | $290,000.00 | $335,640.00 | 86.4% |

*Denotes that data is incomplete for these groups due to how they are organized with the IRS (eg, at the time of this analysis, Rise St. James was a fiscally-sponsored project of the Earth Island Institute, meaning it did not file its own IRS Form 990 tax return).

Pelican Institute for Public Policy, *Barriers to Louisiana Energy Dominance, 2026*

The claim that the request is not proportionate to the needs of the case is not credible. The requested documents are a discrete and finite set of documents, likely electronically available, that can easily be produced.

The Parish is willing to enter into appropriate protective orders. Therefore, no harassment will result from counsel for the Parish obtaining this information.

Please supplement your responses accordingly to address these deficiencies.

**Rule 37 Conference**

Pursuant to Federal Rule of Civil Procedure 37(a)(1), to avoid having to file a motion to compel, we request that you provide supplemental discovery responses as soon as possible. If I have not received the supplemental discovery responses by **August 31, 2026**, I will call you on **September 1, 2026** at **10:00 a.m. CST**, to have the conference required by Federal Rule of Civil Procedure 37(a)(1) before filing a motion to compel. If you have a conflict with that time, please suggest another time as soon as possible.

With kindest regards, I remain.

Sincerely,

**BREAZEALE, SACHSE & WILSON, L.L.P.**

Danielle L. Borel

DLB/ams

CC: Devin Lowell (dlowell@tulane.edu)
Lisa W. Jordan (lwjordan@tulane.edu)
Pamela C. Spees (pspees@ccrjustice.org)
Baher Azmy (bazmy@ccrjustice.org)
Kayla Vinson (kvinson@ccrjustice.org)
Celine Zhu (czhu@ccrjustice.org)
William P. Quigley (quigley77@gmail.com)

## Exhibit A

**RISE St. James First Supplement to Initial Disclosures**

Section B.1.c
Section B.1.e
Section B.1.f
Section B.1.g
Section B.1.h
Section B.1.j
Section B.1.l
Section B.1.o
Section B.1.q
Section B.1.r
Section B.1.s
Section B.1.v
Section B.1.w
Section B.1.ee
Section B.1.hh
Section B.1.jj
Section B.1.kk
Section B.1.mm
Section B.1.nn

Section B.2.f

Section B.11.a
Section B.11.b
Section B.11.c
Section B.11.d
Section B.11.e
Section B.11.f
Section B.11.g
Section B.11.h
Section B.11.i
Section B.11.k
Section B.11.l
Section B.11.a

**Exhibit B**

Document included in Second Amended Complaint, Footnote 179

Document included in Second Amended Complaint, Footnote 211

May 22, 2026, RISE St. James' First Response to St. James Parish's First Set of Discovery:

- Robert Travis Scott, State's incentive package for Nucor iron plant detailed, The Times-Picayune (September 17, 2010)

May 22, 2026, Mount Triumph Baptist Church's Responses to Defendant's First Set of Discovery:

- Anya Groner, Louisiana Chemical Plants Are Thriving Off of Slavery, The Atlantic, May 7, 2021,

July 17, 2026, RISE St. James Responses to St. James Parish's Second Set of Requests for Production:

- Josie Abugov, "Louisiana environmental justice activists navigate pushback under Trump. 'No one on our side.'", Nola.com (Jun. 21, 2026)

# EXHIBIT 6

CENTER FOR CONSTITUTIONAL RIGHTS

Astha Sharma Pokharel <asharmapokharel@ccrjustice.org>

# Inclusive Louisiana, et al. v. St. James Parish

**Astha Sharma Pokharel** <asharmapokharel@ccrjustice.org> Tue, Sep 1, 2026 at 12:01 PM
To: Dani Borel <danielle.borel@bswllp.com>, "John B. King" <john.king@bswllp.com>
Cc: "Potter, Clara J" <cpotter2@tulane.edu>, "Carroll Devillier, Jr." <Carroll.Devillier@bswllp.com>, "Sandra E. Carlton" <Sandra.Carlton@bswllp.com>, dlowell <dlowell@tulane.edu>, lwjordan <lwjordan@tulane.edu>, pspees <pspees@ccrjustice.org>, bazmy <bazmy@ccrjustice.org>, kvinson <kvinson@ccrjustice.org>, quigley77 <quigley77@gmail.com>, Ann Marie Salemi <annmarie.salemi@bswllp.com>

Hi Dani and John,

I am writing to memorialize our discussion from today regarding the Parish's August 25th deficiency letter.

- **Deficiency 1**: Plaintiffs' counsel will review each of the interrogatories and RFPs and determine whether supplementation is necessary, and clarify where the Plaintiffs are not withholding any information or documents. Plaintiff's counsel noted that many of these interrogatories amount to premature contention interrogatories, and the Parish's suggestion that Plaintiffs are preparing a "trial by ambush," over a year prior to trial, is unwarranted, especially considering the level of detail contained in the Second Amended Complaint.
- **Deficiency 2**: Same as above.
- **Deficiency 3**: Plaintiffs will supplement their responses.
- **Deficiency 4**: Almost all of these documents were produced or are publicly available online. Plaintiffs' counsel will review the list provided by the Parish, identify by Bates numbers the documents already produced, produce anything else that is now in Plaintiffs' custody, and identify where the documents are available online and/or, if they intend to use them at trial, produce those documents as PDFs.
- **Deficiency 5**: Plaintiffs continue to object to the request from the Parish—their government—for disclosure of their sensitive financial and tax documents. Plaintiffs' counsel noted their concern with this request, which seems to continue a pattern of harassment that Plaintiffs and Plaintiffs' members have been facing by industry groups in the Parish. Plaintiffs' counsel also noted its concern with the Parish's description in its August 25th letter of some of Plaintiffs' donors and counsel as "left-of-center," as though there is something objectionable to the Parish about "left-of-center" viewpoints

  Plaintiffs inquired about the relevance of these financial and tax documents to the parties' claims or defenses. In its August 25th letter, the Parish identified as one of its reasons for seeking this sensitive information as "Courts in the Fifth Circuit recognize that bias — including a financial motive or interest in the outcome of litigation – is directly relevant to witness credibility[.]" When Counsel for Plaintiffs further inquired about what "financial motive in the outcome of the litigation" these documents may reveal, particularly in a case where Plaintiffs are seeking no monetary relief, the Parish responded that certain unidentified Parish residents believe that Plaintiff organizations are paying "lavish salaries" to employees, and that employees are motivated by "money and trips" rather than the issues relevant to this case. The Parish provided no basis for saying this other than the belief of unidentified "Parish residents," nor did it provide any explanation for how this may be related to a "financial motive in the outcome of the litigation."

