**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | * * * * | **CIVIL ACTION NO.: 2:23-cv-00987** |
| VERSUS | * * | JUDGE: CARL J. BARBIER |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | * * * | MAG. JUDGE JANIS VAN MEERVELD |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES**

***MAY IT PLEASE THE COURT:***

Defendant, St. James Parish (the "**Parish**"), opposes the Motion to Compel Discovery Responses [doc. 151] (the "**Motion**") filed by Plaintiffs, Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James, and requests that this Honorable Court deny Plaintiffs' Motion. Plaintiffs' seek documents on topics that are not present in the underlying lawsuit, in an improper attempt to either expand their pled allegations, which have been amended twice already, or conduct a fishing expedition. As outlined below, Plaintiffs' request exceeds the boundaries of permissible discovery and their Motion should be denied.

## I. INTRODUCTION

The Parish has already provided (at great expense) over 208,000 pages of documents in response to the seventy (70) requests for production of documents propounded by Plaintiffs, the result of an ongoing review of over 250,000 documents. More pages and responses are forthcoming.

Herein, Plaintiffs seek documents that bear no relationship whatsoever to the claims in the Second Amended Complaint. In Request for Production ("**RFP**") No. 65, Plaintiffs have requested

"all documents and communications related to the decision to re-district Districts 3 and 4 in the Parish's 2020 Re-Districting Plan."

In the Motion, Plaintiffs present a shifted focus of their RFP No. 65 that differs from its language. Plaintiffs also have re-phrased, broadened, and expanded the scope of the claims they alleged in the Second Amended Complaint, doc. 104, in an attempt to assert the requested documents are relevant. They are not and this Motion should be denied.

## II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

On April 1, 2022, the Census data was released.[1] On June 8 and August 3, 2022, the Parish's redistricting committee met, which was announced through public notices.

On September 28, 2022, the Parish held a public meeting on the redistricting, which was attended by Ms. Washington and Ms. LeBoeuf, representatives of Plaintiffs.[2] On February 1, 2023, the Parish adopted the revised districts through Ordinance 23-02.

On March 21, 2023, nearly two months later, Plaintiffs filed the original complaint. Doc. 1. Plaintiffs' allegations focus on alleged discrimination by the Parish with regard to zoning and planning and industrial siting decisions. On July 7, 2023, Plaintiffs filed their first Amended Complaint for Declaratory and Injunctive Relief. Doc. 24. On November 4, 2025, Plaintiffs filed the now operative complaint, the Second Amended Complaint. Doc. 104. Thus, Plaintiffs have presented their claims three times to this Court. In none of those instances were allegations made regarding voter dilution, voter representation, or a discriminatory intent in the composition of the Parish districts. Docs. 1, 24, 104.

[1] https://storymaps.arcgis.com/stories/443219e4c649406391621d718ef0e1ce
[2] https://www.stjamesla.com/DocumentCenter/View/1389/Public-Hearing-09-September-28-Redistricting

## III. LAW AND ARGUMENT

The scope of discovery includes "relevant" matters. Fed. R. Civ. P. 26(b)(1): "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

The discovery must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

### A. The 2020 Redistricting Plan is Not Relevant to Plaintiffs' Allegations or the Parish's Defenses, Failing the Initial Requirement of Rule 26.

RFP No. 65 seeks information that is not relevant and not within the scope of permissible discovery. Based on the allegations in the Second Amended Complaint, the revision of the boundary between Districts 3 and 4 does not make any "fact more or less probable" nor is it "of consequence in determining the action."

#### 1. Redistricting is separate and distinct from Parish Land Use decisions or Land Use Planning.

Redistricting is required by law and is not related to land use. State law mandates redistricting. *See* La. R.S. 33:1411(A) ("All parish governing authorities … shall within six months after the official release of every decennial census, examine the apportionment plan of its body to determine if there exists any substantial variation in the representation of the election districts."

(emphasis supplied)). Redistricting is related to the preservation of the constitutional "one man, one vote" requirement.

