**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members<br>*Plaintiffs*,<br><br>vs.<br><br>ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION,<br>*Defendants.* | Civil Action No. 2:23-cv-00987<br>Section J<br>Judge Carl Barbier<br>Magistrate Judge Janis van Meerveld |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL**

## I. INTRODUCTION

The discrete set of redistricting documents requested in Plaintiffs' Request for Production No. 65 ("RFP No. 65") are relevant and to their claims and the Parish's defenses and proportional to the needs of the case. The Parish's decision-making process that potentially diluted the political power of majority-Black communities near industrial facilities is relevant to how the Parish wields the authority of the Parish Council to make land use decisions imposed on those communities. The Parish's internal analysis of population data is relevant to its own claim that its land use decisions are based on its understanding of population data.

Despite its protracted discussion of the overall volume of production, the Parish has failed to state what, if any, burden is imposed by this specific request. Because RFP No. 65 is a straightforward request for a discrete set of documents Court should grant Plaintiffs' request and compel the Parish to produce documents responsive to RFP No. 65.

## II. LAW AND ARGUMENT

### A. The documents requested by RFP No. 65 are relevant to the Plaintiffs' allegations and the Parish's defenses.

Throughout its opposition, the Parish misconstrues the purpose of RFP No. 65 to suggest that Plaintiffs' request is about the fact of redistricting, rather than the Parish's attendant decision-making process. The Parish states, "the revision of the boundary between Districts 3 and 4 does not make any 'fact more or less probable' nor is it 'of consequence in determining the action.'" Dkt. No. 167 at 4. RFP No. 65 does not seek to uncover whether or not such redistricting occurred. The request is for production of the documents related to the *decision* the Parish made about how it should best redistrict.

The decision-making process the Parish employed, how it understood the data it had access to, and what it considered in reaching its decision are relevant to establishing a pattern and practice of discriminatory intent and to evaluating the Parish's defenses.

#### *1. Redistricting is part of the process that produces land use decisions.*

The Parish argues that "a decision relating to redistricting involves many considerations that are distinct and separate from a land use decision under the Parish's Land Use Plan." Dkt. No. 167 at 4. Plaintiffs' burden is not to show that the criteria used in a redistricting are the same as the criteria used under the land use plan. Plaintiffs' burden is to show that how the Parish exercised its decision-making authority using those criteria bears on the alleged pattern and practice, i.e. that

the documents Plaintiffs have requested have a reasonable likelihood of bearing on its claims. Redistricting is logically connected to land use decisions because land use decisions are made by the Parish Council, the makeup of which is determined according to the district maps, which are altered in redistricting. The decision to shift a portion of District 3 into District 4 directly impacted the way in which people affected by land use decisions are represented in those land use decisions. Therefore, the decision-making process going into redistricting is relevant to Plaintiffs' claims of discrimination in those decisions. Indeed, Plaintiffs' Complaint extensively lays out the history of the disenfranchisement of Black voters, Dkt. 104, paras 116-125, 148-157, and the dilution of political power of those voters, which obviously impacted their ability to influence land use decisions.

Further, the redistricting decision-making process is similar to the land use decision-making process in a material way. Plaintiffs claims allege that the Parish improperly considered race in its land use decision-making process and that it disproportionately valued and protected some groups of citizens while allocating burdens to others. In its opposition, the Parish notes that when redistricting, it must consider, among other factors: whether it will "dilute the minority vote," how much distance will be between parts of a constituency, and whether "communities of interest" are preserved, i.e. whether "[g]eographical areas, such as neighborhoods, where the residents have a common political interest" are kept together. Dkt. No. 167 at 4. These factors specifically require the Parish to consider race. How the Parish considered race when required to do so bears heavily on Plaintiffs' claims that it improperly handled race in land use decisions. In analyzing communities of interest, what neighborhoods should be kept together, and what neighborhoods had common political interest, the Parish was required to geographically allocate political benefits and burdens, just as land use decisions required it to geographically allocate property benefits and

burdens. Thus, how the Parish considered the listed redistricting factors has a reasonable likelihood of producing evidence bearing on Plaintiffs' pattern and practice allegations.

Both land use and redistricting are allocations of resources, either physical or political. More importantly, both land use rules and district voting maps determine what degree of political power people have over their own communities. In both cases, the Parish chose to decrease the ability for majority-Black communities near industrial facilities in the 4th District to control their environment. Through land use decisions, the Parish thrust industrial development upon these communities; through redistricting, the Parish potentially reduced their ability to influence that development. The two decisions are different in name, but they are part of the same pattern and practice of decisions that resulted in the specific land use outcomes that form the basis for this case.

Neither the fact that redistricting is mandated by State law, nor the Parish's reliance on the Redistricting Committee and SCPDC, diminishes the relevance of this request. The Parish implies that it does, that it was bound by law and simply acted on the recommendation of the Redistricting Committee and SCPDC. Dkt. No. 167 at 4. But the Redistricting Committee is part of the Parish, and the decision to use SCPDC, along with any communications the Parish had with them, and the Parish Council's choice to accept SCPDC's recommendations, are exercises of discretion by the Parish which constitute a decision-making process. Documents memorializing this process will go to show the Parish's intent with regard to the equitable treatment of communities in the 4th District, which is directly material to Plaintiffs' claims of discrimination.

