**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | * * * | CIVIL ACTION NO.: 2:23-cv-00987 |
| VERSUS | * * * | JUDGE: CARL J. BARBIER |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | * * * | MAG. JUDGE JANIS VAN MEERVELD |

# REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO FIRST SET OF DISCOVERY

Defendant, St. James Parish (the "**Parish**"), respectfully submits this reply memorandum in support of its Motion to Compel Responses to First Set of Discovery [doc. 148]. In 739 paragraphs, Plaintiffs alleged seven serious constitutional violations by the Parish in its Second Amended Complaint. Doc. 104. Despite the Parish now seeking discovery directly relevant to its allegations, Plaintiffs are refusing to provide relevant information. As outlined in the Motion to Compel, Plaintiffs should be ordered to provide the requested information.

## I. PLAINTIFFS' MEMBERSHIP INFORMATION IS RELEVANT (RISE INT. 8, 11, RFP 5; INCLUSIVE INT. 7, 10, RFP 12; MOUNT TRIUMPH INT. 9, RFP 4).

Plaintiffs hardly argue that the Parish's requests are not relevant, making one general assertion with no specific argument to the pled claims or defenses or law. Doc. 165, p. 18. This poor showing is a product of the fact that the Parish's requests are *directly relevant* to Plaintiffs' pled allegations. Plaintiffs fail to address the numerous assertions and allegations the Parish cites to for necessitating its discovery requests. Undeniably, Plaintiffs have placed these topics at issue.

### A. Plaintiffs do not get to selectively choose which of their members is relevant.

Plaintiffs assume that because they, selectively, have chosen 1-2 of their members to rely

on "to prove their claims," doc. 165, p. 11, the information on the same topics is not relevant for the other members. This is absurd. If a majority of Plaintiffs' members have increased property values, that would be *highly relevant* to the alleged claims and the Parish's defense. Plaintiffs do not get to selective guard the information on the topic of their claims to only those individuals which *they intend to use at trial* and prevent the Parish from proper discovery that could prove vital to its defense. While Plaintiffs must prove the injuries of a few of its members to prove its standing, this does not foreclose the relevance of all other members if their information would help the Parish defend against Plaintiffs' claims.

It has been noted that an association cannot use this standing principle as a shield to discovery:

> If this is accurate, that is that the NPCA's individual members are non-parties to the action, such status then begs the obvious question of how can NPCA, an organization with the mission of protecting and promoting their members' interests, even has standing to bring this action if they can avoid the obligation and risks of initiating this litigation. Conversely, being able to evade the task of discovery creates the quandary that any association may be able to bring a lawsuit and then shirk or even shift the duties imposed by the Federal Rules of Civil Procedure upon either their members or the defendants. Such a scenario, on its face, does not appear to be fair.

*Sherwin-Williams Co. v. Spitzer*, No. 1:04CV185(DNH/RFT), 2005 WL 2128938, at *7 (N.D.N.Y. Aug. 24, 2005) (ordering plaintiffs "shall provide to the Defendants forthwith, a list of those members who are so affected by these AIM Regulations"). There, the court found it would "not, in any mode or manner, permit [the plaintiff association] and its members to use discovery as a sword and a shield." *Id.* at *10. The same should be found here.

While Plaintiffs do not seek damages for the alleged decreases in property value, the Parish cannot defend that its actions did not decrease the property value of Plaintiffs' members *if it does not know what properties those are.* Plaintiffs' requested relief does not lessen the Parish's burden.

**B. Plaintiffs' First Amendment assertion is not applicable or supported.**

Plaintiffs' First Amendment assertions are off base and not applicable. First, the information requested by the Parish is not constitutionally protected, distinguishing the cases relied on by Plaintiffs.[1] Second, Plaintiffs' implication that the Parish has "demonstrated hostility towards Plaintiffs because of their views," is unsupported and seeks to impute the actions of others onto the Parish. Doc. 165, p. 11. Plaintiffs have made no showing that the Parish's requests would subject its members to "economic reprisal, loss of employment, threat of physical coercion, [or] other manifestations of public hostility." Doc. 165, p. 13. The issues which Plaintiffs outline are statements of other parish residents who disagree with Plaintiffs and not actions of the Parish.

