**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members | * * * | CIVIL ACTION NO.: 2:23-cv-00987 |
| VERSUS | * * * | JUDGE: CARL J. BARBIER |
| ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION | * * * | MAG. JUDGE JANIS VAN MEERVELD |

# REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO SECOND SET OF DISCOVERY

Defendant St. James Parish (the "**Parish**"), respectfully submits this Reply Memorandum in Support of its Motion to Compel Responses to Second Set of Discovery [doc. 150].

## I. PLAINTIFFS' FINANCIAL INFORMATION IS RELEVANT.

The discovery requests are relevant to the facts and claims as specifically pled by Plaintiffs in the Second Amended Complaint ("**SAC**") (doc. 104).

Plaintiffs attempt to recharacterize and limit the Parish's argument to one in which the requested documents are relevant merely "because Plaintiffs discuss economic exploitation in the Second Amended Complaint." Doc. 166, p. 8. However, Plaintiffs do much more than simply "discuss" economic exploitation. In fact, Plaintiffs expressly link their own "discussion of economic exploitation" to the "systemic and historic exploitation of the Black community of St. James through a discriminatory land use system," which land use system has allegedly led in turn to an alleged decrease in property values. Doc. 166, p. 9 (emphasis supplied). Plaintiffs alleged:

- "The discriminatory land use system has also resulted in diminution in the value of property owned by Plaintiffs, their members and congregants." Doc. 104, ¶686 (13th Amendment Claim);
- "Defendants have devised, implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of land use [that results] in lowered property values and



5728515.v1

other harms to their properties." Doc. 104, ¶706 (§1982 Claim);

- " . . .deplete property values of Black residents . . ." Doc. 104, ¶15;
- location of facilities "has affected their property values," Doc. 104, ¶264; and
- Plaintiffs sought a moratorium because of the "depreciation of their property values," ¶344.

Plaintiffs also purposefully fail to mention that the SAC makes claims regarding the suppression of "economic empowerment that persists to this day" that relate to property valuation. Doc. 104, ¶2. Based on the §1982 Claim, that "economic empowerment" includes the right to "to inherit, purchase, lease, sell, hold, and convey real and personal property on equal terms as white citizens in the Parish." Doc. 104, ¶706. That right under § 1982 has been violated, it is alleged, "resulting in lowered property values and other harms to their properties." *Id.*

Plaintiffs cite *In re: Tenaris S.A. Securities Litigation*, 2022 WL 905125 (S.D. N.Y 2022), a district court case from the Eastern District of New York, to claim that "federal courts have consistently rejected the proposition that mere inclusion of an allegation in a complaint automatically renders related documents discoverable." Doc. 166, p. 8. No such broad rule can be derived from the *Tenaris* case in which the discovery requests were "untailored," "breathtaking in their scope," not "tied to any of the misrepresentations or omissions at issue" in the case, would produce "millions, if not tens of millions, of documents," and which did not have even a "veneer of relevance." *Tenaris*, 2022 WL 905125 at p. *1, *2.

Here, Plaintiffs have alleged throughout the SAC that the Parish's land use system has led to a decrease in property values. Two claims, the 13th Amendment Claim and the §1982 Claim, specifically make this allegation. Doc. 104, ¶686 and 706. [1] The Parish's discovery requests are tied specially to these allegations and claims.

[1] Plaintiffs have also asserted, in defense of a Rule 12 Motion, that they "are also injured because Defendants' discriminatory steering of industry into their communities has harmed their properties, including by depreciating their property values." Doc. 43, p. 12.

The first category of documents, the Plaintiffs' financial statements, contain balance sheets and income statements. Balance sheets include relevant information about assets, such as real property, and the values placed on them by the Plaintiffs themselves from year to year. Income statements include such items as rent received from real property and expenses incurred to maintain such property. Rentals are relevant because an income producing property is more valuable than one that is not. The expenses are relevant to property value because a lack of maintenance is tied directly to value from year to year. Both lines of evidence provide information about the attractiveness of the property to a potential buyer (which influences its value).[2] The income statements are also relevant to determine whether any of the Plaintiffs incurred expenses to pay for a member's property purchases or to maintain property owned by their members, which is directly related to the value of the member's property.