  Plaintiffs' counsel further noted that if the Parish has specific requests regarding Inclusive Louisiana's property at 8111 Romeville Street, it has already sent the Plaintiff's interrogatories and RFPs related to that property, that any assessment of the property is in the custody of the Parish's tax assessor, and that the Parish can feel free to send any other requests that may be relevant to the litigation. Absent a more specific request, these requests are not relevant and amount to a fishing expedition.

  Finally, Counsel for Plaintiff RISE St. James noted two misstatements that the Parish has already made regarding this issue. First, that Louisiana Supreme Court Rule XX applies in federal court, which it does not. The applicable student practice rule is LR 82.2.13 which does not have the same income requirements as Louisiana Supreme Court Rule XX. And second, that in "2023, the Louisiana Bucket Brigade reported give [sic] $353,213 to RISE St. James," (dkt. no. 135 at 4), which is not what the exhibit attached to that filing says.

Thanks,

Astha

[Quoted text hidden]

# EXHIBIT 7

# LEADERSHIP TEAM



Executive Director
**Desiree Lemoine**



Secretary
**Janile Parks**



Treasurer
**Connie Fabre**



Board Member
**Meg Mahoney**

**INDUSTRY MAKES.**

PHONE 225.931.2896

EMAIL *desiree@industrymakes.org*

ADDRESS P.O. Box 255, Ventress, LA, 70783

Donate →

## NEED MORE INFORMATION?

Send us an email, and we will follow-up with you.

Email Us →

©2026 by **Industry Makes.**

# EXHIBIT 8

ps://www. o a.co / ews/e v o e /ca ce a ey ou s a a epa u p e v o e a us ce/a c e_e3972 63 bab9 430e a da bd3ac257b843.

# Louisiana environmental justice activists navigate pushback under Trump. 'No one on our side.'

BY JOS E ABUGOV Staff wr ter
Jun 21, 2026

1 of 10



A group of students ride their bikes past a refinery in Norco as part of Louisiana Bucket Brigade's "Down by the River" bike tour in Norco on Thursday, June 4, 2026. The ride makes stops along the chemical corridor to help students learn the history of the environmental justice movement.

STAFF PHOTO BY CHRIS GRANGER

A dozen teenagers ride their bikes down a quiet street in Norco on a warm June morning, stopping at an empty playground beside a Shell petrochemical plant.

Helmets off and bikes parked, they listen to their tour guides for the day, local advocates telling a story that weaves together Black history in the River Parishes and the current environmental justice movement.

"The ordinary people stood up and fought Shell and won," said Cathy Laurino, a tour guide with the advocacy group Louisiana Bucket Brigade, referencing a community battle over a relocation effort two decades ago.

Richlyn Gibson, a seventh grader from Donaldsonville, said later: "It was very inspirational because you see how you can stand up for something."

The bike ride and related summer camp are examples of the kind of outreach a constellation of local community and environmental groups have long been engaged in. That work gained unprecedented prominence and funding under former President Joe Biden's administration.



Cathy Laurino with the Louisiana Bucket Brigade leads a "Down by the River" bike tour in Norco on Thursday, June 4, 2026. The bike ride makes stops along the chemical corridor to help students learn the history of the environmental justice movement.

STAFF PHOTO BY CHRIS GRANGER

But since 2025, such groups have watched a stunning reversal both nationally and in Louisiana under the administrations of President Donald Trump and Gov. Jeff Landry. Landmark pollution rules long sought by local groups have been rolled back, and sharp cuts in grant funding have left environmental justice advocates navigating how to remain effective.

For some industry groups and politicians, the changes have been welcome – a necessary pushback against what they view as regulatory overreach that harms business and the broader economy.

But local organizations say that without the work they carry out, pollution will only worsen and poorer residents without an effective voice will suffer the most.

“The state of (environmental justice) is we’re in a bad place. We’re hanging on by a thread,” said Beverly Wright, founder of The Deep South Center for Environmental Justice, a New Orleans-based organization hit hard by cuts in federal grants.

“But I take heart in the fact that we have been here before and during worse times and under worse conditions, with fewer allies than what we have now.”

## ‘Lot of obstacles’

The Trump administration’s approach to environmental justice is in many ways the inverse of what occurred under Biden.

Biden’s Environmental Protection Agency chief, Michael Regan, was the first Black man to hold the position and put a high priority on environmental justice, or concerns that poor and Black neighborhoods have been forced to disproportionately suffer the effects of industrial pollution.

Louisiana and its heavily industrialized region along the river between Baton Rouge and New Orleans, which activists refer to as “Cancer Alley,” was among Regan’s areas of focus.




Activist Sharon Lavigne, of Rise St. James, poses at her home in St. James, La., Tuesday, June 9, 2026.
STAFF PHOTO BY SOPHIA GERMER

He visited Louisiana twice to tour industrialized areas and speak with residents. When he signed off on what is known as the HON rule aimed at reducing cancer risk in communities near industrial plants, Louisiana activists attended the event in Washington, D.C.

Sharon Lavigne, who founded Rise St. James, one of the most prominent local environmental groups, was there and still has a pen Regan used for the signing. But for her, the promise of that day has since eroded.

The 2024 rule had required over 200 industrial facilities nationwide to use stricter pollution controls and conduct routine air monitoring. The plants had until July 2026 to meet the bulk of these requirements.

But last summer, Trump exempted 49 chemical plants nationwide from complying with the standard by the 2026 deadline, including a dozen in Louisiana.

Industry groups in the state argued that the rule was impossible to comply with and would harm important sectors. Advocates see the exemptions as an interim move while the EPA seeks to permanently undo the requirements.

"Our member companies spend millions of dollars each year on emissions controls, operational reliability and safety systems because environmental, health and safety performance remains a core priority across the industry," said David Cresson, president of the Louisiana Chemistry Association, which represents the state's largest chemical companies.

Lavigne said “now that the new administration is in, we still have hope, but it’s a lot of obstacles that’s in our way,”

“We have to fight a little bit harder -- a whole lot harder -- and we have no one on our side,” she said.

## ‘Not going anywhere’

The changes have not only involved regulation. Some local groups have also been hit by the EPA’s cut of $70 million in funding for Louisiana agencies and nonprofits.