As stated by the South Central Planning and Development Commission ("**SCPDC**")—which assisted and advised the Redistricting Committee—the "redistricting process ensures that the Parish comply with state and federal law by ensuring that citizens living in our community are equally represented among the various bodies of government. This principle of 'one person, one vote' was established in the U.S. Constitution Article 1, Section 2 and was further defined in the 14th Amendment (Equal Protection Clause)."[3] Joshua Manning of the SCPDC explained the goals of redistricting in March 2022:

> The redistricting process has several goals, or principles, it follows. They are described below.
>
> - Compliance with all State and Federal Law, including the Voting Rights Act of 1965 which prohibits plans that intentionally or inadvertently discriminate on the basis of race, which could dilute the minority vote.
> - Compactness: Having the minimum distance between all the parts of a constituency.
> - Contiguity: All parts of a district must be connected at some point with the rest of the district.
> - Preservation of Communities of Interest: Geographical areas, such as neighborhoods, where the residents have a common political interest.
> - Preservation of cores of prior districts: Maintaining districts as previously drawn to the extent possible.
> - Avoid pairing incumbents.[4]

Thus, a decision relating to redistricting involves many considerations that are distinct and separate from a land use decision under the Parish's Land Use Plan.

Plaintiffs intimate some nefarious purpose was behind the 2020 redistricting. However, the SCPDC makes clear that the Parish Council was acting on the recommendation of the SCPDC and the Redistricting Committee. The 2020 Census Data (Baseline Plan) shows that the District 4

[3] See https://storymaps.arcgis.com/stories/443219e4c649406391621d718ef0e1ce.
[4] See https://storymaps.arcgis.com/stories/443219e4c649406391621d718ef0e1ce.

population was 2,746 and District 3 population was 3,429. As District 4 borders District 3, the obvious choice was to adjust boundaries between those two districts.[5] Alternative 1A-1 Revised, which was "recommended to the council by the Redistricting Committee" and approved by the Parish Council, provides a viable alternative to equalize populations as is required by federal and state law.[6] In population, the re-districting is as follows:

| District | Population Allocation Before Re-districting | Population Allocation After Re-districting |
|---|---|---|
| 1 | 2,744 | 2,784 |
| 2 | 2,891 | 3,026 |
| 3 | 3,429 | 3,002 |
| 4 | 2,746 | 2,988 |
| 5 | 2,793 | 2,824 |
| 6 | 2,649 | 2,747 |
| 7 | 2,940 | 2,821 |

Plaintiffs do not show or establish that the factors, criteria, or decisions related to a redistricting effort are in any way similar to the factors, criteria, or decisions under the Parish's Land Use Plan, which is what is at issue in the operative complaint.

**2. Plaintiffs' Complaint is grounded in alleged 'racially discriminatory *land use* decision-making' or 'racially discriminatory decision-making' based on the Parish's *Land Use Plan.***

The broad statements made by Plaintiffs in support of the Motion do not match the actual claims as stated in the Second Amended Complaint. To support the Motion, Plaintiffs broadly characterize their claims as follows: "the Parish has a pattern and practice of racially discriminatory decision-making." Doc. 151-1, pp. 1-2. With this formulation, Plaintiffs ignore or fail to provide the full and true context of their own claims as alleged in the Second Amended Complaint. Doc.

[5] See https://storymaps.arcgis.com/stories/443219e4c649406391621d718ef0e1ce.
[6] *Id.*; *see* Exhibit A-3.

104. Rather than generally addressing "racially discriminatory decision-making," Plaintiffs' claims in the Second Amended Complaint are grounded in and based on "racially discriminatory **land use** decision-making" and/or "racially discriminatory decision-making" based on the Parish's **Land Use Plan**, as follows:

- Claim I – Thirteenth Amendment: Par. 686: "Defendants have devised, implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of race-based **land use** that is a relic or vestige of the plantation and slavery system that existed in St. James Parish."[7]

- Claim II – Fourteenth Amendment (Equal Protection): Par. 691: "Defendants have devised, implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of **land use** that violates the equal protection clause of the Fourteenth Amendment."

- Claim III – Fourteenth Amendment (Bodily Safety and Integrity): Par. 699: "Defendants have devised, implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of **land use** that has and is causing lethal harm by industrial entities."

- Claim IV – Property Rights: Par. 706: "Defendants have devised, implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of **land use** that violates Plaintiffs' rights."