### 2. *The specific documents requested pertaining to the redistricting of Districts 3 and 4 bears on the land use decision making in District 4*

The Parish suggests that "the Parish's general decision-making is not at issue in this proceeding; instead, the Parish's land use decision-making is at issue." Dkt. No. 167 at 7. Even

evidence of discriminatory decision-making in general would be material to specific claims of discriminatory decision-making. But Plaintiffs do not seek evidence of decision-making in general. Plaintiffs seek documents specifically related to the redrawing of the boundaries of Districts 3 and 4, a decision which impacts the representation of the people who reside in District 4, who are burdened by industrial expansion, and those who reside in District 3, who are protected from it. The Parish's intent in making this redistricting decision is material to their intent in making land use decisions, which are some of, if not the most, consequential and locally controversial political decisions made by the Parish Council. Thus, the argument that Plaintiffs' Complaint is based on land use decisions rather than general decisions is a red herring. Redistricting bears on the process of land use decision making, and the specific redistricting at issue here bears on the specific land use decisions in the complaint. The specific decision to bring a part of District 3 into District 4 was made by the same people who made the land use decisions. It burdened the same groups of people burdened by the land use decisions. And it paved the way for the further unequal treatment.

Critically, Plaintiffs do not claim that the redistricting process in general is an independent basis for a cause of action in this case. Plaintiffs only claim that the decision-making process for this specific aspect of redistricting bears on the decision-making process in the land use decisions which do form the basis for their Complaint.

***3. RFP No. 65 is relevant to the Parish's assertions in its Answer.***

The requested redistricting documents will bear on the Parish's assertion in its own Answer that it makes land use decisions, not based on race, but on "where residential populations are growing or decreasing." Dkt. No. 120 ⁋⁋ 282-283. The Parish criticizes Plaintiffs' reliance "on one sentence in a 77-page document," Dkt. No 167 at 10, referring to their own Answer. As a sworn

pleading of the Parish, the Answer is a reliable statement of its defenses. And nowhere has the Parish asserted that it will not raise this argument at trial. Plaintiffs are entitled to discovery into "any party's claim or defense," F. R. Civ. P. 26(b)(1), including the Parish's defense that it based its land use decisions on changes in population. Dkt. No. 120, ¶ 283.

RFP No. 65 will produce documents relevant to this assertion. "All documents and communications related to the decision to re-district Districts 3 and 4" necessarily includes any population, demographic, and geographic data used in that decision. Though some of this data may be available on publicly-hosted websites, Plaintiffs seek the specific data the Parish had access to internally to understand if its data supports the asserted defense.

Moreover, RFP No. 65 seeks more than the data itself because other documents besides the underlying data are relevant to Plaintiffs' claims. How the Parish used that data, how it thought about it, and any comments that Parish officials made about it are relevant. While redistricting may not be an identical process to land use decisions, as explained above, it is part of the system which produced those decisions and bears substantial similarity such that intent in redistricting is relevant to intent in land use decisions. The redistricting of Districts 3 and 4 required the Parish to analyze the population and demographics of those districts and make determinations related to population gain and loss, the same determinations which the Parish has alleged in its Answer formed a basis for their land use decisions.

#### 4. ***The representation of majority-Black communities near industrial facilities bears on the land use decisions imposed on those communities and the Parish's statements concerning their representation***

As explained above, Plaintiffs do not seek to extrapolate the subject matter of this request into a general discussion of "adequate Black representation throughout the Parish over time," Dkt. No 167 at11, but to investigate a particular aspect of redistricting (that which affects majority-

Black communities near industrial facilities in District 4) intimately related to the specific apportionment of resources at issue in this case (the disproportionate placement of industrial facilities near majority-Black communities in District 4).

If the Parish attaches significance to the unanimous nature of Council votes, including the representation of District 4, then Plaintiffs have the right to interrogate that claim. The Parish points out that "elected officials from Districts 4 and 5 disagreed with the positions Plaintiffs now assert." Dkt. No. 167 at 12. Plaintiffs may seek to challenge this assertion, including by interrogating whether the political representation of majority-Black communities near industrial facilities in District 4 is actually representative of those communities' interests. The validity of the Parish's insistence that the representation of these communities is indicative of their attitudes towards Plaintiffs' claims wanes and waxes with the adequacy of representation of those communities.