The "disparaging yard signs and posters"–which stated "We want jobs & Tax Revenue Not Paid Protesters" and "Stop the Noise," doc. 165-2, p. 9, 11—are the actions of other Parish residents who are expressing views that differ with Plaintiffs'. These signs do not address any single member of Plaintiffs, much less threaten economic reprisal, loss of employment, or physical coercion. Similarly, statements by Parish residents (again, not the Parish) regarding Plaintiffs' members being "paid protestors whose advocacy is being directed and controlled by out-of-state funders," doc. 165-2, p. 2, is not a threat, but an expression of a disagreeing view of the merits of Plaintiffs' purpose. "RISE's work is under attack," doc. 165-2, p. 3, is no different than RISE attacking the work of those with which it disagrees, such as industries.

While uncomfortable for Plaintiffs, other Parish residents are similarly voicing their opinions and attempt to garner support for their positions. This is their right, as Plaintiffs have the

[1] *See Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 632 (5th Cir. 1980) (finding request for member information not relevant because class action was waived and claims were limited to specific members) (where plaintiffs' alleged harassment by the requesting party); *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018), *as revised* (July 17, 2018) (where information sought was internal workings of entity without a need as substantial other documents had been produced); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010)( finding requested information could be obtained from other sources).

right to make the statements it has, which it has done through such platforms as social media posts, interviews, signs, rallies, and protests. This is not, however, harassment or threats.

Interestingly, Plaintiffs appear to be insulted by the suggestion that a vast majority of its funding comes from out of state sources, while simultaneously depriving the Parish of the facts regarding its funding to address this point. Plaintiffs both make this statement to suggest the notion is an insult, and refuse to answer questions on their funding.

Regardless, these statements, posts, and signs are *not the actions of the Parish.* Plaintiffs' attempt to hold the Parish liable for the actions of others or another group, s*ee* doc. 165, p. 14, is inappropriate. Plaintiffs' suggestion that the Parish would leak the personal health information to "non-governmental actors like Industry Makes" doc. 165-2, pp. 4-5, is entirely unsupported.

The Parish President stays in constant contact with numerous individuals, groups, and companies as part of the job. The fact that the Parish has conversation(s) with a group does not mean the Parish condones or encourages any of that group's actions, as Plaintiffs suggest. Plaintiffs' attempt to connect the Parish to statements by entirely different parties in entirely different lawsuits, doc. 165, p. 15, stretches the bounds of reasonableness.

The only statement or action remotely connected to the Parish was a request by a Parish councilman to a pastor asking the pastor not to present a "one-sided biased presentation." Doc. 165, p. 15. While Plaintiffs may disagree with this request, it is in no way harassing, threatening, or intimidating, much less an action *of the Parish.* The assertion by Plaintiffs that "Parish officials themselves harbor hostility towards Plaintiffs," doc. 165, p. 16, is another entirely unsupported statement made only for the sake of denying the Parish discovery.

Even if Plaintiffs have established that the Parish's requests infringe on their constitutional rights, which is absolutely denied, the Parish has shown that the discovery is nevertheless

warranted for the Parish to have a fair opportunity to defend itself against Plaintiffs' allegations.

**C. The Parish's requests are proportional to the needs of the case.**

Plaintiffs' argument that the requests are not proportional is based on its inappropriate view of what the Parish should use to defend Plaintiffs' claims. Plaintiffs argue:

> To prove their claims, Plaintiffs can rely on expert analysis of publicly-available information about the impact of industrial expansion on housing values in those parts of the Parish, and can establish standing based on a "sample" of members who own property in those majority-Black parts of the Parish.

Doc. 165, p. 17. This is both legally false and factually inconsistent with its standing.

"[A] particular injury cannot rest on 'a statistical probability' that some unknown members will suffer a concrete injury." *Pharm. Rsch. & Manufacturers of Am. v. Dep't of Health & Hum. Servs*., 656 F. Supp. 3d 137, 149 (D.D.C. 2023). The Fifth Circuit, following the lead of the United States Supreme Court, rejects this very idea, as follows:

> We do not recognize the concept of "probabilistic standing" based on a non-particularized "increased risk"—that is, an increased risk that equally affects the general public. Suits alleging "generalized grievances" do "not present constitutional 'cases' or 'controversies.' "