The second category of documents, the Plaintiffs' tax returns, contain equally relevant information regarding income from property owned by the Plaintiffs and expenses incurred to maintain property owned by the Plaintiffs. It will also include expenses incurred to maintain the property of their members. Further, the tax returns contain deductions, such as depreciation, which impact a property's value.

These two categories of documents contain explicit information about property values that tend to make the claims of decreasing value "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Further, whether property has decreased in value, as claimed by Plaintiffs, "is of consequence in determining the action." Fed. R. Evid. 401.[3]

Plaintiffs also suggest that the discovery requests are not relevant "in a case without any

---

[2] Recall that Plaintiffs claim their rights and the rights of the "residents in the 4th and 5th Districts" to "sell" their property have been violated. Doc. 104, ¶706. The discovery requests seek information that will address an alternate reason as to why any such property may not sell or why property values decrease over time.

[3] RISE St. James will have to disclose this same information in its initial Form 990.

monetary claims." Doc. 166, p. 9. However, the discovery requests are directly tied to the 13th Amendment Claim and the §1982 Claim for which Plaintiffs seek relief for an alleged decrease in preparty values. The Parish has the right to obtain discovery of information that is relevant to the claims made by Plaintiff's and the relief requested based on those claims, even if the requested relief is not an obvious monetary amount.

Finally, the requests are also related to Plaintiffs' pending and recent request for injunctive relief wherein Plaintiffs alleged "Plaintiffs possess limited financial resources and would be unable to pay a substantial bond," doc. 132-1, p. 26, an assertion which Plaintiffs have not substantiated and continue to fight the Parish's efforts to substantiate. As outlined in its motion, public sources seem to contradict Plaintiffs' assertion, making it an issue on which discovery is necessary, particularly as the Court has invited Plaintiffs to again file a "motion for injunctive relief in the future should it become necessary." Doc. 140, p. 5. The Requests are also related to the Parish's defense and request attorneys' fees

Finally, the requests are relevant, in light of publish statements by Plaintiffs' representatives, to Plaintiffs' motivation and bias.

## II. <u>THE REQUEST ARE PROPORTIONAL TO THE NEEDS OF THIS CASE.</u>

The importance of this case cannot be understated, based on the "amount in controversy" or the relief requested. Plaintiffs have prayed for a cessation of industrial development in the areas of St. James Parish that are the least populated and with the most desirable and available property. If enjoined as requested, the subsequent lack of development will impact, and potentially impoverish, St. James Parish for decades. The Parish must have access to plainly relevant information that will assist it in defending itself against a result that could be potentially devastating for the vast majority of residents of St. James Parish.

Plaintiffs have access to this information, but the Parish does not. Plaintiffs internal valuation of their own assets, and assistance provided to its members, is known only to Plaintiffs and is not available elsewhere.

The requested information is important to resolving the issue raised by the Plaintiffs – the alleged decrease in property values and its alleged impoverish status. This requested information will assist in a determination of whether the Plaintiffs claims have evidence to support them.

The burden or expense to the Plaintiffs does not outweigh its benefit to the Parish. The requested information is comprised of a discrete set of documents, which are likely to be in an electronic format. Thus, Plaintiffs can hardly claim that these requests are burdensome. As noted above, however, the benefits to the Parish are immeasurable as important information will be provided to defend against the claims relating to a decrease in property values.

## III. THE PLAINTIFFS' FIRST AMENDMENT ARGUMENT IS UNAVAILING.

The Parish has never abridged or infringed the First Amendment rights of its residents. Throughout the land use process, the residents of the Parish have been invited to, and allowed to speak their minds at meetings, outreach events, and public hearings related to the creation and adoption of the Comprehensive Plan, the adoption of the Land Use Plan, amendments to the Land Use Plan, and hearings on individual land use decisions. Residents, specifically including the Plaintiffs and their members, have taken full advantage of these opportunities while also petitioning their local, state, and federal governments for relief. The SAC is replete with descriptions of instances and events at which the Plaintiffs, their members, and the residents of the Parish fully availed themselves of these rights and opportunities.

By stringing together disparate statements made in different contexts and incorrectly characterizing them, Plaintiffs falsely assert, and treat as a given, that the Parish has an "improper

purpose" in seeking this discovery. Doc. 166, p. 18. This is an absolute falsehood.