Wright's Deep South Center, a 34-year-old organization that partners with smaller groups, lost a $13 million grant and laid off roughly 10 employees as a result, she said.

The grant had supported a project that spanned 250 communities across 14 states, connecting local groups with researchers with expertise in pollution, flooding and energy consumption.

Wright said the loss was a "big blow," but it hasn't "taken the wind out of us."

Tish Taylor of The Concerned Citizens of St. John, another local group, said the organization received federal EPA support through a $500,000 grant managed by the Deep South center. The funding focused on air monitoring data in the parish, including exposure to a likely carcinogen – chloroprene – emitted from the now-suspended Denka Performance Elastomer Plant in Reserve.



Cathy Laurino with the Louisiana Bucket Brigade leads a "Down by the River" bike tour in Norco on Thursday, June 4, 2026. The bike ride makes stops along the chemical corridor to help students learn the history of the environmental justice movement.

STAFF PHOTO BY CHRIS GRANGER

Before Denka announced last May it would suspend operations, the Trump administration granted it an exemption from the HON rule and dropped a landmark federal government lawsuit alleging the facility threatened the area with unacceptable cancer risks.

When it comes to funding, however, Taylor said that philanthropy is the ultimate source.

“I'm just grateful because the philanthropy was there before. They're not going anywhere,” she said. “They know that we need it even more now.”

Significant funding for Louisiana-based groups has come from organizations including Bloomberg Philanthropies, the Earth Island Institute and the Andrew Mellon Foundation.

Local groups have long faced criticism from Louisiana politicians and industry over allegations they are slowing economic development. Pointing to the groups' funding, they also accuse them of doing the bidding of outside activists.

The groups counter that their work requires funding and that they are transparent about where it comes from. They also say the need for their advocacy is self-evident in a state with high levels of pollution.

Rise St. James recently welcomed middle schoolers from Colorado for an environmental class. Some schools in New York also teach students about the environmental justice group, Lavigne said.

But within the state, she said that U.S. Rep. Troy Carter, D-New Orleans, is the only elected official who has met with them.

Shamell Lavigne, Sharon Lavigne's daughter who helps lead Rise St. James, said opposition to their work has appeared to become more organized recently.

She pointed to an organization called Industry Makes, which shares posts and videos on social media about Rise St. James. It has criticized the environmental group for traveling by car and plane, and for using items such as computers and clothing derived from industry.

She believes the group is also involved with a "Stop Rise St. James" yard sign campaign cropping up around the community and questioned whether it was paying residents to post about the advocacy group online.

Desiree Lemoine, executive director for Industry Makes, said that the organization does not pay anyone for the posts, yard signs or its ambassador program. However, she said that Industry Makes did "partially pay" for a poster seen in parts of the community.

Lemoine said Industry Makes' focus on Rise St. James "is a small piece of our overall pillar to provide a positive perception of industry and the benefits it brings to the communities where it operates."

"Industry Makes does not believe that Rise St. James or any of the other activist groups in and around the area work towards environmental advocacy," Lemoine said. "It is our experience that they work to enrich their own pockets through spreading misinformation and fear amongst the communities they claim to want to protect."

Lemoine said her organization's funding comes from yearly dues from individuals, businesses and associations in Louisiana that "serve as partners that give us platforms and other media support."

Like Rise St. James, Taylor's organization has continued to fight on a wide range of issues.

Other smaller environmental groups are also pushing ahead – and even expanding – despite federal cuts and changing policies. Cynthia Robertson, who runs the Sulphur-based group Micah 6:8 Mission, said that her organization has persisted even after losing federal funding last year.

Robertson's organization began in the aftermath of 2020's Hurricane Laura and in the midst of the Covid pandemic, providing food, health information and clothing to residents in need.

"I just lean into God and know that whatever is supposed to happen will happen, and it does, so I'm very pleased with where we are now, despite the federal government," Robertson said.

Email Josie Abugov at josie.abugov@theadvocate.com.

# EXHIBIT 9

20+

**Industry Makes.'s Post**

**Industry Makes.**
June 15 ·

More evidence of outside $$ and influence trying to tell St. James what to do.
They sure do have nerve.
Let the council hear the voices of its own citizens!

**Re: Second Legal Notice to Parish Council Regarding Proposed Ordinance to Re-Designate a Historic Black Community to "Industrial"**

To the St. James Parish Council:

On behalf of Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James, the undersigned counsel write to follow up on our June 1, 2026 letter. We understand that the Parish intends to move forward with a public hearing on June 17, 2026 on Proposed Ordinance 26-08 redesignating a large part of Romeville into an industrial area – a brazenly unlawful Ordinance that would be in defiance of existing federal court rulings and necessitate our taking prompt legal action against you to ensure it does not get effectuated.

As we noted in our earlier letter, the Ordinance is unlawful, and if allowed to pass, will be yet more evidence of a land use system that Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James have challenged in an ongoing federal lawsuit. *Inclusive Louisiana v. St. James Parish*, No. CV 23-987, 2026 WL 352793 (E.D. La. Feb. 9, 2026). In particular, this redesignation would announce the Parish's commitment to the erasure of a historic majority-Black community, and would imperil sites of historic, religious, and cultural significance to those communities, including cemeteries and historic sites built by freedpeople soon after emancipation.

Hon. Judge Barbier has already ruled in the federal lawsuit that the case raises plausible claims of discrimination and illegality, including violations of the Thirteenth Amendment of the U.S. Constitution, the Fourteenth Amendment's Equal Protection Clause and protection of bodily integrity, 42 U.S.C. Section 1982 which ensures non-discrimination in the use of property, the Religious Land Use and Institutionalized Persons Act, and the Louisiana Constitution Art. XII, Sec. 4 which protects the right of the people to preserve, foster, and promote their respective cultural origins. *Inclusive Louisiana v. St. James Parish*, No. CV 23-987, 2026 WL 352793 (E.D. La. Feb. 9, 2026). Based on the federal court's rulings, the Ordinance would reflect another prime example of the discriminatory land use system that violates multiple legal protections.