- Claim V – RLUIPA (Substantial Burden): Par. 713: "Defendants have implemented **land use regulations** in a manner that imposes a substantial burden on Plaintiffs' religious exercise."

- Claim VI - RLUIPA (Discrimination): Par. 720: "Defendants, by and through the land use regulations **carried out under the Land Use Plan**, have discriminated against Black and Protestant churches, including Plaintiff Mount Triumph Baptist Church, on the basis of religious denomination."

- Claim VII – Louisiana Constitution: Par. 734: "Defendants have devised, implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of **land use** that violates Plaintiffs' rights to preserve, foster, and promote their historic and cultural origins."

Doc. 104. By characterizing their claims as generally related to "racially discriminatory decision-making," Plaintiffs blatantly ignore or hide the claims actually pled in the Second Amended

[7] **Empasis** supplied as to all.

Complaint and argue a broadened scope of those claims to matters well beyond decisions regarding land use. Only by doing so, improperly, may these documents arguably become relevant. However, the allegations presented, after multiple amendments, do not address decision-making outside of land use and industrial siting.

Plaintiffs claim that the amount in controversy may be measured in "philosophical, social, or institutional terms." Doc. 151-1, p. 12. Even if that is correct, the relief requested by Plaintiffs does not address redistricting, request redistricting, or seek to have the 2020 Redistricting Plan declared null. Essentially, Plaintiffs request that industrial development in Districts 4 and 5 be halted through an injunction and a declaration that certain provisions of the Land Use Plan are invalid. Conspicuously missing is any reference to redistricting or the borders of the various council districts.

Plaintiffs claim that the requested information will "go to show how [the Parish] considered geographic and demographic factors to make decisions affecting Parish residents" and the Parish's defenses require "an investigation into how the Parish used demographic data in its decision-making processes." Doc. 151-1, pp. 9, 10. However, the Parish's general decision-making is not at issue in this proceeding; instead, the Parish's **land use** decision-making is at issue.

Plaintiffs suggest that "events not specifically mentioned in the complaint" may be relevant to establish "a pattern and practice of discriminatory decision-making." Doc. 151-1, p. 10. By making this argument, Plaintiffs admit that RFP No. 65 does not fit within the scope of discovery or the definition of relevancy. Their new, nebulous standard has no limiting principle and ignores the limits on discovery and the definition of relevancy. By Plaintiffs' new standard, any evidence which they seek to obtain becomes relevant, whether it is even mentioned in a complaint and whether it has any bearing on the actual allegations of a complaint.

The Parish scheduled a public hearing on September 28, 2022, "to receive public input on the 2020 St. James Parish Redistricting Plan." Exhibit A-1. The public hearing was held and Barbara Washington and Gail LeBoeuf, both founding and active members of Inclusive Louisiana, attended and provided their input. *See* Exhibit A-2. Ordinance 23-02, which adopted final 2020 Redistricting Plan, was passed by the Parish Council on February 1, 2023. *See* Exhibit A-3. Despite this, the various complaints are silent as to the 2020 Redistricting Plan and the boundary changes between Districts 3 and 4.

The Second Amended Complaint does not encompass or include the redistricting of Districts 3 and 4, even though Plaintiffs could have included this matter in the original complaint (doc. 1, filed March 21, 2023), the Amended Complaint (doc. 29, filed July 17, 2023), or the Second Amended Complaint (doc. 104, filed November 4, 2025).[8] They did not, even though the redistricting effort began well prior to March 2023 and was complete prior to the original filing.

**3. The Parish's discussion of the riverfront access does not make the Parish's re-districting relevant.**

In Plaintiffs' original July 31, 2026, deficiency letter, Plaintiffs did not characterize RFP No. 65 as relevant to the claims in the Second Amended Complaint. Doc. 151-4, p. 4 of 5. Instead, Plaintiffs claimed the documents were "relevant" because the "redistricting of Districts 3 and 4 was addressed during the January 28, 2026 oral argument on the Parish's Re-Submitted Motion to Dismiss *in response to* an issue that counsel for the Parish raised." Doc. 151-4, p. 4 (*emphasis* supplied).