***5. Plaintiffs' specific and relevant request is not a fishing expedition.***

While redistricting itself is not an allegation in Plaintiffs' Complaint, the documents Plaintiffs have requested bear on the claims which are in their Complaint. This request is not based on uncovering an "unknown potential wrong," Dkt. No 167 at 13, but rather in supporting an amply-pled and clearly supported alleged wrong. Indeed, as in *White v. Lasalle,* which the Parish itself cites to, Plaintiffs do not seek to "uncover new or unknown claims," but merely to support their well-pled existing claims. No. CV 16-1405, 2018 WL 11412455, at *3 (W.D. La. Apr. 2, 2018). Plaintiffs know that the redistricting moved a majority-white area far from industrial facilities into the 4th District, potentially diluting the vote of majority-Black areas in that district that are near industrial facilities. As discussed extensively above, the Parish's decision-making process in doing so is intimately related to its decision-making process that resulted in

disproportionate placement of industrial facilities in majority-Black areas in the 4th District. Moreover, describing residents' requests to the government for documents related to redistricting as a "fishing expedition" raises concerns about the Parish's transparency regarding its important political decisions.

**B. Plaintiff's request is proportional to the needs of the case.**

***1. Plaintiffs' request encompasses information beyond that which is on publicly-hosted websites.***

Though some of the requested information may be available through public websites, much of what RFP No. 65 seeks is within the sole possession of the Parish. The Parish points out that the 2020 census is publicly available and that certain information about redistricting is publicly available via a website published by Joshua Manning. Plaintiffs' request seeks additional information which only the Parish has.

The thrust of RFP No. 65 is to obtain documents reflecting the Parish's decision-making *process* to determine what it knew about Parish population data and how the Parish analyzed that data in its decision-making. In other words, not just the data itself but the *significance the Parish attached to that data.* The 2020 census alone is not fully responsive to this request because it does nothing to show how the Parish thought about the data. This information can only be gleaned from the Parish's own records and communications, which only the Parish has. Further, Plaintiffs do not know if the Parish had and considered any other data in addition to the 2020 census.

If, as the Parish suggests, all relevant information is publicly available, then this request should not present any burden. But if the Parish has communications discussing what it thought about its population data and providing any reasons for choosing one redistricting plan over another, besides SCPDC's public-facing website, then that non-published information is directly responsive to this request.

### *2. The Parish has failed to enunciate the burden of this request with specificity*

The Parish has repeatedly discussed the cumulative volume of discovery in this case, but it has yet to tell Plaintiffs or the Court why *this request* presents any burden at all. The "party resisting discovery must show specifically how . . . each question is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990) (internal quotations and citations omitted). The Parish does not meet this burden.

Its objection merely states that this request would add to the extant discovery costs from other requests. But it fails to enunciate how much burden *this request* would add. For instance, the Parish has not articulated how many documents it thinks are responsive to this request. It has not articulated if there is any difficulty in accessing any of them. It has not articulated what specifically about this request creates a burden. Indeed, Plaintiffs have no reason to believe that this request poses a significant burden on the Parish, given that the request seeks a discrete and likely clearly-identifiable universe of materials. Because, as previously articulated, the documents are highly relevant to Plaintiffs' claims, the Parish has not met its burden to articulate why this request is not proportional, and therefore cannot be produced.

## III. CONCLUSION

RFP No. 65 is a limited request. It seeks documents and communications memorializing the process the Parish used to make a decision affecting the representation of the same majority-Black communities that its land use decisions burdened, based on the same population data that it says formed the basis for those decisions. The Parish has not stated with any defensible degree of particularity how this request poses a burden. Because Plaintiffs' Request for Production No. 65 is relevant to its claims and the Parish's defenses and is proportional to the needs of the case,

Plaintiffs respectfully request that this Honorable Court grant this motion and compel the Parish to produce responsive materials.

Respectfully submitted this 19th day of October, 2026,

/s/ ___Clara Potter__________
Clara Potter, La. Bar Roll No. 38377
Devin Lowell, La. Bar Roll No. 36555
Lisa Jordan, La. Bar No. 20451
ENVIRONMENTAL LAW CLINIC
TULANE LAW SCHOOL
6329 Freret St.
New Orleans, LA 70118
Tel.: (504) 865-5789
Fax: (504) 862-8721
cpotter2@tulane.edu
dlowell@tulane.edu
lwjordan@tulane.edu

*Attorneys for RISE St. James*

/s/ __Hailey Green____
Hailey Green, Student Attorney
hgreen8@tulane.edu

/s/ ___Forge Mathes_____
Forge Mathes, Student Attorney
fmathes@tulane.edu

/s/ __Julia Bursby____
Julia Bursby, Student Attorney
jbursby@tulane.edu

*Student Attorneys for RISE St. James*

/s/____Pamela C. Spees__
Pamela C. Spees, La. Bar Roll No. 29679
Astha Sharma Pokharel*
Baher Azmy*
Kayla Vinson*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
pspees@ccrjustice.org
bazmy@ccrjustice.org
kvinson@ccrjustice.org

** Admitted pro hac vice*

William P. Quigley (cooperating counsel)
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
Fax (504) 861-5440
quigley77@gmail.com

*Attorneys for Plaintiffs Inclusive Louisiana and Mount Triumph Baptist Church*