*Shrimpers & Fishermen of RGV v. Texas Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 127 n.3 (2014)). In that case, very similarly to Plaintiffs' current position, the plaintiffs identified a few members it argued had standing to challenge air-quality permits, but then presented generalized evidence of "modeling show[ing] elevated risks of harm from the facility's air emissions at distances of more than 14 miles from the facility." *Id.* at 425. The Fifth Circuit found that, even if it construed this assertion as claiming that "individuals living, working, and driving within a roughly fourteen-mile radius of the proposed facility (*i.e.*, Petitioners' members) will suffer an increased risk of harm that those living further away will not suffer," it found that "these claims are too generalized and

Petitioners have not produced enough evidence to show an actual or imminent harm." *Id.*

"It is well settled that '[a] plaintiff's burden to demonstrate standing increases over the course of litigation.'" *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 119 (2d Cir. 2025) (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, . . ." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "[A]t the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.' " *Id.* (citing *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 115, n. 31 (1979)). Elements of standing, including assertions of individual injuries, must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). As such, evidence of these specific injuries will be required.

Here, Plaintiffs have been adjudged to have standing based on allegations regarding their members. Doc. 62, p. 12, 16 ("Therefore, the Court finds that Inclusive Louisiana has satisfied the causation requirement (for representational standing) by alleging a connection between Defendant's conduct and its members' injuries."); Doc. 70, p. 20. Plaintiffs do not have standing in this case based on a generalized grievance of property owners in St. James Parish.

At trial, Plaintiffs must prove that the organization or *its members'* property have decreased in value, as alleged. After the pleading stage, when "the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). In other words, Plaintiffs survived a motion to dismiss based on its allegations of harm to its members and, at trial, *must prove* those allegations. Plaintiffs cannot now shelve these allegations for an alleged generalized theory of possible harm to non-member residents of the Parish. Because Plaintiffs maintain their evidentiary burden on these issues, the Parish's requests are proportional and directly relevant.

**D. The Parish's requests are necessary for it to defend itself.**

Finally, the Parish has been clear that its only intentions here are to defend itself from Plaintiffs' allegations. The Parish has always been willing to enter an appropriate protective order to allow it to properly conduct discovery on Plaintiffs' allegations. The Parish is willing to receive the addresses of any property of the Plaintiffs' members as confidential, with the parties thereby agreeing that the property addresses will be referred to with a nickname going forward. Any mention of a particular property would not include the physical address and use of such in any resulting public document, such as the trial, would protect the privacy of residences.

**II. THE PARISH IS ENTITLED TO SUBSTANTIATE PLAINTIFFS' ALLEGATIONS ON HEALTH IMPACTS OR RISKS (RISE INT. 10, 20, RFP 3; INCLUSIVE INT. 5, 6, 9, RFP 3, 4, 5; MOUNT TRIUMPH INT. 5, 8, RFP 3).**

Plaintiffs continue to argue that "Plaintiffs' members' individual medical diagnoses, medical records, and health-related information of their loved ones are not relevant to their claims," doc. 165, p. 19, yet fail to explain why the Complaint is replete with allegations on this issue. Plaintiffs boldly assert that mentions of incidences in the Complaint "does not make them relevant for purposes of discovery." Doc. 165, p. 22. This statement ignores all principles underlying the federal rules of civil procedure in terms of the allegations in a complaint and the topics on which the parties can thereafter conduct discovery.

**A. Plaintiffs have standing based on their members, not "public" claims "not based on individual illness or medical information."**

Plaintiffs are attempting to shift the focus on their health claims now that they've survived dismissal based on standing. As outlined above, an assertion of alleged "public" increased health risks will not suffice and information regarding the injuries of their members remain necessary and relevant. This theory is inconsistent with Plaintiffs' evidentiary burden and its own allegations.

Even Plaintiffs admit they must show "the fact that the member is' injured in the manner



5728510.v1

alleged." Doc. 165, p. 22. For example, Plaintiffs allege that "Inclusive further disclosed that Ms. Gail LeBoeuf has been diagnosed with cholangiocarcinoma and biliary obstruction, and that Ms. Barbara Washington has suffered from a chronic cough and has required the use of an inhaler to aid breathing." Doc. 165, pp. 6-7. Being these allegations are made to illustrate Plaintiffs' claims of health risks increased by the Parish, the Parish is entitled to an independent review of these individual's medical records to determine if these diagnoses are connected to actions of the Parish. If the evidence showed these diagnoses could not possibly be related to the land use decisions, that information would be highly relevant to the Parish's defense.