Plaintiffs brought the 13th Amendment Claim and the §1982 Claim based, in whole or in part, on a decline in the value of their property and the property of its members. The Parish seeks this discovery in direct response to those claims and the allegations in the SAC – to obtain any available information from any available source (here, the Plaintiffs themselves) to determine if Plaintiffs' claims of a decrease in property values are valid and provable. The Parish also seeks this information to test the veracity of Plaintiffs' assertion of being impoverished and to support the Parish's defenses. That is the only purpose for this discovery and it is a valid purpose based on the allegations and claims in the SAC.

The Plaintiffs' characterizations of the Parish's purposes are false. The statement in the Motion to Compel Memorandum (doc. 150, p. 11) cited by Plaintiffs summarizes a detailed assertion in the Answer (doc. 120) regarding the claim for attorneys' fees which relates to the Parish's perception that the suit was brought "with a specific intention of creating a hostile land use environment, intimidating land use applicants, and preventing the submission of additional applications." Doc. 120, p. 4. The claim that the Parish finds the Plaintiffs' donors "objectionable" is simply their own negative characterization of the Parish's arguments about the discoverability of Plaintiffs' motivations and biases. See Doc. 150, p. 12. The "left-of-center" comment cited by Plaintiffs was not made by the Parish; it was made by an entity not affiliated with the Parish and simply quoted by the Parish. Doc. 166-1, p. 10. From these thin reeds, Plaintiffs seek to project onto the Parish a purpose which is not at all applicable. Plaintiffs point to no comment which in any way displays an "improper purpose" in seeking this discovery.

Plaintiffs reference a two-part balancing test: a showing of an arguable First Amendment infringement and, if such an infringement is found, a showing by the requesting party that the

requested disclosure is substantially related to a sufficiently important interest and is narrowly tailored. Plaintiffs fail to meet the first part of this test as any evidence attributable to the Parish is noticeably lacking.

Plaintiff allege a showing of "public hostility towards Plaintiffs" because the Parish "regularly coordinates" with Industry Makes, an "industry backed group." Doc. 166, p. 20.[4] However, the evidence relied on by Plaintiffs fails to disclose any such hostility to Plaintiffs by the Parish based on or resulting from these alleged meetings.

Exhibits 9 and 10 (doc. 166-1, pp. 43 – 51) relate to a single meeting with Industry Makes on March 28, 2023. There is only one mention of RISE St. James and that is in relation to Michael Bloomberg's Beyond Petrochemicals campaign. Doc. 166-1, pp. 49-50. The statement in Exhibit 10 is a direct quote from Bloomberg Philanthropies' September 21, 2022 press release in which RISE St. James is identified as a recipient of funds. *See* Exhibit N, at p. 3.[5] According to the press release, the Beyond Petrochemical campaign sought to "turbocharge existing efforts led by frontline communities to block the expansion of more than 120 proposed petrochemical projects concentrated in three target geographies – Louisiana, Texas, and the Ohio River Valley." It would indeed be odd for a group comprised of Louisiana industry members to not mention or discuss an $85 million effort to "turbocharge" local groups and "block the expansion" of projects in Louisiana. Importantly, Exhibits 9 and 10 contain no hostility whatsoever towards RISE St. James and no other Plaintiffs are even mentioned.

Exhibits 11 and 12 (doc. 166-1, pp. 52 – 58) also disclose no hostility to Plaintiffs. Exhibit 11 relates to remarks at the River Region Economic Development Initiative (RREDI) breakfast by

---

[4] The Plaintiffs present no proof that the Parish "regularly coordinates" with Industry Makes.
[5] *See also*, https://www.beyondpetrochemicals.org/news/michael-r-bloomberg-launches-new-85-million-campaign-to-stop-rapid-rise-of-pollution-from-the-petrochemical-industry-in-the-united-states.

Parish President Dufresne, but Plaintiffs are not even mentioned in Exhibit 11. Likewise, Exhibit 12 relates to a partnership between Industry Makes and Louisiana Economic Development, but again, Plaintiffs are not even mentioned in Exhibit 12.