<u>Please be advised: should the Ordinance be approved at the June 17, 2026 hearing or thereafter, we are prepared to seek expedited legal relief from the court in the *Inclusive Louisiana* litigation invalidating the proposed, unlawful course of action.</u>

Sincerely,

Clara Potter
Devin Lowell
Lisa Jordan
ENVIRONMENTAL LAW CLINIC
TULANE LAW SCHOOL
6329 Freret St.
New Orleans, LA 70118
Tel.: (504) 865-5789
Fax: (504) 862-8721
cpotter2@tulane.edu

Astha Sharma Pokharel
Pamela C. Spees
Baher Azmy
Kayla Vinson
Celine Zhu
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. & Fax (212) 614-6462

Write a comment...

# EXHIBIT 10

20+

**Industry Makes.'s Post**

**Industry Makes.**
September 28, 2025 ·

RISE ST. JAMES doing what they do best......raising outside money and promoting themselves on the backs of the hardworking industrial labor force up and down Louisiana's industrial corridor.
#shameless




**RISE ST. JAMES**
September 27, 2025 ·

Ms. Sharon C. Lavigne joined the Petrochemicals, Climate & Health Nexus event in New York City, bringing together advocates, funders, academics, and frontline community members working toward a healthier future.

Much appreciation to @BeyondPetrochemicals for always sharing the microphone with frontline

Write a comment...

# EXHIBIT 11

20+

# Industry Makes.'s Post

**Industry Makes.**
September 1, 2025 ·

Industry Makes travel possible for RISE ST. JAMES founder and her daughter. But who pays for these elaborate trips?

#letothersmakenoise
#DirtyMoney




**RISE ST. JAMES**
September 1, 2025 ·

🇮🇹Wheels up to Italy
🙏 Traveling grace to RISE St. James Founder & Director Sharon C. Lavigne as she departs for Italy, joined by Shamyra Lavigne-Davey, Executive Assistant. ✈️🌍
Ms. Lavigne has been invited to serve as a visiting professor, lifting voices from Cancer Alley onto the world stage and linking grassroots struggles with global movements for climate and environmental solutions.
💐Her most recent visit to Italy was marked by mourning, as Pope Francis was in declining health and passed away shortly thereafter. On this journey, she is expected to meet with Pope Leo XIV before her visit concludes.
#risestjames

22 1

Write a comment…

# EXHIBIT 12

20+

**Industry Makes.'s Post**

**Industry Makes.**
January 12 ·

We see that the Rise St. James founder is now using her own grandchild to peddle her misinformation. This is how outside money and influence looks at Louisiana. Rise does not care who they hurt, as long as they stay relevant and funded.  This is lazy journalism.

#letothersmakenoise



THELENSNOLA.ORG

**Buyouts for a petrochemical complex threaten to erase Modeste | The Lens**

6 21 1

Most relevant

Most relevant is selected, so some comments may have been filtered out.

Write a comment...

# EXHIBIT 13

**From:** Desiree Lemoine
**Sent:** Mon, 27 Mar 2023 16:09:08 -05:00
**To:** Pete Dufresne; Steven Nosacka; Janile Parks; Calvin Hart; george nassar; Marc Hoss; Jordan Tremblay; Guidry, Chris A
**Cc:** Meagan Loupe; Laine Peterson; patty.prats@kochps.com
**Subject:** Industry Makes/St. James Parish Sub-Committee
**Attachments:** St.JamesSubAgenda.docx

EXTERNAL EMAIL: Do not click links or open attachments unless you recognize the sender and know the content is safe.

All, please find attached the Agenda for our meeting tomorrow morning.

Looking forward to our engagement.

Desiree

*Desiree Lemoine*
*Campaign Manager, Industry Makes*
*4701 Bluebonnet Boulevard, Suite A*
*Baton Rouge, La 70809*
*225.931.2896- cell*
*225.757.5527- office*
www.industrymakes.org

INDUSTRY MAKES.

**Industry Makes**
**St. James Parish/Cancer Alley Sub-Committee**
**Tuesday, March 28, 2023**
**9:00 a.m.**
**St. James Parish Courthouse, Convent, Louisiana**
**Mayor's Conference Room**
**Agenda**

1. Welcome and Introductions
2. Meeting Cadence
3. What is Industry Makes?
4. Updated Economic Data
5. Updated Investment per Council District
6. Rise St. James v. Parish of St. James lawsuit (Imagine St. James)
7. Discussion of Industry Makes social sites and how to make the most out of them
8. Potential sub-committee members
9. Path Forward
10. Adjourn

# EXHIBIT 14

INDUSTRY MAKES.

Let Others Make Noise. We'll Make Everything Else.

St. James Parish Subcommittee Minutes
March 28, 2023

Participants: Pete Dufresne, St. James Parish President
Steve Nosacka, St. James Parish Economic Development
Mike Hall, Nucor
Kainen Leblanc, DDG
Laine Peterson, GBRIA
Chris Guidry, OxyChem
Desiree Lemoine, Industry Makes
Janile Parks, Industry Makes

A St. James Parish subcommittee for Industry Makes (IM) was called to order at approximately 9:00 a.m. on Tuesday, March 28.

The first order of business was to welcome and introduce the various ambassadors assembled at the first IM meeting held at the St. James Parish Courthouse in Convent, LA.

- Meeting Cadence
  - It was established that the St. James Parish subcommittee will meet on a regular basis for the time being and eventually transition to a quarterly meeting.
    - The next meeting is scheduled on May 11 from 11:00 a.m. – 1:00 p.m.
    - Due to limited space at the courthouse, Steve will research venue options (i.e., Associated or Creole House).
    - Based on availability, the viable option will accommodate the group.
- Industry Makes Initiative
  - Desiree provided an overview of initiative.
  - IM serves as a united voice for industry.
  - She touted the benefits of cobranding for advertisements and connecting your respective organizations with industry's cause.
- Pete and Steve referenced adding representation to the Industry Makes initiative from other manufacturers and sectors in the parish such as the suppliers, pilot associations, etc.
  - Steve will compile a list from every company with an occupational license and weed through the list to determine relevant companies.