In other words, Plaintiffs brought up redistricting during oral argument "in response to" something stated by counsel for the Parish. However, the scope of discovery and relevancy are not measured by what Plaintiffs' counsel states in an oral argument, even if it is "in response to an

[8] There is no a single mention of the redistricting of Districts 3 and 4 in the 174-page complaint.

issue that counsel for the Parish raised." Instead, the scope of discovery and relevancy are measured and evaluated against claims in a formally filed complaint.

Moreover, redistricting is not relevant to the Parish's assertion, which was that the districts at issue in this case, Districts 4 and 5, have the most industry because they have the most river frontage along the Mississippi River, a driver that has no relationship to the racial makeup of residents. Plaintiffs' response suggested that the area of District 3 (not a target of the lawsuit) was enlarged at the expense of District 4, or that District 3's riverfront access was shifted to District 4. However, District 4 gained some areas from District 3 and lost some area to District 2, but the riverfront remains the same. *See* Figure 1.

Figure 1

| Before | After |
| --- | --- |
|  |  |

Source: https://storymaps.arcgis.com/stories/443219e4c649406391621d718ef0e1ce.

The Parish's counsel's discussion that the riverfront property was a driver for industry is not changed by the redistricting, which did not re-allocate the riverfront property. Thus, Plaintiffs' assertion that the Parish's defense regarding its legitimate purpose for locating industries in

Districts 4 and 5, which is motivated by riverfront access, implicates the redistricting is entirely unsupported.

**4. Plaintiffs' arguments re-write RFP 65.**

Plaintiffs rely on one sentence in a 77-page document (the Parish's Answer, Doc. 120, Par. 283) to claim that the redistricting materials will "help prove or disprove the validity of this defense" because it will allegedly show "what population data the Parish had access to" and "how it considered that data." Doc. 151-1, p. 11. This assertion attempts to re-write RFP 65.

Plaintiffs misleadingly argue that their request is proper because "demographic and geographic data used in redistricting bears on alternate explanations the Parish has presented for its disparate treatment of different Districts, including population decline." However, RFP No. 65 does not only request "demographic and geographic data" of the Parish—which is publicly available as stated in the Parish's response, doc. 151-6, p. 5—but asks for "all documents and communications related to the decision to re-district Districts 3 and 4 in the Parish's 2020 Re-Districting Plan." Doc. 151-2, p. 15.

"[H]ow [the Parish] considered that data" for redistricting purposes is different than considerations under the Land Use Plan. As noted above, a redistricting decision is fundamentally different than a land use decision. Joshua Manning of the SCPDC again provides the reasons or rationale for the redistricting, none of which relate to land use decision-making:

> The redistricting process requires for all districts to be within a 5% deviation of the ideal population for each district and that the overall range of the plan be less than 10%. With 7 districts and a total population of 20,192, an ideal district for the St. James Parish Council is 2,885 people. According to the baseline plan, District 3 will need to lose some population and District 6 will need to gain population. While the other districts do not necessarily need to gain or lose population, they may potentially have their boundaries change due to the shifting of populations. In addition, the plan should include three majority-minority districts of at least 50%

> black or African American population in order to comply with the Voting Rights Act of 1965.[9]

Also, as detailed below, Plaintiffs have access to all "demographic and geographic" data that drove the re-districting.

Plaintiffs have failed to show that the decision-making process for redistricting is the same as the decision-making process for land use. Until they can do so, they have not shown how this information is relevant to the actual claims in the Second Amended Complaint.

**5. Plaintiffs' arguments regarding inadequate political representation are outside the pled claims and inconsistent with the facts.**

Plaintiffs claim that the "political representation afforded to Black residents … is relevant to establish whether their interests are adequately accounted for in land use decisions." Doc. 151-1, p. 11. RFP No. 65 only requests "documents and communications related to the decision to re-district Districts 3 and 4 in the Parish's 2020 Re-Districting Plan." Plaintiffs have not explained how the narrow decision as to those two districts extrapolates to the larger issue of whether there has been adequate Black representation throughout the Parish over time, much less in the land use decisions at issue. Even if they could offer such an explanation, the Second Amended Complaint has not raised that issue.