Plaintiffs attempt to avoid a review of whether their members' information is consistent with their claims by putting forth a few select members and objecting to discovery on the remaining members, asserting "they reserve their right to supplement their responses 'if other members become willing to share with the Parish their membership in' Plaintiff organizations and 'health-related' and 'property-related' information as part of this case.' " Doc. 165, p 8. However, whether other members of Plaintiffs have any health issues which could be connected to actions of the Parish is also highly relevant. Plaintiffs' evidentiary strategy does not foreclose the Parish's ability to defend itself. Surely, if the members of Plaintiffs do not have medical issues which would support Plaintiffs' theory regarding increased risk, this would be *highly relevant* to the Parish's defense and the trier of fact. Plaintiffs cannot keep the Parish from this vital defense information merely because its chosen evidentiary strategy focuses on something else.

Finally, Plaintiffs argue no affirmative defense is implicated by the need for this information. Doc. 165, p. 21. While misguided, as this information is needed for the Parish's *defense*, this assertion is also false. The Parish alleges that Plaintiffs' alleged injuries were " caused by events beyond the control of Defendant and for which Defendant cannot legally be held liable

or responsible," "caused by the actions of third parties, for which Defendant is not liable or responsible," and "resulted from intervening and/or superseding causes," doc. 120, p. 3., all which could be established by proving the alleged health diagnoses were caused by other issues or causes.

As the Parish stated to Plaintiffs on numerous occasions, if the Plaintiffs strike these allegations from their lawsuit and stipulate they do not intend to present any individual specific information, the Parish will cease pursuing individualized information and focus on the alleged publicly available data. But Plaintiffs cannot assert these allegations against the Parish as part of their narrative and simultaneously prevent them from reviewing the veracity of the allegations.

**B. The Parish's requests are proportional to the allegations.**

Plaintiffs argue that, because they ask for injunctive and declaratory relief, the Parish's requests are not proportional to the "amount in controversy". Doc. 165, pp. 23-24. This assertion is illogical as the claims—here, whether the Parish caused increased health risk to Plaintiffs' members—does not change from an evidentiary standpoint based on the relief Plaintiffs request.

As resolving the pled issues, Plaintiffs' Complaint list specific individuals with alleged health issues resulting from the Parish's actions. When any individual's cause of health issues is at issue, it is fair and just for the defendant to review that party's medical record and do an independent evaluation, as the Parish has requested here.

To address the "access to information," Plaintiffs argue that the "Parish can test Plaintiffs' risk theory with the same publicly available data identified in the Complaint . . ." Doc. 165, p. 25. Aside from the fact that they have not produced all such information, Plaintiffs do not get to dictate how the Parish defends Plaintiffs' claims. If all Plaintiffs' members lack any sign of medical issues related to the issues which Plaintiffs seek to address, this would be *highly* dispositive of Plaintiffs' claims. Also, the "narrower, privacy-protective path" offered by the Plaintiffs was vastly insufficient. A review of an individual's alleged health issues requires full medical records.

Plaintiffs wanted to provide limited information which would prevent the Parish from doing its own analysis of the individual's alleged health issues.

**C. Information put at issue by Plaintiffs' allegation is not protected by the First Amended when sought for the sole purpose of defending Plaintiffs' allegations.**

For the same reasons as above, Plaintiffs have not established a First Amendment Infringement from the Parish's requests. The Parish has clearly stated on multiple occasions it is willing to enter a protective order to keep this health information protected and for the sole use of defending against Plaintiffs' claims.

## III. CONCLUSION

For the foregoing reasons, St. James Parish respectfully requests that the Court grant its Motion to Compel and order Plaintiffs to provide complete responses to the discovery requests at issue. In the alternative, the Court should preclude Plaintiffs from relying at trial on any allegation they refuse to substantiate. Plaintiffs' request for fees should be denied.

RESPECTFULLY SUBMITTED,

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*s/ Danielle L. Borel*
John King, La. Bar No. 17004
John.King@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
danielle.borel@bswllp.com

*Attorneys for St. James Parish, St. James Parish Council and St. James Parish Planning Commission*