To the extent that these exhibits are designed to prove "public hostility," they fall woefully short. Instead, Plaintiffs supply other exhibits which are comprised of statements by Industry Makes. Doc. 166-1, pp. 35 -42. They are NOT the statements by the Parish and there is no evidence that the Parish sanctioned, adopted, or promoted these statements. By including them, though, Plaintiffs seek to smear the Parish using the statements of another entity. Such a tactic should be recognized for what it is – a desperate attempt to concoct "public hostility" by the Parish when none exits by using the statements of others.

Plaintiffs also rely on an interaction between Ryan Louque, a Parish Councilman, and Father Vincent Dufresne regarding a conference. Exhibit 13 (Doc. 166-1, pp. 59 – 63). Again, Plaintiffs are not mentioned in the direct communication between Mr. Louque and Father Dufresne (at doc. 166-1, p. 60) and Mr. Louque was not acting on behalf of the Parish but in his personal capacity. Even so, no hostility is displayed in the communications. Further, Mr. Louque mentions "outside NGO's," which, by definition, does not include the Plaintiffs. Regardless, when Father Vincent provided information to Mr. Louque about the conference, the matters seem to have been dropped with no further allegedly "hostile" actions taken.

Finally, as part of the guilt by association tactic, Plaintiffs cite a statement by the Louisiana Attorney General. Exhibit 14 (Doc. 166-1, pp. 65 - 66). Again, this statement is NOT a statement by the Parish.

Plaintiffs next turn their focus to counsel for the Parish, alleging that certain statements "reflect hostility" to the Plaintiffs. Doc. 166, p. 20. These statements have been addressed above

and do not reflect any hostility to any Plaintiffs.

But, one claim by Plaintiffs is particularly egregious. As support for the "public hostility" claim, Plaintiffs cite a statement by the Parish regarding the "potential evidence of 'biases of Plaintiffs.'" Doc. 166, p. 21. However, the context of that quote is important – that statement appears in a section of the Motion to Compel relating to the relevancy of evidence of the motivation and bias of a party. See Doc. 150, pp. 11 – 12. Plaintiffs attempt to reframe that statement as more than it is intended, and take it out of context, is yet another desperate attempt to concoct "public hostility" by the Parish when none exists.

Finally, Plaintiffs refer to a statement by Sharon Lavigne wherein she references several statements by other residents and Industry Makes and the existence of signs around St. James Parish. However, what is noticeably lacking in her Declaration is any statement *by the Parish* about her, her daughter, or RISE St. James, or any statement connecting the signs to the Parish. While she mentions that the Parish meets with Industry Makes, the only evidence she references is the single meeting in March 2023 addressed above.

In short, Plaintiffs have failed to show any type of "public hostility" *by the Parish* against Plaintiffs or their members and failed to show any First Amendment infringement by the Parish. As a result, Plaintiffs have utterly failed to meet the first part of the test to support their argument.

However, even if they do meet the first part of the test (which is denied), the Parish's requests are substantially related to a sufficiently important interest and are narrowly tailored.

The Parish has substantial interests. As noted above, Plaintiffs seek to enjoin and stop industrial development and have brought at least two claims involving decreases in property values as a means to achieve that end. Obviously, the stakes could not be higher for a poor parish like St. James, which seeks to fund schools, police, and other services primarily from the taxes generated

by such industrial activity. Thus, the Parish has a substantial interest in defending the suit brought against it by Plaintiffs and to defend against the allegations therein.

The discovery requests are substantially related to those interests. The requested information, especially the financial statements, contain information directly relevant to a key portion of the case—the value over time of the property owned by the Plaintiffs and perhaps their members—and would directly address Plaintiffs' assertions regarding its financial status. The requests are limited and narrowly tailored to obtain only the financial statements and tax returns which will have information directly related to the property values and Plaintiffs' financial status.

## IV. CONCLUSION

For the foregoing reasons, St. James Parish respectfully requests that the Court grant its Motion to Compel and order Plaintiffs to provide complete responses to the discovery requests at issue. In the alternative, the Court should preclude Plaintiffs from relying at trial on any allegation they refuse to substantiate. Plaintiffs' request for fees should be denied.

RESPECTFULLY SUBMITTED,

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*s/ Danielle L. Borel*
John King, La. Bar No. 17004
John.King@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
danielle.borel@bswllp.com

*Attorneys for St. James Parish, St. James Parish Council and St. James Parish Planning Commission*