        - Examples were cited.
            - M Rodrigue & Son
            - Guzman
            - Quality Machine Works
            - Louisiana Sugar Refining
            - Americas Styrenics
            - Excel
            - DG Fuels
            - Mosaic
            - Shell
            - Port of South Louisiana
            - St. James Parish School Board
    - Desiree will pull members of the St. James Parish CAP to determine additional members who should join the cause.
    - Michael referenced that our IM ambassadors should encourage participation from the contractors and suppliers at our respective sites.
- Billboards
    - Desiree reported that Lamar does not have available billboards in the parish.
        - St. John may be a viable option.
    - Bayou Signs in Houma, LA may have available billboards.
        - Kainen or Steve will follow-up.
- Representative Troy Carter
    - Elected officials should be balanced in their approach.
        - When Troy makes comments, industry is never represented in a positive light.
        - IM should schedule a meeting with the referenced elected official.
    - Chris brought to the group's attention that Representative Troy Carter sent a letter to the U.S. Environmental Protection Agency (EPA) Administrator and the U.S. Secretary of The Interior calling on industrial corporations or entities to certify that there are no burial grounds of the formerly enslaved on sites being considered for development when seeking a permit.
    - An article was published by L'Observateur on March 18, 2023.
    - Quotes from Troy Carter:
        - "This effort is not only significant to the formerly enslaved, it is important to all Americans. To truly embrace the American experience, we must acknowledge our tragic past as part of our shared cultural identity."
        - "History should be regarded as a means for understanding the past and solving the challenges of the future. Our community deserves better, and our ancestors deserve peace," he concluded.
    - Read more at: https://www.lobservateur.com/2023/03/18/rep-carter-calls-on-epa-and-department-of-the-interior-to-protect-formerly-enslaved-burial-grounds-ancestral-burial-grounds-are-critical-to-families-tracing-their-roots/.
- St. James Economic Data

  - A suggestion was made to arm the IM team with knowledge that could be used to educate the residents.
    - There are designated growth areas (i.e., residential growth) in District 5.
    - There are 4 meals on wheels trucks that provide nourishment to homes.
      - 3 out of the 4 trucks are paid for by industry.
    - There are more industrial companies located in District 1 (i.e., per capita and per linear feet) on the East Bank.
    - Industry is highly regulated more than ever before.
    - There has been a large % of reduction in emissions.
    - Follow the science.
    - There are more industrial companies located on the East Bank in St. James Parish.
      - East Bank (13)
        - Continental Cement
        - Shell Convent (presently closed)
        - Air Products
        - Yara North America (terminal)
        - Zen-Noh Grain (terminal)
        - Nucor Steel
        - Oxy
        - Convent Marine Terminal (terminal)
        - Mosaic Uncle Sam
        - ADM Paulina (presently closed)
        - LSR
        - Atalco
        - Rain CII
      - West Bank (9)
        - Koch Methanol
        - Plains (terminal)
        - LOCAP (terminal)
        - Shell Pipeline (terminal)
        - NuStar (terminal)
        - Ergon (terminal)
        - Americas Styrenics
        - Mosaic Faustina
        - Valero Asphalt
- Michael Bloomberg's Beyond Plastics Campaign
  - Outsiders are trying to control industry as well as the narrative for our state.
  - Beyond Petrochemicals will scale the work being done by frontline groups and aligned organizations who are leading the fight to end petrochemical pollution in these communities, including Beyond Plastics, the Bullard Center at Texas Southern University, Defend Our Health, Earthjustice, Earthworks, Hip Hop Caucus, Louisiana Bucket Brigade, and Rise St. James among others, and will

continue to work with additional organizations and leaders to accelerate efforts to halt petrochemical expansion in Louisiana, Texas, and the Ohio River Valley.
    - Read more at: https://www.bloomberg.org/press/michael-r-bloomberg-launches-new-85-million-campaign-to-stop-rapid-rise-of-pollution-from-the-petrochemical-industry-in-the-united-states/.
- Situational Awareness Video
    - The group is considering if releasing a video speaking about the facts would benefit our cause.
        - Like the Facebook live video when Shell closed
- Proposed Industry Makes Ideas
    - Develop IM Community Meetings
        - Place an emphasis on the numbers
            - Example: There are 215 employees that work for St. James Parish.
            - Pull the effects of Shell's closure (November 2020)
            - Pull sales tax collections from industry
            - 75% of tax base is paid by industry
    - Recruit community advocates
        - Local residents
        - Business owners
        - Existing industry workers
        - Retired industry workers
    - Expand IM outreach to youth
        - Coloring books
        - Interactive hands on demonstrations
            - "Touch a Bus" event and explain how industry played a role in creating the bus
            - Like Solutions through Science Group
            - Familiarity with industry
    - Research the history of General Honoré
    - Develop high school awareness
        - Next 25 initiative
        - IM presentation (Fall 2023)
            - Industry familiarization campaign already occurs in the parish.
            - Steve will coordinate this effort.
    - Develop a "Did You Know" or "By the Numbers" campaign
    - Replace "Cancer Alley" myth map with Louisiana Jobs Corridor map on IM website
    - Build IM army from a different angle
        - Direct and indirect jobs (silence the noise)
    - Engage with key decision makers; make a coordinated effort and tout economic benefits of industry
        - Elected Officials
        - Hotel Association
        - Restaurant Association

- Industry Makes Social Media Platforms
    - Desiree encouraged all our ambassadors to follow us on all social media platforms.
        - Facebook
        - Instagram
        - Twitter
        - Linked In

Meeting was adjourned at 10:42 a.m.

# EXHIBIT 15

**From:** Courtney Tomlinson
**Sent:** Thu, 25 Jan 2024 14:37:06 -06:00
**To:** Victoria Rocquin-Henry
**Subject:** Fwd: RREDI Breakfast Points for Pete
**Attachments:** Stjamesrredibreakfast.docx
**Categories:** Red Category

Hey Vic!

Sorry for the short notice... Please see attached and email below. Can you put together a short speech for Pete for the RREDI breakfast please? I would need it by tonight to though 😩 so sorry!

Courtney Tomlinson
Executive Assistant
St. James Parish Government- Parish President's Office
P.O. Box 106
Convent, LA 70723
courtney.tomlinson@stjamesla.com
Office: (225) 562-2396
Cell: (225) 483-1959
Get Outlook for iOS

**From:** Courtney Tomlinson <courtney.tomlinson@stjamesla.com>
**Sent:** Monday, January 22, 2024 4:19 PM
**To:** Pete Dufresne <pete.dufresne@stjamesla.com>
**Subject:** FW: RREDI Breakfast Points for Pete

Pete,

Please see attached.