Interestingly, the vote in 2023 approving the redistricting based on the 2020 Census was *unanimous* and included all Black members of the Parish Council. See Exhibit A-3. Additionally, by 2024, four of the seven members of the Parish Council were Black (even though the adopted alternative, Alternative 1A-1, included only three districts with more than 50% Black residents).

Plaintiffs now claim that the Parish has "placed political representation at issue." Doc. 151-1, p. 11. The fact that decisions, such as the enactment of the Land Use Plan in 2014 and many

---

[9] *See* https://storymaps.arcgis.com/stories/443219e4c649406391621d718ef0e1ce (emphasis supplied).

specific land use decisions, were made *unanimously* does not somehow raise the issue of "fairness of representation." *Id.* Rather, it shows that elected officials from Districts 4 and 5 disagreed with the positions Plaintiffs now assert.

Plaintiffs' assertions regarding the "fairness of representation" are disingenuous, at best. They seem to regard any member of the Parish Council as providing "inadequate representation of Black constituents" and make "discriminatory land use decisions" if any member, regardless of race, votes in a manner that is contrary to Plaintiffs' stated positions. For example, RISE St. James expressed its displeasure at the Black representative of District 5, A.J. Jasmin, for voting in a manner it deemed incorrect, i.e., differing from their own views.[10] Sharon Lavigne, founding member of RISE St. James, actively sought the recall of Mr. Jasmin because of that and other votes. *See* Exhibit B. Black residents of Districts 4 and 5 have always been properly and fairly represented by their district elected officials and the Planning Commission and Council as a whole. Assertions to the contrary now are attempts to explain why Plaintiffs' viewpoint is not shared by others. Plaintiffs either seek improper discovery or are improperly attempting to expand the scope of the operative complaint. Both should be disallowed.

**6. <u>Plaintiffs' request is an improper fishing expedition.</u>**

In the exercise of its discretion in relation to discovery requests, "[c]ourts have also recognized that the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Marine Power Holding, LLC v. Malibu Boats, LLC*, No. 14-912, 2016 WL 403650 at *3 (E.D. La. Jan. 11, 2016) (internal quotation and citation omitted). As this Court has explained:

> Rule 26(b) is not, however, "a license to engage in an unwieldy, burdensome, and speculative fishing expedition." While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing

[10] *See* Exhibit B, Excerpt of RISESJ00002117; *see also* RISE St. James' December 15, 2025, Facebook Post.

> expeditions in discovery. Thus, while the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials, discovery does have "ultimate and necessary boundaries." Rule 26 instructs the court to limit the extent of discovery if the proposed discovery is outside the scope allowed under Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C)(iii).

*Dennis as Pers. Representative of Est. of Thomas Johnson v. Westbank Fishing, LLC*, No. CV 25-1963, 2026 WL 1830873, at *2 (E.D. La. June 25, 2026) (citations omitted). An overly broad general request which seeks "production of information with no conceivable relevance to any claim or defense," is "a patently overbroad fishing expedition" which would "exceed the permissible bounds of Rule 26." *Id.*, at *5. A request which is "calculated to uncover something upon which to rest the otherwise unsupported allegations in his complaint" is also a "fishing expedition." *Mauldin v. Fiesta Mart*, 114 F.3d 1184 (5th Cir. 1997). "[T]he court must use caution to ensure that the party seeking discovery does not embark upon a 'fishing expedition' for unknown wrongs." *White v. LaSalle Corr., Inc.*, CV 16-1405, 2018 WL 11412455, at *3 (W.D. La. Apr. 2, 2018) (citing *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)).

Here, Plaintiffs claim the requested production "may bear on whether inadequate representation of Black constituents has led to discriminatory land use decisions." *Id*. Again, there is no allegation in the Second Amended Complaint that Black constituents were not adequately represented by the Parish's democratically appointed or elected Planning Commission or Parish Council, wherein each district (4 and 5 included) is represented by its own elected official. Plaintiffs are seeking to uncover some unknown potential wrong that is wholly unrelated to the present claims. This is an improper fishing expedition.