Thanks,



*Courtney Tomlinson*
Executive Assistant • (225) 562-2396
St. James Parish Government- Parish President's Office
P.O. Box 106 Convent, LA 70723
courtney.tomlinson@stjamesla.com

**From:** Desiree Lemoine <desiree@industrymakes.org>
**Sent:** Monday, January 22, 2024 2:09 PM
**To:** Courtney Tomlinson <courtney.tomlinson@stjamesla.com>

**Cc:** Blanche Gallagher <blanche.gallagher@thetjcgroup.com>; Janile Parks <jparks@fguniversal.com>; Steven Nosacka <steve_trinity@cox.net>
**Subject:** RREDI Breakfast Points for Pete
**Importance:** High

EXTERNAL EMAIL: Do not click links or open attachments unless you recognize the sender and know the content is safe.

Courney, attached are some interesting cancer facts that I have summarized from last week's retreat. I advised Pete that I would get them to you today.
Can you please see that he gets these points for his RREDI breakfast?
Many thanks,
Desiree

***Desiree Lemoine***
*Campaign Manager, Industry Makes*
*4701 Bluebonnet Boulevard, Suite A*
*Baton Rouge, La 70809*
*225.931.2896- cell*
*225.757.5527- office*
www.industrymakes.org

INDUSTRY MAKES.

# EXHIBIT 16

**From:** Desiree Lemoine
**Sent:** Mon, 21 Oct 2024 15:28:41 -05:00
**To:** Rachel Shields; Steven Nosacka; Susan Bourgeois
**Cc:** Ileana Ledet (LED); Janile Parks; Pete Dufresne; Steve Welch; Connie Fabre; Mary Ellen Pratt; jvicknair@sjph.org; Emma Wagner (LED); Pete Dufresne; Sandra Granata
**Subject:** RE: Industry Makes Meeting Re: River Parishes Brief
**Importance:** High

EXTERNAL EMAIL: Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you, Rachel, for your reply. Industry Makes is looking forward to partnering with LED to help dispel the misinformation that is rampant regarding Louisiana industry. The support of the State of Louisiana cannot be understated in this endeavor.

Please feel free to reach out anytime.

Desiree Lemoine

Desiree Lemoine
*Campaign Manager, Industry Makes*
*4701 Bluebonnet Boulevard, Suite A*
*Baton Rouge, La 70809*
*225.931.2896- cell*
*225.757.5527- office*
www.industrymakes.org

---

**From:** Rachel Shields <Rachel.Shields@LA.GOV>
**Sent:** Thursday, October 17, 2024 3:14 PM
**To:** Steven Nosacka <steve_trinity@cox.net>; Susan Bourgeois <Susan.Bourgeois@LA.GOV>
**Cc:** Ileana Ledet (LED) <Ileana.Ledet@la.gov>; Janile Parks <jparks@fguniversal.com>; Desiree Lemoine <desiree@industrymakes.org>; pete.dufresne@stjamesparishla.gov; Steve Welch <steve_welch@oxy.com>; Connie Fabre <connie@gbria.org>; Mary Ellen Pratt <mpratt@sjph.org>; jvicknair@sjph.org; Emma Wagner (LED) <Emma.Wagner@LA.GOV>; Pete Dufresne <pete.dufresne@stjamesla.com>; Sandra Granata <Sandra.Granata@LA.GOV>
**Subject:** RE: Industry Makes Meeting Re: River Parishes Brief

Thank you Steve and all for your time yesterday. The importance of these efforts to dispel myths and misconceptions around Louisiana's industry cannot be understated, and we are grateful to Industry Makes for its leadership in this space.

We are hopeful the next few months bring us opportunities to ease some of these challenges. But no matter the case, LED will continue to support Louisiana's private sector commitment to responsible growth *and* investments in innovation, job growth, and community wealth building.

Looking forward to continuing this dialogue with you.

Rachel Shields

**From:** Steven Nosacka <steve_trinity@cox.net>
**Sent:** Wednesday, October 16, 2024 3:35 PM
**To:** Susan Bourgeois <Susan.Bourgeois@LA.GOV>
**Cc:** Ileana Ledet (LED) <Ileana.Ledet@la.gov>; Rachel Shields <Rachel.Shields@LA.GOV>; Janile Parks <jparks@fguniversal.com>; Desiree Lemoine <desiree@industrymakes.org>; pete.dufresne@stjamesparishla.gov; Steve Welch <steve_welch@oxy.com>; Connie Fabre <connie@gbria.org>; Mary Ellen Pratt <mpratt@sjph.org>; jvicknair@sjph.org; Emma Wagner (LED) <Emma.Wagner@LA.GOV>; Pete Dufresne <pete.dufresne@stjamesla.com>
**Subject:** Re: Industry Makes Meeting Re: River Parishes Brief

EXTERNAL EMAIL: Please do not click on links or attachments unless you know the content is safe.

Ms Susan, we are grateful for your time, attention, interest and input during today's briefing.
And thank you for your constructive comments to which we will attend.
We look forward to LED's continued support for manufacturing, and the career opportunities which we all want our young people to experience.

On Oct 15, 2024, at 11:32 AM, Susan Bourgeois <Susan.Bourgeois@la.gov>

wrote:

Adding a zoom link for those who need to join virtually.
https://zoom.us/j/91882097220?pwd=WXb8NbbbWVbND2qbuRbLOihayzvizu.1

## Join Zoom Meeting

| | |
|---|---|
| One tap mobile: | US: +16462551997,,91882097220# or +14042012656,,91882097220# |
| Meeting URL: | https://zoom.us/j/91882097220?pwd=WXb8NbbbWVbND2qbuRbLOihayzvizu.1 |
| Meeting ID: | 918 8209 7220 |
| Passcode: | 160406 |

<Mail Attachment.ics><LCA Presentation - Addressing Cancer Alley .pdf><Industry Makes Update 8-24.pdf>

Steven Nosacka
St James Parish Economic Development
steve_trinity@cox.net
Cell 2259780556

# EXHIBIT 17

**From:** frvincent@rivrdcat.org
**Sent:** Thu, 27 Feb 2025 11:50:01 -06:00
**To:** Ryan Louque
**Subject:** RE: St. Peter Chanel Conference: Petrochemical Pollution, the Unborn, and Maternal Health
**Attachments:** MaternalHealthConference2025.docx, MaternalHealthConference2025.pdf

EXTERNAL EMAIL: Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Ryan,

Attached are docx and pdf files which I have prepared as a response to your email and those of other concerned citizens. As you can see from the first page summary of the material being put out for the Maternal Health Conference, St. Peter Chanel School is not sponsoring nor participating in this conference. As pastor of St. Joseph Church Parish, I have accepted the invitation to host this conference. It is a national conference and is sponsored, in part, by both the Diocese of Baton Rouge and the Archdiocese of New Orleans because the Catholic Church's moral teaching calls for people to be good stewards of God's creation and all life.