**B. Plaintiffs' Request is Not Proportional to the Needs of the Case.**

Discovery must also be "proportional to the needs of the case." FRCP 26(b)(1). The issues at stake in the action, such as the ability of the residents of St. James Parish to use their local political process to make their own decisions about land use and future development as opposed to decisions made by a judicially appointed 'land use czar,' are admittedly important. There is no need to inject substantial and independent issues of redistricting into this matter. Plaintiffs' request does not meet this standard.

**1. Plaintiffs have access to all requested "demographic and geographic" information.**

The "data" to which the Parish had access to is the very same data that every single person in the United States, including Plaintiffs, has equal access to – the results of the 2020 Census. Joshua Manning of the SCPDC published that baseline data in March 2022 and stated: "Redistricting starts by determining the baseline population, or baseline plan. This is an examination of the 2020 population in the existing districts."[11] It is clear from publicly available sources, such as SCPDC, what "data" the Parish had access to and the source of that "data." The publicly available website provided by Plaintiffs, doc. 151-6, p. 5, on this very topic states: "All mapping and demographic work by the South Central Planning and Development Commission. Population data provided by the U.S. Census Bureau via Caliper."[12] Also, Plaintiffs' RFP No. 37 requested "any assessments the Parish has done regarding the increase or decrease of residential populations in individual districts in St. James Parish, or across the Parish as a whole." In response, the Parish produced over 2,700 pages. Thus, the suggestion that RFP No. 65 is necessary for Plaintiffs to obtain "demographic and geographic data" is false.

[11] See https://storymaps.arcgis.com/stories/443219e4c649406391621d718ef0e1ce.
[12] https://storymaps.arcgis.com/stories/443219e4c649406391621d718ef0e1ce

Both parties have access to a voluminous amount of information on this issue, including the 2020 U.S. Census data, the public records of Parish proceedings (including the audio of each such meeting) and the SCPDC's data, alternatives, and explanations of the 2020 Redistricting Plan. Indeed, a subpoena was issued to the SCPDC for documents and Plaintiffs could easily have requested this information.

**2. <u>The Parish has limited resources, which are spent to the detriment of its citizens.</u>**

The Parish's resources are limited. The Parish is incurring crushing and burdensome costs to respond to the seventy (70) pending requests for production as well as the recently received Plaintiffs' Second Set of Interrogatories and Request for Production of Documents, which increases the RFPs to 86. As the Parish has discussed with Plaintiffs, the First Set of RFPs yielded 250,000 documents which the Parish has been reviewing. Each dollar of costs incurred by the Parish in discovery and defense of this litigation is a dollar less that the Parish can spend on the needs and well-being of its citizens. Therefore, while Plaintiffs are only pursuing one RFP with this Motion, the Parish cannot justify the expense required for such a broad topic when the topic is entirely irrelevant, especially when the Parish's resources are going to its ongoing review of production of thousands of documents that are relevant to the case.

Finally, the burden or expense of the proposed discovery outweighs its likely benefit. The Parish is responding to the seventy (70) pending requests and the more recent discovery requests. It has incurred, and is incurring, massive costs to do so. Adding to that burden, in addition to the already pending burden, outweighs the need for the Parish to seek additional information that will not prove a single claim made by Plaintiffs and which Plaintiffs can obtain elsewhere.

**3. <u>The requested documents play no role in resolving the present claims and defenses.</u>**

RFP No. 65 is not important in resolving any present issue. This case relates to *<u>land use</u>* decisions. It does not relate to the "fairness of representation" or general decision-making by the Parish. Obtaining the requested information will not prove any of the claims asserted in the Second Amended Complaint. Plaintiffs' request is not proportional to the needs of the case.

## IV. CONCLUSION

Defendant, St. James Parish, prays that this Honorable Court deny Plaintiffs', Inclusive Louisiana, Mount Triumph Baptist Church, and RISE St. James, Motion to Compel Discovery Responses. Defendant also respectfully prays for an award of all costs and fees associated with filing this motion, and any other relief the Court may deem appropriate.

RESPECTFULLY SUBMITTED,
By Attorneys:

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*/s/ Danielle L. Borel*
John King, La. Bar No. 17004
John.King@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
Carroll.Devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
Danielle.Borel@bswllp.com
Jordan S. Varnado, La. Bar No. 39457
Jordan.Varnado@bswllp.com

*Attorneys for St. James Parish*