As I state in my personal comments, this is not an "anti-industry" conference, but one focused on prayer, reflection, and education. I do not see a "slap in the face," any more than Jesus speaking to the Jewish leaders of his day or my homilies which challenge my parishioners. It is disconcerting that you bring up financial support for the school and the church in what I judge (hopefully in error) to be an attempt to stop this conference from taking place. As I say in my comments, please accept an invitation to attend and be part of the dialogue.

God bless,
Fr. Vincent

-----Original Message-----
From: Ryan Louque <ryan.louque@stjamesparishla.gov>
Sent: Thursday, February 27, 2025 9:54 AM
To: frvincent@rivrdcat.org; matthew.arceneaux1@gmail.com; Paula Poche <ppoche@stpchanel.org>
Cc: Pete Dufresne <pete.dufresne@stjamesla.com>
Subject: St. Peter Chanel Conference: Petrochemical Pollution, the Unborn, and Maternal Health

Fr. Vincent, Ms. Paula, Matt,

Its quite concerning to hear that the church / school will be sponsoring this conference, or at the least even entertaining allowing outside NGO's to present at your facility.
Many many parishioners of this parish are employed by industry directly supporting the school through tuition as well as the church parish through donations and contributions. The school / church parish receives great support, donations and contributions to numerous programs that ensure continued education as well as extracurricular activities and great events such as the spring festival can occur. This will be a direct slap in the face to these individuals and industries. Please reconsider your decision regarding allowing one-sided biased presentation from these NGO's without also allowing presentation and meaningful data from industry and their reputable organizations and research groups.
Please consider scheduling an event where industry and reputable research groups as well as Louisiana DEQ can present to the Catholic Climate Covenant the substantial strides industry has made in past decades to reduce pollution and emissions substantially as well as well documented proof refuting the misnomer of our area being "Cancer Alley" as a direct result of industry's effects.

Sincerely,

Ryan Louque
Council Chairman
District 3 Councilman
St. James Parish
(225)206-2285

Sent from my iPhone

**Petrochemical Pollution, the Unborn, and Maternal Health:**
**A Louisiana Catholic Health Conference**

*Quotes from the official flyer:*

"This timely event will explore the **unintended** consequences of petrochemical waste on maternal health and unborn child health, with a particular focus on the communities in Louisiana's river parishes." *[Emphasis added]*

"Attendees will explore the social, medical, and scientific dimensions of pollution and maternal and unborn child health through presentations, a guided tour, and group dialogue."

This conference is sponsored by:
Catholic Climate Covenant
The Diocese of Baton Rouge
The Archdiocese of New Orleans
The Jesuit Central and Southern Province
Loyola Institute for Ministry
Rise St. James
The Center for the Human Spirit and Radical Reimaging

**Conference Summary:**
- PRAYER and faith reflection
- ENCOUNTER: a "geography of challenges and opportunities tour" of St. James Parish with RISE St. James
- SCIENTIFIC, MEDICAL, and SOCIAL ANALYSIS: A panel of two leading scientific experts from local universities focused on getting to the truth of current scientific evidence and health care experiences.
- THEOLOGICAL REFLECTION: Presentation and discussion of what our Catholic Tradition has to say about these issues.
- ACTION: What are the most promising ways we can act together as Church to impact this issue.
- DIALOGUE: We will build on the tradition of dialogue in the Church in Louisiana by infusing a balance between presentations, dialogue, and moments of silence.

Dates and Times: April 4, 2025 (6:30pm - 9:00pm) and April 5, 2025 (8:30am - 3:30pm)
Location: St. Joseph Church (Paulina, LA)
Cost: $20 (suggested donation)

**Objectives:**
- Create a space to build relationships between local Catholics, health workers, and residents of Louisiana's river parishes.
- Engage and discuss the scientific data.
- Continue the process of transforming culture toward care of God's Creation and the promotion of the common good.
- Build unity in the Church at a time of political polarization.

**Website for registration:**
https://catholicclimatecovenant.salsalabs.org/2025louisianahealthconference/index.html

As you can see, St. Peter Chanel School is **not** a sponsor **nor** a participant in this conference. This is a *misunderstanding* because of an article printed in the News Examiner on February 20, 2025. St. Joseph Church, a parish of the Diocese of Baton Rouge, has been chosen as the location for the event so that it will be prayerful and faith-based. St. Joseph Church Parish uses the school cafeteria for a parish hall, so presentations will be held in the "hall," a distinction lost on most people.

As a priest and pastor for many of the people in the river parish corridor, Fr. Vincent Dufresne (a native of St. John the Baptist Parish) has a great concern for everyone's health and well-being. This is Fr. Vincent's statement, (which you are free to quote):

> I am happy to host this Conference because it is in keeping with the Catholic Church's moral teaching on human responsibility for God's creation and for all life. This is a chance to gather in prayer and to reflect on the reality that we live in a fragile environment which requires us to improve our stewardship. I have no doubt that the petrochemical industry has made strides because of its concern for the environment and the local population. And, there is no way we can live without the petrochemical industry in our area, both for jobs offered and for the products produced. However, I hope everyone inside and outside of industry realize that there is more to be done to improve our stewardship of our environment. The more awareness people have of the issues, the more we can grow in cooperation and offer positive responses to the issues. Please be sure, this is not an "anti-industry" conference any more than Jesus was "anti-Jew" for challenging the religious leaders of his time. Every homily I give challenges good people to become better people. This is the purpose of the conference. I invite people to participate rather than pre-judge. This is a time to be educated and become morally responsive.

# EXHIBIT 18

**SUPREME COURT OF LOUISIANA**

**No. 2025-C-00868**

---

BEVERLY ALEXANDER, ET AL.,
*Respondents*

v.

ST. JAMES PARISH,
*Applicant*

---

On Application for Writ of Certiorari From
Court of Appeal Fifth Circuit, Docket No. 24-CA-557,
Honorable Chehardy, Wicker, Johnson, Windhorst, Molaison

---

**AMICUS CURIAE BRIEF OF**
**ATTORNEY GENERAL LIZ MURRILL IN SUPPORT OF APPLICANTS**

---

ELIZABETH B. MURRILL
Attorney General

CAITLIN HUETTEMANN (LSBA #40402)
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd Street
Baton Rouge, Louisiana 70802
Telephone: (225) 326-6000
Facsimile: (225) 326-6098
HuettemannC@ag.louisiana.gov

*Counsel for Amicus Curiae*
*Attorney General Murrill*

development throughout the United States.[2] This powerful anti-industry lobby is funded by a set of like-minded national donors that care nothing about the policies, priorities, and preferences of Louisiana and its citizens. Instead, sock-puppet local NGOs promote an agenda that opposes industrial development and is radically out-of-step with the views and interests of the State. Through this case (and others like it), these out-of-state moneyed interests hope to create an avenue to endlessly delay or halt most industrial activity in the State.

Consider each Respondent named here. Respondent Inclusive Louisiana was formed in 2020 as a non-profit—or so they claim. Though the organization is registered in Louisiana, the EIN their website provides is not registered with the Federal IRS.[3] Inclusive Louisiana is almost entirely funded by Louisiana Bucket Brigade, *see infra* p.4, but also received a sizable donation of $10,000 from the David Rockefeller Fund, an anti-industry funding vehicle, in 2021.[4] Similarly, Respondent Mount Triumph Baptist Church received $10,000 from anti-industry NGO Earthworks that same year.[5]

Respondent RISE St. James, formed in October 2018 by longtime activist Sharon Lavigne, is a fiscally sponsored project of a California anti-industry NGO, Earth Island Institute.[6] There are no records of donations from other anti-industry NGOs to RISE St. James until 2021, as with the other two Respondents. In that year, Louisiana Bucket Brigade became involved in RISE St. James's "organizational development, including program planning, budgeting, fundraising, administrative and financial management."[7]

---

[2] *See* Robert Bryce, *The Anti-Industry Industry* (Feb. 18, 2023), https://robertbryce.substack.com/p/the-anti-industry-industry (gathering data demonstrating anti-hydrocarbon/anti-nuclear NGOs are outspending traditional energy NGOs by more than 4 to 1).

[3] *See* Donate, INCLUSIVE LA. (last visited Aug. 13, 2025), https://inclusivelouisiana.org/donate.

[4] *See* Form 990-PF, The David Rockefeller Fund Inc. (Dec. 2021), https://projects.propublica.org/nonprofits/organizations/133533359/202243149349102074/IRS990PF.

[5] *See* Form 990 Schedule I, Earthworks (Dec. 2021), https://projects.propublica.org/nonprofits/organizations/521557765/202231159349302018/full.

[6] *See* Earth Island Institute, Support RISE St. James (last visited Aug. 13, 2025), https://secure.acceptiva.com/?cst=aYnMTV.

[7] *See* Form 990 Part III, Louisiana Bucket Brigade (June 2021), https://projects.propublica.org/nonprofits/organizations/721488935/202201369349312815/IRS990.

# EXHIBIT 19

20+

CENTER FOR CONSTITUTIONAL RIGHTS

June 11, 2026

St. James Parish Council
5800 Hwy. 44
Convent, LA 70723

**Re: Second Legal Notice to Parish Council Regarding Proposed Ordinance to Re-Designate a Historic Black Community to "Industrial"**

To the St. James Parish Council:

On behalf of Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James, the undersigned counsel write to follow up on our June 1, 2026 letter. We understand that the Parish intends to move forward with a public hearing on June 17, 2026 on Proposed Ordinance 26-08 redesignating a large part of Romeville into an industrial area – a brazenly unlawful Ordinance that would be in defiance of existing federal court rulings and necessitate our taking prompt legal action against you to ensure it does not get effectuated.

As we noted in our earlier letter, the Ordinance is unlawful, and if allowed to pass, will be yet more evidence of a land use system that Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James have challenged in an ongoing federal lawsuit. *Inclusive Louisiana v. St. James Parish*, No. CV 23-987, 2026 WL 352793 (E.D. La. Feb. 9, 2026). In particular, this redesignation would announce the Parish's commitment to the erasure of a historic majority-Black community, and would imperil sites of historic, religious, and cultural significance to those communities, including cemeteries and historic sites built by freedpeople soon after emancipation.

Hon. Judge Barbier has already ruled in the federal lawsuit that the case raises plausible claims of discrimination and illegality, including violations of the Thirteenth Amendment of the U.S. Constitution, the Fourteenth Amendment's Equal Protection Clause and protection of bodily integrity, 42 U.S.C. Section 1982 which ensures non-discrimination in the use of property, the Religious Land Use and Institutionalized Persons Act, and the Louisiana Constitution Art. XII, Sec. 4 which protects the right of the people to preserve, foster, and promote their respective cultural origins. *Inclusive Louisiana v. St. James Parish*, No. CV 23-987, 2026 WL 352793 (E.D. La. Feb. 9, 2026). Based on the federal court's rulings, the Ordinance would reflect another prime example of the discriminatory land use system that violates multiple legal protections.

Please be advised: should the Ordinance be approved at the June 17, 2026 hearing or thereafter, we are prepared to seek expedited legal relief from the court in the *Inclusive Louisiana* litigation invalidating the proposed, unlawful course of action.

Sincerely,

Clara Potter
Devin Lowell
Lisa Jordan
ENVIRONMENTAL LAW CLINIC
TULANE LAW SCHOOL
6329 Freret St.
New Orleans, LA 70118
Tel.: (504) 865-5789
Fax: (504) 862-8721
cpotter2@tulane.edu
dlowell@tulane.edu
lwjordan@tulane.edu

*Attorneys for RISE St. James*

Astha Sharma Pokharel
Pamela C. Spees
Baher Azmy
Kayla Vinson
Celine Zhu
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org
czhu@ccrjustice.org

William P. Quigley
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440

**Robbie Poche Jr.**
June 15 ·

**RISE ST. JAMES** is again threatening your elected officials in **St. James Parish.** With all that unlimited outside money and free legal work from out of town student attorneys, they are attempting to bully your council to vote their way… you should all Send an email and call your councilman and encourage them to vote for what their people want and not allow all these outside noise makers to sway their vote. **Anthony Jasmin Sr.Vondra Etienne SteibTodd PocheNeal PocheCourtney LongDonald NashRyan Louque** don't let them bully yall……

Send your emails to

Tammie.bodin@stjamesla.com

I also find it ironic that Tulane receives 300 million annually in federal funding, tax dollars collected by the government, from you, and yet constantly sues our government…… **See less**

46 54 45

Most relevant